UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                                        Chapter 11

TOWN CENTER AT DORAL, L.L.C.,                                 Case No. 11-35884-RAM
*et al.,*                                                     Jointly Administered

        Debtors.
_____/

**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT'S
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT** (the "**District**"), through undersigned counsel, pursuant to 11 U.S.C. § 362(d), Federal Rule of Bankruptcy Procedure 4001 and Local Rule for the Southern District of Florida 4001-1, respectfully requests the entry of an order granting complete relief from the automatic stay to allow the District to exercise any and all remedies available against the Debtors and other third parties, including but not limited to foreclosing upon and selling the subject real property as more fully described herein. In support, the District states:

**Preliminary Statement**

The Debtors[1] are developers and owners of several parcels of real property located in Miami-Dade County Florida, consisting of approximately 120 contiguous acres located on the east side of NW 107 Avenue and the north side of NW 58 Street, a majority of which is zoned TND (Traditional Neighborhood Development) with the remainder zoned IU-1 (for flex office development allowing for light industrial development (the "**Property**"). The Property consists of 16 individual tracts of land that remain undeveloped with the exception of an unfinished 4-level parking garage.

In addition to conventional institutional financing obtained by the Debtors, the District,

---

[1] The Debtors in this bankruptcy proceeding are Town Center at Doral, L.L.C., Landmark at Doral East, LLC, Landmark at Doral South, LLC, Landmark Club at Doral, LLC, and Landmark at Doral Developers, LLC.

which was created by the Debtors themselves in order to access the bond markets, issued bonds in the principal amount of $71,500,000 (the "**Series 2006 Bonds**")[2], for the purpose of constructing capital infrastructure for the Property. The source and timing for repayment of the Series 2006 Bonds is set forth in a series of documents, including but not limited to, a Master Trust Indenture dated October 1, 2006 and the First Supplemental Trust Indenture dated October 1, 2006 (collectively, the "**Indenture**").

The Indenture requires debt service payments of principal and interest on the Series 2006 Bonds by the District. The debt service payments are secured and funded by special assessments (the "**Special Assessments**") levied by the District on the privately owned land within the District. The District is obligated to collect Special Assessments from property owners to fund the debt service payments. Upon receipt by the District of a Special Assessment payment, the District is required to pay those funds to the bond trustee pursuant to the Indenture.

The Debtors are the primary landowners within the District with only minor exception. Each respective Debtor owns a parcel or series of parcels that are subject to the Special Assessments and their corresponding lien. There is no dispute that none of the Debtors have paid any Special Assessment installment due and owing the District since May 1, 2009.

As a consequence of the Debtors' continuing failure to pay Special Assessments installments when due, the District commenced enforcement and collection of the Special Assessments consistent with Florida law, including but not limited to instituting a foreclosure action relative to the Property. The District's foreclosure proceeding has been pending for over two (2) years. The District moved for summary judgment on July 26, 2011. A hearing on that motion for summary judgment was set for September 21, 2011. As a result of the extant

---

[2] The Series 2006 Bonds are composed of two types of bonds – 2006A Bonds in the original principal amount of $30,320,000, and 2006B Bonds in the original principal amount of $41,180,000. The 2006A Bonds mature on May 1, 2038 and require semi-annual payments of interest, as well as an annual sinking fund payment toward outstanding principal due on May 1st. The 2006B Bonds mature on May 1, 2015 and require annual payments of interest until such time as the subject borrower transfers title to the property, at which time the aliquot 2006B Bond liability on the conveyed property is to be paid in full, usually through a portion of the sale proceeds. As discussed, below, the Debtors are in default of their payment obligations on both types of bonds and the District seeks relief as to both the 2006A and 2006B Bonds.

bankruptcy filings, two days before the hearing, the hearing on the District's motion for summary judgment was cancelled.

The District is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d). Stay relief is warranted under two (2) independent and sufficient grounds: there is a lack of adequate protection and the Debtor does not have any equity in the property and the Property is not necessary to an effective reorganization.

## Jurisdiction and Venue

1. On September 19, 2011 (the "**Petition Date**"), the Debtors filed separate voluntary petitions for relief pursuant to Chapter 11 of the Title 11 of the United States Code. [ECF No. 1, Case No. 11-35884-RAM]; [ECF No. 1, Case No. 11-35885-RAM]; [ECF No. 1, Case No. 11-35886-RAM]; [ECF No. 1, Case No. 11-35887-RAM]; [ECF No. 1, Case No. 11-35887-RAM]..[3]

2. On September 22, 2011, this Court granted the Debtors' motion for joint administration, with the instant case, Case No. 11-35884-RAM, designated as the lead case. [ECF No. 8, Case No. 11-35884-RAM]; [ECF No. 8, Case No. 11-35885-RAM]; [ECF No. 8, Case No. 11-35886-RAM]; [ECF No. 6, Case No. 11-35887-RAM]; [ECF No. 6, Case No. 11-35887-RAM].

3. On October 20, 2011, the United States Trustee appointed a joint committee of unsecured creditors. [ECF No. 31].

4. No trustee or examiner has been appointed.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this judicial district pursuant to 28 U.S.C. § 1408. The statutory predicate for the relief requested in this motion is 11 U.S.C § 362.

---

[3] The filing was obviously timed to prevent the hearing on the District's motion for summary judgment in the foreclosure action described below.

## Background

### A. The Parties

6. The Debtor LANDMARK AT DORAL EAST, LLC ("**Landmark at Doral East**"), is a Florida limited liability company. Landmark at Doral East owns that portion of the Property described in Exhibit A attached as Parcel A.

7. The Debtor TOWN CENTER AT DORAL, LLC ("**Town Center**"), is a Florida limited liability company. Town Center owns that portion of the Property described in Exhibit A as Parcel B.

8. Defendant, LANDMARK AT DORAL SOUTH, LLC ("**Landmark at Doral South**"), is a Florida limited liability company. Landmark at Doral South owns that portion of the Property described in Exhibit A as Parcel C.

9. Defendant, LANDMARK AT DORAL DEVELOPERS, LLC ("**Doral Developers**"), is a Florida limited liability company. Defendant, LANDMARK AT DORAL DEVELOPERS, LLC, may claim an interest in all or a portion of the Property described in Exhibit A as Parcel D, pursuant to that Warranty Deed dated January 31, 2005 and recorded February 2, 2005 in Official Records Book 23048, Page 189, Public Records of Miami-Dade County, Florida.

10. Defendant, LANDMARK CLUB AT DORAL LLC (the "**Club**"), is a Florida limited liability company. Club is a Landowner (as hereinafter defined), which owns that portion of the Property described in Exhibit A as Parcel E.

11. Landmark at Doral Community Development District (the "**District**") is a community development district, which is a local unit of special purpose government of the State of Florida created by the Debtors pursuant to Chapter 190, Florida Statutes. On or about August 23, 2005, the Board of County Commissioners, Miami-Dade County, Florida, adopted Ordinance No. 05-153 establishing the District pursuant to the provisions of Chapter 190, Florida Statutes. The District has all of the powers granted by Chapter 190, Florida Statues, including, but not limited to, the authority to impose Special Assessments and to enforce all remedies available in

case of default in the payment of Special Assessments, including the right to file the instant motion.

### B. The District's Creation and Purpose

12. By statute, the District is empowered to finance and construct public improvements and community facilities such as basic infrastructure (water, sewer, bridges, roads, transportation systems, parking improvements, conservation areas, etc.). Fla. Stat. § 190.012.

13. A district is empowered by statute to levy, impose, collect and enforce Special Assessments. Fla. Stat. § 190.011(14). Districts typically issue bonds, which are sold to raise monies to fund the public improvement projects of the district. Fla. Stat. § 190.011(9).

14. The power of a district to levy special assessments includes: Benefit Special Assessments to make required payments on the bonds which are issued to finance district facilities and projects. Fla. Stat. § 190.021(2); and "Maintenance Special Assessments", which are levied to maintain and preserve the facilities and projects of the district. Fla. Stat. § 190.021(3).

15. Both Benefit Special Assessments and Maintenance Special Assessments, until paid, constitute liens upon the Property against which they are assessed, Fla. Stat. § 190.021(2), (3), having a lien priority co-equal with *ad-valorem* real property taxes: Fla. Stat. § 190.021(9).

16. The District's assessment liens "... may be foreclosed by the District in foreclosure proceedings in the name of the district in a court of competent jurisdiction as provided by general law...." Fla. Stat. § 190.026.

17. Pursuant to Resolution No. 2005-11, adopted September 9, 2005, and Resolution No. 2006-08, adopted August 10, 2006, the District authorized the issuance, sale and delivery of not to exceed $75,000,000 in Special Assessment Bonds.

18. Pursuant to Resolution No. 2005-12, adopted October 19, 2005, and Resolution No. 2006-10, adopted September 14, 2006, copies of which are attached as Exhibits "B" and "C, respectively ("**Debt Assessment Resolutions**"), the District levied Special Assessments on lands

within the boundaries of the District that will specially benefit from the facilities and services to be provided by the District as described in the Debt Assessment Resolutions and in its exhibits. The Special Assessments were levied in accordance with Florida law, and the Property described in Exhibit "A" has been benefited by the facilities and services constructed using the 2006 Series Bond funds and is therefore validly subject to the assessments.

19. On September 11, 2008, the District adopted Resolution No. 2008-5, a copy of which is attached as Exhibit "D", levying a Special Assessment for maintenance and debt service on lands within the District for Fiscal Year 2009-2010. A semi-annual debt service installment on the Special Assessments was due on May 1, 2009.

20. On October 1, 2006, the District signed a Master Trust Indenture with U.S. Bank National Association, as indenture trustee and a First Supplemental Trust Indenture with U.S. Bank National Association, as indenture trustee (collectively the "**Indenture**").

21. The validity of the establishment of the District has already been judicially confirmed. See Exhibit "E," Validation Final Judgment at paragraph 3,

    **C.**    **The Series 2006 Bonds**

22. On October 10, 2006, the District issued $30,320,000 Special Assessment Bonds, Series 2006A, and $41,180,000 Special Assessment Bonds, Series 2006B (together, the "**Series 2006 Bonds**"), for the purpose of funding the various improvements included in the District's Capital Improvement Program.

23. The Series 2006 Bonds were issued by the District under and pursuant to Chapter 190, Florida Statutes, and the Indenture. The pledged revenues for the repayment of the Series 2006 Bonds are the amounts paid in connection with Special Assessments imposed pursuant to the Assessment Resolutions and ancillary documents including but not limited to an Assessment Methodology describing the various parcels and attendant Special Assessments encumbering each respective parcel.

24. The proceeds from the sale of the Series 2006 Bonds provided, and continue to

provide for, capital improvements within the District which specially benefit the Property owned by the Debtors.

25. The Debtors, as owners of the Property, are obligated to pay the Special Assessments as required by the Indenture and the Assessment Methodology.

26. The Debtors have failed to pay the Special Assessment installment payments commencing with the installment due on May 1, 2009 and all subsequent installments that have come due as of the date hereof.

27. Pursuant to § 170.10, Florida Statutes and consistent with the Indenture, the District has accelerated and declared the entire amount of the Special Assessments immediately due and payable. That amount exceeds $71,500,000.00, including interest, cost and penalties as provided by applicable Florida statute and the Indenture.

### D. The Foreclosure Action

28. On January 27, 2009, the District commenced a foreclosure action against the Debtors and junior lien holders. The foreclosure action is pending in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida as Case No. 09-6334-CA-32.

29. On July 26, 2011, the District moved for summary judgment against all defendants, including the Debtors, in the foreclosure action.

30. A hearing on the District's motion for summary judgment was set for September 21, 2011, two days after the Petition Date.

### E. Relief Requested

31. The District requests that the Court grant immediate relief from the automatic stay to allow it, without limitation, to exercise its rights and remedies relative to the Property[4], including but not limited to (i) taking possession, securing and completing foreclosure of the Property (including, but not limited to all deposits held by the Debtors or third parties pursuant to any existing contract for the sale of any of the Property), and (ii) obtaining all right, title and

---

[4] These rights and remedies are ultimately for the benefit of the owners of the outstanding Series 2006 Bonds.

interest of the Debtor in and to any all existing or future construction contracts, architectural and engineering contracts, plans and specification, designs, and development rights with respect to the proposed construction or in connection with the Property (all the foregoing being collectively referred to as the "**Contract Documents**"); and any all governmental permits, approvals and licenses, impact fees and impact fee credits, utility tap-in rights and credits with respect to the Property; and any all authorizations, trade names (particularly all "Debtors" related names), trademarks, service marks, copyrights, promotional and advertising materials, developed for, used or to be used in connection with the Property; any and all plats and survey; all rights and interest of any assignor in any restrictive covenants and conditions that may be imposed by an assignor on the Property; all rights and interests of an assignor in any homeowners association that may be created in connection with the Property, including an assignor's stock and/or ownership of such homeowners association; and any all other right, title and interest in any and all tangible and intangible rights with respect to development and use of the Property which an assignor may now or hereafter acquire in all products and proceeds of the foregoing; and all guarantees, warranties and agreements relating to the Property, including without limitation, those related to quality of construction and performance, or the quality of workmanship or supplies, equipment and fixtures supplied to, installed on or incorporated in the Property or any part thereof or the improvements thereon.

32.     The District further requests that the Court waive and/or modify: (a) the fourteen day stay provided in Fed. R. Bankr. P. 4001(a)(3) to allow the relief granted to become effective immediately upon the entry of an order granting this motion; and (b) the requirements set forth in the Clerk's "Guidelines for Motions for Relief from the Automatic Stay" made applicable to this motion pursuant to Local Rule 4001-1(B).

## MEMORANDUM OF LAW

    **A.**    **Legal Standard**

    33.    Section 362(d) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause, including lack of adequate protection in an interest in property of such party in interest; (2) with respect to a stay of an act against property under subsection (a) of the section if – (A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization.  11 U.S.C. § 362(d).  Accordingly, relief from the automatic stay is appropriate (i) "for cause", or (ii) where the debtor has no equity in the property and the property is not necessary for an effective reorganization.[5]  Id.  The party opposing a motion for stay relief bears the burden of proof on all issues except whether the debtor has equity in the property. Id.; 11 U.S.C. § 362(g).

    **B.**    **11 U.S.C. § 362(d)(1)**

    34.    With respect to the "for cause" requirement, the District submits that because the Debtors are not providing any form of payment and the Property is at substantial risk of damage or loss due to, *inter alia*, market deterioration, weather, theft, vandalism and general liability risks related to uninsured property, all created by the Debtors' financial distress and lack of funds, more than ample "cause" exists to lift the automatic stay.  See In re Bell Partners, Ltd., 82 B.R. 593, 601 (granting relief of the automatic stay on the basis of a lack of adequate protection). Further, the improvements constructed with the bond financing are in jeopardy of loss; items are being stolen and the District has had to hire a company to take security measures. Also, the site work (road beds, etc.) is in jeopardy of washing away. Similarly, the cessation of the project is creating ill will with the local government; there has been an inability to fund certain necessary

---

[5] Although the District is not seeking relief from the automatic stay pursuant to section 362(d)(3) in the instant motion, it does not waive its right to seek relief under that section of the Bankruptcy Code, and expressly preserves the right to to do so at a later date if appropriate.

project improvements and ongoing maintenance activities as well as traffic signalization at a significant intersection adjacent to the Property.

35. The Debtors appear to lack sufficient funds to secure the Property, let alone develop the Property. The Debtors are not providing nor have they offered to provide adequate protection to the District. And the District believes the Debtors are unable to provide any meaningful adequate protection to it.

36. Accordingly, the District seeks immediate relief from the stay to, *inter alia*, (i) proceed with all of its rights and remedies with respect to the Property; (ii) secure the Property to prevent any avoidable loss or damage; and (iii) to obtain all documents specifically related to the completion of this project so that the District or its assignee can complete development, if and when feasible. Due to the Debtors' inability to adequately protect the Property and the immediate danger to the Property, cause exists to grant the District relief from the automatic stay.

C. **11 U.S.C. § 362 (d)(2)**

37. The District submits that this Court should grant relief from the automatic stay under 11 U.S.C. § 362(d)(2) as well. See e.g. In re Bell Partners, Ltd., 82 B.R. at 597-601; In re Sar-Manco, Inc., 70 B.R. 132 (Bankr. M.D. Fla.1986); In re Carco P'ship., 113 B.R. 735, 739 (Bankr. M.D. Fla. 1990) (granting relief from the stay where the debtor has no equity in the property). The Debtors themselves assert in their schedules that they have no equity in the Property. Specifically, the Debtors claim that the Property has an estimated value of approximately $36 million. See [ECF No. 9 at pg 6]. The Property is subject to the District's lien in excess of $71 million, a second priority mortgage lien (subordinate to the District's lien) in the approximate amount of $103 million, see [ECF No. 21 at Schedule D], and delinquent taxes in the approximate amount of $750,000, id. According to the Debtors, the District's claim alone vastly exceeds the value of the Property. Accordingly, the Debtors themselves admit that they have no equity in the Property.

38. Nor can the Debtors carry their burden to show that the Property is "necessary to

an effective reorganization" within the meaning of Section 362(d)(2)(B).  The Debtors cannot carry their burden under Section 362(d)(2)(B) by simply showing that the Property is "necessary."  See United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-76 (1988). Rather, the Debtors must show a "reasonable possibility of a successful reorganization within a reasonable time."  Id. at 376.  Here, the Debtors have no cash flow and are significantly under water by their own estimates.  The Debtors must demonstrate how they intend to overcome these factual and legal weaknesses, and their failure to do so is fatal to their burden to show a realistic reorganization plan in prospect.  See id.  As such immediate relief from stay is mandated to prevent further harm to the District's secured claim.

## CONCLUSION

Based on the foregoing, **LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT** respectfully requests the entry an order granting it complete relief from the stay to allow **LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT** to pursue any and all of its rights and remedies with respect to the Property, including but not limited to: (1) taking possession and control of the Property; (2) seeking and obtaining the appointment of a receiver to govern said Property; (3) completing the foreclosure action currently pending in the Circuit Court in and for Miami-Dade County Florida, Case No.09-6334-CA-32; (4) selling of the Property pursuant to Florida law; and (5) any other further relief deemed just and proper.  **LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT** further requests that this Court grant any further appropriate relief including but not limited to, requiring any creditor that asserts a claim in and to the Property to first seek and obtain relief from stay in this Court to pursue its claims outside of this Court.

11

*Case No. 11-35884-RAM*

Dated: October 28, 2011.

                Respectfully submitted,

                **STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
                Museum Tower, Suite 2200
                150 West Flagler Street
                Miami, Florida 33130
                Telephone: (305) 789-3553
                Facsimile:  (305) 789-3395

By:    /s/  Patricia A. Redmond            .
       Patricia A. Redmond
       predmond@swmwas.com
       Florida Bar No. 303739

#1281560 v2

12