**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Case No.  11-35884-RAM

Town Center at Doral, LLC, et al.,                        Chapter 11


                        Debtors.                          (Jointly Administered)
_____/

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 364 AND BANKRUPTCY**
**RULES 2002, 4001, 6004 AND 6006: (I) APPROVING (A) PLAN TERM SHEET AND**
**(B) REIMBURSEMENT OF EXPENSES; AND (II) AUTHORIZING**
**POSTPETITION FINANCING**

> **The above-captioned debtors and debtors-in-possession**
> **requests an emergency hearing in this matter to prevent**
> **immediate and irreparable harm that would occur if the**
> **Debtors do not have immediate access to a new postpetition**
> **financing facility and the use of cash collateral to fund critical**
> **expenses in order to preserve and protect the property of the**
> **estates (and the pre-petition secured creditors' collateral).**
> **Accordingly, the Debtor requests an emergency hearing as**
> **authorized by Local Rules 9013-1(F) and (H) in this matter as**
> **soon as possible.  The Debtors respectfully request a waiver of**
> **the conference requirement set forth in Local Rule 9075-1 as**
> **the relief requested is urgent in nature and may only be**
> **granted following notice and a hearing.**

TOWN CENTER AT DORAL, LLC, LANDMARK AT DORAL EAST, LLC,

LANDMARK AT DORAL SOUTH, LLC, LANDMARK AT DORAL DEVELOPERS, LLC,

AND LANDMARK CLUB AT DORAL, LLC (collectively the "Debtors"), by and through

undersigned counsel, hereby move the Court (the "Motion"), pursuant to sections 105(a), 363,

364(d), and 1146(c) of title 11 of the United States Code, §§ 101 et seq. (as amended, the

"Bankruptcy Code"), and Rules 2002, 4001, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") for entry of interim and final orders, substantially in the

form attached hereto as Exhibit "A", approving a plan support agreement term sheet with Terra Landmark, LLC ("Terra Landmark"); approving reimbursement of expenses incurred by Terra Landmark in furtherance of the Debtors' reorganization efforts; and authorizing post-petition financing.  In support of the Motion, the Debtors state as follows:

## JURISDICTION

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a), 363, 364(d), and 1146(c) and Bankruptcy Rules 2002, 4001, 6004, and 6006.

## SUMMARY OF TERMS OF DIP LOAN

2.      Pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(1)(B) and (c)(1)(B), the Debtors submit the following list and summary of the material terms of the DIP Loan (as hereinafter defined) and proposed Interim DIP Order, setting forth the location within the relevant documents of such material terms.[1]

| Material Provision | Summary Description and/or Location of Provisions in Relevant Documents |
|---|---|
| DIP Lender | Terra Landmark, LLC.  **Term Sheet (defined herein), ¶ 1(a), page 2.** |
| Borrower | The Debtors, jointly and severally.  **Term Sheet, ¶ 1(b), page 2.** |

---

[1]      The following summary contains truncated descriptions of material terms and is qualified in its entirety by the actual terms of the proposed Interim DIP Order.  Capitalized but undefined terms used in this summary shall have the meanings given to such terms in the Term Sheet, the Interim DIP Order, and/or this Motion, as applicable.

| The purposes for the use of the DIP Facility | All proceeds provided by DIP Lender to Borrower pursuant to any Interim DIP Order or Final DIP Order shall be used to fund the operations of the Debtors prior to the confirmation of the Plan (defined herein), including the amount of retainers paid to any Court-approved professionals of the Debtors. **Term Sheet, ¶ 2, page 1.** |
| --- | --- |
| Interest Rate | Fourteen percent (14%) per annum payable at Maturity. **Term Sheet, ¶ 1(c), page 2.** |
| Term: | The earlier of (i) April 1, 2012; (ii) the Effective Date of the Plan; (iii) entry of an order converting the Debtors' cases, dismissing the Debtors' cases, or appointing a trustee or examiner for the Debtors. **Term Sheet, ¶ 1(b), page 2.** |
| Events of Default | Failure to meet any Milestone. **Term Sheet, ¶ 8, pages 4-5.** |
| Liens | None. **Term Sheet, ¶ 1(d), page 2.** |
| Loan Amount | Up to $150,000 on an interim basis and up to $750,000 on a final basis. **Term Sheet, ¶ 1, pages 1-2.** |
| Collateral | None**. Term Sheet, ¶ 1(d), page 2.** |
| Superpriority Administrative Expense Status | The Obligations of the Debtors to Terra Landmark shall be allowed administrative expense claims of the estate, with priority over any and all other claims of any creditor or party in interest (including any subsequently appointed trustee), pursuant to § 364(c) of the Bankruptcy Code. **Term Sheet, ¶ 1, page 2.** |

## BACKGROUND

### A.    General Background

3.    On September 19, 2011 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11, Title 11 of the United States Code.

4.    On October 20, 2011, the Joint Committee of Creditors Holding Unsecured Claims was appointed in the Debtors' cases (the "Chapter 11 Cases") by the United States Trustee.

5.    The Debtors are in possession of their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.    Each of the Debtors is a Florida limited liability company.

**B.**    **The Property**

7.    The Debtors are the fee simple owners of land (approximately 120 contiguous acres) located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida, a majority of which is zoned TND (Traditional Neighborhood Development), with the remainder zoned IU-1 (for flex office development allowing for light industrial development) (the "Property").

8.    The Property consists of 16 individual tracts of land that remain undeveloped with the exception of an unfinished 4-level parking garage.  Prior to the Petition Date, the Debtors had sought and obtained approvals for the development of residential units (townhomes and condominiums), retail/office/mixed use, and flex office at the Property.

9.    Prior to the Petition Date, the Debtors were actively engaged in preparing the Property for a development to be called "Landmark at Doral", consisting of 11 acres of industrial/flex office, 17 acres of mixed use, and 89 acres of multifamily residential dwellings. After development, the Property was to consist of 188,000 square feet of retail and office, 230,000 square feet of flex office, and 1,109 residential units, featuring an assortment of elevations and architecture thereby creating a community reminiscent of former small towns in suburbs throughout the U.S. and abroad.

10.    According to the Miami-Dade County Property Appraiser, the current assessed values of the Debtors' parcels are as follows:

| NAME OF DEBTOR | LOT SIZE | VALUE |
|---|---|---|
| Town Center at Doral, LLC | 57.09 acres | $24,297,300 |
| Landmark at Doral East, LLC | 15.72 acres | $4,745,449 |
| Landmark Club at Doral, LLC | 70,131.5 sq. ft. | $724,500 |
| Landmark at Doral South, LLC | 18.93 acres | $6,621,975 |

| Landmark at Doral Developers, LLC | Air rights over 18.93 acres | Unknown |
|---|---|---|
| **Total** | | **$36,389,224** |

## C.    The Debtors' Prepetition Obligations[2]

11.    As of the Petition Date, the Debtors' obligations[3] include (i) ad valorem tax certificates claims in various amounts, each of which is secured by a statutory lien on the Property, (ii) claims held by Landmark at Doral Community Development District in the aggregate amount of approximately $71,500,000 (exclusive of interest, fees and costs), which claims are secured by statutory liens on the Property; (iii) claims held by AMT CADC Venture, LLC in the aggregate amount of approximately $103,870,058 (exclusive of interest, fees and costs), which claims are secured by liens on the Property; and (iv) claims held by unsecured creditors in the aggregate amount of approximately $17,536,201, as more fully set forth on the following schedule:

| NAME OF SECURED CREDITOR | AMOUNT OWED (APPROXIMATE PRINCIPAL AMOUNT, EXCLUSIVE OF INTEREST, FEES AND COSTS) | APPLICABLE DEBTOR | WHETHER CLAIM IS DISPUTED, CONTINGENT OR UNLIQUIDATED | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|
| CDD | $71,500,000 | All | | The Property |
| AMT CADC Venture, LLC | $103,870,058 | All | | The Property |

---

[2]    The discussion regarding the amount and priority of the liens asserted against the Real Property is provided for disclosure purposes only and does not constitute an admission by the Debtors as to the validity, priority or extent of any pre-petition lien on the Debtors' assets, or an acknowledgement of the debt allegedly secured by such liens.   The Debtors reserve each and all of their rights to challenge the validity, priority and extent of all liens, and to object to all claims.

[3]    The amounts listed reflect the Debtors' reasonable estimates as reflected on the Debtors' schedules and statements of financial affairs.  The Debtors reserve their right to dispute the secured nature of any claim or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any asset to a creditor.

| Sunshine State Cert III, LLLP | $327,691 | Town Center at Doral | Unliquidated | The portion of the Property owned by Town Center at Doral, LLC |
|---|---|---|---|---|
| BTI Bluegate FTCF, LLC | $549,758.43 | Town Center at Doral | Unliquidated | The portion of the Property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $139,220 | Landmark at Doral East, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $112,686 | Landmark at Doral East, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $116,675 | Landmark at Doral South, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral South, LLC |
| Hilda Pico/Ocean Bank | $91,336 | Landmark at Doral South, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral South, LLC |
| BTI Bluegate FTCF, LLC | $41,169 | Landmark Club at Doral, LLC | Unliquidated | The portion of the Property owned by Landmark Club at Doral, LLC |
| Hilda Pico/Ocean Bank | $33,325 | Landmark Club at Doral, LLC | Unliquidated | The portion of the Property owned by Landmark Club at Doral, LLC |
| Miami-Dade County (2011 ad valorem taxes) | Unknown | All | Unliquidated | The Property |
| Unsecured Claims | $17,536,201 | All | Some claims are disputed, contingent or unliquidated | None |

D.    **The Proposed Plan(s) of Reorganization**

12.    The Debtors commenced the Chapter 11 Cases due to their inability to renew, repay, or refinance their existing debt obligations, due to circumstances beyond their control, including the death of Elie Berdugo, the former principal of the Debtors, as well as current market conditions.

13.    Immediately prior to the Petition Date, the Debtors engaged in good faith negotiations with Terra World Investments, LLC ("Terra Investments", and collectively with Terra Landmark, the "Terra Entities"), a Florida limited liability company, regarding the terms of a proposed plan support agreement (as set forth in the Term Sheet and as may be further modified in writing by the parties to the Term Sheet, the "Plan Support Agreement").

14.    Terra Investments is one of South Florida's largest real estate developers, having developed, sold, and closed more than $1 billion in property over the past decade.  One of Terra Investments' most recent projects is The Reserve at Doral, a townhome project with more than 300 units located approximately one-half mile north of the Property.  The units at The Reserve at Doral collectively sold for more than $120 million.

15.    Based upon the negotiations with Terra Investments and in an exercise of the Debtors' fiduciary duty, the Debtors determined that entry into a plan support agreement with Terra Landmark, a to-be-formed Florida limited liability company and future affiliate of Terra Investments, provided the only viable prospect of providing any form of distribution to all claimants, including the holders of over $100 million in unsecured debt.  As a result, the Debtors intend to pursue confirmation of a plan or plans of reorganization (collectively, the "Plan") with Terra Landmark as the plan sponsor.

**E.    The Term Sheet**

16.    The negotiations between Terra Investments and the Debtors have progressed over several months and have culminated in the execution of a plan support agreement term sheet, dated November 15,  2011 (the "Term Sheet"), a copy of which is attached as Exhibit B to this Motion.  The Term Sheet summarizes the principal terms pursuant to which Terra Landmark or any other entity(ies) related to, affiliated with or controlled by Terra Investments shall (i) provide post-petition financing to the Debtors in order to fund certain specified costs of the

administration of the Bankruptcy Case, (ii) acquire 100% of the equity interests of the Debtors, or alternatively direct ownership in and to all of the Property, under the Plan, and (iii) provide a Capital Contribution (defined below) to the Debtors to fund the consummation of the Plan.

17.     The essential terms of the Term Sheet are as follows:[4]

a.  <u>Secured Post-Petition Financing</u>.  In order to provide the Debtors with much needed liquidity, Terra Landmark shall loan the Debtors up to $150,000 on an interim basis, and may advance up to $750,000 on a final basis in unsecured debtor in possession financing (the "<u>DIP Loan</u>") necessary to, *inter alia*, fund the operations of the Debtors prior to the confirmation of the Plan, including the amount of retainers paid to any Court-approved professionals.  The DIP Loan shall have priority over any and all administrative expenses, except that the claim of Terra Landmark on account of the DIP Loan shall be junior and subordinate to a carve out for (i) the fees due the Clerk of the Court; and (ii) the fees due to the United States Trustee;

b.  <u>Limited "Lock-Up" Arrangements</u>.  Subject in all respects to the fiduciary duties of the Debtors as debtors in possession, upon execution of the Term Sheet, the Debtors and their respective officers, directors, members, managers, agents, brokers, representatives, controlling shareholders/investors/partners or affiliates (collectively, "<u>Representatives</u>") shall not solicit or initiate any proposal or discussions for or in connection with, nor advertise or otherwise market to any party

---

[4]     Capitalized terms used in this Motion and not otherwise defined herein shall have the meanings ascribed to such terms in the Term Sheet.  To the extent that the terms in this Motion conflict with the Term Sheet, the Term Sheet shall control.

the opportunity to make, any equity, debt, combined, or other investment in the Debtors (other than debtor in possession financing that may be provided by Terra Landmark in the Bankruptcy Case), or any possible sale of the Debtors or their assets (including the Property and/or any portion or component thereof), no matter how structured or timed, including without limitation (i) sale of all or any significant or controlling part of the membership interests of the Debtors, (ii) sale or license of all or any significant part of the Debtors' assets including, without limitation, any portion of the Property, or (iii) any merger or other business combination involving the Debtors or otherwise (each of the foregoing proposals or discussions, whether written or oral, an "<u>Alternative Transaction</u>"). The Debtors and their Representatives shall immediately notify Terra Landmark in writing of the receipt of (i) any such proposed or attempted Alternative Transaction, (ii) the receipt of any inquiries, proposals or requests for information relating a proposed Alternative Transaction, or (iii) any request for access to the Property or any portion thereof in furtherance of a proposed Alternative Transaction;

c.  <u>Expense Reimbursement</u>. Terra Landmark may reimburse itself for all of its reasonable and necessary expenses (the "<u>Expenses</u>") incurred in connection with the Plan Support Agreement, including, without limitation, all of Plan Funder's reasonable legal fees and related costs, financial advisory fees, consulting fees and related costs and expenses, from advances funded from the DIP Loan, in such amounts and upon such timing as Terra Landmark deems reasonable and necessary during the

9

term of the DIP Loan.  Monthly, Terra Landmark shall furnish notice to the Debtors, the Creditors Committee, and the U.S. Trustee of all Expenses reimbursed to Terra Landmark during the preceding month.

d.  <u>Plan Funding</u>.  Terra Landmark and the Debtors shall jointly propose the Plan, in form and content acceptable to Terra Landmark, in its sole absolute discretion.   Pursuant to and subject to the occurrence of the Effective Date (as defined in the Term Sheet) of the Plan, Terra Landmark shall make, in addition to the DIP Loan described in Section 12a above, a minimum of $5,000,000 and up to a maximum of $20,000,000 of aggregate capital contributions or advances to the reorganized Debtor (the "<u>Capital Contribution</u>"), all as part of a of debt or equity financing required to consummate the Plan, and all as described below.

e.  <u>Equity Transfer</u>.  On the Effective Date, in consideration of the Capital Contribution, Terra Landmark shall receive 100% of the equity in the reorganized Debtor, on a fully diluted basis, free and clear of all liens and encumbrances; and

f.  <u>Milestones</u>.  The Debtors and Terra Landmark agree to, and shall be bound by, the following milestones:

(i)  On or before November 15, 2011, the Debtors shall file and serve via CM/ECF (and by November 16, 2011 via U.S. mail or other express means) the Emergency Motion seeking approval of, *inter alia*, the Term Sheet;

(ii)  On or before November 22, 2011, the Court shall have entered an interim order, in form and substance acceptable to Terra Landmark, granting the Emergency Motion and authorizing the Debtors to obtain secured post-petition financing;

(iii)  On or before December 2, 2011, the Court shall have entered an final order, in form and substance acceptable to Terra Landmark,

granting the Emergency Motion and authorizing the Debtors to obtain secured post-petition financing;

(iv) On or before December 2, 2011, the Debtors shall file a motion to value the Property so as to determine the allowed amount of secured claims asserted against the Property;

(v) On or before December 19, 2011, the Debtors shall file the Plan and Disclosure Statement;

(vi) On or before January 27, 2012, the Bankruptcy Court shall have entered an order approving the Disclosure Statement and setting a hearing to consider confirmation of the Plan;

(vii) On or before February 29, 2012, the Bankruptcy Court shall have entered an order confirming the Plan; and

(viii) The Effective Date of the Plan shall occur on or before March 16, 2012.

g. <u>Default</u>.  The failure to meet any Milestone shall constitute an event of default under the Term Sheet and the DIP Financing thereby entitling Terra, in its sole discretion, to terminate its financing commitments and its support for the Plan, and relieving Terra Landmark of any obligation whatsoever to the Debtors, their estates or their successors and assigns, including any obligation under the Term Sheet (including regarding the funding of the Capital Contribution);

h. <u>Indemnification</u>.  Debtors, jointly and severally, agree to indemnify, save, defend (at Debtors' sole cost and expense) and hold harmless Terra Landmark and the officers, directors, agents, employees, contractors, representatives and attorneys of Terra Landmark (collectively, the "<u>Indemnified Persons</u>"), and the heirs, personal representatives, successors and assigns of each of them from and against the full amount of any and all Losses (as defined in the Term Sheet and described herein), whether

the Indemnified Persons (or any of them) suffer such Losses directly or consequentially.[5]

## RELIEF REQUESTED

18.     By this Motion, the Debtors seek entry of interim and final orders (a) approving the Term Sheet, (b) approving the DIP Loan, (c) approving the reimbursement of Expenses, and (d) granting such other relief as is appropriate under the circumstances.

## BASIS FOR RELIEF

A.     **Approval of Financing Under Bankruptcy Code § 364(c)**

19.     To obtain post-petition financing, § 364(c) requires a finding -- made after notice and hearing -- that a debtor is "unable to obtain unsecured credit allowable under § 503(b)(1) of [the Bankruptcy Code]."  11 U.S.C. § 364(c).

20.     Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion.  If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2).

---

[5]     Pursuant to the Term Sheet, which shall control in the event of any conflict between this Motion and the Term Sheet, "Losses" shall mean any and all liabilities, obligations, losses, damages, penalties, demands, sums, claims, actions, suits, costs, expenses and disbursements (including, but not limited to, all attorneys' and paralegals' fees and all other professional or consultants' expenses incurred in investigating, preparing for, serving as a witness in or defending against any action or proceeding, whether actually commenced or threatened, which may be asserted against any of the Indemnified Persons), arising from, in respect of, as a consequence of, or in connection with, either of the following: (i) the failure of the Debtors to perform or observe fully any covenant, obligation, agreement or provision to be performed or observed by the Debtors pursuant to the Term Sheet or any other agreements executed as part of the Term Sheet; and/or (ii) the Debtors' intentional or negligent misrepresentation of any statement, warranty or representation made (or contemplated to be made) by the Debtors with respect to the Term Sheet.

21.     Section 364(c) financing is appropriate when the debtor in possession is unable to obtain unsecured credit allowable as an ordinary administrative claim.  See *In re Ames Department Stores, Inc.*, 115 B.R. 34, 37-38, 40 (Bankr. S.D.N.Y. 1980).   In determining whether a debtor is entitled to financing under § 364(c), a bankruptcy court may consider the following 3-part test:

> (a)  The debtor is unable to obtain unsecured credit under § 364(b), *i.e.*, by allowing a lender only an administrative claim;
>
> (b)  The credit transaction is necessary to preserve the assets of the estate; and
>
> (c)  The terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*See In re Crouse,* 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987) (listing factors).

22.     The Debtors submit that the requirements of § 364(c) are satisfied because (i) there is no other unsecured credit available to the Debtors in light of their financial condition; (ii) entry into the DIP Loan is necessary to preserve the value of the estates for the benefit of all parties in interest, especially creditors holding general unsecured claims; and (iii) the terms and provisions of the DIP Loan documents are fair and reasonable, given the lack of available collateral for the DIP Loan.  In compliance with Bankruptcy Rule 4001, the Debtors request that the Court schedule a hearing on the Motion to consider entry of an interim order within two business days of the date of filing, and a final hearing on the Motion no earlier than 14 days after the date of filing.

**B.     Business Judgment Standard**

23.     The Term Sheet is the product of good faith negotiations between the Debtors and represents the only viable means of providing a distribution to unsecured creditors.  Bankruptcy Courts generally defer to a debtor-in-possession's business judgment regarding the need for and

13

the proposed use of funds unless that decision is arbitrary and capricious.  *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Curlew Valley Assoc.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).  Courts usually will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis and within the scope of [its] authority under the Bankruptcy Code."  *Id.* (footnotes omitted).

24.     After appropriate investigation and analysis, the Debtors' management concluded that post-petition financing under the terms set forth in the Term Sheet is the only financing alternative available under the circumstances.  Moreover, without the liquidity provided by the post-petition financing, the Debtors would be unable to fund the administrative expenses of this chapter 11 case, as well as other expenses that are essential to preserving the value of their assets.  Without the commencement of the chapter 11 cases and the confirmation of the Plan, the CDD will proceed to a foreclosure judgment and sale, and will obtain title to the Property, thereby foreclosing any distribution to holders of over $100 million of unsecured debt in these cases.

## C.     Unavailability of Alternative Financing

25.     Based on current economic conditions and the current assessed value of the Property, no third-party lender would provide the proposed financing to the Debtors.  Under these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."  *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).  Rather, the Debtors need only demonstrate "by a good faith effort that credit was not available" without the protections of Section 364(c).  *Id.*

26.     Prepetition, the Debtors were unable to obtain adequate financing because the only available collateral, the Property, is subject to prior lien claims in excess of $200 million, and the value of the Property is believe to be substantially less than that amount.  Postpetition, other potential sources of a post-petition credit facility for the Debtors, obtainable on an expedited basis and on reasonable terms, are likewise nonexistent due to the Debtors' current financial condition and capital structure.

**D.     Preservation of Value**

27.     Terra Landmark has agreed to provide the DIP Loan upon the terms and conditions contained in the Term Sheet and summarized herein.  Proceeds from the DIP Loan will be used primarily to fund the operations of the Debtors prior to confirmation, including payment of retainers to Court-approved professionals of the Debtors, thereby preserving the value of the Debtors' estates.

28.     The Debtors' continued viability and the ability to provide some form of distribution to unsecured creditors hinges upon on approval of the DIP Loan.  Absent such approval, the Debtors, their estates, and their creditors will suffer serious and irreparable harm.

**E.     Good Faith Protection Under Bankruptcy Code § 364(e).**

29.     The purpose of the DIP Loan Documents -- to enable the Debtors to operate their business and maintain the value of their estate pending confirmation of the Plan -- is eminently reasonable.  See *In re Sky Valley, Inc.*, 100 B.R. 107, 115 (Bankr. N.D. Ga. 1988) (approving short-term financing under §364(d) that was intended to preserve the value of the debtor's real property and potentially increase the value of the property).  Further, the Debtor submits that the conditions and obligations of the DIP Loan are reasonable, non-controversial, and contain standard terms, covenants, events of default, and other protections that are appropriate in the context of these bankruptcy proceedings. The terms were negotiated in good faith and at arms'

length.  Accordingly, the Debtor requests that the Terra Entities receive the benefits of § 364(e) in connection with any and all of the provisions of the Term Sheet and the DIP Loan.

**F.      Reimbursement of Expenses**

30.      Section 363(b) of the Bankruptcy Code requires a debtor to provide notice of, and an opportunity for a hearing on, any use, sale or lease of estate property not in the ordinary course of its business.  A proposed use, sale or lease of property under § 363(b) of the Bankruptcy Code is appropriate if some "articulated business judgment" exists for the transaction.  *Cont'l Air Lines*, 780 F.2d at 1226; *see also Lionel Corp.*, 722 F.2d at 1071.

31.      Numerous courts have approved a debtor's business judgment pursuant to § 363 in the context of postpetition financing.  *See In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985) (in authorizing interim financing agreement, court noted that "[b]usiness judgments should be left to the board room and not to this Court") (internal citation omitted); *see also Trans World Airlines Inc. v. Travelers Int'l AG (In re Trans World Airlines Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that approval of interim loan, receivables facility, and asset-based facility "reflect[ed] sound and prudent business judgment" and was "reasonable under the circumstances and in the best interest of [the debtor] and its creditors").

32.      The Debtors' request for approval of reimbursement of Expenses in connection with a plan support agreement does not alter the applicable legal standard.  Pursuant to the Term Sheet, the Debtor has agreed not to object to Terra Landmark's assertion of a superpriority administrative expense claim in the Debtors' Chapter 11 Cases.  By this agreement, the Debtors seek to provide Terra Landmark with a means of receiving compensation for the value Terra Landmark will provide in its vital role as plan financier.

**G.      Interim Financing Pending Final Order**

33.      Pursuant to the terms of the Plan Support Agreement, the Debtors request that an

16

interim hearing be held on an expedited basis so that the Debtors may quickly proceed with formulating and preparing the Plan. The proposed interim order will authorize the Debtors to obtain immediate DIP Loans of up to $150,000 in accordance with the budget (the "Budget") attached to the Motion as Exhibit C, prior to a final hearing on this Motion.

34.    The Debtors respectfully request that the Court schedule a final hearing on the Motion no earlier than 14 days after the date of service of the Motion.

## NOTICE

Notice of this Motion has been given in accordance with Bankruptcy Rules 2002, 4001, 6004 and 6006, to all parties on the service list attached to the certificate of service for this Motion. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE the Debtors respectfully request that the Court (i) grant the Motion, (ii) approve the Debtors' entry into the Term Sheet and the DIP Loan, (iii) approve the reimbursement of the Expenses as described herein, (iv) schedule interim and final hearings upon the Motion, and (v) grant such other and further relief as the Court deems appropriate.

Date:  November 15, 2011    Respectfully submitted,

BILZIN    SUMBERG    BAENA    PRICE    &
AXELROD LLP
*Attorneys for Debtors*
1450 Brickell Ave, Suite 2300
Miami, FL 33131
Telephone:  (305) 374-7580
Facsimile:  (305) 375-7593

By: */s/ Mindy A. Mora*
  Mindy A. Mora
  Florida Bar No. 678910
  mmora@bilzin.com
  Tara V. Trevorrow
  Florida Bar No. 30959
  ttrevorrow@bilzin.com

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                          Case No.  11-35884-RAM

Town Center at Doral, LLC, et al.,                              Chapter 11

                        Debtors.                              (Jointly Administered)
_____/

**[PROPOSED] INTERIM ORDER GRANTING DEBTORS' EMERGENCY**
**MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 364**
**AND BANKRUPTCY RULES 2002, 4001, 6004 AND 6006: (I) APPROVING**
**(A) PLAN TERM SHEET AND (B) EXPENSE REIMBURSEMENT;**
**AND (II) AUTHORIZING POSTPETITION FINANCING**

THIS CAUSE came on before the Court on November __, 2011 at _:__ a.m./p.m.

(the "Hearing") on the motion (the "Motion")[1] of the above-captioned debtors and debtors-in-possession (collectively the "Debtors") for entry of an interim order (as set forth herein, the "Interim Order") and a final order (the "Final Order"), (i) approving, pursuant to sections 105(a), 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the term sheet (the "Term Sheet"), by and between the Debtors and Terra Landmark, LLC ("Terra Landmark" or "DIP Lender"), dated November 15, 2011 and attached hereto as Exhibit "A", and (ii) approving reimbursement of expenses incurred by Terra Landmark in furtherance of the Debtors' reorganization efforts; and (iii) authorizing, pursuant to sections 105(a), 364(c) and Bankruptcy Rules 2002 and 4001, the Debtors to obtain postpetition financing (the "Postpetition Financing") in an aggregate principal amount not to exceed $150,000 (plus accrued interest on the aggregate principal amount) from Lender on an interim basis and up to $750,000 on a final basis, upon the terms and conditions set forth in this Interim Order and the Final Order.  Upon consideration of the record and of the arguments of parties in interest, including [_____], and this Court having found good and sufficient cause appearing therefor; the Court finds as follows:

A. **Petition Date**.  On September 19, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under chapter 11 of the Bankruptcy

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

MIAMI 2792658

Code (the "Chapter 11 Cases").  The Debtors continue in possession of their properties as

debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    **Jurisdiction**.  This Court has jurisdiction over the Chapter 11 Cases and

the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion

constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.    **The Property**.    The Debtors are the fee simple owners of land

(approximately 120 contiguous acres) located on the east side of NW 107th Avenue and

the north side of NW 58th Street in Doral, Florida (the "Property").

D.    **The Debtors' Obligations**.    As of the Petition Date, the Debtors'

obligations include[2] (i) ad valorem tax certificates claims in various amounts, each of

which is secured by a statutory lien on the Property, (ii) claims held by Landmark at

Doral Community Development District in the aggregate amount of approximately

$71,500,000 (exclusive of interest, fees and costs), which claims are secured by statutory

liens on the Property; (iii) claims held by AMT CADC Venture, LLC in the aggregate

amount of approximately $103,870,058 (exclusive of interest, fees and costs), which

claims are secured by liens on the Property; and (iv) claims held by unsecured creditors

in the aggregate amount of approximately $17,536,201, as more fully set forth on the

following schedule:

---

[2]        This Order does not constitute an adjudication of the validity, priority, or extent of the
pre-petition liens asserted against the Real Property.  All objections to the liens and claims of the pre-
petition secured creditors are preserved.

MIAMI 2792658

| NAME OF SECURED CREDITOR | AMOUNT OWED (APPROXIMATE PRINCIPAL AMOUNT, EXCLUSIVE OF INTEREST, FEES AND COSTS) | APPLICABLE DEBTOR | WHETHER CLAIM IS DISPUTED, CONTINGENT OR UNLIQUIDATED | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|
| CDD | $71,500,000 | All | | The Property |
| AMT CADC Venture, LLC | $103,870,058 | All | | The Property |
| Sunshine State Cert III, LLLP | $327,691 | Town Center at Doral | Unliquidated | The portion of the Property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $549,758.43 | Town Center at Doral | Unliquidated | The portion of the Property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $139,220 | Landmark at Doral East, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $112,686 | Landmark at Doral East, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $116,675 | Landmark at Doral South, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral South, LLC |
| Hilda Pico/Ocean Bank | $91,336 | Landmark at Doral South, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral South, LLC |
| BTI Bluegate FTCF, LLC | $41,169 | Landmark Club at Doral, LLC | Unliquidated | The portion of the Property owned by Landmark Club at Doral, LLC |
| Hilda Pico/Ocean Bank | $33,325 | Landmark Club at Doral, LLC | Unliquidated | The portion of the Property owned by Landmark Club at Doral, LLC |
| Miami-Dade County (2011 ad valorem taxes) | Unknown | All | Unliquidated | The Property |

| Unsecured Claims | $17,536,201 | All | Some claims are disputed, contingent or unliquidated | None |
|---|---|---|---|---|

E.    **Negotiations**.  Since the Petition Date, the Debtors have been in good faith negotiations with Terra World Investments, LLC ("Terra Investments") regarding the terms of a proposed plan support agreement.

F.    **Term Sheet**.  The Term Sheet, which is incorporated herein by reference, summarizes the principal terms pursuant to which Terra Landmark, an affiliate of Terra Investments, shall (i) provide the Postpetition Financing to the Debtors in order to fund certain specified costs of the administration of the Chapter 11 Cases, (ii) acquire 100% of the equity interests of the Debtors, or alternatively direct ownership in and to all of the Property, under the plan of reorganization (the "Plan"), and (iii) provide a Capital Contribution (as defined in the Motion) to the Debtors to fund the consummation of the Plan.

**Findings Regarding the Postpetition Financing**.

G.    **Necessity of Postpetition Financing**.  The Debtors require the funds described the Term Sheet in order to fund the operations of the Debtors prior to confirmation, including the amount of retainers paid to any Court-approved professionals of the Debtors.

H.    **No Credit Available on More Favorable Terms**.  The Debtors as a group have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors as a group are unable to

obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

I.     **Use of Proceeds of the DIP Loan.**   Proceeds of the Postpetition Financing shall be used, in each case in a manner consistent with the terms and conditions of the Definitive Documents (as defined in the Term Sheet), and in strict compliance with the budget attached hereto as Exhibit B (the "Budget"), and incorporated herein by reference (limited pursuant to this Interim Order to the period from the initial hearing on the Motion through and until the final hearing on the Motion, hereinafter defined as the "Interim Period"), solely to fund the operations of the Debtors prior to confirmation, including the amount of retainers paid to any Court-approved professionals or independent contractors of the Debtors.

J.     **Payment of Postpetition Interest and Expenses**.   The Debtors are authorized to pay, and the DIP Lender is entitled to receive, (i) any and all interest and fees under the Postpetition Financing, and (ii) the costs and expenses of the DIP Lender in connection with the documentation, monitoring and enforcement of this Interim Order, the Final Order, and the Definitive Documents.

K.     **Extension of Financing**.   The DIP Lender has indicated a willingness to provide interim financing to the Debtors in accordance with the Term Sheet and Definitive Documents and subject to (i) the entry of this Interim Order, and (ii) findings by the Court that such financing is essential to the Debtor's estates, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims and other protections granted pursuant to this Interim Order and the Postpetition Financing will not

MIAMI 2792658

be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order, the Final Order, or any other order, as provided in section 364(e) of the Bankruptcy Code.

L.    **Business Judgment and Good Faith Pursuant to Section 364(e).**   The terms and conditions of the Postpetition Financing and the Definitive Documents, and the fees and costs to be paid thereunder, (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration.   The Postpetition Financing and this Interim Order were negotiated in good faith and at arms' length between the Debtors and the DIP Lender. The DIP Lender will be extending the proceeds of the DIP Loan in good faith and for valid business purposes and uses.   Based upon this good faith extension, the DIP Lender is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code.

M.    **Relief Essential; Best Interest**.   The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' integrated assets and real and personal property.   It is in the best interest of Debtors' estates to be allowed to establish the Postpetition Financing contemplated by the Definitive Documents subject to the terms of this Interim Order.

N.    **Entry of Interim Order**.   For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the Motion of the Debtors and the record before this Court with respect to the Motion, and with the consent of the Debtors and the DIP Lender to the form and entry of this Interim Order, and good and sufficient cause appearing, it is:

**ORDERED** that:

1.      The Motion is granted in accordance with and limited to the terms and conditions set forth in this Interim Order and the Definitive Documents.

2.      **Definitive Documents.**

(a)      **Approval of Entry Into Definitive Documents.**  The terms and conditions of the Definitive Documents are hereby approved and incorporated by reference into this Interim Order solely to the extent of $150,000 approved and provided for in this Interim Order.  The DIP Lender shall receive such protections and be entitled to such rights as are set forth in the Definitive Documents, and such rights and protections are hereby approved and incorporated by reference into this Interim Order. The Definitive Documents are hereby approved for performance by the Debtors and DIP Lender during the Interim Period.   The Debtors and all other relevant parties are expressly and immediately authorized and empowered (i) to execute and deliver to DIP Lender the Definitive Documents, (ii) to consummate the transactions described therein and incur and perform on an interim basis the Postpetition Financing in accordance with, and subject to, the terms of this Interim Order and the Definitive Documents, and (iii) to execute and deliver all instruments and documents which reasonably may be required or necessary for the performance by the Debtors under the Postpetition Financing.   The Debtors are hereby authorized to perform all acts, and subject to the provisions of this

Interim Order, pay the principal, interest, fees, expenses, and other amounts described in the Definitive Documents as such become due, including, without limitation, attorneys', financial advisors', and accountants' fees, and disbursements as provided for in the Definitive Documents, which amounts shall not otherwise be subject to approval of this Court; provided, however, that unresolved disputes as to the reasonableness of any professional fees and expenses may be determined by the Court, as provided herein. The Definitive Documents represent valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms.

(b)    **Authorization to Borrow**.  In order to enable them to continue to operate their business during the Interim Period, subject to the terms and conditions of this Interim Order, the Definitive Documents, and the Budget,[3] the Debtors are hereby authorized under the DIP Loan to borrow up to $150,000 during the Interim Period. Notwithstanding any provision of its certificate or articles of incorporation, bylaws, operating agreement, partnership agreement, membership agreement, certificate of formation, certificate of limited partnership, regulations, or comparable governing documents to the contrary, each Debtor is authorized to, and each officer, member, manager, partner, or other comparable authorized signatory of each Debtor is hereby authorized to cause such Debtor to, jointly and severally guarantee the Postpetition Financing of each other Debtor obligated under the Definitive Documents, and pledge, mortgage, and grant security interests in the Designated Accounts (defined herein) to

---

[3]    The Budget shall not be materially amended or modified during the Interim Period absent further order of this Court.

9

secure such Postpetition Financing, and to execute and enter into any and all of the Definitive Documents and all other documents and transactions necessary to implement and effectuate the terms of the Postpetition Financing and the Definitive Documents.

(c) **Advances to Designated Accounts.**  Unless otherwise agreed by the DIP Lender, any advance requested by the Debtors and made by the DIP Lender shall be made to one or more debtor in possession operating accounts designated by the Debtors to the DIP Lender and subject to a control agreement(s) in favor of the DIP Lender in accordance with the DIP Loan Documents (the "Designated Accounts").  The Designated Accounts shall be maintained at an authorized depository consistent with the United States Trustee guidelines.

(d) **Application of DIP Proceeds**.  The proceeds of the Postpetition Financing (net of any amounts used to pay fees, costs, and expenses under the Definitive Documents) shall be used, in each case in a manner consistent with the terms and conditions of the Definitive Documents, and in accordance with the Budget limited pursuant to this Interim Order to the Interim Period as set forth in the Budget for funding the operations of the Debtors prior to confirmation, including the amount of retainers, fees, and expenses paid to any Court-approved professionals or independent contractors of the Debtors, and payment of interest, fees, and costs to the DIP Lender under the Definitive Documents.

(e) **Enforceable Obligations**.  The Definitive Documents shall constitute and evidence the valid and binding obligations of the Debtors, which

obligations shall be enforceable against the Debtors, their estates, and any successors thereto and their creditors, in accordance with their terms.

(f)    **Protection of DIP Lender and Other Rights**.  From and after the Interim Hearing Date, the Debtors shall use the proceeds of the extensions of credit under the Postpetition Financing only for the purposes specifically set forth in the Definitive Documents and this Interim Order and in strict compliance with the Budget.

(g)    **Superpriority Administrative Claim Status**.  Except with respect to the Carve-Out (defined herein), during the Interim Period, all Postpetition Financing shall be an allowed superpriority administrative expense claim (the "DIP Superpriority Claim," the "DIP Protections") with priority in the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code.  Except as otherwise provided pursuant to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code or otherwise, that have been or may be incurred in these proceedings, or in any successor case by conversion of any of the Chapter 11 Cases into a chapter 7 bankruptcy case (each, a "Successor Case"), and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Protections or the Postpetition Financing, or with any other claims of the DIP Lender arising hereunder.

3.    **Authorization to Use Proceeds of Definitive Documents**.  Pursuant to the terms and conditions of this Interim Order, the Postpetition Financing and the Definitive Documents, and in accordance with the Budget, the Debtors are authorized to use the advances under the Definitive Documents during the period commencing

11

immediately after the entry of this Interim Order and terminating upon the earlier of (i) an Event of a Default under this Interim Order or the Definitive Documents for which applicable notice has been given under this Interim Order or the Definitive Documents, as applicable, and the expiration of any applicable cure period without cure thereof, or (ii) the date of the Final Hearing (as defined below).  The Debtors are only authorized to make or incur any expenditure in accordance with the Budget and this Interim Order, absent further order of this Court.

4.    **The Carve Out.**  Notwithstanding any court approval of the DIP Lender's right to assert a superpriority claim, as set forth in the Term Sheet, the DIP Lender's right to payment shall at all times be junior and subject to fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under Section 1930(a), Title 28, United States Code.

5.    **Maturity Date**.  All Postpetition Financing of the Debtors owed to the DIP Lender shall be immediately due and payable, and authority to use the proceeds of the Definitive Documents shall cease on the earlier of (a) April 1, 2012, (b) the effective date of the Plan, or (c) the date upon which a final order is entered by the Bankruptcy Court either (i) converting the Debtors' Chapter 11 case to a case under Chapter 7 (unless expressly agreed to by DIP Lender), (ii) approving one or more sales of all or substantially all of the Debtors' assets pursuant to § 363 of the Bankruptcy Code, (iii) appointing a trustee or examiner (with or without expanded powers) in the Debtors' Chapter 11 Cases, (iv) dismissal of any of the Debtors' bankruptcy cases (unless expressly agreed to by DIP Lender) (the "Maturity Date").

12

6.      **Payment of Compensation**.    Nothing in this Interim Order shall be construed as consent to the allowance of, or as an agreed obligation of the DIP Lender to pay, any professional fees or expenses of the Debtors,[4] any Committee or of any person or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget.  The DIP Lender reserves the right to object to any request or application for the payment of professional fees that may be submitted or filed in the Chapter 11 Cases.

7.      **Payment of Postpetition Interest and Expenses**.    The Debtors are authorized to pay, and the DIP Lender is entitled to receive, (a) any and all interest, payable upon the Maturity Date except as otherwise provided in this Interim Order, and fees under the DIP Loan, and (b) the costs and expenses of the DIP Lender in connection with the Chapter 11 Cases.

8.      **Events of Default**.

(a)      The occurrence of any of the following events shall constitute an "Event of Default" under this Interim Order:

(i)      the entry by the Bankruptcy Court or another court of competent jurisdiction of an order disallowing any of the Postpetition Financing obligations or determining that any provision of the Definitive Documents is not enforceable according to its terms;

---

[4]      Certain professional fees, independent contractor fees, and expenses of such parties being incurred by the Debtor have been guaranteed by Terra Investments pursuant to a separate letter agreement. Nothing in this Interim Order or the Final Order shall modify, alter, or amend this guarantee or any other guarantee by the DIP Lender or any of its affiliates of the retainer, fees, and expenses of the Debtor's professionals and independent contractors.

13

(ii)      the expiration or termination of the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization under section 1121 of the Bankruptcy Code without the solicitation and filing of acceptances thereof; and

(iii)      the occurrence of an Event of Default under the Definitive Documents (and the expiration of any period of cure, grace or notice, if any, set forth in such agreement relating to such default).

(b)      Unless and until the Postpetition Financing is irrevocably repaid in full, and all Postpetition Financing obligations that survive termination obligations have been cash collateralized to the reasonable satisfaction of the DIP Lender, the protections afforded to the DIP Lender pursuant to this Interim Order and under the Definitive Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting any of the Chapter 11 Cases into a Successor Case, or dismissing any of the Chapter 11 Cases, and the DIP Liens and DIP Super-Priority Claim shall continue in these proceedings and in any Successor Case, DIP Super-Priority Claim shall maintain their priority as provided by this Interim Order.

9.      **Rights and Remedies Upon Event of Default**.

(a)      The DIP Lender shall not have any obligation to make any further loans or advances to the Debtors under the Definitive Documents following the occurrence of an Event of Default.

(b)      Nothing included herein shall prejudice, impair, or otherwise affect the rights of the DIP Lender during an enforcement action to seek any other or supplemental relief in respect of the Debtors, nor shall it impair the DIP Lender's rights,

14

as provided in the DIP Loan Documents, to suspend or terminate the making of loans or advances under the DIP Loan Documents following the occurrence of an Event of Default.

      10.    **Other Rights and Obligations**.

      (1)    **Good Faith Under Section 364(e) of the Bankruptcy Code.  No Modification or Stay of this Interim Order**.  The DIP Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Loan contemplated by this Interim Order, in the event any of the provisions of this Interim Order are hereafter modified, stayed, amended, or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, stay, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment, or vacation, any claim or lien granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to the DIP Superpriority Claim.  Because the DIP Loan made pursuant to the Definitive Documents is made in reliance on this Interim Order, the obligations owed to the DIP Lender prior to the

MIAMI 2792658

effective date of any stay, modification, or vacation of this Interim Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated, lose their superpriority administrative expense claim status, or be deprived of the benefit of the status of the claims granted to the DIP Lender under this Interim Order and/or the Definitive Documents.

(2)    **Expenses**.    Terra Landmark may reimburse itself for all of its reasonable and necessary expenses (the "Expenses") incurred in connection with the Term Sheet and Plan Support Agreement (as defined in the Motion), including, without limitation, all of Terra Landmark's reasonable legal fees and related costs, financial advisory fees, consulting fees and related costs and expenses, from advances funded from the DIP Loan, in such amounts and upon such timing as Terra Landmark deems reasonable and necessary during the term of the DIP Loan.    Monthly, Terra Landmark shall furnish notice to the Debtors, the Creditors Committee, and the U.S. Trustee of all Expenses reimbursed to Terra Landmark during the preceding month.

(3)    **Modification of Stay**.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the extent necessary to implement the Definitive Documents and this Interim Order.    The DIP Lender is authorized to retain and apply payments hereunder in accordance with the provisions of this Interim Order.

(4)    **Proofs of Claim.**

The DIP Lender may, but is not required to, file proofs of claim in the Chapter 11 Cases or any Successor Case; provided however, that nothing in this Interim Order shall

16

is intended to modify or change the requirements under the Bankruptcy Code for the filing of a proof of claim in a chapter 7 bankruptcy proceeding.

(5)    **Binding Effect**.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) whether in the Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 Case.

(6)    **No Waiver**.    The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under the Definitive Documents, the Postpetition Financing, this Interim Order, or otherwise, as applicable, shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute an express or implicit waiver of, or otherwise impair, the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, (i) the rights of the DIP Lender to (a) request conversion of any of the Chapter 11 Cases to a case under Chapter 7, dismissal of any of the Chapter 11 Cases, or request the appointment of a trustee in any of the Chapter 11 Cases, or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (ii) enforce any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender.

17

(7)    <u>**No Third-Party Rights**</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(8)    <u>**Limited Lock-Up**</u>.  Subject in all respects to the fiduciary duties of the Debtors as debtors in possession, upon execution of this Term Sheet, the Debtors and their respective officers, directors, members, managers, agents, brokers,  representatives, controlling shareholders/investors/partners or affiliates (collectively, "<u>Representatives</u>") shall not solicit or initiate any proposal or discussions for or in connection with, nor advertise or otherwise market to any party the opportunity to make, any equity, debt, combined, or other investment in the Debtors (other than debtor in possession financing that may be provided by Terra Landmark in the Bankruptcy Case), or any possible sale of the Debtors or their assets (including the Property and/or any portion or component thereof), no matter how structured or timed, including without limitation (i) sale of all or any significant or controlling part of the membership interests of the Debtors, (ii) sale or license of all or any significant part of the Debtors' assets including, without limitation, any portion of the Property, or (iii) any merger or other business combination involving the Debtors or otherwise (each of the foregoing proposals or discussions, whether written or oral, an "<u>Alternative Transaction</u>"). The Debtors and their Representatives shall immediately notify Terra Landmark in writing of the receipt of (i) any such proposed or attempted Alternative Transaction, (ii) the receipt of any inquiries, proposals or requests for information relating a proposed Alternative Transaction, or (iii) any request for access

MIAMI 2792658

to the Property or any portion thereof in furtherance of a proposed Alternative Transaction.

(9) **Milestones**.  The Debtors shall be bound by the following Milestones:

      a. On or before November 15, 2011, the Debtors shall file and serve via CM/ECF (and by November 16, 2011 via U.S. mail or by express means) the Emergency Motion seeking approval of, *inter alia*, this Term Sheet;

      b. On or before November 22, 2011, the Court shall have entered an interim order, in form and substance acceptable to Terra Landmark, granting the Emergency Motion and authorizing the Debtors to obtain secured post-petition financing;

      c. On or before December 2, 2011, the Court shall have entered an final order, in form and substance acceptable to Terra Landmark, granting the Emergency Motion and authorizing the Debtors to obtain secured post-petition financing;

      d. On or before December 2, 2011, the Debtors shall file a motion to value the Property so as to determine the allowed amount of secured claims asserted against the Property;

      e. On or before December 19, 2011, the Debtors shall file the Plan and Disclosure Statement;

      f. On or before January 27, 2012, the Bankruptcy Court shall have entered an order approving the Disclosure Statement and setting a hearing to consider confirmation of the Plan;

      g. On or before February 29, 2012, the Bankruptcy Court shall have entered an order confirming the Plan; and

      h. The Effective Date of the Plan shall occur on or before March 16, 2012.

(10) **Milestone Default**.  The failure to meet any Milestone shall constitute an event of default under this Term Sheet and the DIP Financing thereby

19

entitling Terra, in its sole discretion, to terminate its financing commitments and its support for the Plan, and relieving Terra Landmark of any obligation whatsoever to the Debtors, their estates or their successors and assigns, including any obligation under this Term Sheet (including regarding the funding of the Capital Contribution);

(11)    **Amendment**.  The Debtors and the DIP Lender may amend or waive any provision of the Definitive Documents, provided that such amendment or waiver, in the judgment of the Debtors and the DIP Lender, is either non-prejudicial to the rights of third parties or is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf of the Debtors and the DIP Lender (after having obtained the approval of the DIP Lender as provided in the Definitive Loan Documents) and approved by the Court.

(12)    **Survival of Interim Order, Expiration of the Interim Order**. The provisions of this Interim Order (including without limitation, the DIP Protections) and any actions taken pursuant hereto shall be effective on the entry hereof ("Effective Date") and shall survive entry of any order which may be entered (i) confirming any Plan in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  The terms and provisions of this Interim Order, including the DIP Protections granted pursuant to this Interim Order, and the Definitive

Documents, shall continue in full force and effect.  Notwithstanding the entry of such

order, such DIP Protections shall maintain their priority as provided by this Interim Order

until all the obligations of the Debtors to the DIP Lender pursuant to the Definitive

Documents pursuant to this Interim Order have been indefeasibly paid in full and

discharged (such payment being without prejudice to any terms or provisions contained

in the Postpetition Financing or this Interim Order which survive such discharge by their

terms).  The Postpetition Financing obligations shall not be discharged by the entry of an

order confirming any Plan, as the Debtors have waived such discharge pursuant to section

1141(d)(4) of the Bankruptcy Code.  Except as may otherwise be agreed to by the DIP

Lender, the Debtors shall not propose or support any Plan that is not conditioned upon the

payment in full in cash of all of the Postpetition Financing obligations, unless consented

to by the DIP Lender, on or prior to the earlier to occur of (i) the effective date of any

such Plan, and (ii) the Maturity Date.  If an order dismissing any of the Chapter 11 Cases

under Bankruptcy Code section 1112 or otherwise is at any time entered, such order shall

provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the DIP

Superpriority Claim shall continue in full force and effect and shall maintain its priority

as provided in this Interim Order and Definitive Documents until all Postpetition

Financing Obligations shall have been indefeasibly paid in cash in full (or, with respect to

the Postpetition Financing, otherwise satisfied in a manner agreed to by the DIP Lender),

and such DIP Superpriority Claim, shall remain binding on all parties in interest)

notwithstanding such dismissal,    and (ii) this Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the claims referred to in (i)

above.  For the avoidance of doubt, this provision shall not apply to any bankruptcy case filed by one or more of the Debtors in the future after the closing of these Chapter 11 Cases or a related chapter 7 case.

**(13)   Inconsistency**.  In the event of any inconsistency between the terms and conditions of the Definitive Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

**(14)   Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon execution and entry on the docket hereof.

**(15)   Objections Overruled**.  All objections to the entry of this Interim Order are overruled.  All objections to the entry of a Final Order in respect of the Motion to the extent not withdrawn or resolved, are hereby continued and preserved to the Final Hearing.

**(16)   No Waivers or Modification of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Lender and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

11.   **Final or Further Interim Hearing**.

A Final Hearing to consider entry of the Final Order and final approval of the Postpetition Financing is scheduled before the Honorable Robert A. Mark, U.S. Bankruptcy Judge, in Courtroom 1406, United States Bankruptcy Court, 51 SW 1st

MIAMI 2792658

Avenue, Miami, Florida at __:_0 _.m. (Eastern Time) on the _____ day of December, 2011.

Any party in interest objecting to the entry of a proposed Final shall file written objections with the Clerk of the Court no later than 5:00 pm on December __, 2011, (**"<u>Objection Deadline</u>"**) which objections shall be served so that the same are received on or before the Objection Deadline by: (a) counsel for the Debtors,  Mindy Mora, Bilzin Sumberg Baena Price & Axelrod, LLP, mmora@bilzin.com,   (b) counsel for the DIP Lender, Jordi Guso, Berger Singerman P.A, jguso @bergersingerman.com (c) counsel for Creditors Committee, Glenn Moses, Genovese Joblove & Battista, gmoses@gjb-law.com, and (d)   Steven Schneiderman, Office of the U.S. Trustee, steven.d.schneiderman@usdoj.gov.

 Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Interim Order, subject to the protections under section 364(e) of the Bankruptcy Code and the rights of the DIP Lender to terminate the Definitive Documents if such Final Order is not acceptable to it.  In the event this Court modifies any of the provisions of this Interim Order or the Definitive Documents following such Final Hearing, such modifications shall not affect the rights and priorities of the DIP Lender pursuant to this Interim Order, and any portion of the Postpetition Financing obligations which arise or is incurred, advanced or paid prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect.

MIAMI 2792658

12.    **No Consolidation.**  Nothing in this Order shall constitute or be deemed to constitute a substantive consolidation of the bankruptcy estates of the Debtors.

13.    **Effective on Entry.**  This Interim Order shall be effective immediately upon entry.

# # #

Submitted by:
Mindy A. Mora, Esq.
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Ave., Suite 2300
Miami, FL 33131
Tel. (305) 374-7580
Fax (305) 375-7593
mmora@bilzin.com

Copy furnished to:
Mindy A. Mora, Esq.
*(Attorney Mora is directed to serve a copy of this Order upon all interested parties upon receipt and file a Certificate of Service.)*

24

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                                    Case No.  11-35884-RAM

Town Center at Doral, LLC, et al.,                          Chapter 11

                        Debtors.                                     (Jointly Administered)
_____/

**[PROPOSED] FINAL ORDER GRANTING DEBTORS' EMERGENCY MOTION**
**FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 364 AND**
**BANKRUPTCY RULES 2002, 4001, 6004 AND 6006: (I) APPROVING**
**(A) PLAN TERM SHEET AND (B) EXPENSE REIMBURSEMENT;**
**AND (II) AUTHORIZING POSTPETITION FINANCING**

THIS CAUSE came on before the Court on December __, 2011 at _:__ a.m./p.m.

(the "Hearing") on the motion (the "Motion")[1] of the above-captioned debtors and debtors-in-possession (collectively the "Debtors") for entry of an interim order (the "Interim Order") and a final order (as set forth herein, the "Final Order"), (i) approving, pursuant to sections 105(a), 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the term sheet (the "Term Sheet"), by and between the Debtors and Terra Landmark, LLC ("Terra Landmark" or "DIP Lender"), dated November __, 2011 and attached hereto as Exhibit "A", and (ii) approving reimbursement of expenses incurred by Terra Landmark in furtherance of the Debtors' reorganization efforts; and (iii) authorizing, pursuant to sections 105(a), 364(c) and Bankruptcy Rules 2002 and 4001, the Debtors to obtain postpetition financing (the "Postpetition Financing") in an aggregate principal amount not to exceed $150,000 (plus accrued interest on the aggregate principal amount) from Lender on an interim basis and up to $750,000 on a final basis, upon the terms and conditions set forth in the Interim Order and this Final Order. Upon consideration of the record and of the arguments of parties in interest, including [_____], and this Court having found good and sufficient cause appearing therefor; the Court finds as follows:

A. **Petition Date**. On September 19, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under chapter 11 of the Bankruptcy

---

[1]       Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

Code (the "Chapter 11 Cases").  The Debtors continue in possession of their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.  **Jurisdiction**.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.  **The Property**.  The Debtors are the fee simple owners of land (approximately 120 contiguous acres) located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida (the "Property").

D.  **The Debtors' Obligations**.  As of the Petition Date, the Debtors' obligations include[2] (i) ad valorem tax certificates claims in various amounts, each of which is secured by a statutory lien on the Property, (ii) claims held by Landmark at Doral Community Development District in the aggregate amount of approximately $71,500,000 (exclusive of interest, fees and costs), which claims are secured by statutory liens on the Property; (iii) claims held by AMT CADC Venture, LLC in the aggregate amount of approximately $103,870,058 (exclusive of interest, fees and costs), which claims are secured by liens on the Property; and (iv) claims held by unsecured creditors in the aggregate amount of approximately $17,536,201, as more fully set forth on the following schedule:

---

[2]    This Order does not constitute an adjudication of the validity, priority, or extent of the pre-petition liens asserted against the Real Property.  All objections to the liens and claims of the pre-petition secured creditors are preserved.

| NAME OF SECURED CREDITOR | AMOUNT OWED (APPROXIMATE PRINCIPAL AMOUNT, EXCLUSIVE OF INTEREST, FEES AND COSTS) | APPLICABLE DEBTOR | WHETHER CLAIM IS DISPUTED, CONTINGENT OR UNLIQUIDATED | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|
| CDD | $71,500,000 | All | | The Property |
| AMT CADC Venture, LLC | $103,870,058 | All | | The Property |
| Sunshine State Cert III, LLLP | $327,691 | Town Center at Doral | Unliquidated | The portion of the Property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $549,758.43 | Town Center at Doral | Unliquidated | The portion of the Property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $139,220 | Landmark at Doral East, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $112,686 | Landmark at Doral East, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $116,675 | Landmark at Doral South, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral South, LLC |
| Hilda Pico/Ocean Bank | $91,336 | Landmark at Doral South, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral South, LLC |
| BTI Bluegate FTCF, LLC | $41,169 | Landmark Club at Doral, LLC | Unliquidated | The portion of the Property owned by Landmark Club at Doral, LLC |
| Hilda Pico/Ocean Bank | $33,325 | Landmark Club at Doral, LLC | Unliquidated | The portion of the Property owned by Landmark Club at Doral, LLC |
| Miami-Dade County (2011 ad valorem taxes) | Unknown | All | Unliquidated | The Property |

MIAMI 2805010.1 7945135741

| Unsecured Claims | $17,536,201 | All | Some claims are disputed, contingent or unliquidated | None |
| --- | --- | --- | --- | --- |

E.      **Negotiations**.  Since the Petition Date, the Debtors have been in good faith negotiations with Terra World Investments, LLC ("Terra Investments") regarding the terms of a proposed plan support agreement.

F.      **Term Sheet**.  The Term Sheet, which is incorporated herein by reference, summarizes the principal terms pursuant to which Terra Landmark, an affiliate of Terra Investments, shall (i) provide the Postpetition Financing to the Debtors in order to fund certain specified costs of the administration of the Chapter 11 Cases, (ii) acquire 100% of the equity interests of the Debtors, or alternatively direct ownership in and to all of the Property, under the plan of reorganization (the "Plan"), and (iii) provide a Capital Contribution (as defined in the Motion) to the Debtors to fund the consummation of the Plan.

**Findings Regarding the Postpetition Financing**.

G.      **Necessity of Postpetition Financing**.  The Debtors require the funds described the Term Sheet in order to fund the operations of the Debtors prior to confirmation, including the amount of retainers paid to any Court-approved professionals of the Debtors.

H.      **No Credit Available on More Favorable Terms**.  The Debtors as a group have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors as a group are unable to

obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

I.        **Use of Proceeds of the DIP Loan.**    Proceeds of the Postpetition Financing shall be used, in each case in a manner consistent with the terms and conditions of the Definitive Documents (as defined in the Term Sheet), and in strict compliance with the budget attached hereto as Exhibit B (the "Budget"), and incorporated herein by reference (the period from the initial hearing on the Motion through and until February 29, 2012, hereinafter defined as the "Budget Period"), solely to fund the operations of the Debtors prior to confirmation, including the amount of retainers paid to any Court-approved professionals or independent contractors of the Debtors.

J.        **Payment of Postpetition Interest and Expenses**.    The Debtors are authorized to pay, and the DIP Lender is entitled to receive, (i) any and all interest and fees under the Postpetition Financing, and (ii) the costs and expenses of the DIP Lender in connection with the documentation, monitoring and enforcement of this Final Order and the Definitive Documents.

K.        **Extension of Financing**.    The DIP Lender has indicated a willingness to provide postpetition financing to the Debtors in accordance with the Term Sheet and Definitive Documents and subject to (i) the entry of the Interim Order and this Final Order, and (ii) findings by the Court that such financing is essential to the Debtor's estates, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims and other protections granted pursuant to the Interim and Final Orders and the Postpetition Financing will not be affected by any subsequent reversal,

6

modification, vacatur, or amendment of the Interim Order, this Final Order, or any other order, as provided in section 364(e) of the Bankruptcy Code.

L.    **Business Judgment and Good Faith Pursuant to Section 364(e).**  The terms and conditions of the Postpetition Financing and the Definitive Documents, and the fees and costs to be paid thereunder, (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration.  The Postpetition Financing, the Interim Order, and this Final Order were negotiated in good faith and at arms' length between the Debtors and the DIP Lender.  The DIP Lender will be extending the proceeds of the DIP Loan in good faith and for valid business purposes and uses.  Based upon this good faith extension, the DIP Lender is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code.

M.    **Relief Essential; Best Interest**.  The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' integrated assets and real and personal property.  It is in the best interest of Debtors' estates to be allowed to establish the Postpetition Financing contemplated by the Definitive Documents subject to the terms of the Interim Order and this Final Order.

N.    **Entry of Final Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the Motion of the Debtors and the record before this Court with respect to the Motion, and with the consent of the Debtors and the DIP Lender to the form and entry of this Final Order, and good and sufficient cause appearing, it is:

**ORDERED** that:

1.    The Motion is granted in accordance with and limited to the terms and conditions set forth in the Interim Order, this Final Order, and the Definitive Documents.

2.    **Definitive Documents.**

(a)    **Approval of Entry Into Definitive Documents.**  The terms and conditions of the Definitive Documents are hereby approved and incorporated by reference into this Final Order.  The DIP Lender shall receive such protections and be entitled to such rights as are set forth in the Definitive Documents, and such rights and protections are hereby approved and incorporated by reference into this Final Order.  The Definitive Documents are hereby approved for performance by the Debtors and DIP Lender during the Budget Period.   The Debtors and all other relevant parties are expressly and immediately authorized and empowered (i) to execute and deliver to DIP Lender the Definitive Documents, (ii) to consummate the transactions described therein and incur and perform on a final basis the Postpetition Financing in accordance with, and subject to, the terms of this Final Order and the Definitive Documents, and (iii) to execute and deliver all instruments and documents which reasonably may be required or necessary for the performance by the Debtors under the Postpetition Financing.   The Debtors are hereby authorized to perform all acts, and subject to the provisions of this Final Order, pay the principal, interest, fees, expenses, and other amounts described in the

8

Definitive Documents as such become due, including, without limitation, attorneys', financial advisors', and accountants' fees, and disbursements as provided for in the Definitive Documents, which amounts shall not otherwise be subject to approval of this Court; provided, however, that unresolved disputes as to the reasonableness of any professional fees and expenses may be determined by the Court, as provided herein.  The Definitive Documents represent valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms.

      **(b)**    <u>**Authorization to Borrow**</u>.  In order to enable them to continue to operate their business during the Budget Period, subject to the terms and conditions of this Final Order, the Definitive Documents, and the Budget,[3] the Debtors are hereby authorized under the DIP Loan to borrow up to $750,000 during the Budget Period.  Notwithstanding any provision of its certificate or articles of incorporation, bylaws, operating agreement, partnership agreement, membership agreement, certificate of formation, certificate of limited partnership, regulations, or comparable governing documents to the contrary, each Debtor is authorized to, and each officer, member, manager, partner, or other comparable authorized signatory of each Debtor is hereby authorized to cause such Debtor to, jointly and severally guarantee the Postpetition Financing of each other Debtor obligated under the Definitive Documents, and pledge, mortgage, and grant security interests in the Designated Accounts (defined herein) to secure such Postpetition Financing, and to execute and enter into any and all of the

---

[3]      The Budget shall not be materially amended or modified during the Interim Period absent further order of this Court.

Definitive Documents and all other documents and transactions necessary to implement and effectuate the terms of the Postpetition Financing and the Definitive Documents.

(c) **Advances to Designated Accounts.** Unless otherwise agreed by the DIP Lender, any advance requested by the Debtors and made by the DIP Lender shall be made to one or more debtor in possession operating accounts designated by the Debtors to the DIP Lender and subject to a control agreement(s) in favor of the DIP Lender in accordance with the DIP Loan Documents (the "Designated Accounts"). The Designated Accounts shall be maintained at an authorized depository consistent with the United States Trustee guidelines.

(d) **Application of DIP Proceeds**. The proceeds of the Postpetition Financing (net of any amounts used to pay fees, costs, and expenses under the Definitive Documents) shall be used, in each case in a manner consistent with the terms and conditions of the Definitive Documents, and as set forth in the Budget for funding the operations of the Debtors prior to confirmation, including the amount of retainers, fees, and expenses paid to any Court-approved professionals or independent contractors of the Debtors, and payment of interest, fees, and costs to the DIP Lender under the Definitive Documents.

(e) **Enforceable Obligations**. The Definitive Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates, and any successors thereto and their creditors, in accordance with their terms.

10

(f)    **Protection of DIP Lender and Other Rights**.  From and after the Final Hearing Date, the Debtors shall use the proceeds of the extensions of credit under the Postpetition Financing only for the purposes specifically set forth in the Definitive Documents and this Final Order and in strict compliance with the Budget.

(g)    **Superpriority Administrative Claim Status**.  Except with respect to the Carve-Out (defined herein), during the Budget Period, all Postpetition Financing shall be an allowed superpriority administrative expense claim (the "DIP Superpriority Claim," the "DIP Protections") with priority in the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code.  Except as otherwise provided pursuant to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code or otherwise, that have been or may be incurred in these proceedings, or in any successor case by conversion of any of the Chapter 11 Cases into a chapter 7 bankruptcy case (each, a "Successor Case"), and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Protections or the Postpetition Financing, or with any other claims of the DIP Lender arising hereunder.

3.    **Authorization to Use Proceeds of Definitive Documents**.  Pursuant to the terms and conditions of this Final Order, the Postpetition Financing and the Definitive Documents, and in accordance with the Budget, the Debtors are authorized to use the advances under the Definitive Documents during the period commencing immediately after the entry of this Final Order and terminating upon the earlier of (i) an Event of a Default under this Final Order or the Definitive Documents for which applicable notice

11

has been given under this Final Order or the Definitive Documents, as applicable, and the expiration of any applicable cure period without cure thereof, or (ii) the date of the Final Hearing (as defined below).  The Debtors are only authorized to make or incur any expenditure in accordance with the Budget and this Final Order, absent further order of this Court.

4.    **The Carve Out.**  Notwithstanding any court approval of the DIP Lender's right to assert a superpriority claim, as set forth in the Term Sheet, the DIP Lender's right to payment shall at all times be junior and subject to fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under Section 1930(a), Title 28, United States Code.

5.    **Maturity Date**.  All Postpetition Financing of the Debtors owed to the DIP Lender shall be immediately due and payable, and authority to use the proceeds of the Definitive Documents shall cease on the earlier of (a) April 1, 2012, (b) the effective date of the Plan, or (c) the date upon which a final order is entered by the Bankruptcy Court either (i) converting the Debtors' Chapter 11 case to a case under Chapter 7 (unless expressly agreed to by DIP Lender), (ii) approving one or more sales of all or substantially all of the Debtors' assets pursuant to § 363 of the Bankruptcy Code, (iii) appointing a trustee or examiner (with or without expanded powers) in the Debtors' Chapter 11 Cases, (iv) dismissal of any of the Debtors' bankruptcy cases (unless expressly agreed to by DIP Lender) (the "Maturity Date").

6.    **Payment of Compensation**.  Nothing in this Final Order shall be construed as consent to the allowance of, or as an agreed obligation of the DIP Lender to

12

pay, any professional fees or expenses of the Debtors,[4] any Committee or of any person

or shall affect the right of the DIP Lender to object to the allowance and payment of such

fees and expenses or to permit the Debtors to pay any such amounts not set forth in the

Budget.  The DIP Lender reserves the right to object to any request or application for the

payment of professional fees that may be submitted or filed in the Chapter 11 Cases.

7.    **Payment of Postpetition Interest and Expenses**.  The Debtors are

authorized to pay, and the DIP Lender is entitled to receive, (a) any and all interest,

payable upon the Maturity Date except as otherwise provided in this Final Order, and

fees under the DIP Loan, and (b) the costs and expenses of the DIP Lender in connection

with the Chapter 11 Cases.

8.    **Events of Default**.

(a)    The occurrence of any of the following events shall constitute an

"Event of Default" under this Final Order:

(i)    the entry by the Bankruptcy Court or another court of

competent jurisdiction of an order disallowing any of the Postpetition Financing

obligations or determining that any provision of the Definitive Documents is not

enforceable according to its terms;

---

[4]    Certain professional fees, independent contractor fees, and expenses of such parties being incurred by the Debtor have been guaranteed by Terra Investments pursuant to a separate letter agreement. Nothing in the Interim Order or this Final Order shall modify, alter, or amend this guarantee or any other guarantee by the DIP Lender or any of its affiliates of the retainer, fees, and expenses of the Debtor's professionals and independent contractors.

(ii)      the expiration or termination of the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization under section 1121 of the Bankruptcy Code without the solicitation and filing of acceptances thereof; and

(iii)      the occurrence of an Event of Default under the Definitive Documents (and the expiration of any period of cure, grace or notice, if any, set forth in such agreement relating to such default).

(b)      Unless and until the Postpetition Financing is irrevocably repaid in full, and all Postpetition Financing obligations that survive termination obligations have been cash collateralized to the reasonable satisfaction of the DIP Lender, the protections afforded to the DIP Lender pursuant to this Final Order and under the Definitive Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting any of the Chapter 11 Cases into a Successor Case, or dismissing any of the Chapter 11 Cases, and the DIP Liens and DIP Super-Priority Claim shall continue in these proceedings and in any Successor Case, DIP Super-Priority Claim shall maintain their priority as provided by this Final Order.

9.      **Rights and Remedies Upon Event of Default**.

(a)      The DIP Lender shall not have any obligation to make any further loans or advances to the Debtors under the Definitive Documents following the occurrence of an Event of Default.

(b)      Nothing included herein shall prejudice, impair, or otherwise affect the rights of the DIP Lender during an enforcement action to seek any other or supplemental relief in respect of the Debtors, nor shall it impair the DIP Lender's rights,

14

as provided in the DIP Loan Documents, to suspend or terminate the making of loans or advances under the DIP Loan Documents following the occurrence of an Event of Default.

      10.    **Other Rights and Obligations**.

      **(1)**    **Good Faith Under Section 364(e) of the Bankruptcy Code.  No Modification or Stay of this Final Order**.  The DIP Lender has acted in good faith in connection with this Final Order and its reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Loan contemplated by this Final Order, in the event any of the provisions of this Final Order are hereafter modified, stayed, amended, or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, stay, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment, or vacation, any claim or lien granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to the DIP Superpriority Claim.  Because the DIP Loan made pursuant to the Definitive Documents is made in reliance on this Final Order, the obligations owed to the DIP Lender prior to the effective

MIAMI 2805010.1 7945135741

date of any stay, modification, or vacation of this Final Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated, lose their superpriority administrative expense claim status, or be deprived of the benefit of the status of the claims granted to the DIP Lender under this Final Order and/or the Definitive Documents.

(2)    **Expenses**.    Terra Landmark may reimburse itself for all of its reasonable and necessary expenses (the "Expenses") incurred in connection with the Term Sheet and Plan Support Agreement (as defined in the Motion), including, without limitation, all of Terra Landmark's reasonable legal fees and related costs, financial advisory fees, consulting fees and related costs and expenses, from advances funded from the DIP Loan, in such amounts and upon such timing as Terra Landmark deems reasonable and necessary during the term of the DIP Loan. Monthly, Terra Landmark shall furnish notice to the Debtors, the Creditors Committee, and the U.S. Trustee of all Expenses reimbursed to Terra Landmark during the preceding month.

(3)    **Modification of Stay**.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the extent necessary to implement the Definitive Documents and this Final Order. The DIP Lender is authorized to retain and apply payments hereunder in accordance with the provisions of this Final Order.

(4)    **Proofs of Claim.**

The DIP Lender may, but is not required to, file proofs of claim in the Chapter 11 Cases or any Successor Case; provided however, that nothing in this Final Order shall is

16

intended to modify or change the requirements under the Bankruptcy Code for the filing of a proof of claim in a chapter 7 bankruptcy proceeding.

         **(5)**     **<u>Binding Effect</u>**.   The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) whether in the Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 Case.

         **(6)**     **<u>No Waiver</u>**.   The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under the Definitive Documents, the Postpetition Financing, this Final Order, or otherwise, as applicable, shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute an express or implicit waiver of, or otherwise impair, the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, (i) the rights of the DIP Lender to (a) request conversion of any of the Chapter 11 Cases to a case under Chapter 7, dismissal of any of the Chapter 11 Cases, or request the appointment of a trustee in any of the Chapter 11 Cases, or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (ii) enforce any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender.

(7)    <u>**No Third-Party Rights**</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(8)    <u>**Limited Lock-Up**</u>.  Subject in all respects to the fiduciary duties of the Debtors as debtors in possession, upon execution of this Term Sheet, the Debtors and their respective officers, directors, members, managers, agents, brokers,  representatives, controlling shareholders/investors/partners or affiliates (collectively, "<u>Representatives</u>") shall not solicit or initiate any proposal or discussions for or in connection with, nor advertise or otherwise market to any party the opportunity to make, any equity, debt, combined, or other investment in the Debtors (other than debtor in possession financing that may be provided by Terra Landmark in the Bankruptcy Case), or any possible sale of the Debtors or their assets (including the Property and/or any portion or component thereof), no matter how structured or timed, including without limitation (i) sale of all or any significant or controlling part of the membership interests of the Debtors, (ii) sale or license of all or any significant part of the Debtors' assets including, without limitation, any portion of the Property, or (iii) any merger or other business combination involving the Debtors or otherwise (each of the foregoing proposals or discussions, whether written or oral, an "<u>Alternative Transaction</u>"). The Debtors and their Representatives shall immediately notify Terra Landmark in writing of the receipt of (i) any such proposed or attempted Alternative Transaction, (ii) the receipt of any inquiries, proposals or requests for information relating a proposed Alternative Transaction, or (iii) any request for access

to the Property or any portion thereof in furtherance of a proposed Alternative Transaction.

    **(9)**   **Milestones**.  The Debtors shall be bound by the following Milestones:

    a.  On or before December 2, 2011, the Debtors shall file a motion to value the Property so as to determine the allowed amount of secured claims asserted against the Property;

    b.  On or before December 19, 2011, the Debtors shall file the Plan and Disclosure Statement;

    c.  On or before January 27, 2012, the Bankruptcy Court shall have entered an order approving the Disclosure Statement and setting a hearing to consider confirmation of the Plan;

    d.  On or before February 29, 2012, the Bankruptcy Court shall have entered an order confirming the Plan; and

    e.  The Effective Date of the Plan shall occur on or before March 16, 2012.

    **(10)**   **Milestone Default**.  The failure to meet any Milestone shall constitute an event of default under this Term Sheet and the DIP Financing thereby entitling Terra, in its sole discretion, to terminate its financing commitments and its support for the Plan, and relieving Terra Landmark of any obligation whatsoever to the Debtors, their estates or their successors and assigns, including any obligation under this Term Sheet (including regarding the funding of the Capital Contribution);

    **(11)**   **Amendment**.  The Debtors and the DIP Lender may amend or waive any provision of the Definitive Documents, provided that such amendment or waiver, in the judgment of the Debtors and the DIP Lender, is either non-prejudicial to the rights of third parties or is not material.  Except as otherwise provided herein, no

19

waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf of the Debtors and the DIP Lender (after having obtained the approval of the DIP Lender as provided in the Definitive Loan Documents) and approved by the Court.

(12)    **Survival of Final Order, Expiration of the Final Order**.    The provisions of this Final Order (including without limitation, the DIP Protections) and any actions taken pursuant hereto shall be effective on the entry hereof ("Effective Date") and shall survive entry of any order which may be entered (i) confirming any Plan in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  The terms and provisions of this Final Order, including the DIP Protections granted pursuant to this Final Order, and the Definitive Documents, shall continue in full force and effect.  Notwithstanding the entry of such order, such DIP Protections shall maintain their priority as provided by this Final Order until all the obligations of the Debtors to the DIP Lender pursuant to the Definitive Documents pursuant to this Final Order have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the Postpetition Financing or this Final Order which survive such discharge by their terms).  The Postpetition Financing obligations shall not be discharged by the entry of an order confirming any Plan, as the Debtors have waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy

20

Code. Except as may otherwise be agreed to by the DIP Lender, the Debtors shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of the Postpetition Financing obligations, unless consented to by the DIP Lender, on or prior to the earlier to occur of (i) the effective date of any such Plan, and (ii) the Maturity Date. If an order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise is at any time entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the DIP Superpriority Claim shall continue in full force and effect and shall maintain its priority as provided in this Final Order and Definitive Documents until all Postpetition Financing Obligations shall have been indefeasibly paid in cash in full (or, with respect to the Postpetition Financing, otherwise satisfied in a manner agreed to by the DIP Lender), and such DIP Superpriority Claim, shall remain binding on all parties in interest) notwithstanding such dismissal, and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims referred to in (i) above. For the avoidance of doubt, this provision shall not apply to any bankruptcy case filed by one or more of the Debtors in the future after the closing of these Chapter 11 Cases or a related chapter 7 case.

(13)     **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the Definitive Documents and of this Final Order, the provisions of this Final Order shall govern and control.

(14)     **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be

21

fully enforceable <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date immediately upon execution and entry on the docket hereof.

(15)    **Objections Overruled**.  All objections to the entry of this Final Order are overruled.

(16)    **No Waivers or Modification of Final Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Lender and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

12.    **No Consolidation.**  Nothing in this Order shall constitute or be deemed to constitute a substantive consolidation of the bankruptcy estates of the Debtors.

13.    **Effective on Entry.**  This Final Order shall be effective immediately upon entry.

# # #

<u>Submitted by:</u>
Mindy A. Mora, Esq.
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Ave., Suite 2300
Miami, FL 33131
Tel. (305) 374-7580
Fax (305) 375-7593
mmora@bilzin.com

<u>Copy furnished to:</u>
Mindy A. Mora, Esq.
*(Attorney Mora is directed to serve a copy of this Order upon all interested parties upon receipt and file a Certificate of Service.)*

**EXHIBIT B**

**TERM SHEET**
**FOR PROPOSED DEBTOR IN POSSESSION FINANCING**
**AND PLAN SUPPORT AGREEMENT**
**FOR LANDMARK AT DORAL, LLC, ET AL.**

**As of November 15, 2011**

On September 19, 2011, Landmark at Doral East, LLC, Town Center at Doral, LLC, Landmark at Doral South, LLC, Landmark at Doral Developers, LLC, and Landmark Club at Doral LLC (collectively, and jointly and severally, the "Debtors", and individually each hereinafter referred to as a "Debtor") each commenced a voluntary reorganization case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), Case No. 11-35885-BKC-RAM (Jointly Administered) (the "Bankruptcy Case"). The Debtors hereby represent and warrant unto Plan Funder that the Debtors, collectively, are the fee simple owners in and to, *inter alia*, (i) approximately 115 acres of land located in Miami-Dade County, Florida, commonly referred to as "Landmark" and more particularly described on the attached Exhibit A (the "Real Property"), and (ii) certain permits, plans, licenses, development and other rights (including "air rights" to vertical development) relating to the Real Property (the foregoing rights are collectively, together with the Real Property, hereinafter referred to as the "Property").

The purpose of this Term Sheet is to set forth the essential terms of a proposed Plan of Reorganization pursuant to which Terra Landmark, LLC, a to be formed Florida limited liability company ("Plan Funder"), or any other entity(ies) related to, affiliated with or controlled by Terra World Investments, LLC ("TWI"), will (i) provide post-petition financing to the Debtors in order to fund certain specified costs of the administration of the Bankruptcy Case (to the extent and as described below), (ii) acquire 100 % of the equity interests in the Debtors, or alternatively direct ownership in and to all of the Property, under the "Plan" (as defined below) (such that in either case, upon confirmation of the Plan, Plan Funder, or such applicable affiliate of TWI, shall either be the beneficial owner or direct owner of the fee simple interests in and to the Property), and (iii) provide a Capital Contribution (as defined below) to the Debtors to fund the consummation of the Plan, all as more particularly set forth therein.

The last date that this Term Sheet has been executed by all of the parties hereto is called the "Execution Date." The Execution Date shall be no later than November 15, 2011, otherwise Plan Funder shall have no further obligation under this Term Sheet. Section 11 herein sets forth the particular provisions of this Term Sheet which shall be legally binding and enforceable against the parties hereto and that shall survive termination of the Term Sheet.

| | |
|---|---|
| **1. SUMMARY OF DIP FINANCING:** | Subject to the entry of one or more orders of the Bankruptcy Court authorizing the Debtors to obtain secured, post-petition financing upon substantially the same terms and conditions contained herein, the Plan Funder shall advance up to $150,000 on an interim basis, and may advance up to $750,000 on a final basis |

(together the "DIP Financing") to fund the operations of the Debtors prior to the confirmation of the Plan, including the amount of retainers paid to any Court-approved professionals of the Debtors.    Notwithstanding the foregoing cap on the DIP Financing, nothing in this Term Sheet shall modify, limit or abrogate the separate fee and expense guaranties extended by Terra World Investments, LLC to the Debtor's professionals, consultants and independent contractors, including without limitation, Bilzin Sumberg, Isaac Kodsi, Frank DiMarco, Fishkind & Associates, and Waronker & Rosen, Inc.    Pursuant to Sections 364(c)(1) of the Bankruptcy Code, claims under the DIP Financing shall have priority pursuant to Section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in or created or awarded pursuant to, *inter alia*, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code.    Notwithstanding the foregoing, the claims of the Plan Funder on account of the DIP Financing shall be junior and subordinate to a carve out for (i) the fees due the Clerk of the Court; and (ii) fees due to the United States Trustee pursuant to 28 USC § 1930(a)(6).    The material terms of the DIP Financing shall include (among other terms required by Plan Funder):

(a) Borrowers: Each of the Debtors, jointly and severally;

(b) Term: Earlier of (i) April 1, 2012; (ii) the Effective Date of the Plan; (iii) entry of an order converting the Debtors' cases, dismissing the Debtors' cases, or appointing a trustee or examiner for the Debtors (in each case, the "Maturity Date");

(c) Interest Rate:  14% per annum payable at Maturity;

(d) Collateral:  None; and

(e) Covenants: Such other covenants and conditions as are usual and customary in transactions of this type.

2.    **PLAN FUNDING:**    Plan Funder and Debtors shall jointly propose the Plan, in form and content acceptable to the Plan Funder, in its sole absolute discretion.    Pursuant to and subject to the occurrence of the Effective Date (as defined below) of the Plan, Plan Funder shall make, in addition to the DIP Financing described in Section 2 above, a minimum of $5 million and up to a maximum of $20 million in aggregate capital contributions or advances to the reorganized Debtor (the "Capital Contribution"), all as part of debt and equity financing required to consummate the Plan (the "Exit

Financing"), and all as described below.

On the Effective Date of the Plan, Funder shall receive 100 % of the equity in the reorganized Debtor, on a fully diluted basis, free and clear of all liens and encumbrances (the "New Equity Holder").

| | | |
|---|---|---|
| **3.** | **EFFECTIVE DATE/CLOSING:** | Subject to the closing conditions to be set forth in the Plan, the Effective Date of the Plan shall occur on a Business Day that is not less than ten days after the issuance of a final, non-appealable order by the Bankruptcy Court confirming the Plan; provided, however, that if the Bankruptcy Court negates the stay of the confirmation order pursuant to Rule 6004(h), the parties shall close on the transactions contemplated by the Plan promptly after the entry of the confirmation order. |
| **4.** | **DEFINITIVE DOCUMENTS:** | Plan Funder and its advisors shall collaborate with Debtors and their counsel on the drafting of the Plan and related Disclosure Statement. Unless and until this Term Sheet is terminated, the parties will instruct their legal, accounting, and other professional advisors and representatives to cooperate with each other with a view toward negotiating and preparing the definitive documentation for the DIP Financing (collectively, the "Definitive Documents"), along with the treatment of the claims asserted against the Debtors, the Plan and related Disclosure Statement, and such other documents as the parties deem appropriate in connection with the Plan. |
| **5.** | **REPRESENTATIONS AND WARRANTIES:** | The Definitive Documents will include representations and warranties that are customary for transactions of this nature and in an insolvency context. |
| **6.** | **EXCLUSIVITY AND NON-CIRCUMVENTION:** | Subject in all respects to the fiduciary duties of the Debtors as debtors in possession, upon execution of this Term Sheet, the Debtors and their respective officers, directors, members, managers, agents, brokers, representatives, controlling shareholders/investors/partners or affiliates (collectively, "Representatives") shall not solicit or initiate any proposal or discussions for or in connection with, nor advertise or otherwise market to any party the opportunity to make, any equity, debt, combined, or other investment in the Debtors (other than debtor in possession financing that may be provided by Plan Funder in the Bankruptcy Case), or any possible sale of the Debtors or their assets (including the Property and/or any portion or component thereof), no matter how structured or timed, including without limitation (i) sale of all or any significant or controlling part of the membership interests of the Debtors, (ii) sale or license of all or |

3

any significant part of the Debtors' assets including, without limitation, any portion of the Property, or (iii) any merger or other business combination involving the Debtors or otherwise (each of the foregoing proposals or discussions, whether written or oral, an "Alternative Transaction"). The Debtors and their Representatives shall immediately notify Plan Funder in writing of the receipt of (i) any such proposed or attempted Alternative Transaction, (ii) the receipt of any inquiries, proposals or requests for information relating a proposed Alternative Transaction, or (iii) any request for access to the Property or any portion thereof in furtherance of a proposed Alternative Transaction.

**7.  COURT APPROVAL:**  The Debtors shall file an Emergency Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363, 364 and 1146(c), and Federal Rules of Bankruptcy Procedure 2002, 4001, 6004, and 6006:  (I) Approving Plan Term Sheet and (II) Authorizing Post-Petition Financing (the "Emergency Motion"), to give effect to and obtain Court approval of the process agreed to by the parties.

**8.  MILESTONES:**  The Debtors agree to, and shall be bound by, the following Milestones:

(a)  On or before November 15, 2011, the Debtors shall file and serve the Emergency Motion seeking approval of, *inter alia*, this Term Sheet;

(b)  On or before November 22, 2011, the Court shall have entered an interim order, in form and substance acceptable to Plan Funder, granting the Emergency Motion and authorizing the Debtors to obtain secured post-petition financing;

(c)  On or before December 2, 2011, the Court shall have entered an final order, in form and substance acceptable to Plan Funder, granting the Emergency Motion and authorizing the Debtors to obtain secured post-petition financing;

(d)  On or before December 2, 2011, the Debtors shall file a motion to value the Property so as to determine the allowed amount of secured claims asserted against the Property;

(e)  On or before December 19, 2011, the Debtors shall file the Plan and Disclosure Statement;

(f)  On or before January 27, 2012, the Bankruptcy Court shall have entered an order approving the Disclosure Statement and setting a hearing to consider confirmation of the Plan;

(g)  On or before February 29, 2012, the Bankruptcy Court shall

have entered an order confirming the Plan; and

(h) The Effective Date of the Plan shall occur on or before March 16, 2012.

The failure to meet any Milestone shall constitute an event of default under this Term Sheet and the DIP Financing thereby entitling the Plan Funder, in its sole discretion, to terminate its financing commitments and its support for the Plan, and relieving the Plan Funder of any obligation whatsoever to the Debtors, their estates or their successors and assigns, including any obligation under this Term Sheet (including regarding the funding of the Capital Contribution).

9.  **GOVERNING LAW; ASSIGNMENT; AMENDMENT:**

This Term Sheet shall be governed by the laws of the State of Florida, without regards to principles of conflicts of law. This Term Sheet and all rights and obligations hereunder may not be assigned by Plan Funder or Debtor without the prior consent of the other party (except that Plan Funder may assign its rights hereunder to TWI or its affiliates or related parties, whereupon Plan Funder shall be released from all obligations hereunder). This Term Sheet constitutes the entire understanding of the parties with respect to the subject matter hereof and supersedes any and all prior understandings and agreements, whether written or oral, with respect to such subject matter. This Term Sheet may not be modified except pursuant to a written agreement signed by all parties.

10. **NO BROKERS:**

Each party hereto represents and warrants to the other that no broker, advisor, finder or other person is entitled to any fee or commission with respect to the transaction described in this Term Sheet as the result of any agreements or conduct of such party.

11. **INDEMNITY:**

Debtors, jointly and severally (collectively, the "Indemnitor"), hereby agree to indemnify, save, defend (at Indemnitor's sole cost and expense) and hold harmless Plan Funder (the "Indemnitee") and the officers, directors, agents, employees, contractors, representatives and attorneys of Indemnitee, and the heirs, personal representatives, successors and assigns of each of them (any such person or entity being referred to as an "Indemnified Person" and all of such persons or entities being collectively referred to herein as "Indemnified Persons" and each such reference shall refer jointly and severally to each such person or entity), from and against the full amount of any and all Losses (as hereinafter defined), whether the Indemnified Persons (or any of them) suffer such Losses directly or consequentially. As used herein "Losses" shall mean any and all liabilities, obligations,

5

losses, damages, penalties, demands, sums, claims, actions, suits, costs, expenses and disbursements (including, but not limited to, all attorneys' and paralegals' fees and all other professional or consultants' expenses incurred in investigating, preparing for, serving as a witness in or defending against any action or proceeding, whether actually commenced or threatened, which may be asserted against any of the Indemnified Persons), arising from, in respect of, as a consequence of, or in connection with, either of the following: (i) the failure of Indemnitor to perform or observe fully any covenant, obligation, agreement or provision to be performed or observed by Indemnitor pursuant to this Term Sheet or any other agreements executed as part of this Term Sheet; and/or (ii) Indemnitor's intentional or negligent misrepresentation of any statement, warranty or representation made (or contemplated to be made) by Indemnitor hereunder.

**12. EXPENSE REIMBURSEMENT:**

Plan Funder may reimburse itself for all of its reasonable and necessary expenses (the "Expenses") incurred in connection with the transactions contemplated by this Term Sheet including, without limitation, all of Plan Funder's legal fees and related costs, financial advisory fees, consulting fees and related costs and expenses from advances funded from the DIP Loan, in such amounts and upon such timing as Plan Funder deems reasonable and necessary during the term of the DIP Loan. Monthly, Plan Funder shall furnish notice to the Debtors, the Creditors Committee, and the U.S. Trustee of all Expenses reimbursed to Plan Funder during the preceding month.

**13. BINDING EFFECT AND LIABILITY:**

This Term Sheet shall expire and be of no force and effect unless it is signed by each of the Debtors and Plan Funder on or before November __, 2011. **TIME IS OF THE ESSENCE.**

The parties acknowledge and agree that, except for (i) the representations and warranties made by the Debtors unto Plan Funder as is reflected in this Term Sheet, and (ii) the obligations set forth in the provisions hereof entitled **"Exclusivity and Non-Circumvention", "Court Approval", "Governing Law; Assignment; Amendment", "No Brokers", "Confidentiality", "Indemnity", "Expense Reimbursement" and "Binding Effect and Liability"** (collectively, the "Binding Provisions"), (a) this Term Sheet is not a legally binding commitment which creates any liability on the part of any party hereto, and (b) this Term Sheet represents only the current thinking of the parties with respect to certain of the major issues involved in the Transaction. The Binding Provisions are hereby agreed by the parties hereto as being supported by adequate consideration, the receipt and sufficiency of which are hereby acknowledged, and such Binding

Provisions shall be in effect upon the execution hereof and shall survive the termination of this Term Sheet.  ***All transactions described hereunder, including this Term Sheet (other than the Binding Provisions), shall be subject to Bankruptcy Court approval and the Definitive Documents shall be subject to the approval of Plan Funder, the Debtor and their respective legal counsel.***

**END OF PAGE**

Assuming that the foregoing meets with your approval, please execute the enclosed counterpart of this Term Sheet in the space indicated and return it to us. This Term Sheet may be executed in counterparts and by facsimile or other electronic signature, with the same effect as an executed original. Thank you.

Very truly yours,

TERRA LANDMARK, LLC,
PLAN FUNDER

By:_____

Its: _Presitdent_____

**ACCEPTED AND AGREED** this
_____ day of November, 2011.


DEBTORS:

LANDMARK AT DORAL EAST, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

TOWN CENTER AT DORAL, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

LANDMARK AT DORAL SOUTH, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

LANDMARK AT DORAL DEVELOPERS, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

8

Assuming that the foregoing meets with your approval, please execute the enclosed counterpart of this Term Sheet in the space indicated and return it to us. This Term Sheet may be executed in counterparts and by facsimile or other electronic signature, with the same effect as an executed original. Thank you.

Very truly yours,

**TERRA LANDMARK, LLC,
PLAN FUNDER**

By:_____

Its:_____

**ACCEPTED AND AGREED** this
_15th_ day of November, 2011.

DEBTORS:

LANDMARK AT DORAL EAST, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

TOWN CENTER AT DORAL, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

LANDMARK AT DORAL SOUTH, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

LANDMARK AT DORAL DEVELOPERS, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

LANDMARK CLUB, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

EXHIBIT 'A'

PARCEL "A" - Title vested in Landmark at Doral East, LLC, a Florida limited liability company:

The East 415.00 feet of Tracts 24, 33, 34, 35 & 36 of "FLORIDA LANDS COMPANY'S SUBDIVISION NO. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida.

LESS AND EXCEPT the portion of the property conveyed to LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT by deed dated December 7, 2005 and recorded December 15, 2005 in O.R. Book 24054, Page 603, of the Public Records of Miami Dade County, Florida.

PARCEL "B" - Title vested in Town Center at Doral, L.L.C., a Florida limited liability company

Tracts 24, 25, 33, 34, 35, 36, 45, 46, 47 and 48; less all roads Right-of-way of records, of "FLORIDA LANDS COMPANY'S SUBDIVISION NO. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, Florida, which lies within the West 54 of Section 17, Township Map 53 South, Range 40 East, Miami-Dade County, Florida. Less the East 415.00 feet of Tracts 24, 33, 34, 35 and 36 thereof, and less that portion of Tract 45 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459.

AND LESS:
A portion of Tract 25 of "FLORIDA LANDS COMPANY'S SUBDIVISION No. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, which lies in the Northwest 1/4 of Section 17, Township 53 South, Range 40 East. Miami-Dade County, Florida. More particularly described as follows:

Commence at Northwest Corner of said Section 17, thence S01deg43min09secE along the West Line of said Section 17 for a distance of 2309.44 feet; thence N89deg40min03secE along the North line of said Tract 25 for 690.19 feet; thence S00degl9min51secE for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of Land, thence N89deg40min03secE for 301.52 feet; thence S00degl9min51secE for 92.18 feet; thence N89deg40min09secE for 18.00 feet; thence S00degl9min51secE for 128.67 feet; thence S89deg40min09secW for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears 47deg51min32secE; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96deg22min46sec for a distance of 100.93 feet to a point on a non-tangent line; thence S89deg40min09secW for 129.49 feet; thence N00degl9min51secW for 128.67 feet; thence N89deg40min09secW for 18.00 feet; thence N00degl9min51secW for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT by deed dated December 7, 2005 and recorded December 15, 2005 in O.R. Book 24054, Page 603, of the Public Records of Miami Dade County, Florida.

1

Together with real property described in Quit Claim Deed dated January 31, 2005 recorded at OR Bk 23048 Pgs 0199 – 201; Public Records Miami-Dade County.

PARCEL "C" - Title vested in Landmark at Doral South, LLC, a Florida limited liability company:

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION No. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way of records, and less that portion of Tracts 41, 42, 43, and 44 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459. Less and except therefrom that portion lying at or above elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

AND LESS AND EXCEPT the portion of the property conveyed to LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT by deed dated December 7, 2005 and recorded December 15, 2005 in O.R. Book 24054, Page 603, of the Public Records of Miami Dade County, Florida.

PARCEL "D" - Title vested in Landmark at Doral Developers, LLC, a Florida limited liability company

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION No. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way of records, and less that portion of Tracts 41, 42, 43, and 44 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459. Less and except therefrom that portion lying below elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

AND LESS AND EXCEPT the portion of the property conveyed to LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT by deed dated December 7, 2005 and recorded December 15, 2005 in O.R. Book 24054, Page 603, of the Public Records of Miami Dade County, Florida.

PARCEL "E" - Title vested in Landmark Club at Doral, LLC, a Florida limited liability company

A portion of Tract 25 of "FLORIDA LANDS COMPANY'S SUBDIVISION No. 1", according to that Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, which lies in the Northwest 1/4 of Section 17, Township 53 South, Range 40 East. Miami-Dade County, Florida.
More particularly described as follows:

Commence at Northwest Corner of said Section 17, thence S01deg43min09secE along the West Line of said Section 17 for a distance of 2309.44 feet; thence N89deg40min03secE along the North line of said Tract 25 for 690.19 feet; thence S00deg19min51secE for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of Land, thence

2

N89deg40min03secE for 301.52 feet; thence S00deg19min51secE for 92.18 feet; thence N89deg40min09secE for 18.00 feet;  thence S00deg19min51secE for128.67 feet; thence S89deg40min09secW for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears  N47deg51min32secE; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96deg22min46sec for a distance of 100.93 feet to a point on a non-tangent line; thence S89deg40min09secW for 129.49 feet; thence N00deg19min51secW for 128.67 feet; thence N89deg40min09secE for 18.00 feet; thence N00deg19min51secW  for 92.17 feet to the POINT
OF BEGINNING.

**EXHIBIT C**

Town Center at Doral, LLC — Case # 11-35884
Landmark at Doral East, LLC — Case # 11-35885
Landmark at Doral South, LLC — Case # 11-35886
Landmark Club at Doral, LLC — Case # 11-35887
Landmark at Doral Developers, LLC — Case # 11-35888

United States Bankruptcy Court
Southern District of Florida
Monthly Cash Flow Budget

| Month # | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | Total | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month Ending | 10/31/2011 Budget | 10/31/2011 Actual | 11/30/2011 Budget | 11/30/2011 Actual | 12/31/2011 Budget | 12/31/2011 Actual | 1/31/2012 Budget | 1/31/2012 Actual | 2/29/2012 Budget | 2/29/2012 Actual | Total Budget | Total Actual |
| Gross Receipts - DIP Loan Funding | $ - | $ - | $ 150,000 | $ - | $ 105,000 | $ - | $ 100,000 | $ - | $ 105,000 | $ - | $ 460,000 | $ - |
| Total Receipts | $ - | $ - | $ 150,000 | $ - | $ 105,000 | $ - | $ 100,000 | $ - | $ 105,000 | $ - | $ 460,000 | $ - |

| | 10/31/2011 Budget | 10/31/2011 Actual | 11/30/2011 Budget | 11/30/2011 Actual | 12/31/2011 Budget | 12/31/2011 Actual | 1/31/2012 Budget | 1/31/2012 Actual | 2/29/2012 Budget | 2/29/2012 Actual | Total Budget | Total Actual |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Management Fee - Isaac Kodsi | $ - | $ - | $ 20,000 | $ - | $ 10,000 | $ - | $ 10,000 | $ - | $ 10,000 | $ - | $ 50,000 | $ - |
| Accounting Fees - Frank DiMarco | - | - | 1,450 | - | 1,000 | - | 1,000 | - | 1,550 | - | 5,000 | - |
| Consultant - Fishkind | - | - | 8,000 | - | 10,000 | - | 10,000 | - | 12,000 | - | 40,000 | - |
| Appraisal (plus testimony) Fees - Waronker | - | - | 15,000 | - | 5,000 | - | 7,500 | - | 7,500 | - | 35,000 | - |
| Legal Fees - Bilzin | - | - | 57,500 | - | 35,000 | - | 25,000 | - | 32,500 | - | 150,000 | - |
| Legal Fees - Creditor's Committee | - | - | 7,000 | - | 13,000 | - | 15,000 | - | 15,000 | - | 50,000 | - |
| Legal Fees - Berger Singerman | - | - | 25,000 | - | 25,000 | - | 25,000 | - | 25,000 | - | 100,000 | - |
| US Trustee | - | - | 325 | - | - | - | 1,950 | - | 1,625 | - | 3,900 | - |
| Total Disbursements | $ - | $ - | $ 134,275 | $ - | $ 99,000 | $ - | $ 95,450 | $ - | $ 105,175 | $ - | $ 433,900 | $ - |

| | 10/31/2011 Budget | 10/31/2011 Actual | 11/30/2011 Budget | 11/30/2011 Actual | 12/31/2011 Budget | 12/31/2011 Actual | 1/31/2012 Budget | 1/31/2012 Actual | 2/29/2012 Budget | 2/29/2012 Actual | Total Budget | Total Actual |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $ - | $ - | $ - | $ - | $ 15,725 | $ - | $ 21,725 | $ - | $ 26,275 | $ - | $ - | $ - |
| Change in Cash | - | - | 15,725 | - | 6,000 | - | 4,550 | - | (175) | - | - | - |
| Operating Cash Balance | $ - | $ - | $ 15,725 | $ - | $ 21,725 | $ - | $ 26,275 | $ - | $ 26,100 | $ - | $ - | $ - |