**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re: Case No. 11-35884-RAM

Town Center at Doral, LLC, et al.,[1] Chapter 11

Debtors. (Jointly Administered)

_______________________________________/

**DEBTORS' RESPONSE TO MOTION FOR STAY RELIEF**

TOWN CENTER AT DORAL, LLC, LANDMARK AT DORAL EAST, LLC, LANDMARK AT DORAL SOUTH, LLC, LANDMARK AT DORAL DEVELOPERS, LLC, AND LANDMARK CLUB AT DORAL, LLC (collectively the "Debtors"), by and through undersigned counsel, file this response (the "Response") to *Landmark at Doral Community Development District's Motion for Relief From the Automatic Stay* [ECF No. 35] (the "Stay Relief Motion") and respectfully submit:

**PRELIMINARY STATEMENT**

The Debtors filed their bankruptcy petitions in good faith and for legitimate purposes: to maximize the value of their assets, facilitate negotiations with creditors, provide equitable treatment to creditors, and confirm plans of reorganization. Absent the chapter 11 cases, the Debtors would have lost the Property (defined herein) to a foreclosure sale that would have wiped out the interests of the holders of over $120 million in subordinate liens and unsecured

[1] The last four digits of each Debtors' tax identification number are: (i) Town Center at Doral, LLC [1866]; (ii) Landmark at Doral East, LLC [6616]; (iii) Landmark at Doral South, LLC [6676]; (iv) Landmark Club at Doral, LLC [6797]; and (v) Landmark at Doral Developers, LLC [6762]. The Debtors' mailing address is 701 W. Cypress Creek Road, Suite 303, Fort Lauderdale, Florida 33309.

claims. To protect the interests of its entire creditor body, the Debtors had no choice but to invoke the protections of the Bankruptcy Code.

At a time when real estate values are at historic lows, unemployment remains high, and meaningful opportunities for real estate development are scarce, the Debtors are proposing a viable means to salvage a significant real estate development, provide a distribution to all parties in interest, and supply a much-needed boost to the local economy. By partnering with the Debtors' proposed plan sponsor, Terra Landmark, LLC ("Terra Landmark"), the Debtors have formulated a business plan that will foster the growth and development of over 100 acres in the Doral area. The carefully-planned and well-funded project (the "Project") is the best possible option for all parties in interest, including those who presently seek to foreclose, as it will provide for a steady stream of cash payments to fund special assessment and maintenance obligations and create a viable means to pay a distribution to the holders of all claims other than equity.

The Project is dependent upon and maximizes the advantages of the unique composition and location of the Property. Although the initial vision and timeline of the Project faltered when the principal of the Debtors, Elie Berdugo, passed away unexpectedly, the renewed and revitalized development plan the Debtors are developing with Terra Landmark, LLC has enormous potential for success. Based upon the strong prospect of a highly successful reorganization, Terra Landmark has committed up to $750,000 of postpetition financing to fund the Debtors' journey through chapter 11 and an additional $5 million to $20 million in capital contributions as new value to fund the Debtors' swift emergence from chapter 11 and permit the long-awaited development of the Project to move forward as quickly as possible for the benefit of all parties in interest.

Accordingly, there is no basis for stay relief under §362(d)(1) based upon lack of adequate protection, because the Landmark at Doral Community Development District (the "District") is undersecured, and its collateral is not at risk of damage or loss. Further, stay relief is not warranted under §362(d)(2) because the Debtors have negotiated both postpetition financing and a meaningful new equity contribution that will enable them to quickly file reorganization plans that will be reasonably capable of being confirmed.

For all the reasons set forth herein, the Court should deny the Stay Relief Motion.

## JURISDICTION

1. This Court has jurisdiction to entertain this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

### A. General Background

2. On September 19, 2011 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11, Title 11 of the United States Code.

3. On October 20, 2011, the United States Trustee appointed the Joint Committee of Creditors Holding Unsecured Claims in the Debtors' cases (the "Chapter 11 Cases").

4. The Debtors are in possession of their respective parcels of the Property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. Each of the Debtors is a Florida limited liability company.

6. For a more complete description of the Debtor's assts and liabilities, the Debtors incorporate by reference the *Jointly Administered Debtors' Chapter 11 Case Management*

*Summary* [ECF No.9] and their schedules and statements of financial affairs.[2]

**B. The Property**

7. The Debtors are the fee simple owners of land (approximately 120 contiguous acres) located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida, a majority of which is zoned TND (Traditional Neighborhood Development), with the remainder zoned IU-1 (for flex office development allowing for light industrial development) (the "Property").

8. The Property consists of 16 individual tracts of land with substantial infrastructure development completed, but with no vertical construction other than an unfinished 4-level parking garage. The Property is fully insured pursuant to a policy issued by Nautilus Insurance Company that provides general liability coverage with limits of up to $2 million, through October 4, 2012. *See* attached Exhibit "A". The Property is completely surrounded by a chain link fence with a locked gate.

9. Prior to the Petition Date, the Debtors had sought and obtained approvals for the development of residential units (townhomes and condominiums), retail/office/mixed use, and flex office at the Property. The Debtors had been actively engaged in preparing the Property for a development to be called "Landmark at Doral", consisting of 11 acres of industrial/flex office, 17 acres of mixed use, and 89 acres of multifamily residential dwellings. After development, the Property was to consist of 188,000 square feet of retail and office, 230,000 square feet of flex

---

[2] The Debtors' Schedules and Statement of Financial Affairs, filed on October 3, 2011, include:
Town Center at Doral, LLC, Case No. 11-35884-RAM [ECF No. 21];
Landmark at Doral East, LLC, Case No. 11-35885-RAM [ECF No. 13];
Landmark at Doral South, LLC, Case No. 11-25886-RAM [ECF No. 14];
Landmark Club At Doral, LLC, Case No. 11-35887-RAM [ECF No. 11]; and
Landmark at Doral Developers, LLC, Case No. 11-35888-RAM [ECF No. 13].

office, and 1,109 residential units, featuring an assortment of elevations and architecture thereby creating a community reminiscent of former small towns in suburbs throughout the U.S. and abroad.

**C. The Proposed Postpetition Financing and New Equity Contribution**

10. On November 15, 2011, the Debtors entered into a term sheet and plan support agreement (the "Plan Support Agreement) with Terra Landmark, an unrelated third-party investor. *See* Exhibit "B" to ECF No. 45. Pursuant to the Plan Support Agreement, Terra Landmark has agreed to act as the plan sponsor for the Debtors' Chapter 11 Cases and, in exchange for a significant cash infusion of between $5 million to $20 million, will receive 100% of the equity in the reorganized Debtors post-confirmation. Terra Landmark also has agreed to provide sufficient funding for all administrative expenses of the Debtors' Chapter 11 Cases in an amount up to $750,000 and, subsequent to confirmation, to develop the Property as a mixed-use residential, industrial, and retail development. Terra Landmark's postpetition loan and new equity contribution to the Debtors during the Debtors' Chapter 11 Cases will permit all allowed creditors to receive a distribution on account of their interests in the Debtors' estates, and will avoid the District obtaining a recovery to the exclusion of all other creditors.

**D. The Stay Relief Motion**

11. On October 28, 2011, the District filed the Stay Relief Motion. The Stay Relief Motion seeks immediate relief from the automatic stay to foreclose on the Property, which would prevent all unsecured creditors from receiving any distribution from the Debtors' estates.

**ARGUMENT**

**A. Cause Does Not Exist for Stay Relief Under §362(d)(1)**

12. Section 362(d)(1) of the Bankruptcy Code provides:

> On request of party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

"Adequate protection" may be described as the amount of the collateral's decrease in value since the petition date. *See Chase Manhattan Bank USA NA v. Stembridge (In re Stembridge)*, 394 F.3d 383, 387 (5th Cir. 2004) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988)). Adequate protection is intended to protect a creditor against a decline in value of the collateral securing its claim, not to compensate the creditor for any bankruptcy-imposed delay in enforcing its rights against the subject property. *Mitchell v. BankIllinois*, 316 B.R. 891, 899-900 (S.D. Tex. 2004) (citations omitted).

13. At this point, the Property consists primarily of raw land and an unfinished parking deck, with other incidental improvements, i.e. landscaping. The Debtors provided proof of insurance to the United States Trustee at the initial debtor interview held on October 6, 2011. Since the Petition Date, the Debtors have not been advised of any loss, theft, or destruction at the Property, nor have the Debtors received any reports of land erosion, standing water, or other similar issues. Moreover, the Property is completely fenced in, with a locked gate to prevent unauthorized access to the Property.

14. Further, adequate protection in the form of periodic interest payments is inappropriate when the value of a secured creditor's claim exceeds the market value of the subject collateral. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 382 (1988) (affirming Fifth Circuit Court of Appeals); *Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc)*, 54 F.3d 722, 729 (11th Cir. 1995). Although the Debtors have not yet obtained an updated appraisal, the Miami-Dade County Property

Appraiser has determined that the collective assessed value of the parcels comprising the Property is approximately $36,389,224, or $35,110,776 less than the value of the District's claim. Accordingly, current assessed values negate any basis for the District's alleged entitlement to periodic interest payments as a form of adequate protection.

15. Without providing any definitive proof of the risk of loss or damage to the Property, the District is not entitled to adequate protection. The Debtors have obtained a commitment for postpetition financing and a new equity contribution from Terra Landmark pursuant and subject to the Plan Support Agreement, which will enable the Debtors to develop the Property. Accordingly, no cause exists for stay relief pursuant to §362(d)(1).

**B. Cause Does Not Exist for Stay Relief Under §362(d)(2)**

16. Section 362(d)(2) provides that a bankruptcy court shall order relief "with respect to a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary for an effective reorganization." Based upon the Miami-Dade County Property Appraiser's determination of the market value of the Property, the Debtors concede that the current market value of the Property is less than the value of the claim held by the District. The Property, however, is necessary to an effective reorganization.

17. Property is necessary for an effective reorganization when it is unique in character and essential to the survival of the reorganized entity. *In re Royal Palm Square Assocs.,* 124 B.R. 129, 132 (Bankr. M.D. Fla. 1991); *In re Cobblestone Assocs.*, 141 B.R. 245, 247 (Bankr. M.D. Fla. 1992) (reversed on other grounds). At over 100 acres in size and positioned in the heart of an area that continues to experience strong residential real estate sales, the Property is unique. Terra Landmark and the Debtors' joint business plan hinges upon fulfillment of a market

niche in a specific geographic location with a unique demographic composition. Other suitable sites are not readily available, nor would they provide the estate with a comparable opportunity for a successful reorganization. As a result, the Property is necessary to the Debtor's reorganization, and stay relief cannot be granted under §362(d)(2).

18. Further, the postpetition financing and post-confirmation new equity contribution supplied by Terra Landmark will allow the Debtors to continue development and construction of the Property, with a substantial portion of the profits of construction ultimately accruing to the benefit of all creditors and parties in interest. Implementation of Terra Landmark's proposed development plan will maximize the long-term value of the Property and, in the short term, will provide a realistic prospect of a distribution to creditors that would otherwise be shut out of any distribution on their claims. In addition, allowing the Debtors and Terra Landmark to move forward with development and construction as quickly as possible will provide much-needed jobs and opportunities for residents of Doral and the greater Miami area.

19. Based upon the postpetition financing and new equity contribution provided for in the Plan Support Agreement, a realistic reorganization is in prospect and, within a relatively short time frame, will be a reality. The Debtors and Terra Landmark will provide the Court and all parties in interest with detailed projections for the business plan as part of the plan approval process. The Debtors are well into the plan negotiation and formulation process and intend to file their reorganization plans as quickly as possible, with an eye towards emerging from chapter 11 by March 2012. Indeed, the Plan Support Agreement milestones require the Debtors to file their plan of reorganization on or before December 19, 2011.

20. This case has been pending for less than 60 days. At this early stage of a chapter 11 case, a debtor in possession has a lower burden of demonstrating that a successful

reorganization is in prospect. *See In re SW Boston Hotel Venture LLC,* 449 B.R. 156, 179 (Bankr. D. Mass. 2011) ("During the exclusivity period, a Chapter 11 debtor may make a lesser showing that reorganization is probable than if that period has expired."); *In re DB Capital Holdings, LLC*, 454 B.R. 804, 819 (Bankr. D. Colo. 2011) (describing "sliding scale" of proof necessary to show reasonable possibility of a successful reorganization within a reasonable time); *In re Holly's, Inc.*, 140 B.R. 643, 699-700 (Bankr. W.D. Mich. 1992) ("At the early stages of a bankruptcy case, the moving target [standard of proof] requires a less strenuous showing of a reasonable possibility of a successful reorganization within a reasonable time.") (internal quotations omitted).

21. The Debtors are moving swiftly through the plan process for the benefit of all parties in interest, including the District. At this early stage, when the Debtors have demonstrated both the ability to procure sufficient financing and the intent to commit to a speedy reorganization, stay relief is neither warranted nor appropriate.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) denying the Stay Relief Motion, and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: November 18, 2011

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted,

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
*Counsel for the Debtor*
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By: /s/ Mindy A. Mora
Mindy A. Mora
Florida Bar No. 678910
mmora@bilzin.com
Tara V. Trevorrow
Florida Bar No. 0030959
ttrevorrow@bilzin.com

**EXHIBIT A**




# INSURANCE BINDER

THE TERMS AND CONDITIONS OF THIS INSURANCE BINDER MAY NOT COMPLY WITH THE SPECIFICATIONS SUBMITTED FOR CONSIDERATION. PLEASE READ THIS BINDER CAREFULLY AND COMPARE IT WITH ANY QUOTE AND SUBMISSION DOCUMENTS AND REVIEW THE POLICY FORMS FOR THE ACTUAL COVERAGES PROVIDED.

IN ACCORDANCE WITH YOUR INSTRUCTIONS, AND IN RELIANCE UPON THE STATEMENTS MADE BY THE RETAIL BROKER IN THE INSURED'S APPLICATION/SUBMISSION, WE HAVE BOUND INSURANCE AT YOUR REQUEST AS FOLLOWS:

**Date Issued:** Oct 05, 2011 **Submission #:** U776061

**Producer:** Tamara Dominguez **Fax #:** (305) 441-0460
Wells Fargo Ins. Services USA, Inc. - Coconut Grove AGT35144**Phone:** (305) 443-4886
Coconut Grove, FL

**From:** Marsha J. Pemberton, **Fax #:** 561-395-2916
mpemberton@scui.com **Phone:** 561-395-0711

**Insured:** Town Center at Doral, LLC(Debtor in Possession), Landmark at Doral East, LLC (Debtor in Possession), Landmark at Doral South, LLC (Debtor in Possession), Landmark Club at Doral, LLC (Debtor in Possession), Landmark at Doral Developers, LLC (Debtor in Possession)
701 W. Cypress Creek Road Suite 301
Fort Lauderdale, FL 33309

**Risk Description:** Vacant land and Vacant Parking Garage

**Risk Location:** as per acord app Miami, FL 33178

**Insurer:** Nautilus Insurance Company - Non-Admitted

**Policy No.:** NN172160

**Coverage:** GENERAL LIABILITY

**Policy Period:** 10/4/2011 to 10/4/2012

| | | |
|---|---|---|
| **Limits:** | $2,000,000 | General Aggregate |
| | Included | Products Completed Operations Aggregate Limit |
| | $1,000,000 | Personal and Advertising Injury Limit |
| | $1,000,000 | Each Occurrence |
| | $100,000 | Damage to Premises Rented to You (Any One Fire) |
| | $5,000 | Medical Expense Limit (Any One Person) |
| **Deductible:** | $0 | Per Claim - Bodily Injury incl LAE |
| | $0 | Per Claim - Property Damage incl LAE |

| | |
|---|---|
| **Premium:** | **$10,366.00** |
| ***TRIPRA Status:*** | ***REJECTED*** |
| **TRIPRA Premium:** | |
| **Policy Fee** | **$35.00** |
| **Inspection Fee - Southern Cross** | **$200.00** |
| **SLT Tax:** | **$530.05** |
| **Stamping Fee:** | **$10.60** |
| **Other Tax:** | |
| **Other Tax2:** | **$137.81** |
| **Other Tax3:** | |
| **Grand Total:** | **$11,279.46** |

**Commission: 10%**

**TERMS / CONDITIONS / SUBJECT TO:**

**25% MINIMUM EARNED PREMIUM AT INCEPTION**

**TERMS / CONDITIONS / SUBJECT TO:**
**Questionnaire if requested.**
**3 yr. CV loss runs showing no claims or a no loss letter signed by the insured**
**25% MINIMUM EARNED PREMIUM AT INCEPTION**
**100% Annual Minimum & Deposit**
**Subject to Audit - if required**
**Fees are fully earned. SCUI to file taxes.**
**Favorable inspection after binding, if requested**
**Subject to all mandatory company forms and endorsements in addition to those shown below**

**IF COVERAGE IS ELECTED, PLEASE NOTE:**
**This insurance is issued pursuant to the Florida Surplus Lines Law. Persons insured by surplus lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.**

**FORMS AND ENDORSEMENTS:**

**This list is for informational purposes only and does not intend to represent the entire list of forms and/or endorsements that may be attached to any policy issued as a result of this quotation.**

| | |
|---|---|
| **IL0017** | **Common Policy Conditions** |
| **IL0021** | **Nuclear Energy Liability Exclusion Endorsement (Broad Form)** |
| | |
| **E001** | **Nautilus Insurance Company Common Policy Declarations** |
| **E001J** | **Nautilus Insurance Company Commercial Lines Policy Jacket** |
| **E602FL** | **Florida Changes- Cancellation and Non renewal** |
| **E906** | **Service of Suit** |
| **E903** | **Policyholder Disclosure Notice of Terrorism Insurance Coverage** |
| | |
| **S013** | **Minimum Earned Endorsement** |
| **S902** | **Schedule of Forms and Endorsements** |
| **S150** | **Commercial General Liability Coverage Part Declarations** |
| **S038** | **Amendment of Liquor Liability Exclusion** |
| **S261** | **Asbestos Exclusion** |
| | |
| **CG0001** | **Commercial General Liability Coverage Form** |
| **CG0067** | **Exclusion - Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information** |
| **CG2147** | **Employment-Related Practices Exclusion** |
| **CG2173** | **Exclusion of Certified Acts of Terrorism** |
| **CG2196** | **Silica or Silica-Related Dust Exclusion** |
| **CG201** | **Additional Insured- Office of The United States Trustee, 51 SW First Avenue, Room 1204, Miami, FL 33130** |

| | |
|---|---|
| L216 | Amendment of Definitions - Insured Contract (Limited Form) |
| L217 | Exclusion - Punitive or Exemplary Damages |
| L223 | Total Exclusion - Pollution |
| L241 | Exclusion - Microorganisms, Biological Organisms, Bioaerosols or Organic Contaminants |
| L282 | Exclusion - Contractors and subcontractors |
| L293 | Exclusion - All construction operations |
| L601 | Amendment of Conditions - Premium Audit |
| L850 | Deductible Liability Insurance (Including Allocated Loss Adjustment Expense) |

**THANK YOU FOR YOUR BUSINESS!**

**Marsha J. Pemberton**

**CONFIDENTIAL**