### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                             Case No. 11-35884-RAM

TOWN CENTER AT DORAL, L.L.C.,                      Chapter 11
*et al.,*

        Debtors.                                (Jointly Administered)

_____/

### MOTION OF THE DISTRICT TO TERMINATE EXCLUSIVITY

#### Expedited Hearing Requested

The District respectfully requests a hearing on this motion on or before December 28, 2011. The requested hearing date on this motion is calculated, pursuant to Rule 3017(a), Fed. R. Bankr. P., so as to furnish the District adequate time to file and serve a competing plan and disclosure statement, and to have a hearing on its disclosure statement at the January 25th hearing on the Debtors' disclosure statement. As is set forth more fully below, the Chapter 11 estates will be directly, immediately and substantially harmed without an expedited resolution of this matter because the Debtors' "proposed plan" does not seek to maximize the value of the estates' assets. The District requests that the Court waive the requirement of a certification that an effort was made to resolve this matter without a hearing because exclusivity may be reduced only after notice and a hearing.

**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT** (the "**District**"), through undersigned counsel, pursuant to 11 U.S.C. §1121(d), requests that this Court terminate exclusivity. In support the District states:

#### Introduction

As this Court is aware, there are two (2) primary purposes underpinning the Chapter 11 reorganization process: to allow a debtor an opportunity to protect or reorganize an on-going business opportunity; and to obtain the highest possible distribution for creditors. Neither of

these purposes is served in this case.  In fact, as outlined in the Debtors' filings to date, their "proposed plan" is contrary to public policy, federal law and state law, as it is designed to transfer the single asset of these respective Debtors to a third party, at the expense of the creditors, without testing the market by any competitive process.

Specifically, the essence of the Debtors' "proposed plan" is to simply transfer the underlying real estate, through a plan that has been vaguely described as a transfer of the equity of the respective debtors in possession.  That exclusive option prevents any secured creditor from exercising a fundamental right:  to credit bid their claim at the time of the sale of the underlying collateral.  In addition, the "proposed plan" is designed to eliminate an auction of the underlying property, a process that often yields the "highest and best offer" for the asset.[1]

The District simply requests that the Court put all parties in this case on an equal footing by allowing competing plans to be filed within a reasonable time of the Debtors' filing of their initial plan, so as to expose the Debtors' Property to the market and maximize (rather than minimize) creditor recoveries in these cases.  This will restore the balance of the equities between the major creditors in this case and the Debtors.  The presumption (albeit rebuttable) that the debtor should have the first "exclusive right" to file a plan is inapposite in this case, given that it is not the Debtors that seek to reorganize, but a solvent stranger to the transaction who is seeking to profit at the expense of the creditors.

For these reasons and as more fully set forth below, the District requests that the Court terminate exclusivity and allow the filing of competing plans to let market forces control.

---

[1]  The District reserves any and all rights claims and defenses with respect to the legality of any proposed plan including but not limited to sovereign immunity, constitutional challenges, determinations of value and classification of claims including but not limited to priority tax claims in the impermissibility of filing the plan primarily designed to negatively impact tax claims.

### Jurisdiction and Venue

1.      On September 19, 2011 (the "**Petition Date**"), TOWN CENTER AT DORAL LLC, LANDMARK AT DORAL EAST LLC, LANDMARK AT DORAL SOUTH LLC, LANDMARK CLUB AT DORAL LLC and LANDMARK AT DORAL DEVELOPERS LLC (collectively, the "**Debtors**") filed separate voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code.  [ECF No. 1, Case No. 11-35884-RAM]; [ECF No. 1, Case No. 11-35885-RAM]; [ECF No. 1, Case No. 11-35886-RAM]; [ECF No. 1, Case No. 11-35887-RAM]; [ECF No. 1, Case No. 11-35888-RAM].

2.      Pursuant to the Debtors' filings, the Debtors have acknowledged their single asset real estate status under the Bankruptcy Code.  *See* [ECF No. 1, Case No. 11-35884-RAM]; [ECF No. 1, Case No. 11-35885-RAM]; [ECF No. 1, Case No. 11-35886-RAM]; [ECF No. 1, Case No. 11-35887-RAM]; [ECF No. 1, Case No. 11-35888-RAM].

3.      On September 22, 2011, this Court granted the Debtors' motion for joint administration, with the instant case, Case No. 11-35884-RAM, designated as the lead case. [ECF No. 8, Case No. 11-35884-RAM]; [ECF No. 8, Case No. 11-35885-RAM]; [ECF No. 8, Case No. 11-35886-RAM]; [ECF No. 6, Case No. 11-35887-RAM]; [ECF No. 6, Case No. 11-35888-RAM].

4.      On October 200, 2100, the United States Trustee appointed a joint committee of unsecured creditors.  [ECF No. 31].

5.      No trustee or examiner has been appointed.

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper in this judicial

district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested in this motion is 11 U.S.C §1121(d).

**Background**

**A.     The Parties**

7.      The Debtors are owners of several parcels of real property located in Miami-Dade County Florida, consisting of approximately 120 contiguous acres of land located on the east side of NW 107 Avenue and the north side of NW 58 Street, a majority of which is zoned TND (Traditional Neighborhood Development) with the remainder zoned IU-1 (for flex office development allowing for light industrial development (the "**Property**").  The Property consists of 16 tracts of vacant land except for an unfinished 4-level parking garage.

8.      The District is a community development district, which is a local unit of special purpose government of the State of Florida created pursuant to Chapter 190, Florida Statutes. On or about August 23, 2005, the Board of County Commissioners, Miami-Dade County, Florida, adopted Ordinance No. 05-153 establishing the District pursuant to the provisions of Chapter 190, Florida Statutes. The District has all the powers granted by Chapter 190, Florida Statues, including, but not limited to, the authority to impose Special Assessments and to enforce all remedies available in the event of default in the payment of Special Assessments.

**B.     The Debtors' Real Property**

9.      All real estate owned by the Debtors is subject to the District's lien.  The lien amount exceeds $71,500,000.00, plus interest, cost and penalties as provided by applicable Florida statute and the Master Trust Indenture with U.S. Bank National Association, as indenture trustee and a First Supplemental Trust Indenture with U.S. Bank National Association, as indenture trustee (collectively the "**Indenture**").

10.     The Debtors' schedules reflect a second priority mortgage lien (subordinate to the District's lien) in favor of AMT in the amount of $103 million, *see* [ECF No. 21 at Schedule D].

11.     The Debtors' schedules also reflect delinquent taxes since 2008 in the amount of $750,000.  *Id.*  Outstanding property taxes as of today total approximately $1,900,000.00.

12.     The Debtors have not secured, maintained or otherwise protected the Property since 2008.

**C.     The Debtors' Plan Sponsor**

13.     On November 15, 2011, the Debtors' filed their Emergency Motion For Entry Of Interim And Final Orders Pursuant to 11 U.S.C. §§ 105(A), 363 AND 364 And Bankruptcy Rules 2002, 4001, 6004 And 6006: (I) Approving (A) Plan Term Sheet And (B) Reimbursement Of Expenses; And (II) Authorizing Postpetition Financing.  [ECF No. 45].  In their motion, the Debtors disclosed that they have selected as their "plan sponsor," Terra Landmark, LLC ("**Terra**").  Id. Although the treatment of creditors under the "proposed plan" remains uncertain, it is clear that the substance of the "proposed plan" is a sale of the Property to Terra in the form of a sale of the Debtors' equity.  Id.  In exchange, Terra has agreed to fund a "capital contribution" in an amount not less than $5 million but not more than $20 million. *Id.*

14.     The Debtors have obtained a DIP loan from Terra to fund the Debtors', the Committee's and Terra's professionals, and have agreed with Terra to certain milestones regarding plan confirmation.  The Debtors have agreed not to solicit higher and better offers from third parties for a competing plan, even if a competing plan would be better for the estate, other than to co-operate with reasonable due diligence requests (the "Window Shop Clause").

15.     The Debtors are now without leverage to negotiate up from Terra's $5 million floor, and Terra has no incentive to increase its capital contribution up from the $5 million floor

except as it calculates is necessary to obtain confirmation following a judicial valuation of the Property.  In sum, the Debtors have agreed to sell the Property to Terra for as little as $5 million, including an unknown amount for unsecured creditors, even though the Property has a tax-assessed value of approximately $36 million and an actual value that is likely much higher.

16.    It has fallen to the creditors to seek a competing plan to maximize the distribution to creditors.  Exclusivity must be terminated to fulfill that purpose.

**Relief Requested**

17.    The District requests entry of an Order terminating the exclusive period during which only the Debtors may file a plan.

**Basis for Relief**

**A. The Court should terminate exclusivity because "cause" exists under Section 1121(d) of the Bankruptcy Code.**

18.    Section 1121(b) of the Bankruptcy Code provides that only a debtor may file a plan, and solicit acceptances thereof, within 120 days and 180 days after the petition date.  See 11 U.S.C. §§ 1121(b) & (c).  Thus, unless exclusivity is terminated, only the Debtors may propose a plan.

19.    On the request of a party in interest, however, a bankruptcy court may for "cause" reduce the debtor's exclusive period.  11 U.S.C. § 1121(d); see also In re Grossinger's Assocs., 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (terminating exclusivity for cause); In re Crescent Beach Inn, Inc., 22 B.R. 155, 160-61 (Bankr. D. Me. 1982) (same); In re Gagel & Gagel, 24 B.R. 674, 675 (Bankr. S.D. Ohio 1982) (denying extension of initial exclusivity period).

20.      Although the Bankruptcy Code does not define "cause," Section 1121(d)(1)2 of the Bankruptcy Code grants the Court great latitude to decide whether to terminate exclusivity. See, e.g., United Savings Assoc. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.), 808 F.2d 363, 372 (5th Cir. 1987) (noting that "Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors"), aff'd, 484 U.S. 365 (1988); Geriatrics Nursing Home v. First Fidelity Bank, N.A. (In re Geriatrics Nursing Home), 187 B.R. 128, 132 (D.N.J. 1995).

21.      Courts often consider a traditional list of factors when determining whether to terminate exclusivity. In re Adelphia Commc'ns., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).3 These factors are not, however, the exclusive basis for finding "cause."  As the Fifth Circuit observed in In re Timbers of Inwood Forest Assocs., Ltd., "the Bankruptcy Code affords several avenues for relief to all creditors, secured as well as unsecured." Id. at 370.  One of those avenues is the termination of a debtor's exclusivity for "cause."  Id.

**B.      "Cause" exists to terminate exclusivity when the Debtors' plan process does not maximize the distribution to creditors.**

22.      The ostensible purpose of the Debtors in commencing these cases is to obtain a distribution for creditors.  The Debtors must advocate this position because there are no jobs to save here, and no going-concern value to preserve.  The Debtors are not even attempting to retain an interest for old equity.  This case, as the Debtors have repeatedly asserted, is solely about blocking the District's foreclosure, ostensibly to obtain a distribution for creditors.[4]  This purpose, however, is not served by the Debtor's plan.

---

[2]  Section 1121 of the Bankruptcy Code was enacted as a compromise of provisions in former Chapter X, which gave the debtor no ability to propose a plan and former Chapter XI, which gave the debtor indefinite and exclusive control over the plan process. See H.R. Rep. No. 95-595, 95th Cong. 1st Sess. at 231-32. Thus, Congress established a presumptive 120-day plan filing exclusivity period, and gave the courts the ability to shorten or extend that period on a case by case basis.  *See* 11 U.S.C. § 1121(b), (c), (d).

[3]  These factors are set forth and analyzed in Section III, *infra*.

[4]  The District does not concede that the Debtors' ostensible purpose is the actual purpose of these chapter 11 filings, and reserves the right to take discovery and challenge the Debtors' good faith at the appropriate time.

23.     The Debtors' duty is not merely to obtain **some** distribution for creditors but to put in place a process to **maximize** the distribution to creditors.  It is black-letter law that a debtor's fiduciary duty is to maximize the value of the estate for distribution.  *See Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (recognizing that the Bankruptcy Code's general policy is "maximizing the value of the bankruptcy estate"); *In re Penick Pharm., Inc.*, 227 B.R. 229, 232 (Bankr. S.D.N.Y. 1998) (stating that there is a duty to maximize value of the estate).  "The Bankruptcy Code recognizes the legitimate interest of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company."  *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 160 (Bankr. D. Me. 1982) (citations omitted).  The Debtors' "proposed plan" does not maximize the value of the estate.

24.     The Debtors' "proposed plan" does not maximize the value of the estates because it does not provide for any competitive process to increase the price at which the Property is sold. As a result of the Window Shop Clause, the Debtors cannot even solicit competing transactions. The Debtors have left it to the creditors to provide that function.  As a practical matter, however, the creditors cannot effectively fulfill that function while there is exclusivity because they cannot file a plan of their own.  Indeed, an interested party is unlikely to invest the time or money pursuing the deal if creditors are constrained by exclusivity.  In sum, the Debtors have put the estates, the District and the unsecured creditors in a position to simply take-it-or-leave-it, having given up all leverage they might have had to drive up Terra's contribution within the $5 to $20 million range.  If exclusivity is terminated, however, rival plans will provide an auction of the Property to ensure the estates obtain the highest bid.[5]

25.     Rival plans will create a competitive process that will maximize the distribution to creditors.  In *In re Landmark Park Plaza Ltd. Partnership*, 167 B.R. 752 (Bankr. D. Conn. 1994), for example, the bankruptcy court ruled that a rival plan should be able to proceed after the debtor filed its plan if the rival plan: "(1) is filed in good faith, e.g., it is not filed to extort

---

[5]  In light of the fact that Terra has obtained what is in essence (and justification) a break-up fee, it should have no objection to such an auction.

better treatment or unduly delay the confirmation process, and (2) has the prospect of maximizing the benefits of chapter 11 to all creditors, i.e., is not frivolous." *Id.* at 754.  In reaching this conclusion, the bankruptcy court considered the policy "that creditors should be given the opportunity to consider competing plans to determine what is in their best interests." *Id.* at 757 (citing *In re River Village Assocs.*, 161 B.R. 127, 142-43 (Bankr. E.D. Pa. 1993) (confirming creditor's liquidating plan, preferred by the creditors, over debtor's reorganization plan); *In re Mother Hubbard, Inc.*, 152 B.R. 189, 195-96 (Bankr. W.D. Mich. 1993) (noting that the "ability to file a competing plan, thereby allowing creditors to cast ballots for multiple plans, also encourages a chapter 11 policy of `creditor democracy'"); *In re Turner Eng'g, Inc.*, 109 B.R. 956, 960-61 (Bankr. D. Mont. 1989) (confirming the debtor's plan over that of the unsecured creditors' committee, even though the latter proposed a higher dividend to unsecured creditors, where the ballots indicated that the former was preferred by the unsecured creditors and the debtor's sole shareholder)).  The *Landmark* court also considered another policy that should have application to this case, which "is that the `bankruptcy court's principal responsibility . . . is to secure for the benefit of creditors the best possible bid'." *Id.* (citing *In re Fin. News Network, Inc.*, 980 F.2d 165, 169 (2nd Cir. 1992)).

26.    The process that must be in place to secure the best bid is one that allows for competitive bidding on the Property or the right to take the Property through a plan transaction. In light of the Window Shop Clause, the Debtors can no longer fulfill their duty to put this process in place.  Accordingly, "cause" exists to terminate exclusivity.

**C.    "Cause" exists to terminate exclusivity under a multi-factor analysis.**

27.    In analyzing whether to terminate exclusivity, courts also often look to a multi-factor analysis using the following nine factors:

> (a)    the size and complexity of the case;
>
> (b)    the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
>
> (c)    the existence of good faith progress toward reorganization;

> (d)  the fact that the debtor is paying its bills as they become due;
>
> (e)  whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (f)  whether the debtor has made progress in negotiations with its creditors;
>
> (g)  the amount of time which has elapsed in the case;
>
> (h)  whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (i)  whether an unresolved contingency exists.

*In re Dow Corning Corp.*, 208 B.R. at 664-65.  "But when a court considers a laundry list of factors in the course of deciding a matter, it is not limited to the elementary task of counting the factors.  Sometimes one or more factors strongly point to a particular result while others point the other way only weakly.  And sometimes certain factors are just more relevant or important than others."  *Id.* at 669.  Here four of the factors are decisively in favor of terminating exclusivity: the size and complexity of the case, the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information, whether the debtor has made progress in negotiations with its creditors, and whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands.  These four factors are simply more important or subsume the remaining factors.

28.  First, the case is neither large nor complex.  The Debtors have no employees and no operations.  The Property is mostly vacant land.  In light of the Debtors' response to the District's motion for relief from stay, it would seem that the extent of the Debtors' involvement with maintaining the Property has been simply to padlock the fence gate.  Moreover, the record in these bankruptcy cases speaks to the fact that these cases are neither large nor complex.  The Debtors have had no first-day motion practice, and except for Debtors' counsel's retention application, no motion or application was filed and no hearing was conducted during essentially the first six weeks of this case.  Finally, although the "proposed plan" is anticipated to present

novel and difficult legal issues, the terms of the "proposed plan" as revealed by the Debtors so far are not complex.

29.     Second, in the circumstances of this case, the Debtors have had sufficient time to permit them to negotiate a plan of reorganization and prepare adequate information.  In the first 11 weeks of this case, the only substantive motion practice the Debtors have had to handle is the District's motion for relief from stay and the Debtors' own DIP financing motion.  The Debtors have otherwise had 11 uninterrupted weeks to prepare adequate information and to negotiate a plan.  Moreover, the Debtors have not been operating for approximately three years.  The universe of stakeholders—the District, the bondholders, AmT CADC Joint Venture, LLC, insider creditors and trade creditors—was well-known, as was the amount of the claims asserted by each.  The Debtors have also been in contact with Terra since before the Petition Date.  So, all the pieces necessary for the Debtors to formulate and negotiate a plan have been in place since at least the Petition Date, and the Debtors have had the better part of the 11 weeks since the Petition Date to assemble adequate information and to negotiate the plan.

30.     Third, the Debtors are using exclusivity to pressure creditors to accede to the Debtors' demands.  In substance and effect, the "proposed plan" is the sale of the Property.  However, the Debtors and Terra are attempting to strip the District of its credit-bid rights by characterizing the "proposed plan" as an equity investment.[6]  Exclusivity prevents the District from proposing a sale plan or its own plan transaction that would preserve its credit-bid rights, and expose the Property to the market to maximize creditor recoveries.

31.     The foregoing factors weigh heavily in favor of terminating exclusivity.  Of the remaining factors, only some weigh weakly against terminating exclusivity.  One such factor is the existence of good faith progress toward reorganization.  Although it is true that the Debtors appear to be headed to filing a plan, the linchpin of the "good faith" of that plan is maximizing

---

[6]  The District does not concede that the form of the "proposed plan" transaction as a putative equity investment is controlling in respect of the District's credit-bid rights, and reserves for the appropriate time all rights to object to a plan that does not preserve the District's credit bid.

the distribution to creditors.  Failing to provide for a plan that provides for a competitive process undermines this putative good faith.  Second, the Debtors are not—and have not for three years—been paying their debts as they come due.  This weighs in favor of terminating exclusivity.  Third, as to the viability of the proposed plan transaction, the Court has ruled that the District's motion for relief from stay, which challenges to the viability of the plan, should be heard in January, together with the hearing of the adequacy of the disclosure statement.  Fourth, although this case is not yet three months old, which is a relatively short time that may be perceived to weigh against terminating exclusivity, the bonds have been in default for three years, the District filed the state court action for foreclosure years ago, and on the eve of a judgment of foreclosure, the Debtors filed bankruptcy to further the interests of Terra .  Fifth, there do not appear to be any unresolved contingencies.

32.     The analysis is not simply about counting factors, but is also about the weight to be given to each factor.  Here, the decisive facts—that the Property is only vacant land, that the Debtors have no operations or employees, that the Debtors have had ample opportunity since the petition date to commence negotiation and structuring its proposed plan, and that the Debtors are using exclusivity to pressure creditors—all weigh in favor of terminating exclusivity.

33.     Finally, "[w]hen [a court] is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward.  And that is a practical call that can override a mere toting up of the factors." *In re Down Corning Corp.*, 208 B.R. at 670.  Terminating exclusivity will facilitate moving this case to the Debtors' ostensible end: it will foster a competitive process that will maximize the value of the Property for the estates and thereby maximize distributions to the creditors.  Accordingly, "cause" exists to terminate exclusivity.

## Conclusion

WHEREFORE, **LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT** respectfully requests the entry of an Order granting this Motion, terminating the exclusive period during which only the Debtors may file a plan and awarding such further relief deemed just and proper.

Dated:   December 14, 2011

Respectfully submitted,

**Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3553
Facsimile: (305) 789-3395

By  /s/ Patricia A. Redmond
     Patricia A. Redmond
     predmond@stearnsweaver.com
     Florida Bar No. 303739
     Eric J. Silver
     esilver@stearnsweaver.com
     Florida Bar No. 057262

*Counsel for the District*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 14, 2011, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF, which is incorporated here by reference, or by first class U.S. mail for those counsel or parties identified on the Service List below, who are not authorized to receive electronically Notices of Electronic Filing.

  /s/ Patricia A. Redmond          
Patricia A. Redmond

## SERVICE LIST

**Notice will be electronically mailed to:**

Jere L. Earlywine on behalf of Interested Party FLORIDA PRIME HOLDINGS, LLC
        jearlywine@hgslaw.com

C Craig Eller on behalf of Creditor AmT CADC Venture, LLC
        celler@broadandcassel.com

Jordi Guso on behalf of Creditor Terra World Investments, LLC
        jguso@bergersingerman.com, fsellers@bergersingerman.com;
        efile@bergersingerman.com

Phillip M. Hudson III on behalf of Interested Party FLORIDA PRIME HOLDINGS, LLC
        pmhudson@arnstein.com, rkcummings@arnstein.com; jtunis@arnstein.com;
        hbabcock@arnstein.com; hpiloto@arnstein.com; akang@arnstein.com;
        befernandez@arnstein.com

John B. Hutton III on behalf of Creditor U.S. Bank National Association as Trustee
        huttonj@gtlaw.com, thompsonc@gtlaw.com; mialitdock@gtlaw.com;
        miaecfbky@gtlaw.com

Mindy A. Mora on behalf of Debtor Landmark Club at Doral, LLC
        mmora@bilzin.com, laparicio@bilzin.com; cvarela@bilzin.com; eservice@bilzin.com;
        lflores@bilzin.com; abeck@bilzin.com

Glenn D Moses on behalf of Creditor Committee Creditor Committee
        gmoses@gjb-law.com, gjbecf@gjb-law.com

Office of the US Trustee
        USTPRegion21.MM.ECF@usdoj.gov

Patricia A Redmond on behalf of Interested Party Landmark at Doral Community Development
        District, predmond@stearnsweaver.com, jrivera@stearnsweaver.com;
        rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com;

Melinda S Thornton on behalf of Creditor Miami-Dade County Tax Collector
        cao.bkc@miamidade.gov


**Notice will be conventionally mailed to:**

Michael Eckert
POB 6526                                        Daniel Y. Gielchinsky
Tallahassee, FL 32314                           1450 Brickell Ave #2300
                                                Miami, FL 33131

#1411759 v1