UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                                                Case No. 11-35884-RAM

Town Center at Doral, LLC, et al.,[1]                            Chapter 11

        Debtors.                                                              (Jointly Administered)
_____/

### DEBTORS' RESPONSE IN OPPOSITION TO MOTION OF THE DISTRICT TO TERMINATE EXCLUSIVITY

TOWN CENTER AT DORAL, LLC, LANDMARK AT DORAL EAST, LLC, LANDMARK AT DORAL SOUTH, LLC, LANDMARK AT DORAL DEVELOPERS, LLC, AND LANDMARK CLUB AT DORAL, LLC (collectively the "Debtors"), by and through undersigned counsel, hereby file their response in opposition (the "Response") to the *Motion of the District to Terminate Exclusivity* [ECF No. 83] (the "Motion") and state as follows:

### PRELIMINARY STATEMENT

When faced with an effort by the District[2] to obtain title to the Debtors' property through foreclosure, the Debtors sought bankruptcy protection in an effort to preserve the prospect of a distribution to the holders of over $100 million in unsecured debt. Although the Debtors' inability to refinance its obligations is largely driven by the death of their principal and well-known market conditions, the District has been unrelenting in its efforts to capitalize on the Debtors' misfortune and wrest control of the property for its own benefit. Indeed, the District has

---

[1] The last four digits of each Debtor's tax identification number are: (i) Town Center at Doral, LLC [1866]; (ii) Landmark at Doral East, LLC [6616]; (iii) Landmark at Doral South, LLC [6676]; (iv) Landmark Club at Doral, LLC [6797]; and (v) Landmark at Doral Developers, LLC [6762]. The Debtors' mailing address is 701 W. Cypress Creek Road, Suite 303, Fort Lauderdale, Florida 33309.

[2] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

elected its remedy by obtaining stay relief from this Court to continue its foreclosure efforts to judgment while the Debtors pursue their reorganization strategy.[3]

It is therefore rather ironic that the District now attempts to cloak itself as the champion of the interests of the very unsecured creditors that it simultaneously seeks to foreclose out. Scrutiny reveals that the District's motives are not as magnanimous as it would have the Court believe. The Motion is a transparent attempt to force a default under the debtor-in-possession financing facility previously approved by this Court in an effort to choke off the Debtors' source of funding and its ability to reorganize. Indeed, at deposition on December 19, 2011, Craig Wrathell, the District Manager, testified that the bondholders had not communicated to him or to the District's board any intent to file a competing plan.

The Debtors, with this Court's approval (and over the District's objection), obtained post-petition financing so that it could pursue a plan of reorganization. The Debtors have filed such a plan in good faith [ECF No. 94] and should be afforded at least one opportunity to attempt to confirm its plan over the District's inevitable opposition.

## ARGUMENT

### A. The Motion Is a Transparent Effort to Force a Default Under the DIP Financing Facility

1. The District's actions, both pre- and post-petition, are all designed to achieve one end – a foreclosure sale for the District's benefit. It was the District's foreclosure action that precipitated the Debtors' bankruptcy filing and, since filing, the District has sought and obtained stay relief to proceed to a foreclosure judgment on a parallel track to the Debtors' efforts to reorganize. This fact alone should be dispositive of the District's motion, as the bargain implicit in allowing the District to prosecute its foreclosure action is that the Debtors will be allowed to

---

[3] *See* ECF No. 75.

continue to attempt to reorganize at least until the District can obtain its foreclosure judgment (without prejudice, of course, to the District's ability to oppose the Debtor's plan or other relief that it may seek on any legitimate basis). By obtaining stay relief, the District elected its remedy and should not be allowed to have its proverbial cake while eating it too.

2.  The District also opposed the Debtors' debtor-in-possession financing arrangement with Terra Landmark, LLC ("Terra"), despite such financing not encumbering any of the District's collateral and despite Terra being the only financing source available to the Debtors. Again, the District's opposition was designed to starve the Debtors of funds, thereby dooming their reorganization efforts. The District argued then, as it does now, that the Limited Lockup provisions under the debtor-in-financing arrangement with Terra deprive creditors of a chance to achieve a better result through competitive bidding.

3.  This Court, however, recognized that the debtor-in-possession financing was necessary to preserve any prospect of a return to any creditor other than the District and approved the proposed DIP financing along with protections running in favor of Terra, including the Limited Lockup provision which restricts only the Debtors from pursuing alternative transactions. The committee is not so restricted, and it is the committee and not the District, who is the appropriate party to be pursuing the interests of unsecured creditors.

4.  Among other protections, the DIP financing order provides that "the expiration or termination of the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization under section 1121 of the Bankruptcy Code without the solicitation and filing of acceptances thereof" constitutes an Event of Default, thereby authorizing Terra to terminate the debtor-in-possession financing facility and refuse to make further loans or advances thereunder.

5.  Accordingly, this Motion is yet another attempt by the District to stymie the Debtors' bankruptcy case. Despite testimony from the District Manager that he is unaware of

any competing plan in the works, the District seeks to terminate the initial exclusivity period afforded the Debtors pursuant to 11 U.S.C. § 1121 because doing so will advance its foreclosure effort. The relief requested by the District, if granted, will result in the occurrence of an Event of Default, and Terra has indicated that it will refuse to continue funding the Debtors' reorganization efforts. This is precisely the result that the District desires, and the Court should not validate the District's transparent gambit.

B. **The District Cannot Meets Its High Burden of Proof to Establish "Cause"**

6. The District bases the Motion on section 1121(d) of the Bankruptcy Code, which states in relevant part that "on request of a party in interest made within the respective periods … and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d). By moving to terminate exclusivity, the District has assumed the heavy burden of demonstrating the existence of cause. *In re Fountain Powerboat Industries, Inc*. 2009 WL 4738202, at *2 (Bkrtcy. E.D.N.C. 2009); *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 132 (D.N.J. 1996); *In re Interco, Inc.*, 137 B.R. 999, 1000 (Bankr. E.D. Mo. 1992). Congress elected to provide a debtor with a period of time to attempt to negotiate for consensual plan terms and to foster a debtor's efforts to reorganize; reduction of that exclusivity period is a "serious matter" that should not be granted "routinely or cavalierly" nor based solely on the largest creditor's dissatisfaction with a proposed plan. *In re Fountain Powerboat Industries, Inc*. 2009 WL 4738202 at *6-*7.

7. Although "cause" is not defined under the Bankruptcy Code, caselaw sets forth a non-exhaustive list of factors that courts consider in determining whether sufficient cause exists to alter the exclusivity period:

    (1)    The existence of good faith progress towards reorganization;
    (2)    The presence/absence of evidence that the debtor is extending exclusivity to pressure creditors;
    (3)    The fact that the debtor is paying its bills as they come due;

4

(4) The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
(5) Whether the debtor has demonstrated reasonable prospects for filing a viable plan;
(6) Whether the debtor has made progress in negotiations with its creditors;
(7) The amount of time which has elapsed in the case;
(8) Whether an unresolved contingency exists; and
(9) The size and complexity of the case.

*See, e.g.*, *In re Adelphia Communications Corp.,* 352 B.R. 578, 586-587 (Bankr. S.D.N.Y. 2006); *In re Dow Corning Corp.,* 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *In re McLean Industries*, Inc., 87 B.R. 830, 834 (Bkrtcy. S.D.N.Y. 1987).

8. In addition to the foregoing factors, which are typically applied to a debtor's request to extend the exclusivity period, courts have looked for the existence of "major obstacles" to successful reorganization such as gross mismanagement and acrimonious feuding between the debtor's principals before terminating exclusivity. *In re Texaco, Inc.*, 81 B.R. 806, 813 (Bankr. S.D.N.Y. 1988); *In re Grand Traverse Development Co., Ltd.*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); *In re Fountain Powerboat Industries, Inc.*, 2009 WL 4738202 at *2.

9. Here there are no allegations of mismanagement or of feuding and the District is unable to cite to a single case terminating exclusivity in the initial exclusive period on facts similar to those present here. Indeed, not only is there no "major obstacle" to the Debtors' proceeding but the District effectively concedes that five of the nine applicable factors militate in the Debtors' favor and attempts to simply wish them away without authority. Motion at ¶ 27 ("Here four of the factors are decisively in favor of terminating exclusivity . . . [t]hese four factors are simply more important or subsume the remaining factors.")

10. Although the District drops a footnote reserving for itself the right to complain later, the District does not take issue in the Motion with the Debtors' good faith progress toward reorganization. The Debtors have obtained financing and have filed a plan within the first 90 days of their chapter 11 cases, which demonstrates that they are making good faith progress on a reasonable timetable, thereby satisfying both the first and seventh factors enumerated above.

5

Although the District may take issue with the Debtors' plan, the District has not alleged that the Debtors' cannot present a viable plan nor does the District complain that the Debtors are not paying their bills as they come due.  The third and fifth factors also support the Debtors.  Finally, there are contingencies in this case, including the Motion to Value Collateral presently pending. [ECF No. 81].

11.    The factors that the District claim "are decisively in favor of terminating exclusivity" are actually neutral or support leaving exclusivity in place.  The District claims that "the case is neither large nor complex" because the Debtors have no employees or operations and because the Debtors did not engage in extensive first-day motion practice (a fact that flows from its lack of employees and ongoing operations).  This notwithstanding, these cases involve five debtors, sixteen tracts of land comprising one hundred seventeen acres, and a complex capital structure involving six secured creditors (excluding the Miami-Dade County tax collector), combined collateralized debt of approximately $187 million, and over $17 million in unsecured debt.  A portion of the collateralized debt is secured by liens on different parcels of the Debtors' Property.  There is an active creditors committee, who is vigorously representing the interests of its constituency in these cases.  The Debtors have filed a motion to obtain a valuation of their Property to determine the extent that creditors hold secured claims.  Accordingly, although these cases do not include issues akin to those raised in General Growth or General Motors, by many measures they are large and complex cases in this District that justify at least the initial 120-day exclusivity period prescribed by Congress.

12.    The District next suggests that the Debtors have had sufficient time to prepare and gather adequate information to file a plan of reorganization.  On this front, the Debtors agree. The Debtors have filed their *Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 94] (the "Plan").  The Debtors do not agree, however, that exclusivity should

6

now be terminated but, to the contrary, believe that the Debtors should now be afforded time to negotiate and solicit acceptances of their Plan from the District (however unlikely) and other creditors. The District's suggestion that this factor decisively supports terminating exclusivity is nothing more than bluster.

13.     Finally, the District argues that the Debtors are using exclusivity to "pressure creditors to accede to the Debtors' demands" simply because the Debtors' Plan is not as appealing to the District as a foreclosure sale or credit bid in a section 363 sale would be. If the District's position were meritorious, any debtor that proposed a plan that appeared at first to be nonconsensual would be using exclusivity to apply undue pressure to creditors. Moreover, the District is not an unsophisticated creditor that is likely to be bullied into submission – to the contrary, it appears fully capable of asserting its rights and presenting an opposition to the Debtors' Plan should it so choose. The District has not alleged that it or any other creditor has felt any untoward pressure in the first 90 days of these cases. This factor also supports the continuation of exclusivity.

## CONCLUSION

14.     The District has elected its remedy by obtaining stay relief to pursue a foreclosure judgment. In the interim, the Debtors should be afforded a reasonable opportunity to pursue confirmation of its Plan and to negotiate with its creditors. The District has not demonstrated that termination of exclusivity is warranted and, to the contrary, it appears obvious that the District merely pretends to speak for unsecured creditors when it is in fact promoting its own interests to their detriment. The Motion must be denied.

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that the Court (i) deny the Motion, and (ii) grant such other and further relief as the Court deems appropriate.

Date:  December 20, 2011

Respectfully submitted,

7

        **BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Attorneys for Debtors*
1450 Brickell Ave, Suite 2300
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By:   */s/ Mindy A. Mora*
      Mindy A. Mora
      Florida Bar No. 678910
      mmora@bilzin.com
      Jeffrey I. Snyder
      Florida Bar No. 21281
      jsnyder@bilzin.com