

**ORDERED in the Southern District of Florida on December 20, 2011.**

_____
**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Case No.  11-35884-RAM

Town Center at Doral, LLC, et al.,[1]                     Chapter 11

        Debtors.                                    (Jointly Administered)
_____/

**FINAL ORDER GRANTING DEBTORS' EMERGENCY**
**MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363,**
**AND 364 AND BANKRUPTCY RULES 2002, 4001, 6004, AND 6006:**
**(I)  AUTHORIZING POSTPETITION FINANCING; AND**
**(II) APPROVING EXPENSE REIMBURSEMENT**

---

[1]      The last four digits of each Debtors' tax identification number are: (i) Town Center at Doral, LLC [1866]; (ii) Landmark at Doral East, LLC [6616]; (iii) Landmark at Doral South, LLC [6676]; (iv) Landmark Club at Doral, LLC [6797]; and (v) Landmark at Doral Developers, LLC [6762].  The Debtors' mailing address is 701 W. Cypress Creek Road, Suite 303, Fort Lauderdale, Florida 33309.

THIS CAUSE came on before the Court on December 5, 2011 at 10:00 a.m. (the "Final Hearing") on the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively the "Debtors") for entry of a final order (as set forth herein, the "Final Order"), (i) approving, pursuant to sections 105(a), 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the term sheet (the "Term Sheet"), by and between the Debtors and Terra Landmark, LLC ("Terra Landmark" or "DIP Lender"), dated November 15, 2011 and attached to the Motion as Exhibit "B", and (ii) approving reimbursement of expenses incurred by Terra Landmark in furtherance of the Debtors' reorganization efforts; and (iii) authorizing, pursuant to sections 105(a), 364(c) and Bankruptcy Rules 2002 and 4001, the Debtors to obtain postpetition financing (the "Postpetition Financing") in an aggregate principal amount not to exceed $150,000 (plus accrued interest on the aggregate principal amount) from Lender on an interim basis and up to $750,000 on a final basis, upon the terms and conditions set forth in this Final Order.  Upon consideration of the record, the response [ECF No. 54] (the "Response") of Landmark at Doral Community Development District (the "District"),[3] and the arguments

---

[2]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

[3]    Each of Florida Prime Holdings, LLC and U.S. Bank National Association, as Indenture Trustee for certain bonds issued by Landmark at Doral Community Development District, filed a joinder to the Response.

MIAMI 2849790.2 7945135741

of the parties in interest, and this Court having found good and sufficient cause appearing therefor; the Court finds as follows:

A. **Petition Date**.  On September 19, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors continue in possession of their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. **Jurisdiction**.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C. **The Property**.  The Debtors are the fee simple owners of land (approximately 120 contiguous acres) located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida (the "Property").

D. **The Debtors' Obligations**.  As of the Petition Date, the Debtors' obligations include[4] (i) ad valorem tax certificates claims in various amounts, each of which is secured by a statutory lien on the Property, (ii) claims held by Landmark at Doral Community Development District in the aggregate amount of approximately $71,500,000 (exclusive of interest, fees and costs), which claims are secured by statutory liens on the Property; (iii) claims held by AMT CADC Venture, LLC in the aggregate amount of approximately $103,870,058 (exclusive of interest, fees and costs), which claims are

---

[4]    This Order does not constitute an adjudication of the validity, priority, or extent of the pre-petition liens asserted against the Real Property.  All objections to the liens and claims of the pre-petition secured creditors are preserved.

secured by liens on the Property; and (iv) claims held by unsecured creditors in the aggregate amount of approximately $17,536,201, as more fully set forth on the following schedule:

| NAME OF SECURED CREDITOR | AMOUNT OWED (APPROXIMATE PRINCIPAL AMOUNT, EXCLUSIVE OF INTEREST, FEES AND COSTS) | APPLICABLE DEBTOR | WHETHER CLAIM IS DISPUTED, CONTINGENT OR UNLIQUIDATED | DESCRIPTION OF COLLATERAL |
|---|---|---|---|---|
| CDD | $71,500,000 | All | | The Property |
| AMT CADC Venture, LLC | $103,870,058 | All | | The Property |
| Sunshine State Cert III, LLLP | $327,691 | Town Center at Doral | Unliquidated | The portion of the Property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $549,758.43 | Town Center at Doral | Unliquidated | The portion of the Property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $139,220 | Landmark at Doral East, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $112,686 | Landmark at Doral East, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $116,675 | Landmark at Doral South, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral South, LLC |
| Hilda Pico/Ocean Bank | $91,336 | Landmark at Doral South, LLC | Unliquidated | The portion of the Property owned by Landmark at Doral South, LLC |
| BTI Bluegate FTCF, LLC | $41,169 | Landmark Club at Doral, LLC | Unliquidated | The portion of the Property owned by Landmark Club at Doral, LLC |
| Hilda Pico/Ocean Bank | $33,325 | Landmark Club at Doral, LLC | Unliquidated | The portion of the Property owned by Landmark Club at Doral, LLC |

MIAMI 2849790.2 7945135741

| Miami-Dade County (2011 ad valorem taxes) | Unknown | All | Unliquidated | The Property |
|---|---|---|---|---|
| Unsecured Claims | $17,536,201 | All | Some claims are disputed, contingent or unliquidated | None |

E.    **Negotiations**.  Since the Petition Date, the Debtors have been in good faith negotiations with Terra World Investments, LLC ("Terra Investments") regarding the terms of a proposed plan support agreement.

**Findings Regarding the Postpetition Financing**

F.    **Necessity of Postpetition Financing**.    The Debtors require the Postpetition Financing in order to fund the operations of the Debtors prior to confirmation, including the amount of retainers paid to any Court-approved professionals of the Debtors.

G.    **No Credit Available on More Favorable Terms**.    The Debtors as a group have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors as a group are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.    **Use of Proceeds of the DIP Loan.**    Proceeds of the Postpetition Financing shall be used in compliance with the budget, which is attached hereto as Exhibit B (the "Budget") and incorporated herein by reference (the period from the initial

hearing on the Motion through and until February 29, 2012, hereinafter defined as the "Budget Period"), solely to fund the operations of the Debtors prior to confirmation, including the amount of retainers paid to any Court-approved professionals or independent contractors of the Debtors, and to protect and preserve the Property.  The Debtors have reserved the right to file an amended budget in order to make additional adequate protection payments for the limited and exclusive purpose of preserving and protecting the Property; provided, however, that such payments shall be made only as (i) agreed to by the Debtors and consented to by Terra Landmark, or (ii) as ordered by the Court.  The Court finds that such reservation and the use of proceeds described in paragraph 3 herein both represent a valid exercise of the Debtors' business judgment and that such reservation and use is in the best interests of the Debtors' estates, creditors, and all parties in interest.

I. **Payment of Postpetition Interest and Expenses**.  The Debtors are authorized to pay, and the DIP Lender is entitled to receive or claim, up to the amounts set forth in the Budget, (i) any and all interest and fees under the Postpetition Financing, and (ii) the costs and expenses of the DIP Lender in connection with the documentation, monitoring and enforcement of this Final Order, including payment of professional fees.

J. **Extension of Financing**.  The DIP Lender has indicated a willingness to provide the Postpetition Financing to the Debtors in accordance with the Budget and this Final Order, subject to (i) entry of this Final Order, and (ii) findings by the Court that such financing is essential to the Debtor's estates, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims and other protections

granted pursuant to the Final Order and the Postpetition Financing will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Final Order, or any other order, as provided in section 364(e) of the Bankruptcy Code.

K.    **Business Judgment and Good Faith Pursuant to Section 364(e).**  The terms and conditions of the Postpetition Financing, and the fees and costs to be paid thereunder, (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration.  The Postpetition Financing and this Final Order were negotiated in good faith and at arms' length between the Debtors and the DIP Lender.  The DIP Lender will be extending the proceeds of the DIP Loan in good faith and for valid business purposes and uses.  Based upon this good faith extension, the DIP Lender is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code.

L.    **Relief Essential; Best Interest**.  The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' integrated assets and real and personal property.  It is in the best interest of Debtors' estates to be allowed to establish the Postpetition Financing subject to the terms of the Budget and this Final Order.  The Debtors have represented and the Court finds that the Postpetition Financing is a necessary predicate to the filing of the Debtors' and Terra Landmark's proposed joint plan of reorganization and that the filing of such plan is conditioned upon entry of this Final Order.

MIAMI 2849790.2 7945135741

M.      **Entry of Final Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the Motion of the Debtors and the record before this Court with respect to the Motion, and with the consent of the Debtors and the DIP Lender to the form and entry of this Final Order, and good and sufficient cause appearing, it is:

**ORDERED** that:

1.      The Motion is granted in part in accordance with and limited to the terms and conditions set forth in this Final Order.

2.      **Promissory Note**.

(a)      **Approval of Promissory Note**.  The Debtor's execution of a promissory note (the "Promissory Note"), substantially in the form attached hereto as Exhibit "B", in favor of Terra Landmark is  hereby approved, and the terms and conditions of such Promissory Note are incorporated by reference into this Final Order. The DIP Lender shall receive such protections and be entitled to such rights as are set forth in the Promissory Note, and such rights and protections are hereby approved and incorporated by reference into this Final Order.  The Promissory Note is hereby approved for performance by the Debtors and DIP Lender during the Budget Period.  The Debtors and all other relevant parties are expressly and immediately authorized and empowered (i) to execute and deliver to DIP Lender the Promissory Note, (ii) to consummate the transactions described therein, and (iii)  incur and perform on a final basis the Postpetition Financing in accordance with, and subject to, the terms of this Final Order. Subject to the provisions of this Final Order, the Debtors are hereby authorized to

8

perform all necessary acts under the Promissory Note, and pay the principal, interest, fees, expenses, and other amounts described in the Promissory Note as such become due, including, without limitation, attorneys', financial advisors', and accountants' fees, and disbursements as provided for in the Budget, subject to such approvals of this Court are required by the Bankruptcy Code or orders of this Court.   The Promissory Note represents a valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms.

(b)    **Authorization to Borrow**.  In order to enable them to continue to operate their business during the Budget Period, subject to the terms and conditions of this Final Order, the Promissory Note, and the Budget,[5] the Debtors are hereby authorized under the DIP Loan to borrow up to $750,000 during the Budget Period. Notwithstanding any provision of its certificate or articles of incorporation, bylaws, operating agreement, partnership agreement, membership agreement, certificate of formation, certificate of limited partnership, regulations, or comparable governing documents to the contrary, each Debtor is authorized to, and each officer, member, manager, partner, or other comparable authorized signatory of each Debtor is hereby authorized to cause such Debtor to, jointly and severally guarantee the Postpetition Financing of each other Debtor obligated under the Promissory Note, and pledge, mortgage, and grant security interests in the Designated Accounts (defined herein) to secure such Postpetition Financing, and to execute and enter into the Promissory Note.

---

[5]     The Budget shall not be materially amended or modified during the Budget Period absent notice to all parties in interest, an appropriate objection period, and if necessary, further order of this Court.

(c)    **Advances to Designated Accounts.**  Unless otherwise agreed by the DIP Lender, any advance requested by the Debtors and made by the DIP Lender shall be made to one or more debtor in possession operating accounts designated by the Debtors to the DIP Lender which accounts shall be subject to a security interest in favor of the DIP Lender (the "Designated Accounts").  The Designated Accounts shall be maintained at an authorized depository consistent with the United States Trustee guidelines.

(d)    **Application of DIP Proceeds**.  The proceeds of the Postpetition Financing (net of any amounts used to pay fees, costs, and expenses under the Budget) shall be used, in each case in a manner consistent with the terms and conditions of the this Final Order, and as set forth in the Budget for funding the operations of the Debtors prior to confirmation, including the amount of retainers, fees, and expenses paid to any Court-approved professionals or independent contractors of the Debtors, and payment of interest, fees, and costs to the DIP Lender under the Promissory Note.

(e)    **Enforceable Obligations**.  This Final Order and the Promissory Note shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates, and any successors thereto and their creditors, in accordance with their terms.

(f)    **Protection of DIP Lender and Other Rights**.  From and after the Final Hearing Date, the Debtors shall use the proceeds of the extensions of credit under the Postpetition Financing only for the purposes specifically set forth in this Final Order and in strict compliance with the Budget.

(g)    **Superpriority Administrative Claim Status**.  Except with respect to the Carve-Out (defined herein), during the Budget Period, all Postpetition Financing shall be an allowed superpriority administrative expense claim (the "DIP Superpriority Claim," the "DIP Protections") with priority in the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code.  Except as otherwise provided pursuant to the Carve-Out and this Final Order, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code or otherwise, that have been or may be incurred in these proceedings, or in any successor case by conversion of any of the Chapter 11 Cases into a chapter 7 bankruptcy case (each, a "Successor Case"), and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Protections or the Postpetition Financing, or with any other claims of the DIP Lender arising hereunder; provided, however, that as to the proceeds of any claims or causes of action available to the Debtors through the exercise of the powers granted pursuant to §§ 542 – 550 of the Bankruptcy Code ("Avoidance Action Proceeds"), the DIP Lender's claims shall be treated as chapter 11 administrative expense claims (and not superpriority administrative expense claims) and the DIP Lender's claims on account of the Postpetition Financing and all other chapter 11 administrative expense claims shall share *pari passu* in any Avoidance Action Proceeds.

3.    **Authorization to Use Proceeds**.  Pursuant to the terms and conditions of this Final Order, the Postpetition Financing, and the Promissory Note, and in accordance with the Budget, the Debtors are authorized to use the advances described in the Budget

(the "<u>Advances</u>") during the period commencing immediately after the entry of this Final Order and terminating upon the earlier of (i) the conclusion of the Budget Period, or (ii) an Event of a Default under this Final Order for which applicable notice has been given under this Final Order or the Promissory Note, as applicable, and the expiration of any applicable cure period without cure thereof.  The Debtors are only authorized to make or incur any expenditure in accordance with the Budget and this Final Order, absent further order of this Court.  The Debtors are authorized and directed to use the Advances to protect and maintain the Property.  The District has advised the Debtors of currently known expenditures and shall provide a projection of anticipated expenses required to preserve and protect the Property, and the Debtors and the District shall jointly cooperate to ensure that essential maintenance for the Property is performed and paid on a timely basis.  The District shall provide reasonable notice to the Debtors of any request for access to the Property, except any public infrastructure, by any of the District's agents or representatives, or by any person engaged to perform work on the Property at the District's request.  The Court retains jurisdiction to hear and resolve any disputes regarding access, preservation and maintenance of the Property, and payments related thereto.

4.      **The Carve Out.**  Notwithstanding any court approval of the DIP Lender's right to assert a superpriority claim, the DIP Lender's right to payment shall at all times be junior and subject to fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under Section 1930(a), Title 28, United States Code.

MIAMI 2849790.2 7945135741

5.      **Maturity Date**.  All Postpetition Financing of the Debtors owed to the DIP Lender shall be immediately due and payable, and authority to use the proceeds of the Postpetition Financing shall cease on the earlier of (a) April 1, 2012, (b) the effective date of the Plan, or (c) the date upon which a final order is entered by the Bankruptcy Court either (i) converting the Debtors' Chapter 11 case to a case under Chapter 7 (unless expressly agreed to by DIP Lender), (ii) approving one or more sales of all or substantially all of the Debtors' assets pursuant to § 363 of the Bankruptcy Code, (iii) appointing a trustee or examiner (with or without expanded powers) in the Debtors' Chapter 11 Cases, or (iv) dismissal of any of the Debtors' bankruptcy cases (unless expressly agreed to by DIP Lender) (collectively, the "Maturity Date").

6.      **Payment of Compensation**.  Nothing in this Final Order shall be construed as consent to the allowance of, or as an agreed obligation of the DIP Lender to pay, any professional fees or expenses of the Debtors,[6] any Committee or of any person or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget.  The DIP Lender reserves the right to object to any request or application for the payment of professional fees that may be submitted or filed in the Chapter 11 Cases.

7.      **Payment of Postpetition Interest and Expenses**.  The Debtors are authorized to pay, and the DIP Lender is entitled to receive, (a) any and all interest,

---

[6]      Certain professional fees, independent contractor fees, and expenses of such parties being incurred by the Debtor have been guaranteed by Terra Investments pursuant to a separate letter agreement. Nothing in this Final Order shall modify, alter, or amend this guarantee or any other guarantee by the DIP Lender or any of its affiliates of the retainer, fees, and expenses of the Debtor's professionals and independent contractors.

payable upon the Maturity Date except as otherwise provided in this Final Order, and fees under the DIP Loan, and (b) the costs and expenses of the DIP Lender in connection with the Chapter 11 Cases.

       8.    **Events of Default**.

       (a)    The occurrence of any of the following events shall constitute an "Event of Default" under this Final Order:

       (i)    the entry by the Bankruptcy Court or another court of competent jurisdiction of an order disallowing any of the Postpetition Financing obligations or determining that any provision of the Promissory Note is not enforceable according to its terms;

       (ii)    the expiration or termination of the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization under section 1121 of the Bankruptcy Code without the solicitation and filing of acceptances thereof;

       (iii)    the occurrence of an Event of Default under the Promissory Note (and the expiration of any period of cure, grace or notice, if any, set forth in such agreement relating to such default);

       (iv)    failure to meet any of the Milestones (defined herein), unless such failure is excused by Terra Landmark; and

       (v)    entry of an order permitting any of the Debtors' creditors or any party in interest to proceed to a foreclosure sale.

       (b)    Unless and until the Postpetition Financing is irrevocably repaid in full, and all Postpetition Financing obligations that survive termination obligations have

14

been cash collateralized to the reasonable satisfaction of the DIP Lender, the protections afforded to the DIP Lender pursuant to this Final Order, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting any of the Chapter 11 Cases into a Successor Case, or dismissing any of the Chapter 11 Cases, and the DIP Superpriority Claim shall continue in these proceedings and in any Successor Case, DIP Superpriority Claim shall maintain their priority as provided by this Final Order.

9.    **Rights and Remedies Upon Event of Default**.

(a)    The DIP Lender shall not have any obligation to make any further loans or advances to the Debtors under the Promissory Note following the occurrence of an Event of Default.

(b)    Nothing included herein shall prejudice, impair, or otherwise affect the rights of the DIP Lender during an enforcement action to seek any other or supplemental relief in respect of the Debtors, nor shall it impair the DIP Lender's rights, as provided in the DIP Loan Documents, to suspend or terminate the making of loans or advances under the DIP Loan Documents following the occurrence of an Event of Default.

(c)    Nothing herein shall restrict or limit the ability of the DIP Lender to seek payment of any administrative payment related to the Postpetition Financing, including the payment of professional fees.

10.    **Other Rights and Obligations**.

(1)    **Good Faith Under Section 364(e) of the Bankruptcy Code.  No Modification or Stay of this Final Order**.  The DIP Lender has acted in good faith in connection with this Final Order and its reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Loan contemplated by this Final Order, in the event any of the provisions of this Final Order are hereafter modified, stayed, amended, or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, stay, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment, or vacation, any claim or lien granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to the DIP Superpriority Claim.  Because the DIP Loan made pursuant to the Promissory Note is made in reliance on this Final Order, the obligations owed to the DIP Lender prior to the effective date of any stay, modification, or vacation of this Final Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated,

lose their superpriority administrative expense claim status, or be deprived of the benefit of the status of the claims granted to the DIP Lender under this Final Order.

(2)    **Expenses**.  Terra Landmark may reimburse itself for all of its reasonable and necessary expenses (the "Expenses") incurred in connection with the Postpetition Financing and these bankruptcy cases, including, without limitation, all of Terra Landmark's reasonable legal fees and related costs, financial advisory fees, consulting fees and related costs and expenses, from advances funded from the DIP Loan, in such amounts and upon such timing as Terra Landmark deems reasonable and necessary during the term of the DIP Loan, up to the amounts set forth in the Budget. Monthly, Terra Landmark shall furnish notice to the Debtors, the Creditors Committee, and the U.S. Trustee of all Expenses reimbursed to Terra Landmark during the preceding month.

(3)    **Modification of Stay**.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the extent necessary to implement the Promissory Note and this Final Order.  The DIP Lender is authorized to retain and apply payments hereunder in accordance with the provisions of this Final Order.

(4)    **Binding Effect**.  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of any of

17

the Debtors) whether in the Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 Case.

(5) **No Waiver**.  The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Final Order or the Promissory Note shall not constitute a waiver of any of the DIP Lender's rights hereunder or thereunder. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute an express or implicit waiver of, or otherwise impair, the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, (i) the rights of the DIP Lender to (a) request conversion of any of the Chapter 11 Cases to a case under Chapter 7, dismissal of any of the Chapter 11 Cases, or request the appointment of a trustee in any of the Chapter 11 Cases, or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (ii) enforce any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender.

(7) **No Third-Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(8) **Limited Lock-Up**.  Subject in all respects to the fiduciary duties of the Debtors as debtors in possession, upon execution and delivery of the Promissory Note, the Debtors and their respective officers, directors, members, managers, agents, brokers,  representatives, controlling shareholders/investors/partners or affiliates (collectively, "Representatives") shall not solicit or initiate any proposal or discussions

18

for or in connection with, nor advertise or otherwise market to any party the opportunity to make, any equity, debt, combined, or other investment in the Debtors (other than debtor in possession financing that may be provided by Terra Landmark in the Bankruptcy Case), or any possible sale of the Debtors or their assets (including the Property and/or any portion or component thereof), no matter how structured or timed, including without limitation (i) sale of all or any significant or controlling part of the membership interests of the Debtors, (ii) sale or license of all or any significant part of the Debtors' assets including, without limitation, any portion of the Property, or (iii) any merger or other business combination involving the Debtors or otherwise (each of the foregoing proposals or discussions, whether written or oral, an "Alternative Transaction"). The Debtors and their Representatives shall immediately notify Terra Landmark and counsel to the Committee in writing of the receipt of (i) any such proposed or attempted Alternative Transaction, (ii) the receipt of any inquiries, proposals or requests for information relating a proposed Alternative Transaction, or (iii) any request for access to the Property or any portion thereof in furtherance of a proposed Alternative Transaction.  Notwithstanding anything herein to the contrary, the Debtors and the Representatives shall cooperate with all reasonable requests and/or inquiries of the Committee or any third party, including for the purpose of conducting due diligence, in respect of a possible Alternative Transaction.

(9)    **Milestones**.    The Debtors shall be bound by the following Milestones:

    a. On or before December 13, 2011, the Debtors shall file a motion to value the Property so as to determine the allowed amount of secured claims asserted against the Property;

    b. On or before December 19, 2011, the Debtors shall file the Plan and Disclosure Statement;

    c. On or before January 27, 2012, the Bankruptcy Court shall have entered an order approving the Disclosure Statement and setting a hearing to consider confirmation of the Plan;

    d. On or before February 29, 2012, the Bankruptcy Court shall have entered an order confirming the Plan; and

    e. The Effective Date of the Plan shall occur on or before March 16, 2012.

    **(10)** **<u>Milestone Default</u>**.  The failure to meet any Milestone shall constitute an event of default under this Final Order and the Postpetition Financing thereby entitling Terra, in its sole discretion, to terminate its financing commitments and its support for the Plan, and relieving Terra Landmark of any obligation whatsoever to the Debtors, their estates or their successors and assigns, including any obligation under this Final Order and the Promissory Note;

    **(11)** **<u>Amendment</u>**.  The Debtors and the DIP Lender may amend or supplement the Budget, provided that (i) such amendment, in the judgment of the Debtors and the DIP Lender, is either non-prejudicial to the rights of third parties or is not material, and (ii) any material amendment thereof shall be subject to the rights of all parties in interest to object, and provided further that any such objections must be received in writing by the Debtors within five (5) business days' notice of the proposed amendment.

(12)    **Survival of Final Order, Expiration of the Final Order**.  The provisions of this Final Order (including without limitation, the DIP Protections) and any actions taken pursuant hereto shall be effective on the entry hereof ("<u>Effective Date</u>") and shall survive entry of any order which may be entered (i) confirming any Plan in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  The terms and provisions of this Final Order, including the DIP Protections granted pursuant to this Final Order, shall continue in full force and effect.  Notwithstanding the entry of such order, such DIP Protections shall maintain their priority as provided by this Final Order until all the obligations of the Debtors to the DIP Lender pursuant to this Final Order have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the Postpetition Financing or this Final Order which survive such discharge by their terms).  The Postpetition Financing obligations shall not be discharged by the entry of an order confirming any Plan, as the Debtors have waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.  Except as may otherwise be agreed to by the DIP Lender, the Debtors shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of the Postpetition Financing obligations, unless consented to by the DIP Lender, on or prior to the earlier to occur of (i) the effective date of any such Plan, and (ii) the Maturity Date.  If an order dismissing any of the Chapter 11 Cases

under Bankruptcy Code section 1112 or otherwise is at any time entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the DIP Superpriority Claim shall continue in full force and effect and shall maintain its priority as provided in this Final Order until all Postpetition Financing Obligations shall have been indefeasibly paid in cash in full (or, with respect to the Postpetition Financing, otherwise satisfied in a manner agreed to by the DIP Lender), and such DIP Superpriority Claim, shall remain binding on all parties in interest) notwithstanding such dismissal, and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims referred to in (i) above.  For the avoidance of doubt, this provision shall not apply to any bankruptcy case filed by one or more of the Debtors in the future after the closing of these Chapter 11 Cases or a related chapter 7 case.

(13)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the Promissory Note and of this Final Order, the provisions of this Final Order shall govern and control.

(14)    **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon execution and entry on the docket hereof.

(15)    **Objections Overruled**.  All objections to the entry of this Final Order are overruled.

(16)    **No Waivers or Modification of Final Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order

22

without the prior written consent of the DIP Lender and no such consent shall be implied

by any other action, inaction or acquiescence of the DIP Lender.

12.    **No Consolidation.**  Nothing in this Order shall constitute or be deemed to

constitute a substantive consolidation of the bankruptcy estates of the Debtors.

13.    **Effective on Entry.**  This Final Order shall be effective immediately upon

entry.

# # #

Submitted by:
Mindy A. Mora, Esq.
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Ave., Suite 2300
Miami, FL 33131
Tel. (305) 374-7580
Fax (305) 375-7593
mmora@bilzin.com

Copy furnished to:
Mindy A. Mora, Esq.
*(Attorney Mora is directed to serve a copy of this Order upon all interested parties upon
receipt and file a Certificate of Service.)*

MIAMI 2849790.2 7945135741

## EXHIBIT A

Budget

12/4/2011

**Town Center at Doral, LLC** — Case # 11-35884
**Landmark at Doral East, LLC** — Case # 11-35885
**Landmark at Doral South, LLC** — Case # 11-35886
**Landmark Club at Doral, LLC** — Case # 11-35887
**Landmark at Doral Developers, LLC** — Case # 11-35888

**Southern District of Florida**
**Monthly Cash Flow Budget**

| Month # | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | Total | Total | Remaining |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Month Ending | 11/30/2011 Budget | 11/30/2011 Actual | 12/31/2011 Budget | 12/31/2011 Actual | 1/31/2012 Budget | 1/31/2012 Actual | 2/29/2012 Budget | 2/29/2012 Actual | Budget | Actual | Budget |
| **Receipts:** | | | | | | | | | | | |
| Gross Receipts - DIP Loan Funding | $ - | $ - | $ 255,000 | $ - | $ 100,000 | $ - | $ 105,000 | $ - | $ 460,000 | $ - | $ 460,000 |
| **Total Receipts** | $ - | $ - | $ 255,000 | $ - | $ 100,000 | $ - | $ 105,000 | $ - | $ 460,000 | $ - | $ 460,000 |

| | 11/30/2011 Budget | 11/30/2011 Actual | 12/31/2011 Budget | 12/31/2011 Actual | 1/31/2012 Budget | 1/31/2012 Actual | 2/29/2012 Budget | 2/29/2012 Actual | Total Budget | Total Actual | Remaining Budget |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| **Disbursements:** | | | | | | | | | | | |
| Management Fees - Isaac Kodsi | $ - | $ - | $ 30,000 | $ - | $ 10,000 | $ - | $ 10,000 | $ - | $ 50,000 | $ - | $ 50,000 |
| Accounting Fees - Frank DiMarco | | | 2,450 | - | 1,000 | - | 1,550 | - | 5,000 | - | 5,000 |
| Consultant - Fishkind | | | 18,000 | - | 10,000 | - | 12,000 | - | 40,000 | - | 40,000 |
| Appraisal (plus testimony) Fees - Waronker | | | 20,000 | - | 7,500 | - | 7,500 | - | 35,000 | - | 35,000 |
| Legal Fees - Bilzin | | | 92,500 | - | 25,000 | - | 32,500 | - | 150,000 | - | 150,000 |
| Legal Fees - Creditor's Committee | | | 20,000 | - | 15,000 | - | 15,000 | - | 50,000 | - | 50,000 |
| Legal Fees - Berger Singerman | | | 50,000 | - | 25,000 | - | 25,000 | - | 100,000 | - | 100,000 |
| US Trustee | | | 1,625 | - | 3,250 | - | 4,875 | - | 4,875 | - | 4,875 |
| **Total Disbursements** | $ - | $ - | $ 234,575 | $ - | $ 96,790 | $ - | $ 103,550 | $ - | $ 434,875 | $ - | $ 434,875 |

| | 11/30/2011 Budget | 11/30/2011 Actual | 12/31/2011 Budget | 12/31/2011 Actual | 1/31/2012 Budget | 1/31/2012 Actual | 2/29/2012 Budget | 2/29/2012 Actual |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| **Operating Cash:** | | | | | | | | |
| Beginning Cash Balance | $ - | $ - | $ - | $ - | $ 20,425 | $ - | $ 23,675 | $ - |
| Change in Cash | | | 20,425 | - | 3,250 | - | 1,450 | - |
| Operating Cash Balance | $ - | $ - | $ 20,425 | $ - | $ 23,675 | $ - | $ 25,125 | $ - |

2829531_1

## **EXHIBIT B**

Form of Promissory Note

# **PROMISSORY NOTE**

$750,000                                                                          Miami, Florida
                                                              Dated as of December __, 2011

FOR VALUE RECEIVED, each of the undersigned, a Florida limited liability company, promises to pay to the order of TERRA LANDMARK, LLC, a Florida limited liability company, at 2675 South Bayshore Drive, Miami, Florida  33133, or at such other address as may be specified in writing from time to time by the holder hereof, the sum of SEVEN HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($750,000.00), payable together with interest thereon from the date hereof at the rate of fourteen percent (14.00%) per annum upon the unpaid balance from time to time outstanding until maturity, same being payable in lawful money of the United States of America, as follows:

The principal balance, together with all accrued and unpaid interest and any other costs or sums due hereunder, shall become due and payable in full on April 1, 2012.

The principal of this Note may be prepaid in whole or in part at any time and from time to time without penalty or premium.

During the period of any default under the terms of this Note, and from and after maturity, the interest rate on the entire indebtedness then outstanding shall be at the highest rate then permitted by applicable law, or if no such legal limit exists, then at eighteen percent (18%) per annum.  There shall be a five (5) day grace period following the due date of any payment.  If payment is not received within such grace period, a late charge of five percent (5%) of the overdue payment will be assessed.  Additionally, if default is made in the payment of any installment of interest or principal, which remains uncured after the expiration of the grace period, then, at the option of the holder hereof, the entire outstanding principal sum, together with all accrued and unpaid interest shall become immediately due and payable.

The undersigned agrees to pay all filing fees and similar charges and all costs incurred by the holder hereof in collecting or securing or attempting to collect or secure this Note, including reasonable attorney's fees, whether or not any action is commenced, involving litigation and/or appellate, administrative or bankruptcy proceedings.  The undersigned agrees to pay any documentary stamp taxes, intangible taxes, sales taxes or other taxes (except for federal or Florida franchise or net income taxes) which may now or hereafter apply to this Note and the undersigned agrees to indemnify and hold the holder hereof harmless from and against any liability, costs, reasonable attorneys' fees, penalties, interest or expenses relating to any such taxes, as and when the same may be incurred.

In any action or proceeding brought in connection with this Note, the undersigned hereby: (a) waives demand, presentment, protest, notice of dishonor, suit against or joinder of any other person, and all other requirements necessary to charge or hold the undersigned liable with respect to the Loan; (b) waives any right to immunity from any such action or proceeding and waives any immunity or exemption of any property, wherever located, from garnishment, levy, execution, seizure or attachment prior to or in execution of judgment, or sale under execution or other process for the collection of debts; (c) waives any right to interpose any set-off or non-compulsory counterclaim or to plead laches or any statute of limitations as a defense in any such action or proceeding, and waives (to the extent lawfully waivable) all provisions and requirements of law for the benefit of the undersigned now or hereafter in force; (d) submits to

the jurisdiction of the state and federal courts in the State of Florida for purposes of any such action or proceeding; and (e) agrees that the venue of any such action or proceeding may be laid in Miami-Dade County, Florida and waives any claim that the same is an inconvenient forum. So long as the chapter 11 bankruptcy cases of each of the undersigned is pending, the United States Bankruptcy Court for the Southern district of Florida shall have exclusive jurisdiction over the sums due hereunder.

The sums due under this Note shall not be subject to offset, deduction, or claims in the nature thereof which any maker, endorser or guarantor hereof may have against the holder hereof; each such maker, endorser and guarantor hereby waives any such claim of offset, deduction, or any claim in the nature thereof.

The total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law, and any excess portion of such charges that may have been paid shall be deemed to have been prepayments of principal.

This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

LANDMARK AT DORAL EAST, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

TOWN CENTER AT DORAL, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

LANDMARK AT DORAL SOUTH, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

LANDMARK AT DORAL DEVELOPERS, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

LANDMARK CLUB, LLC

By:_____
Name: Isaac Kodsi
Its: Vice President

MIAMI 2829532.2 7945135741