UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                                                 Chapter 11

TOWN CENTER AT DORAL, L.L.C.,           Case No. 11-35884-RAM
*et al.,*                                                              Jointly Administered

        Debtors.
_____/

*EMERGENCY* MOTION TO ALLOW PARTY-IN-INTEREST TO
PARTICIPATE IN PENDING MOTIONS, MATTERS AND RELATED DISCOVERY

**(Emergency Hearing Requested Pursuant to Local Rule 9075-1)**

**Florida Prime Holdings, LLC respectfully requests the Court consider this motion on an emergency basis and set a hearing for Friday, January 6, 2012 as discovery commences on Monday, January 9, 2012, and Florida Prime Holdings, LLC is in need of the relief requested in this motion prior to that day.**

**FLORIDA PRIME HOLDINGS, LLC** a Delaware limited liability company, through undersigned counsel, moves for the entry of an order authorizing it and its counsel to participate in all pending motions, matters and related discovery. In support, Florida Prime Holdings, LLC, states as follows:

**Jurisdiction and Venue**

1.     On September 19, 2011 (the "**Petition Date**"), the Debtors filed separate voluntary petitions for relief pursuant to Chapter 11 of the Title 11 of the United States Code. [ECF No. 1, Case No. 11-35884-RAM]; [ECF No. 1, Case No. 11-35885-RAM]; [ECF No. 1, Case No. 11-35886-RAM]; [ECF No. 1, Case No. 11-35887-RAM]; [ECF No. 1, Case No. 11-35887-RAM].

2.     Pursuant to the Debtors' filings, the Debtors have elected single asset real estate status under the Bankruptcy Code. See [ECF No. 1, Case No. 11-35884-RAM]; [ECF No. 1, Case No. 11-35885-RAM]; [ECF No. 1, Case No. 11-35886-RAM]; [ECF No. 1, Case No. 11-35887-RAM]; [ECF No. 1, Case No. 11-35887-RAM].

3.      On September 22, 2011, this Court granted the Debtors' motion for joint administration, with the instant case, Case No. 11-35884-RAM, designated as the lead case. [ECF No. 8, Case No. 11-35884-RAM]; [ECF No. 8, Case No. 11-35885-RAM]; [ECF No. 8, Case No. 11-35886-RAM]; [ECF No. 6, Case No. 11-35887-RAM]; [ECF No. 6, Case No. 11-35887-RAM].

4.      On October 200, 2100, the United States Trustee appointed a joint committee of unsecured creditors. [ECF No. 31].

5.      No trustee examiner has been appointed.

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this motion is 11 §.

## Background

**A.    The Parties**

7.      The Debtors are developers and owners of several parcels of real property located in Miami-Dade County Florida, consisting of approximately 120 contiguous acres located on the east side of NW 107 Avenue and the north side of NW 58 Street, a majority of which is zoned TND (Traditional Neighborhood Development) with the remainder zoned IU-1 (for flex office development allowing for light industrial development (the "**Property**"). The Property consists of 16 individual tracts of land that remain without any vertical construction with the exception of an unfinished 4-level parking garage.

8.      The Debtor LANDMARK AT DORAL EAST, LLC ("**Landmark at Doral East**"), is a Florida limited liability company. Landmark at Doral East owns that portion of the Property described in Exhibit A attached as Parcel A.

9.      The Debtor TOWN CENTER AT DORAL, LLC ("**Town Center**"), is a Florida limited liability company. Town Center owns that portion of the Property described in Exhibit A as Parcel B.

10. Defendant, LANDMARK AT DORAL SOUTH, LLC ("**Landmark at Doral South**"), is a Florida limited liability company. Landmark at Doral South owns that portion of the Property described in Exhibit A as Parcel C.

11. Defendant, LANDMARK AT DORAL DEVELOPERS, LLC ("**Doral Developers**"), is a Florida limited liability company. Defendant, LANDMARK AT DORAL DEVELOPERS, LLC, may claim an interest in all or a portion of the Property described in Exhibit A as Parcel D, pursuant to that Warranty Deed dated January 31, 2005 and recorded February 2, 2005 in Official Records Book 23048, Page 189, Public Records of Miami-Dade County, Florida.

12. Defendant, LANDMARK CLUB AT DORAL LLC (the "**Club**"), is a Florida limited liability company. Club is a Landowner (as hereinafter defined), which owns that portion of the Property described in Exhibit A as Parcel E.

13. LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT (the "**District**) is a community development district, which is a local unit of special purpose government of the State of Florida pursuant to Chapter 190, Florida Statutes. On or about August 23, 2005, the Board of County Commissioners, Miami-Dade County, Florida, adopted Ordinance No. 05-153 establishing the District pursuant to the provisions of Chapter 190, Florida Statutes. The District has all of the powers granted by Chapter 190, Florida Statues, including, but not limited to, the authority to impose Special Assessments and to enforce all remedies available in case of default in the payment of Special Assessments.

14. FLORIDA PRIME HOLDINGS, LLC (the "**Bondholders**") is a Delaware limited liability company. The Bondholders presently own and control 100% of the outstanding Series 2006 Bonds (defined below).

**B.     The District's Creation and Purpose**

15. By statute, the District is empowered to finance and construct public improvements and community facilities such as basic infrastructure (water, sewer, bridges,

roads, transportation systems, parking improvements, conservation areas, etc.). Fla. Stat. § 190.012.

16.     A district is empowered by statute to levy, impose, collect and enforce Special Assessments. Fla. Stat. § 190.011(14).  Districts typically issue bonds, which are sold to raise monies to fund the public improvement projects of the district.  Fla. Stat. § 190.011(9).

17. The power of a district to levy special assessments includes: Benefit Special Assessments to make required payments on the bonds which are issued to finance district facilities and projects. Fla. Stat. §§ 190.021 and 190.022; and "Maintenance Special Assessments", which are levied to maintain and preserve the facilities and projects of the district. Fla. Stat. § 190.021 and 190.022.

18. Both Benefit Special Assessments and Maintenance Special Assessments, until paid, constitute liens upon the Property against which they are assessed, having a lien priority co-equal with *ad-valorem* with real property taxes: Fla. Stat. § 190.021(9).

19. The District's assessment liens "... may be foreclosed by the District in foreclosure proceedings in the name of the district in a court of competent jurisdiction as provided by general law...." Fla. Stat. § 190.026.

20. Pursuant to Resolution No. 2005-11, adopted September 9, 2005, and Resolution No. 2006-08, adopted August 10, 2006, the District authorized the issuance, sale and delivery of not to exceed $75,000,000 in Special Assessment Bonds.

21. Pursuant to Resolution No. 2005-12, adopted October 19, 2005, and Resolution No. 2006-10, adopted September 14, 2006, copies of which are attached as Exhibits "**A**" and "**B**", respectively ("**Debt Assessment Resolutions**"), the District levied Special Assessments on lands within the boundaries of the District that will specially benefit from the facilities and services to be provided by the District as described in the Debt Assessment Resolutions and in its exhibits. The Special Assessments were levied in accordance with Florida law, and the Property has been benefited by the facilities and services constructed using the 2006 Series Bond funds and is therefore validly subject to the assessments.

22. On September 11, 2008, the District adopted Resolution No. 2008-5, a copy of which is attached as Exhibit "**C**" levying a Special Assessment for maintenance and directing the collection of previously levied debt service assessments on lands within the District for Fiscal Year 2009-2010. A semi-annual debt service installment on the Special Assessments was due on May 1, 2009.

23. On October 1, 2006, the District signed a Master Trust Indenture with U.S. Bank National Association, as indenture trustee and a First Supplemental Trust Indenture with U.S. Bank National Association, as indenture trustee. Exhibits "**D**" and "**E**", respectively (collectively the "**Indenture**").

24. The validity of the establishment of the District has already been judicially confirmed. See Exhibit "**F**" Validation Final Judgment at paragraph 3.

**C.    The Series 2006 Bonds**

25. On October 10, 2006, the District issued $30,320,000 Special Assessment Bonds, Series 2006A, and $41,180,000 Special Assessment Bonds, Series 2006B (together, the "**Series 2006 Bonds**"), for the purpose of funding the various improvements included in the District's Capital Improvement Program.

26. The Series 2006 Bonds were issued by the District under and pursuant to Chapter 190, Florida Statutes, and the Indenture. The pledged revenues for the repayment of the Series 2006 Bonds are the amounts paid in connection with Special Assessments imposed pursuant to the Assessment Resolutions and ancillary documents, including but not limited to an Assessment Methodology describing the various parcels and attendant Special Assessments encumbering each respective parcel.

27. The proceeds from the sale of the Series 2006 Bonds provided, and continue to provide for, capital improvements within the District which specially benefit the Property owned by the Debtors.

28. The Debtors, as owners of the Property, are obligated to pay the Special Assessments as required by the Indenture and the Assessment Methodology.

29. The Debtors have failed to pay the Special Assessment installment payments commencing with the installment due on May 1, 2009 and all subsequent installments that have come due as of the date hereof.

30. Pursuant to § 170.10, Florida Statutes and consistent with the Indenture, the Special Assessments have been accelerated and are immediately due and payable, for the benefit

6

Case 11-35884-RAM    Doc 131    Filed 01/05/12    Page 7 of 12

*Case No. 11-35884-RAM*
*Jointly Administered*

of the Bondholders. That amount exceeds $71,500,000.00, accrued interest, cost and penalties as provided by applicable Florida statute and the Indenture.

**D.     The Relationship between the District and the Bondholders**

31.     The relationship between the District and the Bondholders is controlled by the Indenture. See Exhibit "**D**" and "**E**". Without delving too deeply into these massive documents, certain material provisions in the Indenture underscore and demonstrate the simple conclusion that the Bondholders are the ultimate party in interest with respect to the Series 2006 Bonds.

32.     Article VI of the Indenture generally provides that the debt Special Assessments become immediately subject to the lien created by the Indenture in favor of the Bondholders.

33.     Article VII of the Master Indenture (Exh. **D**), entitled Security for Investment and Deposit of Funds, states in pertinent part:

> "All monies received by the Trustee under the Supplemental Indenture for deposit in any fund or account established under the Master Indenture or such Supplemental Indenture shall be considered trust funds, shall not be subject to lien or attachment, except for the lien created by the Indenture, and shall be deposited in a commercial department of the Trustee until or unless invested or deposited as provided in Section 7.2 hereof."

Said otherwise, any funds received by the Indenture Trustee from the District are deemed trust funds for the specific benefit of the Bondholders.

33.     Further, Section 9.06 of the Indenture which addresses the enforcement of the District's right with respect to delinquent debt Special Assessments, generally provides that if the District takes title to the Property through an enforcement action or credit bid right, the District holds that property interest for the benefit of the Bondholders.

34.     Article X of the Indenture entitled Events of Default and Remedies, further demonstrates the District's and Trustee's relevant duties to the Bondholders with respect to declared defaults and the collateral. For example, Section 10.04(c) states:

> "If any Event of Default with respect to a Series of Bonds has occurred and is continuing, the Trustee, in its discretion may, and upon the written request of the Holders of not less than a majority of the aggregate principal amount of the Outstanding Bonds of

such Series and receipt of indemnity to its satisfaction shall, in its own name:

(c)   by action or suit in equity require the Issuer to account as if it were the trustee of an express trust for the Holders of the Bonds of such Series."

35. Section 10.06 highlights, in part, the Bondholders' ability to direct the Trustee with respect to defaults, rights and remedies.

36. Lastly, Section 10.8 demonstrates that all actions by the Trustee are for the benefit of the holders of the Bonds.

### E. The Debtors' Motion to Value Collateral [ECF No. 81]

37. On December 13, 2011, the Debtors filed their motion to value collateral. [ECF No. 81]. That motion is pending and of significant moment to the Bondholders.

38. An evidentiary hearing on the Debtors' motion to value collateral is set for January 18, 2012.

### F. The District's Motion to Terminate Exclusivity [ECF No. 83]

39. On December 14, 2011, the District moved to terminate exclusivity. [ECF No. 83]. In support of its motion, the District argued that the Debtors "proposed plan" is a sale of the Property to Terra Landmark, LLC ("**Terra**") in the form of a sale of the Debtors' equity.

### G. The Debtors' Plan and Disclosure Statement

40. On December 18, 2011, the Debtors filed their Joint Plan of Reorganization. [ECF No. 94].

41. On December 21, 2011, the Debtors filed their Joint Disclosure Statement. [ECF No. 108].

42. A hearing on the disclosure statement is set for January 25, 2012. [ECF No. 110]

### H. Discovery

43. Both the District and the Debtors have commenced discovery. See e.g. [ECF Nos. 125, 126, 127]

44. On January 4, 2012, the Debtors advised counsel for the District that it was their position that the Bondholders could not be participate in these hearings, matters or the discovery

8

related thereto.

## Relief Requested

45.     Bondholders request entry of an order authorizing it and its counsel of record to participate in all matters before this Court given their material beneficial interest.

## MEMORANDUM OF LAW

Although, the term "party in interest" in not defined in the Bankruptcy Code, the Bankruptcy Code does include a provision that contains examples of who or what qualifies as a "party in interest", at least for cases under Chapter 11. See 11 U.S.C. § 1109(b) ("including the debtor, 391 the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee"). However, pursuant to 11 U.S.C. § 102(3), part of the rules of construction of the Code, the word "including" is not to be construed as a limiting term. As such, the list in Section 1109(b) is not an exhaustive list. See In re E.S. Bankest, L.C. 321 B.R. 590, 594 (Bkrtcy. S. D. Fla. 2005), citing, Kaiser Aerospace & Electronics Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1304 n. 11 (11th Cir.), cert. denied, 534 U.S. 827 (2001), quoting 11 U.S.C. § 1109(b); In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985); In re Combustion Engineering, Inc., 391 F.3d 190, 214, n. 21 (3d Cir. 2004); In re Cash Currency Exchange, Inc., 37 B.R. 617, 628 n. 10 (N.D. Ill. 1984) (noting that § 1109(b) must be construed liberally) (citations omitted).

The term party-in-interest "'is generally understood to include all persons whose pecuniary interests are [sic] directly affected by the bankruptcy proceedings.'" In re E.S. Bankest, L.C., 321 B.R. at 584, citing Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.), 71 F.3d 353, 356 (10th Cir.1995) quoting Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 756 (4th Cir.1993); Kapp v. Naturelle, Inc. (In re Ellis), 611 F.2d 703, 706 (8th Cir.1979) (noting that courts construing the term party-in-interest "have reasoned that the interest must be a pecuniary interest in the estate to be administered."). "Because there is no precise definition of the phrase party-in-interest, courts are to make this determination on a case by case basis"  In re E.S. Bankest, L.C. 321 B.R at 595 (citations omitted).

In the present case, and as discussed above, the Bondholders have a significant pecuniary interest in the estate being administered. In fact, they have the largest pecuniary interest by far. Ultimately, the treatment of the Property and whether the Debtors' proposed plan and disclosure statement are approved, impacts the Bondholders directly, as it is their claim and lien rights which are being directly affected. In other words, the Bondholders have a "direct legal interest in the case." See e.g. In re Rimsat, Ltd., 193 B.R. 499, 503 (Bankr. N.D. Ind.1996), if not the most significant; In re Amatex Corp., 755 F.2d at 1041 (potential, future claimants— individuals exposed to asbestos but not yet manifesting symptoms—had a practical stake in the outcome of the debtor asbestos manufacturer's Chapter 11 case to be deemed parties in interest warranting separate representation). As such, the Bondholders must be allowed to fully participate in this bankruptcy proceeding.

## CONCLUSION

It is no secret that the true party in interest holding the only material economic interest herein, which is subject to substantial economic risk imposed by this Chapter 11 proceeding are the Bondholders. All outstanding Series 2006 Bonds are owned by Florida Prime Holdings, LLC, and therefore any act, action or proposed action that may impact those bonds impacts that entity. Moreover, and consistent with the concept of a party in interest, there is no doubt that the Bondholders must be entitled to participate fully in all facets of this case including appearing before this Court, appearing as a party in interest with full rights and powers in respect of any and all pending motions or other requests for relief including but not limited to planning disclosure related matters, and further participating in any and all discovery with respect to any pending motions or other similar matters.

**WHEREFORE**, Florida Prime Holdings, LLC, respectfully requests the entry of an order authorizing it and its counsel to participate in discovery such further relief deemed just and proper.

Dated: January 5, 2012

*Case No. 11-35884-RAM*
*Jointly Administered*

Respectfully submitted,

**ARNSTEIN & LEHR LLP**
Attorneys for **Florida Prime Holdings, LLC**
200 South Biscayne Boulevard, Suite 3600
Miami, Florida  33131
Telephone:    305-374-3330
Facsimile:    305-374-4777
E-Mail:       pmhudson@arnstein.com

By:    /s/ Phillip M. Hudson III
       Phillip M. Hudson III
       Florida Bar No. 518743

### CERTIFICATE OF ADMISSION

**I HEREBY CERTIFY** that I am admitted to the bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

By:    /s/ Phillip M. Hudson III
       Phillip M. Hudson III

*Case No. 11-35884-RAM*
*Jointly Administered*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF and served this 5th day of January, 2012:

Via CM/ECF:

- C Craig Eller — celler@broadandcassel.com
- Jordi Guso — jguso@bergersingerman.com
- John B. Hutton III — huttonj@gtlaw.com
- Mindy A. Mora — mmora@bilzin.com
- Office of the US Trustee — USTPRegion21.MM.ECF@usdoj.gov
- Patricia A Redmond — predmond@stearnsweaver.com
- Melinda S Thornton — cao.bkc@miamidade.gov

Via U.S. Mail:

Daniel Y. Gielchinsky
1450 Brickell Ave #2300
Miami, FL 33131

By: /s/ Phillip M. Hudson III
Phillip M. Hudson III

9927018.1