# EXHIBIT D

# MASTER TRUST INDENTURE

between

## LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT

and

## U.S. BANK NATIONAL ASSOCIATION,
### As Trustee

**Dated as of October 1, 2006**

relating to

## LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT
## (CITY OF DORAL, FLORIDA)
## SPECIAL ASSESSMENT BONDS

# **TABLE OF CONTENTS**

PAGE

ARTICLE I
DEFINITIONS

ARTICLE II
THE BONDS

SECTION 2.01.    Amounts and Terms of Bonds; Details of Bonds ....................................18
SECTION 2.02.    Execution ................................................................................................19
SECTION 2.03.    Authentication; Authenticating Agent ........................................................19
SECTION 2.04.    Registration and Registrar ......................................................................20
SECTION 2.05.    Mutilated, Destroyed, Lost or Stolen Bonds..............................................20
SECTION 2.06.    Temporary Bonds.....................................................................................21
SECTION 2.07.    Cancellation and Destruction of Surrendered Bonds...............................21
SECTION 2.08.    Registration, Transfer and Exchange ......................................................21
SECTION 2.09.    Persons Deemed Owners .......................................................................22
SECTION 2.10.    Limitation on Incurrence of Certain Indebtedness...................................22
SECTION 2.11.    Qualification for The Depository Trust Company....................................22

ARTICLE III
ISSUE OF BONDS

SECTION 3.01.    Issue of Bonds.........................................................................................24

ARTICLE IV
ACQUISITION OF PROJECT

SECTION 4.01.    Project to Conform to Plans and Specifications; Changes........................28
SECTION 4.02.    Compliance Requirements .......................................................................28

ARTICLE V
ACQUISITION AND CONSTRUCTION FUND

SECTION 5.01.    Acquisition and Construction Fund .........................................................29

ARTICLE VI
SPECIAL ASSESSMENTS; APPLICATION THEREOF TO FUNDS AND ACCOUNTS

SECTION 6.01.    Special Assessments; Lien of Indenture on Pledged Revenues.................31
SECTION 6.02.    Funds and Accounts Relating to the Bonds .............................................31
SECTION 6.03.    Revenue Fund ..........................................................................................32
SECTION 6.04.    Debt Service Fund....................................................................................33
SECTION 6.05.    Debt Service Reserve Fund......................................................................34
SECTION 6.06.    Bond Redemption Fund ...........................................................................37
SECTION 6.07.    Drawings on Credit Facility......................................................................37
SECTION 6.08.    Procedure When Funds Are Sufficient to Pay All Bonds of a Series........38
SECTION 6.09.    Certain Moneys to Be Held for Series Bondowners Only........................38
SECTION 6.10.    Unclaimed Moneys ..................................................................................38

ARTICLE VII
SECURITY FOR AND INVESTMENT OR DEPOSIT OF FUNDS

SECTION 7.01.    Deposits and Security Therefor ................................................39
SECTION 7.02.    Investment or Deposit of Funds................................................39
SECTION 7.03.    Valuation of Funds....................................................................40

ARTICLE VIII
REDEMPTION AND PURCHASE OF BONDS

SECTION 8.01.    Redemption Dates and Prices ...................................................41
SECTION 8.02.    Notice of Redemption and of Purchase ...................................42
SECTION 8.03.    Payment of Redemption Price ..................................................43
SECTION 8.04.    Partial Redemption of Bonds....................................................44

ARTICLE IX
COVENANTS OF THE ISSUER

SECTION 9.01.    Power to Issue Bonds and Create Lien .....................................45
SECTION 9.02.    Payment of Principal and Interest on Bonds............................45
SECTION 9.03.    Special Assessments; Re-Assessments. ....................................46
SECTION 9.04.    Method of Collection ................................................................46
SECTION 9.05.    Delinquent Special Assessments...............................................46
SECTION 9.06.    Sale of Tax Certificates and Issuance of Tax Deeds; Foreclosure of
                 Special Assessment Liens .........................................................47
SECTION 9.07.    Books and Records with Respect to Special Assessments ........47
SECTION 9.08.    Removal of Special Assessment Liens .....................................48
SECTION 9.09.    Deposit of Special Assessments................................................48
SECTION 9.10.    Construction to be on Issuer Lands...........................................48
SECTION 9.11.    Operation, Use and Maintenance of Project .............................49
SECTION 9.12.    Observance of and Compliance with Valid Requirements........49
SECTION 9.13.    Payment of Operating or Maintenance Costs by State or Others ..............49
SECTION 9.14.    Public Liability and Property Damage Insurance; Maintenance of
                 Insurance; Use of Insurance and Condemnation Proceeds. ......49
SECTION 9.15.    Collection of Insurance Proceeds..............................................51
SECTION 9.16.    Use of Revenues for Authorized Purposes Only .......................52
SECTION 9.17.    Books, Records and Annual Reports .........................................52
SECTION 9.18.    Observance of Accounting Standards........................................52
SECTION 9.19.    Employment of Certified Public Accountant.............................52
SECTION 9.20.    Establishment of Fiscal Year, Annual Budget..........................52
SECTION 9.21.    Employment of Consulting Engineer; Consulting Engineer's
                 Report........................................................................................53
SECTION 9.22.    Reserved.....................................................................................53
SECTION 9.23.    Information to Be Filed with Trustee.........................................53
SECTION 9.24.    Covenant Against Sale or Encumbrance; Exceptions................53
SECTION 9.25.    Fidelity Bonds............................................................................53
SECTION 9.26.    No Loss of Lien on Pledged Revenues .....................................54
SECTION 9.27.    Compliance With Other Contracts and Agreements..................54
SECTION 9.28.    Issuance of Additional Obligations...........................................54
SECTION 9.29.    Extension of Time for Payment of Interest Prohibited .............54

ii

SECTION 9.30.   Further Assurances..................................................................54
SECTION 9.31.   Use of Bond Proceeds to Comply with Internal Revenue Code..............54
SECTION 9.32.   Corporate Existence and Maintenance of Properties..................55
SECTION 9.33.   Continuing Disclosure ...........................................................55

ARTICLE X
EVENTS OF DEFAULT AND REMEDIES

SECTION 10.01.  Events of Default and Remedies..............................................56
SECTION 10.02.  Events of Default Defined ....................................................56
SECTION 10.03.  No Acceleration ..................................................................57
SECTION 10.04.  Legal Proceedings by Trustee................................................57
SECTION 10.05.  Discontinuance of Proceedings by Trustee...............................57
SECTION 10.06.  Bondholders May Direct Proceedings .....................................57
SECTION 10.07.  Limitations on Actions by Bondholders ..................................57
SECTION 10.08.  Trustee May Enforce Rights Without Possession of Bonds............58
SECTION 10.09.  Remedies Not Exclusive .......................................................58
SECTION 10.10.  Delays and Omissions Not to Impair Rights..............................58
SECTION 10.11.  Application of Moneys in Event of Default................................58
SECTION 10.12.  Trustee's Right to Receiver; Compliance with Act .....................59
SECTION 10.13.  Trustee and Bondholders Entitled to all Remedies under Act..........59
SECTION 10.14.  Credit Facility Issuer's Rights Upon Events of Default ...............59

ARTICLE XI
THE TRUSTEE; THE PAYING AGENT AND REGISTRAR

SECTION 11.01.  Acceptance of Trust ..............................................................61
SECTION 11.02.  No Responsibility for Recitals.................................................61
SECTION 11.03.  Trustee May Act Through Agents; Answerable Only for Willful
                Misconduct or Negligence .........................................................61
SECTION 11.04.  Compensation and Indemnity .................................................61
SECTION 11.05.  No Duty to Renew Insurance ..................................................61
SECTION 11.06.  Notice of Default; Right to Investigate.....................................61
SECTION 11.07.  Obligation to Act on Defaults .................................................62
SECTION 11.08.  Reliance by Trustee...............................................................62
SECTION 11.09.  Trustee May Deal in Bonds ...................................................62
SECTION 11.10.  Construction of Ambiguous Provisions ....................................62
SECTION 11.11.  Resignation of Trustee ..........................................................62
SECTION 11.12.  Removal of Trustee ..............................................................63
SECTION 11.13.  Appointment of Successor Trustee ..........................................63
SECTION 11.14.  Qualification of Successor .....................................................64
SECTION 11.15.  Instruments of Succession......................................................64
SECTION 11.16.  Merger of Trustee ................................................................64
SECTION 11.17.  Extension of Rights and Duties of Trustee to Paying Agent and
                Registrar................................................................................64
SECTION 11.18.  Resignation of Paying Agent or Registrar .................................64
SECTION 11.19.  Removal of Paying Agent or Registrar .....................................65
SECTION 11.20.  Appointment of Successor Paying Agent or Registrar ..................65
SECTION 11.21.  Qualifications of Successor Paying Agent or Registrar..................65

SECTION 11.22.  Judicial Appointment of Successor Paying Agent or Registrar................65
SECTION 11.23.  Acceptance of Duties by Successor Paying Agent or Registrar ...............66
SECTION 11.24.  Successor by Merger or Consolidation....................................................66

### ARTICLE XII
### ACTS OF BONDHOLDERS; EVIDENCE OF OWNERSHIP OF BONDS

SECTION 12.01.  Acts of Bondholders; Evidence of Ownership of Bonds ..........................67

### ARTICLE XIII
### AMENDMENTS AND SUPPLEMENTS

SECTION 13.01.  Amendments and Supplements Without Bondholders' Consent..............68
SECTION 13.02.  Amendments With Bondholders' Consent ...............................................68
SECTION 13.03.  Trustee Authorized to Join in Amendments and Supplements;
                Reliance on Counsel ................................................................................69

### ARTICLE XIV
### DEFEASANCE

SECTION 14.01.  Defeasance ..............................................................................................70
SECTION 14.02.  Deposit of Funds for Payment of Bonds.................................................70

### ARTICLE XV
### MISCELLANEOUS PROVISIONS

SECTION 15.01.  Limitations on Recourse ..........................................................................72
SECTION 15.02.  Payment Dates .........................................................................................72
SECTION 15.03.  No Rights Conferred on Others ...............................................................72
SECTION 15.04.  Illegal Provisions Disregarded................................................................72
SECTION 15.05.  Substitute Notice......................................................................................72
SECTION 15.06.  Notices .....................................................................................................72
SECTION 15.07.  Controlling Law .......................................................................................73
SECTION 15.08.  Successors and Assigns............................................................................73
SECTION 15.09.  Headings for Convenience Only...............................................................73
SECTION 15.10.  Counterparts.............................................................................................73
SECTION 15.11.  Appendices and Exhibits..........................................................................74

iv

THIS MASTER TRUST INDENTURE, dated as of October 1, 2006 (the "Master Indenture"), by and between LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT (the "Issuer"), a local unit of special-purpose government organized and existing under the laws of the State of Florida, and U.S. BANK NATIONAL ASSOCIATION, a national banking association duly organized, existing and authorized under the laws of the United States of America (together with any bank or trust company becoming successor trustee under the Master Indenture being hereinafter referred to as the "Trustee");

## WITNESSETH:

WHEREAS, the Issuer is a local unit of special purpose government duly organized and existing under the provisions of the Uniform Community Development District Act of 1980, Chapter 190, Florida Statutes, as amended (the "Act"), Section 1.01(A)(21) of the Miami-Dade Home Rule Charter, and Ordinance No. 05-153 enacted by the Board of County Commissioners of Miami-Dade County, Florida effective on September 2, 2005, for the purpose, among other things, of financing and managing the acquisition and construction, maintenance, and operation of the major infrastructure within and without the boundaries of the premises to be governed by the Issuer; and

WHEREAS, the premises to be governed by the Issuer (as further described in Exhibit A hereto, the "District Lands") consist of approximately 118 gross acres of land located entirely within the City of Doral, Florida (the "City"), within Miami-Dade County, Florida (the "County"); and

WHEREAS, the Issuer has determined to undertake, in one or more stages, the planning, financing, acquisition, construction, reconstruction, equipping and installation of certain infrastructure improvements consisting of roadway improvements, stormwater management facilities, a water distribution system, a sanitary sewer system, a public parking garage building and outdoor recreational areas pursuant to the Act for the special benefit of the District Lands or portions thereof (as further described in Exhibit B hereto, the "Project"); and

WHEREAS, the Issuer proposes to finance the cost of the planning, financing, acquisition, construction, reconstruction, equipping and installation of the Project by the issuance of one or more series of bonds pursuant to this Master Indenture;

NOW, THEREFORE, THIS MASTER INDENTURE WITNESSETH, that to provide for the issuance of Bonds under this Master Indenture, as supplemented from time to time by one or more Supplemental Indentures, the security and payment of the principal, redemption or purchase price thereof (as the case may be) and interest thereon, any reimbursement due to a Credit Facility Issuer (hereinafter defined), if any, for any drawing on its Credit Facility (hereinafter defined), as required under the terms of the corresponding Credit Facility Agreement (hereinafter defined), the rights of the Owners of the Bonds of a Series and the performance and observance of all of the covenants contained herein and in said Bonds and in any Credit Facility Agreement for and in consideration of the mutual covenants herein contained and of the purchase and acceptance of the Bonds of a Series by the Owners thereof, from time to time, the issuance by any Credit Facility Issuer of its Credit Facility, from time to time, and of the acceptance by the Trustee of the trusts hereby created, and intending to be legally bound hereby, the Issuer

hereby assigns, transfers, sets over and pledges to the Trustee and grants a lien on all of the right, title and interest of the Issuer in and to the Pledged Revenues (hereinafter defined) as security for the payment of the principal, redemption or purchase price of (as the case may be) and interest on Bonds of a Series issued hereunder and any reimbursement due to any Credit Facility Issuer for any drawing on its Credit Facility issued with respect to any such Bonds, as required under the terms of the corresponding Credit Facility Agreement, all in the manner hereinafter provided, and the Issuer further hereby agrees with and covenants unto the Trustee as follows:

# ARTICLE I
## DEFINITIONS

In this Master Indenture and any indenture supplemental hereto (except as otherwise expressly provided or unless the context otherwise requires) terms defined in the recitals hereto shall have the same meaning throughout the Master Indenture, and in addition, the following terms shall have the meanings specified below:

"Account" shall mean any account established pursuant to the Indenture.

"Acquisition Agreements" shall mean one or more Improvement Acquisition Agreements among the Issuer and the Developer, pursuant to which the Developer agrees to provide, design, construct and sell to the Issuer, and the Issuer agrees to purchase from the Developer, certain improvements comprising a portion of the Project.

"Act" shall mean the Uniform Community Development District Act of 1980, Chapter 190, Florida Statutes, as amended from time to time, and any successor statute thereto.

"Annual Budget" shall mean the Issuer's budget of current operating and maintenance expenses for the Project for a Fiscal Year, adopted pursuant to the provisions of Section 9.20 of this Master Indenture, as the same may be amended from time to time.

"Authenticating Agent", shall mean the agent so described in, and appointed pursuant to, Section 2.03 hereof.

"Authorized Denomination" shall mean, with respect to a series of Bonds, initially a denomination of $100,000 and integral multiples of $5,000 in excess thereof and thereafter a denomination of $5,000 and integral multiples thereof, provided, however, so long as a Series of Bonds carries an investment grade rating from Moody's, S&P or Fitch, "Authorized Denomination" shall mean a denomination of $5,000 and integral multiples thereof.

"Authorized Newspaper" shall mean a newspaper printed in English and customarily published at least once a day at least five days a week and generally circulated in New York, New York, and the County, or such other cities as the Issuer from time to time may determine by written notice provided to the Trustee. When successive publications in an Authorized Newspaper are required, they may be made in the same or different Authorized Newspapers.

"Board" shall mean the board of supervisors of the Issuer.

"Bonds" shall mean the Landmark at Doral Community Development District Special Assessment Bonds issued in one or more Series and delivered pursuant to the provisions of this Master Indenture and Bonds subsequently issued to refund all or a portion of the Bonds or issued for the completion of a Project.

"Bond Counsel" shall mean Counsel of nationally recognized standing in matters pertaining to the exclusion from gross income for federal income tax purposes of interest on obligations issued by states and their political subdivisions.

3

"Bondholder", "Holder of Bonds", "Holder" or "Owner" or any similar term shall mean any Person or Persons who shall be the registered owner of any Outstanding Bond or Bonds, as evidenced on the Bond Register of the Issuer kept by the Registrar.

"Bond Redemption Fund" shall mean the Fund so designated which is established pursuant to Section 6.06 hereof.

"Bond Register" shall have the meaning specified in Section 2.04 of this Master Indenture.

"Business Day" shall mean any day other than a Saturday or Sunday or legal holiday or a day on which the principal office of the Issuer, the Trustee, the Registrar or any Paying Agent is closed.

"Certified Public Accountant" shall mean a Person, who shall be Independent, appointed by the Board, actively engaged in the business of public accounting and duly certified as a certified public accountant under the laws of the State.

"Certified Resolution" or "Certified Resolution of the Issuer" shall mean a copy of one or more resolutions certified by the Secretary or an Assistant Secretary of the Issuer, under its seal, to have been duly adopted by the Board and to be in full force and effect as of the date of such certification.

"City" shall mean the City of Doral, Florida.

"Code" shall mean the Internal Revenue Code of 1986, as amended.

"Completion Date" shall have the meaning given to such term in Section 5.01 of this Master Indenture.

"Consultant" shall mean a Person, who shall be Independent, appointed by the Board, qualified to pass upon questions relating to municipal entities and having a favorable reputation for skill and experience in the financial affairs of municipal entities.

"Consultant's Certificate" shall mean a certificate or a report prepared in accordance with then applicable professional standards duly executed by a Consultant.

"Consulting Engineer" shall mean the Independent engineer or engineering firm or corporation at the time employed by the Issuer under the provisions of Section 9.21 of this Master Indenture to perform and carry out duties imposed on the Consulting Engineer by the Indenture. The Independent engineer or engineering firm or corporation at the time serving as the engineer to the District may serve as Consulting Engineer under the Indenture.

"Continuing Disclosure Agreement" shall mean a Continuing Disclosure Agreement, by and between the Issuer, the Developer and Banc of America Securities LLC, as Dissemination Agent in connection with the issuance of a Series of Bonds hereunder, pursuant to the

requirements of the Rule and any additional continuing disclosure agreement specified in a Supplemental Indenture.

"Cost" or "Costs", in connection with the Project or any portion thereof, shall mean all expenses which are properly chargeable thereto under Generally Accepted Accounting Principles or which are incidental to the planning, financing, acquisition, construction, reconstruction, equipping and installation thereof, including, without limiting the generality of the foregoing:

     (a)    expenses of determining the feasibility or practicability of acquisition, construction, or reconstruction;

     (b)    cost of surveys, estimates, plans, and specifications;

     (c)    cost of improvements;

     (d)    engineering, architectural, fiscal, legal, accounting and other professional and advisory expenses and charges;

     (e)    cost of all labor, materials, machinery, and equipment (including, without limitation, (i) amounts payable to contractors, builders and materialmen and costs incident to the award of contracts and (ii) the cost of labor, facilities and services furnished by the Issuer and its employees, materials and supplies purchased by the Issuer and permits and licenses obtained by the Issuer);

     (f)    cost of all lands, properties, rights, easements, and franchises acquired;

     (g)    financing charges;

     (h)    creation of initial reserve and debt service funds;

     (i)    working capital;

     (j)    interest charges incurred or estimated to be incurred on money borrowed prior to and during construction and acquisition and for such reasonable period of time after completion of construction or acquisition as the Board may determine;

     (k)    the cost of issuance of Bonds, including, without limitation, advertisements and printing;

     (l)    the cost of any election held pursuant to the Act and all other expenses of issuance of bonds;

     (m)    the discount, if any, on the sale or exchange of Bonds;

     (n)    amounts required to repay temporary or bond anticipation loans made to finance any costs permitted under the Act;

(o)    costs of prior improvements performed by the Issuer in anticipation of the Project;

(p)    costs incurred to enforce remedies against contractors, subcontractors, any provider of labor, material, services, or any other Person, for a default or breach under the corresponding contract, or in connection with any other dispute;

(q)    premiums for contract bonds and insurance during construction and costs on account of personal injuries and property damage in the course of construction and insurance against the same;

(r)    payments, contributions, dedications, and any other exactions required as a condition to receive any government approval or permit necessary to accomplish any District purpose;

(s)    administrative expenses;

(t)    taxes, assessments and similar governmental charges during construction or reconstruction of the Project;

(u)    expenses of Project management and supervision;

(v)    costs of effecting compliance with any and all governmental permits relating to the Project;

(w)    such other expenses as may be necessary or incidental to the acquisition, construction, or reconstruction of the Project or to the financing thereof; and

(x)    any other "cost" or expense as provided by the Act.

In connection with the refunding or redeeming of any Bonds, "Cost" includes, without limiting the generality of the foregoing, the items listed in (d), (k), (l) and (m) above, and other expenses related to the redemption of the Bonds to be redeemed and the Redemption Price of such Bonds (and the accrued interest payable on redemption to the extent not otherwise provided for). Whenever Costs are required to be itemized, such itemization shall, to the extent practicable, correspond with the items listed above. Whenever Costs are to be paid hereunder, such payment may be made by way of reimbursement to the Issuer or any other Person who has paid the same in addition to direct payment of Costs.

"Counsel" shall mean an attorney-at-law or law firm (who may be counsel for the Issuer) not unsatisfactory to the Trustee.

"County" shall mean Miami-Dade County, Florida.

"Credit Facility" shall mean any credit enhancement mechanism such as an irrevocable letter of credit, a surety bond, a policy of municipal bond insurance, a corporate or other guaranty, a purchase agreement, a credit agreement or deficiency agreement or other similar

6

facility applicable to the Bonds, as established pursuant to a Supplemental Indenture, pursuant to which the entity providing such facility agrees to provide funds to make payment of the principal of and interest on the Bonds. Notwithstanding anything to the contrary contained in the Indenture, the Bonds may be issued without a Credit Facility; the decision to provide a Credit Facility in respect of any Bonds shall be within the absolute discretion of the Issuer.

"Credit Facility Agreement" shall mean any agreement pursuant to which a Credit Facility Issuer issues a Credit Facility.

"Credit Facility Issuer" shall mean the issuer or guarantor of any Credit Facility.

"Debt Service Fund" shall mean the Fund so designated which is established pursuant to Section 6.04 hereof.

"Debt Service Requirements", with reference to a specified period, shall mean:

     (a)    interest payable on the Bonds during such period, subject to reduction for amounts held as capitalized interest in the Funds and Accounts established under the Indenture; and

     (b)    amounts required to be paid into any mandatory sinking fund account with respect to the Bonds during such period; and

     (c)    amounts required to pay the principal of the Bonds maturing during such period and not to be redeemed prior to or at maturity through any sinking fund account.

"Debt Service Reserve Fund" shall mean the Fund so designated which is established pursuant to Section 6.05 hereof.

"Debt Service Reserve Insurance Policy" shall mean the insurance policy, surety bond or other evidence of insurance, if any, deposited to the credit of the Debt Service Reserve Fund or any account thereof in lieu of or in partial substitution for cash or securities on deposit therein, which policy, bond or the evidence of insurance constitutes an unconditional senior obligation of the issuer thereof. The issuer thereof shall be a municipal bond insurer whose obligations ranking *pari passu* with its obligations under such policy, bond or other evidence of insurance are rated at the time of deposit of such policy, bond or other evidence of insurance to the credit of the Debt Service Reserve Fund or any account thereof in the highest rating category of Moody's, S&P and Fitch, unless otherwise approved by the Credit Facility Issuer who has issued a municipal bond insurance policy with respect to the Bonds.

"Debt Service Reserve Letter of Credit" shall mean the irrevocable, transferable letter or line of credit, if any, deposited for the credit of the Debt Service Reserve Fund or any account thereof in lieu of or in partial substitution for cash or securities on deposit therein, which letter or line of credit constitutes an unconditional senior obligation of the issuer thereof. The issuer of such letter or line of credit shall be a banking association, bank or trust company or branch thereof whose senior debt obligations ranking *pari passu* with its obligations under such letter or line of credit are rated at the time of deposit of the letter or line of credit to the credit of the Debt

7

Service Reserve Fund or any account thereof in the highest rating category of Moody's, S&P and Fitch, unless otherwise approved by the Credit Facility Issuer who has issued a municipal bond insurance policy with respect to the Bonds.

"Debt Service Reserve Requirement" shall mean, for each Series of Bonds, unless a different requirement shall be specified in a Supplemental Indenture, an amount equal to the lesser of (i) the maximum annual Debt Service Requirements for the Outstanding Bonds of such Series, (ii) 125% of the average annual Debt Service Requirements for the Outstanding Bonds of such Series, and (iii) 10% of the original proceeds (within the meaning of the Code) of the Bonds of such Series.

"Defeasance Securities" shall mean, to the extent permitted by law, (a) cash or (b) non-callable Government Obligations.

"Deferred Costs" shall mean, with respect to a particular Series of Bonds, the Costs of the Project which have not been paid from the proceeds of the Bonds and which are identified by the District to the Trustee in writing as having been advanced under an Acquisition Agreement or any other contract or agreement pursuant to which the District may become obligated to pay for Costs of the Project, as provided in the Supplemental Indenture relating to such Series of Bonds.

"Developer" shall mean Town Center at Doral, LLC, Landmark at Doral East, LLC, Landmark at Doral South, LLC, Landmark Club at Doral, LLC, and Landmark at Doral Developers, LLC, and any entity or entities which succeed to all or any part of the interests and assume any or all of the responsibilities of said entities.

"District Lands" or "District" shall mean the premises governed by the Issuer, consisting of approximately 118 gross acres of land located entirely within the City, as more fully described in Exhibit A hereto.

"District Manager" shall mean the then District Manager or acting District Manager of the Issuer.

"Event of Default" shall mean any of the events described in Section 10.01 hereof.

"Fiscal Year" shall mean the period of twelve (12) months beginning October 1 of each calendar year and ending on September 30 of the following calendar year, and also shall mean the period from actual execution hereof to and including the next succeeding September 30; or such other consecutive twelve-month period as may hereafter be established pursuant to law.

"Fitch" shall mean Fitch Ratings, its successors and their assigns.

"Fund" shall mean any fund established pursuant to this Master Indenture.

"Generally Accepted Accounting Principles" shall mean those accounting principles applicable in the preparation of financial statements of municipalities.

8

"Government Obligations" shall mean direct obligations of, or obligations the timely payment of principal of and interest on which are unconditionally guaranteed by, the United States of America.

"Indenture" shall mean, with respect to any Series of Bonds, this Master Indenture as supplemented by the Supplemental Indenture pursuant to which such Series of Bonds is issued.

"Independent" shall mean a Person who is not a member of the Issuer's Board, an officer or employee of the Issuer or the Developer, or which is not a partnership, corporation or association having a partner, director, officer, member or substantial stockholder who is a member of the Issuer's Board, or an officer or employee of the Issuer; provided, however, that the fact that such Person is retained regularly by or regularly transacts business with the Issuer or the Developer shall not make such Person an employee within the meaning of this definition.

"Interest Account" shall mean the Account so designated, established as a separate account within the Debt Service Fund pursuant to Section 6.04 hereof.

"Interest Payment Date" shall mean each May 1 and November 1 commencing on the date specified in the Certified Resolution of the Issuer or in the Supplemental Indenture pursuant to which a Series of Bonds is issued.

"Interest Period" shall mean the period from and including any Interest Payment Date to and excluding the next succeeding Interest Payment Date; provided, however, that upon final payment of any Bond at maturity or upon redemption or mandatory purchase, the Interest Period shall extend to, but not include, the date of such final payment, which shall always be a Business Day.

"Investment Securities" shall mean and include any of the following securities, if and to the extent the same are at the time legal investments for funds of the Issuer:

(a)       Government Obligations;

(b)       obligations of any of the following agencies: Government National Mortgage Association (including participation certificates issued by such Association); Fannie Mae (including participation certificates issued by Fannie Mae); Federal Home Loan Banks; Federal Farm Credit Banks; Tennessee Valley Authority; Rural Economic Community Development Administration (formerly the Farmers Home Administration); Student Loan Marketing Association; Federal Home Loan Mortgage Corporation.

(c)       deposits, Federal funds or bankers' acceptances (with term to maturity of 270 days or less) of any bank which has an unsecured, uninsured and unguaranteed obligation rated in one of the top two rating categories by both Moody's and S&P;

(d)       commercial paper rated in the top two rating categories by both Moody's and S&P;

9

(e)    obligations of any state of the United States or political subdivision thereof or constituted authority thereof the interest on which is exempt from federal income taxation under Section 103 of the Code and rated in one of the top two rating categories by both Moody's and S&P;

(f)    both (A) shares of a diversified open-end management investment company (as defined in the Investment Company Act of 1940) or a regulated investment company (as defined in Section 851(a) of the Code) that is a money market fund that is rated in the highest rating category by both Moody's and S&P, and (B) shares of money market mutual funds that invest only in Government Obligations and repurchase agreements secured by such obligations, which funds are rated in the highest categories for such funds by both Moody's and S&P;

(g)    repurchase agreements, which will be collateralized at the onset of the repurchase agreement of at least 103% marked to market weekly with Collateral with a domestic or foreign bank or corporation (other than life or property casualty insurance company) the long-term debt of which, or, in the case of a financial guaranty insurance company, claims paying ability, of the guarantor is rated at least "AA" by S&P and "Aa" by Moody's provided that the repurchase agreement shall provide that if during its term the provider's rating by either S&P or Moody's falls below "AA-" or "Aa3," respectively, the provider shall immediately notify the Trustee and the provider shall at its option, within ten days of receipt of publication of such downgrade, either (A) maintain Collateral at levels, sufficient to maintain an "AA" rated investment from S&P and an "Aa" rated investment from Moody's, or (B) repurchase all Collateral and terminate the repurchase agreement. Further, if the provider's rating by either S&P or Moody's falls below "A-" or "A3," respectively, the provider must at the direction of the Issuer to the Trustee, within ten (10) calendar days, either (1) maintain Collateral at levels sufficient to maintain an "AA" rated investment from S&P and an "Aa" rated investment from Moody's, or (2) repurchase all Collateral and terminate the repurchase agreement without penalty. In the event the repurchase agreement provider has not satisfied the above conditions within ten (10) days of the date such conditions apply, then the repurchase agreement shall provide that the Trustee shall be entitled to, and in such event, the Trustee shall withdraw the entire amount invested plus accrued interest within two (2) Business Days. Any repurchase agreement entered into pursuant to this Indenture shall contain the following additional provisions:

(1)    Failure to maintain the requisite Collateral percentage will require the District of the Trustee to liquidate the Collateral as provided above;

(2)    The Holder of the Collateral, as hereinafter defined, shall have possession of the Collateral or the Collateral shall have been transferred to the Holder of the Collateral, in accordance with applicable state and federal laws (other than by means of entries on the transferor's books);

(3)    The repurchase agreement shall state and an opinion of Counsel in form and in substance satisfactory to the Trustee shall be rendered that the Holder of the Collateral has a perfected first priority security interest in the collateral, any substituted

10

Collateral and all proceeds thereof (in the case of bearer securities, this means the Holder of the Collateral is in possession);

(4)    The repurchase agreement shall be a "repurchase agreement" as defined in the United States Bankruptcy Code and, if the provider is a domestic bank, a "qualified financial contract" as defined in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") and such bank is subject to FIRREA;

(5)    The repurchase transaction shall be in the form of a written agreement, and such agreement shall require the provider to give written notice to the Trustee of any change in its long-term debt rating;

(6)    The Issuer or its designee shall represent that it has no knowledge of any fraud involved in the repurchase transaction;

(7)    The Issuer and the Trustee shall receive the opinion of Counsel (which opinion shall be addressed to the Issuer and the Trustee and shall be in form and substance satisfactory to the Trustee) that such repurchase agreement complies with the terms of this section and is legal, valid, binding and enforceable upon the provider in accordance with its terms;

(8)    The term of the repurchase agreement shall be no longer than ten years;

(9)    The interest with respect to the repurchase transaction shall be payable no less frequently than quarterly;

(10)    The repurchase agreement shall provide that the Trustee may withdraw funds without penalty at any time, or from time to time, for any purpose permitted or required under this Indenture;

(11)    Any repurchase agreement shall provide that a perfected security interest in such investments is created for the benefit of the Beneficial Owners under the Uniform Commercial Code of Florida, or book-entry procedures prescribed at 31 C.F.R. 306.1 et seq. or 31 C.F.R. 350.0 et seq. are created for the benefit of the Beneficial Owners; and

(12)    The Collateral delivered or transferred to the Issuer, the Trustee, or a third-party acceptable to, and acting solely as agent for, the Trustee (the "Holder of the Collateral") shall be delivered and transferred in compliance with applicable state and federal laws (other than by means of entries on provider's books) free and clear of any third-party liens or claims pursuant to a custodial agreement subject to the prior written approval of the majority of the Holders and the Trustee. The custodial agreement shall provide that the Trustee must have disposition or control over the Collateral of the repurchase agreement, irrespective of an event of default by the provider of such repurchase agreement.

11

If such investments are held by a third-party, they shall be held as agent for the benefit of the Trustee as fiduciary for the Beneficial Owners and not as agent for the bank serving as Trustee in its commercial capacity or any other party and shall be segregated from securities owned generally by such third party or bank;

(h)     any other investment approved in writing by the Owners of a majority in aggregate principal amount of the Bonds secured thereby;

(i)     bonds, notes and other debt obligations of any corporation organized under the laws of the United States, any state or organized territory of the United States or the District of Columbia, if such obligations are rated in one of the three highest ratings by both Moody's and S&P or in one of the two highest categories by either S&P or Moody's; and

(j)     investment agreements with a bank, insurance company or other financial institution, or the subsidiary of a bank, insurance company or other financial institution if the parent guarantees the investment agreement, which bank, insurance company, financial institution or parent has an unsecured, uninsured and unguaranteed obligation (or claims-paying ability) rated in the highest short-term rating category by Moody's or S&P (if the term of such agreement does not exceed 365 days), or has an unsecured, uninsured and unguaranteed obligation (or claims paying ability) rated by Aa2 or better by Moody's and AA or better by S&P or Fitch, respectively (if the term of such agreement is more than 365 days) or is the lead bank of a parent bank holding company with an uninsured, unsecured and unguaranteed obligation of the aforesaid ratings, provided:

(A)     interest is paid on any date interest is due on the Bonds (not more frequently than quarterly) at a fixed rate (subject to adjustments for yield restrictions required by the Code) during the entire term of the agreement;

(B)     moneys invested thereunder may be withdrawn without penalty, premium, or charge upon not more than two days' notice unless otherwise specified in a Supplemental Indenture;

(C)     the same guaranteed interest rate will be paid on any future deposits made to restore the account to its required amount;

(D)     the Trustee receives an opinion of counsel that such agreement is an enforceable obligation of such insurance company, bank, financial institution or parent;

(E)     in the event of a suspension, withdrawal, or downgrade below Aa3, AA- or AA- by Moody's, S&P or Fitch, respectively, the provider shall notify the Trustee within five (5) days of such downgrade event and the provider shall at its option, within ten (10) business days after notice is given to the Trustee take any one of the following actions:

12

(1)    collateralize the agreement at levels, sufficient to maintain an "AA" rated investment from S&P or Fitch and an "Aa2" from Moody's with a market to market approach, or

(2)    assign the agreement to another provider, as long as the minimum rating criteria of "AA" rated investment from S&P or Fitch and an "Aa2" from Moody's with a market to market approach; or

(3)    have the agreement guaranteed by a provider which results in a minimum rating criteria of an "AA" rated investment from S&P or Fitch and an "Aa2" from Moody's with a market to market approach; or

(4)    repay all amounts due and owing under the agreement.

(F)    In the event the provider has not satisfied any one of the above conditions within three (3) days of the date such conditions apply, then the agreement shall provide that the Trustee shall be entitled to withdraw the entire amount invested plus accrued interest without penalty or premium.

(k)    the Local Government Surplus Funds Trust Fund as described in Florida Statutes, Section 218.405 or the corresponding provisions of subsequent laws provided that such fund is rated at least "AA" by S&P (without regard to gradation) or at least "Aa" by Moody's (without regard to gradation); and

(l)    other investments permitted by Florida law.

Under all circumstances, the Trustee shall be entitled to request and to receive from the Issuer a certificate of a Responsible Officer setting forth that any investment directed by the Issuer is permitted under the Indenture.

"Issuer" shall mean Landmark at Doral Community Development District.

"Major Non-Recurring Expense" shall mean the cost of major replacement or reconstruction of the Project, or any part thereof, the cost of major repairs, renewals or replacements, the provision of a reserve for the payment of insurance premiums not due on an annual or more frequent basis, and the cost of studies, surveys, estimates and investigations in connection with any of the foregoing.

"Master Indenture" shall mean, this Master Trust Indenture dated as of October 1, 2006, by and between the Issuer and the Trustee, as supplemented from time to time in accordance with the provisions of Article XIII hereof.

"Moody's" shall mean Moody's Investors Service, Inc., a corporation organized and existing under the laws of the State of Delaware, its successors and their assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a

13

securities rating agency, "Moody's" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Issuer and acceptable to the Trustee.

"Officers' Certificate" or "Officer's Certificate" shall mean a certificate, duly executed by a Responsible Officer and delivered to the Trustee.

"Outstanding", in connection with a Series of Bonds, shall mean, as of the time in question, all Bonds of such Series authenticated and delivered under the Indenture, except:

(a)     all Bonds theretofore cancelled or required to be cancelled under Section 2.07 hereof;

(b)     Bonds for the payment, redemption or purchase of which moneys and/or Defeasance Securities, the principal of and interest on which, when due, will provide sufficient moneys to fully pay such Bonds in accordance with Article XIV hereof, shall have been or shall concurrently be deposited with the Trustee; provided that, if such Bonds are being redeemed, the required notice of redemption shall have been given or provision shall have been made therefor, and that if such Bonds are being purchased, there shall be a firm commitment for the purchase and sale thereof; and

(c)     Bonds in substitution for which other Bonds have been authenticated and delivered pursuant to Article II hereof.

In determining whether the Holders of a requisite aggregate principal amount of Bonds Outstanding have concurred in any request, demand, authorization, direction, notice, consent or waiver under the provisions of the Indenture, Bonds which are known by the Trustee to be held on behalf of the Issuer shall be disregarded for the purpose of any such determination; provided, however, this provision does not affect the right of the Trustee to deal in Bonds as set forth in Section 11.09 hereof.

"Participating Underwriter" shall mean any of the original underwriters of the Bonds required to comply with the Rule in connection with the offering of the Bonds.

"Paying Agent" shall mean initially, U.S. Bank National Association, and thereafter any successor thereto appointed in accordance with Section 11.20 of this Master Indenture.

"Person" shall mean any individual, corporation, partnership, association, joint-stock company, trust, unincorporated organization, governmental body, political subdivision, municipality, municipal authority or any other group or organization of individuals.

"Pledged Revenues" shall mean, with respect to a particular Series of Bonds Outstanding, (a) all revenues received by the Issuer from Special Assessments levied and collected on all or a portion of the District Lands with respect to such Series of Bonds, including, without limitation, amounts received from any foreclosure proceeding for the enforcement of collection of such Special Assessments or from the issuance and sale of tax certificates with respect to such Special Assessments, and (b) all moneys on deposit in the Funds and Accounts established under the Indenture; provided, however, that Pledged Revenues shall not include (i) any moneys

14

transferred to the Rebate Fund, or investment earnings thereon and (ii) "special assessments" levied and collected by the Issuer under Section 190.022 of the Act for maintenance purposes or "maintenance special assessments" levied and collected by the Issuer under Section 190.021(3) of the Act (it being expressly understood that the lien and pledge of the Indenture shall not apply to any of the moneys described in the foregoing clauses (i) and (ii) of this proviso).

"Project" shall mean with respect to any Series of Bonds, the portion or portions of certain infrastructure improvements consisting of roadway improvements, stormwater management facilities, a water distribution system, a sanitary sewer system, a public parking garage building and outdoor recreational areas to be acquired and/or constructed by the Issuer, whether within or outside the District Lands, all as more specifically described in the Supplemental Indenture relating to such Series of Bonds; provided that a Project shall specially benefit all of the District Lands on which Special Assessments to secure such Series of Bonds have been levied.

"Property Appraiser" shall mean the property appraiser of the County.

"Property Appraiser and Tax Collector Agreement" shall mean the Property Appraiser and Tax Collector Agreement described in Section 9.04 hereof.

"Rebate Fund" shall mean the Fund, if any, so designated, which is established pursuant to an arbitrage rebate agreement, into which shall be deposited certain moneys in accordance with the provisions of said arbitrage rebate agreement.

"Record Date" shall mean, as the case may be, the applicable Regular or Special Record Date.

"Redemption Price" shall mean the principal amount of any Bond plus the applicable premium, if any, payable upon redemption thereof pursuant to the Indenture.

"Registrar" shall mean initially U.S. Bank National Association, which entity shall have the responsibilities set forth in Section 2.04 of this Master Indenture, and thereafter any successor thereto appointed in accordance with Section 11.20 of this Master Indenture.

"Regular Record Date" shall mean the fifteenth day (whether or not a Business Day) of the calendar month next preceding each Interest Payment Date.

"Regulatory Body" shall mean and include (a) the United States of America and any department of or corporation, agency or instrumentality heretofore or hereafter created, designated or established by the United States of America, (b) the State, any political subdivision thereof and any department of or corporation, agency or instrumentality heretofore or hereafter created, designated or established by the State, (c) the County and any department of or corporation, agency or instrumentality heretofore or hereafter created, designated or established by the County, and (d) any other public body, whether federal, state or local or otherwise having regulatory jurisdiction and authority over the Issuer.

"Responsible Officer" shall mean any member of the Board, the District Manager, the Treasurer or any other officer of the Issuer or other person designated by Certified Resolution of the Issuer, a copy of which shall be on file with the Trustee, to act for any of the foregoing, either generally or with respect to the execution of any particular document or other specific matter.

"Revenue Fund" shall mean the Fund so designated which is established pursuant to Section 6.03 hereof.

"Rule" shall mean Rule 15c2-12(b)(5) adopted by the Securities and Exchange Commission under the Securities Exchange Act of 1934, as the same may be amended from time to time.

"S&P" shall mean Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., a corporation organized and existing under the laws of the State of New York, its successors and their assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "S&P" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Issuer and acceptable to the Trustee.

"Series" shall mean all of the Bonds authenticated and delivered at one time on original issuance and pursuant to any Certified Resolution of the Issuer authorizing such Bonds as a separate Series of Bonds, or any Bonds thereafter authenticated and delivered in lieu of or in substitution for such Bonds pursuant to Article II hereof and the applicable Supplemental Indenture, regardless of variations in maturity, interest rate or other provisions; provided, however, two or more Series of Bonds may be issued simultaneously under the same Supplemental Indenture if designated as separate Series of Bonds by the Issuer upon original issuance. Two or more Series of Bonds may be issued simultaneously under separate Supplemental Indentures, but under this Master Indenture.

"Sinking Fund Account" shall mean the Account so designated, established as a separate account within the Debt Service Fund pursuant to Section 6.04 hereof.

"Special Assessments" shall mean (a) the net proceeds derived from the levy and collection of "special assessments", as provided for in Sections 190.011(14) and 190.022 of the Act (except for any such special assessments levied and collected for maintenance purposes), against the lands located within the District that are subject to assessment as a result of a particular Project or any portion thereof, and (b) the net proceeds derived from the levy and collection of "benefit special assessments", as provided for in Section 190.021(2) of the Act, against the lands within the District that are subject to assessment as a result of a particular Project or any portion thereof, and in the case of both "special assessments" and "benefit special assessments", including the interest and penalties on such assessments, pursuant to all applicable provisions of the Act and Chapter 170, Florida Statutes, and Chapter 197, Florida Statutes (and any successor statutes thereto), including, without limitation, any amount received from any foreclosure proceeding for the enforcement of collection of such assessments or from the issuance and sale of tax certificates with respect to such assessments, less (to the extent applicable) the fees and costs of collection thereof payable to the Tax Collector and less certain

16

administrative costs payable to the Property Appraiser pursuant to the Property Appraiser and Tax Collector Agreement.    "Special Assessments" shall not include "maintenance special assessments" levied and collected by the Issuer under Section 190.021(3) of the Act.

"Special Record Date" shall mean such date as shall be fixed for the payment of defaulted interest on the Bonds in accordance with Section 2.01 hereof.

"State" shall mean the State of Florida.

"Supplemental Indenture" and "indenture supplemental hereto" shall mean any indenture amending or supplementing this Master Indenture which may be entered into in accordance with the provisions of this Master Indenture.

"Tax Collector" shall mean the tax collector of the County.

The words "hereof", "herein", "hereto", "hereby", and "hereunder" (except in the form of Bond), refer to the entire Master Indenture.

Every "request", "requisition", "order", "demand", "application", "notice", "statement", "certificate", "consent", or similar action hereunder by the Issuer shall, unless the form or execution thereof is otherwise specifically provided, be in writing signed by a Responsible Officer of the Issuer.

All words and terms importing the singular number shall, where the context requires, import the plural number and vice versa.

[END OF ARTICLE I]

17

## ARTICLE II
## THE BONDS

SECTION 2.01.    <u>Amounts and Terms of Bonds; Details of Bonds</u>.  The Issuer is hereby authorized to issue in one or more Series pursuant to the terms and conditions of this Master Indenture, its obligations to be known as "Landmark at Doral Community Development District Special Assessment Bonds" (the "Bonds").  The total principal amount of Bonds that may be issued under this Master Indenture is expressly limited to $75,000,000 (exclusive of any refunding bonds).  The Bonds shall be issued in Authorized Denominations and within each Series shall be numbered consecutively from R-1 and upwards and in substantially the form attached hereto as Exhibit C, with such appropriate variations, omissions and insertions as are permitted or required by this Master Indenture or as otherwise provided in a Supplemental Indenture.  All Bonds shall be issued only upon satisfaction of the conditions set forth in Article III hereof; and the Trustee shall, at the Issuer's request, authenticate such Bonds and deliver them as specified in such request.

Each Bond shall be dated, shall have such Interest Payment Dates, shall bear interest from such date or dates and at such rate or rates until the maturity thereof, payable on such Interest Payment Dates, and shall be stated to mature (subject to the right of prior redemption), all as provided in, or pursuant to, a Supplemental Indenture.

Both the principal of and the interest on the Bonds shall be payable in any coin or currency of the United States of America which is legal tender on the respective dates of payment thereof for the payment of public and private debts.  Unless otherwise provided in Section 2.11 hereof or in a Supplemental Indenture, the principal of all Bonds shall be payable at the principal corporate trust office of the Paying Agent upon the presentation and surrender of such Bonds as the same shall become due and payable.

Except to the extent otherwise provided in Section 2.11 hereof or in a Supplemental Indenture, interest on any Bond is payable on any Interest Payment Date by check or draft mailed on the Interest Payment Date to the person in whose name that Bond is registered at the close of business on the Regular Record Date for such Interest Payment Date, at his address as it appears on the Bond Register.  The Bonds shall bear interest from the Interest Payment Date next preceding the date on which they are authenticated unless authenticated on an Interest Payment Date in which event they shall bear interest from such Interest Payment Date, or unless authenticated before the first Interest Payment Date in which event they shall bear interest from their date; provided, however, that if a Bond is authenticated between a Record Date and the next succeeding Interest Payment Date, such Bond shall bear interest from such succeeding Interest Payment Date; provided further, however, that if at the time of authentication of any Bond interest thereon is in default, such Bond shall bear interest from the date to which interest has been paid.  Any interest on any Bond which is payable, but is not punctually paid or provided for on any Interest Payment Date (hereinafter called "Defaulted Interest") shall be paid to the Owner in whose name the Bond is registered at the close of business on a Special Record Date to be fixed by the Trustee, such date to be not more than fifteen (15) nor less than ten (10) days prior to the date of proposed payment.  The Trustee shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class, postage-

18

prepaid, to each Owner of record as of the fifth (5th) day prior to such mailing, at his address as it appears in the Bond Register not less than ten (10) days prior to such Special Record Date. The foregoing notwithstanding, any Owner of Bonds of a Series in an aggregate principal amount of at least $1,000,000 shall be entitled to have interest paid by wire transfer to such Owner to the bank account number on file with the Trustee and Paying Agent, upon requesting the same in a writing received by the Trustee and Paying Agent at least fifteen (15) days prior to the relevant Record Date, which writing shall specify the bank, which shall be a bank within the United States, and bank account number to which interest payments are to be wired. Any such request for interest payments by wire transfer shall remain in effect until rescinded or changed, in a writing delivered by the Owner to the Trustee and Paying Agent, and any such rescission or change of wire transfer instructions must be received by the Trustee and Paying Agent at least fifteen (15) days prior to the relevant Record Date. Interest on the Bonds will be computed on the basis of a 360-day year of twelve 30-day months. Interest on overdue principal and, to the extent lawful, on overdue interest will be payable at the numerical rate of interest borne by such Bonds on the day before the default occurred.

The Trustee is hereby constituted and appointed as Paying Agent for the Bonds.

SECTION 2.02.    Execution.    The Bonds shall be executed by the manual or facsimile signature of the Chairman or Vice Chairman or by any other member of the Board designated by the Chairman for such purpose, and the corporate seal of the Issuer shall appear thereon (which may be in facsimile) and shall be attested by the manual or facsimile signature of its Secretary or Assistant Secretary. Bonds executed as above provided may be issued and shall, upon request of the Issuer, be authenticated by the Trustee, notwithstanding that one or both of the officers of the Issuer whose signatures appear on such Bonds shall have ceased to hold office at the time of issuance or authentication or shall not have held office at the date of the Bonds.

SECTION 2.03.    Authentication; Authenticating Agent.    No Bond shall be valid until the certificate of authentication shall have been duly executed by the Trustee, and such authentication shall be proof that the Bondholder is entitled to the benefit of the trust hereby created.

The Trustee shall be entitled to be reimbursed for payments made to any Authenticating Agent as reasonable compensation for its services.

Any corporation into which any Authenticating Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, consolidation or conversion to which any Authenticating Agent shall be party, or any corporation succeeding to the corporate trust business of any Authenticating Agent, shall be the successor of the Authenticating Agent hereunder, if such successor corporation is otherwise eligible under this Section, without the execution or filing of any further act on the part of the parties hereto or the Authenticating Agent or such successor corporation.

Any Authenticating Agent may at any time resign by giving written notice of resignation to the Trustee, the Issuer and any Paying Agent. The Trustee may at any time terminate the agency of any Authenticating Agent by giving written notice of termination to such

Authenticating Agent, the Issuer and any Paying Agent. Upon receiving such a notice of resignation or upon such a termination, or in case at any time any Authenticating Agent shall cease to be eligible under this Section, the Trustee shall promptly appoint a successor Authenticating Agent, shall give written notice of such appointment to the Issuer and the Paying Agent, shall mail a notice of such appointment to all Holders of Bonds as the names and addresses of such Holders appear on the Bond Register.

SECTION 2.04.    Registration and Registrar. The Trustee is hereby constituted and appointed as the Registrar for the Bonds. The Registrar shall act as registrar and transfer agent for the Bonds. The Issuer shall cause to be kept at an office of the Registrar a register (herein sometimes referred to as the "Bond Register" or "Register") in which, subject to the provisions set forth in Section 2.08 below and such other regulations as the Issuer and Registrar may prescribe, the Issuer shall provide for the registration of the Bonds and for the registration of transfers and exchanges of such Bonds. The Issuer shall cause the Registrar to designate, by a written notification to the Trustee, a specific office location (which may be changed from time to time, upon similar notification) at which the Bond Register is kept.

The Registrar when it is not also the Trustee, forthwith following each Record Date and at any other time as reasonably requested by the Trustee, certify and furnish to the Trustee, and to any Paying Agent as such Trustee shall specify, the names, addresses, and holdings of Bondholders and any other relevant information reflected in the Bond Register, and the Trustee and any such Paying Agent shall for all purposes be entitled to rely upon the information so furnished to it and shall have no liability or responsibility in connection with the preparation thereof.

SECTION 2.05.    Mutilated, Destroyed, Lost or Stolen Bonds. If any Bond shall become mutilated, the Issuer shall execute and the Trustee or Authenticating Agent, as the case may be, shall thereupon authenticate and deliver a new Bond of like Series, tenor and denomination in exchange and substitution for the Bond so mutilated, but only upon surrender to the Trustee or Authenticating Agent, as the case may be, of such mutilated Bond for cancellation, and the Issuer and the Trustee or Authenticating Agent, as the case may be, may require reasonable indemnity therefor. If any Bond shall be reported lost, stolen or destroyed, evidence as to the ownership and the loss, theft or destruction thereof shall be submitted to the Issuer and the Trustee or Authenticating Agent, as the case may be; and if such evidence shall be satisfactory to both and indemnity satisfactory to both shall be given, the Issuer shall execute, and thereupon the Trustee or Authenticating Agent, as the case may be, shall authenticate and deliver a new Bond of like Series, tenor and denomination. The cost of providing any substitute Bond under the provisions of this Section shall be borne by the Bondholder for whose benefit such substitute Bond is provided. If any such mutilated, lost, stolen or destroyed Bond shall have matured or be about to mature, the Issuer may, with the consent of the Trustee or Authenticating Agent, as the case may be, pay to the Owner the principal amount of and accrued interest on such Bond upon the maturity thereof and compliance with the aforesaid conditions by such Owner, without the issuance of a substitute Bond therefor.

Every substituted Bond issued pursuant to this Section 2.05 shall constitute an additional contractual obligation of the Issuer, whether or not the Bond alleged to have been destroyed, lost

20

or stolen shall be at any time enforceable by anyone, and shall be entitled to all the benefits of the Indenture equally and proportionately with any and all other Bonds duly issued hereunder.

All Bonds shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, destroyed, lost or stolen Bonds, and shall preclude any and all other rights or remedies with respect to the replacement or payment of negotiable instruments, investments or other securities without their surrender.

SECTION 2.06.    Temporary Bonds.  Pending preparation of definitive Bonds, or by agreement with the original purchasers of all Bonds, the Issuer may issue and, upon its request, the Trustee shall authenticate in lieu of definitive Bonds one or more temporary printed or typewritten Bonds of substantially the tenor recited above.  Upon request of the Issuer, the Trustee shall authenticate definitive Bonds in exchange for and upon surrender of an equal principal amount of temporary Bonds.  Until so exchanged, temporary Bonds shall have the same rights, remedies and security hereunder as definitive Bonds.  So long as Cede & Co., or any other nominee of DTC is the registered Owner of the Bonds, the definitive Bonds shall be in typewritten form.

SECTION 2.07.    Cancellation and Destruction of Surrendered Bonds.  All Bonds surrendered for payment or redemption and all Bonds surrendered for exchange shall, at the time of such payment, redemption or exchange, be promptly transferred by the Registrar, Paying Agent or Authenticating Agent to, and cancelled and destroyed by, the Trustee.  The Trustee shall deliver to the Issuer a certificate of destruction in respect of all Bonds destroyed in accordance with this Section.

SECTION 2.08.    Registration, Transfer and Exchange.  As provided in Section 2.04 hereof, the Issuer shall cause a Bond Register in respect of the Bonds to be kept at the designated office of the Registrar.

Upon surrender for requisition of transfer of any Bond at the designated office of the Registrar, and upon compliance with the conditions for the transfer of Bonds set forth in this Section 2.08, the Issuer shall execute and the Trustee (or Registrar or Authenticating Agent as described in Section 2.03 hereof) shall authenticate and deliver, in the name of the designated transferees, one or more new Bonds of a like aggregate principal amount and of the same Series and maturity.

At the option of the Bondholder, Bonds may be exchanged for other Bonds of a like aggregate principal amount and of the same Series and maturity, upon surrender of the Bonds to be exchanged at any such office or agency.  Whenever any Bonds are so surrendered for exchange, the Issuer shall execute and the Trustee (or Registrar or Authenticating Agent as described in Section 2.03 hereof) shall authenticate and deliver the Bonds which the Bondholder making the exchange is entitled to receive.

21

All Bonds issued upon any transfer or exchange of Bonds shall be valid obligations of the Issuer, evidencing the same debt and entitled to the same benefits under the Indenture as the Bonds surrendered upon such transfer or exchange.

Every Bond presented or surrendered for transfer or exchange shall be duly endorsed or accompanied by a written instrument of transfer in form satisfactory to the Trustee, Paying Agent or the Registrar, duly executed by the Bondholder or his attorney duly authorized in writing.

Transfers and exchanges shall be made without charge to the Bondholder, except that the Issuer or the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer or exchange of Bonds.

Neither the Issuer nor the Registrar on behalf of the Issuer shall be required (i) to issue, transfer or exchange any Bond during a period beginning at the opening of business fifteen (15) days before the day of mailing of a notice of redemption of Bonds selected for redemption and ending at the close of business on the day of such mailing, or (ii) to transfer or exchange any Bond so selected for redemption in whole or in part.

SECTION 2.09.    Persons Deemed Owners.    The Issuer, the Trustee, any Paying Agent, the Registrar, or the Authenticating Agent shall deem and treat the person in whose name any Bond is registered as the absolute Owner thereof (whether or not such Bond shall be overdue and notwithstanding any notation of ownership or other writing thereon made by anyone other than the Issuer, the Trustee, any Paying Agent, the Registrar or the Authenticating Agent) for the purpose of receiving payment of or on account of the principal or Redemption Price of and interest on such Bond, and for all other purposes, and the Issuer, the Trustee, any Paying Agent, the Registrar and the Authenticating Agent shall not be affected by any notice to the contrary. All such payments so made to any such Owner, or upon his order, shall be valid and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for moneys payable upon any such Bond.

SECTION 2.10.    Limitation on Incurrence of Certain Indebtedness.    The Issuer will not issue Bonds, except upon the conditions and in the manner provided or as otherwise permitted in the Indenture, provided that the Issuer may enter into agreements with issuers of Credit Facilities which involve liens on Pledged Revenues on a parity with that of the Bonds or portion thereof which is supported by such Credit Facilities.

SECTION 2.11.    Qualification for The Depository Trust Company.    To the extent provided in a Supplemental Indenture or authorized and directed by a Resolution of the Issuer authorizing the issuance of a Series of Bonds, the Trustee shall be authorized to enter into agreements with The Depository Trust Company, New York, New York ("DTC") and other depository trust companies, including, but not limited to, agreements necessary for wire transfers of interest and principal payments with respect to the Bonds, utilization of electronic book entry data received from DTC, and other depository trust companies in place of actual delivery of Bonds and provision of notices with respect to Bonds registered by DTC and other depository

trust companies (or any of their designees identified to the Trustee) by overnight delivery, courier service, telegram, telecopy or other similar means of communication.

So long as there shall be maintained a book-entry-only system with respect to a Series of Bonds, the following provisions shall apply:

The Bonds shall initially be registered in the name of Cede & Co. as nominee for DTC, which will act initially as securities depository for the Bonds and so long as the Bonds are held in book-entry-only form, Cede & Co. shall be considered the registered owner for all purposes hereof. On original issue, the Bonds shall be deposited with DTC, which shall be responsible for maintaining a book-entry-only system for recording the ownership interest of its participants ("DTC Participants") and other institutions that clear through or maintain a custodial relationship with a DTC Participant, either directly or indirectly ("Indirect Participants"). The DTC Participants and Indirect Participants will be responsible for maintaining records with respect to the beneficial ownership interests of individual purchasers of the Bonds ("Beneficial Owners").

Principal and interest on the Bonds prior to and at maturity shall be payable directly to Cede & Co. in care of DTC. Disbursal of such amounts to DTC Participants shall be the responsibility of DTC. Payments by DTC Participants to Indirect Participants, and by DTC Participants and Indirect Participants to Beneficial Owners shall be the responsibility of DTC Participants and Indirect Participants and not of DTC, the Trustee or the Issuer.

The Bonds shall initially be issued in the form of one fully registered Bond for each maturity of each Series and shall be held in such form until maturity.  Individuals may purchase beneficial interests in Authorized Denominations in book-entry-only form, without certificated Bonds, through DTC Participants and Indirect Participants.

DURING THE PERIOD FOR WHICH CEDE & CO. IS REGISTERED OWNER OF THE BONDS, ANY NOTICES TO BE PROVIDED TO ANY REGISTERED OWNER WILL BE PROVIDED TO CEDE & CO. DTC SHALL BE RESPONSIBLE FOR NOTICES TO DTC PARTICIPANTS AND DTC PARTICIPANTS SHALL BE RESPONSIBLE FOR NOTICES TO INDIRECT PARTICIPANTS, AND DTC PARTICIPANTS AND INDIRECT PARTICIPANTS SHALL BE RESPONSIBLE FOR NOTICES TO BENEFICIAL OWNERS.

The Issuer and the Trustee shall enter into a blanket letter of representations with DTC providing for such book-entry-only system.  Such agreement may be terminated at any time by either DTC or the Issuer.  In the event of such termination, the Issuer shall select another securities depository.  If the Issuer does not replace DTC, the Trustee will register and deliver to the Beneficial Owners replacement Bonds in the form of fully registered Bonds in accordance with the instructions from Cede & Co.

In the event DTC, any successor of DTC or the Issuer elects to discontinue the book-entry only system, the Trustee shall deliver bond certificates in accordance with the instructions from DTC or its successor and after such time Bonds may be exchanged for an equal aggregate principal amount of Bonds in other Authorized Denominations and of the same maturity and Series upon surrender thereof at the designated corporate trust office of the Trustee.

## ARTICLE III

## ISSUE OF BONDS

SECTION 3.01.    Issue of Bonds.  Subject to the provisions of Section 2.01 hereof, the Issuer may issue one or more Series of Bonds hereunder and under Supplemental Indentures from time to time for the purpose of financing the Cost of acquisition or construction of a Project, to refund all or a portion of a Series of Bonds or for the completion of a Project (and to pay the costs of the issuance of such Bonds and to pay the amounts required to be deposited with respect to such Bonds in the Funds and Accounts established under the Indenture).  In connection with the issuance of a Series of Bonds the Trustee shall, at the request of the Issuer, authenticate the Bonds and deliver or cause them to be authenticated and delivered, as specified in the request, but only upon receipt of:

(1)    a Certified Resolution of the Issuer (a) approving a Supplemental Indenture under which the Series of Bonds are to be issued; (b) providing the terms of the Bonds and directing the payments to be made into the Funds and Accounts in respect thereof as provided in Article VI hereof; (c) authorizing the execution and delivery of the Series of Bonds to be issued; and (d) if the purpose is to effectuate a refunding, authorizing the redemption, if any, of the Bonds to be refunded and the defeasance thereof, and the execution and delivery of an escrow agreement, if applicable, and other matters contained in Section XIV hereof;

(2)    a written opinion or opinions of Counsel to the Issuer, addressed to the Trustee that (a) all conditions prescribed herein as precedent to the issuance of the Bonds have been fulfilled; (b) the Bonds have been validly authorized and executed and when authenticated and delivered pursuant to the request of the Issuer will be valid obligations of the Issuer entitled to the benefit of the trust created hereby and will be enforceable in accordance with their terms except as enforcement thereof may be affected by bankruptcy, reorganization, insolvency, moratorium and other similar laws relating to creditors' rights generally and subject to equitable principles, whether in a proceeding at law or in equity; (c) any consents of any Regulatory Bodies required in connection with the issuance of the Bonds or in connection with the acquisition of the improvements included in the Project have been obtained or can be reasonably expected to be obtained; and (d) if the acquisition of any real property or interest therein is included in the purpose of such issue, (i) the Issuer has or can acquire good and marketable title thereto free from all liens and encumbrances except such as will not materially interfere with the proposed use thereof or (ii) the Issuer has or can acquire a valid, subsisting and enforceable leasehold, easement, right-of-way or other interest in real property sufficient to effectuate the purpose of the issue (which opinion may be stated in reliance on the opinion of other Counsel satisfactory to the signer or on a title insurance policy issued by a reputable title company) (clauses (c) and (d) shall not apply in the case of the issuance of a refunding Series of Bonds);

(3)    an opinion of counsel for the Issuer, which shall also be addressed to the Trustee, to the effect that:  (a) the Issuer has good right and lawful authority under the

24

Act to undertake the Project, subject to obtaining such licenses, orders or other authorizations as are, at the date of such opinion, required to be obtained from any agency or regulatory body; (b) that the Special Assessment proceedings have been taken in accordance with Florida law and that the Issuer has taken all action necessary to levy and impose the Special Assessments; (c) that the Special Assessments are legal, valid, and binding liens upon the property against which the Special Assessments are made, coequal with the lien of all state, county, Issuer and municipal ad valorem taxes and superior in priority to all other liens, titles and claims against said property then existing or thereafter created, until paid; (d) the related Indenture has been duly and validly authorized, approved, and executed by the Issuer; (e) the issuance of the Series of Bonds has been duly authorized and approved by the Board; and (f) the related Indenture (assuming due authorization, execution and delivery by the Trustee) constitutes a binding obligation of the Issuer, enforceable against the Issuer in accordance with its terms except as enforcement thereof may be affected by bankruptcy, reorganization, insolvency, moratorium and other similar laws relating to creditors' rights generally and subject to equitable principles, whether in a proceeding at law or in equity (clauses (c) and (d) shall not apply in the case of the issuance of a refunding Series of Bonds);

(4)    a Consulting Engineer's certificate addressed to the Issuer and the Trustee setting forth the estimated cost of the Project, and in the case of an acquisition by the Issuer of all or a portion of the Project that has been completed, stating, in the signer's opinion, (a) that the portion of the Project improvements to be acquired from the proceeds of such Bonds have been completed in accordance with the plans and specifications therefor; (b) the Project improvements are constructed in a sound workmanlike manner and in accordance with industry standards; (c) the purchase price to be paid by the Issuer for the Project improvements is no more than the lesser of (i) the fair market value of such improvements and (ii) the actual Cost of construction of such improvements; and (d) the plans and specifications for the Project improvements have been approved by all Regulatory Bodies required to approve them (specifying such Regulatory Bodies) or such approval can reasonably be expected to be obtained; provided, however, that in lieu of the information required in clause (a), there may be delivered to the Trustee satisfactory evidence of the acceptance of operational and maintenance responsibility of each component of the Project by one or more governmental entities (the foregoing shall not be applicable in the case of the issuance of a refunding Series of Bonds);

(5)    a copy of the Supplemental Indenture for such Bonds, certified by the Secretary or Assistant Secretary of the Issuer as being a true and correct copy thereof;

(6)    the proceeds of the sale of such Bonds;

(7)    any Credit Facility authorized by the Issuer in respect to such Bonds;

(8)    one or more Certified Resolutions of the Issuer relating to the levy of Special Assessments in respect of the Project, and evidencing that the Issuer has undertaken and, to the extent then required under applicable law, completed all necessary

25

proceedings, including, without limitation, the approval of assessment rolls, the holding of public hearings, the adoption of resolutions and the establishment of all necessary collection procedures, in order to levy and collect Special Assessments upon the District Lands in an amount sufficient to pay the Debt Service Requirement on the Bonds to be issued (the foregoing shall not be applicable in the case of the issuance of a refunding Series of Bonds);

(9)     an executed opinion of Bond Counsel;

(10)     a written direction of the Issuer to the Trustee to authenticate and deliver such Bonds;

(11)     in the case of a Series of Bonds to be issued for the purpose of completing a Project, a certificate of the Consulting Engineer stating the original estimated Cost of the Project to be completed at the time of issuance of the Bonds originally issued to finance such Project, that such estimated Cost will be exceeded, the Cost of completing such Project, and that other funds available or reasonably expected to become available for such Cost of completion, together with the proceeds of such Series of Bonds, will be sufficient to pay such Cost of completion; and

(12)     a copy of a Final Judgment of validation and a Certificate of No Appeal with respect to the Bonds that are subject to validation;

(13)     in the case of the issuance of a refunding Series of Bonds, an Officer's Certificate of the Issuer stating (a) the intended use of the proceeds of the issue; (b) any other amounts available for the purpose; (c) that the proceeds of the issue plus the other amounts, if any, stated to be available for the purpose will be sufficient to refund the Bonds to be refunded in accordance with the refunding plan and in compliance with Article XVI of this Master Indenture, including, without limitation, to pay the Costs of issuance of such Bonds, and (d) that notice of redemption, if applicable, of the Bonds to be refunded has been duly given or that provision has been made therefor, as applicable;

(14)     in the case of the issuance of a refunding Series of Bonds, a written opinion of Bond Counsel to the effect that the issuance of such Bonds will not adversely affect the exclusion from gross income for federal income tax purposes of interest on any Bonds issued pursuant to the Indenture (to the extent that upon original issuance thereof such Bonds were issued as Bonds the interest on which is excludable from gross income for federal income tax purposes); and

(15)     such other documents, certifications and opinions as shall be required by the Supplemental Indenture or by the Issuer or the Trustee upon advice of counsel.

At the option of the Issuer, any or all of the matters required to be stated in the Certified Resolution described in (1) above may instead be stated in a Supplemental Indenture, duly approved by a Certified Resolution of the Issuer.

[END OF ARTICLE III]

## ARTICLE IV
## <u>ACQUISITION OF PROJECT</u>

SECTION 4.01.        <u>Project to Conform to Plans and Specifications; Changes</u>.    The Issuer will proceed to complete any Project or portion thereof for which any Series of Bonds is being issued in accordance with the plans and specifications therefor, as such plans and specifications may be amended from time to time, and subject to the specific requirements of the Supplemental Indenture for such Series of Bonds.

SECTION 4.02.        <u>Compliance Requirements</u>.    The Issuer will comply with all present and future laws, acts, rules, regulations, orders and requirements lawfully made and applicable in fact to any acquisition or construction hereby undertaken and shall obtain all necessary approvals under federal, state and local laws, acts, rules and regulations necessary for the completion and operation of any Project or portion thereof for which any Series of Bonds is being issued and shall complete any Project or portion thereof in conformity with such approvals, laws, rules and regulations.

[END OF ARTICLE IV]

28

## ARTICLE V
## ACQUISITION AND CONSTRUCTION FUND

SECTION 5.01.    _Acquisition and Construction Fund_.  The Trustee shall establish an Acquisition and Construction Fund into which shall be deposited the proceeds from each Series of Bonds issued under the Indenture (unless otherwise specified herein or in the applicable Supplemental Indenture for a Series of Bonds) and from which Costs may be paid as set forth herein and in the applicable Supplemental Indenture.   Unless otherwise specified in the applicable Supplemental Indenture, a separate Series Account shall be established in the Acquisition and Construction Fund with respect to each Series of Bonds issued hereunder and the proceeds of each Series of Bonds (other than Bonds issued to refund all or a portion of the Bonds) shall be deposited into the corresponding Series Account in the Acquisition and Construction Fund.  The amounts in any account of the Acquisition and Construction Fund, until applied as hereinafter provided, shall be held for the security of the Series of Bonds hereunder in respect of which such Series Account was established.  Separate subaccounts within any Series Account of the Acquisition and Construction Fund shall be maintained by the Trustee in respect of each Series of Bonds upon request of the Issuer whenever, in the opinion of the Issuer, it is appropriate to have a separate accounting in respect of the Costs of any designated portion of a Project.  Payments shall be made from the appropriate Series Account of the Acquisition and Construction Fund to pay any unpaid Costs of Issuance of the Series of Bonds in question, including without limitation, legal, engineering, and consultants' fees and to pay amounts to be reimbursed to the Issuer for Costs advanced, and thereafter to pay Costs of planning, financing, acquisition, construction, reconstruction, equipping and installation of the applicable Project or portion thereof.

(a)    _Deposits_.  In addition to the deposit of amounts received by the Trustee on the date of issuance of each Series of Bonds, the District shall pay or cause to be paid to the Trustee, for deposit into the Series Account of the Acquisition and Construction Fund, as promptly as practicable, the following amounts:

(i)    Subject to Section 9.24 hereof, payments made to the District from the sale, lease or other disposition of the Project or any portion thereof; and

(ii)    Subject to Section 9.14 hereof, the balance of insurance proceeds with respect to the loss or destruction of the Project or any portion thereof.

Amounts in the Series Account of the Acquisition and Construction Fund shall be applied to pay the Cost of a Project or a portion thereof, as applicable, pertaining to the Series of Bonds in question; provided, however, that if any amounts remain in the Series Account of the Acquisition and Construction Fund after the Completion Date of the Project or portion thereof pertaining to the Series of Bonds in question, and if such amounts are not reserved for payment of any remaining part of the Cost of such Project, such amounts shall be transferred to the applicable Series Account of the Bond Redemption Fund for application to the redemption of Bonds of the Series to which such proceeds relate, as set forth in Section 6.06 hereof or in the applicable Supplemental Indenture.

29

(b)  *Disbursements*.  All payments from the Acquisition and Construction Fund shall be paid in accordance with the provisions of this subsection.  Moneys in the Acquisition and Construction Fund shall be disbursed by check, voucher, order, draft, certificate or warrant signed by any one or more officers or employees of the Trustee legally authorized to sign such items or by wire transfer to an account specified by the payee upon satisfaction of the conditions for disbursement set forth in this subsection (b).  Before any such payment shall be made, the District shall file with the Trustee a fully executed requisition in the form of Exhibit D attached hereto.  Upon receipt of each such requisition and accompanying certificate, the Trustee shall promptly withdraw from the Acquisition and Construction Fund and pay to the person, firm or corporation named in such requisition the amount designated in such requisition.  All requisitions and certificates received by the Trustee pursuant to this Section 5.01 shall be retained in the possession of the Trustee, subject at all reasonable times to the inspection of the District, the Consulting Engineer, the Owner of any Bonds, and the agents and representatives thereof.

(c)  *Completion of Project*.  On the date of completion of the Project, as evidenced by the delivery of a Certificate of the Consulting Engineer and adoption of a resolution by the Board accepting the Project as provided by Section 170.09, Florida Statutes, as amended (the "Completion Date"), the balance in the Acquisition and Construction Fund not reserved by the District for the payment of any remaining part of the Cost of the Project shall be transferred by the Trustee to, and deposited in, the applicable Series Account of the Bond Redemption Fund and applied as provided in Section 6.06 hereof.

[END OF ARTICLE V]

## ARTICLE VI
## SPECIAL ASSESSMENTS;
## APPLICATION THEREOF TO FUNDS AND ACCOUNTS

SECTION 6.01.    Special Assessments; Lien of Indenture on Pledged Revenues. The Issuer hereby covenants that it shall levy Special Assessments, and evidence and certify the same to the Tax Collector or shall cause the Property Appraiser to certify the same on the tax roll to the Tax Collector for collection by the Tax Collector and enforcement by the Tax Collector or the Issuer, pursuant to the Act, Chapter 170 or Chapter 197, Florida Statutes, or any successor statutes, as applicable, to the extent and in the amount necessary to pay the Debt Service Requirement on Bonds issued and Outstanding hereunder.

The Issuer shall, within 5 Business Days of receipt thereof pay to the Trustee for deposit in the Series Account of the Revenue Fund established under Section 6.03 hereof all Special Assessments received by the Issuer from the levy thereof on the District Lands subject to assessments for the payment of the related Series of Bonds; provided, however, that amounts received as prepayments of Special Assessments shall be deposited directly into the Bond Redemption Fund established hereunder or in any account thereof established pursuant to the applicable Supplemental Indenture. The Issuer shall notify the Trustee at the time of deposit of any amounts received as prepayments of Special Assessments and shall identify the related Series of Bonds.

There are hereby pledged for the payment of the principal or Redemption Price of and interest on all Bonds of each Series issued and Outstanding under the Indenture and all reimbursements due to any Credit Facility Issuer for any drawing with respect to such Series of Bonds on its Credit Facility, including, without limitation, interest thereon, as required under the terms of the applicable Credit Facility Agreement, the Pledged Revenues; provided, however, that unless otherwise specifically provided herein or in a Supplemental Indenture relating to a Series of Bonds with respect to the Pledged Revenues securing such Series of Bonds, the Pledged Revenues securing a Series of Bonds shall secure only such Series of Bonds and Bonds issued on a parity therewith and shall not secure any other Bonds or Series of Bonds. The Pledged Revenues shall immediately be subject to the lien and pledge of the Indenture without any physical delivery hereof or further act; provided, however, that the lien and pledge of the Indenture shall not apply to any moneys transferred by the Trustee to the Rebate Fund. The foregoing notwithstanding, to the extent provided in the Supplemental Indenture authorizing the issuance of a Series of Bonds, such Series of Bonds may be made payable from and secured by less than all of the Pledged Revenues, and any one or more of the provisions of this Master Indenture may be made inapplicable to such Series of Bonds, all as more specifically provided in the corresponding Supplemental Indenture; provided, however, that any such provisions shall apply only to the particular Series of Bonds authorized by such Supplemental Indenture and shall not affect in any manner whatsoever any Outstanding Series of Bonds.

SECTION 6.02.    Funds and Accounts Relating to the Bonds. The Funds and Accounts specified in this Article VI shall be established under the Master Indenture and each Supplemental Indenture pursuant to which a Series of Bonds is issued for the benefit of the specific Series of Bonds issued pursuant to such Supplemental Indenture and any Series issued

31

on a parity therewith and, unless expressly otherwise provided in said Supplemental Indenture, shall not apply to Bonds Outstanding hereunder issued under any other indenture supplemental hereto. All moneys, including, without limitation, proceeds of a Series of Bonds, on deposit to the credit of the Funds and Accounts established hereunder and under a Supplemental Indenture (except for moneys transferred to the Rebate Fund) shall be pledged to the payment of the principal, redemption or purchase price of (as the case may be) and interest on the Series of Bonds issued hereunder and under such Supplemental Indenture, and any Series issued on a parity therewith.

SECTION 6.03.    <u>Revenue Fund</u>. The Trustee is hereby authorized and directed to establish a Revenue Fund and pursuant to a Supplemental Indenture a Series Account for each Series of Bonds issued hereunder, into which the Trustee shall immediately deposit any and all Special Assessments received from the levy thereof on the District Lands or any portion thereof (other than Special Assessment prepayments) and any amounts received as the result of any foreclosure, sale of tax certificates or other remedial action for nonpayment of Special Assessments for the payment of the related Series of Bonds and other payments required hereunder or under the applicable Supplemental Indenture (unless such Special Assessments and/or other payments are specifically designated by the Issuer pursuant to a Supplemental Indenture for deposit into the Rebate Fund or any other Fund or Account established hereunder or under a Supplemental Indenture) and each Series Account therein shall be held by the Trustee separate and apart from all other Funds and Accounts held under the Indenture and from all other moneys of the Trustee. The Trustee shall transfer from amounts on deposit in the Series Account in the Revenue Fund to the Funds and Accounts designated below, the following amounts, at the following times and in the following order of priority:

FIRST, upon receipt but no later than the Business Day preceding the first May 1 for which there is an insufficient amount from Bond proceeds (or investment earnings thereon) on deposit in the applicable Series Interest Account to be applied to the payment of interest on the Bonds of a Series due on the next succeeding May 1, and no later than the Business Day next preceding each May 1 thereafter while Bonds of a Series issued under the Indenture remain Outstanding, to the applicable Series Interest Account of the Debt Service Fund, an amount equal to the interest on the related Series of Bonds becoming due on the next succeeding May 1, less any amount on deposit in such Interest Account not previously credited;

SECOND, beginning on the date set forth in the related Supplemental Indenture, and no later than the Business Day next preceding each May 1 thereafter while Bonds of a Series issued under the Indenture remain Outstanding, to the Principal Account of the Debt Service Fund, an amount equal to the principal amount of Bonds of such Series maturing on the next succeeding principal payment date, less any amount on deposit in the applicable Series Principal Account not previously credited;

THIRD, beginning on the date set forth in the related Supplemental Indenture, and no later than the Business Day next preceding each May 1 thereafter while Bonds of a Series issued under the Indenture remain Outstanding, to the applicable Series Sinking Fund Account of the Debt Service Fund, an amount equal to the principal amount of

32

Bonds of such Series subject to mandatory sinking fund redemption on the next succeeding principal payment date, less any amount on deposit in the applicable Series Sinking Fund Account not previously credited;

FOURTH, upon receipt but no later than the Business Day preceding the first November 1 for which there remains an insufficient amount from Bond proceeds (or investment earnings thereon) on deposit in the applicable Series Interest Account to be applied to the payment of interest on the Bonds of a Series due on the next succeeding November 1, and no later than the Business Day next preceding each November 1 thereafter while Bonds of such Series issued under the Indenture remain Outstanding, to the applicable Series Interest Account of the Debt Service Fund, an amount equal to the interest on the Bonds of such Series becoming due on the next succeeding November 1, less any amount on deposit in the Interest Account not previously credited;

FIFTH, upon receipt but no later than the Business Day next preceding each Interest Payment Date while Bonds of a Series issued under the Indenture remain Outstanding, to the applicable Series Account of the Debt Service Reserve Fund, an amount equal to the amount, if any, which is necessary to make the amount on deposit therein equal to the Debt Service Reserve Requirement; and

SIXTH, subject to the following paragraph the balance of any moneys remaining after making the foregoing deposits shall remain therein.

The Trustee shall within ten (10) Business Days after the last Interest Payment Date in any calendar year, at the direction of the Issuer, withdraw any moneys held for the credit of the Revenue Fund which are not otherwise required to be deposited pursuant to this Section and deposit such moneys as directed to the credit of the applicable Series Account of the Bond Redemption Fund in accordance with the provisions hereof. Special Assessment Prepayments pledged to a particular Series of Bonds shall be deposited directly into the applicable Series account of the Bond Redemption Fund as provided herein.

SECTION 6.04.    Debt Service Fund. The Trustee is hereby authorized and directed to establish a Debt Service Fund which shall consist of amounts deposited therein by the Trustee and any other amounts the Issuer may pay to the Trustee for deposit therein with respect to the related Series of Bonds. The Debt Service Fund shall be held by the Trustee separate and apart from all other Funds and Accounts held under the Indenture and from all other moneys of the Trustee. The Trustee shall establish within the Debt Service Fund pursuant to a Supplemental Indenture, a Series Principal Account, a Series Interest Account and a Series Sinking Fund Account for each Series of Bonds, which accounts shall be separate and apart from all other Funds and Accounts established under the Indenture and from all other moneys of the Trustee.

The Trustee at all times shall make available to any Paying Agent the funds in the Series Principal Account and the Series Interest Account of the Debt Service Fund to pay the principal of the applicable Series of Bonds as they mature upon surrender thereof and the interest on the applicable Series of Bonds as it becomes payable, respectively. When a Series of Bonds is

33

redeemed, the amount, if any, in the Debt Service Fund representing interest thereon shall be applied to the payment of accrued interest in connection with such redemption.

The Trustee shall apply moneys in the Series Sinking Fund Account in the Debt Service Fund for purchase or redemption of the applicable Series of Bonds in amounts and maturities set forth in the Supplemental Indenture. Whenever Bonds of a Series are to be purchased out of such Series Sinking Fund Account, if the Issuer shall notify the Trustee that the Issuer wishes to arrange for such purchase, the Trustee shall comply with the Issuer's arrangements provided they conform to the Indenture.

Except to the extent otherwise provided in a Supplemental Indenture, purchases and redemptions out of the Series Sinking Fund Account shall be made as follows:

(a)    The Trustee shall apply the amounts required to be transferred to the Series Sinking Fund Account (less any moneys applied to the purchase of Bonds of the applicable Series pursuant to the next sentence hereof) on the principal payment date in each of the years set forth in a Supplemental Indenture to the redemption of Bonds of a Series in the amounts, manner and maturities and on the dates set forth in a Supplemental Indenture, at a Redemption Price of 100% of the principal amount thereof. At the written direction of the Issuer, the Trustee shall apply moneys from time to time available in the Series Sinking Fund Account to the purchase of Bonds of the applicable Series which mature in the aforesaid years, at prices not higher than the principal amount thereof, in lieu of redemption as aforesaid, provided that firm purchase commitments can be made before the notice of redemption would otherwise be required to be given. In the event of purchases at less than the principal amount thereof, the difference between the amount in the Series Sinking Fund Account representing the principal amount of the Bonds so purchased and the purchase price thereof (exclusive of accrued interest) shall be transferred to the related Series Interest Account of the Debt Service Fund.

(b)    Accrued interest on purchased Bonds of a Series shall be paid from the related Series Interest Account of the Debt Service Fund.

(c)    In lieu of paying the Debt Service Requirements necessary to allow any mandatory redemption of Bonds of a Series from the related Series Sinking Fund Account, the Issuer may present to the Trustee Bonds of a Series purchased by the Issuer pursuant to subparagraph (a) above and furnished for such purposes; provided, however, that no Bonds of such Series so purchased shall be credited towards the Debt Service Requirements in respect of the mandatory redemption of Bonds of such Series for which notice of redemption has been given pursuant to Section 8.02 of this Master Indenture. Any Bond so purchased shall be presented to the Trustee for cancellation. In such event, the Debt Service Requirements with respect to the Bonds of a Series for the period in which the purchased Bonds are presented to the Trustee shall, for all purposes hereunder, be reduced by an amount equal to the aggregate principal amount of any such Bonds so presented.

SECTION 6.05.    Debt Service Reserve Fund. The Trustee is hereby authorized and directed to establish a Debt Service Reserve Fund and pursuant to a Supplemental Indenture a Series Account for each Series of Bonds issued hereunder. The Debt Service Reserve Fund and

each Series Account therein shall be held by the Trustee for the benefit of each related Series of Bonds; provided, however, that notwithstanding anything to the contrary contained in this Master Indenture, the Supplemental Indenture authorizing the issuance of a Series of Bonds may provide that the Debt Service Reserve Fund is not applicable and no account therein shall secure such Series of Bonds. The Debt Service Reserve Fund and each Series Account therein shall constitute an irrevocable trust fund to be applied solely as set forth herein and shall be held by the Trustee separate and apart from all other Funds and Accounts held under the Indenture and from all other moneys of the Trustee. Unless otherwise provided in the Supplemental Indenture authorizing the issuance of a Series of Bonds, on the date of issuance and delivery of a Series of Bonds an amount of Bond proceeds equal to the Debt Service Reserve Requirement in respect of such Series of Bonds, calculated as of the date of issuance and delivery of such Series of Bonds, shall be deposited in the related Series Account of the Debt Service Reserve Fund. As long as there exists no default under the Indenture and the amount in the Series Account of the Debt Service Reserve Fund is not reduced below the then applicable Debt Service Reserve Requirement with respect to such Series of Bonds, earnings on investments in the Series Account of the Debt Service Reserve Fund shall, prior to the Completion Date of a Project, be transferred to the Series Interest Account of the Debt Service Fund relating thereto, and after the Completion Date, be transferred to the related Series Account of the Revenue Fund. Otherwise, earnings on investments in each Series Account of the Debt Service Reserve Fund shall be retained therein until applied as set forth herein. Unless otherwise provided in a Supplemental Indenture, in the event that the amount in a Series Account of the Debt Service Reserve Fund exceeds the Debt Service Reserve Requirement with respect to such Series of Bonds due to a decrease in the then applicable Debt Service Reserve Requirement as a result of an optional prepayment by the owner of a lot or parcel of land of a Special Assessment against such lot or parcel, which Special Assessment is pledged for the payment and security of such Series of Bonds, the excess amount shall be transferred from the Series Account of the Debt Service Reserve Fund to the Bond Redemption Fund established for such Series of Bonds, as a credit against the principal amount of the prepayment otherwise required to be made by the owner of such lot or parcel. In the event that the amount in a Series Account of the Debt Service Reserve Fund exceeds the Debt Service Reserve Requirement with respect to such Series of Bonds due to a decrease in the then applicable Series Account of the Debt Service Reserve Requirement for any other reason, the excess amount shall be transferred from the Series Account of the Debt Service Reserve Fund to the related Series Account of the Revenue Fund.

Whenever for any reason on an Interest or Principal Payment Date or mandatory redemption date with respect to a related Series of Bonds secured by a Series Account of the Debt Service Reserve Fund the amount in the related Series Interest Account, the related Series Principal Account or the related Series Sinking Fund Account, as the case may be, is insufficient to pay all amounts payable on such Series of Bonds therefrom on such payment dates, the Trustee shall, without further instructions, transfer the amount of any such deficiency from the related Series Account of the Debt Service Reserve Fund into the related Series Interest Account, the related Series Principal Account and the related Series Sinking Fund Account, as the case may be, with priority to the related Series Interest Account and then, proportionately according to the respective deficiencies therein, to the related Series Principal Account and the related

Series Sinking Fund Account, to be applied to pay the Series of Bonds secured by the Series Account of the Debt Service Reserve Fund.

Notwithstanding the foregoing, in lieu of the required deposits into the related Series Account of the Debt Service Reserve Fund, the Issuer may cause to be deposited into the Series Account of the Debt Service Reserve Fund a Debt Service Reserve Insurance Policy or Debt Service Reserve Letter of Credit either in lieu of any cash amount required to be deposited therein in connection with the issuance of any Series of Bonds or in substitution for the full amounts then on deposit therein or in an amount equal to the difference between the amount required to be deposited and the sum, if any, then on deposit in the Series Account of the Debt Service Reserve Fund, which Debt Service Reserve Insurance Policy or Debt Service Reserve Letter of Credit shall be payable (upon the giving of notice as required thereunder) on any Interest Payment Date or principal payment date on which a deficiency exists which cannot be remedied by moneys in any other Fund or Account held pursuant to the Indenture and available for such purpose. If any such Debt Service Reserve Insurance Policy or Debt Service Reserve Letter of Credit is substituted for moneys on deposit in the Series Account of the Debt Service Reserve Fund, or if at any time there are excess moneys in the Series Account of the Debt Service Reserve Fund, the excess moneys in the Series Account of the Debt Service Reserve Fund shall be transferred to and deposited in the related Series Account of the Revenue Fund. If a disbursement is made from a Debt Service Reserve Insurance Policy or Debt Service Reserve Letter of Credit, the Issuer shall be obligated to either reinstate the maximum limits of such Debt Service Reserve Insurance Policy or Debt Service Reserve Letter of Credit immediately following such disbursement or to deposit into the Series Account of the Debt Service Reserve Fund, as provided in the Indenture for restoration of withdrawals from the Series Account of the Debt Service Reserve Fund, funds in the amount of the disbursement made under such Debt Service Reserve Insurance Policy or Debt Service Reserve Letter of Credit.

In the event that upon the occurrence of any deficiency in a Series Interest Account, a Series Principal Account or a Series Sinking Fund Account, the Series Account of the Debt Service Reserve Fund is then funded with a Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy, the Trustee shall, on an Interest or Principal Payment Date or mandatory redemption date to which such deficiency relates, draw upon the Debt Service Reserve Letter of Credit or cause to be paid under the Debt Service Reserve Insurance Policy an amount sufficient to remedy such deficiency, in accordance with the terms and provisions of the Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy as applicable, and any corresponding reimbursement or other agreement governing the Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy; provided, however, that if at the time of such deficiency the Series Account of the Debt Service Reserve Fund is only partially funded with a Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy, prior to drawing on the Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy, as applicable, the Trustee shall first apply any cash and securities on deposit in the Series Account of the Debt Service Reserve Fund to remedy the deficiency in accordance with the second paragraph of this Section 6.05 and, if after such application a deficiency still exists, the Trustee shall make up the balance of the deficiency by drawing on the Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy, as provided in this sentence.

36

Amounts drawn on the Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy shall be applied as set forth in the second paragraph of this Section 6.05. Any amounts drawn under a Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy shall be reimbursed to the issuer thereof in accordance with the terms and provisions of the reimbursement or other agreement governing such Debt Service Reserve Letter of Credit or Debt Service Reserve Insurance Policy.

SECTION 6.06.    Bond Redemption Fund.  The Trustee is hereby authorized and directed to establish a Series Bond Redemption Fund for each Series of Bonds issued hereunder into which shall be deposited moneys in the amounts and at the times provided in Sections 5.01, 6.01, 6.03, 6.05, 9.08(c) and 9.14(c) of this Master Indenture.  The Series Bond Redemption Fund shall constitute an irrevocable trust fund to be applied solely as set forth in the applicable Indenture and shall be held by the Trustee separate and apart from all other Funds and Accounts held under such Indenture and from all other moneys of the Trustee.  All earnings on investments held in the Series Bond Redemption Fund shall be retained therein and applied as set forth below.

Moneys in the Series Bond Redemption Fund (including all earnings on investments held in the Series Bond Redemption Fund) shall be accumulated therein to be used in the following order of priority, to the extent that the need therefor arises:

FIRST, to make such deposits into the Series Rebate Fund, if any, as the Issuer may direct in accordance with an arbitrage rebate agreement, such moneys thereupon to be used solely for the purposes specified in said arbitrage rebate agreement.  Any moneys so transferred from the Series Bond Redemption Fund to the Series Rebate Fund shall thereupon be free from the lien and pledge of the related Indenture;

SECOND, to be used to call for redemption pursuant to clause (b) of Section 8.01 hereof an amount of Bonds of the applicable Series equal to the amount of money transferred to the Series Bond Redemption Fund pursuant to the aforesaid clauses or provisions, as appropriate, for the purpose of such extraordinary mandatory redemption on the dates and at the prices provided in such clauses or provisions, as appropriate; and

THIRD, the remainder to be utilized by the Trustee, at the direction of a Responsible Officer, to call for redemption on each Interest Payment Date on which Bonds of the applicable Series are subject to optional redemption pursuant to Section 8.01(a) hereof such amount of Bonds of the applicable Series as, with the redemption premium, may be practicable; provided, however, that not less than Five Thousand Dollars ($5,000) principal amount of Bonds of the applicable Series shall be called for redemption at one time.

Any such redemption shall be made in accordance with the provisions of Article VIII of this Master Indenture.  The Issuer shall pay all expenses in connection with such redemption.

SECTION 6.07.    Drawings on Credit Facility.  With respect to Bonds in respect of which there has been issued a Credit Facility, the Trustee shall draw on the Credit Facility, in

accordance with the provisions for drawing under such Credit Facility, and within the requisite time period, all as set forth in the Credit Facility Agreement or the Supplemental Indenture.

SECTION 6.08.    Procedure When Funds Are Sufficient to Pay All Bonds of a Series.  If at any time the moneys held by the Trustee in the Funds and Accounts hereunder and under a Supplemental Indenture and available therefor are sufficient to pay the principal or Redemption Price of, as the case may be, and interest on all Bonds of a Series then Outstanding under such Indenture to maturity or prior redemption, together with any amounts due the Issuer and the Trustee, Paying Agent, Registrar, Credit Facility Issuer, the Trustee, at the direction of the Issuer, shall apply the amounts in the Series Funds and Series Accounts to the payment of the aforesaid obligations and the Issuer shall not be required to pay over any further Pledged Revenues with respect to such Series of Bonds unless and until it shall appear that there is a deficiency in the Funds and Accounts held by the Trustee.

SECTION 6.09.    Certain Moneys to Be Held for Series Bondowners Only.  Each Series of Bonds issued pursuant to this Master Indenture and a Supplemental Indenture shall be secured by Pledged Revenues, as set forth herein, and otherwise may be secured by such additional Funds and Accounts and other security (including, but not limited to, Credit Facilities) established by the pertinent Supplemental Indenture.  Moneys and investments in the various Funds and Accounts created under a Supplemental Indenture expressly and solely for the benefit of the Series of Bonds issued under such Supplemental Indenture shall be held in trust by the Trustee for the benefit of the Holders of, and Credit Facility Issuer with respect to, Bonds of that Series only.

SECTION 6.10.    Unclaimed Moneys.  In the event any Bond shall not be presented for payment when the principal of such Bond becomes due, either at maturity or at the date fixed for redemption of such Bond or otherwise, if amounts sufficient to pay such Bond have been deposited with the Trustee for the benefit of the owner of the Bond and have remained unclaimed for three (3) years after the date payment thereof becomes due shall, upon request of the Issuer, if the Issuer is not at the time to the knowledge of the Trustee in default with respect to any covenant in the Indenture or the Bonds contained, be paid to the Issuer; and the Owners of the Bonds for which the deposit was made shall thereafter be limited to a claim against the Issuer; provided, however, that the Trustee, before making payment to the Issuer, may, at the expense of the Issuer, cause a notice to be published in an Authorized Newspaper, stating that the money remaining unclaimed will be returned to the Issuer after a specified date.

[END OF ARTICLE VI]

38

## ARTICLE VII

## SECURITY FOR AND INVESTMENT OR DEPOSIT OF FUNDS

SECTION 7.01.     Deposits and Security Therefor.   All moneys received by the Trustee under a Supplemental Indenture for deposit in any Fund or Account established under the Master Indenture or such Supplemental Indenture shall be considered trust funds, shall not be subject to lien or attachment, except for the lien created by the Indenture, and shall be deposited in the commercial department of the Trustee, until or unless invested or deposited as provided in Section 7.02 hereof.  All deposits of moneys received by the Trustee under the Master Indenture or such Supplemental Indenture in the commercial department of the Trustee (whether original deposits under this Section 7.01 or deposits or redeposits in time accounts under Section 7.02) shall, to the extent not insured, and to the extent permitted by law, be fully secured as to both principal and interest earned, by Investment Securities of the types set forth in subparagraphs (a), (b), (c) or (d) of the definition of Investment Securities and the provisions thereof.  If at any time the commercial department of the Trustee is unwilling to accept such deposits or unable to secure them as provided above, the Trustee may deposit such moneys with any other depositary which is authorized to receive them and the deposits of which are insured by the Federal Deposit Insurance Corporation (including the FDIC'S Savings Association Insurance Fund).  All deposits in any other depositary in excess of the amount covered by insurance (whether under this Section 7.01 or Section 7.02 as aforesaid) shall, to the extent permitted by law, be fully secured as to both principal and interest earned, in the same manner as required herein for deposits with the Trustee.  Such security shall be deposited with a Federal Reserve Bank, with the trust department of the Trustee as authorized by law with respect to trust funds in the State, or with a bank or trust company having a combined net capital and surplus of not less than $50,000,000.

SECTION 7.02.     Investment or Deposit of Funds.   Except to the extent otherwise provided in a Supplemental Indenture with respect to a specific Series of Bonds, the Trustee shall, as directed by the Issuer in writing, invest moneys held in the Series Account in the Debt Service Fund and any Series Bond Redemption Fund created under any Supplemental Indenture only in Government Obligations and securities described in subparagraphs (d), (e), (h), (j), (k) or (l) of the definition of Investment Securities.  Except to the extent otherwise provided in a Supplemental Indenture with respect to a specific Series of Bonds, the Trustee shall, as directed by the Issuer in writing, invest moneys held in any Series Account of the Debt Service Reserve Fund in Investment Securities.  All deposits in time accounts shall be subject to withdrawal without penalty and all investments shall mature or be subject to redemption by the holder without penalty, not later than the date when the amounts will foreseeably be needed for purposes set forth herein.  All securities securing investments under this Section shall be deposited with a Federal Reserve Bank, with the trust department of the Trustee, as authorized by law with respect to trust funds in the State, or with a bank or trust company having a combined net capital and surplus of not less than $50,000,000.  The interest and income received upon such investments and any interest paid by the Trustee or any other depositary of any Fund or Account and any profit or loss resulting from the sale of securities shall be added or charged to the Fund or Account for which such investments are made; provided, however, that if the amount in any Fund or Account equals or exceeds the amount required to be on deposit therein,

39

subject to Section 6.05 of this Master Indenture and unless otherwise provided in a Supplemental Indenture with respect to a specific Series of Bonds, any interest and other income so received shall be deposited in the related Series Account of the Revenue Fund. Upon request of the Issuer, or on its own initiative whenever payment is to be made out of any Fund or Account, the Trustee shall sell such securities as may be requested to make the payment and restore the proceeds to the Fund or Account in which the securities were held. The Trustee shall not be accountable for any depreciation in the value of any such security or for any loss resulting from the sale thereof, except as provided hereinafter. If net proceeds from the sale of securities held in any Fund or Account shall be less than the amount invested and, as a result, the amount on deposit in such Fund or Account is less than the amount required to be on deposit in such Fund or Account, the amount of such deficit shall be transferred to such Fund or Account from the related Series Account of the Revenue Fund.

Absent specific instructions as aforesaid, all moneys in the Funds and Accounts established under the Indenture shall be invested in investments of the nature described in subparagraph (1) of the definition of Investment Securities; provided, however, that whether or not specific instructions as aforesaid have been received by the Trustee, moneys in the Debt Service Fund and in the Bond Redemption Fund shall be invested only in the types of obligations described in the two first sentences of this Section 7.02. Moneys in any of the Funds and Accounts established pursuant to the Indenture, when held by the Trustee, shall be immediately invested by the Trustee subject to all written directions from the Issuer, and the Issuer shall be responsible for ensuring that such instructions conform to the provisions of Section 9.31 hereof. The Trustee shall not be liable or responsible for any loss or entitled to any gain resulting from any investment or sale upon the investment instructions of the Issuer or otherwise, including that set forth in the first sentence of this paragraph.

SECTION 7.03.    Valuation of Funds. The Trustee shall value the assets in each of the Funds and Accounts established hereunder or under any Supplemental Indenture on March 15 and September 15 of each Fiscal Year, and as soon as practicable after each such valuation date (but no later than ten (10) days after each such valuation date) shall provide the Issuer a report of the status of each Fund and Account as of the valuation date. In computing the assets of any Fund or Account, investments and accrued interest thereon shall be deemed a part thereof, subject to Section 7.02 hereof. For the purpose of determining the amount on deposit to the credit of any Fund or Account established hereunder or under any Supplemental Indenture, obligations in which money in such Fund or Account shall have been invested shall be valued at the market value or the amortized cost thereof, whichever is lower, or at the redemption price thereof, to the extent that any such obligation is then redeemable at the option of the holder.

[END OF ARTICLE VII]

# ARTICLE VIII
## REDEMPTION AND PURCHASE OF BONDS

SECTION 8.01.    <u>Redemption Dates and Prices</u>.  The Bonds may be made subject to optional, mandatory and extraordinary redemption and purchase, either in whole or in part, by the Issuer, prior to maturity in the amounts, at the times and in the manner provided in this Article VIII and in a Supplemental Indenture.

(a)    *Optional Redemption*.  Bonds of a Series shall be subject to optional redemption at the direction of the Issuer, at the times and upon payment of the purchase price as provided in a Supplemental Indenture.

(b)    *Extraordinary Mandatory Redemption in Whole or in Part*.  Except as otherwise provided in a Supplemental Indenture with respect to Bonds of the related Series, Bonds of a Series are subject to extraordinary mandatory redemption prior to maturity by the Issuer in whole, on any date, or in part, on any Interest Payment Date, at an extraordinary mandatory redemption price equal to 100% of the principal amount of the Bonds to be redeemed, plus interest accrued to the redemption date, (i) from moneys deposited into the related Series Bond Redemption Fund following the payment in full of Special Assessments on any portion of the District Lands in accordance with the provisions of Section 9.08(a) hereof; (ii) from moneys deposited into the related Series Bond Redemption Fund following the payment in full of Special Assessments on any portion of the District Lands as a result of any prepayment of Special Assessments in accordance with Section 9.08(b) hereof; (iii) when sufficient moneys are on deposit in the related Series Funds and Accounts (other than the Rebate Fund) to pay and redeem all Outstanding Bonds of a Series and accrued interest thereon to the redemption date in addition to all amounts owed to Persons under the Indenture; (iv) from moneys in excess of the Series Account of the Debt Service Reserve Requirement in the Series Account of the Debt Service Reserve Fund transferred to the Series Bond Redemption Fund pursuant to Section 6.05 hereof; (v) from excess moneys transferred from the Series Account of the Revenue Fund to the Bond Series Redemption Fund in accordance with Section 6.03 of this Master Indenture; (vi) from moneys, if any, on deposit in the Series Bond Redemption Fund pursuant to Section 9.14(c) hereof following condemnation or the sale of any portion of the District Lands benefited by a Project to a governmental entity under threat of condemnation by such governmental entity or the damage or destruction of all or substantially all of the Project when such moneys are not to be used pursuant to 9.14(c) to repair, replace or restore the Project; provided, however, that at least forty-five (45) days prior to such extraordinary mandatory redemption, the Issuer shall cause to be delivered to the Trustee (x) notice setting forth the redemption date and (y) a certificate of the Consulting Engineer confirming that the repair and restoration of the Project would not be economical or would be impracticable; or (vii) from amounts transferred to the Series Account of the Bond Redemption Fund from the Series Account of the Acquisition and Construction Fund in accordance with Section 5.01(c) hereof.

(c)    *Mandatory Sinking Fund Redemption*.  Bonds of a Series shall be subject to mandatory sinking fund redemption at a Redemption Price of 100% of the principal amount thereof plus accrued interest to the redemption date, in the years and amounts set forth in a Supplemental Indenture.

41

In connection with such mandatory sinking fund redemption of Bonds, amounts shall be transferred from the applicable Series Account of the Revenue Fund to the Series Sinking Fund Account of the Debt Service Fund, all as more particularly described in Section 6.03 hereof.

The principal amounts of scheduled Sinking Fund Installments shall be reduced as specified by the Issuer or as provided in Section 8.04 hereof by any principal amounts of the Bonds redeemed pursuant to Section 8.01(a) and (b) hereof or purchased pursuant to Section 6.04 hereof.

Upon any redemption of Bonds other than in accordance with scheduled Sinking Fund Installments, the Issuer shall cause to be recalculated and delivered to the Trustee revised Sinking Fund Installments recalculated so as to amortize the Outstanding principal amount of Bonds of such Series in substantially equal annual installments of principal and interest (subject to rounding to Authorized Denominations of principal) over the remaining term of the Bonds of such Series. The Sinking Fund Installments as so recalculated shall not result in an increase in the aggregate of the Sinking Fund Installments for all Bonds of such Series in any year. In the event of a redemption or purchase occurring less than 45 days prior to a date on which a Sinking Fund Installment is due, the foregoing recalculation shall not be made to Sinking Fund Installments due in the year in which such redemption or purchase occurs, but shall be made to Sinking Fund Installments for the immediately succeeding and subsequent years.

SECTION 8.02.    Notice of Redemption and of Purchase.  Except where otherwise required by a Supplemental Indenture, when required to redeem or purchase Bonds of a Series under any provision of the Indenture or directed to do so by the Issuer, the Trustee shall cause notice of the redemption, either in whole or in part, to be mailed at least thirty (30) but not more than sixty (60) days prior to the redemption or purchase date to all Owners of Bonds to be redeemed or purchased (as such Owners appear on the Bond Register on the fifth (5th) day prior to such mailing), at their registered addresses and also to any Credit Facility Issuer, but failure to mail any such notice or defect in the notice or in the mailing thereof shall not affect the validity of the redemption or purchase of the Bonds of such Series for which notice was duly mailed in accordance with this Section 8.02. Such notice shall be given in the name of the Issuer, shall be dated, shall set forth the Bonds of such Series Outstanding which shall be called for redemption or purchase and shall include, without limitation, the following additional information:

     (a)    the redemption or purchase date;

     (b)    the redemption or purchase price;

     (c)    CUSIP numbers, to the extent applicable, and any other distinctive numbers and letters;

     (d)    if less than all Outstanding Bonds of a Series to be redeemed or purchased, the identification (and, in the case of partial redemption, the respective principal amounts) of the Bonds to be redeemed or purchased;

(e)    that on the redemption or purchase date the redemption or purchase price will become due and payable upon surrender of each such Bond or portion thereof called for redemption or purchase, and that interest thereon shall cease to accrue from and after said date; and

(f)    the place where such Bonds are to be surrendered for payment of the redemption or purchase price, which place of payment shall be a corporate trust office of the Trustee.

If at the time of mailing of notice of an optional redemption or purchase, the Issuer shall not have deposited with the Trustee or Paying Agent moneys sufficient to redeem or purchase all the Bonds called for redemption or purchase, such notice shall state that it is subject to the deposit of the redemption or purchase moneys with the Trustee or Paying Agent, as the case may be, not later than the opening of business on the redemption or purchase date, and such notice shall be of no effect unless such moneys are so deposited.

If the amount of funds deposited with the Trustee for such redemption, or otherwise available, is insufficient to pay the redemption price and accrued interest on the Bonds so called for redemption on the redemption date, the Trustee shall redeem and pay on such date an amount of such Bonds for which such funds are sufficient, selecting the Bonds to be redeemed by lot from among all such Bonds called for redemption on such date, and among different maturities of Bonds in the same manner as the initial selection of Bonds to be redeemed, and from and after such redemption date, interest on the Bonds or portions thereof so paid shall cease to accrue and become payable; but interest on any Bonds or portions thereof not so paid shall continue to accrue until paid at the same rate as it would have had such Bonds not been called for redemption.

The notices required to be given by this Section 8.02 shall state that no representation is made as to correctness or accuracy of the CUSIP numbers listed in such notice or printed on the Bonds.

SECTION 8.03.    <u>Payment of Redemption Price</u>.  If any required (a) unconditional notice of redemption has been duly mailed or waived by the Owners of all Bonds called for redemption or (b) conditional notice of redemption has been so mailed or waived and the redemption moneys have been duly deposited with the Trustee or Paying Agent, then in either case, the Bonds called for redemption shall be payable on the redemption date at the applicable Redemption Price plus accrued interest, if any, to the redemption date.  Bonds so called for redemption, for which moneys have been duly deposited with the Trustee, will cease to bear interest on the specified redemption date, shall no longer be secured by the Indenture and shall not be deemed to be Outstanding under the provisions of the Indenture.

Payment of the Redemption Price, together with accrued interest, shall be made by the Trustee or Paying Agent to or upon the order of the Owners of the Bonds called for redemption upon surrender of such Bonds.  The Redemption Price of the Bonds to be redeemed, the expenses of giving notice and any other expenses of redemption, shall be paid out of the Fund

43

from which redemption is to be made or by the Issuer, or as specified in a Supplemental Indenture.

SECTION 8.04.     Partial Redemption of Bonds.   Except to the extent otherwise provided in a Supplemental Indenture, if less than all of a Series of Bonds of a maturity are to be redeemed, the Trustee shall select the particular Bonds or portions of the Bonds to be called for redemption by lot in such reasonable manner as the Trustee in its discretion may determine. In the case of any partial redemption of Bonds of a Series pursuant to Section 8.01(a), such redemption shall be effectuated by redeeming Bonds of such Series of such maturities in such manner as shall be specified by the Issuer in writing, subject to the provisions of Section 8.01 hereof. In the case of any partial redemption of Bonds of a Series pursuant to Section 8.01(b), such redemption shall be effectuated by redeeming Bonds of such Series pro rata among the maturities, treating each date on which a Sinking Fund Installment is due as a separate maturity for such purpose, with the portion to be redeemed from each maturity being equal to the product of the aggregate principal amount of Bonds of such Series to be redeemed multiplied times a fraction the numerator of which is the principal amount of the Series of Bonds of such maturity outstanding immediately prior to the redemption date and the denominator of which is the aggregate principal amount of all Bonds of such Series outstanding immediately prior to the redemption date.

[END OF ARTICLE VIII]

## ARTICLE IX
## COVENANTS OF THE ISSUER

SECTION 9.01.     Power to Issue Bonds and Create Lien.   The Issuer is duly authorized under the Act and all applicable laws of the State to issue the Bonds, to adopt and execute the Master Indenture and to pledge the Pledged Revenues for the benefit of the Bonds of a Series and any Credit Facility Issuer. The Pledged Revenues are not and shall not be subject to any other lien senior to or on a parity with the lien created in favor of the Bonds of a Series and any Credit Facility Issuer with respect to such Series.   The Bonds and the provisions of the Indenture are and will be valid and legally enforceable obligations of the Issuer in accordance with their respective terms.  The Issuer shall, at all times, to the extent permitted by law, defend, preserve and protect the pledge created by the Indenture and all the rights of the Bondholders and any Credit Facility Issuer under the Indenture against all claims and demands of all other Persons whomsoever.

SECTION 9.02.     Payment of Principal and Interest on Bonds. The payment of the principal or Redemption Price of and interest on all of the Bonds of a Series issued under the Indenture shall be secured forthwith equally and ratably by a first lien on and pledge of the Pledged Revenues, except to the extent otherwise provided in a Supplemental Indenture; and Pledged Revenues in an amount sufficient to pay the principal or Redemption Price of and interest on the Bonds of a Series authorized by the Indenture are hereby irrevocably pledged to the payment of the principal or Redemption Price of and interest on the Bonds of a Series authorized under the Indenture, as the same become due and payable.  The Issuer shall promptly pay the interest on and the principal or Redemption Price of every Bond issued hereunder according to the terms thereof, but shall be required to make such payment only out of the Pledged Revenues.  The Issuer shall appoint one or more Paying Agents for such purpose, each such agent to be a bank and trust company or a trust company or a national banking association having trust powers.

THE BONDS AUTHORIZED UNDER THE INDENTURE AND THE OBLIGATION EVIDENCED THEREBY SHALL NOT CONSTITUTE A LIEN UPON ANY PROPERTY OF THE ISSUER, INCLUDING, WITHOUT LIMITATION, THE PROJECT OR ANY PORTION THEREOF IN RESPECT OF WHICH ANY SUCH BONDS ARE BEING ISSUED, OR ANY PART THEREOF, BUT SHALL CONSTITUTE A LIEN ONLY ON THE PLEDGED REVENUES AS SET FORTH IN THE INDENTURE.   NOTHING IN THE BONDS AUTHORIZED UNDER THE INDENTURE OR IN THE INDENTURE SHALL BE CONSTRUED AS OBLIGATING THE ISSUER TO PAY THE BONDS OR THE REDEMPTION PRICE THEREOF OR THE INTEREST THEREON EXCEPT FROM THE PLEDGED REVENUES, OR AS PLEDGING THE FAITH AND CREDIT OF THE ISSUER, THE COUNTY OR THE STATE OR ANY POLITICAL SUBDIVISION THEREOF, OR AS OBLIGATING THE ISSUER, THE COUNTY OR THE STATE OR ANY OF ITS POLITICAL SUBDIVISIONS, DIRECTLY OR INDIRECTLY OR CONTINGENTLY, TO LEVY OR TO PLEDGE ANY FORM OF TAXATION WHATEVER THEREFOR.

SECTION 9.03.        Special Assessments; Re-Assessments.

(a)        The Issuer shall levy Special Assessments, and evidence and certify the same to the Tax Collector or shall use its best efforts to cause the Property Appraiser to certify the same on the tax roll to the Tax Collector for collection by the Tax Collector and enforcement by the Tax Collector or the Issuer pursuant to the Act, Chapter 170 or Chapter 197, Florida Statutes, or any successor statutes, as applicable, and Section 9.04 hereof, to the extent and in an amount sufficient to pay Debt Service Requirements on all Outstanding Bonds.

(b)        If any Special Assessment shall be either in whole or in part annulled, vacated or set aside by the judgment of any court, or if the Issuer shall be satisfied that any such Special Assessment is so irregular or defective that the same cannot be enforced or collected, or if the Issuer shall have omitted to make such Special Assessment when it might have done so, the Issuer shall either (i) take all necessary steps to cause a new Special Assessment to be made for the whole or any part of said improvement or against any property benefitted by said improvement, or (ii) in its sole discretion, make up the amount of such Special Assessment from legally available moneys, which moneys shall be deposited into the applicable Series Account in the Revenue Fund.  In case such second Special Assessment shall be annulled, the Issuer shall obtain and make other Special Assessments until a valid Special Assessment shall be made.

SECTION 9.04.        Method of Collection.  Special Assessments shall be collected by the Issuer in accordance with the provisions of the Act and Chapter 170 or Chapter 197, Florida Statutes, or any successor statutes thereto, as applicable, in accordance with the terms of this Section.  The Issuer shall use its best efforts to adopt the uniform method for the levy, collection and enforcement of Special Assessments afforded by Sections 197.3631, 197.3632 and 197.3635, Florida Statutes, or any successor statutes thereto, as soon as practicable, or a comparable alternative method afforded by Section 197.3631, Florida Statutes.  The Issuer shall use its best efforts to enter into one or more written agreements with the Property Appraiser and the Tax Collector, either individually or jointly (together, the "Property Appraiser and Tax Collector Agreement") in order to effectuate the provisions of this Section.  The Issuer shall use its best efforts to ensure that any such Property Appraiser and Tax Collector Agreement remains in effect for at least as long as the final maturity of Bonds Outstanding under the Indenture.  To the extent that the Issuer is not able to collect Special Assessments pursuant to the "uniform tax roll collection" method under Chapter 197, Florida Statutes, the Issuer may elect to collect and enforce Special Assessments pursuant to any available method under the Act, Chapter 170, Florida Statutes, or Chapter 197, Florida Statutes, or any successor statutes thereto.  The election to collect and enforce Special Assessments in any year pursuant to any one method shall not, to the extent permitted by law, preclude the Issuer from electing to collect and enforce Special Assessments pursuant to any other method permitted by law in any subsequent year.

SECTION 9.05.        Delinquent Special Assessments.  Subject to the provisions of Section 9.04 hereof, if the owner of any lot or parcel of land assessed for a particular Project shall be delinquent in the payment of any Special Assessment, then such Special Assessment shall be enforced pursuant to the provisions of Chapter 197, Florida Statutes, or any successor statute thereto, including but not limited to the sale of tax certificates and tax deeds as regards such delinquent Special Assessment.  In the event the provisions of Chapter 197, Florida

46

Statutes, and any provisions of the Act with respect to such sale are inapplicable by operation of law, then upon the delinquency of any Special Assessment the Issuer shall, to the extent permitted by law, utilize any other method of enforcement as provided by Section 9.04 hereof, including, without limitation, declaring the entire unpaid balance of such Special Assessment to be in default and, at its own expense, cause such delinquent property to be foreclosed, pursuant to the provisions of Section 170.10, Florida Statutes, in the same method now or hereafter provided by law for the foreclosure of mortgages on real estate, or pursuant to the provisions of Chapter 173, Florida Statutes, and Sections 190.026 and 170.10, Florida Statutes, or otherwise as provided by law.

SECTION 9.06.    Sale of Tax Certificates and Issuance of Tax Deeds; Foreclosure of Special Assessment Liens.  If the Special Assessments levied and collected under the uniform method described in Section 9.04 are delinquent, then the applicable procedures for issuance and sale of tax certificates and tax deeds for nonpayment shall be followed in accordance with Chapter 197, Florida Statutes, and related statutes.  Alternatively, if the uniform method of levy and collection is not utilized, and if any property shall be offered for sale for the nonpayment of any Special Assessment, and no person or persons shall purchase the same for an amount at least equal to the full amount due on the Special Assessment (principal, interest, penalties and costs, plus attorneys fees, if any), the property may then be purchased by the Issuer for an amount equal to the balance due on the Special Assessment (principal, interest, penalties and costs, plus attorneys fees, if any), and the Issuer shall thereupon receive in its corporate name the title to the property for the benefit of the Registered Owners.  The Issuer, either through its own actions or actions caused to be done through the Trustee, shall have the power and shall use its best efforts to lease or sell such property and deposit all of the net proceeds of any such lease or sale into the related Series Account of the Revenue Fund.  Not less than ten (10) days prior to the filing of any foreclosure action or any sale of tax deed as herein provided, the Issuer shall cause written notice thereof to be mailed to the Registered Owners of the Series of Bonds secured by such delinquent Special Assessments.  Not less than thirty (30) days prior to the proposed sale of any lot or tract of land acquired by foreclosure by the Issuer, it shall give written notice thereof to such Registered Owners.  The Issuer, either through its own actions or actions caused to be done through the Trustee, agrees that it shall be required to take the measure provided by law for sale of property acquired by it as trustee for the Registered Owners within thirty (30) days after the receipt of the request therefor signed by the Registered Owners of at least twenty-five percent (25%) of the aggregate principal amount of all Outstanding Bonds of the Series payable from Special Assessments assessed on such property.

SECTION 9.07.    Books and Records with Respect to Special Assessments.    In addition to the books and records required to be kept by the Issuer pursuant to the provisions of Section 9.17 hereof, the Issuer shall keep books and records for the collection of the Special Assessments on the District Lands, which such books, records and accounts shall be kept separate and apart from all other books, records and accounts of the Issuer.  The District Manager or the District Manager's designee, at the end of each Fiscal Year, shall prepare a written report setting forth the collections received, the number and amount of delinquencies, the proceedings taken to enforce collections and cure delinquencies and an estimate of time for the conclusion of such legal proceedings.  A signed copy of such report shall be furnished to the

Trustee (solely as a repository of such information) as soon as practicable after such report shall become available.

SECTION 9.08.    Removal of Special Assessment Liens.    Except as otherwise provided in a Supplemental Indenture with respect to a related Series of Bonds, the following procedures shall apply in connection with the removal of Special Assessment liens.

(a)    At any time from the date of levy of Special Assessments on a parcel of District Lands through the date that is thirty (30) days after the related Project has been completed and the Board has adopted a resolution accepting such Project as provided by Section 170.09, Florida Statutes, as amended, any owner of property subject to the Special Assessments may, at its option, require the Issuer to release and extinguish the lien upon its property by virtue of the levy of the Special Assessments that relate to a Series of Bonds by paying to the Issuer the entire amount of such Special Assessment on such property, without interest.

(b)    At any time subsequent to thirty (30) days after the related Project has been completed and the Board has adopted a resolution accepting such Project as provided by Section 170.09, Florida Statutes, as amended, any owner of property subject to the Special Assessments may, at its option, require the Issuer to release and extinguish the lien upon its property by virtue of the levy of the Special Assessments by paying to the Issuer the entire amount of the Special Assessment, plus accrued interest to the next succeeding Interest Payment Date (or the second succeeding Interest Payment Date if such prepayment is made within forty (45) calendar days before an Interest Payment Date), attributable to the property subject to Special Assessment owned by such owner.

(c)    Upon receipt of a prepayment as described in (a) or (b) above, the Issuer shall immediately pay the amount so received to the Trustee, and the Issuer shall take such action as is necessary to record in the official records of the County an affidavit or affidavits, as the case may be, executed by a Responsible Officer, to the effect that the Special Assessment has been paid and that such Special Assessment lien is thereby released and extinguished. Except as otherwise provided by a Supplemental Indenture, upon receipt of any such moneys from the Issuer the Trustee shall immediately deposit the same into the applicable Series Bond Redemption Fund to be applied to the redemption of Bonds in accordance with Section 8.01(b)(i) or (ii) hereof, as the case may be.

SECTION 9.09.    Deposit of Special Assessments.    The Issuer covenants to cause any Special Assessments collected or otherwise received by it to be deposited with the Trustee within five (5) Business Days after receipt thereof for deposit into the Revenue Fund (except that amounts received as prepayments of Special Assessments shall be designated by the Issuer as such upon delivery to the Trustee and shall be deposited directly into the related Series Bond Redemption Fund).

SECTION 9.10.    Construction to be on Issuer Lands.    Except for off site improvements which are outside the District Lands and are required in order for the District Lands to be developed, the Issuer covenants that no part of a Project will be constructed on, over or under lands other than (i) lands good and marketable title to which is owned by the Issuer or

48

other appropriate entity in fee simple, (ii) lands on, over or under which the Issuer or other appropriate entity shall have acquired perpetual easements for the purposes of the Project, or (iii) lands, including public streets and highways, the right to the use and occupancy of which for such purposes shall be vested in the Issuer or other appropriate entity by law or by valid franchises, licenses, easements or rights of way or other legally effective permissions or approval.

SECTION 9.11.    <u>Operation, Use and Maintenance of Project</u>.    The Issuer shall establish and enforce reasonable rules and regulations governing the use of the Project owned by the Issuer, and the operation thereof, such rules and regulations to be adopted in accordance with the Act, and the Issuer shall operate, use and maintain the Project owned by the Issuer in accordance with the Act and all other applicable laws, rules and regulations; the Issuer shall maintain and operate the Project owned by the Issuer in an efficient and economical manner, shall at all times maintain the same in good repair and in sound operating condition and shall make all necessary repairs, renewals and replacements.

SECTION 9.12.    <u>Observance of and Compliance with Valid Requirements</u>.    The Issuer shall pay all municipal or governmental charges lawfully levied or assessed upon the Project or any part thereof or upon any revenues when the same shall become due, and the Issuer shall duly observe and comply with all valid requirements of any municipal or governmental authority relative to the Project.  The Issuer shall not, except as otherwise permitted in Section 9.24 of this Article, create or suffer to be created any lien or charge upon the Project or upon Pledged Revenues, except the lien and charge of the Bonds on the Pledged Revenues.

SECTION 9.13.    <u>Payment of Operating or Maintenance Costs by State or Others</u>. The Issuer may permit the United States of America, the State, or any of their agencies, departments or political subdivisions to pay all or any part of the cost of maintaining, repairing and operating the Project out of funds other than Pledged Revenues.

SECTION 9.14.    <u>Public Liability and Property Damage Insurance; Maintenance of Insurance; Use of Insurance and Condemnation Proceeds</u>.

(a)    Except as otherwise provided in subsection (d) of this Section, the Issuer will carry or cause to be carried, in respect of the Project, comprehensive general liability insurance (covering bodily injury and property damage) issued by one or more insurance companies authorized or eligible to do business under the laws of the State, in such amounts as is customary for similar operations, or as is more specifically set forth hereinbelow.

(b)    At all times, to the extent commercially available, the Issuer shall maintain a practical insurance program, with reasonable terms, conditions, provisions and costs which the District Manager determines will afford adequate protection against loss caused by damage to or destruction of any component of the Project owned by the Issuer.  The Issuer shall also, at all times, maintain a practical comprehensive general liability insurance program with respect to the Project for such coverage, with such reasonable terms, conditions, provisions and costs as the District Manager determines will afford adequate protection against bodily injury and property damage.

All insurance policies of the Issuer relating to the Project shall be carried with companies authorized or eligible to do business in the State; provided, however, that the Issuer may act as a self-insurer in accordance with the requirements of subsection (d) hereof. All policies providing the insurance coverages required by this Section shall designate the Issuer as the loss-payee and shall be made payable to the Issuer.

(c)    All proceeds received from property damage or destruction insurance and all proceeds received from the condemnation of a Project or any part thereof are hereby pledged by the Issuer as security for the related Series of Bonds and shall be deposited at the option of the Issuer, but subject to the limitations hereinafter described, either (i) into a separate fund to be established by the Trustee for such purpose, and used to remedy the loss, damage or taking for which such proceeds are received, either by repairing the damaged property or replacing the destroyed or taken property, as soon as practicable after the receipt of such proceeds, or (ii) into the related Series Bond Redemption Fund for the purpose of purchasing or redeeming Bonds according to the provisions set forth in Article VIII hereof. The Issuer shall not be entitled to deposit insurance proceeds or condemnation awards into the separate fund described above in clause (i) of this paragraph (and such proceeds and awards shall be deposited directly into the related Series Bond Redemption Fund pursuant to clause (ii) of this paragraph) unless there shall have been filed with the Issuer within a reasonable time after the damage, destruction or condemnation (A) a certificate from the Consulting Engineer that the proceeds of the insurance or condemnation awards deposited into such separate fund, together with other funds available for such purposes, will be sufficient to repair, rebuild, replace or restore such property to substantially the same condition as it was in prior to its damage, destruction or condemnation (taking into consideration any changes, alterations and modifications that the Issuer may desire), (B) an opinion from the Consulting Engineer that the Project can be repaired, rebuilt, replaced or restored within two (2) years following the damage, destruction or condemnation thereof and (C) an opinion of the Consulting Engineer that, in each of the three (3) Fiscal Years following completion of such repair, rebuilding, replacement or restoration, the Issuer will be in compliance with its obligations hereunder. If the certificate described in clause (A) of this paragraph is not rendered because such proceeds or awards are insufficient for such purposes, the Issuer may deposit any other legally available funds in such separate fund in an amount required to enable the Consulting Engineer to render its certificate. If the insurance proceeds or condemnation awards deposited in such separate fund are more than sufficient to repair the damaged property or to replace the destroyed or taken property, the balance thereof remaining shall be deposited to the credit of the related Series Account in the Revenue Fund.

(d)    The Issuer shall be entitled to provide all or a portion of the insurance coverage required by subsections (a) and (b) of this Section through Qualified Self Insurance, provided that the requirements hereinafter set forth in this subsection (d) are satisfied. "Qualified Self Insurance" means insurance maintained through a program of self insurance or insurance maintained with a company or association in which the Issuer has a material interest or of which the Issuer has control, either singly or with others.

Prior to participation in any plan of Qualified Self Insurance not currently in effect, the Issuer shall deliver to the Trustee (i) a copy of the proposed plan, and (ii) from the District Manager, an evaluation of the proposed plan together with an opinion to the effect that (A) the

50

proposed Qualified Self Insurance plan will provide the coverage required by subsections (a) and (b) of this Section, and (B) the proposed Qualified Self Insurance plan provides for the creation of actuarially sound reserves.

Each plan of Qualified Self Insurance shall be in written form, shall provide that upon the termination of such plan reserves will be established or insurance acquired in amounts adequate to cover any potential retained liability in respect of the period of self insurance, and shall be reviewed annually by the District Manager or registered actuary who shall deliver to the Issuer a report on the adequacy of the reserves established thereunder in light of claims made.  If the District Manager or registered actuary determines that such reserves are inadequate in light of the claims made, he shall make recommendations as to the amount of reserves that should be established and maintained, and the Issuer shall comply with such recommendations unless it can establish to the satisfaction of the Trustee that such recommendations are unreasonable in light of the nature of the claims or the history of recovery against the Issuer for similar claims.  A copy of each Qualified Self Insurance plan and of each annual report thereon shall be delivered to the Trustee.

(e)      Copies of all recommendations and approvals made by the Consulting Engineer under the provisions of this Section shall be filed with the District Manager and the Trustee.

Upon written request, the District Manager shall file with the Trustee a complete report of the status of the insurance coverages relating to all Projects, such report to include, without being limited thereto, a schedule of all insurance policies required by the Indenture which are then in effect, stating with respect to each policy the name of the insurer, the amount, number and expiration date, and the hazards and the risks covered thereby.  The Trustee shall hold such report solely as a repository for the holders of the Bonds, and shall have no duty to require the filing of such report or to determine compliance by the Issuer with the requirements of this section.

SECTION 9.15.      Collection of Insurance Proceeds.  Copies of all insurance policies referred to in Section 9.14 of this Article shall be available at the offices of the Issuer at all reasonable times to the inspection of the Holders of $1,000,000 or more in aggregate principal amount of the related Series of Bonds and their agents and representatives duly authorized in writing.  The Issuer covenants that it will take such action as may be necessary to demand, collect and sue for any insurance money which may become due and payable under any policy of insurance required under the Indenture, whether such policy is payable to the Issuer or to the Trustee.  The Trustee is hereby authorized in its own name to demand, collect, sue and receive any insurance money which may become due and payable under any policies payable to it.

Any appraisal or adjustment of any loss or damage under any policy of insurance required under the Indenture, whether such policy is payable to the Issuer or to the Trustee, and any settlement or payment of indemnity under any such policy which may be agreed upon by the Issuer and any insurer shall be evidenced by a certificate, signed by the District Manager approved by the Consulting Engineer, and filed with the Trustee. The Trustee shall in no way be liable or responsible for the collection of insurance moneys in case of any loss or damage.

SECTION 9.16.    <u>Use of Revenues for Authorized Purposes Only</u>. None of the Pledged Revenues shall be used for any purpose other than as provided in the Indenture and no contract or contracts shall be entered into or any action taken by the Issuer or the Trustee which will be inconsistent with the provisions of the Indenture.

SECTION 9.17.    <u>Books, Records and Annual Reports</u>. The Issuer shall keep proper books and records in accordance with Generally Accepted Accounting Principles, which shall at all times be subject during regular business hours to the inspection of the Trustee.

The Issuer shall annually, when available in accordance with Florida law, file with the Trustee, any rating agency that shall have then in effect a rating on any of the Bonds, any Bondholder that shall have, in writing, requested a copy thereof, and otherwise as provided by law, a copy of an annual report for such year, prepared in accordance with Generally Accepted Accounting Principles by a Certified Public Accountant, relating to its operations and including, without limitation, statements in reasonable detail of financial condition as of the end of such Fiscal Year and income and expenses for such Fiscal Year relating to the Project, and a summary, with respect to each Fund and Account established under the Indenture, of the receipts therein and disbursements therefrom during such Fiscal Year, and the amounts held therein at the end of such Fiscal Year.

SECTION 9.18.    <u>Observance of Accounting Standards</u>.  The Issuer covenants that all the accounts and records of the Issuer relating to the Project will be kept according to Generally Accepted Accounting Principles consistently applied and consistent with the provisions of the Master Indenture.

SECTION 9.19.    <u>Employment of Certified Public Accountant</u>.  The Issuer shall employ or cause to be employed as required a Certified Public Accountant to perform auditing functions and duties required by the Act and the Master Indenture.

SECTION 9.20.    <u>Establishment of Fiscal Year, Annual Budget</u>. Florida law has established a Fiscal Year beginning October 1 of each year and ending September 30 of the following year.  The reports and budget of the Issuer shall relate to such Fiscal Year unless and until, in accordance with applicable law, a different Fiscal Year is established.

On or before the first day of each Fiscal Year the Issuer shall adopt a final Annual Budget with respect to the Project for such Fiscal Year for the payment of anticipated operating and maintenance expenses and shall supply a copy of such budget promptly upon the approval thereof to the Trustee and to any Bondholders who shall have so requested in writing and shall have filed their names and addresses with the Secretary of the Board for such purpose.  If for any reason the Issuer shall not have adopted the Annual Budget with respect to the Project on or before the first day of any Fiscal Year, the Annual Budget for the preceding Fiscal Year shall, until the adoption of the new Annual Budget, be deemed in force for the ensuing Fiscal Year. The Issuer may at any time adopt an amended or supplemental Annual Budget for the remainder of the current Fiscal Year, and when such amended or supplemental Annual Budget is approved it shall be treated as the official Annual Budget under the Master Indenture.  Copies of such amended or supplemental Annual Budget shall be filed with the Trustee and mailed by the Issuer

to any Bondholders who shall have so requested in writing and shall have filed their names and addresses with the Secretary of the Board for such purpose.

SECTION 9.21.    Employment of Consulting Engineer; Consulting Engineer's Report.  The Issuer shall, for the purpose of performing and carrying out the duties imposed on the Consulting Engineer by the Master Indenture, employ one or more Independent engineers or engineering firms or corporations having a favorable reputation for skill and experience in such work.

SECTION 9.22.    Reserved.

SECTION 9.23.    Information to Be Filed with Trustee.  The Issuer shall keep accurate records and books of account with respect to the Project,  and shall have a complete audit of such records and accounts made annually by a Certified Public Accountant, as provided in Section 9.17 hereof.  A signed copy of said audit shall be furnished to the Trustee as soon as practicable after such audit shall become available.

SECTION 9.24.    Covenant Against Sale or Encumbrance; Exceptions.  Subject to Section 9.12 hereof, the Issuer covenants that, (a) except for those improvements comprising the Project that are to be conveyed or dedicated by the Issuer to the County, the State Department of Transportation or another governmental entity and (b) except as in this Section permitted, it will not sell, lease or otherwise dispose of or encumber the Project, or any part thereof.  The Issuer may, however, from time to time, sell any machinery, fixtures, apparatus, tools, instruments or other movable property acquired by it from the proceeds of a Series of Bonds or from Pledged Revenues if the District Manager shall determine, with the approval of the Consulting Engineer, that such items are no longer needed or are no longer useful in connection with the construction, maintenance and operation of the Project, and the proceeds thereof shall be applied to the replacement of the properties so sold or disposed of or, at the written direction of the Issuer shall be deposited to the credit of the related Series Account in the Revenue Fund.

Upon any sale of property relating to the Project, the aggregate of which in any thirty (30) day period exceeds Fifty Thousand Dollars ($50,000) under the provisions of this Section, the Issuer shall provide written notice to the Trustee of the property so sold and the amount and disposition of the proceeds thereof.

The Issuer may lease or grant easements, franchises or concessions for the use of any part of the Project not incompatible with the maintenance and operation thereof, if the Consulting Engineer shall approve such lease, easement, franchise or concession in writing, and the net proceeds of any such lease, easement, franchise or concession (after the making of provision for payment from said proceeds of all costs incurred in financing, constructing, operating, maintaining or repairing such leases, easements, franchises or concessions) shall be deposited as received to the credit of related Series Account in the Revenue Fund.

SECTION 9.25.    Fidelity Bonds.  Every officer, agent or employee of the Issuer having custody or control of any of the Pledged Revenues shall be bonded by a responsible corporate surety in an amount not less than the greatest amount reasonably anticipated to be

53

within the custody or control of such officer, agent or employee at one time.  The premiums on such surety bonds shall be paid by the Issuer as an expense of operation and maintenance of the Project.

SECTION 9.26.    <u>No Loss of Lien on Pledged Revenues.</u>  The Issuer shall not do or omit to do, or suffer to be done or omit to be done, any matter or thing whatsoever whereby the lien of the Bonds on the Pledged Revenues or any part thereof, or the priority thereof, would be lost or impaired; provided, however, that this Section shall not prohibit the Trustee from transferring moneys to the Rebate Fund held by the Trustee under any arbitrage rebate agreement.

SECTION 9.27.    <u>Compliance With Other Contracts and Agreements</u>.  The Issuer shall comply with and abide by all of the terms and conditions of any and all contracts and agreements which the Issuer enters into in connection with the Project and the issuance of the Bonds.

SECTION 9.28.    <u>Issuance of Additional Obligations</u>.  The Issuer shall not issue any obligations other than the Bonds payable from Pledged Revenues, nor voluntarily create or cause to be created any debt, lien, pledge, assignment, encumbrance or other charge, payable from Pledged Revenues, except in the ordinary course of business.

SECTION 9.29.    <u>Extension of Time for Payment of Interest Prohibited</u>.  The Issuer shall not directly or indirectly extend or assent to an extension of time for payment of any claim for interest on any of the Bonds and shall not directly or indirectly be a party to or approve any arrangement therefor by purchasing or funding or in any manner keeping alive any such claim for interest; no claim for interest which in any way, at or after maturity, shall have been transferred or pledged apart from the Bonds to which it relates or which shall in any manner have been kept alive after maturity by extension or by purchase thereof by or on behalf of the Issuer, shall be entitled, in case of a default hereunder, to any benefit or security under the Indenture except after the prior payment in full of the principal of all Bonds and claims for interest appertaining thereto not so transferred, pledged, kept alive or extended.

SECTION 9.30.    <u>Further Assurances</u>.  The Issuer shall not enter into any contract or take any action by which the rights of the Trustee or the Bondholders may be impaired and shall, from time to time, execute and deliver such further instruments and take such further action as may be required to carry out the purposes of the Indenture.

SECTION 9.31.    <u>Use of Bond Proceeds to Comply with Internal Revenue Code</u>. The Issuer covenants to the Holders of the Bonds that it will not make or direct the making of any investment or other use of the proceeds of any Bonds issued hereunder which would cause such Bonds to be "arbitrage bonds" as that term is defined in Section 148 (or any successor provision thereto) of the Code and or "private activity bonds" as that term is defined in Section 141 (or any successor provision thereto) of the Code, and that it will comply with the requirements of such Code section and related regulations throughout the term of such Bonds. The Issuer hereby further covenants and agrees to comply with the procedures and covenants contained in any arbitrage rebate agreement executed in connection with the issuance of each

54

Series of Bonds for so long as compliance is necessary in order to maintain the exclusion from gross income for federal income tax purposes of interest on each Series of Bonds.

SECTION 9.32.    <u>Corporate Existence and Maintenance of Properties</u>.  For so long as any Bonds are Outstanding hereunder, unless otherwise provided by the Act, the Issuer shall maintain its corporate existence as a local unit of special purpose government under the Act and shall provide for or otherwise require the Project, and all parts thereof owned by the Issuer to be (a) continuously operated, repaired, improved and maintained as shall be necessary to provide adequate service to the lands benefitted thereby; and (b) in compliance with all valid and applicable laws, acts, rules, regulations, permits, orders, requirements and directions of any competent public authority.

SECTION 9.33.    <u>Continuing Disclosure</u>.  The Issuer hereby covenants and agrees that it will comply with and carry out all of the provisions of the Continuing Disclosure Agreement.  Notwithstanding any other provision of the Indenture, failure of the Issuer or the Developer (if obligated pursuant to the Continuing Disclosure Agreement) to comply with the Continuing Disclosure Agreement shall not be considered an Event of Default; however, the Trustee may (and, at the request of any participating underwriter or the Holders of at least 25% aggregate principal amount in Outstanding Bonds of a Series and receipt of indemnity to its satisfaction, shall) or any Holder of the Bonds or Beneficial Owner may take such actions as may be necessary and appropriate, including seeking specific performance by court order, to cause the Issuer to comply with its obligations under this Section 9.33.  For purposes of this Section, "Beneficial Owner" means any person which (a) has the power, directly or indirectly, to vote or consent with respect to, or to dispose of ownership of, any Bonds (including persons holding Bonds through nominees, depositories or other intermediaries), or (b) is treated as the owner of any Bonds for federal income tax purposes.

[END OF ARTICLE IX]

## ARTICLE X

## EVENTS OF DEFAULT AND REMEDIES

SECTION 10.01.    <u>Events of Default and Remedies</u>.  Except to the extent otherwise provided in the Supplemental Indenture authorizing a Series of Bonds, events of default and remedies with respect to each Series of Bonds shall be as set forth in this Master Indenture. Notwithstanding anything to the contrary contained herein, upon an Event of Default hereunder, no amounts available under the Master Indenture shall be used to pay Deferred Costs unless and until such Event of Default has been remedied.

SECTION 10.02.    <u>Events of Default Defined</u>.  Each of the following shall be an "Event of Default" under the Master Indenture, with respect to a Series of Bonds:

(a)    if payment of any installment of interest on any Bond of such Series is not made when it becomes due and payable; or

(b)    if payment of the principal or Redemption Price of any Bond of such Series is not made when it becomes due and payable at maturity or upon call or presentation for redemption; or

(c)    if the Issuer, for any reason, is rendered incapable of fulfilling its obligations under the Indenture or under the Act; or

(d)    if the Issuer proposes or makes an assignment for the benefit of creditors or enters into a composition agreement with all or a material part of its creditors, or a trustee, receiver, executor, conservator, liquidator, sequestrator or other judicial representative, similar or dissimilar, is appointed for the Issuer or any of its assets or revenues, or there is commenced any proceeding in liquidation, bankruptcy, reorganization, arrangement of debts, debtor rehabilitation, creditor adjustment or insolvency, local, state or federal, by or against the Issuer and if such is not vacated, dismissed or stayed on appeal within ninety (90) days; or

(e)    if the Issuer defaults in the due and punctual performance of any other covenant in the Indenture or in any Bond of such Series  issued pursuant to the Indenture and such default continues for sixty (60) days after written notice requiring the same to be remedied shall have been given to the Issuer by the Trustee, which may give such notice in its discretion and shall give such notice at the written request of the Holders of not less than a majority in aggregate principal amount of the Outstanding Bonds of such Series; provided, however, that if such performance requires work to be done, actions to be taken, or conditions to be remedied, which by their nature cannot reasonably be done, taken or remedied, as the case may be, within such sixty (60) day period, no Event of Default shall be deemed to have occurred or exist if, and so long as the Issuer shall commence such performance within such sixty (60) day period and shall diligently and continuously prosecute the same to completion; or

(f)    written notice shall have been received by the Trustee from a Credit Facility Issuer securing Bonds of such Series that an event of default has occurred under the

56

Credit Facility Agreement, or there shall have been a failure by said Credit Facility Issuer to make said Credit Facility available or to reinstate the interest component of said Credit Facility in accordance with the terms of said Credit Facility, to the extent said notice or failure is established as an event of default under the terms of a Supplemental Indenture.

SECTION 10.03.    No Acceleration.  No Series of Bonds issued under this Master Indenture shall be subject to acceleration.

SECTION 10.04.    Legal Proceedings by Trustee.

If any Event of Default with respect to a Series of Bonds has occurred and is continuing, the Trustee, in its discretion may, and upon the written request of the Holders of not less than a majority of the aggregate principal amount of the Outstanding Bonds of such Series and receipt of indemnity to its satisfaction shall, in its own name:

(a)    by mandamus, or other suit, action or proceeding at law or in equity, enforce all rights of the Holders of the Bonds of such Series, including, without limitation, the right to require the Issuer to carry out any agreements with, or for the benefit of, the Bondholders of the Bonds of such Series and to perform its or their duties under the Act;

(b)    bring suit upon the Series of Bonds;

(c)    by action or suit in equity require the Issuer to account as if it were the trustee of an express trust for the Holders of the Bonds of such Series;

(d)    by action or suit in equity enjoin any acts or things which may be unlawful or in violation of the rights of the Holders of the Bonds of such Series; and

(e)    by other proceeding in law or equity, exercise all rights and remedies provided for by any other document or instrument securing such Series of Bonds.

SECTION 10.05.    Discontinuance of Proceedings by Trustee.  If any proceeding taken by the Trustee on account of any Event of Default is discontinued or is determined adversely to the Trustee, the Issuer, the Trustee, the Paying Agent and the Bondholders shall be restored to their former positions and rights hereunder as though no such proceeding had been taken.

SECTION 10.06.    Bondholders May Direct Proceedings.  The Holders of a majority in aggregate principal amount of the Outstanding Bonds of a Series then subject to remedial proceedings under this Article X shall have the right to direct the method and place of conducting all remedial proceedings by the Trustee under the Master Indenture, provided that such directions shall not be otherwise than in accordance with law or the provisions of the Master Indenture.

SECTION 10.07.    Limitations on Actions by Bondholders.  No Bondholder shall have any right to pursue any remedy hereunder unless (a) the Trustee shall have been given written notice of an Event of Default, (b) the Holders of at least a majority of the aggregate

57

principal amount of the Outstanding Bonds of the applicable Series shall have requested the Trustee, in writing, to exercise the powers hereinabove granted or to pursue such remedy in its or their name or names, (c) the Trustee shall have been offered indemnity satisfactory to it against costs, expenses and liabilities, and (d) the Trustee shall have failed to comply with such request within a reasonable time.

SECTION 10.08.    Trustee May Enforce Rights Without Possession of Bonds.  All rights under the Master Indenture and a Series of Bonds may be enforced by the Trustee without the possession of any of the Bonds of such Series or the production thereof at the trial or other proceedings relative thereto, and any proceeding instituted by the Trustee shall be brought in its name for the ratable benefit of the Holders of the Bonds of such Series.

SECTION 10.09.    Remedies Not Exclusive.  Except as limited under Section 15.01 of this Master Indenture, no remedy contained in the Master Indenture is intended to be exclusive of any other remedy or remedies, and each remedy is in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.

SECTION 10.10.    Delays and Omissions Not to Impair Rights.  No delay or omission in respect of exercising any right or power accruing upon any Event of Default shall impair such right or power or be a waiver of such Event of Default, and every remedy given by this Article X may be exercised from time to time and as often as may be deemed expedient.

SECTION 10.11.    Application of Moneys in Event of Default.  Any moneys received by the Trustee or the Paying Agent, as the case may be, in connection with any proceedings brought under this Article X with respect to a Series of Bonds shall be applied in the following priority:

(a)    to the payment of the costs of the Trustee and Paying Agent incurred in connection with actions taken under this Article X with respect to such Series of Bonds, including counsel fees and any disbursements of the Trustee and the Paying Agent and payment of unpaid fees owed to the Trustee.

(b)    unless the principal of all the Bonds of such Series shall have become or shall have been declared due and payable:

FIRST:  to payment of all installments of interest then due on the Bonds of such Series in the order of maturity of such installments of interest, and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment ratably, according to the amounts due on such installment, to the persons entitled thereto, without any preference or priority of one installment of interest over any other installment; and

SECOND:  to payment to the persons entitled thereto of the unpaid principal or Redemption Price of any of the Bonds of such Series which shall have become due in the order of their due dates, with interest on such Bonds from the respective dates upon which they become due and, if the amount available shall not be sufficient to pay in full

the principal or Redemption Price coming due on such Bonds on any particular date, together with such interest, then to the payment ratably, according to the amount of principal due on such date, to the persons entitled thereto without any preference or priority of one such Bond of a Series over another or of any installment of interest over another.

(c)    If the principal of all Bonds of a Series shall have become or shall have been declared due and payable, to the payment of principal or Redemption Price (as the case may be) and interest then owing on the Bonds of such Series and in case such moneys shall be insufficient to pay the same in full, then to the payment of principal or Redemption Price and interest ratably, without preference or priority of one Bond of such Series over another or of any installment of interest over any other installment of interest.

Any surplus remaining after the payments described above shall be paid to the Issuer or to the Person lawfully entitled to receive the same or as a court of competent jurisdiction may direct.

For purposes of the application of moneys described above, to the extent payments of principal of and interest on a Series of Bonds shall have been made under a Credit Facility relating thereto, the Credit Facility Issuer shall be entitled to moneys in the related Series Accounts in the Debt Service Fund in accordance with the agreement pursuant to which such Credit Facility has been issued (but subject to subsection (a) hereof and Section 11.04 hereof) and the Certified Resolution of the Issuer authorizing the issuance of such Bonds to which such Credit Facility relates.

SECTION 10.12.    Trustee's Right to Receiver; Compliance with Act.    The Trustee shall be entitled as of right to the appointment of a receiver and the Trustee, the Bondholders and any receiver so appointed shall have such rights and powers and be subject to such limitations and restrictions as are contained in the Act and other applicable law of the State.

SECTION 10.13.    Trustee and Bondholders Entitled to all Remedies under Act.    It is the purpose of this Article to provide such remedies to the Trustee and Bondholders as may be lawfully granted under the provisions of the Act and other applicable laws of the State; if any remedy herein granted shall be held unlawful, the Trustee and the Bondholders shall nevertheless be entitled to every other remedy provided by the Act and other applicable laws of the State. It is further intended that, insofar as lawfully possible, the provisions of this Article X shall apply to and be binding upon any receiver appointed in accordance with Section 10.12 hereof.

SECTION 10.14.    Credit Facility Issuer's Rights Upon Events of Default.    Anything in the Master Indenture to the contrary notwithstanding, if any Event of Default has occurred and is continuing while a Credit Facility securing all or a portion of such Bonds of a Series Outstanding is in effect, the Credit Facility Issuer shall have the right, in lieu of the Owners of the Series of Bonds (or portion thereof) secured by said Credit Facility, by an instrument in writing, executed and delivered to the Trustee, to direct the time, method and place of conducting all remedial proceedings available to the Trustee under the Master Indenture, or exercising any trust or power conferred on the Trustee by the Master Indenture.    Said direction shall be

controlling to the extent the direction of Owners of the Series of Bonds (or portion thereof) secured by said Credit Facility would have been controlling under this Article.  If the Credit Facility Issuer shall be in default in the performance of its obligations under the Credit Facility, said Credit Facility Issuer shall have no rights under this Section.

[END OF ARTICLE X]

# ARTICLE XI

## THE TRUSTEE; THE PAYING AGENT AND REGISTRAR

SECTION 11.01.    <u>Acceptance of Trust</u>.  The Trustee accepts and agrees to execute the trusts hereby created, but only upon the additional terms set forth in this Article XI, to all of which the parties hereto, the Bondholders and any Credit Facility Issuer agree.  The Trustee shall act as Trustee for the Bonds.  Subject to the provisions of Section 11.03 hereof, the Trustee shall have only such duties as are expressly set forth herein, and no duties shall be implied on the part of the Trustee.    The Trustee further agrees to comply with the procedures and covenants applicable to it contained in any arbitrage rebate agreement to which it is a party for so long as compliance is necessary in order to maintain the excludability from gross income for federal income tax purposes of interest on the Bonds, to the extent applicable

SECTION 11.02.    <u>No Responsibility for Recitals</u>.    The recitals, statements and representations in this Master Indenture or in the Bonds, save only the Trustee's Certificate, if any, upon the Bonds, have been made by the Issuer and not by the Trustee and the Trustee shall be under no responsibility for the correctness thereof.

SECTION 11.03.    <u>Trustee May Act Through Agents; Answerable Only for Willful Misconduct or Negligence</u>.  The Trustee may execute any powers hereunder and perform any duties required of it through attorneys, agents, officers or employees, and shall be entitled to advice of Counsel concerning all questions hereunder; the Trustee shall not be answerable for the default or misconduct of any attorney or agent selected and supervised by it with reasonable care. The Trustee shall not be answerable for the exercise of any discretion or power under the Master Indenture nor for anything whatever in connection with the trust hereunder, except only its own negligence or willful misconduct or breach of its obligations hereunder.

SECTION 11.04.    <u>Compensation and Indemnity</u>.  The Issuer shall pay the Trustee reasonable compensation for its services hereunder, and also all its reasonable expenses and disbursements, and shall indemnify and hold the Trustee harmless against any liabilities which it may incur in the proper exercise and performance of its powers and duties hereunder, except with respect to its own willful misconduct, negligence or breach of its obligations hereunder.  If the Issuer defaults in respect of the foregoing obligations, the Trustee may deduct the amount owing to it from any moneys coming into its hands under the Indenture but exclusive of the Rebate Fund and moneys from a drawing on any Credit Facility, which right of payment shall be prior to the right of the holders of the Bonds.  This provision shall survive the termination of the Master Indenture and, as to any Trustee, its removal or resignation as Trustee.

SECTION 11.05.    <u>No Duty to Renew Insurance</u>.  The Trustee shall be under no duty to effect or to renew any insurance policy nor shall it incur any liability for the failure of the Issuer to require or effect or renew insurance or to report or file claims of loss thereunder.

SECTION 11.06.    <u>Notice of Default; Right to Investigate</u>.  The Trustee shall give written notice by first-class mail to registered Holders of a Series of Bonds of all defaults known to the Trustee, unless such defaults have been remedied (the term "defaults" for purposes of this

Section and Section 11.07 being defined to include the events specified as "Events of Default" in Article X hereof, but not including any notice or periods of grace provided for therein); provided that, except in the case of a default in payment of principal or interest or Redemption Price, the Trustee may withhold such notice so long as it in good faith determines that such withholding is in the interest of the Bondholders. The Trustee shall not be deemed to have notice of any default other than a payment default under the Indenture or a notification by a Credit Facility Issuer of a default under its Credit Facility, unless notified in writing of such default by the Holders of at least a majority of the aggregate principal amount of the Outstanding Bonds of a Series. The Trustee may, however, at any time require of the Issuer full information as to the performance of any covenant hereunder, and if information satisfactory to it is not forthcoming, the Trustee may make or cause to be made, at the expense of the Issuer, an investigation into the affairs of the Issuer.

SECTION 11.07.    Obligation to Act on Defaults.  The Trustee shall be under no obligation to take any action in respect of any default or otherwise, unless it is requested in writing to do so by the Holders of at least a majority of the aggregate principal amount of the Outstanding Bonds which are or would be, upon the taking of such action, subject to remedial proceedings under Article X of this Master Indenture if in its opinion such action may tend to involve expense or liability, and unless it is also furnished with indemnity satisfactory to it.

SECTION 11.08.    Reliance by Trustee.  The Trustee may act on any requisition, resolution, notice, telegram, facsimile transmission, request, consent, waiver, certificate, statement, affidavit, voucher, bond, or other paper or document which it in good faith believes to be genuine and to have been passed, signed or given by the persons purporting to be authorized (which in the case of the Issuer shall be a Responsible Officer) or to have been prepared and furnished pursuant to any of the provisions of the Indenture; the Trustee shall be under no duty to make any investigation as to any statement contained in any such instrument, but may accept the same as conclusive evidence of the accuracy of such statement.

SECTION 11.09.    Trustee May Deal in Bonds.  The Trustee may in good faith buy, sell, own, hold and deal in any of the Bonds and may join in any action which any Bondholders may be entitled to take with like effect as if the Trustee were not a party to the Indenture. The Trustee may also engage in or be interested in any financial or other transaction with the Issuer; provided, however, that if the Trustee determines that any such relation is in conflict with its duties under the Indenture, it shall eliminate the conflict or resign as Trustee.

SECTION 11.10.    Construction of Ambiguous Provisions.  The Trustee may construe any ambiguous or inconsistent provisions of the Indenture, and except as otherwise provided in Article XIII of this Master Indenture, any construction by the Trustee shall be binding upon the Bondholders. The Trustee shall give prompt notice to the Issuer of any intention to make such construction.

SECTION 11.11.    Resignation of Trustee.  The Trustee may resign and be discharged of the trusts created by the Indenture by written resignation filed with the Secretary of the Issuer not less than sixty (60) days before the date when such resignation is to take effect; provided, however, that (i) if any Outstanding Bonds are not registered Bonds, notice of such resignation is

published at least once a week for three (3) consecutive calendar weeks in at least one Authorized Newspaper and at least once in The Bond Buyer, or its successor, if any, the first publication to appear not less than three (3) weeks prior to the date when the resignation is to take effect; and that (ii) if any Outstanding Bonds are registered Bonds, notice of such resignation shall be sent by first-class mail to each Bondholder as its name and address appears on the Bond Register and to any Paying Agent, Registrar, Authenticating Agent and Credit Facility Issuer, if any, at least sixty (60) days before the resignation is to take effect. Such resignation shall take effect on the day specified in the Trustee's notice of resignation unless a successor Trustee is previously appointed, in which event the resignation shall take effect immediately on the appointment of such successor; provided, however, that notwithstanding the foregoing, such resignation shall not take effect until a successor Trustee has been appointed. If a successor Trustee has not been appointed within ninety (90) days after the Trustee has given its notice of resignation, the Trustee may petition any court of competent jurisdiction for the appointment of a temporary successor Trustee to serve as Trustee until a successor Trustee has been duly appointed. Notice of such resignation shall also be given to any rating agency that shall then have in effect a rating on any of the Bonds.

SECTION 11.12.    Removal of Trustee. The Trustee may be removed at any time by either (a) the Issuer, if no default exists under the Indenture, or (b) an instrument or concurrent instruments in writing, executed by the Owners of at least a majority of the aggregate principal amount of the Bonds then Outstanding and filed with the Issuer. A photographic copy of any instrument or instruments filed with the Issuer under the provisions of this paragraph, duly certified by a Responsible Officer, shall be delivered promptly by the Issuer to the Trustee and to any Paying Agent, Registrar, Authenticating Agent and Credit Facility Issuer, if any.

The Trustee may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of the Indenture with respect to the duties and obligations of the Trustee by any court of competent jurisdiction upon the application of the Issuer or the Holders of not less than a majority of the aggregate principal amount of the Bonds then Outstanding.

SECTION 11.13.    Appointment of Successor Trustee. If the Trustee or any successor Trustee resigns or is removed or dissolved, or if its property or business is taken under the control of any state or federal court or administrative body, a vacancy shall forthwith exist in the office of the Trustee, and the Issuer shall appoint a successor and (i) if any Outstanding Bonds are not registered bonds, shall publish notice of such appointment in an Authorized Newspaper and in The Bond Buyer, or its successor, if any, and (ii) if any Outstanding Bonds are registered Bonds, shall mail notice of such appointment by first-class mail to each Bondholder as its name and address appear on the Bond Register, and to the Paying Agent, Registrar, Authenticating Agent, Credit Facility Issuer, if any, and any rating agency that shall then have in effect a rating on any of the Bonds. If no appointment of a successor Trustee shall be made pursuant to the foregoing provisions of this Master Indenture prior to the date specified in the notice of resignation or removal as the date when such resignation or removal was to take effect, the Holders of a majority in aggregate principal amount of all Bonds then Outstanding may appoint a successor Trustee.

SECTION 11.14.    Qualification of Successor.  A successor Trustee shall be a national bank with trust powers or a bank or trust company with trust powers, having a combined net capital and surplus of at least $50,000,000.

SECTION 11.15.    Instruments of Succession.  Any successor Trustee shall execute, acknowledge and deliver to the Issuer an instrument accepting such appointment hereunder and thereupon, such successor Trustee, without any further act, deed, or conveyance, shall become fully vested with all the estates, properties, rights , powers, trusts, duties and obligations of its predecessor in trust hereunder, with like effect as if originally named Trustee herein.  The Trustee ceasing to act hereunder, after deducting all amounts owed to the Trustee, shall pay over to the successor Trustee all moneys held by it hereunder and, upon request of the successor Trustee, the Trustee ceasing to act and the Issuer shall execute and deliver an instrument or instruments prepared by the Issuer transferring to the successor Trustee all the estates, properties, rights, powers and trusts hereunder of the predecessor Trustee, except for its rights under Section 11.04 hereof.

SECTION 11.16.    Merger of Trustee.  Any corporation into which any Trustee hereunder may be merged or with which it may be consolidated, or any corporation resulting from any merger or consolidation to which any Trustee or its Corporate Trust Department hereunder shall be a party, shall be the successor Trustee under the Indenture, without the execution or filing of any paper or any further act on the part of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that any such successor corporation continuing to act as Trustee hereunder shall meet the requirements of Section 11.14 hereof, and if such corporation does not meet the aforesaid requirements, a successor Trustee shall be appointed pursuant to this Article XI.

SECTION 11.17.    Extension of Rights and Duties of Trustee to Paying Agent and Registrar.  The provisions of Sections 11.02, 11.03, 11.04, 11.08, 11.09 and 11.10 hereof are hereby made applicable to the Paying Agent and the Registrar, as appropriate, and any Person serving as Paying Agent and/or Registrar, hereby enters into and agrees to comply with the covenants and agreements of the Indenture applicable to the Paying Agent and Registrar, respectively.

SECTION 11.18.    Resignation of Paying Agent or Registrar.  The Paying Agent or Registrar may resign and be discharged of the duties created by the Master Indenture by executing an instrument in writing resigning such duties and specifying the date when such resignation shall take effect, and filing the same with the Issuer, the Trustee, and any rating agency that shall then have in effect a rating on any of the Bonds, not less than forty-five (45) days before the date specified in such instrument when such resignation shall take effect, and by giving written notice of such resignation not less than three (3) weeks prior to such resignation date to the Bondholders, mailed to their addresses as such appear in the Bond Register.  Such resignation shall take effect on the date specified in such instrument and notice, but only if a successor Paying Agent or Registrar shall have been appointed as hereinafter provided, in which event such resignation shall take effect immediately upon the appointment of such successor Paying Agent or Registrar.  If the successor Paying Agent or Registrar shall not have been appointed within a period of ninety (90) days following the giving of notice, then the Paying

Agent or Registrar shall be authorized to petition any court of competent jurisdiction to appoint a successor Paying Agent or Registrar as provided in Section 11.22 hereof.

SECTION 11.19.    Removal of Paying Agent or Registrar.    The Paying Agent or Registrar may be removed at any time prior to any Event of Default by the Issuer by filing with the Paying Agent or Registrar to be removed, and with the Trustee, an instrument or instruments in writing executed by the Issuer appointing a successor, or an instrument or instruments in writing designating, and accompanied by an instrument or appointment by the Issuer of, such successor. Such removal shall be effective thirty (30) days (or such longer period as may be set forth in such instrument) after delivery of the instrument; provided, however, that no such removal shall be effective until the successor Paying Agent or Registrar appointed hereunder shall execute, acknowledge and deliver to the Issuer an instrument accepting such appointment hereunder.

SECTION 11.20.    Appointment of Successor Paying Agent or Registrar.    In case at any time the Paying Agent or Registrar shall be removed, or be dissolved, or if its property or affairs shall be taken under the control of any state or federal court or administrative body because of insolvency or bankruptcy, or for any other reason, then a vacancy shall forthwith and ipso facto exist in the office of the Paying Agent or Registrar, as the case may be, and a successor shall be appointed by the Issuer; and in case at any time the Paying Agent or Registrar shall resign, then a successor shall be appointed by the Issuer. After any such appointment, notice of such appointment shall be given by the Issuer to the predecessor Paying Agent or Registrar, the successor Paying Agent or Registrar, the Trustee, any rating agency that shall then have in effect a rating on any of the Bonds, and all Bondholders. Any new Paying Agent or Registrar so appointed shall immediately, and without further act, supersede the predecessor Paying Agent or Registrar.

SECTION 11.21.    Qualifications of Successor Paying Agent or Registrar.    Every successor Paying Agent or Registrar (a) shall be a commercial bank or trust company (i) duly organized under the laws of the United States or any state or territory thereof, (i) authorized by law to perform all the duties imposed upon it by the Indenture and (iii) capable of meeting its obligations hereunder, and (b) shall have a combined net capital and surplus of at least $50,000,000.

SECTION 11.22.    Judicial Appointment of Successor Paying Agent or Registrar.    In case at any time the Paying Agent or Registrar shall resign and no appointment of a successor Paying Agent or Registrar shall be made pursuant to the foregoing provisions of this Master Indenture prior to the date specified in the notice of resignation as the date when such resignation is to take effect, the retiring Paying Agent or Registrar may forthwith apply to a court of competent jurisdiction for the appointment of a successor Paying Agent or Registrar. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, appoint a successor Paying Agent or Registrar. Notice of such appointment shall be given by the Successor Registrar or Paying Agent to the Issuer, the Trustee, any rating agency that shall then have in effect a rating on any of the Bonds, and all Bondholders. In the absence of such an appointment, the Trustee shall become the Registrar or Paying Agent, and shall so notify the Issuer, any rating agency that shall have issued a rating on the Bonds, and all Bondholders.

SECTION 11.23.    <u>Acceptance of Duties by Successor Paying Agent or Registrar</u>. Any successor Paying Agent or Registrar shall become duly vested with all the estates, property, rights, powers, duties and obligations of its predecessor hereunder, with like effect as if originally named Paying Agent or Registrar herein.    Upon request of such Paying Agent or Registrar, such predecessor Paying Agent or Registrar and the Issuer shall execute and deliver an instrument transferring to such successor Paying Agent or Registrar all the estates, property, rights and powers hereunder of such predecessor Paying Agent or Registrar and such predecessor Paying Agent or Registrar shall pay over and deliver to the successor Paying Agent or Registrar all moneys and other assets at the time held by it hereunder.

SECTION 11.24.    <u>Successor by Merger or Consolidation</u>.    Any corporation into which any Paying Agent or Registrar hereunder may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger or consolidation to which any Paying Agent or Registrar hereunder shall be a party, shall be the successor Paying Agent or Registrar under the Indenture without the execution or filing of any paper or any further act on the part of the parties thereto, anything in the Indenture to the contrary notwithstanding.

[END OF ARTICLE XI]

## ARTICLE XII

## ACTS OF BONDHOLDERS; EVIDENCE OF OWNERSHIP OF BONDS

SECTION 12.01.    Acts of Bondholders; Evidence of Ownership of Bonds. Any action to be taken by Bondholders may be evidenced by one or more concurrent written instruments of similar tenor signed or executed by such Bondholders in person or by an agent appointed in writing.  The fact and date of the execution by any person of any such instrument may be provided by acknowledgment before a notary public or other officer empowered to take acknowledgments or by an affidavit of a witness to such execution.  Any action by the Owner of any Bond shall bind all future Owners of the same Bond in respect of anything done or suffered by the Issuer, Trustee, Paying Agent or Registrar in pursuance thereof.

[END OF ARTICLE XII]

## ARTICLE XIII

## AMENDMENTS AND SUPPLEMENTS

SECTION 13.01.    Amendments and Supplements Without Bondholders' Consent. This Master Indenture and any Supplemental Indenture may be amended or supplemented, from time to time, without the consent of the Bondholders, by a Supplemental Indenture authorized by a Certified Resolution of the Issuer filed with the Trustee, for one or more of the following purposes:

(a)    to add additional covenants of the Issuer or to surrender any right or power herein conferred upon the Issuer;

(b)    for any purpose not inconsistent with the terms of the Indenture, or to cure any ambiguity or to cure, correct or supplement any defective provision (whether because of any inconsistency with any other provision hereof or otherwise) of the Indenture, in such manner as shall not impair the security hereof or thereof or adversely affect the rights and remedies of the Bondholders;

(c)    to provide for the execution of any and all contracts and other documents as may be required in order to effectuate the conveyance of any Project to the State, the County or any department, agency or branch thereof, or any other unit of government of the State or the County; provided, however, that the Issuer shall have caused to be delivered to the Trustee an opinion of Bond Counsel stating that such conveyance shall not impair the security hereof or adversely affect the rights and remedies of the Bondholders;

(d)    to make such changes as may be necessary or desirable in order to provide for the issuance of a Series of Bonds to refund a portion of a Series of Bonds or for the completion of a Project financed with such Series of Bonds, on a parity with the Outstanding Bonds of such Series;

(e)    to make any change in connection with the issuance of a new Series of Bonds if such change affects only such Series of Bonds; and

(f)    to make such changes as may be necessary in order to reflect amendments to Chapters 170, 190 and 197, Florida Statutes, so long as, in the opinion of counsel to the Issuer, such changes either: (i) do not have an adverse effect on the Holders of the Bonds; or (ii) if such changes do have an adverse effect, that they nevertheless are required to be made as a result of such amendments.

SECTION 13.02.    Amendments With Bondholders' Consent.    Subject to the provisions of Section 13.03 hereof, this Master Indenture may be amended from time to time by a Supplemental Indenture and any Supplemental Indenture approved by the Owners of at least a majority in aggregate principal amount of the Bonds then Outstanding in the case of the Master Indenture, and of the Series of Bonds then outstanding and secured by such Supplemental Indenture in the case of Amendment of a Supplemental Indenture; provided that with respect to

68

(a) the interest payable upon any Bonds, (b) the dates of maturity or redemption provisions of any Bonds, (c) this Article XIII and (d) the security provisions hereunder or under any Supplemental Indenture, which may only be amended by approval of the Owners of all Bonds to be so amended.

SECTION 13.03.    Trustee Authorized to Join in Amendments and Supplements; Reliance on Counsel.  The Trustee is authorized to join in the execution and delivery of any supplemental indenture or amendment permitted by this Article XIII and in so doing may rely on a written opinion of Counsel that such supplemental indenture or amendment is so permitted and has been duly authorized by the Issuer and that all things necessary to make it a valid and binding agreement have been done.

[END OF ARTICLE XIII]

## ARTICLE XIV

## DEFEASANCE

SECTION 14.01.    Defeasance.  When interest on, and principal or Redemption Price (as the case may be) of, the Bonds of a Series or any portion thereof to be defeased have been paid, or there shall have been deposited with the Trustee or such other escrow agent designated in a Certified Resolution of the Issuer (the "Escrow Agent") moneys sufficient, or Defeasance Securities, the principal of and interest on which, when due, together with any moneys, remaining uninvested, will provide sufficient moneys to fully pay (i) such Bonds of a Series or portion thereof to be defeased, and (ii) any other sums payable hereunder by the Issuer, the right, title and interest of the Trustee with respect to such Bonds of a Series or portion thereof to be defeased shall thereupon cease, the lien of the Indenture on the Pledged Revenues, and the Funds and Accounts established under the Indenture shall be defeased and discharged, and the Trustee, on demand of the Issuer, shall release the Indenture as to such Bonds of a Series or portion thereof to be so defeased and shall execute such documents to evidence such release as may be reasonably required by the Issuer and shall turn over to the Issuer or to such Person, body or authority as may be entitled to receive the same all balances remaining in any Series Funds and Accounts upon the defeasance in whole of all of the Bonds of a Series.

SECTION 14.02.    Deposit of Funds for Payment of Bonds.  If the Issuer deposits with the Escrow Agent moneys sufficient, or Defeasance Securities, the principal of and interest on which, when due, together with any moneys remaining uninvested, will provide sufficient moneys to pay the principal or Redemption Price of any Bonds of a Series becoming due, either at maturity or by redemption or otherwise, together with all interest accruing thereon to the date of maturity or such prior redemption, and reimburses or causes to be reimbursed or pays or causes to be paid the other amounts required to be reimbursed or paid under Section 14.01 hereof, interest on such Bonds of a Series shall cease to accrue on such date of maturity or prior redemption and all liability of the Issuer with respect to such Bonds of a Series shall likewise cease, except as hereinafter provided; provided, however, that (a) if any Bonds are to be redeemed prior to the maturity thereof, notice of the redemption thereof shall have been duly given in accordance with the provisions of Section 8.02 hereof, or irrevocable provision satisfactory to the Trustee shall have been duly made for the giving of such notice, and (b) in the event that any Bonds are not by their terms subject to redemption within the next succeeding sixty (60) days following a deposit of moneys with the Escrow Agent, in accordance with this Section, the Issuer shall have given the Escrow Agent, in form satisfactory to the Escrow Agent, irrevocable instructions to mail to the Owners of such Bonds at their addresses as they appear on the Bond Register, a notice stating that a deposit in accordance with this Section has been made with the Escrow Agent and that the Bonds to which such notice relates are deemed to have been paid in accordance with this Section and stating such maturity or redemption date upon which moneys are to be available for the payment of the principal or Redemption Price (as the case may be) of, and interest on, said Bonds of a Series.  Thereafter such Bonds shall be deemed not to be Outstanding hereunder and the Owners of such Bonds shall be restricted exclusively to the funds so deposited for any claim of whatsoever nature with respect to such Bonds, and the Escrow Agent shall hold such funds in trust for such Owners. At the time of the deposit referred to

70

above, there shall be delivered to the Escrow Agent a verification from a firm of independent certified public accountants stating that the principal of and interest on the Defeasance Securities, together with the stated amount of any cash remaining on deposit with the Escrow Agent, will be sufficient without reinvestment to pay the remaining principal of, redemption premium, if any, and interest on such defeased Bonds.

Money so deposited with the Escrow Agent which remains unclaimed three (3) years after the date payment thereof becomes due shall, upon request of the Issuer, if the Issuer is not at the time to the knowledge of the Escrow Agent in default with respect to any covenant in the Indenture or the Bonds contained, be paid to the Issuer; and the Owners of the Bonds for which the deposit was made shall thereafter be limited to a claim against the Issuer; provided, however, that the Escrow Agent, before making payment to the Issuer, may, at the expense of the Issuer, cause a notice to be published in an Authorized Newspaper, stating that the money remaining unclaimed will be returned to the Issuer after a specified date.

[END OF ARTICLE XIV]

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

SECTION 15.01.    Limitations on Recourse.  No personal recourse shall be had for any claim based on the Indenture or the Bonds against any member of the Board of the Issuer, officer, employee or agent, past, present or future, of the Issuer or of any successor body as such, either directly or through the Issuer or any such successor body, under any constitutional provision, statute or rule of law or by the enforcement of any assessment or penalty or otherwise.

The Bonds are payable solely from the Pledged Revenues, and any other moneys held by the Trustee under the Indenture for such purpose.  There shall be no other recourse under the Bonds, the Indenture or otherwise, against the Issuer or any other property now or hereafter owned by it.

SECTION 15.02.    Payment Dates.  In any case where an Interest Payment Date or the maturity date of the Bonds or the date fixed for the redemption of any Bonds shall be other than a Business Day, then payment of interest, principal or Redemption Price need not be made on such date but may be made on the next succeeding Business Day, with the same force and effect as if made on the due date, and no interest on such payment shall accrue for the period after such due date if payment is made on such next succeeding Business Day.

SECTION 15.03.    No Rights Conferred on Others.  Nothing herein contained shall confer any right upon any Person other than the parties hereto and the Holders of the Bonds.

SECTION 15.04.    Illegal Provisions Disregarded.  If any term of the Indenture or the Bonds or the application thereof for any reason or circumstances shall to any extent be held invalid or unenforceable, the remaining provisions or the application of such terms or provisions to Persons and situations other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each remaining term and provision hereof and thereof shall be valid and enforced to the fullest extent permitted by law.

SECTION 15.05.    Substitute Notice.  If for any reason it shall be impossible to make duplication of any notice required hereby in a newspaper or newspapers, then such publication in lieu thereof as shall be made with the approval of the Trustee shall constitute a sufficient publication of such notice.

SECTION 15.06.    Notices.    Any notice, demand, direction, request or other instrument authorized or required by the Indenture to be given to or filed with the Issuer or the Trustee shall be deemed to have been sufficiently given or filed for all purposes of the Indenture if and when personally delivered and receipted for, or sent by registered United States mail, return receipt requested, addressed as follows:

(a)     As to the Issuer -

Landmark at Doral Community Development District
Wrathell, Hart, Hunt and Associates, LLC
6131 Lyons Road, Suite 100
Coconut Creek, Florida 33073
Attention:  District Manager

With a copy to:
Billing, Cochran, Heath, Lyles & Mauro, P.A.
888 S.E. Third Avenue
Suite 301
Ft. Lauderdale, FL  33316
Attn: District Counsel

(b)     As to the Trustee -

U.S. Bank, National Association
200 S. Biscayne Boulevard, 14th Floor
Miami, Florida  33131
Attention:  Corporate Trust Department

Any of the foregoing may, by notice sent to each of the others, designate a different or additional address to which notices under the Indenture are to be sent.

All documents received by the Trustee under the provisions of the Indenture and not required to be redelivered shall be retained in its possession, subject at all reasonable times to the inspection of the Issuer, any Consultant, any Bondholder and the agents and representatives thereof as evidenced in writing.

SECTION 15.07.     Controlling Law.  The Master Indenture shall be governed by and construed in accordance with the laws of the State.

SECTION 15.08.     Successors and Assigns.    All the covenants, promises and agreements in the Master Indenture contained by or on behalf of the Issuer or by or on behalf of the Trustee shall bind and inure to the benefit of their respective successors and assigns, whether so expressed or not.

SECTION 15.09.     Headings for Convenience Only.    The table of contents and descriptive headings in this Master Indenture are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

SECTION 15.10.     Counterparts.  This Master Indenture may be executed in any number of counterparts, each of which when so executed and delivered shall be an original; but such counterparts shall together constitute but one and the same instrument.

73

SECTION 15.11.    <u>Appendices and Exhibits</u>.    Any and all appendices or exhibits referred to in and attached to this Master Indenture are hereby incorporated herein and made a part hereof for all purposes.

IN WITNESS WHEREOF, Landmark at Doral Community Development District has caused this Master Indenture to be executed by the Chairman of its Board and attested by the Secretary or Assistant Secretary of its Board and U.S. Bank National Association, has caused this Master Indenture to be executed by one of its Authorized Signatories, all as of the day and year first above written.

**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT**

[SEAL]

Attest:

By: _____
Richard Schuerger
Chairman, Board of Supervisors

_____
Craig A. Wrathell
Secretary, Board of Supervisors

**U.S. BANK NATIONAL ASSOCIATION, as Trustee, Paying Agent and Registrar**

By: _____
Name: Scott A. Schuhle
Title: Vice President

S-1

STATE OF FLORIDA      )
                        ) SS:
COUNTY OF Broward   )

       On this 4th day of October, 2006, before me, a notary public in and for the State and County aforesaid, personally appeared Richard Schuerger and Craig A. Wrathell, Chairman and Secretary, respectively, of the Board of Supervisors of Landmark at Doral Community Development District, who acknowledged that they did sign the foregoing instrument as such officers, respectively, for and on behalf of Landmark at Doral Community Development District; and that the same is their free act and deed as such officers, respectively, and the free act and deed of Landmark at Doral Community Development District.

       IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year in this certificate first above written.

NOTARY PUBLIC, STATE OF
FLORIDA



_____
(Name of Notary Public, Print, Stamp or
Type as Commissioned)

Notary Public State of Florida
Rebecca C Medley
My Commission DD541891
Expires 05/04/2010

☐   Personally known to me, or
☑   Produced identification:

Florida D.L
_____
(Type of Identification Produced)

STATE OF FLORIDA )
) SS:
COUNTY OF Broward )

On this 4th day of October, 2006, before me, a notary public in and for the State and County aforesaid, personally appeared Scott A. Schuhle, a Vice President of U.S. Bank National Association, as Trustee, who acknowledged that he/she did sign said instrument as such officer for and on behalf of said corporation; that the same is his/her free act and deed as such officer and the free act and deed of said corporation; and that the seal affixed to said instrument is the seal of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year in this certificate first above written.

NOTARY PUBLIC, STATE OF FLORIDA

Rebecca C Medley
(Name of Notary Public, Print, Stamp or Type as Commissioned)


Notary Public State of Florida
Rebecca C Medley
My Commission DD541891
Expires 05/04/2010

☐ Personally known to me, or
☒ Produced identification:

Florida D.L.
(Type of Identification Produced)

S-3

## EXHIBIT A

### LEGAL DESCRIPTION OF
### LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT

The present boundaries of Landmark at Doral Community Development District are as follows:


**PARCEL "A"**

Title vested in Landmark at Doral East, LLC, a Florida limited liability company

The East 415.00 feet of Tracts 24, 33, 34, 35 & 36 of "FLORIDA LANDS COMPANY'S SUBDIVISION NO. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida.
TOWN CENTER AT DORAL, LLC, a Florida limited liability company, appeared before me this day in person and acknowledged that he, being thereunto duly authorized, signed, sealed with the seal of said Residential Landowner, and delivered the said instrument as the free and voluntary act of said Residential Landowner and as his own free and voluntary act, for the uses and purposes therein set forth.

WITNESS my hand and affixed my notarial seal in the County and State last aforesaid this 10th day of October, 2006.

**PARCEL "B"**

Title vested in Town Center at Doral, LLC, a Florida limited liability company

Tracts 24, 25, 33, 34, 35, 36, 45, 46, 47 and 48; less all roads Right-of-way of records, of "FLORIDA LANDS COMPANY'S SUBDIVISION NO. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, Florida, which lies within the West ½ of Section 17, Township Map 53 South, Range 40 East, Miami-Dade County, Florida. Less the East 415.00 feet of Tracts 24, 33, 34, 35 and 36 thereof, and less that portion of Tract 45 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459.

AND LESS:
A portion of Tract 25 of "FLORIDA LANDS COMPANY'S SUBDIVISION No. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, which lies in the Northwest ¼ of Section 17, Township 53 South, Range 40 East. Miami-Dade County, Florida. More particularly described as follows:

Commence at Northwest Corner of said Section 17, thence S01deg43min09secE along the West Line of said Section 17 for a distance of 2309.44 feet; thence N89deg40min03secE along the North line of said tract 25 for 690.19 feet; thence S00deg19min51secE for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of Land, thence N89deg40min03secE for 301.52 feet; thence S00deg19min51secE for 92.18 feet; thence N89deg40min09secE for 18.00 feet; thence S00deg19min51secE for 128.67 feet; thence S89deg40min09secW for 118.59 feet to a point on a circular

curve to the left, concave to the South, a radial line to said point bears N47deg51min32secE; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96deg22min46sec for a distance of 100.93 feet to a point on a non-tangent line; thence S89deg40min09secW for 129.49 feet; thence N00deg19min51secW for 128.67 feet; thence N89deg40min09secE for 18.00 feet; thence N00deg19min51secW for 92.17 feet to the POINT OF BEGINNING.

LANDMARK AT DORAL SOUTH, LLC, a Florida limited liability company, appeared before me this day in person and acknowledged that he, being thereunto duly authorized, signed, sealed with the seal of said Residential Landowner, and delivered the said instrument as the free and voluntary act of said Residential Landowner and as his own free and voluntary act, for the uses and purposes therein set forth.


**PARCEL "C"**

Title vested in Landmark at Doral South, LLC, a Florida limited liability company

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION No. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way of records, and less that portion of Tracts 41, 42, 43, and 44 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459. Less and except therefrom that portion lying at or above elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

**PARCEL "D"**

Title vested in Landmark at Doral Developers, LLC, a Florida limited liability company

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION No. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way of records, and less that portion of Tracts 41, 42, 43, and 44 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459. Less and except therefrom that portion lying below elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)


**PARCEL "E"**

Title vested in Landmark Club at Doral, LLC, a Florida limited liability company

A portion of Tract 25 of "FLORIDA LANDS COMPANY'S SUBDIVISION No. 1", according to that Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, which lies in the Northwest ¼ of Section 17, Township 53 South, Range 40 East. Miami-Dade County, Florida. More particularly described as follows:

Commence at Northwest Corner of said Section 17, thence S01deg43min09secE along the West Line of said Section 17 for a distance of 2309.44 feet; thence N89deg40min03secE along the North line of said

tract 25 for 690.19 feet; thence S00deg19min51secE for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of Land, thence N89deg40min03secE for 301.52 feet; thence S00deg19min51secE for 92.18 feet; thence N89deg40min09secE for 18.00 feet; thence S00deg19min51secE for 128.67 feet; thence S89deg40min09secW for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N47deg51min32secE; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96deg22min46sec for a distance of 100.93 feet to a point on a non-tangent line; thence S89deg40min09secW for 129.49 feet; thence N00deg19min51secW for 128.67 feet; thence N89deg40min09secE for 18.00 feet; thence N00deg19min51secW for 92.17 feet to the POINT OF BEGINNING.

## <u>EXHIBIT B</u>

### DESCRIPTION OF THE PROJECT

      The Project includes the following improvements, as such improvements may be modified from time to time by the Consulting Engineer in an Engineer's Report approved by the Board:

| Description | Estimated Cost |
|---|---|
| Roadway Improvements | $40,661,446 |
| Public Parking Garage | 14,688,227 |
| Stormwater Management | 12,101,196 |
| Water Distribution | 1,957,803 |
| Sanitary Sewer | 3,922,245 |
| Outdoor Recreational Areas | 1,541,815 |
| **TOTAL** | **$74,872,732** |

B-1

## EXHIBIT C

FORM OF BOND

The following legend shall appear on the Bond only if the Bonds are privately placed:

**THIS BOND HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, BASED UPON THE EXEMPTION FROM REGISTRATION AVAILABLE UNDER SECTION 3(a)(2) THEREOF, AND MAY BE SOLD OR OTHERWISE TRANSFERRED ONLY TO AN "ACCREDITED INVESTOR", AS SUCH TERM IS DEFINED IN 17 C.F.R. SECTION 230.501(a), OR ANY SUCCESSOR PROVISION THERETO, IN ACCORDANCE WITH APPLICABLE FEDERAL AND STATE SECURITIES LAWS AND OTHERWISE IN ACCORDANCE WITH THE PROVISIONS OF THE INDENTURE REFERRED TO BELOW.**

R-_____                                                                     $_____

**UNITED STATES OF AMERICA**
**STATE OF FLORIDA**
**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT**
**SPECIAL ASSESSMENT BOND**

| Interest Rate | Maturity Date | Dated Date | CUSIP |
|---|---|---|---|

Registered Owner:

Principal Amount:

KNOW ALL PERSONS BY THESE PRESENTS that Landmark at Doral Community Development District (the "Issuer"), for value received, hereby promises to pay to the registered owner shown above or registered assigns, on the date specified above, from the sources hereinafter mentioned, upon presentation and surrender hereof at the corporate trust office of U.S. Bank National Association, in Miami, Florida, as paying agent (said U.S. Bank National Association and/or any bank or trust company to become successor paying agent being herein called the "Paying Agent"), the Principal Amount set forth above with interest thereon at the Interest Rate per annum set forth above, computed on a 360-day year of 30-day months, payable on the first day of May and November of each year. Principal of this Bond is payable at the corporate trust office of U.S. Bank National Association, located in Miami, Florida, in lawful money of the United States of America. Interest on this Bond is payable by check or draft of the Paying Agent made payable to the registered owner and mailed on each Interest Payment Date to the address of the registered owner as such name and address shall appear on the registry books of the Issuer maintained by U.S. Bank National Association, as Registrar (said U.S. Bank National Association and any successor Registrar being herein called the "Registrar") at the close of business on the fifteenth day of the calendar month preceding each interest payment date or the date on which the principal of a Bond is to be paid (the "Record Date"). Such interest shall be payable from the most recent interest payment date next preceding the date of

C-1

authentication hereof to which interest has been paid, unless the date of authentication hereof is a May 1 or November 1 to which interest has been paid, in which case from the date of authentication hereof, or unless such date of authentication is prior to _____ 1, ____, in which case from _____ 1, _____, or unless the date of authentication hereof is between a Record Date and the next succeeding interest payment date, in which case from such interest payment date.  Any such interest not so punctually paid or duly provided for shall forthwith cease to be payable to the registered owner on such Record Date and may be paid to the person in whose name this Bond is registered at the close of business on a Special Record Date for the payment of such defaulted interest to be fixed by the Paying Agent, notice whereof shall be given to Bondholders of record as of the fifth (5th) day prior to such mailing, at their registered addresses, not less than ten (10) days prior to such Special Record Date, or may be paid, at any time in any other lawful manner, as more fully provided in the Indenture (defined below).

REFERENCE IS HEREBY MADE TO THE FURTHER PROVISIONS OF THIS BOND SET FORTH ON THE REVERSE SIDE HEREOF AND SUCH FURTHER PROVISIONS SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS IF SET FORTH ON THE FRONT SIDE HEREOF.

THE BONDS ARE LIMITED OBLIGATIONS OF THE ISSUER PAYABLE SOLELY OUT OF THE PLEDGED REVENUES PLEDGED THEREFOR UNDER THE INDENTURE AND NEITHER THE PROPERTY, THE FULL FAITH AND CREDIT, NOR THE TAXING POWER OF THE ISSUER, THE CITY, MIAMI-DADE COUNTY, FLORIDA, THE STATE OF FLORIDA, OR ANY POLITICAL SUBDIVISION THEREOF, IS PLEDGED AS SECURITY FOR THE PAYMENT OF THE BONDS, EXCEPT THAT THE ISSUER IS OBLIGATED UNDER THE INDENTURE TO LEVY AND TO EVIDENCE AND CERTIFY, OR CAUSE TO BE CERTIFIED, FOR COLLECTION, SPECIAL ASSESSMENTS (AS DEFINED IN THE INDENTURE) TO SECURE AND PAY THE BONDS. THE BONDS DO NOT CONSTITUTE AN INDEBTEDNESS OF THE ISSUER, THE CITY, MIAMI-DADE COUNTY, FLORIDA,  THE STATE OF FLORIDA, OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY CONSTITUTIONAL OR STATUTORY PROVISION OR LIMITATION.

This Bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Indenture until it shall have been authenticated by execution of the Trustee, or such other authenticating agent as may be appointed by the Trustee under the Indenture, of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Landmark at Doral Community Development District has caused this Bond to be signed by the facsimile signature of the Chairman of its Board of Supervisors, and attested by the facsimile signature of the Secretary of its Board of Supervisors, as of the date hereof.

LANDMARK AT DORAL COMMUNITY
DEVELOPMENT DISTRICT

By:_____
       Chairman, Board of Supervisors

Attest:

By:_____
      Secretary, Board of Supervisors

C-3

## <u>CERTIFICATE OF AUTHENTICATION</u>

This Bond is one of the Bonds delivered pursuant to the within mentioned Indenture.

Date of Authentication: _____

U.S. BANK NATIONAL ASSOCIATION, as Trustee

By:_____
Authorized Officer

[Back of Bond]

This Bond is one of an authorized issue of Bonds of Landmark at Doral Community Development District, a community development district duly created, organized and existing in accordance with the Uniform Community Development District Act of 1980, Chapter 190, Florida Statutes, as amended (the "Act"), Section 1.01(A)(21) of the Miami-Dade Home Rule Charter, and Ordinance No. 05-153 enacted by the Board of County Commissioners of Miami-Dade County, Florida effective on September 2, 2005, designated as Landmark at Doral Community Development District (City of Doral, Florida) Special Assessment Bonds (the "Bonds"), in the aggregate principal amount of _____ Dollars ($_____) of like date, tenor and effect, except as to number. The Bonds are being issued under authority of the laws and Constitution of the State of Florida, including particularly the Act, to pay a portion of the costs of the planning, financing, acquisition, construction, reconstruction, equipping and installation of certain infrastructure improvements consisting of consisting of roadway improvements, stormwater management facilities, a water distribution system, a sanitary sewer system, a public parking garage building and outdoor recreational areas pursuant to the Act for the special benefit of the District Lands or portions thereof. The Bonds shall be issued as fully registered Bonds in authorized denominations, as set forth in the Indenture. The Bonds are issued under and secured, except a Master Trust Indenture dated as of October 1, 2006 (the "Master Indenture"), as amended and supplemented by a _____ Supplemental Trust Indenture dated as of _____ (the "Supplemental Indenture" and together with the Master Indenture, the "Indenture"), each by and between the Issuer and the Trustee, executed counterparts of which are on file at the corporate trust office of the Trustee in Miami, Florida.

Reference is hereby made to the Indenture for the provisions, among others, with respect to the custody and application of the proceeds of the Bonds issued under the Indenture, the operation and application of the Debt Service Fund and other Funds and Accounts (each as defined in the Indenture) charged with and pledged to the payment of the principal of, premium, if any, and the interest on the Bonds, the levy and the evidencing and certifying for collection, of Special Assessments, the nature and extent of the security for the Bonds, the terms and conditions on which the Bonds are issued, the rights, duties and obligations of the Issuer and of the Trustee under the Indenture, the conditions under which such Indenture may be amended without the consent of the registered owners of Bonds, the conditions under which such Indenture may be amended with the consent of the registered owners of a majority in aggregate principal amount of the Bonds outstanding, and as to other rights and remedies of the registered owners of the Bonds.

The registered or beneficial owner of this Bond shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Indenture or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Indenture.

It is expressly agreed by the registered or beneficial owner of this Bond that such registered owner shall never have the right to require or compel the exercise of the ad valorem taxing power of the Issuer, the City of City of Doral, Florida (the "City"), Miami-Dade County, Florida, the State of Florida or any political subdivision thereof, or taxation in any form of any

C-5

real or personal property of the Issuer, the City, Miami-Dade County, Florida, the State of Florida or any political subdivision thereof, for the payment of the principal of, premium, if any, and interest on this Bond or the making of any other sinking fund and other payments provided for in the Indenture, except for Special Assessments to be assessed and levied by the Issuer as set forth in the Indenture.

By the acceptance of this Bond, the registered or beneficial owner hereof assents to all the provisions of the Indenture.

This Bond is payable from and secured by Pledged Revenues, as such term is defined in the Indenture, all in the manner provided in the Indenture. The Indenture provides for the levy and the evidencing and certifying, of non ad valorem assessments in the form of Special Assessments to secure and pay the Bonds.

The Bonds are subject to redemption prior to maturity in the amounts, at the times and in the manner provided below. All payments of the redemption price of the Bonds shall be made on the dates specified below. Upon any redemption of Bonds other than in accordance with scheduled Sinking Fund Installments, the Issuer shall cause to be recalculated and delivered to the Trustee revised Sinking Fund Installments recalculated so as to amortize the Outstanding principal amount of Bonds in substantially equal annual installments of principal and interest (subject to rounding to Authorized Denominations of principal) over the remaining term of the Bonds. The Sinking Fund Installments as so recalculated shall not result in an increase in the aggregate of the Sinking Fund Installments for all Bonds in any year. In the event of a redemption or purchase occurring less than 45 days prior to a date on which a Sinking Fund Installment is due, the foregoing recalculation shall not be made to Sinking Fund Installments due in the year in which such redemption or purchase occurs, but shall be made to Sinking Fund Installments for the immediately succeeding and subsequent years.

Optional Redemption

The Bonds are subject to redemption at the option of the Issuer in whole or in part at any time on or after _____ 1, ____, at the redemption prices (expressed as percentages of principal amount to be redeemed) set forth below, plus accrued interest to the redemption date, upon notice from the Issuer to the Trustee as set forth in the Indenture.

| Redemption Period (Both Dates Inclusive) | Redemption Price |
|---|---|
| _____ 1, ____ to _____ 31, ____ | % |
| _____ 1, ____ to _____ 31, ____ | |
| _____ 1, ____ and thereafter | |

Mandatory Sinking Fund Redemption

The Bonds are subject to mandatory sinking fund redemption on _____ 1 in the years and in the principal amounts set forth below at a redemption price of 100% of their principal amount plus accrued interest to the date of redemption. Such principal amounts shall

be reduced as specified by the Issuer by the principal amount of any Bonds redeemed pursuant to optional or extraordinary mandatory redemption as set forth above or purchased and cancelled pursuant to the provisions of the Indenture.

| Year | Principal Amount of Bonds to be Paid | Year | Principal Amount of Bonds to be Paid |
|------|--------------------------------------|------|--------------------------------------|
|      |                                      |      |                                      |

Extraordinary Mandatory Redemption in Whole or in Part

The Bonds are subject to extraordinary mandatory redemption prior to maturity by the Issuer in whole, on any date, or in part, on any interest payment date, at an extraordinary mandatory redemption price equal to 100% of the principal amount of the Bonds to be redeemed, plus interest accrued to the redemption date, (i) from moneys deposited into the Bond Redemption Fund following the payment in full of Special Assessments on any portion of the District Lands in accordance with the provisions of the Section 9.08(a) of the Indenture; (ii) from moneys deposited into the Bond Redemption Fund following the payment in full of Special Assessments on any portion of the District Lands as a result of any prepayment of Special Assessments in accordance with the provisions of Section 9.08(b) of the Indenture; (iii) when sufficient moneys are on deposit in the related Funds and Accounts (other than the Rebate Fund) to pay and redeem all Outstanding Bonds and accrued interest thereon to the redemption date in addition to all amounts owed to Persons under the Indenture; (iv) from moneys in excess of the Debt Service Reserve Requirement in the Debt Service Reserve Fund transferred to the Bond Redemption Fund pursuant to the Indenture; (v) from excess moneys transferred from the Revenue Fund to the Bond Redemption Fund in accordance with the Indenture; or (vi) from moneys, if any, on deposit in the Bond Redemption Fund following condemnation or the sale of any portion of the District Lands benefitted by the Project to a governmental entity under threat of condemnation by such governmental entity or the damage or destruction of all or substantially all of the Project when such moneys are not to be used pursuant to the Indenture to repair, replace or restore the Project; provided, however, that at least forty-five (45) days prior to such extraordinary mandatory redemption, the Issuer shall cause to be delivered to the Trustee (x) notice setting forth the redemption date and (y) a certificate of the Consulting Engineer confirming that the repair and restoration of the Project would not be economical or would be impracticable; or (vii) from amounts transferred to the Series Account of the Bond Redemption Fund from the Series Account of the Acquisition and Construction Fund.

Notice of Redemption

The Trustee shall cause notice of redemption to be mailed at least thirty but not more than sixty days prior to the date of redemption to all registered owners of Bonds to be redeemed (as such owners appear on the books of the Registrar on the fifth (5th) day prior to such mailing) and to certain additional parties as set forth in the Indenture; provided, however, that failure to mail

any such notice or any defect in the notice or the mailing thereof shall not affect the validity of the redemption of the Bonds for which such notice was duly mailed in accordance with the Indenture.  If less than all of the Bonds shall be called for redemption, the notice of redemption shall specify the Bonds to be redeemed.   On the redemption date, the Bonds called for redemption will be payable at the designated corporate trust office of the Paying Agent and on such date interest shall cease to accrue, such Bonds shall cease to be entitled to any benefit under the Indenture and such Bonds shall not be deemed to be outstanding under the provisions of the Indenture and the registered owners of such Bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof.  If the amount of funds so deposited with the Trustee, or otherwise available, is insufficient to pay the redemption price and interest on all Bonds so called for redemption on such date, the Trustee shall redeem and pay on such date an amount of such Bonds for which such funds are sufficient, selecting the Bonds to be redeemed by lot from among all such Bonds called for redemption on such date, and interest on any Bonds not paid shall continue to accrue, as provided in the Indenture.

   *Partial Redemption of Bonds.*  If less than all the Bonds of a maturity are to be redeemed, the Trustee shall select the particular Bonds or portions of Bonds to be redeemed by lot in such reasonable manner as the Trustee in its discretion may determine.  In the case of any partial redemption of Bonds pursuant to an optional redemption, such redemption shall be effectuated by redeeming Bonds of such maturities in such manner as shall be specified by the Issuer in writing, subject to the provisions of the Indenture.  In the case of any partial redemption of Bonds pursuant to an extraordinary mandatory redemption, such redemption shall be effectuated by redeeming Bonds pro rata among the maturities, treating each date on which a Sinking Fund Installment is due as a separate maturity for such purpose, with the portion to be redeemed from each maturity being equal to the product of the aggregate principal amount of Bonds to be redeemed multiplied times a fraction the numerator of which is the principal amount of Bonds of such maturity outstanding immediately prior to the redemption date and the denominator of which is the aggregate principal amount of all Bonds outstanding immediately prior to the redemption date.

   The Issuer shall keep books for the registration of the Bonds at the corporate trust office of the Registrar in Miami, Florida.  Subject to the restrictions contained in the Indenture, the Bonds may be transferred or exchanged by the registered owner thereof in person or by his attorney duly authorized in writing only upon the books of the Issuer kept by the Registrar and only upon surrender thereof together with a written instrument of transfer satisfactory to the Registrar duly executed by the registered owner or his duly authorized attorney.  In all cases in which the privilege of transferring or exchanging Bonds is exercised, the Issuer shall execute and the Trustee or such other authenticating agent as may be appointed by the Trustee under the Indenture shall authenticate and deliver a new Bond or Bonds in authorized form and in like aggregate principal amount in accordance with the provisions of the Indenture. Every Bond presented or surrendered for transfer or exchange shall be duly endorsed or accompanied by a written instrument of transfer in form satisfactory to the Trustee, Paying Agent or the Registrar, duly executed by the Bondholder or his attorney duly authorized in writing.  Transfers and exchanges shall be made without charge to the Bondholder, except that the Issuer or the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer or exchange of Bonds.  Neither the Issuer nor the Registrar on behalf of the Issuer shall be required (i) to issue, transfer or exchange any Bond

during a period beginning at the opening of business fifteen (15) days before the day of mailing of a notice of redemption of Bonds selected for redemption and ending at the close of business on the day of such mailing, or (ii) to transfer or exchange any Bond so selected for redemption in whole or in part.

The Issuer, the Trustee, the Paying Agent and the Registrar may deem and treat the person in whose name any Bond shall be registered upon the books kept by the Registrar as the absolute owner thereof (whether or not such Bond shall be overdue and notwithstanding any notation of ownership or other writing thereon made by anyone other than the Issuer, the Trustee, the Paying Agent or the Registrar) for the purpose of receiving payment of or on account of the principal of, premium, if any, and interest on such Bond as the same becomes due, and for all other purposes. All such payments so made to any such registered owner or upon his order shall be valid and effectual to satisfy and discharge the liability upon such Bond to the extent of the sum or sums so paid, and neither the Issuer, the Trustee, the Paying Agent, nor the Registrar shall be affected by any notice to the contrary.

It is hereby certified and recited that all acts, conditions and things required to exist, to happen, and to be performed, precedent to and in the issuance of this Bond exist, have happened and have been performed in regular and due form and time as required by the laws and Constitution of the State of Florida applicable thereto, including particularly the Act, and that the issuance of this Bond, and of the issue of the Bonds of which this Bond is one, is in full compliance with all constitutional and statutory limitations or provisions.

## STATEMENT OF VALIDATION

This Bond is one of a series of Bonds which were validated by judgment of the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Miami-Dade County, Florida, rendered on the ___ day of _____, 2005.

_____
Chairman

_____
Secretary

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of the within Bond, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | |
|---|---|---|
| TEN COM | - | as tenants in common |
| TEN ENT | - | as tenants by the entireties |
| JT TEN | - | as joint tenants with rights of survivorship and not as tenants in common |

UNIFORM GIFT MIN ACT    -    _____ Custodian _____
                               (Cust)              (Minor)

Under Uniform Gifts to Minors

Act_____
            (State)

Additional abbreviations may also be used though not in the above list.

## ASSIGNMENT AND TRANSFER

FOR VALUE RECEIVED the undersigned sells, assigns and transfers unto

_____

_____

**(please print or typewrite name and address of assignee)**

_____

the within Bond and all rights thereunder, and hereby irrevocably constitutes and appoints

_____

_____

Attorney to transfer the within Bond on the books kept for registration thereof, with full power of substitution in the premises.

Signature Guarantee:

_____

**NOTICE:** Signature(s) must be guaranteed by a member firm of the New York Stock Exchange or a commercial bank or trust company

_____

**NOTICE:** The signature to this assignment must correspond with the name of the registered owner as it appears upon the face of the within Bond in every particular, without alteration or enlargement or any change whatsoever.

_____

Please insert social security or other identifying number of Assignee.

C-11

## EXHIBIT D

## FORM OF REQUISITION

LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT
SPECIAL ASSESSMENT BONDS

The undersigned, a Responsible Officer of Landmark at Doral Community Development District (the "District") hereby submits the following requisition for disbursement under and pursuant to the terms of the Trust Indenture from the District to U.S. Bank National Association, as trustee (the "Trustee"), dated as of October 1, 2006 (the "Indenture"), (all capitalized terms used herein shall have the meaning ascribed to such term in the Indenture):

(A)     Requisition Number:

(B)     Name of Payee:

(C)     Amount Payable:

(D)     Purpose for which paid or incurred (refer also to specific contract if amount is due and payable pursuant to a contract involving progress payments, or, state Costs of Issuance, if applicable):

(E)     Fund or Account from which disbursement to be made:

The undersigned hereby certifies that:

1.      ☐      obligations in the stated amount set forth above have been incurred by the District,

or

        ☐      this requisition is for Costs of Issuance payable from the Acquisition and Construction Fund that have not previously been paid;

2.      each disbursement set forth above is a proper charge against the Acquisition and Construction Fund;

3.      each disbursement set forth above was incurred in connection with the acquisition and/or construction of the Project;

4.      each disbursement represents a Cost of the Project which has not previously been paid.

The undersigned hereby further certifies that there has not been filed with or served upon the District notice of any lien, right to lien, or attachment upon, or claim affecting the right to receive payment of, any of the moneys payable to the Payee set forth above, which has not been released or will not be released simultaneously with the payment hereof.

The undersigned hereby further certifies that such requisition contains no item representing payment on account of any retained percentage which the District is at the date of such certificate entitled to retain.

Attached hereto are originals of the invoice(s) from the vendor of the property acquired or the services rendered with respect to which disbursement is hereby requested.

LANDMARK AT DORAL COMMUNITY
DEVELOPMENT DISTRICT

By: _____
              Responsible Officer

CONSULTING ENGINEER'S APPROVAL FOR
NON-COST OF ISSUANCE REQUESTS ONLY

If this requisition is for a disbursement from other than Costs of Issuance, the undersigned Consulting Engineer hereby certifies that this disbursement is for a Cost of the Project and is consistent with: (i) the applicable acquisition or construction contract; (ii) the plans and specifications for the portion of the Project with respect to which such disbursement is being made; and (iii) the report of the Consulting Engineer, as such report shall have been amended or modified on the date hereof.

_____
Consulting Engineer

MIA-FS1\1733085v06\9/28/06\67581.010100