UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 11-35884-RAM |
| TOWN CENTER AT DORAL, L.L.C., et al., | Chapter 11 |
| Debtors. _____/ | (Jointly Administered) |

**EMERGENCY MOTION OF THE INDENTURE TRUSTEE FOR ENTRY OF AN ORDER DETERMINING THAT THE INDENTURE TRUSTEE IS A PARTY IN INTEREST AND MAY FULLY AND COMPLETELY PARTICIPATE IN CONFIRMATION MATTERS**

**Emergency Hearing Requested**

**The Indenture Trustee respectfully requests that the Court consider this motion on an emergency basis and set a hearing for Friday, January 6 as discovery commences on Monday, January 9. The Debtors have only recently made clear their intent to limit the Indenture Trustee's participation with respect to confirmation matters, and the Indenture Trustee is in need of the relief requested before discovery commences.**

U.S. Bank National Association, as indenture trustee with regard to the Bonds and under their Indenture as shown on the attached Exhibit A (the "Indenture Trustee"), moves for entry of an Order determining that the Indenture Trustee is a "party in interest" and may fully and completely participate in all matters concerning confirmation of the *Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Plan") filed by the Debtors. In support of this motion (the "Motion"), the Indenture Trustee states:

### Introduction

A "party in interest" has standing to object to confirmation under Section 1128(b) of the Bankruptcy Code. A "party in interest" is "anyone who has a pecuniary interest, practical stake, or legally-protected interest that could be affected by the bankruptcy proceeding" and that party

"is entitled to assert that interest to any issue to which it pertains." *In re Wells*, 227 B.R. 553, 559 (Bankr. M.D.Fla. 1998). In this case, there is no question that the Indenture Trustee, on behalf of the Bondholders,[1] has a pecuniary interest that would be directly affected by confirmation of the Plans. The Plan proposes to cram down the Bond Debt Assessments, which are the **sole** source of repayment for the Bonds. This impairment of the Bond Debt Assessments under the Plan necessarily impairs the Bonds. In addition, confirmation of the Plan would directly affect both the Indenture Trustee's legally-protected right to cause the District to foreclose and the Indenture Trustee's practical stake in honoring the explicitly conduit nature of the District. Thus, the Indenture Trustee is a "party in interest" and may fully and completely participate in the Confirmation Matters.

Notwithstanding that the Indenture Trustee is a "party in interest" with the right to fully and completely participate in the Confirmation Matters, the Debtors have stated that they will object to the Indenture Trustee's participation in any hearing on the Confirmation Matters because the Bondholders are asserted to be mere creditors of a creditor. This argument is a red herring. As Section 1128(b) makes clear, a "party in interest" may object to confirmation. Whether a party is a "party in interest" is not determined by formalistic analysis of the party's status as a "creditor." Indeed, the plan language of the Bankruptcy Code rejects this analysis, as under Section 1109(b) a creditor is only one of many parties that may be a "party in interest." Instead, who is a party in interest is determined by looking to the substance of how confirmation would affect the party's pecuniary interest, practical stake, or legally-protected interest.

The Indenture Trustee asks the Court to enter an order at this time, on an emergency basis, determining that the Indenture Trustee may fully and completely participate in the Confirmation Matters because depositions in connection with the Confirmation Matters are

---

[1] Capitalized terms used but not defined in this Introduction have the meaning ascribed to them below.

scheduled to begin on Monday, January 9. Although the Debtors have conceded that the Indenture Trustee may participate in the depositions, the Debtors have stated that they will seek to preclude the Indenture Trustee's participation in any hearing on the Confirmation Matters. This false dichotomy between participation in the depositions and the hearing is simply unworkable. If, as part of efficiently divvying up the work that is to be done in this case, the Indenture Trustee conducts or defends a deposition of a witness, it is simply logical and economical that the Indenture Trustee conducts or defends the examination of that witness at a hearing. Thus, that the Indenture Trustee is a "party in interest" with the right to fully and completely participate in the Confirmation Matters must be determined at this time.

## Jurisdiction and Venue

The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The relief requested in this motion is sought pursuant to 11 U.S.C. §§ 105(a), 1109(b), and 1128(b).

## Background

### A. Procedural Background

On September 19, 2011 (the "<u>Petition Date</u>"), the Debtors commenced these bankruptcy cases. The Debtors are developers and owners of several parcels of real property located in Miami-Dade County Florida, consisting of approximately 120 contiguous acres located on the east side of NW 107 Avenue and the north side of NW 58 Street, a majority of which is zoned TND (Traditional Neighborhood Development) with the remainder zoned IU-1 (for flex office development allowing for light industrial development) (the "<u>Property</u>").

The Debtors have filed the Plan; their *Motion to Value Collateral* [ECF No. 81] (the "<u>Motion to Value</u>"); and their *Disclosure Statement Relating to Joint Plan of Reorganization*

*Under Chapter 11 of the Bankruptcy Code* [ECF No. 108] (the "Disclosure Statement"). The Plan, the Motion to Value, and the Disclosure Statement, as amended, supplemented or otherwise modified, and any issue, matter, proceeding, hearing, or discovery in connection therewith are the "Confirmation Matters."

The Motion to Value is set for a hearing on January 18, and a hearing on the Disclosure Statement is set for a hearing on January 25. The deadline for objections to the Disclosure Statement to be filed is noon, January 19.

In light of this schedule, the parties have agreed to a number of depositions during the week of January 9th and the two days before the hearing on the Motion to Value, January 16th and 17th.

The Debtors have stated that neither the Indenture Trustee nor the Bondholders are "parties in interest." *See* **Exhibit** "**B**". The Debtors have stated that they object to either the Indenture Trustee or the Bondholders participating at any hearing on the Confirmation Matters. *See id.* The Debtors have also stated that they object to the Bondholders participating in any of the depositions. *See id.*

**B.     Bonds and Bond Debt Assessments**

The infrastructure of the Property was financed in great part by bond indebtedness.

To finance such infrastructure, a local unit of special purpose government was created pursuant to Chapter 190, Florida Statutes, the "Uniform Community Development District Act" (the "Act"), and, among other things, with respect to Landmark at Doral Community Development District (the "District"). The District issued and sold special assessment revenue bonds (the "Bonds"). The Bonds issued by the District funded public improvements that benefit the Property, such as roadways, utilities, earthwork and clearing, water and storm water

4

management, roadway lighting, landscaping, security, wetlands mitigation and monitoring, irrigation, and other infrastructure and improvements.

The Bonds are secured by, and paid from, special assessments (the "<u>Bond Debt Assessments</u>") levied by the District on the Property. Pursuant to Section 170.09 of the Florida Statutes, the Bond Debt Assessments constitute liens upon the assessed land coequal with the lien of all state, county, district, and municipal liens, superior in dignity to all other liens, titles, and claims, until paid.

Both before and after the Petition Date, the Debtors failed to pay Bond Debt Assessments levied by the District upon the Property. Accordingly, such unpaid Bond Debt Assessments are due and outstanding to the District, which in turn is indebted to the Indenture Trustee on behalf of the holders of the Bonds (the "<u>Bondholders</u>"). The Property is subject to the liens of the Bond Debt Assessments, levied by the District and pledged by the District to the Indenture Trustee, for the benefit of the Bondholders, to secure the payment of the principal of and interest on the Bonds.

C.   **Debtors' Letter to the District**

The Debtors have made a "demand that the current Board members resign in a manner that will allow for the election of new Board members without requiring the Landowners to seek appropriate Court intervention." *See* **Exhibit** "**C**."

## Relief Requested

The Indenture Trustee requests entry of an Order (i) granting the Motion; (ii) determining that the Indenture Trustee is a "party in interest" in respect of any issue, matter, proceeding, or otherwise that may in any way affect the Bond Debt Assessments; and (iii) determining that the Indenture Trustee may (x) object to any of the Confirmation Matters, (y) fully and completely

5

participate in any hearing on any of the Confirmation Matters, and (z) conduct document, expert, and any other discovery in connection with the Confirmation Matters.

## Basis for Relief

A. **A determination that the Indenture Trustee is a "party in interest" and may fully and completely participate in the Confirmation Matters is necessary.**

The Debtors have objected that the Indenture Trustee is not a "party in interest" with respect to the Confirmation Matters. *See* Ex. B. Although the Debtors have conceded that the Indenture Trustee may participate in the depositions, the Debtors have stated that they will seek to preclude the Indenture Trustee's participation in any hearing on the Confirmation Matters. *See id.* This false dichotomy between participation in the depositions and the hearing is simply unworkable. If, as part of efficiently divvying up the work that is to be done in this case, the Indenture Trustee conducts or defends a deposition of a witness, it is simply logical and economical that the Indenture Trustee conducts or defends the examination of that witness at a hearing. Thus, that the Indenture Trustee is a "party in interest" with the right to fully and completely participate in the Confirmation Matters must be determined at this time.

B. **The Indenture Trustee is a "party in interest" with respect to matters affecting the Bond Debt Assessments, and may fully and completely participate in the Confirmation Matters.**

The Bankruptcy Code provides that "[a] party in interest may object to confirmation of a plan." 11 U.S.C. § 1128(b). Because, as is explained below, the Indenture Trustee is a "party in interest" in respect of the Bond Debt Assessments and in the context of the Confirmation Matters, it may object to the Confirmation Matters and fully and completely participate in any hearing on any of the Confirmation Matters.

The term "party in interest" is not defined in the Bankruptcy Code, although it is used in 46 separate sections of the Bankruptcy Code. *In re River Bend-Oxford Assocs.*, 114 B.R. 111, 113 (Bankr. D. Md. 1990). This absence of a single, bounded definition of the term is

intentional. *Id.* The Bankruptcy Code does provide examples of who is a "party in interest" in a chapter 11 case, including a "creditor" and an "indenture trustee." *See* 11 U.S.C. § 1109(b) ("A party in interest, **including** the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.") (emphasis added). These examples are not, however, limiting. *See* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting"); *Wells*, 227 B.R. at 559 (list of examples in Section 1109(b) is not exhaustive).

In the absence of a single, bounded definition for "party in interest" courts have reasoned that who is a "party in interest" must be determined on a case-by-case basis. *Wells*, 227 B.R. at 559. This case-by-case analysis must be conducted "within the specific reorganization process context for which the determination is sought." *Id.* (quoting *River Bend-Oxford Assocs.*, 114 B.R. at 113). And consequently a party may be a "party in interest" in one context but not another. *Id.* (citing *In re Ofty Corp.*, 44 B.R. 479, 481 (Bankr. D. Del. 1984)).

In light of this case-by-case analysis, courts have also reasoned that the term "party in interest" is an "expandable concept," *id.* (quoting *River Bend-Oxford Associates*, 114 B.R. at 113), and "should be construed broadly to allow all parties affected by a chapter 11 proceeding to be heard," *id*. "Party in interest," therefore, is intentionally expandable and broad so as "to permit the involvement of those persons and interests which will be affected by the reorganization process." *River-Bend-Oxford Assocs.*, 114 B.R. at 113. The focus of this case-by-case, issue-specific analysis is whether a party has a sufficient stake in the outcome of the issue so as to require representation. *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). Thus, courts have held that "anyone who has a pecuniary interest, practical stake, or legally-protected interest that could be affected by the bankruptcy proceeding is entitled to assert that

7

interest to any issue to which it pertains." *Wells*, 227 B.R. at 559. *See also Amatex Corp.*, 755 F.2d at 1041 (future claimants were "parties in interest" because they had a practical stake in the outcome of an asbestos manufacturer's Chapter 11 case).

Here, confirmation of the Debtors' Plans will affect a pecuniary interest, practical stake, and legally-protected interest of the Indenture Trustee on behalf of the Bondholders for (at least) three reasons. First, the Debtors' proposed restructuring of the Bond Debt Assessments will directly affect the pecuniary interests of the Bondholders because the Bonds are solely payable from the Bond Debt Assessments. Second, the Plans will affect the Bondholders' right—a legally-protected interest—to cause the District to foreclose when the Bonds are not paid as and when due. Third, the Plans will affect the Bondholders' practical stake in the Bond Debt Assessments in light of the explicitly conduit nature of the District.

The conduit nature of the District is explicit in the Act, the Indenture, and the Debtors' actions. Under the Act the Bondholders and District may covenant so as to enable the Bondholders to ensure that the proceeds of the Bonds flow through the District to the Property and that the revenues from the Property flow through the District to the Bondholders. For example, the Act provides the following:

> Covenants. . . . all such covenants shall constitute valid and legally binding enforceable contracts between the District and the Bondholders, regardless of the time of issuance thereof. Such covenants may include, without limitation, covenants concerning the disposition of the bond proceeds; the use and disposition of the project revenues; the pledging of revenues, taxes and assessments; . . . restrictions on the sale or disposal of the assets and property of the District; the priority of assessment liens; the priority of claims by Bondholders on the taxing power of the District; . . . acceleration upon default; . . . and such other covenants as may be deemed necessary and desirable for the security of the Bondholders.

Fla. Stat. § 190.016(11).

> Trust Agreements. The resolution authorizing the issuance of the bonds or such trust agreement may pledge the revenues to be received from any projects of the

> District and may contain such provisions for protecting and enforcing the rights and revenues of the Bondholders as a board may approve, including, without limitation, covenants setting forth the duties of the district in relation to: acquisition, construction, reconstruction, improvement, maintenance, repair, operation, and issuance of any projects; the fixing and revising of the rates, fees, and charges; and the custody, safeguarding, and application of all monies and for the employment of consulting engineers in connection with such acquisition, construction, reconstruction, improvement, maintenance, repair, or operation.

Fla. Stat. § 190.017.

> Issuance of Certificates of Indebtedness Based on Assessment for Assessable Improvements; Assessment Bonds. . . .  In the event of the creation of the special fund and the issuance of such assessment bonds or other obligations, the proceeds of such certificates of indebtedness or assessments liens deposited therein shall be used only for the payment of the assessment bonds or other obligations issued as provided in this Section.  The District is authorized to covenant with the Bondholders for such assessment bonds or other obligations that it will diligently and faithfully enforce and collect all the special assessments and interest and penalties thereon for which such certificates of indebtedness or assessment liens have been deposited in or assigned to such fund; . . . to make any other covenants deemed necessary or advisable in order to properly secure the holders' assessment bonds or other obligations.

Fla. Stat. § 190.023(2).  As these examples show, and generally speaking, the Act allows the Bondholders to control the use of the proceeds of the Bonds, the use of the revenues of the Property, and the use of the assets and property of the District. The conduit nature of the District is confirmed by the Indenture.  For example, the Master Indenture provides:

> <u>Special Assessments; Lien of Indenture on Pledged Revenues</u>. **The Issuer hereby covenants that it shall levy Special Assessments**, and evidence and certify the same to the Tax Collector or shall cause the Property Appraiser to certify the same on the tax roll to the Tax Collector for collection by the Tax Collector and enforcement by the Tax Collector or the Issuer, pursuant to the Act, Chapter 170 or Chapter 197, Florida Statutes, or any successor statutes, as applicable, **to the extent and in the amount necessary to pay the Debt Service Requirement on Bonds issued and Outstanding hereunder**.
>
> **The Issuer shall**, within 5 Business Days of receipt thereof **pay to the Trustee** for deposit in the Series Account of the Revenue Fund established under Section 6.03 hereof **all Special Assessments received by the Issuer from the levy thereof on the District Lands subject to assessments for the payment of the related Series of Bonds**; provided, however, that amounts received as prepayments of Special Assessments shall be deposited directly into the Bond

9

> Redemption Fund established hereunder or in any account thereof established pursuant to the applicable Supplemental Indenture. The Issuer shall notify the Trustee at the time of deposit of any amounts received as prepayments of Special Assessments and shall identify the related Series of Bonds.
>
> **There are hereby pledged for the payment of the principal** or Redemption Price of **and interest on all Bonds** of each Series issued and Outstanding under the Indenture and all reimbursements due to any Credit Facility Issuer for any drawing with respect to such Series of Bonds on its Credit Facility, including, without limitation, interest thereon, as required under the terms of the applicable Credit Facility Agreement, **the Pledged Revenues**; provided, however, that unless otherwise specifically provided herein or in a Supplemental Indenture relating to a Series of Bonds with respect to the Pledged Revenues securing such Series of Bonds, the Pledged Revenues securing a Series of Bonds shall secure only such Series of Bonds and Bonds issued on a parity therewith and shall not secure any other Bonds or Series of Bonds. **The Pledged Revenues shall immediately be subject to the lien and pledge of the Indenture without any physical delivery hereof or further act**; provided, however, that the lien and pledge of the Indenture shall not apply to any moneys transferred by the Trustee to the Rebate Fund. The foregoing notwithstanding, to the extent provided in the Supplemental Indenture authorizing the issuance of a Series of Bonds, such Series of Bonds may be made payable from and secured by less than all of the Pledged Revenues, and any one or more of the provisions of this Master Indenture may be made inapplicable to such Series of Bonds, all as more specifically provided in the corresponding Supplemental Indenture; provided, however, that any such provisions shall apply only to the particular Series of Bonds authorized by such Supplemental Indenture and shall not affect in any manner whatsoever any Outstanding Series of Bonds.

Master Indenture § 6.1 (emphasis added).  Thus, the revenues from the Debtors' Property flow through the District to the Bondholders.

Moreover, the actions of the Debtors also show the conduit nature of the District.  Before the Petition Date, the Debtors had an active role in establishing this conduit financing structure. The Debtors caused the District to be created for the sole purpose of issuing the Bonds to finance infrastructure improvements in the Property.  After the Petition Date, the Debtors and Terra Landmark, LLC are seeking to force the resignation of the current members of the District's Board, and to install on the District's Board employees, insiders or other representatives of Terra's liking.

In sum, that the Debtors could and did work to cause the issuance of the Bonds, and that the revenues from the Property pay the Bond Debt Special Assessments which in turn must by statute and covenant be used to pay the Bonds, shows the explicitly conduit nature of the District, and shows the Bondholders' pecuniary, practical and legally-protected interests in the proposed restructuring of the Bond Debt Special Assessments. Because confirmation of the Debtors' Plan will affect a pecuniary interest, practical stake, and legally-protected interest of the Bondholders, the Indenture Trustee is a "party in interest." *See Wells*, 227 B.R. at 559. As a party in interest, the Indenture Trustee may fully and completely participate in the Confirmation Matters. *See* 11 U.S.C. § 1128(b).

**C. The Indenture Trustee is not deprived of its status as a "party in interest" and its right to fully and completely participate in the Confirmation Matters solely because it is allegedly not a creditor of the Debtors**

The Debtors are understood to assert that the Indenture Trustee on behalf of the Bondholders is merely a creditor of a creditor of the Debtors without a claim against the Debtors' estates and accordingly is not a "party in interest." Whether the Bondholders have a "claim" or are "creditors" within the meaning of the Bankruptcy Code is a red herring. The implicit proposition that a party in interest must hold a "claim" or be a "creditor" is simply inconsistent with the plain language of the Bankruptcy Code. Under Sections 1109(b) and 1128(b), a party may be a "party in interest" without being a creditor. As shown above, although a "creditor" is a "party in interest" under Section 1109(b), Section 1109(b) is not defining or limiting of the term "party in interest". The test does not depend on formalistic distinctions such as whether the party is a "creditor." The test looks at the substance of the relationship between the debtor and the party—*i.e.*, whether the party has a pecuniary interest, practical stake, or legally-protected interest in the issue on which the party seeks to be heard. *See, e.g., Wells*, 227 B.R. at 559. As

shown above, the Confirmation Matters, which have the ultimate purpose of restructuring the Bond Debt Assessments, directly affects the Bondholders' pecuniary interest.

The *Unofficial Committee of Zero Coupon Noteholders v. Grand Union Company (In re Grand Union Company)*, 179 B.R. 56 (D. Del. 1995), case is instructive. In the *Grand Union* case, the district court reversed the bankruptcy court's determination that bondholders of a chapter 11 debtor's parent could not participate in the debtor's chapter 11 case. In that case, the debtor's parent company, which was subject to its own, separate involuntary chapter 11 case, had issued notes in connection with an earlier recapitalization of the debtor. The parent company's sole significant asset was its equity interest in the debtor, and the debtor's parent and the debtor shared common officers and directors. When the parent company's bondholders objected to the debtor's financing motions, the bankruptcy court struck the objections on the grounds that the bondholders, as creditors of the debtor's shareholder, were not "parties in interest" under section 1109(b). The bankruptcy court also struck the objections on the grounds that the bondholders' interests were adequately represented by the debtors parent.

The district court reversed, reasoning that to be a "party in interest" the bondholder need not show that they were creditors of the debtor. *Id.* at 59. It held that the bondholders, notwithstanding that they were only creditors of the debtor's sole shareholder and did not have a "direct" claim to the debtor's assets, "have a practical stake in the outcome of these proceedings. That is, they would like to be repaid money loaned to [the debtor's parent], and under the plan currently on track in the bankruptcy court, they will, instead, be wiped out [as a result of the cancellation of the parent company's equity interest in the debtor]." *Id.*

The district court also rejected the bankruptcy court's previous finding that "to the extent the [bondholders] have an interest in [the] matter, the [debtor's parent] will properly represent

them." *Id.* In rejecting this finding, the district court reasoned that the interest of the debtor's parent seemed more aligned with the debtor than the bondholders. Therefore, the district court determined that "it may make more sense to allow the [bondholders] an opportunity to appear and speak independently." *Id.*

The *Grand Union* case is persuasive and should be followed. Here, only the intervening presence of the District prevents the Bondholders from having uncontested status as "direct" creditors of the Debtors by virtue of the Bonds. The District, however, is simply a conduit required by the Act to facilitate what is in substance and purpose an integrated transaction between the Debtors and the Bondholders to obtain below-market financing for the Debtors and tax-free interest for the Bondholders. Like the bondholders in *Grand Union*, the sole asset from which the Bondholder may seek payment of the Bonds is the Bond Debt Special Assessments.

Although the District is currently aligned with the Indenture Trustee and the Bondholders, that fact does not distinguish the *Grand Union* case for two reasons. First, it does not undercut the primary thrust of *Grand Union* that although the interest of the Indenture Trustee on behalf of the Bondholders is "indirect," the Indenture Trustee on behalf of the Bondholders has a pecuniary interest in the Confirmation Matters as they may affect the sole source of repayment of the Bonds. *See id.* at 59. Second, the Debtors and Terra are actively trying to engineer the resignation of the District's Board so as to replace the Board with representatives favorable to Terra, and adverse to the interests of the Bondholders. *See* Ex. B.

Thus, like in *Grand Union*, the facts of this case are distinguishable from the facts in a true "mere creditor of a creditor" case where the "indirect" creditor is an arm's length, independent third party having no special relationship with the debtor or where there is no relationship between the "direct" and "indirect" claims. The "direct" claim, the Bond Debt

13

Assessments, and the "indirect" claim, the Bonds, have a significant relationship. By statute and by covenant in the Indenture, they must "mirror" each other—*i.e.*, the Bond Debt Assessments must equal the principal and interest due on the Bonds. The Bond Debt Assessments are purposefully levied so as to comply with this requirement and to ensure that the cash flows from the Bond Debt Assessments equal the debt service requirements of the Bonds.

In light of these facts, the claims of the Debtors that the Bondholders are strangers to the Debtors without a connection or interest in the restructuring of the Bond Debt Assessments is revealed as a complete fiction. Indeed, contrary to the Debtors' fiction—perhaps the reason the Debtors cling fast to this fiction—the Bondholders, and the Indenture Trustee on their behalf, are the sole parties with a pecuniary interest in the treatment of the Bond Debt Assessments. Accordingly, the Indenture Trustee on behalf of the Bondholders is a "party in interest" and has a right to fully and completely participate in the Confirmation Matters.

## Conclusion

The Court should reject the Debtors' effort to elevate form over substance. *See Pepper v. Litton*, 308 U.S. 295, 304-05 (1939) ("The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done."). This principle is especially applicable here where the "party in interest" test analyzes the substance of the Bondholders' relationship to the Debtors by asking how the Bondholders' pecuniary interest, practical stake and legally-protected interest will be affected by the Confirmation Matters. Moreover, the Debtors took an active role in obtaining infrastructure improvement financing through the issuance of the Bonds and have benefited from the explicitly conduit structure of the District to obtain this financing from the Bondholders. They should not

now be allowed to disavow that structure so as to deprive the Indenture Trustee on behalf of the Bondholders of any say in what (if confirmed) will unquestionably impair the sole source of repayment of the Bonds.

WHEREFORE, the Indenture Trustee respectfully requests that the Court enter an Order granting the Motion.

Dated: January 5, 2012.                          Respectfully submitted,

**Greenberg Traurig, P.A.**
333 Avenue of the Americas
Miami, Florida 33131
Telephone: (305) 579-0730
Facsimile: (305) 579-0717

By:    /s/ John B. Hutton, III
    John B. Hutton, III
    huttonj@gtlaw.com
    Florida Bar No. 902160
    John R. Dodd
    doddj@gtlaw.com
    Florida Bar No. 38091

*Counsel to the Indenture Trustee*

## Certificate of Service

I hereby certify that on January 5, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF, which is incorporated here by reference, or by first class U.S. mail for those counsel or parties identified on the Service List below, who are not authorized to receive electronically Notices of Electronic Filing.

                                                  /s/ John B. Hutton, III
                                                  John B. Hutton, III

## Service List

Daniel Y. Gielchinsky
1450 Brickell Ave #2300
Miami, FL 33131

Michael Eckert
119 S. Monroe Street #300
POB 6526
Tallahassee, Florida  32301

Glenn Moses
100 SE 2nd Street
44th Floor
Miami, Florida  33131

Betty M Shumener
550 South Hope St #2300
Los Angeles, CA 90071

**Exhibit A**

**Landmark at Doral Community Development District (City of Doral, Florida) Special Assessment Bonds, Series 2006A and 2006B** (collectively, the "<u>Bonds</u>"), issued pursuant to that Master Trust Indenture and that First Supplemental Indenture, both dated as of October 1, 2006, and both by and between Landmark at Doral Community Development District and U.S. Bank National Association, as Trustee (as supplemented and/or amended from time to time in accordance with their terms, the "<u>Indenture</u>").

ORL298,029,126v2