UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                                                  Case No.  11-35884-RAM

Town Center at Doral, LLC, et al.,                                    Chapter 11

                Debtors.                                                          (Jointly Administered)
_____/

**DEBTORS' (A) OBJECTION TO EMERGENCY MOTION TO ALLOW PARTY-IN-INTEREST TO PARTICIPATE IN PENDING MOTIONS, MATTERS AND RELATED DISCOVERY AND (B) LIMITED RESPONSE TO THE EMERGENCY MOTION OF THE INDENTURE TRUSTEE FOR ENTRY OF AN ORDER DETERMINING THAT THE INDENTURE TRUSTEE IS A PARTY IN INTEREST AND MAY FULLY AND COMPLETELY PARTICIPATE IN CONFIRMATION MATTERS**

Town Center at Doral, LLC, Landmark at Doral East, LLC, Landmark at Doral South, LLC, Landmark Club at Doral, LLC, and Landmark at Doral Developers, LLC,[1] as debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Emergency Motion to Allow Party-in-Interest to Participate in Pending Motions, Matters and Related Discovery* [ECF 131] (the "Bondholder Motion" ) and limited response (the "Limited Response") to the *Emergency Motion of the Indenture Trustee for Entry of an Order Determining that the Indenture Trustee is a Party in Interest and May Fully and Completely Participate in Confirmation Matters* (the "Indenture Trustee Motion").  In connection therewith, the Debtors state as follows:

---

[1] The last four digits of each Debtors' tax identification number are: (i) Town Center at Doral, LLC [1866]; (ii) Landmark at Doral East, LLC [6616]; (iii) Landmark at Doral South, LLC [6676]; (iv) Landmark Club at Doral, LLC [6797]; and (v) Landmark at Doral Developers, LLC [6762].  The Debtors' mailing address is 701 W. Cypress Creek Road, Suite 303, Fort Lauderdale, Florida 33309.

# I.
# PRELIMINARY STATEMENT

On January 5, 2012, Florida Prime Holdings, LLC, as the sole bondholder under the Indenture (the "Bondholder"),[2] filed the Bondholder Motion, seeking a determination from the Court that the Bondholder is a party in interest in these cases and therefore, entitled to participate in the plan confirmation process. On the same day, U.S. Bank, NA, in its capacity as Indenture Trustee under the Indenture (the "Indenture Trustee"), filed the Indenture Trustee Motion, requesting the same relief for the Indenture Trustee.

The Debtors generally do not object to the recognition of the Indenture Trustee as a party in interest with respect to the Debtors' confirmation process, as requested in the Indenture Trustee Motion. In fact, the Debtors have already acknowledged the Indenture Trustee's right to participate in portions of the plan confirmation process, including certain discovery taken in connection therewith.

That being said, the Debtors are filing this Limited Response to clarify their overall position on the Indenture Trustee's role in these cases. The Indenture Trustee is not a creditor of the Debtors, but rather a creditor of a creditor of the Debtors, namely the Landmark at Doral Community Development District (the "District"). For the reasons set forth below, the Debtors do not dispute the status of the Indenture Trustee as a party in interest in connection with the confirmation of the Debtors' plan, with the right to participate in discovery associated with the confirmation process. However, the Debtors' acknowledgment of the Indenture Trustee's ability to be heard on certain issues in these cases does not mean that the Indenture Trustee may be heard on every issue arising in these cases, given that the Indenture Trustee is not a creditor of the Debtors.

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Bondholder Motion.

By contrast, the Debtors dispute the Bondholder's entitlement to the relief requested in the Bondholder Motion. The Bondholder is a mere beneficiary of a creditor of a creditor of the Debtors. The Bondholder, through the Indenture, has an agent and fiduciary to act on its behalf. Indeed, (i) the Bondholder is the only holder of bonds issued under the Indenture and therefore, the only party to whom the Indenture Trustee owes a fiduciary duty and (ii) the Indenture Trustee's sole role in these cases is to protect the Bondholder's pecuniary interests and legal rights. If the Bondholder wishes to participate in the plan confirmation process, it may readily do so through its agent and fiduciary, the Indenture Trustee.

One of the underlying purposes of the Bankruptcy Code is to provide a debtor with a safe haven in which it may effectively and efficiently restructure its balance sheet and financial affairs. That being said, courts have cautioned against designating too many parties as parties in interest where the risk of "potentially over-burden[ing] the reorganization process by allowing numerous parties to interject themselves into the case on every issue [would] thwart the goal of a speedy and efficient reorganization." *See, e.g.*, *In re Bankest, LC*, 321 B.R. 590, 595 (Bankr. S.D. Fla. 2005); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850 (Bankr. S.D.N.Y. 1989). This warning should particularly be heeded here, where the Bondholder's interests are already adequately represented by the Indenture Trustee, whose sole fiduciary duty redounds to the Bondholder. There is no need to interject an additional voice in these cases that simply echoes the positions of the Indenture Trustee.

## II.
## BACKGROUND

### A. General Background

1. On September 19, 2011 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

2.	On October 20, 2011, the United States Trustee appointed the Joint Committee of Creditors Holding Unsecured Claims in the Debtors' cases.

3.	The Debtors are in possession of their respective parcels of the Property (as defined below) as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.	Each of the Debtors is a Florida limited liability company.

5.	For a more complete description of the Debtor's assts and liabilities, the Debtors incorporate by reference the Jointly Administered Debtors' Chapter 11 Case Management Summary.[3]

### B.	The Property

6.	The Debtors are, collectively, the fee simple owners of land (approximately 117 contiguous acres) located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida, and air rights above such land (collectively, the "Property").  The Property consists of 16 individual tracts of land with substantial infrastructure development completed, but with no vertical construction other than an unfinished 4-level parking garage.

### C.	The Debtors' Obligations to the District

7.	The District has asserted a secured claim against the Debtors' estates in the approximate amount of $81.7 million.  The claim arises from and relates to resolutions issued by the District in its capacity as a quasi-governmental body under applicable Florida statutes. Pursuant to the provisions of Chapter 190 of the Florida Statutes, the District is a local unit of a special purpose government entity with authority to impose benefit and maintenance special assessments (the "Assessments") upon the Property owned by the Debtors, which constitute a lien against the Property.

---

[3] ECF No. 9.

8. Pursuant to Resolution No. 2005-11, adopted September 9, 2005 and Resolution No. 2006-08, adopted August 10, 2006, the District authorized the issuance, sale and delivery of special assessment bonds in an amount not to exceed $75 million. In connection therewith, on October 1, 2006, the District and the Indenture Trustee executed the Indenture. The Indenture provides for the issuance of $30.3 million of Special Assessment Bonds, Series 2006A and $41.8 million of Special Assessment Bonds, Series B (the "Bonds"). The proceeds of these bonds were used to fund the development of infrastructure on and improvements to the Property.

9. With respect to the Bonds, privity of contract only exists between the Indenture Trustee and the District, as the Debtors did not execute the Indenture nor did they obligate themselves to repay the Bonds. Pursuant to applicable Florida statutes and certain resolutions adopted by the District, the Debtors' obligation to pay the Assessments runs solely in favor of the District, and is a separate legal obligation from the District's obligation in respect of the Bonds.

**D.    The Debtors' Plan of Reorganization**

10. On December 18, 2011, the Debtors filed their *Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "Plan").[4] The Plan contemplates the Debtors' continued operation and development of the Property as reorganized debtors following the effective date of the Plan.

11. The Plan provides for the restructuring of the District's secured claim[5] which will enable the District to receive distributions over the remaining term of the Assessments equal to 100 percent of the outstanding principal balance of such secured claim, plus interest that will accrue at a rate less than the interest rate that is currently provided for in the Indenture (provided,

---

[4] ECF No. 94. On December 21, 2012, the Debtors filed the *Disclosure Statement Relating to Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code*. *See* ECF No. 108.

[5] The amount of the District's secured claim will depend upon whether the District makes an election under section 1111(b) of the Bankruptcy Code to have the entire amount of its claim deemed to be secured by the Property.

5

however, if the District makes an 1111(b) election, then the amount distributed to the District in respect of its claim will not exceed the aggregate amount of its claim). Presumably, the District will remit any distributions it receives to the Indenture Trustee for further distribution to the Bondholder. However, given that the Debtors are not parties to the Indenture, nor are they in privity with the Indenture Trustee and/or the Bondholder, the Debtors have no interest in or control over the District's actions.

### III.
### LIMITED RESPONSE TO THE INDENTURE TRUSTEE MOTION[6]

12. The Debtors do not generally object to the relief requested in the Indenture Trustee Motion, to the extent it seeks recognition of the Indenture Trustee's status as a party in interest with respect to the Debtors' confirmation process. Indeed, the Debtors have already acknowledged and consented to the Indenture Trustee's participation in certain aspects of the Plan process, including discovery that is occurring this week.

13. That being said, the Debtors want to clarify their position on the Indenture Trustee's role in these cases. The Indenture Trustee is not a creditor of the Debtors and is not entitled to any of the rights generally afforded creditors under the Bankruptcy Code. While it may participate in certain Plan-related discovery, the Indenture Trustee does not have any right to vote on the Plan nor to participate in distributions funded under the Plan.

14. A creditor of a creditor of a debtor has, at best, a limited role in a chapter 11 case. Only the party with direct privity with the debtor is entitled to fully participate in such case. *In re Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997) ("A creditor under the Code is one who has a claim against the debtor or the estate. The concept does not...encompass a creditor of one

---

[6] The Debtors expressly reserve their rights in connection with any request by the Indenture Trustee or the Bondholder to be granted standing as a creditor or party in interest status with respect to any other matter arising in these cases.

6

of the debtor's creditors").[7]

15.     This is particularly true with respect to municipalities that have issued bonds to finance the development of a debtor's property.  The Bankruptcy Appellate Panel for the Ninth Circuit faced this issue squarely in the *Ritter Ranch* chapter 11 case, which involved a debtor that owned property for which the City of Palmdale had financed the development and construction of public facilities pursuant to California's Mello-Roos Community Facilities Act of 1982, Cal. Govt. Code §§53311, *et. seq.* (the "California Act").  *In re Ritter Ranch Dev., LLC*, 255 B.R. 760, 761 (B.A.P. 9th Cir. 2000).  In *Ritter Ranch*, the City of Palmdale issued $50 million of bonds, which were payable solely from special tax revenues earned from the Property and from special accounts holding such revenues, proceeds of the Bonds themselves and earnings on the funds held in the accounts, all of which were pledged as security for the Bonds.  *Id*. at 761-762. Similar to the liens in favor of the District to secure the financing obtained by the Debtors under the Uniform Community Development District Act of 1980, Fla. Stat. §§190.001 *et. seq.* (the "Florida Act"), the debtor in *Ritter Ranch* subjected its property to liens, as provided in the California Act, to secure the payment of the special taxes.  *Id.*  Under both the California Act and the Florida Act, only the governmental entity which advanced the financing has the ability and obligation to foreclose upon the debtor's property following a default in the payment of special taxes or special assessments, as applicable.  *Id.* at 764 and Fla. Stat. §190.026.

---

[7] *See also In re Refco Inc.*, 505 F.3d 109, 110 (2d Cir. 2007) (holding that investors in investment fund did not have standing to object to debtors' settlement, when investors were merely creditors of debtors' creditor); *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983) (holding that a mortgagee bank is not a party in interest entitled to seek relief from the automatic stay where only the mortgagor had a right to payment from the debtor); *In re Huggins*, 2011 WL 5509091 at *2-3 (Bankr. E.D. Tenn. Nov. 10, 2011) (denying standing to a creditor of a creditor to object to a proposed settlement notwithstanding the allegation of a pecuniary interest in the outcome of the settlement); *In re Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (denying standing to a lien creditor of the non-debtor party to an executory contract that was to be rejected even though lien creditor's pecuniary interests would be eliminated upon rejection because lien creditor was merely a creditor of a creditor).

16. In *Ritter Ranch*, the issue of the status of the bondholders arose in the context of a request by the debtor to treat the bondholders as creditors so that the debtor's plan could modify the payment terms of the bonds. In affirming the bankruptcy court's order denying the debtor's motion to designate bondholders as creditors of the estate, the Ninth Circuit BAP stated:

> Ritter Ranch argued to the bankruptcy court that under state law the Bondholders have a 'right to payment' and a right to initiate a foreclosure action against the Property. This is not accurate. The Bondholders themselves cannot demand payment from any owner of the Property and cannot foreclose. They can insist that the City collect the special taxes and foreclose but they cannot do so themselves. The City's lien is for special taxes but not for indebtedness under the Bonds. When the City forecloses, title goes to the City not to the Bondholders.

*In re Ritter Ranch Dev., LLC*, 255 B.R. 760, 764 (B.A.P. 9th Cir. 2000).

17. The only party to whom the Debtors are obligated in connection with the District project funding is the District. The District's relationship with the Indenture Trustee is outside the purview of this Court and these cases. As one court has noted and many have quoted:

> A creditor of one of the debtor's creditors...may be deeply concerned about the bankruptcy proceeding, since the debtor's ability to pay its creditor may affect the creditor's ability to pay, in turn, its creditor. But the party's legal rights and interests can only be asserted against the debtor's creditor, not against the debtor, and hence it is not a "party in interest" under the Second Circuit's view of section 1109....

*In re Martin Paint Stores*, 207 B.R. at 61 (denying standing to landlord's non-debtor tenant to object to landlord's settlement with debtor, notwithstanding non-competition clause in non-debtor tenant's lease with landlord).

18. Under circumstances such as these, the only status the Indenture Trustee may be afforded is a designation as a party in interest to participate in the confirmation process pursuant to Bankruptcy Code section 1128(b).

16. In *Ritter Ranch*, the issue of the status of the bondholders arose in the context of a request by the debtor to treat the bondholders as creditors so that the debtor's plan could modify the payment terms of the bonds. In affirming the bankruptcy court's order denying the debtor's motion to designate bondholders as creditors of the estate, the Ninth Circuit BAP stated:

> Ritter Ranch argued to the bankruptcy court that under state law the Bondholders have a 'right to payment' and a right to initiate a foreclosure action against the Property. This is not accurate. The Bondholders themselves cannot demand payment from any owner of the Property and cannot foreclose. They can insist that the City collect the special taxes and foreclose but they cannot do so themselves. The City's lien is for special taxes but not for indebtedness under the Bonds. When the City forecloses, title goes to the City not to the Bondholders.

*In re Ritter Ranch Dev., LLC*, 255 B.R. 760, 764 (B.A.P. 9th Cir. 2000).

17. The only party to whom the Debtors are obligated in connection with the District project funding is the District. The District's relationship with the Indenture Trustee is outside the purview of this Court and these cases. As one court has noted and many have quoted:

> A creditor of one of the debtor's creditors...may be deeply concerned about the bankruptcy proceeding, since the debtor's ability to pay its creditor may affect the creditor's ability to pay, in turn, its creditor. But the party's legal rights and interests can only be asserted against the debtor's creditor, not against the debtor, and hence it is not a "party in interest" under the Second Circuit's view of section 1109....

*In re Martin Paint Stores*, 207 B.R. at 61 (denying standing to landlord's non-debtor tenant to object to landlord's settlement with debtor, notwithstanding non-competition clause in non-debtor tenant's lease with landlord).

18. Under circumstances such as these, the only status the Indenture Trustee may be afforded is a designation as a party in interest to participate in the confirmation process pursuant to Bankruptcy Code section 1128(b).

## IV.
## OBJECTION TO THE BONDHOLDER MOTION

19. The Bondholder Motion is a prime example of the burden which will be visited on the Debtors' estates if this Court grants the Bondholder Motion. Notwithstanding the simultaneous filing of the Indenture Trustee Motion, the express provisions of the Indenture recognizing the status of the Indenture Trustee as the sole entity empowered to enforce the bond indebtedness, and the status of the Bondholder as a beneficiary of a creditor of a creditor of the Debtors, the Bondholder also demands that the Court recognize the Bondholder as a party in interest in these cases. While the Indenture Trustee may be a party in interest in certain aspects of the Debtors' cases, there is absolutely no basis for the Bondholder, which is the only holder of the Bonds, to receive the same designation.

20. An indenture trustee's paramount role in a chapter 11 case is to protect bondholders' pecuniary interests and legal rights. Where, as here, there is only one bondholder, the indenture trustee's fiduciary duty redounds solely to the Bondholder. This is a significant benefit to the Bondholder, as much indenture trustee jurisprudence addresses an indenture trustee's conflicting fiduciary duties to different bondholders. The Bondholder ignores the advantage it has with its Indenture Trustee who is contractually obligated to perform the Bondholder's bidding without conflicting demands, and chooses to insist upon the superfluous and duplicative relief requested in the Bondholder Motion.

21. The Bondholder quotes extensively from the Indenture in the Bondholder Motion to describe the relationship between the District and the Bondholder, while attempting to use such relationship as a basis for designating the Bondholder as a party in interest in these cases.[8] Unfortunately, the Bondholder's argument provides a greater basis for granting the relief sought

---

[8] *See* Para. 31-36 of the Bondholder Motion.

9

in the Indenture Trustee Motion than it does for the Bondholder Motion.

22. In virtually all of the sections cited by the Bondholder in support of its argument, the District's rights, obligations and duties run to the Indenture Trustee, and not to the Bondholder. For instance, Article X of the Indenture provides that upon the occurrence of an event of default, the Indenture Trustee may, in its discretion and at the written request of a majority of the bondholders, commence an action against the District.[9]

23. Moreover, the Bondholder, in reviewing the operative provisions of the Indenture in the Bondholder Motion, conveniently overlooks section 10.07, <u>Limitations on Actions by Bondholders</u>, which provides:

> No Bondholder shall have any right to pursue any remedy hereunder unless (a) the Trustee shall have been given written notice of an Event of Default, (b) the Holders of at least a majority of the aggregate principal amount of the Outstanding Bonds of the applicable Series shall have requested the Trustee, in writing, to exercise the powers hereinabove granted or to pursue such remedy in its or their name or names, (c) the Trustee shall have been offered indemnity satisfactory to it against costs, expense and liabilities, and (d) the Trustee shall have failed to comply with such request within a reasonable time.

Pursuant to Section 10.07 of the Indenture, the Bondholder is not empowered to pursue any remedy under the Indenture unless, *inter alia*, the Trustee fails to act in accordance with the Bondholder's request. Given the active role of the Indenture Trustee in these cases, the Bondholder would be hard-pressed to demonstrate that the Indenture Trustee has failed to comply with its requests to pursue remedies under the Indenture.

24. Although there is privity of contract between the District and the Indenture Trustee vis-à-vis events of default and remedies therefor under the Indenture, there is no privity between the District and the Bondholder. At all times, the Indenture Trustee is charged with representing and protecting the interests of the Bondholder. *See Finisar Corp. v. U.S. Bank Trust*

---

[9] *See* Exhibit D to the Bondholder Motion.

*Nat'l Assoc.*, 2008 WL 2466014 (N.D. Cal. May 27, 2008) ("Under the Indentures, the Trustee directly represents the Noteholders' interests. ... If an Event of Default occurs and is continuing, the Indenture charges the Trustee with pursuing any available remedy to collect payment, if such action would be reasonable. ... And when the Trustee does so, the Noteholders may not proceed *ultra vires*."); *In re Delta Airlines, Inc.*, 370 B.R. 537, 547-548 (Bankr. S.D.N.Y. 2007) (in connection with an Indenture that contains provisions remarkably similar to that between the Indenture Trustee and the Bondholder, the court noted, "The Indenture clearly vests in the Bond Trustee alone the power to exercise the Bondholders' remedies in the event of a default...."); *accord In re Hibernia*, 733 F.2d 1403, 1407 (10th Cir. 1984) ("The lead [bank] is the only secured party. The 'participants' can look solely to the lead for satisfaction of their claims because they are not themselves creditors of the borrowers and cannot assert creditor claims against the borrowers.").

25. When the Bondholder purchased the Bonds, it agreed to be bound by the terms of the Indenture, including the rights and powers afforded the Indenture Trustee thereunder. In fact, the bonds expressly provide, "[t]he owner of this Bond shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Indenture or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Indenture."[10]

26. There is no reason to shift the balance of rights and powers between the Indenture Trustee and the Bondholder at this time, nor does this Court have the power to do so. "The [Indenture] Trustee and the [Bondholder] share a precisely tailored common legal interest in enforcing the provisions of the Indenture" and that is sufficient to protect the Bondholder's

---

[10] *See* Exhibit E to Bondholder Motion, at pp. 37, 48 of 55.

interest in these cases. *Finisar Corp. v. U.S. Bank,* 2008 WL 2466014.[11]

27. Moreover, granting the relief sought in the Bondholder Motion would multiply the administrative expenses of the Debtors in these cases by adding pleadings that merely duplicate the positions of the Indenture Trustee to which the Debtors would have to respond. "It would inevitably serve to delay and complicate [the] bankruptcy cases [if] the Debtors [we]re forced to litigate issues with additional parties who previously were contractually obligated to speak with one voice . . . ." *In re Innkeepers USA Trust*, 448 B.R. at 144. The Indenture provides for the Bondholder to speak through the voice of the Indenture Trustee, and this Court should not countenance additional delay and expense by empowering the beneficiary of a creditor of a creditor to separately appear in these cases.

28. Granting the Indenture Trustee Motion to the extent necessary to permit the Indenture Trustee to participate in the confirmation process and designating the Indenture Trustee as a party in interest in connection with the confirmation process resolves all of the issues raised in both the Indenture Trustee Motion and the Bondholder Motion. There is no basis to grant the separate relief requested in the Bondholder Motion, as the Bondholder is not empowered to separately pursue remedies under the Indenture and is merely a beneficiary of a creditor of a creditor of the Debtors. Moreover, granting the Bondholder Motion would only serve to drive up the administrative costs of these bankruptcy cases and further complicate and delay what is likely to be a difficult plan confirmation process.

---

[11] To the extent the Bondholder is concerned that the Indenture Trustee might not, at some point in the future, adequately represent its interests, the Bondholder has sufficient remedies under the Indenture. *See In re Innkeepers USA Trust*, 448 B.R. 131, 145 (Bankr S.D.N.Y. 2011) ("Nor does [the participant's] contention that [the agent] is 'hopelessly and impermissibly conflicted' and engaging in 'self-enriching' behavior change the result. If [the participant] believes that to be the case, then [the agent] is surely acting at its own peril and is answerable to [the participant] if [the participant] pursues an action for breach of the servicing agreement.")

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order (i) denying the Bondholder Motion, (ii) granting the Indenture Trustee Motion solely to the extent the Indenture Trustee is seeking standing as a party in interest with respect to the confirmation process, (iii) expressly reserving the Debtors' rights with respect to any request by the Indenture Trustee or the Bondholder to be granted standing as a creditor or party in interest status with respect to any other matter arising in these cases, and (iv) granting such further relief as the Court finds just and proper.

Dated: January 11, 2012

>  **I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this Court set forth in Local Rule 2090-1(A).**
>
> BILZIN SUMBERG BAENA PRICE & AXELROD LLP
> *Counsel for the Debtors*
> 1450 Brickell Avenue, Suite 2300
> Miami, FL 33131
> Telephone: (305) 374-7580
> Facsimile: (305) 375-7593
>
> By:   /s/ Mindy A. Mora
>       Mindy A. Mora
>       Fla. Bar No. 678910
>       mmora@bilzin.com
>       Tara V. Trevorrow
>       Florida Bar No. 0030959
>       ttrevorrow@bilzin.com