EXHIBIT B

**APPRAISAL REVIEW**

of the

**SUMMARY APPRAISAL REPORT**

prepared by

Lee H. Waronker, MAI, SRA
Carlos A. Diez
File #6891

Date of Valuation
December 11, 2011

Property Appraised
**Town Center at Doral, LLC, et al, Debtors**
117 Acres of Vacant Land Northeast of
N.W. 58th Street and N.W. 107th Avenue
Doral, Florida  33178

**United States Bankruptcy Court
Miami Division
Case No. 11-35884-RAM Chapter 11**

**PREPARED FOR THE INTENDED USERS:**
- the Fact Finder
- the Representatives and their
  Counsel of U.S. Bank
- Community Development District
- Florida Prime Holdings, LLC

Integra File No. 123-2012-0001

**INTEGRA** Realty Resources

*LOCAL EXPERTISE...NATIONALLY*



**UNITED STATES BANKRUPTCY COURT**
**MIAMI DIVISION**

In re:

| | |
|---|---|
| **Town Center at Doral, et al.** | **CHAPTER 11** |
| **Debtor** | Case No. 11-35884-RAM |
| _____/ | |

**APPRAISAL REVIEW REPORT**
of a
**SUMMARY APPRAISAL REPORT**
prepared by
**LEE H. WARONKER, MAI, SRA AND CARLOS A. DIEZ**
Dated December 20, 2011 with an Effective Date of December 11, 2011
The Appraisal Reviewer is
**MICHAEL Y. CANNON, MAI, SRA, ASA, FRICS, CRE**
Executive Director, Integra Realty Resources – Miami/Palm Beach

January 11, 2012

**INTRODUCTION**

I have been retained by the law firms representing the collective interests of U.S. Bank as Indenture Trustee, the Landmark at Doral Community Development District, and the bondholders, Florida Prime Holdings that have encumbered interests in the debtor's entities.

**INTENDED PURPOSE**

The intended purpose of this appraisal review report is to set forth my independent and unbiased opinion as to the credibility of the appraiser's work product from a technical appraisal point of view, compliance with Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Foundation, and if the appraiser's analysis has been conducted under generally accepted appraisal methods and techniques.

**INTENDED USE AND USER**

The intended use and user of my appraisal review contained in this report is for the court as fact finder in its deliberations relating to the Chapter 11 Bankruptcy of the Debtor and my client's representatives and their counsel of U.S. Bank as Indentured Trustee for the Bondholders, Florida Prime Holdings, and the Landmark Community Development District.

This Appraisal Review Report identified by the Uniform Standards of Professional Appraisal Practice (USPAP) Standard Rule 3 is limited for the use by the intended users only.

**DEBTOR ENTITIES**
- Town Center at Doral, LLC
- Landmark at Doral East, LLC
- Landmark at Doral South, LLC
- Landmark Club at Doral, LLC
- Landmark at Doral Developers, LLC

**DEBTOR'S AND COMMUNITY DEVELOPMENT DISTRICT'S REAL PROPERTY**

Portions of a 120± acre parcel subdivided into three (3) components: the North Parcel is subdivided into buildable lots and blocks for residential townhomes and garden apartments; the south Parcel is subdivided into a village for retail stores with residential apartments and offices above and an existing nearing completion parking garage to service the future uses; and the East Parcel is zoned for office and warehouse uses. The infrastructure and public parking garage was funded by the District and the debtor's lender and is over 72% complete and in place. The Landmark Community Development District (CDD) is the owner of the roadways and the public parking garage. Special Assessment Bonds Series 'A' and 'B' 2006 totaling $71,500,000 encumber all of the debtor's property via the CDD Bonds..

**LOCATION**

The 117.94± acre subdivision was approved for development by the City of Doral, Florida, for a mixed-use development of townhomes, apartments, retail and office and a parcel for office or warehouse use. The location is N.W. 58th Street and N.W. 66th Street fronting N.W. 107th Avenue and N.W. 102 Avenue, in the City of Doral, Miami-Dade County, Florida.

Access to the Landmark at Doral subdivision is provided from N.W. 107th Avenue at N.W. 66th Street from the west, N.W. 102nd Avenue at N.W. 66th Street from the East, and N.W. 58th Street from the south.

**DEVELOPMENT**

The approved master development plan is to contain 1,109 residential dwelling units consisting of 322 multi-family units located over retail space, 292 townhomes, 495 garden apartment units, 94,700± square feet of retail space, 93,346± square feet of office space over the retail space, a 929 space parking garage, and 230,000± square feet of office or warehouse space on the identified east 'office outparcel' site.

The land development's infrastructure which includes roadways, storm water management, water distribution system, sanitary sewer system and other utilities to the subdivided and platted sites are installed. The roadways, which are owned by the district, require a second layer of paving. The 929 space public parking garage structure and land also owned by the district has been built to its final stage of construction and is intended to service the retail/office and apartment components within the village

IRR
Integra Realty Resources
Miami/Palm Beach

component of the south parcel. A 12,000± square foot recreation facility located within the north parcel owned by the debtor is to service the townhome component.

## PURPOSE

The purpose of this appraisal review is to communicate an unbiased and independent professional appraisal opinion about the quality of the appraiser's analysis, work product, and the appraisal methodology. I was not engaged to opine upon an appraised value opinion.

## SCOPE OF WORK

The scope of work for this appraisal review is a technical analysis of the appraiser's Summary Appraisal Report and the appraiser's work file material produced on December 30, 2011 and received by the reviewer on January 5, 2012, and on January 6, 2012.

I have conducted independent market analysis for this appraisal review which is contained in my work file.

## APPRAISAL REVIEWER'S DATES OF ENGAGEMENT

The date that I was formally engaged was December 21, 2011. However, I was retained by oral agreement in October, 2011, to perform appraisal related consulting services under USPAP Standard Rule 4.

This reviewer's opinions as an expert appraiser and market analyst can also be opined orally at trial, if requested.

## CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The facts and data reported by this reviewer in the appraisal review and the consulting process are believed to be true and correct.

- The analyses, opinions, and conclusions for my report are limited by the assumptions and limiting conditions stated herein, and are based upon my personal, impartial, and unbiased professional analyses, conclusions, and opinions.

- I have no present or prospective interest in the property that is the subject of this appraisal review and have no personal interest with respect to the parties involved.

- I have no bias with respect to the property that is the subject of the work under this appraisal review or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting any predetermined results.

- My compensation is not contingent on any action or any event resulting from the analysis opinions, or conclusions for this appraisal review or for its intended use and users.

- My analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with the requirements of the Code of Professional Ethics and Canons of Professional Appraisal Practice of the Appraisal Institute, and the Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Foundation.

- The use of the appraisal review report is subject to the requirements of the State of Florida relating to review by the Florida Real Estate Appraisal Board and requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- Glen Mowatt, Market Researcher, Charles Badell, State-Certified General Appraiser, and Bruno Picasso, Market Analyst, provided certain market data research and financial analysis reviews which were of assistance to the undersigned.

- I have not previously performed valuation or appraisal consulting services in connection with the subject properties.

- I have recently and previously made inspections of the subject property and the surrounding sub-market area.

- As of the date of this appraisal review, I have completed the continuing education programs required by the Appraisal Institute, the American Society of Appraisers and the State of Florida.

I reserve the right to reconsider comments stated in this appraisal review report if factual information is received that warrants such reconsideration.

The appraisal review and technical appraisal review analysis, comments and opinions stated herein are unbiased toward the appraiser and are an independent exercise of my professional appraisal judgment and experience.

**INTEGRA REALTY RESOURCES – MIAMI/PALM BEACH**

Michael Y. Cannon, MAI, SRA, ASA, FRICS, CRE
Executive Director
State-Certified General Real Estate Appraiser
FL Certificate No. RZ684

## EXECUTIVE SUMMARY

The following is an Executive Summary of my findings, conclusions and professional appraisal opinions.

Based on my independent market research and analysis as compared to the appraiser's work product as reported in the appraiser's Summary Appraisal Report, work file, and the testimony of Mr. Waronker at the taking of his deposition, I find that the appraiser did not report upon relevant documents contained in their work file papers surrounding the Landmark at Doral development.

Mr. Waronker relied upon Mr. Carlos A. Diez, an associate of his firm who recently received his state-certified general real estate appraiser certificate on November, 12, 2010, after being a trainee appraiser since October 18, 2007.

Mr. Waronker is a knowledgeable appraiser and enjoys a good appraisal reputation.  However, he stated at his deposition that he could not remember his subdivision appraisal experience and it appears that Mr. Diez lacks such experience for this complex appraisal assignment.

The Uniform Standards of Professional Appraisal Practice (USPAP) requires that an appraiser be competent to perform the assignment.  The appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently.

USPAP's Competency Rule states that an appraiser's familiarity with a specific type of property or asset, a market, a geographic area, an intended use, specific laws and regulations, or an analytical method must be developed for a credible result.

If the appraiser cannot complete such an appraisal competently, the appraiser must disclose this to the client before accepting an assignment, take all steps necessary or appropriate to complete the assignment competently and describe, in the report, the lack of knowledge and/or experience and the steps taken to complete the assignment competently.

If the appraiser cannot adhere to the foregoing, the appraiser must decline or withdraw from the assignment.

USPAP Ethics Rule requires that the appraiser promote and preserve the public trust that is inherent in appraisal practice by observing the highest standards.  The appraiser must not:

- misrepresent
- permit an employee to communicate a misleading report
- use or rely on unsupported information
- and must maintain a work file that contains all other data, information and documentation necessary to support the appraiser's opinions and conclusions

### FINDINGS AND CONCLUSIONS

I find that the appraiser did not adhere to the foregoing USPAP requirements or employ proper appraisal valuation methods and techniques.  The appraiser's reported information, conclusions and opinions ignore the existing subdivision of the land, the ownership interests conveyed to the district, and the encumbrances by the Landmark at Doral Community Development District. This material fact error alone results in a flawed, non-credible appraised value opinion.



The foregoing is based upon my technical read of the appraiser's Summary Appraisal Report, work file papers and testimony at deposition.

The appraiser's opinion stated in their report cannot be considered Market Value (as defined), as reliance throughout the report was given to the Terra Group representatives who failed to disclose to the appraiser other relevant facts surrounding the Landmark at Doral development.

Therefore, the appraiser's methodology and concluded opinions were based upon inappropriate information and sale transaction data that contained mistakes, as acknowledged by the appraiser at the taking of his deposition.

The Residual Land Value Analysis was found to be flawed, and was stated by the appraiser to only be a check of reasonableness for the errored Sales Comparison Approach.

The appraiser's Residual Land Value Analysis was based upon an unsupported hypothetical development concept that differed from the existing condition in place for the Landmark at Doral development concept and also differed from the Terra Group's Preliminary Conceptual Development Plan. The appraiser failed to incorporate a deduction for the cost of removing the existing infrastructure and the cost for the replacement of the existing land/site improvements (i.e. infrastructure), in addition to the cost to build the single family and townhome products stated to be the Highest and Best Use.

This reviewer checked Marshall Swift's cost to build the single family and townhome products stated by the appraiser at his deposition, and concurs with the cost for construction which does not include the 'soft cost' stated to be included on page 117.

USPAP Standard Rule 1 requires the appraiser, when appraising proposed improvements (which the Residual Land Value Analysis was intended to incorporate), i.e. a subdivision valuation analysis, an appraiser must examine and have available for future examination, plans, specifications, or other documentation sufficient to identify the extent and character of the proposed improvements.

The appraiser failed to incorporate such required documents and material that are necessary for a credible analysis and opinion. The appraiser also failed to document the housing unit types stated to be developed upon the land, and totally ignored any of the existing land improvements in place and existing infrastructure.

The Land Residual presented did not address that the existing land improvements and infrastructure and its costs would have to be removed and then reinstalled for the appraiser's development concept of 232 townhomes and 232 single family priced at $407,000 and $437,500 respectively. This is a gross material error in logic and reasoning of appraisal methodology.

Furthermore, USPAP Standard Rule 1 requires the appraiser to state the following: (f) Identify any extraordinary assumptions necessary in the assignment.



**USPAP Comment**: An extraordinary assumption may be used in an assignment only if:

- It is required to properly develop credible opinions and conclusions;
- The appraiser has a reasonable basis for the extraordinary assumption;
- Use of the extraordinary assumption results in a credible analysis; and
- The appraiser complies with the disclosure requirements set forth in USPAP for extraordinary assumptions.

The appraiser did not state that their analysis and opinion was based upon an extraordinary assumption.

USPAP Standard Rule 1 - (g) Identify any hypothetical conditions necessary in the assignment;

**USPAP Comment**: A hypothetical condition may be used in an assignment only if:

- Use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison;
- Use of the hypothetical condition results in a credible analysis; and
- The appraiser complies with the disclosure requirements set forth in USPAP for hypothetical conditions.

**USPAP Standard Rule 1-3 (a) states:**

When necessary for credible assignment results in developing a market value opinion, an appraiser must:

(a)    identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations, economic supply and demand, the physical adaptability of the real estate, and market area trends.

**A hypothetical condition means that the existing condition is not factored and that the hypothetical condition may not be true.**

CONCLUSION
Based upon the foregoing and stated examples in the following appraisal review of the appraiser's report, I find that the appraiser failed to address relevant market factors that are commonly known and failed to report upon documents and material contained in the appraiser's work file or documents that are of public record and are material to the Landmark at Doral development.

It appears that the appraiser based opinions solely upon misguided information, from a representative of the Terra Group, which resulted in unsupported or questionable assumptions for the appraiser's unsupported Highest and Best Use determination.

The appraisal methodology employed is deemed flawed and inappropriate, in addition to the admitted mistakes and certain misstatements which result in opinions that are not credible.



Integra Realty Resources
Miami/Palm Beach

## TECHNICAL APPRAISAL REVIEW

On the following pages, this reviewer will comment upon the representative statements made by the appraiser, as to the adequacy and relevancy and the appropriateness of the appraiser's methods and techniques employed.

If this reviewer concurs with the appraiser's methods, techniques and opinion, this reviewer will so state. Conversely, if this reviewer does not concur, this reviewer will also so state under Reviewer's Comments.

**The appraiser states (transmittal page 2):**
"Some site work was completed, including partial construction of some of the interior roads, and the parking garage was partially completed."

**REVIEWER'S COMMENT**
The appraiser's statement is misleading as the site work i.e. infrastructure for the land development, parking garage and recreation facilities was substantially complete and in place:

$71,500,000 was funded by the Special Assessment Series 2006 A and B Bonds; of which $58.9 million was funded for the land development's infrastructure and public garage. Approximately 72% of the infrastructure and public parking garage is currently in place.

As of November 9, 2009, the costs to complete totaled $2,917,361 for the district, and $12,938,385 was obligated by the debtor, totaling $15,855,746 of the original budgeted 2006 costs totaling $74,872,733. The requisition costs funded in 2009 totaled $56,853,472.

**The appraiser states (transmittal page 2):**
"The partially completed improvements contribute no significant value, as they are specific to a previous development plan that failed. Any utility would likely be offset by the construction cost of reconfiguring them to suit a future development plan."

**REVIEWER'S COMMENT**
The appraiser's statement that "any utility would likely be offset by the construction costs of reconfiguring for a future development plan" is not factored nor quantified in the appraiser's analysis as reported.

**The appraiser states (page 11)** that the land area of 117.025 acres is based upon the Miami-Dade County Property Appraisers' records.

**REVIEWER'S COMMENT**
The Miami-Dade County Property Appraisers' records report the "lots size" by acres or square foot under five (5) folio numbers which have not been updated to address the existing subdivision of the lots and blocks in place.

The appraisers failed to state that the analysis, opinions and conclusions are also subject to the requirements of the Appraisal Institute's Code of Ethics: Canons 1-6.


Integra Realty Resources
Miami/Palm Beach

**The appraiser states on page 17** "…adjacent landfill / recycling facility and the odors that emanate from it."

**REVIEWER'S COMMENT**
This statement is also repeated throughout the report without quantification and documentation that such odors are emanating.

The aerial photo on this page depicts the subject's south parcel only and the adjacent Doral Cay Parcel purchased by a Terra Entity located on an adjacent parcel to its east fronting N.W. 58th Street, which is misleading.

The appraiser failed to address that the City of Doral approved a final plat for development of the Landmark at Doral subdivision dated April 26, 2006, that also dedicates all roadways and N.W. 102nd Avenue.

The appraiser's "Total Land Area" Table, page 19, tabulates the gross land area based upon the Miami-Dade County Property Appraisers Office size per folio number to a total gross land area of 117.025 acres. The appraiser failed to consider the Alvarez Engineering drawings that depict the gross and net usable land areas that are currently subdivided into lots, blocks and parcels.

The engineer's report was first prepared for the Community District's Board of Supervisors on September 25, 2006, and was updated in 2009 and 2010. These reports describe and include all land development costs for the infrastructure, roadway improvements, public parking garage, storm waste management, water distribution system, sanitary sewer system and outdoor recreational areas. The engineer's calculated total gross acreage is 117.65 for the master assessment methodology of the individual sites to be assessed under the Landmark at Doral bond requirements.

**The appraiser states on page 30** that "…the intended user and use of the appraisal report is for asset valuation in connection with a possible acquisition by Terra World Investments, LLC."

**REVIEWER'S COMMENT**
This intended user and use implies that the summary appraisal is "specific" for Terra World and not for a hypothetical investor purchaser which is implied under a proper definition of market value.
The appraiser's statements are not supported and give the impression of a bias toward a redevelopment plan by the appraiser's client, the Terra Group entities, who are in the process of developing two (2) adjacent parcels abutting the subject to the north and to the south of the Landmark at Doral development.
It is apparent that the appraiser's reported results are for an investment value for Terra Entities.

**The appraiser states on page 30:**
"…that the interest appraised herein is that of the unencumbered fee simple interest."


Integra Realty Resources
Miami/Palm Beach

**REVIEWER'S COMMENT**
This is a misleading statement, as the subject lands owed by the debtor are encumbered by the Landmark Community Development District's Bonds for the infrastructure and public parking garage. The owner of all the subdivided roadways and public parking garage is the district and not the debtor.

**The appraiser correctly states on page 33** "History of the Subject Property" that "…in December, 2005, a 23.66 acre portion (Folio #35-3017-001-0365) was deeded to the CDD."

**REVIEWER'S COMMENT**
However, the appraiser failed to state that this sale to the Landmark at Doral Community Development District was recorded on December, 2005, which consists of the gross areas subdivided for the roadway right-of-ways and parcels for common elements of the platted subdivision approved by Resolution (Z06-07) by the City Council of Doral.

The appraiser failed to state that the Landmark at Doral Community District is not the debtor, but a secured lien holder that funded the land development infrastructure costs for this subdivision and the public parking garage.

The appraiser misstated and omitted the extent of the land development costs by stating "some site improvements, portions of some roads and portions of a parking garage."

This is a substantial error of a material fact omission that significantly affects the credibility of the appraised value opinion.

USPAP Standard Rule 1-1(b) states:
> **"An appraiser must use sufficient care to avoid errors that would significantly affect opinions and conclusions. Diligence is required to identify and analyze the factors, conditions, data and other information that would have a significant affect on the credibility of the assignment results."**

**The appraiser states** again on page 34 under 'Site Data' (last sentence):
"A Community Development District (CDD) was established for the purpose of funding infrastructure improvements necessary to support the proposed project. Some site work was completed, including partial construction of some of the interior roads. In addition, the parking garage was partially completed."

**REVIEWER'S COMMENT**
The appraiser, in addition to ignoring this fact in the appraisal, fails to address Alvarez Engineers, Inc.'s Infrastructure Improvement Reports dated 2006 and 2009, and the engineer's status report dated January 13, 2011, which detail costs expended and the percentage of actual construction costs for the in place infrastructure facilities and parking garage.

**The appraiser states on page 35:**
"The Landmark at Doral plat specifies a number of additional interior roads within the site that have been partially constructed, but mostly not paved."


Integra Realty Resources
Miami/Palm Beach

"The site is level and at approximate street grade in some areas, with portions that may require fill. However, some of these areas may be required for storm water management, in which case they would not be filled." The appraiser states further that: "According to a representative of Terra World Investments, which is pursuing a plan to acquire the site, no utilities have been brought to the site."

**REVIEWER'S COMMENT**
The appraiser's statement is inappropriate to include the following without confirming if the statement is true.

> *"According to a representative of Terra World Investments, which is pursuing a plan to acquire the site, no utilities have been brought to the site".*

**The appraiser states** on page 40:

- Total Assessed Value:                    **$36,492,291**
- Millage Rate ÷ $1,000:                   19.1456
- Estimated Real Estate Taxes:             **$751,971**
- ... a 4% discount for early (November) payment of taxes which would reduce the estimated real estate taxes to $721,892...

**REVIEWER'S COMMENT**
The appraiser inappropriately totaled the Property Appraisers Office "Market Value" and the "Assessed Value" and incorrectly calculated the real estate taxes to an amount that is not for the subject folio numbers.

The total Ad Valorem Assessed Values
for the captioned folio numbers for 2011 is:        **$24,985,748**
and for 2010 was:                                   **$23,899,097**

For 2011, the Miami-Dade County Property Appraisers Office assigned a 'Market Value' amount that differs from the 'Assessed Value' amount for the following folio numbers:

...0240 (Town Center Property) at $24,297,300, a $9,115,306 difference and;
...0362 (South Parcel) at $6,621,975, a $2,931,237 difference

The total "Assessed" and "Market Value" Assessments combined is the reported **$36,492,291.**

The taxes due and past due (excluding the Community Development District's taxes) as of January 1, 2011, total **$1,532,345.81** vs. the appraiser's reported $751,971 taxes due and past due.

The appraiser grossly misstated this factual and important disclosure necessary for due diligence by an appraiser to report.



**REVIEWER'S COMMENT**
The appraiser's statements on page 41 are not supported for an entire redevelopment plan (as the appraiser states under Highest and Best Use, pages 55-58).

USPAP Standard Rule 6-3(a) states:
> *"In considering Highest and Best Use, an appraiser must develop the concept to the extent required for a proper solution to the appraisal problem."*

If the appraiser relied upon the Terra Group's revised conceptual site plan in the appraiser's work file, then the appraiser misstated Terra's intent, as Terra's proposed development plan concept states that:

> *"new coach homes and single family homes nicely fit on the north section of the development parcel".*

and

> *"Terra plans not to alter the plans for the 400 condominiums located on the southern parcel (identified on the original site plan)."*

The original site plan for the south parcel calls for multi-family units to be located over the retail space along with office space. This requires the use of the parking garage.

**REVIEWER'S COMMENT**
The appraiser correctly stated on page 42 that single family and townhouse residential are in balance, but failed to confirm if rental apartments and commercial retail are over supplied in the Doral submarket.

The words stated 'average' and 'above average' have not been defined as to what they are compared to.

**The appraiser states on page 54:**
"...but that development of commercial uses is not likely to be profitable."

**REVIEWER'S COMMENT**
This reviewer cannot find any profitability analysis in the appraiser's report or work file papers to support this statement. Lack of quantified support for such statements is deemed to be misleading.

**The appraiser cites on pages 60, 61 and 62** the typical approaches to be considered by appraisers.

The appraiser incorporates a "Land Value by Sales Comparison" commencing on page 62 through page 109.

The appraiser cited six (6) sales on pages 64-79 and five (5) sales on pages 80-109 with the appraiser's Reconciliation and Conclusion of Value indications by the Sales Comparison Approach on pages 110-111.


Integra Realty Resources
Miami/Palm Beach

**REVIEWER'S COMMENT**
The reviewer finds that the appraiser utilized Sale Nos. 1, 2, and 3 which were acquired by various entities of Terra.

Sale Nos. 4, 5, and 6 were non-comparable and non-competitive comparisons and are deemed to be inappropriate for a credible indicator of value as simply evidenced by their zoning, size, date of sale (Nos. 5 and 6) and their obvious unadjusted price per square foot.

**The appraiser states on page 108** "Other":
"This lake is identified in the original Landmark at Doral Site Plan as a 'preserve/storm water storage area'. It is likely not possible to fill it and may be unusable for development. When comparing the price per square foot of comparable sales that are not similarly disadvantaged by large, undeveloped areas, a negative adjustment is needed."

**REVIEWER'S COMMENT**
This statement is unquantified with no support or analysis for a logical reasoning.

**The appraiser states** under 'Special Note' on page 108:
*"The east parcel is not developable at present because there are no uses that would be financially feasible to development."*

... *"and possibly larger enclosed or open storage for boats and other vehicles."*

**REVIEWER'S COMMENT**
The appraiser failed to cite the City's Land Development Code (2008 Update) which restricts such uses and requires such use to be located on a Homeowners Association or multi-family tenant community property.

**The appraiser states on page 112** under "Residual Land Value Analysis":
"As the south and east parcels are not feasible to development at this time, any projections for future development would be unreliable."
**REVIEWER'S COMMENT**
The appraiser's statement is without support and documentation.

The appraiser failed to address that Terra Group states in their revised site plan contained in the appraiser's work papers (TED-0000653-662):
*"Terra believes that the property will nicely complement the Doral Cay Project, for Doral Cay should be completed by the time Landmark is well on its way."*

This statement is Terra's vision for the redevelopment, marketing and sale of Terra's adjacent developments, Vintage Estates and Vintage Place subdivisions (to be located to the north of Landmark at Doral and fronting N.W. 107th Avenue) containing 110 single family homes and 60 coach homes.

Terra's subdivision, Doral Cay, is also adjacent to the Landmark at Doral South Parcel fronting N.W. 58th Street. Doral Cay is to contain 158 townhomes per its Proposed Application to the



City of Doral of a modification to the previously approved Doranda Town Center (the former name of this 17.5± acre parcel).

Terra's zoning attorney stated in an August, 2011 letter to the city that:
> *"The Doral Cay PUD will be harmonious with the development in the surrounding area, which includes an approved traditional neighborhood development to the north."*

This implies that the Landmark at Doral development is a compatible use as it is the 'epicenter' of Terra's adjacent two developments (Vintage to the north and Doral Cay to the south.)

For the appraiser to omit any mention of these two Terra developments being marketed with applications filed for their revised site plan is a material error of fact.

The Vintage and Doral Cay conceptual development plan (not addressed by the appraiser) clearly depicts that Terra's development concept forestalls the Landmark at Doral North and South Parcel's development concept to a future date.

The Landmark at Doral development is currently entitled with the infrastructure in place for immediate restart of a marketing sales program and construction of the vertical products.

Conversely, Terra's undeveloped Vintage and Doral Cay projects must go through Doral's entitlement process before any land development (infrastructure) can begin. Land development for infrastructure must be in place before any vertical housing can be constructed upon replatted parcels.

This time period for the approval process may take from up to one year to 18 months from the date of the developer's filing an application. In contrast, the Landmark at Doral development has such approvals and the majority of the existing infrastructure is constructed and in place.



**LANDMARK AT DORAL**

# QUALIFICATIONS



# Professional Qualifications

## Michael Y Cannon, MAI, SRA, ASA, FRICS, CRE

- Michael Y. Cannon is the Executive Director of Integra Realty Resources – Miami/Palm Beach, a National Real Estate Counseling and Valuation Firm, having 60 offices nationwide.
- Integra Realty Resources publishes IRR's "Viewpoint", a national real estate trends report.
- Mr. Cannon is also President of AREEA, Inc., which performs advisory and agency services for acquisitions, dispositions, leasing and lease negotiations.
- Mr. Cannon's specialty practice of over 45 years includes Market Analysis, Feasibility Analysis, Investment Analysis, Land Use Analysis and Valuations of Ownership Interests in all types of real estate.
- He has been retained as advisor/consultant by various public entities, governmental agencies and the private sector locally and nationally; and has been appointed arbitrator/mediator on (ADR) Alternate Dispute Resolutions.
- He is a panel member of Neutrals of the American Arbitration Association (AAA) Roster of Arbitrators and Mediators; and a member of the Dispute Resolution Committee of the Counselors of Real Estate.
- He serves on the Urban Land Institute Advisory Board, Southeast Florida / Caribbean Council; and is a current member of the Editorial Board of 'Real Estate Issues' published by the Counselors of Real Estate.
- He served on the Executive Committee of the Urban Land Institute (ULI) Southeast Council and the Economic Roundtable of the Beacon Council. He served as an advisor to the Collins Center for Public Policy, and was a past member of the Editorial Board of the Appraisal Journal.
- Mr. Cannon is a member in good standing of the Appraisal Institute and was awarded the MAI and SRA designations, and the ASA designation awarded by the American Society of Real Estate Appraisers. He is a Fellow of the Royal Institution of Chartered Surveyors (FRICS), and holds the CRE designation awarded by the Counselors of Real Estate. He is a Florida State Certified General Real Estate Appraiser and a Licensed Real Estate Broker in Florida.
- Mr. Cannon has testified before the U.S. Senate Banking Committee on real estate issues in Washington, D.C., has been declared an expert witness in Local, State, Federal and Bankruptcy Courts, and has appeared before municipal and county bodies as an expert relating to marketable land use and other real estate issues.
- He has authored papers on Market Analysis, Highest and Best Use, and Valuation Theories published in the Appraisal Journal, a weekly real estate column in the Business Monday Section of The Miami Herald, and has been guest speaker and quoted extensively in local, state, national and international media relating to all facets of real estate.

Rev. 05/17/11

mcannon@irr.com • 305-670-0001 x212                Integra Realty Resources - Miami/Palm Beach

IRR. Copyright 2007 Integra Realty Resources, Inc.

# Professional Qualifications

## Michael Y Cannon, MAI, SRA, ASA, FRICS, CRE

### EDUCATION:

**Attended and/or passed the following courses/seminars accredited by the Appraisal Institute (AI); the American Society of Appraisers (ASA); the American Arbitration Association (AAA); the Urban Land Institute (ULI); and the Counselors of Real Estate (CRE):**

Principles & Techniques of Real Estate, University of Miami; 1960
SREA Symposiums; 1985/86/88/90
SREA Prof. Practices Seminar; 12/89
Legislative Update; 8/91
Real Estate Law for Appraisers; 8/91
#ACE1034/Reviewing Appraisals; 9/91
Americans with Disabilities Act; 7/92
Standards of Prof. Practice, Part A; 7/92
Appraisal/Tax, General; 10/95
Appraisal Institute Symposium; 9/96
Leases, Analysis; 6/97
Construction Industry Arbitrator Training Program; 10/97
Standards of Prof. Practice, Part C; 6/99
ULI, Latin America Opportunities in Real Estate Investment/Development; 5/00
Marketability Discounts; 7/00
AAA, Arbitrator II Workshop - Advanced Case Management; 5/01
CRE, ADR Program; 6/02
AI, Assessment Appeals in FL; 10/04
AI, National USPAP Update #400; 10/04
AAA, Deciding & Writing an Award; 8/05
AAA, Dealing with Delay Tactics; 8/06
AI, RE Fraud: Appraisers Beware; 8/07
AI, National USPAP Course; 4/08
FREAB Disciplinary Session; 10/08
AAA, How to Prevent Arbitrations from Transforming into Litigations; 9/09
AI, The Appraiser as an Expert Witness: Preparation and Testimony; 10/09
AI, National USPAP Update; 6/10

AIREA/Course I, II, IIB; 1961-1963
SREA/AIREA Mortgage Equity & Market Analysis Seminars; 1980-85
Appraisal Theory Review; 1/91
Landfills & Their Effect Upon Value; 8/91
RTC Affordable Housing Disposition; 8/91
#ACE1066/Practical Approaches to Appraising Troubled Properties; 2/92
Rates, Ratios & Reasonableness; 7/92
Analysis, Troubled Properties; 4/96
Litigation Skills for the Appraiser; 9/96
Appraisal, Guidelines; 6/97
Non-Conforming Uses; 1/98
USPAP Core Law; 10/98
Fundamentals of Arbitration Process; 9/99
Business Valuation/Discounts & Premiums; The IRS and FLPs; 7/00
Real Estate Capital Markets (Part 2); 7/00
AI, State of the Profession; 5/01
AI, Ad Valorem Tax Assess. Process; 2/02
AAA, Advanced Mediator Skills; 7/02
AI, Underwriter Needs More Comps; 10/04
AI, New Regulatory Guidelines; 11/04
AAA, Chairing an Arbitration Panel; 9/05
AI, National USPAP Course; 8/06
AI, FL Law for Real Estate Appraisers; 11/07
AAA, Int'l. Arbitration Conference; 4/08
AI, Energy Star & the App'l Process;11/08
AAA, Judicial Remands of Challenged Awards; When a Decision Isn't Final; 10/09
AI, Business Practices and Ethics; 2/10
AI, Property Tax Assessment; 5/10
AI, Florida Law for RE Appraisers; 6/10

R41b and R41c Seminars (FHLBB); 1985/86
SREA Course 301 - Special Application of Appraisal Analysis; 1983
Course #ACE754/Discounted Cash Flow; 2/91
Subdivision Analysis; 8/91
Fair Value/What it is & How to Estimate; 8/91
#ACE1090/Useful Information in Appraising Commercial Property; 6/92
AAA, Advanced Arbitrator Training; 7/94
Appraisal, General & Law, Legislation; 4/96
Appraisal, Other Property Types; 10/96
Local RE Markets & Due Diligence; 9/97
BOMA International Conference; 6/98
USPAP Standard Three Review; 10/98
Analyzing Income Producing Prop; 5/00
Machinery & Technical Specialties; Leasing Industry Practices and IOWA Curves; 7/00
Real Property & Easement Valuation; 7/00
International Conf. on Assessment Admin.; 9/01
AI, RE Appraiser / Bankruptcy Proceedings; 4/02
ULI Land Use Conflicts/Solutions; 6/03
AI, FL State Law for RE Appraisers; 10/04
AI, Business Practices / Ethics #420; 12/04
AI, Appraiser's Role in New Urbanism; 4/06
AI, Florida Law for Real Estate Appraisers; 8/06
ASA, Roles/Responsibilities Supr/Trnee; 11/07
AI, The Real Estate Economy:2008; 8/08
AI, Gov. Regs. & Effect on RE Appraising; 8/09
AI, Litigation Appraising: Specialized Topics and Applications; 10/09
AI, Condemnation Appraising; 3/10
AI, Roles & Rules Supervisory/Registered; 6/10
AI, The Real Estate Market; 02/11

### PROFESSIONAL ORGANIZATIONS AWARDING DESIGNATIONS:

#### Appraisal Institute
MAI Designated #8734; Effect. 1/1/91 by virtue of the unification of the American Institute of Real Estate Appraisers and the Society of Real Estate Appraisers, SREA membership on December 1, 1984.
SRA Designated (Senior Residential Appraiser); Effect. 9/1/66
The Appraisal Institute offers a voluntary program of continuing education for its members.
I am currently re-certified through 12/31/14.

#### American Society of Appraisers
ASA (Accredited Senior Appraiser) - Member ID #8888; Effect. 6/1/92
Under the American Society of Appraisers' accreditation program, members are certified for a period of five years.
I am currently re-certified through 06/01/12.

#### Fellow of the Royal Institution of Chartered Surveyors - FRICS Member #1273937

#### Counselors of Real Estate
CRE Member - Cert. #1058 – Admitted to membership effective November 1, 1986

#### American Arbitration Association (AAA)
Member of the Panel of Arbitrators, Mediators, and National Roster of Neutrals.
I am currently re-certified through 2011.

- 2 -

IRR. Copyright 2007 Integra Realty Resources, Inc.

# Professional Qualifications

## Michael Y Cannon, MAI, SRA, ASA, FRICS, CRE

**PROFESSIONAL
OFFICES HELD:**    Greater Miami and South Florida Chapter Offices and Committees
1966-71-73 Board of Directors; 1970-71 President ;1974-76 Education Committee

Chapter and Regional Offices & Committee Member of the Appraisal Institute (AI)
and/or the former Society of Real Estate Appraisers (SREA)

| | | | |
|---|---|---|---|
| 1968, 1970 | Young Men's Council  Member | 1974-77 | Chapter Services Committee Member |
| 1974-78 | International Market Development | 1975 | Education Comm., Mortgage Bankers Assoc. |
| 1975-81 | Governor District 13 (FL & Puerto Rico) | 1977 | Education Committee |
| 1977-78 | National License Review, Chairman | 1979 | By-Laws Committee Chairman |
| 1979-81 | SREA Foundation | 1980 | Editorial Advisory Board Chairman |
| 1981 | Inter'l. Conference Committee Chairman | 1986-89 | SREA Admissions Committee Member |
| 1987-88 | State Licensing Liaison Comm. | 1989-92 | National Admissions Appeal Board Member |
| 1990 | Society RTC Task Force Member | 1991 | Region X Committee Member |
| 1993 | Symposium Committee Member | 1993 | Chairman, National Admissions Appeal Board |
| 1994-95 | National Symposium Committee | 1994-96 | Regional Ethics & Counseling Panel |
| 1998-02 | National Experience Review Comm. | 2002-04 | Appraisal Journal Editorial Board Member |
| 2005 | Designated Member, Symposium Comm. | | |

## MEMBER OF OTHER PROFESSIONAL ORGANIZATIONS:

American Real Estate & Urban Economics Association (AREUEA)

National Association of Corporate Real Estate Executives (NACORE)

National Association of Home Builders (NAHB)

Builder's Association of South Florida (BASF):
| | | |
|---|---|---|
| | Board of Directors (Life Director) | 1972 |
| | Executive Committee | 1974, 1979 |
| | Vice President | 1975, 1980 |
| | Hall of Fame | 1989 |
| Beacon Council: | Economic Roundtable Forum | |
| | Executive Committee | 2009 |
| | Board of Directors | 2008, 2009 |

International Council of Shopping Centers Member        1992

International Association of Assessing Officers (IAAO); Associate Member, 1993

The Counselors of Real Estate – Committee Member:
| | |
|---|---|
| Education Committee | 2003 |
| Dispute Resolution Committee | 2003, 2008, 2009, 2010, 2011 |
| Consulting Corps Steering Committee | 2003, 2008, 2009, 2010, 2011 |
| Real Estate Issues Editorial Board | 2004 - 2011 |
| Business Issues Subcommittee | 2011 |

Urban Land Institute (ULI): Full Member since 1977
Executive Committee Member/S.E. Florida/Caribbean District Council, 2006-2010
Advisory Board Member/S.E. Florida/Caribbean District Council, 2011

- 3 -

IRR, Copyright 2007 Integra Realty Resources, Inc.

## Professional Qualifications

### Michael Y Cannon, MAI, SRA, ASA, FRICS, CRE

**TEACHING OR LECTURING:**
Adjunct Instructor - University of Miami, Finance Department, Real Estate Appraisal and Market Analysis, and Florida International University, Market Analysis - 1978-1981

Instructor - Florida International University - Florida Real Estate Commission

Lecturer at Law - Valuation Issues relating to Ad Valorem Assessments and Federal/County/Municipal Tax issues relating to real property interests and business valuations – University of Miami School of Law - 3/94

Lecturer/Graduate Program in Estate Planning - University of Miami School of Law - 1995, 1996, 1997 and 1998

Ad Valorem Assessment Issues – IAAO State Association Conferences – 1994-1998
National Speaker at the IAAO's 67th Annual International Conference on Assessment Administration – "*The Role of the Appraiser/Assessor in Ad Valorem Assessment Disputes – Value/Valuation Theories*" – 9/2001

Panelist – Ralph E. Boyer Institute on Real Property Law – University of Miami School of Law - 2003, 2005, 2007, 2009, and 2010

Law Seminars International - Faculty Panel Member CLE at Florida's Growth Management Act Conferences – 2007, 2008, 2009 and 2011

**LICENSES:**
State of Florida Real Estate Broker (1961), Lic. #182553 (exp. 3/31/2012)
State of Florida Certified General Appraiser, Lic. #RZ684 (exp.11/30/2012)

**EXPERIENCE:**
Executive Director of Integra Realty Resources – Miami/Palm Beach formerly known as Appraisal and Real Estate Economics Associates, Inc. (AREEA). On August 1, 1999, the firm AREEA became part of Integra Realty Resources, Inc., a national real estate valuation and consulting firm currently with 60 offices nationwide [visit our website at www.irr.com].

President of AREEA, Inc., a real estate advisory and agency service company established in 1973

Vice President of AREEA Assessment Consultants, Inc.

President of AREEA Investment Advisory & Management Services, Inc. (AIAMS). This firm formerly served as investment advisor and asset manager to a foreign entity, which acquired several million square feet of commercial properties located throughout the United States.

President/Chairman of the Board of AREEA Management Company. This firm formerly managed condominium and homeowners associations in 58 developments totaling over 15,000 units in South Florida. The company merged with a regional management company in 1984.

Former Vice President and Chief Loan Officer of a major South Florida savings and loan association from 1967-1973.

Staff Appraiser and Construction Loan Inspector with National Appraisal & Realty Management Corporation, 1960-1967

Real Estate Assessor, Dade County Assessor's Office, 1957-1960

- 4 -

IRR. Copyright 2007 Integra Realty Resources, Inc.

# Professional Qualifications

## Michael Y Cannon, MAI, SRA, ASA, FRICS, CRE

Have performed due diligence, forensic valuations and appraisal services of all types of real estate and various ownership interests in connection with acquisitions, financing, dispositions, liquidations and dispute resolutions. Have been retained in an oversight and advisory capacity on behalf of investors and lenders relating to the development analysis, asset and property management services for residential and commercial properties located primarily in South Florida and the Caribbean, and in several instances, throughout the United States. Has extensive experience in arbitration/mediation and other alternative dispute resolution matters. Have supervised and administered the marketing and sale of several residential condominium conversions, and the acquisition, renovation, and development of office buildings, shopping centers, and rental apartments.

Have been retained to analyze various real estate and business investments, and has provided consulting and/or expert opinions relating to equities, ownership interests, Ad Valorem Assessment issues, and damages in litigation matters.

Practicing Real Estate Analysis, Valuation, Consulting and Finance for over forty-five (45) years.

### Expert Witness

    Circuit Courts of Miami-Dade, Broward, Lee, Charlotte, Palm Beach, and Indian River Counties
    U.S. District Court for the Northern and Southern District of Florida
    U.S. Bankruptcy Court for the Southern District of Florida, Miami-Dade, Broward and Palm Beach
    U.S. Bankruptcy Court for the District of Connecticut
    U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division
    Superior Court of New Jersey, Chancery Division, Bergen County

Have testified before U.S. Senate Banking Committee in Washington D.C. and the Resolution Trust Corporation (RTC) Oversight Board regionally. Have been a speaker/lecturer before local, state and national meetings and conventions covering topics on all facets of real estate.

### Authored Papers

Authored a paper entitled "*Real Estate Market Analysis in the Valuation Process*" published by the Appraisal Institute in their research publication "*Technical Report*", 1993.

Authored a paper entitled "*The Role of the Real Estate Appraiser and Assessor in Valuing Real Property for Ad Valorem Assessment Purposes -- Value/Valuation Theories*", 2002.

Publisher of the former "*AREEA Report for South Florida*", covering South Florida's real estate trends.

Authored a weekly real estate column featured in the Miami Herald.  Articles, quotes and analyses have been published in local, state, national, and international media.

### Awards/Honors

Assoc. Realtor of the Year Award, Hialeah-Miami Springs Board of Realtors - 1966
Inducted in the Hall of Fame of the Builders Association of South Florida -- 2/28/89
Featured in *1999 Who's Who in International Business in Miami and South Florida*, a publication of World City Business, the local newspaper of international business.
Regional "TOBY" Award by (BOMA), Building Owners and Managers Association, for the "Best Managed and Renovated Office Building in the Midwest Region" - 1997
Awarded the "Best Maintained Building" for five (5) years by the City of Boca Raton -- 1993
Awarded the Community Advancement Award by the Developers and Builders Alliance (DBA) - 2008

Rev. 05/17/11

- 5 -

IRR, Copyright 2007 Integra Realty Resources, Inc.



Local Expertise...Nationally

## INTEGRA REALTY RESOURCES – MIAMI / PALM BEACH

**Integra Realty Resources – Miami/Palm Beach,** formerly known as **Appraisal and Real Estate Economics Associates, Inc. (AREEA),** which was established in 1973. The Miami office specializes in all facets of real estate analysis, including real estate consulting; appraisals; market research; market/marketability studies; feasibility studies; and investment analysis covering residential, commercial and all types of real estate. As of August 1, 1999, **AREEA** became part of **Integra Realty Resources, Inc.,** a national real estate valuation and consulting firm with 60 regional valuation and consulting firms coast to coast [visit our website at www.irr.com].

**AREEA, Inc.** specializes in residential and commercial brokerage, as well as office and retail leasing representing both tenants and landlords.  AREEA, Inc. differs from other brokerage companies in that it has the opportunity to draw upon the vast information base and professional services of its affiliate firm, providing entrepreneurial services for its selected clientele.

The professional and support staff provides professional consulting and technical services for its broad based clientele.

Rev. 11/10

IRR.

## PARTIAL LIST OF CLIENTELE

### ATTORNEYS AT LAW

Adorno & Yoss, LLP
Akerman Senterfitt
Alschuler Grossman Stein & Kahan, LLP
Anderson, Moss, Russo & Cohen
Arnold & Porter (Washington D.C.)
Aronovitz Jaffe
Bedel, Dittmar, DeVault & Pillans
Beilley Pozzuoli
Beinstock & Clark
Bercow & Radell
Bilzin Sumberg Baena Price & Alexrod
Bracewell & Giuliani LLP
Brigham Moore, LLP
Broad & Cassel
Buchanan Ingersoll
Chadbourne & Parke, LLP
Citta Holzapfel Zabarsky, et al
Cohen Fox, P.A.
Cohen Tauber Spievack & Wagner, P.C.
Dean Mead Egerton Bloodworth
Decotiis Fitzpatrick Cole and Wisler
Edwards & Angell
Golden & Cowan, P.A.
Greenberg, Traurig, P.A.
Gunster, Yoakley & Stewart, P.A.
Hall, Lamb and Hall, P.A.
Holland & Knight
Jorden Burt, LLP
Joseph, Jack & Miranda
Karon, Savaris & Horn
Kelly, Drye & Warren
Kenny, Nachwalter & Seymour
Kline Moore & Klein
Kluger, Peretz, Kaplan & Berlin, P.L.
Krinzman Huss & Lubetsky
Kurzban Kurzban Weinger and Tetzeli
Leinoff and Lemos, P.A.
Lowenthal, Landau, Fisher of New York
Markowitz Davis Ringel & Trusty, P.A.
Muller & Lebensburger
Packman Neuwahl & Rosenberg
Payton & Carlson
Richman Greer Weil Brumbaugh
   Mirabito & Christensen, P.A.
Rice Pugatch Robinson & Schiller, P.A.
Robinson Bradshaw & Hinson, P.A.
Russomanno & Borrello, P.A.
Stearns Weaver Miller Weissler
   Alhadeff & Sitterson, P.A.
Steel, Hector, Davis
Stone & Connolly, P.A.
Stroock, Stroock & Lavan
Tew Cardenas
Weil Gotshal & Manges, LLP

### LENDING INSTITUTIONS

Absolute Financial Resources
AmSouth Bank
Amtrust Bank
BAC Florida Bank
BancBoston
Banco Cafetero International
Banco Popular
Banco Sabadell, S.A.
Bank Atlantic
Bank of America
Bank of Miami
Bank of New York Bankers Savings
Bankers Trust, NY
Bankers Savings Bank
BankUnited, F.S.B.
Beach Bank
Bell Tell Federal Credit Union
BPD Bank
BrickellBanc (FDIC)
California Bank and Trust
Caribank (FDIC)
Central Bank
Charter Bank
Chase Manhattan Bank, N.A.
Citibank, F.S.B.
Citibank, N.A.
City National Bank of Miami
CNL Bank
Coconut Grove Bank
Colonial Bank
Colonial Savings
Comerica Bank
Community Bank of Homestead
Consolidated Bank
Continental Illinois Bank, N.A.
Credit Suisse
Deutsche Bank
Dreyfus Consumer Bank
Eastern National Bank
Espirito Santo Bank of Florida
Executive National Bank
Fifth Third Bank
First National Bank of Chicago
First National Bank of South Florida
First Republic Bank (Dallas)
First Savings Corporation (Chicago)
First Union National Bank
Fleet Bank
Florida Community Bank
Florida Savings Bank
General Electric Credit Corporation
Gibraltar Bank, FSB
GMAC Financial Services



IRR
Integra Realty Resources
Miami/Palm Beach

## PARTIAL LIST OF CLIENTELE

### LENDING INSTITUTIONS

Goldman Sachs & Company
Great Florida Bank
Gulf Bank
HFB International Finance Bank
Hillcrest Bank (Kansas City)
Imperial Bank
Intercontinental Bank
Intercredit Bank, N.A.
International Finance Bank
Interstate Bank
JP Morgan Chase Bank
Key Bank
Laredo National Bank
LaSalle Bank, N.A.
Lehman Brothers Bank
Lloyd's Bank International
Mellon United National Bank
MetroBank of Dade County
National City Bank
Northern Trust Bank of Florida
Ocean Bank
OceanMark Bank
Ohio Savings Bank
Optimum Bank
Pacific National Bank
Pan American BanK
Peoples Bank
Peoples First National Bank
PineBank
Popular Bank of Florida
Republic Federal
Republic National Bank of Dallas
Republic Security Bank
SafraBank
Skylake State Bank
South Trust Banks
SunTrust/Miami, N.A.
TD Bank North
Total Bank
Turnberry Bank
UniBank
UBS Real Estate Investments
Wachovia Bank
Wachovia Securities, Inc.
Washington Mutual Bank

### GOVERNMENT AGENCIES/UTILITIES

American Maritime Officers
Broward Cty Property Appraisers Office
Broward County School Board
City of Cutler Bay
City of Dania Beach
City of Deerfield Beach
City of Ft. Lauderdale
City of Hollywood
City of Homestead

### GOVERNMENT AGENCIES/UTILITIES

City of Miami
City of Miami Beach
City of North Miami
City of West Palm Beach
Fannie Mae / Freddie Mac
FBI/Striker Force
Federal Asset Disposition Assoc. (FADA)
Federal Bureau of Investigation (FBI)
Federal Deposit Insurance Corp. (FDIC)
Federal Home Loan Bank Board (FHLBB)
Federal Reserve Bank of Atlanta
Florida Dept. of Transportation (FDOT)
Florida Fair Housing
Florida Power & Light Company
Florida State Comptroller's Office
Internal Revenue Service (IRS)
Miami, City of Dept. of Off-Street Parking
Miami-Dade County G.S.A.
Miami-Dade Empowerment Trust
Miami-Dade Cty Property Appraisers Office
Miami-Dade County School Board
Miami-Dade County Water & Sewer Authority
Office of Thrift Supervision (OTS)
Palm Beach Cty Property Appraisers Office
Pinellas County Assessor's Office
Small Business Administration (SBA)
South Florida Water Management District
Trust for Public Land
United States Postal Services
U.S. General Services Administration
U.S. Justice Department
U.S. Marshall's Office
U.S. Small Business Administration

### OIL COMPANIES

American Petrofina
Amoco Oil Company, U.S.A.
Chevron U.S.A.
Exxon/Mobil Corporation
Gulf Oil Company
Mobil Oil Corporation
Shell Oil Products U.S.
Texaco U.S.A., Inc.
Union Oil Company

### PROFESSIONAL ASSOCIATIONS

Collins Center for Public Policy
American Heart Association
United Way of Miami

### MORTGAGE/LENDING INSTITUTIONS

Allegis Realty Investors (Aetna)
America's MoneyLine
Bank Bankers Trust Mortgage Corporation
Bayview Financial Trading Group
Bear Stearns Commercial Mortgage Co.

IRR
Intenra Realty Resources
Miami/Palm Beach

## PARTIAL LIST OF CLIENTELE

### MORTGAGE/LENDING INSTITUTIONS

Capital International
Chase Home Mortgage
Coldwell Banker Relocation Management
Services
Colonial Mortgage Company
Combank Mortgage Company
EDS Relocation Services
Emigrant Mortgage Company
Empire of America Relocation
Equitable Mortgage Resources
Equity Relocation
Equity Mortgage Corporation
Federal Asset Disposition Assoc. (FADA)
Federal Home Loan Bank Board (FHLBB)
Florida Mortgage Underwriters
Freemont Investment & Loan
G.E. Mortgage Corporation
Home Financing Center
Home Equity Relocation
Homequity
International Investors Mortgage
J.I. Kislak Mortgage Corporation
Manufacturers Hanover Financial Group
Merrill Lynch Relocation
Pan American Mortgage
Prudential Home Mortgage Corporation
Prudential Relocation Management
Regions Financial Corp.
Related Companies of Florida
ReloAction
Relocation Funding of America
Resources, Inc.
RE/MAX Int'l Relocation
Republic Mortgage
Residential Funding Corporation
Resolution Trust Corporation (RTC)
Security Investor Protection Corp. (SIPC)
Southeast Bankers Mortgage
Traveler's Relocation

### DEVELOPERS / INVESTORS / BUILDERS

Acorn Asset Management
Agua Dulce Investment, Inc.
AMB Property Corporation
American Ventures
Arrowhead Properties Corporation
Arvida/Disney Corp.
Arvida/JMB Partners, L.P.
Arvida/St. Joe Company
Avatar Development Corporation
Builders Association of South Florida
California Public Employees' Retirement
  System (CalPERS)
Cadim CDP Capital

### DEVELOPERS / INVESTORS / BUILDERS

Chrysler Realty Company
Codina Realty Services
Constructa U.S., Inc.
(Walt) Disney Corporation
Doral Corporation
Easton Group (The)
EFC Holdings
Equity One (REIT)
Fidelity Investments Real Estate Group
Hypo Real Estate Capital Corporation
Landsea Developments, LLC
Lennar Corporation
Lombardi Properties
Merco Group at Aventura Landings I, Inc.
MetLife Real Estate Investments
Miami Beach Development Corporation
Paradigm Capital Funding
PB Capital Corporation
Pinnacle Housing Group
Rockefeller Group
Royal Explorer Development, LLC
RREEF Management Co.
Skyline Management
Trump Development
Turnberry Associates
Urdan Capital Management
U.S. Real Estate Advisors
Venturecap Investment Group of Florida, Inc.
WCI Communities

### INSURANCE/TITLE COMPANIES

American Bankers Insurance Group (ABIG)
American Bankers Life Assurance Co.
American Title Insurance Company
Bankers Life & Casualty Co./Chicago
Charter Title Company
Chicago Title Insurance Company
Chubb Group of Insurance Companies
Commonwealth Land Title Insurance Co.
Equitable Life Assurance Society
First American Title Insurance Company
G.E. Capital Mortgage Insurance
Investors Mortgage Insurance Co. (IMIC)
Mortgage Guaranty Insurance Co. (MGIC)
Mutual Benefit Life (MBL)
Mutual of America
National Title
New York Life Investment Mgmt., LLC
PMI Mortgage Insurance Company
Teachers Insurance and Annuity  Association
(TIAA)
Ticor Mortgage Insurance Corporation
Union Labor Life Insurance Co. (ULLICO)



**PARTIAL LIST OF CLIENTELE**

| OTHER |
|---|
| Boston Company |
| Budget Rent-a-Car |
| Burger King Corporation |
| Carrols Corporation |
| Centro Campesino |
| Coca Cola Bottling Company of Miami |
| Coconut Grove Playhouse |
| Colliers Lanard & Axilbund |
| Copley Partners, Inc. |
| Corporate Relocation Management |
| Dow Chemical Company |
| Farm Stores, Inc. |
| Fisher Island Holdings, LLC |
| General Tire and Rubber Company |
| Greenstreet Partners, LP |
| Greyhound Rent-a-Car |
| Hagan Properties, LLC |
| HFS Mobility Services |
| Holiday Inn |
| Hyatt Corporation |
| International Business Machines (IBM) |
| Keyes Company (The) |
| Kimley-Horn |
| Kroll Associates, Inc. |
| Land America |
| LandSafe Real Estate Closing Services |
| Marriott Corporation |
| Mellgren Planning Group (The) |
| Mercury Real Estate Services, LLC |
| Miami Christian College |
| Miami Herald Publishing Company |
| Mount Sinai Medical Center |
| Ocean Reef Club |
| Olympia and York, Inc. (Canada) |
| Potamkin Companies |
| Republic International of New York |
| Rockefeller Group, The |
| Runzheimer and Company, Inc. |
| Simon DeBartolo Group |
| Storer Communications, Inc. |
| Toyota Motor Credit Corporation |
| Transamerica Corporation |
| TruckMax |
| Wometco Enterprises |

Rev. 7/09



IRR
Integra Realty Resources
Miami/Palm Beach



INTEGRA Realty Resources
**MIAMI / PALM BEACH**
*Local Expertise...Nationally*

## STANDARD FEE SCHEDULE

***Integra Realty Resources – Miami/Palm Beach's*** fees for professional services rendered are based upon the actual number of hours expended by professional and administrative associates.

Our standard hourly and per diem rates are as follows effective December, 2010:

| PROFESSIONAL STAFF | Hourly Rate | Per Diem[(1)] |
|---|---|---|
| Michael Y. Cannon, MAI, SRA, ASA, FRICS, CRE Executive Director | $325 | $2,600 Full Day $1,300 Half Day |
| Diane M. Gilbert, MAI, SRA, Executive Director | $300 | $2,400 Full Day $1,200 Half Day |
| Scott M. Powell, MAI, MRICS, Managing Director | $300 | $2,400 Full Day $1,200 Half Day |
| Carlos Gobel, SRA, Residential Div. Managing Director | $175 | $1,400 Full Day $  700 Half Day |
| State-Certified General Appraiser State-Certified Residential Appraiser Senior Market Analyst | $200 $175 $175 | |
| Market Research Analyst and Appraiser Associate as supervised by a Senior Analyst or Supervising Appraiser | $125  to $150 | |
| Administrative Associate | $75 | |

[(1)] Testimony at deposition or trial at per diem rate only.  Represents minimum of 8 hours for full day and 4 hours for half day, including travel time.  If billing hours (including travel time) exceed 4 hours, the per diem is then based on an 8 hour day.  If greater than 8 hours, the hourly rate would prevail.

Reasonable, pre-approved out-of-pocket expenses such as long distance telephone/fax calls, computer processing, photographic reproduction, graphics, travel, maintenance, and report reproduction are not included and will be billed separately at cost. Budgets for certain assignments can be prepared to reflect a "Not to Exceed" fee, exclusive of out-of-pocket expenses, when a client requires a not to exceed fee for certain reports or tasks to be performed.

Rev. 09/11

IRR.

**MICHAEL Y. CANNON, MAI, SRA, ASA,FRICS, CRE**
**ARBITRATOR-EXPERT WITNESS TESTIMONY AT DEPOSITION AND/OR AT TRIAL**

2007 - 2011

Page 1 of 2

| DATE | BEHALF OF | IRR FILE # | COURT CASE NO. | COURT | CASE NAME | RETAINED BY | TYPE OF CASE INTENDED PURPOSE |
|---|---|---|---|---|---|---|---|
| 07/07 | Plaintiff | 7985 | 93-08988 CA 21 | Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida | Pearl Artist and Craft Supply Corp. v Spector & Sons et al | Philippe Lieberman and Steve Silverman, Esq./ Kluger Peretz Kaplan & Berlin, on behalf of the Plaintiff | Breach of Lease Agreement |
| 07/07 | Defendant | 7989 | 502005 CA 006 392 xxxx MBAN | 15th Judicial Circuit in and for Palm Beach County, Florida | The Mark Andrew of The Palm Beaches, Ltd. v. Homer Meruelo/Merco Group of the Palm Beaches, Inc. | Aliette D. Rodz, Esq./ Harold E Patricoff Jr., Esq./ Shutts & Bowen on behalf of the Defendant | Damage Claim, re: Language in an Addendum to a Contract for Sale and Purchase, relating to the square footage of a proposed condominium development |
| 07/07 | Plaintiff | 7904 | Complex Business Circuit Court 11th Division #40 Miami-Dade County, Florida | | FASWAG, L.L.C. , Plaintiff v. Castle Beach Club, Defendants | Richard Burton, Esq. The Burton Firm, on behalf of the Plaintiff | Damage Claim re: Fair Market Rent and Property Rights Loss of condo units within a condominium hotel property |
| 01/08 | Defendant | 2008-0007 | 04-18434 CA 21 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | Elvira Pupo and Jorge Pupo, Plaintiffs, v. AXA RE Property and Casualty Insurance Company, Defendants | Lewis Jack, Esq. Josephs Jack, on behalf of the Defendant | Mold Claim and Diminution in Value Analysis |
| 02/08 | Divorce | 7999 | 06-5148 (37/39) | Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida | In Re: The Marriage of Andrew S. Pollack (Petitioner/Husband) and Shara Y. Pollack (Respondent/Wife) | Shafer & Associates, P.A. | Market Values of Fractional Interests |
| 02/08 | Arbitor / Mediator | 2007-0106 | 32 115 00948 06 | American Arbitration Association | Edel Gonzalez and Raul & Irasma Perez | American Arbitration Association | Arbitration-Mediation re: purchase of a residential site |
| 02/08 | Defendant | 2008-0006 | 07-17999-BKC-AJC | United States Bankruptcy Court Southern District of Florida | Ocean Blue Leasehold Property, LLC, Debtors/Plaintiff, v. Jerry G. Croley and Donna M. Thomas, Defendants | Arthur Rice, Esq./ Rice Pugatch Robinson & Schiller, P.A. on behalf of the Defendant | Value of a 1/15th interest in an office property's Leased Fee Estate |
| 09/08 | Plaintiff | 2002-6767 | United States District Court, Southern District of Florida No. 08-60014-CR-MIDDLEBROOKS(s) Magistrate Judge Johnson 18u.s.c. 1962(d)-1956-1343-1341-2 | | United States of America v. Vincent F. Artuso a/k/a (Vinnie), John Vincent Artuso, Gregory Orr, Robert M. Gannon, and Philip Edward Forgione a/k/a "Fip" a/k/a/ "Flip", Defendants | United States Attorney's Office GE Capital (client), on behalf of the Plaintiff | Valuation of the Leased Fee Estate and Fee Simple Estate; investment opinions relating to a pending sale and leaseback |
| 09/08 | Petitioner | 2008-0018 | 06 DR 29 | District Court, Pitkin County, Colorado | The Marriage of Jeffrey Soffer, Petitioner, and Kimberly Soffer, Respondent | Alan Kluger, Esq. Kluger, Peretz, Kaplan & Berlin, P.L., on behalf of the Petitioner | Retrospective market value of a luxury estate residence re: anti-nuptial agreement |
| 03/09 | Defendant | 2008-0139 | 07-29555 CA 31 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | Villas at Oak Hammock, LLC, Plaintiffs, v. Attorneys' Title Insurance Fund, Defendant | Mario Ruiz, Esq. Cohen Fox, P.A., on behalf of the Defendant | Analysis of a Claim of Damages relating to a fuel pipeline not disclosed in the title insurance policy. Technical Appraisal Review |
| 05/09 | Defendant | 2009-0032 | 08-22419-CIV | United States District Court, Southern District of Florida | MCZ/Centrum Flamingo II, LLC, et al, Plaintiffs/Counter-Defendant, v. City of Miami Beach, Defendant/Counter-Plaintiff | Richard Sharpstein Jorden Burt, LLP, on behalf of the Defendant | Property rights claim re: definition and meaning of a bay walk as to whether a bay walk is public or private |
| 05/09 | Defendant | 2008-0103 | C-135-08 | Superior Court of New Jersey, Chancery Division, Bergen County | Estate of Claudia L. Cohen, Plaintiff, v. Booth Computers and James S. Cohen, Defendants | Frank Huttle / DeCotiis, Fitzpatrick, Cole and Wisler, LLP, on behalf of the Defendant | Claim of Equitable Interest: Market Value of a residence and Technical Appraisal Review as of June 15, 2007 |
| 06/09 | Claimant | 2009-0009 | 08-251-185-BKC-RBR | United States Bankruptcy Court, Southern District of Florida, Ft. Lauderdale Division | SFD Hollywood, LLC, Debtor and Debtor-in-Possession VCI Building, LLC, Claimant | Arthur Rice / Rice Pugatch Robinson & Schiller, P.A. David Haber / David Haber, P.A., on behalf of the Claimant | Analysis of a Breach of Debtor's Agreement: Value of Optionee's Ownership Interests as of October 17, 2008, October 17, 2003, and April 30, 2002 |
| 06/09 | Defendant | 2008-0185 | 08-10928-JKO | United States Bankruptcy Court, Southern District of Florida, Ft. Lauderdale Division | Official Committee of Unsecured Creditors of TOUSA, Inc., et al., Plaintiff, vs. Citicorp North America, Inc., et al., Wells Fargo Bank, N.A., et al, Defendants | Gregory Nye and Richard Whiteley / Bracewell & Giuliani, LLP; Jonathan Cross and Robin Bell / Chadbourne & Parke, LLP, on behalf of the Defendant | Claim of insolvency: Technical Appraisal Review and Market Value Appraisal of debtors' assets (individual properties) located throughout the United States in connection with TOUSA, Inc. et al. re: debtors' solvency and financial condition as of July 31, 2007 |



**MICHAEL Y. CANNON, MAI, SRA, ASA, FRICS, CRE**
**ARBITRATOR-EXPERT WITNESS TESTIMONY AT DEPOSITION AND/OR AT TRIAL**

Page 2 of 2

2007 – 2011

| DATE | BEHALF OF | IRR FILE # | COURT CASE NO. | COURT | CASE NAME | RETAINED BY | TYPE OF CASE INTENDED PURPOSE |
|------|-----------|-----------|----------------|-------|-----------|-------------|-------------------------------|
| 11/09 | Debtor | 2009-0117 | 09-27168-BKC-LMI | United States Bankruptcy Court, Southern District of Florida, Miami Division | Cabi Downtown, LLC, Debtor, and Secured Lenders Bank of America, N.A. and other lenders re: Everglades on the Bay project | Mindy Mora / Bilzin Sumberg Price and Axelrod, LLP; Andrew K. Glenn / Kasowitz, Benson, Torres & Friedman, LLP, on behalf of the Debtor | Motion for an order dismissing the bankruptcy case or granting relief from stay and protection. Market Value Appraisal of the debtor's asset "Everglades on the Bay" (an 870 unit high-rise residential condominium plus retail commercial space) |
| 3/10 | Defendant | 2009-0066 | 05-5827-CA-30 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | Calmon B. Rosenbaum, and on behalf of, d/b/a Rosswood Building Trust, Plaintiff, vs. 6141 Sunset Development, LLC and Oxford Universal Corp., d/b/a Oxford Universal Design & Build, Defendants | Michelle M. O'Brien / Isriel, Ponzoli, Keller & Simpson, P.A., on behalf of the Defendant | Claim of improper tree removal on Plaintiff's property; damage to landscaping and act of trespass. Compensatory Damage Analysis |
| 3/10 | Plaintiff | 8441 | 06-09739-CA-06 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida [1st depo on 12/17/09, 2nd depo on 1/6/10; 3rd depo on 3/19/10] | Alfred and Sandra Geller, Plaintiffs, vs. Aventura Land Holding, Ltd., Boca Land Holdings, Inc. and its construction contractors/architects, Defendants | Ronald P. Weil / Law Offices of Ronald Weil, P.A., on behalf of the Plaintiff | Compensatory Damage Claim and Breach of Agreement re: inhabitable residence from construction defects and water intrusion |
| 6/10 | Plaintiff | 2008-0220 | 06-10013-CIV-KING/GARBER | United States District Court for the Southern District of Florida [1st depo on 6/09; testimony at trial on 2/10; 2nd depo on 6/10] | Whiteco Interra Ventures, LLC, Plaintiff, vs. Islamorada, Village of Islands, Village Council, Islamorada, Village of Islands, Don Horton, as Islamorada Building Official and Ed Koconis, as Islamorada Planning & Development Services Director, Defendants | Tod Aronovitz, Esq. / Aronovitz Jaffe, on behalf of the Plaintiff | Complaint for Writ of Mandamus, Injunctive Relief, Declaratory Relief and Damages surrounding the Formula Retail Ordinance which prohibits "Formula Retail" establishments in any zoning district. Prepared a Compensatory Damage Analysis Report relating to a proposed or retrofit Walgreens, Islamorada, FL |
| 8/10 | Plaintiff | 2010-0227 | 09-59036-CA-27 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida [depo on 8/24/10; testimony at trial on 11/18/10] | Caja De Ahorros De Galicia, Caixa Galicia, Company, An International Bank Agency, Plaintiff, vs. Homero Meruelo, Jr., An Individual, Defendant. | Gary M. Carman, Esq. Gray Robinson, P.A., on behalf of the Plaintiff | Breach of the commercial guaranty by the defendant based on the recording of a covenant running with the land in lieu of title and the termination of the covenant in connection with an agreement for deed in lieu of foreclosure relating to the Grand Bay Hotel, Coconut Grove, FL |
| 9/10 | Defendant | 2010-0019 | VO-CV-80043-RYSKAMP / VITUNAC | United States District Court, Southern District of Florida | Regions Bank, Plaintiff, vs. Chicago Title Insurance Company, Defendant | Dennis Bailey, Trial Attorney Fidelity National Title Group, Inc., on behalf of the Defendant | Compensatory Damage Analysis relating to claim for loss and damages resulting from a billboard lease that allegedly impaired the security interest of the insured's 14± acres, Palm Springs FL |
| 5/11 | Arbitrator | 2011-0301 | 32 119 Y00027 11(AAA) 10-1541GCAZ (Circuit Court) | American Arbitration Association, Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | Friedman ("Claimant") vs. Saavedra ("Respondent") | American Arbitration Association | As Arbitrator and Finder of Facts for Specific Performance by the purchaser in re: Counter Claim for Liquidated Damages by the seller in re: terms and conditions as set forth in a contract for Condominium Unit Purchase and Sale Agreement |
| 8/11 | Defendant | 2011-0078 | 05-08587CA06 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | Sarria Holdings, Inc., Plaintiff vs. Motiva Enterprises, Inc., Defendant | Steven D. Ginsburg, Esq. Duane Morris, LLP, on behalf of the Defendant | Damage Claim of monetary losses from lost uses and rental income claimed from ground contamination by the former oil company's service station after the termination of the lease |
| 8/11 | Plaintiff | 2011-0255 | 04-11268-CA-22 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | Western United Life Assurance Company, a Washington Corporation in rehabilitation; and Old Standard Life Insurance Company, an Idaho Corporation in rehabilitation, Plaintiff vs. G-2 Development, Inc., a Florida Corporation; and Clifford Shane Rolls, et al., Defendant | Jon Wilson, Esq. Edmund T. Baxa, Jr., Esq. Foley & Lardner, LLP, on behalf of the Plaintiff | Action by lender to foreclose a property and a counter claim by borrower for material breaches by the lender and lost profits |
| 10/11 | Petitioner | 2011-0077 | 10-22456 CA 21 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | Centennial Homeowners Association, Inc., a Florida not-for-profit corporation, Petitioner, vs. Dolomite Co., Inc., a Colorado corporation, Respondent | William J. Motyczka, Esq. Law Offices of William J. Motyczka, on behalf of the Petitioner | Betterment Petition in response to an ejectment rendered by the 11th Judicial Circuit Court as to the ownership of common elements within the HOA's subdivision |
| 10/11 | Plaintiff | 2010-0213 | 05-24857-CA 40 | Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | David Scharlin, Amy Scharlin, Howglo, Inc., a Florida Corporation, Plaintiffs vs. Albanese Popkin Hughes Cove, Inc. et al | Rayme Walsh, Esq. Hall Lamb and Hall, P.A. on behalf of the Plaintiff | Claim of damages caused by defective work resulting in unsuitable living of a luxury residential property. Intended purpose was to conclude the retrospective Fair Rental Values and monthly occupancy expenses. |

IRR

RESOURCE REVIEW

RECOMMENDED READING

# USPAP in Plain English

*By John J. Leary, CRE, FRICS, and Albert W. Franke III (2006, Elm City Clarion Associates LLC, New Haven, Conn., 65 pages)*

REVIEWED BY MICHAEL Y. CANNON CRE



AUTHORS JOHN J. LEARY, CRE, FRICS, AND ALBERT W. FRANKE III are highly qualified to produce this resource, which is easy to read and summarizes, in outline format, the 2006 edition of the Uniform Standards of Professional Appraisal Practice as defined by the U.S.-based Appraisal Foundation.

Leary is an MAI designated member of the Appraisal Institute, and president of a firm that provides counseling and valuation services relating to dispute resolutions and appraisal reviews in the northeastern U.S. In addition, he served as vice chair and chair of the Appraisal Foundation's Appraisal Standards Board from 1989 to 1994.

Franke is an SRA designated member of the Appraisal Institute and past member of the Appraisal Institute's National Board of Directors. He is president of a firm that provides appraisal and litigation support services throughout Connecticut.

The authors state plainly what is expected by practicing appraisers' understanding and interpretation of USPAP rules and standards. This resource book clearly explains the intended use of an appraiser's assignment, but addresses only USPAP standards 1 and 2, which relate to real property appraisal, analysis and opinion. The authors did not address appraisal consulting (standard 3), mass appraisal (standards 4 and 5), personal property appraisals

(standards 7 and 8) or business valuations (standards 9 and 10).

The book outlines new or changed definitions, addressing definitions for appraisal, appraiser's peers and scope of work, and identifies key areas of USPAP that changed, effective July 1, 2006, with emphasis geared toward residential appraisal work.

The major standard change in the "scope of work" rule shifts the responsibility back to the appraiser from the client or intended user, and benchmarks the appraiser's



About the Reviewer

*Michael Y. Cannon, CRE, is the managing director of Integra Realty Resources — South Florida. He is a practicing appraiser, market analyst and advisor with more than 40 years of experience. He has written several monographs and papers relating to appraisal theory and practice. Cannon provides consulting services for all facets of real estate analysis and investment, and has been qualified as an expert witness in various courts and mediation/arbitration disputes. His areas of expertise include ad valorem assessment analysis, land use, bulsing and fractional interests, and property valuation of urban and mixed-use developments. He holds MAI, SRA and ASA designations.*

**RESOURCE REVIEW**
## USPAP in Plain English

value opinion to meet or exceed what other intended users would expect, and what would meet or exceed the level of work and credibility of the appraiser's peers for the type of appraisal assignment.

Leary and Franke stress very clearly that the appraisal process places the responsibility of appraisal with the appraiser. They also highlight that the appraiser is to obtain all relevant information from the client before the preparation of the appraisal in order to minimize hypothetical conditions and assumptions so that the intended user can rely on the appraiser's value opinion.

The authors identify 11 content items required for a credible report, and emphasize that the appraiser's work file should be well organized and contain all supporting information and data that the appraiser uses.

In summary, the USPAP 2006 edition re-emphasizes and cautions the appraiser to report and understand the intended use of an appraisal, and who the intended users are—and to use only appropriate scope of work and reporting formats; i.e., an appraisal form may not be the proper reporting format if the intended use differs from the intended use stated in the appraisal form.

*USPAP in Plain English* is an appropriate resource for not only the appraiser, but also for the user of residential appraisal services. ∎

April 2002

# *The* Appraisal Journal

Volume LXX    Number 2



Fiber Optic Communication Corridor
Right-of-Way Valuation Methodology

*See inside for more*



Appraisal
Institute

*Professionals Providing
Real Estate Solutions*

# notes and issues

# The Role of the Real Estate Appraiser and Assessor in Valuing Real Property for Ad Valorem Assessment Purposes

*by Michael Y. Cannon, MAI, SRA*

## Background

The traditional role of the real estate appraiser is to value a property's interests in real estate ownership for many different reasons. Ownership interests (customarily valued) can be the fee simple estate, leased fee estate, leasehold estate, or a fractional interest in real estate ownership.

The role of the assessor is to value the property interests in real estate strictly for ad valorem assessment and tax purposes. The assessor's primary value concern is "value in exchange." Therefore, in order for the real estate appraiser and the assessor to be on common ground with one another for valuation for ad valorem assessment and tax purposes, both the appraiser and assessor must consider basic value theories and definitions and employ applicable valuation theories as the foundation for the value sought.

Value represents the monetary worth of property, goods, or services to buyers and sellers. Property or ownership rights are subject to law. The value of these rights is the focus of real estate appraisal. Value considerations are the central concern of all real estate activities.

Both the assessor and the real estate appraiser must be familiar with and take into consideration federal, state, and local laws, regulations, and jurisdictional rules that govern the land, especially for ad valorem assessment and tax purposes. The law recognizes the possible conflict between private ownership rights and public use rights which, if not clear or defined, set the stage for differing value conclusions and opinions by appraisers and assessors in an ad valorem assessment and tax matter disputes.

The United States Supreme Court and the United States Circuit Court of Appeals have not defined market value of real property in an ad valorem tax case. However, the Supreme Court did define market value for personal property in an ad valorem tax case in 1865.[1]

Value is extrinsic. It is created in the minds of people. It can change. It is complex. In order for property to have value it must have four factors present—utility, scarcity, desire, and purchasing power.

## The Term "Value"

The term "value" is often used inaccurately by non-qualified practitioners. It is an abstract word with many meanings. Qualified appraisers and assessors who recognize and employ value and valuation theories can conclude an opinion of value with the following value concepts (subject to proper definition): fair market value (for income, estate, and gift taxes), fair value, book value, intrinsic value, equilibrium value, public interest value, investment value, going concern value, use value, liquidation value, salvage value, insurable value, and assessed value. These are just a few value terms commonly addressed by practitioners. In the economic sense, market value has a specific definition—the present worth of future benefits realized from ownership.

## Modern Value Theory

Principles that have influenced modern day value theories began in the 18th and 19th century. Classical theorists, including Adam Smith, suggested that

Note: This speech was first presented by Michael Y. Cannon, Managing Director, Integra Realty Resources AREEA/South Florida for the International Association of Assessing Officers at the 67th Annual Conference in Miami Beach, FL.

1. See *Cliquot's Champagne*, 70 U.S. 125 (1865).

in addition to land and labor, capital becomes a primary agent of production. David Ricardo developed the rent theory relating to highest and best use and land residual returns. John Stewart Mills defined the relationship between value in use and ownership interest (i.e., capital value of the land ownership). Karl Marx, however, expounded that all value is the direct result of labor and that increased wages would lower capitalistic profits. Eugen Von Boehm-Banerk and William Stanley Jevons linked value with utilization of, and demand for, an item and opined that value then becomes a function of demand with utility as a basic precept. Alfred Marshell merged the supply-cost theory with the demand-price theory, which forms the basis for contemporary modern day value theory.

## Value Theory vs. Valuation Theory

Arthur J. Mertzke linked modern day value theory with valuation or appraisal theory. He translated value theories into a workable valuation or appraisal theory method and established a clear foundation for utilizing three basic valuation methods or approaches.

K. Lee Hyder, Harry Grant Atkinson, and George L. Schmutz developed the basic systematic procedures for applying the three basic methods or approaches into indicators of value. Today, valuation and appraisal theories continue to evolve. Education requirements are stringent and appraisers and assessors can make use of computer technology in an ever-expanding database that presents new challenges and debates on applicable valuation models, methods, and techniques employed. However, the question being raised by theorists is whether modern valuation tools may not necessarily reflect economic forces and value theories that affect value.

## Standards of Professional Appraisal Practice

In the practice of appraisal, the appraiser and assessor are both required to adhere to the Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Foundation. The real estate appraiser is required to adhere to standard rules for real property, personal property, consulting, business appraisal, development, and reporting that are covered by (USPAP) Standards 1, 2, 4, 5, 7, 8, 9, and 10.

The assessor is primarily required to adhere to USPAP Standard 6, mass appraisal development, and

reporting and/or other USPAP Standards. Both the real estate appraiser and the assessor are also governed by the ethics, departure, jurisdiction exception, and supplemental standards rules, as well as conduct, management, confidentiality, record keeping, and competency. They are also expected to subscribe to the USPAP's definition of market value unless modified by governing law, regulations, and jurisdictional rules.

## Methods and Approaches to Value

Both the appraiser and assessor should utilize the following recognized methods or approaches that are supposed to reflect an indicated value. They are commonly known as the cost (summation) approach, sales comparison approach, and income (capitalization) approach. Appraisers and assessors can also utilize derivatives of these methods or approaches, (depending upon the scope and purpose of appraisal) for the type of property under appraisement.

The term "cost," in the cost (summation) approach, relates to production or creating. Cost may be historical, a current act, or an estimate. It includes direct costs of labor and material plus indirect costs, including professional service fees, governmental fees, administration/coordination marketing/sales/leasing and financing expenses, and profit. In the cost (summation) approach, the following economic/appraisal principles apply: substitution, supply and demand, balance, externalities, and highest and best use.

The term "market" (in the sales comparison approach) reflects the interaction of individuals who exchange real property rights for other assets such as money. For a market to exist, there must be enough buyers, sellers, and product to provide competition. Out of this competition, one could find the highest tendency in the central tendency. In an active market, prices rise above the historical price levels that some believe to be normal or intrinsic. The price paid is an accomplished fact whether at the highest level of the tendency, the lowest level of the tendency, or at the central tendency. The price paid may or may not be market value (as defined), which should be at the highest level of the central tendency.

In the sales comparison approach, which reflects prices paid in the market, the following economic/appraisal principles apply: substitution, supply and demand, balance, and externalities. In the term "incomeproducing," in the income (capitalization)

▬▬▬▬ notes and issues

approach, the real estate may be considered an investment when the investor views the earning power of the property as a critical element that affects its value. A basic investment premise is that the higher the earnings, the higher the value, provided the degree of risk remains constant.

In the income (capitalization) approach, the following economic/appraisal principles apply: anticipation and change, substitution, supply and demand, balance and externalities, property rights, economic forces, and principals.

## Ownership Rights

In real estate ownership, there are six basic rights associated with ownership (identified as SLUGER).[2]

---

Bundle of Rights

Sell the right to sell

Lease the right to lease or rent

Use the right to use

Give away the right to give away

Enter the right to enter or leave (real property)

Refuse the right to refuse to do any of these [3]

---

## Public and Private Limitations and/or Restrictions

Ownership may be subject to public and private limitations and/or restrictions. The government can impose certain restrictions and limitations for the common good of its citizens. Four basic restrictions that government imposes are: taxation, eminent domain, police power, and escheat. These governmental restrictions or limitations raise money to fund government, take property for the common good of its citizens (with just compensation payment), regulate and/or limit the use of property, and obtain ownership for non-payment of taxes or when there are no legal heirs upon death.

Private restrictions or encumbrances that also may affect ownership rights and value could include rights of co-ownership, life estate(s), condominium and subdivision rights, easements, covenants, conditions and restrictions, liens, mortgages or deed of trusts, judgments, and leases or possessionary interests by non-owners. These public and private restrictions and/or limitations that can affect the value must

be known and addressed by both the appraiser and assessor. Depending on state statues, laws and regulations, public and/or private limitations and/or restrictions may or may not properly be factored in ad valorem assessment valuations by the appraiser or assessor.

## Economic Forces and Principles

Appraisers and assessors must give consideration to the following economic forces that influence real property values. If their respective value opinions are to be credible. These economic forces are social, economic, governmental, and environmental forces that are always present and must be reflected in the valuation analysis within the three approaches to value.

In addition, appraisers and assessors must also consider economic principles for their understanding and assessment of the market's environment and trends. These principles are:

- *Principle of anticipation* is the perception that value is created by the expectation of benefits to be derived in the future.
- *Principle of change* is the result of the relationship between cause and effect.
- *Principle of supply and demand* reflects the price of a commodity, good, or service which varies directly, but not necessarily proportionately, with demand, and inversely, but not necessarily proportionately, with supply.
- *Principle of competition* (as related to the principal of supply and demand) is the interactive efforts of two or more potential purchasers to secure a purchase.
- *Principle of substitution* reflects when several similar or commensurate commodities, goods, or services are available and the one with the lowest or best price attracts the greatest demand and widest distribution.
- *Principle of opportunity cost* is the cost of options foregone or the opportunities not chosen.
- *Principle of contribution* states that the value of a particular component is measured in terms of its contribution to the value of the whole, or in absence would detract from the value of the whole.

---

2. These legal rights are commonly known as the "bundle of rights," since these ownership rights are divisible. Property ownership may or may not include all of the following basic bundle of rights.

3. *Property Assessment Valuation*, 2nd Edition, International Association of Assessing Officers (IAAO).

notes and issues

## Figure 1 Valuation in the Assessment Process



—— notes and issues

**Figure 2** The Valuation Process



• *Principle of surplus productivity* is the net income that remains after the cost of labor, capital, and management or coordination have been paid.
• *Principle of conformity* holds that value is created and sustained when the physical characteristics conform to the demands in its market.
• *Principle of externalities* reflects economies or disconomies outside a property may have a positive or negative effect upon its marketability and value.

**Highest and Best Use**

The appraiser and assessor's analysis of the property's highest and best use analysis is an essential fundamental foundation for appraisal. The highest and best use focuses on market forces and the feasible uses of a property. Highest and best use must identify the reasonably probable use, the legal use, (vacant or improved) the physically possible use and the financially feasible use or maximally productive use.

notes and issues ▬▬▬

## Conclusion

In most, if not all, valuation disputes the appraiser and assessors quantitative analysis and determination of highest and best use is not addressed the same, resulting in differing value opinions and conclusions.

However, when the appraiser and assessor systematically follow and employ the appraisal/valuation process, (whether it be property specific or by mass analysis), the appraiser and assessor conclusions and opinion of value should be similar if all economic and physical factors relating to the scope and purpose of the analysis are factored.

Differing opinions and conclusions arise when one or more factors are included or excluded. The appraiser and assessor must also consider all relevant governing laws, statutes, rules or regulations that may influence value for ad valorem assessment purposes.

### References

Appraisal Institute. *The Appraisal of Real Estate,* 11th ed. (Chicago: Appraisal Institute, 1996).

International Association of Assessing Officers. *Property Assessment Valuation,* 2nd ed. (Chicago: International Association of Assessing Officers, 1996).

Michael Y. Cannon, MAI, SRA, ASA, CRE, is managing director of Integra Realty Resources-AREEA/South Florida and has been recognized as an authority and expert in market and valuation analysis for ad valorem assessment, real property, business/intangible, and partial interests appraisals and studies. Mr. Cannon has been an expert witness in Federal, State, and Bankruptcy Courts and has testified before the U.S. Senate Banking Committee in Washington, D.C. He is certified by American Arbitration as a Commercial Arbitrator. *Mr. Cannon has authored a Monogram entitled* "Real Estate Market Analysis in the Valuation Process" published in the Technical Report of the Appraisal Institute. Mr. Cannon writes a weekly real estate column for the Miami Herald and is routinely quoted in the local and national media. Integra Realty Resources is the largest real estate appraisal and consulting firm in the U.S. with 45 regional offices located in 28 states.