## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                                    Case No. 11-35884-RAM

TOWN CENTER AT DORAL, L.L.C.,                             Chapter 11
et al.,

            Debtors.                              (Jointly Administered)

_____/

### REPLY OF THE INDENTURE TRUSTEE IN SUPPORT OF ITS AND THE BONDHOLDER'S STATUS AS A "PARTY IN INTEREST" THAT MAY FULLY AND COMPLETELY PARTICIPATE IN CONFIRMATION MATTERS

U.S. Bank National Association, as indenture trustee with regard to the Bonds and under their Indenture as shown on the attached **Exhibit "A"** (the "Indenture Trustee"), replies in support of its and the bondholder's status as a "party in interest" that may fully and completely participate in all matters concerning confirmation of the *Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Plan") filed by the Debtors.

### Reply

Nowhere in their Objection [ECF No. 143] do the Debtors address the sole issue presented in the Indenture Trustee's Motion [ECF No. 132] and the Bondholder's Motion [ECF No. 131]: are the Indenture Trustee and the Bondholder "parties in interest"? The simple answer based on the governing legal standards and undisputed facts of this case is that both the Indenture Trustee and the Bondholder are "parties in interest."

Under the case law, the standard for a "party in interest" is "anyone who has a pecuniary interest, practical stake, or legally-protected interest that could be affected by the bankruptcy proceeding," and this standard "should be construed broadly to allow **all** parties affected by a chapter 11 proceeding to be heard." *In re Wells*, 227 B.R. 553, 559 (Bankr. M.D.Fla. 1998)

(emphasis added); *see also* Indenture Trustee Motion at 6-8. There is no question, then, that Bondholder, and the Indenture Trustee on behalf of the Bondholder, are "parties in interest" as each meets all three of a pecuniary interest, practical stake, or legally-protected interest, even though any one of the three would be sufficient to establish status as a "party in interest."

As set forth in the Indenture Trustee's Motion, confirmation of the Debtors' Plan will affect a pecuniary interest, practical stake, and legally-protected interest of the Bondholder, and the Indenture Trustee on behalf of the Bondholder, for (at least) three reasons. First, the Debtors' proposed restructuring of the bond debt assessments will directly affect the pecuniary interests of the Indenture Trustee, and therefore the Bondholder, because the Bonds are solely payable from the bond debt assessments. Second, the Plan will affect the Indenture Trustee's right, and therefore the Bondholder's right to direct the Indenture Trustee to exercise such right—and such right is a legally-protected interest—to cause the District to foreclose when the Bonds are not paid as and when due. Third, the Plan will affect the Bondholder's practical stake in the Bond Debt Assessments in light of the explicitly conduit nature of the District.

The Debtors do not and cannot dispute these facts, and nothing in the Debtors' Objection contests, or even addresses, the standard for "party in interest." Rather than address the substantial matters of law and fact that underlie the Indenture Trustee's and the Bondholder's status as a "party in interest," the Debtors advance make-work arguments that have little or nothing to do with the sole issue presented by the Indenture Trustee Motion and the Bondholder Motion.[1]

---

[1] The tactical purpose of these unsustainable positions is clear: to inject uncertainty in the trial preparation of the District, the Indenture Trustee and the Bondholder by raising the possibility that one or more counsel on the trial team may not ultimately be able to participate at the January 18th or subsequent hearings. If this purpose was not clear from the circumstances, it is certainly revealed in the quickly-abandoned false dichotomy the Debtors created by stating in their emails to counsel that the Debtors would not object to the Indenture Trustee taking depositions but would object to the Indenture Trustee participating at the hearing, and then quickly abandoning that position in the Objection.

For example, the Debtors argue that the Indenture Trustee "does not have any right to vote on the Plan nor to participate in distributions funded under the Plan." Objection ¶ 13. Yet the Indenture Trustee did not request in the Indenture Trustee Motion either a right to vote on the Debtors' Plan or a right to receive distributions under any confirmed plan.

The Debtors also waste effort arguing that the Bondholder is not a creditor of the Debtors. Objection ¶¶ 15-17. This is simply irrelevant: a party need not be a "creditor" to be a "party in interest." This follows from the plain language of Section 1109(b), and the "pecuniary interest, practical state, or legally-protected," substance-over-form standard courts apply to determine who is a party in interest, and the case of *Unofficial Committee of Zero Coupon Noteholders v. Grand Union Company (In re Grand Union Company)*, 179 B.R. 56 (D. Del. 1995). *See* Indenture Trustee Motion at 11-14.

The Debtors also restate the fiction that the Bondholder, and the Indenture Trustee on behalf of the Bondholder, is a stranger to the Debtors. As is explained at length in the Indenture Trustee's Motion, the bond debt assessments the Debtors seek to restructure through their Chapter 11 cases are the sole source of repayment for the Bonds. Moreover, the Debtors worked to cause the issuance of the Bonds and the creation of the conduit structure whereby the Bonds would be repaid solely from the bond debt special assessments.[2] That the Debtors are no stranger to the Bondholder is further demonstrated by the *Closing Certificate of the Developers as Required by Section 6(XI) of the Bond Purchase Contract*, a copy of which is attached here as **Exhibit "B"** (the "**Certificate**") Among the many certifications made by the Debtors to assist in causing the issuance of the Bonds, the following are particularly noteworthy in dispelling the fiction that the Debtors are strangers to the Bonds and the Bondholder:

---

[2]    At the time of the issuance of the Bonds, the Limited Offering Memorandum (which the Debtors certified to) stated that all five current members of the Board of the District were employees of the Debtors or their subsidiaries or affiliates.

> The Developers acknowledge that the Special Assessments will be levied by the District at times, and in amounts sufficient, to enable the District to pay debt service on the Series 2006 Bonds when due (the foregoing is referred to as the "Debt Service Acknowledgment"). Each Developer agrees that in the event it transfers ownership of any lands in the District owned by it (other than in the ordinary course of business) without first causing the lien of the Special Assessments to be extinguished with respect to such lands it will obtain from any transferee and deliver to the District the Debt Service Acknowledgment.

Certificate ¶ 11 (emphasis added).  Thus, not only do the Debtors acknowledge that the bond debt assessment will be levied at time and in amounts sufficient to pay the Bonds, the Debtors also agreed that they would only transfer land to a party willing to acknowledge, and ultimately pay, the full amount of the bond debt assessment allocated to such parcel of land,[3] an agreement the Debtors' Plan manifestly fails to meet.

In addition, the Certificate also states:

> Representatives of the Developers have provided information to Landmark at Doral Community Development District (the "District") to be used in connection with the offering by the District of its $30,320,000 Special Assessment Bonds, Series 2006A and its $41,180,000 Special Assessment Bonds, Series 2006B (collectively, the Series 2006 Bonds")

> The Developers have reviewed and approved the information contained in the Limited Offering Memorandum under the captions "THE DEVELOPMENT," "THE DEVELOPER," "THE SERIES 2006 PROJECT," and "LITIGATION - The Developer'' and with respect to the Developer and the Development (as such terms are used in the Limited Offering Memorandum) under the caption "BONDHOLDERS' RISKS" and warrants and represents that such information does not contain any untrue statement of a material fact and

---

[3]    Reiterating the spirit of Paragraph 11, of the Certificate, the Debtors further covenanted to comply with Chapter 190.048, Florida Statutes, which requires a specific disclosure statement about assessments be included in large, bold type, immediately before the purchaser signature,  in each contract for the initial sale of a parcel of real property and/or residential unit in a district.  Certificate ¶ 13.

Certificate ¶¶ 2 & 4.  The Debtors affirmatively assisted in the issuance of the Bonds by providing information to the District and by making warranties and representations in connection with the Limited Offering Memorandum.[4]

Finally, the Debtors seek to exclude the Bondholder—the party with the ultimate economic interest in the bond debt assessments—based on their self-serving and incorrect reading of the Indenture.  The rights under Section 10.07 inure solely to the benefit of the Indenture Trustee and the majority bondholders.  The Debtors have no standing to assert the rights of the majority bondholders.  Moreover, here the Bondholder holds 100% of the Bonds and is acting in coordinate fashion with the Indenture Trustee.  Nothing in the Indenture gives the Debtors the authority to raise rights existing solely between the Indenture Trustee and the Bondholder to silence the Bondholder, the party with the ultimate economic interest in the bond debt assessments.[5]  Moreover, nothing in the Indenture purports to define who is a "party in interest" in subsequent developer bankruptcies.

---

[4]   As part of the issuance of the Bonds, the Debtors also executed the *Declaration of Consent to Jurisdiction of Landmark at Doral Community Development District and to Imposition of Special Assessments*, a copy of which is attached here as **Exhibit "C"** (the "**Consent**;" recorded on October 11, 2006 in the Official Records of Miami-Dade County), which explicitly links the Bonds and the special assessments that repay them:

> The Landowner, their respective heirs, successors and assigns hereby consent to the imposition of special assessments by the District upon the Land to secure the District's Special Assessment Bonds, Series 2006A and Series 2006B, agree and acknowledge that the District undertook all proceedings with respect thereto in accordance with applicable Florida law, agree and acknowledge that the special assessments are legal, valid and binding first liens upon the property against which such assessments are made, coequal with the lien of all state, county, district and municipal taxes, superior in dignity to all other liens, titles and claims, until paid. (Consent ¶ 2.)

The Consent states that it runs with the Land and is binding on the Debtors and all persons taking title to all or any part of the Land and their successor in interest.

[5]   *In re Delta Airlines, Inc.*, 370 B.R. 537, 547-48 (Bankr. S.D.N.Y. 2007), cited by the Debtors, supports this point.  The issue in that case was whether the indenture trustee had authority to bind 100% of the bondholders to a plan settlement where approximately 90% in number and amount of bondholders had voting in favor of the settlement.  In holding that the indenture trustee had the necessary authority, the bankruptcy court actually heard and ruled on the minority bondholders objections on the merits.  The court did not simply dismiss the minority bondholders' objections as interposed by non-parties in interest.  Thus, the bankruptcy court implicitly concluded that the minority bondholders were parties in interest entitled to object to confirmation.  Here of course 100% in number and amount of the bondholders oppose the Debtors' Plan, and as a party in interest

### Conclusion

Under the governing legal standards and undisputed facts the Bondholder, and the Indenture Trustee on behalf of the Bondholder, are "parties in interest" with respect to confirmation of the Debtors' Plan. Respectfully, the Court should reject the Debtors' attempt to silence the Bondholder, notwithstanding its clear right to be heard and participate under Sections 1109(b) and 1128(b) of the Bankruptcy Code. The Court should also caution the Debtors against the tactical use of this issue and grant further relief in the form of a presumption that the Indenture Trustee and the Bondholder are "parties in interest" as to any matter in this case unless the Debtors obtain a determination from the Court to the contrary.

WHEREFORE, the Indenture Trustee respectfully requests that the Court enter an Order granting the Indenture Trustee and Bondholder Motions and overruling the Objection.

---

under the governing legal standards defining that term, the Bondholder should have the full opportunity to participate. The other cases relied upon by the Debtors have nothing whatsoever to do with a bondholder's status as a "party in interest" under the Bankruptcy Code. *Finisar Corp. v. U.S. Bank Trust Nat'l Assoc.*, 2008 WL 2466014 (N.D. Cal. May 27, 2008) (concerning a common interest agreements); *In re Hibernia*, 733 F.2d 1403 (10th Cir. 1984) (concerning participation agreements outside of bankruptcy).

Dated: January 17, 2012.                    Respectfully submitted,

                                            **Greenberg Traurig, P.A.**
                                            333 Avenue of the Americas
                                            Miami, Florida 33131
                                            Telephone: (305) 579-0730
                                            Facsimile: (305) 579-0717

                                            By: /s/ *John B. Hutton, III*
                                                John B. Hutton, III
                                                huttonj@gtlaw.com
                                                Florida Bar No. 902160
                                                John R. Dodd
                                                doddj@gtlaw.com
                                                Florida Bar No. 38091

                                            *Counsel to the Indenture Trustee*

### Certificate of Service

I hereby certify that on January 17, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF, which is incorporated here by reference, or by first class U.S. mail for those counsel or parties identified on the Service List below, who are not authorized to receive electronically Notices of Electronic Filing.

                                            /s/ *John B. Hutton, III*
                                            John B. Hutton, III

## Service List

Daniel Y. Gielchinsky
1450 Brickell Ave #2300
Miami, FL 33131

Michael Eckert
119 S. Monroe Street #300
POB 6526
Tallahassee, Florida  32301

Glenn Moses
100 SE 2nd Street
44th Floor
Miami, Florida  33131

Betty M Shumener
550 South Hope St #2300
Los Angeles, CA 90071

## Exhibit A

**Landmark at Doral Community Development District (City of Doral, Florida)
Special Assessment Bonds, Series 2006A and 2006B** (collectively, the "Bonds"), issued
pursuant to that Master Trust Indenture and that First Supplemental Indenture, both dated as of
October 1, 2006, and both by and between Landmark at Doral Community Development District
and U.S. Bank National Association, as Trustee (as supplemented and/or amended from time to
time in accordance with their terms, the "Indenture").

Exhibit "B"

(5.1)

**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT**
**(CITY OF DORAL, FLORIDA)**
**$30,320,000**
**SPECIAL ASSESSMENT BONDS, SERIES 2006A**
**$41,180,000**
**SPECIAL ASSESSMENT BONDS, SERIES 2006B**

**CLOSING CERTIFICATE OF THE DEVELOPERS**
**AS REQUIRED BY SECTION 6(XI)**
**OF THE BOND PURCHASE CONTRACT**

On behalf of Landmark at Doral East, LLC, Landmark at Doral South, LLC, Landmark Club at Doral, LLC, Landmark at Doral Developers, LLC, Town Center at Doral, LLC, and EB Developers, Inc., each a Florida limited liability company (individually, a "Developer" and collectively, the "Developers") the undersigned hereby certifies as follows:

1.       The Developers are each duly created, validly existing and in good standing as a limited liability companies under the laws of the State of Florida.

2.       Representatives of the Developers have provided information to Landmark at Doral Community Development District (the "District") to be used in connection with the offering by the District of its $30,320,000 Special Assessment Bonds, Series 2006A and its $41,180,000 Special Assessment Bonds, Series 2006B (collectively, the "Series 2006 Bonds") pursuant to a Preliminary Limited Offering Memorandum dated September 6, 2006 and a final Limited Offering Memorandum dated September 21, 2006 (collectively, the "Limited Offering Memorandum").

3.       Each of the following Agreements (collectively, the "Developer Agreements") is a valid and binding obligation of the Developers, enforceable against the Developers in accordance with its terms:  True-Up Agreement, dated as of October 10, 2006, between the Developer and the District , the Continuing Disclosure Agreement, dated October 1, 2006, among the Developers, the District, and Wrathell, Hart, Hunt & Associates, LLC, as dissemination agent, the Real Property Acquisition Agreement, dated as of November 10, 2005, the First Amendment to Assignment and Acquisition Agreement, dated as of March 9, 2006, the Assignment and Acquisition Agreement (Improvements), dated November 10, 2005 (collectively, the "Acquisition Agreement"), between the District and the Developer, and the Declaration of Consent to Jurisdiction of Landmark at Doral Community Development District and to Imposition of Special Assessments (the "Declaration of Consent"), dated as of October 10, 2006, between the District and the Developers.

4.       The Developers have reviewed and approved the information contained in the Limited Offering Memorandum under the captions "THE DEVELOPMENT," "THE DEVELOPER," "THE SERIES 2006 PROJECT," and "LITIGATION – The Developer" and with respect to the Developer and the Development (as such terms are used in the Limited Offering Memorandum) under the caption "BONDHOLDERS' RISKS" and warrants and represents that such information does not contain any untrue statement of a material fact and

does not omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading.  In addition, the Developers are not aware of any other information in the Limited Offering Memorandum that contains an untrue statement of a material fact or omits to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

5.    There has been no material adverse change in any information supplied by the Developers to the Underwriter or the District with respect to the sale and marketing of the Series 2006 Bonds , the Series 2006 Project, the Developers, or the Development and such information accurately and fairly presented the information purported to be shown and contained no untrue statement of a material fact or omitted to state any material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading as of the date of the Limited Offering Memorandum and as of the date hereof.

6.    There has been no action taken by or omitted by the Developers that impairs the contemplated transactions by the District, including:  (a) the issuance and sale of the Series 2006 Bonds, upon the terms set forth in the Contract of Purchase, and in the Master Trust Indenture between the District and the Trustee, dated as of October 1, 2006 (the "Master Indenture"), as supplemented and amended by the First Supplemental Trust Indenture, dated as of October 1, 2006 (the "First Supplemental Indenture," and collectively with the Master Indenture, the "Series 2006 Indenture"); (b) the approval of the Limited Offering Memorandum and the signing of the Limited Offering Memorandum by a duly authorized officer of the District; and (d) the execution, delivery and receipt of the Contract of Purchase, the Series 2006 Bonds, the Series 2006 Indenture, the Developer Agreements, and any and all such other agreements or documents as may be required to be executed, delivered and received by the District in order to carry out, give effect to, and consummate the transactions contemplated by the Limited Offering Memorandum and the Indenture.

7.    The consummation of the transactions described in the Limited Offering Memorandum does not on the date hereof and will not at the time of such consummation, conflict with or constitute on the part of the Developers a breach or violation of the terms and provisions of, or constitute a default under any existing agreement or indenture, mortgage, lease, deed of trust, note or other instrument, to which the Developers, either individually or collectively, are or may be subject or by which it or its properties are or may be bound.  To our knowledge, the consummation of the transactions described in the Limited Offering Memorandum does not, on the date hereof, and will not at the time of such consummation, conflict with or constitute on the part of the Developers, either individually or collectively, a breach or violation of the terms and provisions of, or constitute a default under any existing constitution, laws, court or administrative rule or regulations, to which it is subject, or any decree, order or judgment to which it is a party or by which it is bound in force and effect on the date hereof, which would have a material adverse effect on the Series 2006 Bonds.

8.    The Developers, either individually or collectively, are not in default under any other resolution, agreement or indenture, mortgage, lease, deed of trust, note or other instrument to which the Developers, either individually or collectively, are or may be subject, or by which it or its properties are or may be bound, which would have a material adverse effect on the Series 2006 Bonds , the Series 2006 Project or the Development.

9.     There is no action, suit or proceeding at law or in equity by or before any court or public board or body pending or, to the best of our knowledge, threatened against the Developers, either individually or collectively: (a) seeking to restrain or enjoin the issuance or delivery of the Series 2006 Bonds or the application of the proceeds thereof, (b) contesting or affecting the authority for the issuance of the Series 2006 Bonds or the validity or enforceability of the Series 2006 Bonds, the Series 2006 Indenture, the Contract of Purchase, the Developer Agreements or the transactions contemplated thereunder.

10.     Based on the knowledge of the undersigned representative, there is no litigation threatened or pending against the Developers, either individually or collectively, which may result in any material adverse change in Developers' ability to perform its obligations with respect to developing the Development.

11.     The Developers acknowledge that the Special Assessments will be levied by the District at times, and in amounts sufficient, to enable the District to pay debt service on the Series 2006 Bonds when due (the foregoing is referred to as the "Debt Service Acknowledgment"). Each Developer agrees that in the event it transfers ownership of any lands in the District owned by it (other than in the ordinary course of business) without first causing the lien of the Special Assessments to be extinguished with respect to such lands it will obtain from any transferee and deliver to the District the Debt Service Acknowledgment.

12.     The Developers are complying in all material respects with all provisions of applicable law in all material matters relating to the Development and its undertaking as described in the Limited Offering Memorandum and the Series 2006 Indenture including applying for all necessary permits. The Developers hereby certify that the Development: (a) is zoned and properly designated in the Comprehensive Plan for the District for its intended use; (b) all government permits other than certain permits, which permits are expected to be received as needed, have been received; (c) the is no default by the Developers of any zoning condition, permit or development agreement which would adversely effect the Developers' ability to complete the Development as described in the Limited Offering Memorandum and all Appendices; and (d) there is no reason to believe that any permits, consents and licenses required to complete the Development as described in the Limited Offering Memorandum will not be obtained as required.

13.     The Developer hereby covenants to comply with Chapter 190.048, Florida Statutes, as amended.

[Signature page follows]

Date: October 10, 2006

LANDMARK AT DORAL EAST, LLC,
a Florida limited liability company
LANDMARK AT DORAL SOUTH, LLC,
a Florida limited liability company
LANDMARK CLUB AT DORAL, LLC,
a Florida limited liability company
LANDMARK AT DORAL DEVELOPERS, LLC,
a Florida limited liability company
TOWN CENTER AT DORAL, LLC,
a Florida limited liability company
EB DEVELOPERS, INC.
a Florida limited liability company

For each by:

Name:  John Markey
Title:  Vice President                              10/4/06

[CERTIFICATE 5.1]

Exhibit "C"

CFN 2006R1087392 OR BK 24990 Pgs 1604 - 1611; (8pgs)
RECORDED 10/11/2006 13:38:11
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

(5.2(a))

This instrument was prepared by and when recorded should be returned to:

ROBERT C. GANG, ESQ.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, Florida 33131

(This space reserved for Clerk)

## DECLARATION OF CONSENT TO JURISDICTION OF
## LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT
## AND TO IMPOSITION OF SPECIAL ASSESSMENTS

The undersigned, as the owners of 100% of the developable land (the "Land") described in Exhibit A attached hereto and made a part hereof (the "Landowners"), intending that they and their respective successors in interest shall be legally bound by this Declaration, hereby declare, acknowledge and agree as follows:

1.     Landmark at Doral Community Development District (the "District") is, and has been at all times on and after September 2, 2005, a legally created, duly organized, and validly existing community development district under the provisions of Florida Statutes, Chapter 190, as amended (the "Act").   Without limiting the generality of the foregoing, the Landowners acknowledge that: (a) the petition filed with the Board of County Commissioners of Miami-Dade County, Florida (the "County") relating to the creation of the District contained all matters required by the Act to be contained therein and was filed in the manner and by the persons required by the Act; (b) Ordinance No. 05-153 (the "Ordinance"), effective as of September 2, 2005, was duly and properly adopted by the County in compliance with all applicable requirements of law; (c) the members of the Board of Supervisors of the District were duly and properly appointed pursuant to the Act or duly and properly elected to serve in their respective capacities and at all times had the authority and right to authorize, approve, and undertake all actions of the District approved and undertaken from September 2, 2005, to and including the date of this Declaration.

2.     The Landowner, their respective heirs, successors and assigns hereby consent to the imposition of special assessments by the District upon the Land to secure the District's Special Assessment Bonds, Series 2006A and Series 2006B, agree and acknowledge that the District undertook all proceedings with respect thereto in accordance with applicable Florida law, agree and acknowledge that the special assessments are legal, valid and binding first liens upon the property against which such assessments are made, coequal with the lien of all state, county, district and municipal taxes, superior in dignity to all other liens, titles and claims, until paid.

3.     The Landowner, their respective heirs, successors and assigns hereby waive the right granted in Chapter 170.09, Florida Statutes, to prepay the special assessments without

interest within thirty (30) days after the improvements are completed, in consideration of rights granted by the District to prepay the special assessments in full at any time, but with interest, and to prepay in part, but with interest, under the circumstances set forth in the resolutions of the District levying the special assessments.

4.    This Declaration shall represent a lien of record for purposes of Chapter 197, Florida Statutes, including, without limitation, Section 197.573, Florida Statutes.    Other information regarding the special assessments is available from Wrathell, Hart, Hunt and Associates, LLC, District Manager, 1200 NW 17th Avenue, Suite 13, Delray Beach, Florida 33445.

5.    This Declaration may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one (1) agreement and the signatures of any party to any counterpart shall be deemed to be a signature to, and may be appended to, any other counterpart.

**THE DECLARATIONS, ACKNOWLEDGEMENTS AND AGREEMENTS CONTAINED HEREIN SHALL RUN WITH THE LAND DESCRIBED IN EXHIBIT A HERETO AND SHALL BE BINDING ON THE LANDOWNER AND ON ALL PERSONS (INCLUDING CORPORATIONS, ASSOCIATIONS, TRUSTS, AND OTHER LEGAL ENTITIES) TAKING TITLE TO ALL OR ANY PART OF THE LAND, AND THEIR SUCCESSORS IN INTEREST, WHETHER OR NOT THE LAND IS PLATTED AT SUCH TIME. BY TAKING SUCH TITLE, SUCH PERSONS SHALL BE DEEMED TO HAVE CONSENTED AND AGREED TO THE PROVISIONS OF THIS DECLARATION TO THE SAME EXTENT AS IF THEY HAD EXECUTED IT AND BY TAKING SUCH TITLE, SUCH PERSONS SHALL BE ESTOPPED FROM CONTESTING, IN COURT OR OTHERWISE, THE VALIDITY, LEGALITY AND ENFORCEABILITY OF THIS DECLARATION.**

[Remainder of page intentionally left blank]

[SIGNATURE PAGE FOR DECLARATION OF CONSENT TO JURISDICTION OF
COMMUNITY DEVELOPMENT DISTRICT AND TO IMPOSITION OF SPECIAL
ASSESSMENTS]

Dated this 10th day of October, 2006.

WITNESS:

Print Name: _SCOTT A. SCHUHLE_

Print Name: _Halle Alexander_

**LANDMARK AT DORAL EAST, LLC,**
a Florida limited liability company
**TOWN CENTER AT DORAL, LLC,**
a Florida limited liability company
**LANDMARK AT DORAL SOUTH, LLC,**
a Florida limited liability company
**LANDMARK AT DORAL
DEVELOPERS, LLC,**
a Florida limited liability company
**LANDMARK CLUB AT DORAL, LLC,**
a Florida limited liability company

For each by:

By: _____
John Markey, Vice President  10/4/06

Acknowledged and Agreed to by:
**LANDMARK AT DORAL COMMUNITY
DEVELOPMENT DISTRICT**

ATTEST:

By: _____
Craig A. Wrathell, Secretary
Board of Supervisors

By: _____
Richard Schuerger, Chairman
Board of Supervisors

STATE OF FLORIDA               )
                               ) SS:
COUNTY OF *Broward*   )

    The undersigned, a Notary Public in and for the said County in the State aforesaid, do hereby certify that Richard Schuerger, Chairman of LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT (the "District") known to me to be the same person whose name is subscribed to the foregoing instrument appeared before me this day in person and acknowledged that he, being thereunto duly authorized, signed, sealed with the seal of said District, and delivered the said instrument as the free and voluntary act of said District and as his own free and voluntary act, for the uses and purposes therein set forth.

    WITNESS my hand and affixed my notarial seal in the County and State last aforesaid this 10th day of October, 2006.

NOTARY PUBLIC, STATE OF FLORIDA

*Rebecca C Medley*
(Name of Notary Public, Print, Stamp or Type as Commissioned)

Notary Public State of Florida
Rebecca C Medley
My Commission DD541891
Expires 05/04/2010

☐ Personally known to me, or
☑ Produced identification:

*Florida D.L.*
(Type of Identification Produced)

☐ DID take an oath, or
☐ DID NOT take an oath.

STATE OF FLORIDA )
) SS:
COUNTY OF *Broward* )

The undersigned, a Notary Public in and for the said County in the State aforesaid, do hereby certify that John Markey known to me to be the same person whose name is subscribed to the foregoing instrument as Vice President of LANDMARK AT DORAL EAST, LLC, TOWN CENTER AT DORAL, LLC, LANDMARK AT DORAL SOUTH, LLC, LANDMARK AT DORAL DEVELOPERS, LLC, and LANDMARK CLUB AT DORAL, LLC, appeared before me this day in person and acknowledged that he, being thereunto duly authorized, signed, sealed with the seal of said Residential Landowner, and delivered the said instrument as the free and voluntary act of said Residential Landowner and as his own free and voluntary act, for the uses and purposes therein set forth.

WITNESS my hand and affixed my notarial seal in the County and State last aforesaid this 10th day of October, 2006.

NOTARY PUBLIC, STATE OF FLORIDA

*Rebecca C Medley*

(Name of Notary Public, Print, Stamp or Type as Commissioned)

Notary Public State of Florida
Rebecca C Medley
My Commission DD541891
Expires 05/04/2010

☐ Personally known to me, or
☑ Produced identification:

*Florida D.L.*

(Type of Identification Produced)

☐ DID take an oath, or
☐ DID NOT take an oath.

# EXHIBIT A
## LEGAL DESCRIPTION

**PARCEL "A"**

Title vested in Landmark at Doral East, LLC, a Florida limited liability company

The East 415.00 feet of Tracts 24, 33, 34, 35 & 36 of "FLORIDA LANDS COMPANY'S SUBDIVISION NO. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida.

TOWN CENTER AT DORAL, LLC, a Florida limited liability company, appeared before me this day in person and acknowledged that he, being thereunto duly authorized, signed, sealed with the seal of said Residential Landowner, and delivered the said instrument as the free and voluntary act of said Residential Landowner and as his own free and voluntary act, for the uses and purposes therein set forth.

WITNESS my hand and affixed my notarial seal in the County and State last aforesaid this 10th day of October, 2006.

**PARCEL "B"**

Title vested in Town Center at Doral, LLC, a Florida limited liability company

Tracts 24, 25, 33, 34, 35, 36, 45, 46, 47 and 48; less all roads Right-of-way of records, of "FLORIDA LANDS COMPANY'S SUBDIVISION NO. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, Florida, which lies within the West ½ of Section 17, Township Map 53 South, Range 40 East, Miami-Dade County, Florida. Less the East 415.00 feet of Tracts 24, 33, 34, 35 and 36 thereof, and less that portion of Tract 45 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459.

AND LESS:
A portion of Tract 25 of "FLORIDA LANDS COMPANY'S SUBDIVISION No. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, which lies in the Northwest ¼ of Section 17, Township 53 South, Range 40 East. Miami-Dade County, Florida. More particularly described as follows:

Commence at Northwest Corner of said Section 17, thence S01deg43min09secE along the West Line of said Section 17 for a distance of 2309.44 feet; thence N89deg40min03secE along the North line of said tract 25 for 690.19 feet; thence S00deg19min51secE for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of Land, thence N89deg40min03secE for 301.52 feet; thence S00deg19min51secE for 92.18 feet; thence N89deg40min09secE for 18.00 feet; thence S00deg19min51secE for 128.67 feet; thence S89deg40min09secW for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N47deg51min32secE; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96deg22min46sec for a distance of 100.93 feet to a point

on a non-tangent line; thence S89deg40min09secW for 129.49 feet; thence N00deg19min51secW for 128.67 feet; thence N89deg40min09secE for 18.00 feet; thence N00deg19min51secW for 92.17 feet to the POINT OF BEGINNING.

LANDMARK AT DORAL SOUTH, LLC, a Florida limited liability company, appeared before me this day in person and acknowledged that he, being thereunto duly authorized, signed, sealed with the seal of said Residential Landowner, and delivered the said instrument as the free and voluntary act of said Residential Landowner and as his own free and voluntary act, for the uses and purposes therein set forth.

## PARCEL "C"

Title vested in Landmark at Doral South, LLC, a Florida limited liability company

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION No. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way of records, and less that portion of Tracts 41, 42, 43, and 44 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459. Less and except therefrom that portion lying at or above elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

## PARCEL "D"

Title vested in Landmark at Doral Developers, LLC, a Florida limited liability company

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION No. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way of records, and less that portion of Tracts 41, 42, 43, and 44 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459. Less and except therefrom that portion lying below elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

## PARCEL "E"

Title vested in Landmark Club at Doral, LLC, a Florida limited liability company

A portion of Tract 25 of "FLORIDA LANDS COMPANY'S SUBDIVISION No. 1", according to that Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, which lies in the Northwest ¼ of Section 17, Township 53 South, Range 40 East. Miami-Dade County, Florida. More particularly described as follows:

Commence at Northwest Corner of said Section 17, thence S01deg43min09secE along the West Line of said Section 17 for a distance of 2309.44 feet; thence N89deg40min03secE along the North line of said tract 25 for 690.19 feet; thence S00deg19min51secE for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of Land, thence N89deg40min03secE for 301.52 feet; thence S00deg19min51secE for 92.18 feet; thence N89deg40min09secE for 18.00 feet; thence S00deg19min51secE for 128.67 feet; thence S89deg40min09secW for 118.59 feet to a point on a circular

curve to the left, concave to the South, a radial line to said point bears N47deg51min32secE; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96deg22min46sec for a distance of 100.93 feet to a point on a non-tangent line; thence S89deg40min09secW for 129.49 feet; thence N00deg19min51secW for 128.67 feet; thence N89deg40min09secE for 18.00 feet; thence N00deg19min51secW for 92.17 feet to the POINT OF BEGINNING.