**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN CENTER AT DORAL, L.L.C., *et al.*, | Case No. 11-35884-RAM<br>Jointly Administered |
| Debtors. _____/ | |

**MOTION TO CONVERT OR DISMISS**
**CHAPTER 11 CASES FOR BAD FAITH FILINGS**

**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT** (the "**District**"), a local unit of special purpose government, **U.S. BANK NATIONAL ASSOCIATION**, solely as indenture trustee with regard to the Bonds and under their Indenture as shown on the attached **Exhibit** "**A**," and **FLORIDA PRIME HOLDINGS, LLC** (collectively, the "**Moving Parties**"), through their respective counsel, pursuant to 11 U.S.C. § 1112(b) move to covert or dismiss these Chapter 11 cases for bad faith as more fully set forth below. In support, the Moving Parties state:

**INTRODUCTION**

Until recently, it has been a mystery why the Debtors in these Chapter 11 cases would seek to transfer all of their allegedly valuable assets to Terra World Investments, LLC ("**Terra**"), a third party, without bringing any material value to the Debtors. The Moving Parties have now solved this mystery.

On January 12, 2012, the Moving Parties took the deposition of Isaac Kodsi ("**Kodsi**"), the Vice President of the Debtors and the person who signed the Schedules and who is the person supposedly running the day-to-day affairs of the Chapter 11 Debtors-in-Possession. As more fully described below, Kodsi admitted that Terra, the plan sponsor, is paying him $100,000 in equal monthly installments of $10,000.00 plus a $150,000.00 "success fee" if the plan of

reorganization sponsored by Terra is approved.[1]

Said otherwise, Kodsi and Terra developed a scheme, pre petition, to file a Chapter 11 proceeding so that the Debtors could transfer the underlying real estate assets and corollary development rights to Terra, block any potential bids for the Debtors' assets in derogation of the fiduciary duties that the Debtors owe to their creditors, and ensure that the District is stripped of its rights to credit bid.  Kodsi admitted under oath that if he approved, or sought approval, of any plan other than Terra's plan – *i.e.* the one presently before the Court – Kodsi would be in breach of his agreement with Terra and would lose his $150,000.00 success fee.

By entering into this success fee arrangement, Kodsi has assured Terra that he will not negotiate with other potential plan sponsors, nor seek any other mode of disposition of the Debtors' assets (including for example seeking a 363 sale of the Debtors' subdivision) because to do so would constitute a breach of his contract with Terra and the loss of his success fee.  This arrangement was never disclosed to the Bankruptcy Court, the U.S. Trustee or the creditors, and is not contained in the Disclosure Statement [ECF No. 108] in violation of *inter alia*, 11 U.S.C. § 1125(b).

As a consequence of these grave improprieties, these Chapter 11 proceedings are an abuse of the judicial process and contrary to the express purposes of Chapter 11 reorganization and should be converted or dismissed.

## BACKGROUND FACTS

1.     On September 19, 2011 (the "**Petition Date**"), the Debtors[2] filed separate voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.  Pursuant to the Debtors' filings, the Debtors have elected single asset real estate status under the Bankruptcy Code.  *See e.g.*  [ECF No.1, Petition].

---

[1] The agreement has yet to be produced as requested.

[2] The debtors include: Landmark at Doral East, LLC, a Florida limited liability company; Town Center at Doral, LLC, a Florida limited liability company; Landmark at Doral South, a Florida limited liability company; Landmark at Doral Developers, LLC, a Florida limited liability company; and Landmark Club at Doral LLC, a Florida limited liability company (collectively, the "**Debtors**").

2. On September 22, 2011, this Court granted the Debtors' motion for joint administration, with the instant case, Case No. 11-35884-RAM, designated as the lead case. *See* [ECF No. 7].

3. The Petitions are signed by Kodsi in his capacity as Vice-President for the respective debtor.

4. The Debtors are developers and owners of several parcels of real property located in Miami-Dade County Florida, consisting of approximately 120 contiguous acres located on the east side of NW 107 Avenue and the north side of NW 58 Street, a majority of which is zoned TND (Traditional Neighborhood Development) with the remainder zoned IU-1 for flex office development allowing for light industrial development (the "**Property**"). The Property consists of 16 individual tracts of land that remain without any vertical construction with the exception of a substantially complete 4-level parking garage.

5. The Debtors were owned and operated by Elie Burdugo ("**EB**") until his death in February 2008. The estate of EB remains the sole member and 100% interest holder in each of the Debtors. [ECF No. 5, Equity Security Holders]. The estate of EB is represented by the Kodsi Law Firm, P.A. Kodsi owns a 50% interest in the Kodsi Law Firm, P.A.

6. Yogev Burdugo ("**Yogev**"), EB's son, is the manager of each of the Debtors and Kodsi is the Vice President of each of the Debtors. *See* [ECF No. 9, Case Management Summary]. The Case Management Summary filed by the Debtors is signed by Kodsi as Vice President of the Debtors and details that each Debtor has only one manager and one officer. *Id*. at p. 2.

7. The Case Management Summary fails to disclose the compensation agreement between Kodsi and Terra. The baseline compensation (only the $100,000) was apparently later disclosed to those in attendance at the 341 meeting and in the DIP loan budget. No mention was made then or in the Case Management Summary of the $150,000.00 "success fee" that Terra is contractually obligated to pay to Kodsi if Terra's plan is confirmed or that Kodsi is under a contractual obligation to pursue Terra's plan and only Terra's plan fro the Debtors.

8. On January 12, 2012 the Moving Parties took the deposition of Kodsi. *See* Transcript of the Deposition of Kodsi (**Exhibit "B"**). According to Kodsi's sworn testimony, he became Vice-President, and sole officer of the Debtors, shortly before the Petition Date. *Id*. at p.36:2-3. Kodsi controls the day-to-day operations of the Debtors because Yogev was simply not qualified to do so. *Id*. at p.157:12-14; 158:2-25; 159:2-20. Yogev less than 30 years old and was a private basketball coach. *Id*. Yogev has no real estate experience and no knowledge of the Debtors' finances and affairs. *Id*.

9. Prior to the Petition Date, Kodsi received two offers to purchase control of the Debtors from the estate of EB. *Id*. at p.21:6-9. The first offer was from AmT, formerly AmTrust, for the purchase of the membership interests in the Debtors. *Id*. at p.21:6-9; 23:17-20. The AmT offer would release Guila Burdugo, EB's widow, from all liability for the obligations she assumed under the guaranty to repay the $103 million AmT loan and pay her $50,000. *Id*. at p.23:14-16. Kodsi rejected the AmT offer because he received a better offer for himself personally (at Guila Burdugo's expense) from Terra. *Id*. at p.23:5-24:1.

10. Prior to the Petition Date, Kodsi met with David Martin of Terra ("**Martin**"). Martin made an offer to Kodsi that included filing these reorganization cases for the Debtors so that control of the underlying real estate could be transferred to Terra. *Id*. at p.24:10-12. At the time of the initial meeting, Martin did not know the amount of the unsecured claim and did not put any offer on the table for the purchase of the Debtors. *Id*. at p.24:17-25; 25:1-10. Instead, Martin made a pecuniary offer to benefit Kodsi personally. *Id*. at p.25:11-14. Terra offered to pay to Kodsi $100,000 in installments of $10,000 per month during the Chapter 11 proceedings and a $150,000 success fee if Terra's plan of reorganization is confirmed. *Id*. at p.25:15-19.

11. After receiving Terra's offer, Kodsi did not attempt to solicit any other offer – neither from AmT nor from any other potential purchaser. *Id*. at p.29:19-23; 33:15-21.

12. In total, Kodsi met with Martin and other employees of Terra two or three times prior to the Petition Date. *Id*. at p.51:15-18; 86:7-18; 87:6-24. At the meetings, Kodsi informed Martin and other Terra employees that he wanted $250,000.00, and they negotiated the

breakdown between the $100,000.00 to be paid monthly and the $150,000.00 "success fee" (the "**Success Fee**") (collectively, the "**Terra Compensation Agreement**").  Prior to the Petition Date, Kodsi and Terra entered into a verbal agreement and term sheet (the "**Term Sheet**") for the Terra Compensation Agreement.  *Id*.  at p.82:23-25; 83:2-7; 88:3-5.  After the Petition Date, the Terra Compensation Agreement was memorialized in a formal contract (the "**Terra/Kodsi Contract**").  *Id*.  at p.88:6-8.  Neither the Term Sheet nor the Terra/Kodsi Contract regarding the Terra Compensation Agreement was disclosed in the bankruptcy proceedings or provided to the Moving Parties[3].

13.     Terra informed Kodsi that if the Debtors were liquidated "that the bondholders would be able to do a credit bid up to the full amount of the loan or something, and, therefore, [Terra] would not be able to buy it or something."  *Id*.  at p.142:18-25; 143:1-4.  In other words, Kodsi knew and agreed, going into the bankruptcy proceedings that Terra had to be the ultimate purchaser of the Debtors' membership interests.  Kodsi received his first $10,000.00 payment from Terra in late November or early December 2011.  *Id*.  at p.88:12-20.  The initial $10,000.00 payment from Terra was received before the debtor-in-possession financing was approved and without any material or formal disclosure to this Court, the U.S. Trustee, the creditors or any of the parties in interest.  *Id*.  at p.88:21-25; 89:1-3.

14.     On December 18, 2011, the Debtors filed a joint plan of reorganization (the "**Plan**") [ECF No. 94], and, on December 21, 2011, the Debtors filed a disclosure statement in support of the Plan (the "**Disclosure Statement**") [ECF No. 108].  Apparently, the Plan satisfies the requirements of the Terra/Kodsi Contract and calls for the sale of the Debtors' membership interests to Terra.  *See* [ECF No.  94]. The $150,000.00 Success Fee was never disclosed to this Court or in the Plan or Disclosure Statement.  Exhibit B at p.88:24-25; 89:1-2; *see also* [ECF

---

[3] Although the Moving Parties should have received copies of the Term Sheet and the Terra/Kodsi Contract in response to their subpoena before Kodsi's deposition took place, neither was produced to the Moving Parties.  At Kodsi's deposition, the Moving Parties learned of the Term Sheet and the Terra/Kodsi Contract for the first time and immediately requested that copies be produced.  Debtors' counsel requested that an e-mail be sent to him making the request for the Term Sheet and the Terra/Kodsi Contract.  Such an e-mail was transmitted to him immediately (in fact, during the deposition).  Nonetheless, to date, neither a copy of the Term Sheet nor a copy of the Terra/Kodsi Contract has been produced to the Moving Parties.

No. 94]; [ECF No. 108].

15. Kodsi's receipt of the Success Fee is contingent on the confirmation of Terra's Plan. Exhibit B at p.90:8-22. Kodsi will not receive the $150,000.00 Success Fee if the Debtors' bankruptcy cases conclude or terminate in any fashion other than through the confirmation of that Plan.

16. Kodsi concedes that to support any other scenario or Plan would constitute a breach of the Terra/Kodsi Contract. *Id*. at p. 138:1-10.

## RELIEF REQUESTED

17. The Moving Parties request that this Court enter an order converting or dismissing the Debtors' bankruptcy cases based on (a) their failure to disclose the Terra Compensation Agreement, the Term Sheet and the Terra/Kodsi Contract (b) the resulting dereliction of their fiduciary duties and (c) their intentional and bad faith abuse of the bankruptcy system.

## ARGUMENT

18. These bankruptcy cases are ripe for conversion or dismissal for lack of good faith because of Kodsi's self-dealing.

19. Section 1112(b) of the Bankruptcy Code provides that on request of a party in interest, and after notice and a hearing, a bankruptcy court may dismiss a Chapter 11 case "for cause." 11 U.S.C. § 1112(b)(1). It is well-established that a "'a debtor's lack of 'good faith' may constitute cause for dismissal of a Chapter 11 petition.'" *In re The Bal Harbour Club, Inc.*, 316 F.3d 1192, 1193 (11th Cir. 2003) (citing *In re Albany Partn., Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)). Moreover, the Court may consider a plan proponent's lack of good faith at the disclosure statement hearing even though this issue is usually reserved for a hearing on confirmation where the facts show that the plan proponent "could never meet the good faith requirement of § 1129(a)." *See In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D.Ill. 1987).[4] As under Section 1112(b), the analysis of lack of good faith under Section 1129(a)(3) may

---

[4] The Court has expressly put parties on notice that it may consider conversion or dismissal at the disclosure statement hearing. *See* [ECF No. 110].

consider pre-petition conduct. *See In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987) ("It seems unquestionable to us that the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement.")

20. "A debtor in possession is bound by a duty of loyalty that includes an obligation to refrain from self dealing [and] to avoid conflicts of interest[.]" *See In re Coram Healthcare Corp.*, 271 B.R. 228, 235 (Bankr. D. Del. 2001); *see also Wolf v. Weinstein*, 372 U.S. 633, 649 (1963) (a debtor-in-possession "bears essentially the same fiduciary obligations to the creditors as does the trustee for the Debtor out of possession"). This duty of loyalty is owed by the debtor in possession's executives. *See id.* As the Supreme Court explained, "these fiduciary responsibilities fall not upon the inanimate corporation, but upon the officers and managing employees who must conduct the Debtor's affairs under the surveillance of the court." *See Wolf*, 372 U.S. at 649.[5] Thus, a debtor in possession acts with a lack of good faith when its executives breach their fiduciary duties.

21. Here, Kodsi's self dealing and actual conflict of interest constitute a breach of the duty of loyalty. The actual conflict of interest arises out of the success fee, which Kodsi only obtains if Terra's plan is confirmed. This conflict is manifest in Kodsi's pre-petition failure to consider or to even seek out any alternatives to Terra. This conflict taints every act of Kodsi in the bankruptcy cases because his acts will always carry the suspicion of Terra's undue influence. This breach of the duty of loyalty constitutes a lack of good faith. *See Coram Healthcare Corp.*, 271 B.R. at 234 (finding lack of good faith where debtor's CEO had an undisclosed million dollar consulting agreement with a creditor). Moreover, in the present case, the lack of good faith is compounded by the complete and unexcused failure to disclose the Success Fee.

22. Furthermore, in assessing lack of good faith, the Court may consider any fact

---

[5] "The Supreme Court reaffirmed this standard for debtors in possession under chapter 11 of the Bankruptcy Code[.]" *Coram Healthcare Corp.*, 271 B.R. at 236 n.11 (citing *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 355 (1985).

showing the intent to "abuse the judicial process and the purposes of the reorganization provisions" constitutes cause under 11 U.S.C. 1112(b). *See Bal Harbour Club*, 316 F.3d at 1194 (citing *In re Dixie Broad, Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989).

23. Independently of the legal determination whether Kodsi's conduct amounts to a breach of his fiduciary duties, the facts of these cases show the intent to abuse the judicial process. Kodsi, the Debtors and Terra entered into the impermissible success fee. Under the Terra Compensation Agreement, Term Sheet and the Terra/Kodsi Contract, Terra will pay Kodsi the Success Fee only if the Plan sponsored by Terra is confirmed.[6] Kodsi will not receive anything if any other plan, regardless of the benefit provided to the estate, is confirmed. Kodsi, the Debtors and Terra then failed to disclose the financial arrangement entered into between Kodsi and Terra. The abuse of the judicial process is also shown by Terra's control over the Debtors.[7]

24. Also, the Terra Compensation Agreement violates the purposes of the reorganization processes. The Debtors, through the control of Kodsi, have been negotiating with Terra and have been under Terra's control since before the Petition Date. Kodsi cannot claim that he was disinterested *vis-à-vis* Terra when he entered into the Terra Compensation Agreement prior to the Petition Date, approved the Term Sheet and signed the Terra/Kodsi Contract. This lack of arm's-length dealing, particularly for the sale of a controlling interest of the Debtors, violates numerous provisions of the Bankruptcy Code. Without doubt, collusion existed between the Debtors and Terra regarding the sale of the controlling interests of the Debtors. The collusive dealings for the control of the Debtors are analogous to a violation of section 363(n) of the Bankruptcy Code which prohibits collusion in the sale of a debtor or the debtor's assets. 11 U.S.C. § 363(n).

---

[6] The Moving Parties have found no evidence that the probate court presiding over the Estate of Elie Burdugo has knowledge of the Terra Compensation Agreement, the Term Sheet and the Terra/Kodsi Contract.

[7] Indeed, at his deposition, Kodsi testified that the Debtors' ' counsel was referred to them by Terra's counsel. Exh. B at p. 76. In sum, Terra is running the show and has been running the show from the day it agreed to pay Kodsi $250,000.000.

25. The Terra Compensation Agreement, the Term Sheet and the Terra/Kodsi Contract allowed Terra to be the only party in negotiations for the purchase of the Debtors' membership interest. This violates section 1125 of the Bankruptcy Code which requires full disclosure of adequate information by the Debtors in the Disclosure Statement to known holders of claims or interests in the Debtors' estates. The Disclosure Statement does not inform any parties of the Terra Compensation Agreement, the Term Sheet and the Terra/Kodsi Contract or of Terra's prepetition agreements with Kodsi. A hypothetical investor would undoubtedly want to know that the Debtors' sole officer in charge of all day-to-day operations had entered into an agreement for the membership interests long before all parties had an opportunity to offer a competing plan of reorganization, that the Debtors' sole officer would be in breach of that agreement if he supported any other plan, no matter how much more beneficial that plan might be for the Debtors' estates, and that the Debtors' sole officer was get a $150,000.00 "success fee" from Terra. The Terra Compensation Agreement, Term Sheet and the Terra/Kodsi Contract were overt attempts by the Debtors and Terra to chill if not fully block any competing bids for the membership interests.

26. Finally, cause exists for dismissal because the dealings between the Debtors and Terra violate the ultimate purpose of bankruptcy proceedings to provide the honest debtor a fresh start. While this well-known mantra commonly refers to individual debtors it also applies to the reorganization of corporate debtors. Here, neither the Debtors nor the proposed purchaser have been honest with the Court, the creditors or the parties in interest. The Debtors and Terra intentionally kept silent as to the Terra Compensation Agreement, Term Sheet and the Terra/Kodsi Contract for what can only be described as improper motives, at best. Terra has controlled the Debtors and the reorganization process since before the Petition Date and prevented any other party from legitimately participating in the reorganization to the specific detriment of all creditors. Kodsi's Success Fee has compelled the Debtors, through improperly incentivizing Kodsi, to control the confirmation process. These cases should be converted or dismissed because they were filed in "bad faith" and constitute an abuse of the bankruptcy

process, undertaken solely and improperly for the benefit of Terra and Kodsi.

WHEREFORE, **LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT**, a local unit of special purpose government, **U.S. BANK NATIONAL ASSOCIATION**, solely as indenture trustee with regard to the Bonds and under their Indenture as shown on the attached **Exhibit** "**A**," and **FLORIDA PRIME HOLDINGS, LLC** respectfully request this Court enter an order (1) converting or dismissing the Debtors' Chapter 11 cases *instanter*; (2) awarding fees and sanctions as appropriate; and (3) granting such other and further relief deemed just and proper.

Respectfully submitted this 23rd day of January 2012.

| | |
|---|---|
| **STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**<br>*Counsel for the District*<br>Museum Tower, Suite 2200<br>150 West Flagler Street<br>Miami, Florida 33130<br>Phone: (305) 789-3553<br>Fax: (305) 789-3395<br>By: */s/ Patricia A. Redmond* (with permission)<br>      PATRICIA A. REDMOND<br>      Florida Bar No. 303739<br>      predmond@stearnsweaver.com | **ARNSTEIN & LEHR LLP**<br>Attorneys for Florida Prime Holdings, LLC<br>200 South Biscayne Boulevard, Suite 3600<br>Miami, Florida 33131<br>Telephone: 305-374-3330<br>Facsimile: 305-374-4777<br>E-Mail: pmhudson@arnstein.com<br><br>By: /s/ Phillip M. Hudson<br>      Phillip M. Hudson III<br>      Florida Bar No. 518743 |

**Greenberg Traurig, P.A.**
333 Avenue of the Americas
Miami, Florida 33131
Telephone: (305) 579-0730
Facsimile: (305) 579-0717

By: */s/ John B. Hutton, III* (with permission)
      John B. Hutton, III
      huttonj@gtlaw.com
      Florida Bar No. 902160
      John R. Dodd
      doddj@gtlaw.com
      Florida Bar No. 38091

      *Counsel to the Indenture Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the following document were served as follows: (i) via transmission of Notices of Electronic Filing generated by CM/ECF to those counsel or parties who are registered to receive Notice of Electronic Filing in this case as each document was entered on the docket, and (ii) via U.S. Mail (without exhibits)[1] to those parties not registered to receive Notice of Electronic Filing in this case, on January 23, 2012 as indicated on the Service List attached hereto.

**SERVICE LIST**

*Via CM/ECF*

Jere L. Earlywine
*jearlywine@hgslaw.com*
*Counsel for Florida Prime Holdings, LLC*

C Craig Eller
*celler@broadandcassel.com*
*Counsel for AmT CADC Venture, LLC*

Jordi Guso
*jguso@bergersingerman.com*
*fsellers@bergersingerman.com*
*efile@bergersingerman.com*
*Counsel for Terra World Investments, LLC*

Phillip M. Hudson III
*pmhudson@arnstein.com; rkcummings@arnstein.com*
*jtunis@arnstein.com; hbabcock@arnstein.com*
*hpiloto@arnstein.com; akang@arnstein.com*
*befernandez@arnstein.com*
*Counsel for Florida Prime Holdings, LLC*

John B. Hutton III
*huttonj@gtlaw.com; thompsonc@gtlaw.com*
*mialitdock@gtlaw.com; miaecfbky@gtlaw.com*
*Counsel for U.S. Bank National Association as Trustee*

Mindy A. Mora
*mmora@bilzin.com; laparicio@bilzin.com*
*cvarela@bilzin.com; eservice@bilzin.com*
*lflores@bilzin.com; abeck@bilzin.com*
*Counsel for Landmark Club at Doral, LLC*

Glenn D Moses
*gmoses@gjb-law.com; gjbecf@gjb-law.com*
*Counsel for Committee Creditor Committee*

Office of the US Trustee
*USTPRegion21.MM.ECF@usdoj.gov*

Melinda S Thornton
*cao.bkc@miamidade.gov*
*Counsel for Miami-Dade County Tax Collector*

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case, who will therefore be served via U.S. Mail.

Michael Eckert
119 S. Monroe Street #300 (32301)
POB 6526
Tallahassee, FL 32314

Daniel Y. Gielchinsky
1450 Brickell Ave #2300
Miami, FL 33131

Betty M Shumener
550 South Hope St #2300
Los Angeles, CA 90071

Steven D. Schneiderman
51 SW First Avenue
Suite 1204
Miami, FL 33130
*Attorney for U.S. Trustee's Office*

Town Center at Doral, L.L.C.
c/o Steven Amster, Esq.
Kodsi Law Firm, P.A.
701 W. Cypress Creek Road
Suite 303
Ft. Lauderdale, FL 33309
*Debtor*

/s/Phillip M. Hudson III
Phillip M. Hudson III

9952031.2                              13