UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 11-35884-RAM |
| Town Center at Doral, LLC, et al., | Chapter 11 |
| Debtors._____/ | (Jointly Administered) |

### DEBTORS' RENEWED MOTION TO VALUE COLLATERAL
### AND FOR COURT-APPOINTED VALUATION EXPERT
### PURSUANT TO FEDERAL RULE OF EVIDENCE 706

Town Center at Doral, LLC, Landmark at Doral East, LLC, Landmark at Doral South, LLC, Landmark Club at Doral, LLC, and Landmark at Doral Developers, LLC,[1] as debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this renewed motion to value collateral (the "Renewed Valuation Motion") and also move for the appointment of a valuation expert (the "Valuation Expert") by the Court pursuant to Federal Rule of Evidence 706 (the "706 Motion" and together with the Renewed Valuation Motion, the "Motion"). In support of the Motions, the Debtors state as follows:

### I.
### JURISDICTION

This Court has jurisdiction over the Motions pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief

---

[1] The last four digits of each Debtors' tax identification number are: (i) Town Center at Doral, LLC [1866]; (ii) Landmark at Doral East, LLC [6616]; (iii) Landmark at Doral South, LLC [6676]; (iv) Landmark Club at Doral, LLC [6797]; and (v) Landmark at Doral Developers, LLC [6762]. The Debtors' mailing address is 701 W. Cypress Creek Road, Suite 303, Fort Lauderdale, Florida 33309.

requested in the Renewed Valuation Motion are Bankruptcy Code sections 105 and 506, Bankruptcy Rule 3012, and Local Bankruptcy Rule 3012-1. The statutory predicates for the relief requested in the 706 Motion are Bankruptcy Code section 105, Bankruptcy Rule 9017, and Federal Rule of Evidence 706.

## II.
## BACKGROUND

### A.   General Background

1. On September 19, 2011 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

2. On October 20, 2011, the United States Trustee appointed the Joint Committee of Creditors Holding Unsecured Claims in the Debtors' cases.

3. The Debtors are in possession of their respective parcels of the Property (as defined below) as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. Each of the Debtors is a Florida limited liability company.

5. For a more complete description of the Debtor's assts and liabilities, the Debtors incorporate by reference the Jointly Administered Debtors' Chapter 11 Case Management Summary.[2]

### B.   The Property and the Debtors' Obligations to the District

1. The Debtors are, collectively, the fee simple owners of land (approximately 117 contiguous acres) located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida, and air rights above such land (collectively, the "Property"). The Property consists of 16 individual tracts of land with substantial infrastructure development

---

[2] ECF No. 9.

completed, but with no vertical construction other than an unfinished 4-level parking garage.

2.  The Landmark at Doral Community Development District (the "District") has asserted a secured claim against the Debtors' estates in the approximate amount of $81.7 million. The claim arises from and relates to resolutions issued by the District under Chapter 190 of the Florida Statutes. Pursuant thereto, the District is a local unit of a special purpose government entity with authority to impose benefit and maintenance special assessments (the "Assessments") upon the Property, which constitute a lien against the Property.

C.  **The Debtors' Proposed Plan of Reorganization**

1.  On December 18, 2011, the Debtors filed their *Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "Plan").[3] The Plan contemplates the Debtors' continued operation and development of the Property as reorganized debtors following the effective date of the Plan.

2.  The Plan provides for the restructuring of the District's secured claim[4] which will enable the District to receive distributions over the remaining term of the Assessments equal to 100 percent of the outstanding principal balance of such secured claim, plus interest that will accrue at a rate less than the interest rate that is currently provided for in the applicable finance documents (provided, however, if the District makes an 1111(b) election, then the amount distributed to the District in respect of its claim will not exceed the aggregate amount of its claim).

3.  In connection with the Plan, on December 21, 2011, the Debtors filed their *Disclosure Statement Relating to Joint Plan of Reorganization under Chapter 11 of the*

---

[3] ECF No. 94.
[4] The amount of the District's secured claim will depend upon whether the District makes an election under section 1111(b) of the Bankruptcy Code to have the entire amount of its claim deemed to be secured by the Property.

3

*Bankruptcy Code* (the "Disclosure Statement").[5]  A hearing to approve the form and content of the Disclosure Statement, as well as certain confirmation issues, is currently scheduled for January 25, 2012.

### D.     The Debtors' Valuation Motion

1. Prior to filing the Plan, the Debtors filed the *Debtors' Motion to Value Collateral* (the "Valuation Motion"),[6] seeking entry of an order valuing the Property at $43.4 million, which was the amount set forth in the appraisal (the "Waronker Appraisal") prepared at the Debtors' request by Waronker & Rosen, Inc. ("Waronker").  Given that the Property is the sole source of collateral in these cases, the Valuation Motion was a necessary first-step in the plan confirmation process.  Without ascribing a specific value to the Property, it would be difficult for the Debtors to properly classify the various secured claims asserted in these cases (including the District's) and provide adequate treatment for such claims under the Plan.

2. On January 13, 2012, the District, together with U.S Bank National Association, as indenture trustee (the "Indenture Trustee") and Florida Prime Holdings LLC (the "Bondholder"; the District, the Indenture Trustee and the Bondholder are referred to collectively as the "Objecting Parties") filed their own "expert witness" appraisal of the Property (the "Hanson Appraisal").[7]  The Hanson Appraisal, which was prepared by Hanson Real Estate Advisors, Inc. ("Hanson"), valued the Property at $67.5 million.  The differential between the Waronker and Hanson valuations is in excess of 50 percent.  However, Hanson's valuation must be taken with the proverbial grain of salt.

3. The Objecting Parties commissioned Hanson to provide an appraisal of the Property that would be in excess of Waronker's $43.4 million valuation.  It goes without saying

---

[5] ECF No. 108.
[6] ECF No. 81.
[7] ECF No. 149.

4

that the higher the valuation, the lower the District's deficiency claim.  On the other hand, to the extent the District is able to exercise its foreclosure rights and take back the Property, the District is better served by a lower valuation vis-à-vis property tax assessments.  While at the same time the Objecting Parties were retaining Hanson, the Bondholder was also pursuing an appeal with the Value Adjustment Board of the 2011 ad valorem taxes assessed against the Property, arguing that the Property is worth less than the $36 million valuation ascribed to it by the Florida Department of Revenue.  It is difficult to reconcile the Objecting Parties' actions, other than to conclude that the Objecting Parties are not interested in establishing the actual value of the Property, but rather whatever value best serves them at a given point in time.

4.	On January 18, 2012, the Court held an evidentiary hearing on the Valuation Motion (the "Valuation Hearing").  The Valuation Hearing, which lasted for the better part of the day, included expert testimony from both Messrs. Waronker and Hanson regarding their methodology and conclusions.  Although the Court indicated early on in the Valuation Hearing that the Debtors would be permitted to rebut Mr. Hanson's testimony and explain why Mr. Waronker's methodology was the correct one, the Court never permitted Mr. Waronker or Dr. Henry Fishkind, a noted economist, to do so.[8]  Rather, the Court abruptly denied the relief requested in the Valuation Motion, finding that neither the Waronker Appraisal nor the Hanson Appraisal were credible enough for the Court to rely on in granting the relief requested in the Valuation Motion.[9]

---

[8] Transcript of Record at pp. 76-77 (THE COURT: Let me interrupt for a second.  I know this would be a little unusual, but to try to get this done most efficiently, I was thinking of having Mr. Waronker's direct and cross, redirect, then putting on Hanson, getting his...direct and cross, and then Hanson, having already heard Waronker, and I've heard Waronker, could then talk about Waronker, and you can bring Mr. Waronker back to talk about Hanson after we've heard it... .") and pp. 289-290 (MS. MORA: "We were obviously very disappointed that the Court did not allow us to put Dr. Fishkind on the stand, whose testimony we think on rebuttal to Mr. Hanson's report could have provided the Court with a great deal of clarity as to the issue of valuation of the property from the standpoint of an economic and market analysis valuation.")
[9] *Id*. at pp. 280-289.

5.  The Debtors continue to stand behind the Waronker Appraisal and the $43.4 million valuation of the Property.  The Debtors believe that had Mr. Waronker and Dr. Fishkind had the opportunity to rebut Mr. Hanson's testimony and address the Court's concerns regarding Mr. Waronker's testimony, Mr. Waronker and Dr. Fishkind would have been able to assuage the Court's concerns.

6.  On January 19, 2012, the Court entered an order[10] denying the Valuation Motion and reserving its right to determine whether a renewed motion to value will be considered following the January 25, 2012 hearing on the Disclosure Statement.

## III.
## RELIEF REQUESTED

**A.** **The Renewed Valuation Motion**

1.  By the Renewed Valuation Motion, the Debtors request entry of an order valuing the Property at $43.4 million per the Waronker Appraisal.

2.  Bankruptcy Code section 506(a) provides, in pertinent part, that:

> [A]n allowed claim that is secured by a lien on property in which the estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...and is an unsecured claim to the extent that the value of such creditor's interest...is less than the amount of such claim.

3.  Bankruptcy Rule 3012 grants the Court authority to determine the "value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim."

4.  Obtaining a valuation of the Property is a critical component of the Debtors' reorganization efforts.  Without a valuation, the Debtors will be hard pressed to properly classify and determine the treatment of the secured claims asserted in these cases, including those of the

---

[10] ECF No. 167.

District. Accordingly, the Debtors request that the Court reconsider the relief requested in the Valuation Motion and enter an order valuing the Property at $43.4 million per the Waronker Appraisal.

**B.     The 706 Motion**

1.     The Debtors understand that the Court was not persuaded by either the Waronker Appraisal or the Hanson Appraisal. To the extent the Court is unwilling to hear additional testimony from Mr. Waronker regarding his methodology and from Mr. Waronker and Dr. Fishkind regarding the flaws in Hanson's valuation and conclusions of value for the Property, the Debtors propose that the Court appoint its own valuation expert to conduct an appraisal and conclusively value the Property.

2.     Federal Rule of Evidence 706 provides, in pertinent part, that:

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing.[11]

3.     Federal Rule of Bankruptcy Procedure 9017 makes the Federal Rules of Evidence applicable to all cases brought under the Bankruptcy Code.

4.     Notwithstanding the fact that the Court denied the Valuation Motion, the Debtors submit that the underlying relief requested therein (and in the Renewed Valuation Motion)—a determination of the Property's value—remains a necessary and critical component of these cases. As noted by counsel to the Debtors at the Valuation Hearing, the Debtors are extremely concerned that a contributing factor to the Court's inability to determine the value of the Property was the Court's direction to the Debtors' appraiser to delay the balance of his testimony

---

[11] Fed. R. Evid. 706

responding to the criticism of his appraisal methodology until rebuttal, and then the Court's decision not to entertain rebuttal testimony, including the testimony of Dr. Fishkind.[12] Notwithstanding, the Plan Proponents believe that a court-appointed expert, with access to the transcript of the valuation hearing and the Waronker and Hansen appraisals, can focus on the areas of concern noted by the Court and provide the Court with a thorough analysis of the market value of the Property upon which the Court can rely to determine the value of the Property for purposes of considering confirmation of the Plan.

     5.     Accordingly, the Debtors request that the Court appoint a Valuation Expert to conduct an appraisal and provide a conclusive valuation of the Property that shall be binding on all parties-in-interest in these cases.

## IV.
## PROCEDURES FOR APPOINTING VALUATION EXPERT

     1.     To the extent the Court is inclined to grant this Motion, the Debtors propose the following procedures to assist the Court in appointing a Valuation Expert:

     a.     Within five (5) days of entry of an order approving this Motion, the Debtors and the District shall each submit to the Court the name and curriculum vitae of three (3) potential valuation experts.[13]

     b.     To the extent there is an overlap between one of the Debtors' nominees and one of the District's nominees, the Court shall appoint such nominee the Valuation Expert.

     c.     To the extent there are multiple overlaps between the Debtors' and the District's nominees, the Court shall, in its discretion, appoint the nominee it believes is most qualified to be the Valuation Expert.

     d.     To the extent there is no overlap between the Debtors' and the District's nominees, the Court shall, in its discretion, either (i) appoint any one of the Debtors' or the District's nominees as the Valuation Expert or (ii) appoint an appraiser that was not nominated by either the Debtors or the District to be the Valuation Expert.

     e.     To the extent the court-appointed Valuation Expert is not willing or is not able to accept the appointment (i.e., because such appraiser is conflicted), the Court shall repeat the procedure set forth in subparagraph (d) above

---

[12] See *supra* n. 8.
[13] Neither Waronker nor Hanson would be eligible nominees under these procedures.

      until an appropriate Valuation Expert is retained.
  f.  The Debtors and the District shall each be responsible for 50 percent of the Valuation Expert's reasonable fees and expenses.

## NOTICE

Notice of this Motion has been given in accordance with Bankruptcy Rules 2002 and 3012, and Local Bankruptcy Rules 2002-1 and 3012-1 to all parties on the service list attached to the certificate of service for this Motion. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order (i) (a) valuing the Property at $43.4 million per the Waronker appraisal, or, in the alternative, (b) appointing a Valuation Expert to conduct an appraisal and value the Property pursuant to the procedures set forth herein and (ii) granting such further relief as the Court finds just and proper.

Dated: January 24, 2012

      **I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this Court set forth in Local Rule 2090-1(A).**

      BILZIN SUMBERG BAENA PRICE & AXELROD LLP
      *Counsel for the Debtors*
      1450 Brickell Avenue, Suite 2300
      Miami, FL 33131
      Telephone: (305) 374-7580
      Facsimile: (305) 375-7593

      By: /s/ Mindy A. Mora
        Mindy A. Mora
        Fla. Bar No. 678910
        mmora@bilzin.com
        Tara V. Trevorrow
        Florida Bar No. 30959
        ttrevorrow@bilzin.com