UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

TOWN CENTER AT DORAL, L.L.C.,
*et al.*,

Debtors.
_____/

Case No. 11-35884-RAM

Chapter 11

(Jointly Administered)

### JOINT OBJECTION TO THE DEBTORS' RENEWED MOTION TO VALUE COLLATERAL AND FOR COURT-APPOINTED VALUATION EXPERT PURSUANT TO FEDERAL RULE OF EVIDENCE 706

Landmark At Doral Community Development District, a local unit of special purpose government, U.S. Bank National Association, solely as indenture trustee with regard to the Bonds and under their Indenture as shown on the attached **Exhibit "A,"** and Florida Prime Holdings, LLC (collectively, the "**Objecting Parties**") object to the *Debtors' Renewed Motion to Value Collateral and for Court Appointed Valuation Expert Pursuant to Federal Rule of Evidence 706* [ECF No. 185] (the "**Renewed Valuation Motion**"). In support of this objection (the "**Objection**"), the Objecting Parties submit:

### OBJECTION

1. The Renewed Valuation Motion presents four issues for the Court to decide:

    (i) Should the Court reconsider its determination that the Waronker Appraisal[1] is not "competent credible evidence,"[2] and determine the value of the Property "per the Waronker Appraisal"?[3]

    (ii) Should the Court appoint an appraiser under Federal Rule of Evidence 706 and make a second attempt at a judicial valuation, notwithstanding that a

---

[1] Capitalized terms used but not defined in this Objection have the meaning ascribed to them in the Renewed Valuation Motion.

[2] Transcript of Hearing 280:21-25, January 18, 2012. References to this transcript will be shown by "**Tr. (1/18)**."

[3] Renewed Valuation Motion at 6 (references to the Renewed Valuation Motion are made to page numbers because the motion contains multiple paragraph "1," etc.).

competing plan is on file which will provide for a market valuation of the Property?

(iii) If the Court is inclined to attempt a second judicial valuation, should the Court commence that process—potentially wasting the resources of the estates, parties in interest, and the Court—before the Court rules on the legal obstacles to the Debtors' chapter 11 plan and the Objecting Parties' request for dismissal?

(iv) If the Court appoints an expert under Federal Rule of Evidence 706, should it allow the Debtors to usurp the Court's role as the fact finder and circumvents the procedural protections expressly granted by Federal Rule of Evidence 706?

2. As is shown more fully below, the Court should deny the Debtors' request that the Court reconsider its finding that the Waronker Appraisal is not "competent credible evidence." The Court should also deny the Debtors alternative request for a court-appointed valuation expert (the "**Appointed Expert**") to conduct an appraisal and conclusively value the Property. Allowing the Debtors a second attempt to obtain a judicial value of the Property is unnecessary in light of the Objecting Parties' Chapter 11 plan on file with the Court, which provides for a market valuation of the Property.

3. Even if the Court is inclined to grant the request for the Appointed Expert, the Court should not make the appointment until the Debtors have overcome both the legal objections to confirmation of the Debtors' Chapter 11 plan and the Objecting Parties' request for dismissal in light of Mr. Issac Kodsi's undisclosed $150,000 success fee. Moreover, the Court should reject the Debtors' attempt to usurp the Court's role as the fact finder, and their attempt to circumvent the procedures mandated under the Federal Rules of Evidence and the Supreme Court decision of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

A. **The Debtors have failed to show any basis for the Court to reconsider its rejection of the Waronker Appraisal, and the Court should not do so in any event.**

4. The Court issued supplemental findings at the hearing on the Debtors' disclosure

statement on January 25, 2012 that appear to foreclose the Debtors' request that the Court reconsider its rejection of the Waronker Appraisal.

> I want to supplement my findings to clarify that my conclusion that Mr. Waronker's testimony was not sufficiently credible and reliable to support a valuation was – I reached that conclusion before lunch, it had nothing to do – I shouldn't say it had nothing to do, it may have been bolstered, but I had reached that conclusion based on his report, his direct testimony, his cross examination and his redirect.[4]

The Court further clarified that "nothing by way of further evidence would have changed that result,"[5] and "I'm not going to set a hearing and consider argument that would possibly convince me to adopt the Waronker [A]ppraisal[.]"[6] Thus, it appears that the Court has already rejected the Debtors' request that the Court reconsider its rejection of the Waronker Appraisal.

5.  Moreover, the Court should deny this request. Despite the Debtors' request that the Court "reconsider"[7] its determination that the Waronker Appraisal is not "competent credible evidence,"[8] the Renewed Valuation Motion is void of any legal, factual or other basis to reconsider this determination. Rather, the Renewed Valuation Motion is predicated solely on the Debtors' disagreement with the Court's determination that Mr. Waronker's report and testimony are not competent evidence. The Debtors' disagreement is not "sufficient grounds" for either reconsideration or rehearing.[9]

6.  "[A] motion for rehearing or reconsideration is not a vehicle for relitigating old

---

[4] Transcript of Hearing 8:20-9:4, January 25, 2012. References to this transcript will be shown by "**Tr. (1/25).**"

[5] Tr. (1/25) 9:20-21.

[6] Tr. (1/25) 98:13-15.

[7] "Accordingly, the Debtors request that the Court **reconsider** the relief requested in the Valuation Motion[.]" Renewed Valuation Motion at 7 (emphasis added).

[8] Tr. (1/18) 280:21-25.

[9] See In re Mathis, 312 B.R. 912, 914 (Bankr. S.D. Fla. 2004) ("Mere disagreement with the Court's determination is not sufficient grounds to alter to amend "an Order" pursuant to Rule 59(e).").

3

matters, or for offering evidence or theories of law that were available to a party at the time of the initial ruling,"[10] but must "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."[11] The Debtors fail to satisfy this stringent standard for either rehearing or reconsideration of the Court's ruling.

7. The Renewed Valuation Motion only offers the same exact evidence that was submitted at the Valuation Hearing, and fails to provide any compelling facts or law detailing why the Court should reconsider its determination that the Waronker Report is not competent or credible evidence. The only discernable argument asserted by the Debtors in support of the Renewed Motion is that they were not "permitted to rebut Mr. Hanson's testimony and explain why Mr. Waronker's methodology was the correct one."[12] This argument is unavailing given that the Court's ruling was not based on a rejection of Mr. Waronker's methodology.[13] Moreover, rebuttal evidence cannot serve to rehabilitate the Debtors' failed case-in-chief.[14]

8. Based on the foregoing, the Debtors have failed to provide a sufficient basis to warrant reconsideration or rehearing of the Court's ruling regarding the competency of the Waronker Appraisal.

---

[10] *In re Sophisticated Communications, Inc.*, 369 B.R. 689, 704 (Bankr. S.D. Fla. 2007). *See also In re Envirocon Intern. Corp.*, 218 B.R. 978 (Bankr. M.D. Fla. 1991) ("The court will not reconsider when a motion does not raise new issues, but only relitigates what has already been found lacking. (citing *Government Personnel Services, Inc. v. Government Personnel Mutual Life Insurance Co.*, 759 F. Supp. 792 (M.D. Fla. 1991) ).

[11] *See Cover v. Wal–Mart Stores, Inc.*, 148 F.R.D. 294 (M.D. Fla. 1993).

[12] Pursuant to Federal Rules of Evidence 611 and 403, the Court has the power to control the mode and order of testimony presented to the Court, and exclude any testimony it deems to be duplicative or a waste of time. Undoubtedly, the rebuttal testimony of Mr. Waronker is a waste of the Court's time.

[13] "The fundamental problem is not with the methodology." Tr. (1/18) 282:19-20.

[14] *See Driscoll v. Morris* 114 So.2d 314 (Fla. App. 1959) ("Generally speaking, rebuttal testimony which is offered by the plaintiff is directed to new matter brought out by evidence of the defendant...[i]t is not the purpose of rebuttal testimony to add additional facts to those submitted by plaintiff in his case-in-chief.").

B.   **The Court should decline the Debtors' invitation to attempt a second judicial valuation.**

9.   The Court should deny the Debtors' request for a second attempt at a judicial value of the Property in light of the Objecting Parties' Chapter 11 plan on file, which provides for a market valuation of the Property. With a market valuation of the Property pending, there is simply no reason to engage in speculation as to what a hypothetical developer will be willing to pay for the Property.[15] As the United States Supreme Court teaches, "the best way to determine value is exposure to a market,"[16] where, as here, a debtor's plan violates the absolute priority rule.[17] Indeed, consideration of the full sentence is illuminating:

> On the interpretation assumed here, it would, of course, be a fatal flaw if old equity acquired or retained the property interest without paying **full value**. It would thus be necessary for old equity to demonstrate its payment of **top dollar**, but this it could not satisfactorily do when it would receive or retain its property under a plan giving it exclusive rights and in the absence of a competing plan of any sort. Under a plan granting an exclusive right, making no provision for competing bids or competing plans, any determination that the price was **top dollar** would necessarily be made by a judge in bankruptcy court, whereas the best way to determine value is exposure to a market.[18]

---

[15]   Tr. (1/25) 153:1-8 ("[O]ne of the problems with valuation, as opposed to market testing, is appraisers are basically guessing at what developers are interested in doing and how much they would be willing to pay at this point based on limited relevant comparable sales, or in the case of Mr. Hanson, factors that I did not find to be a credible basis for valuation at all.").

[16]   *Bank of America National Trust and Savings Assoc. v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 457 (1999).

[17]   See *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 49 (Bankr. D. Del. 2000) ("Thus, we conclude that the Debtors' Modified Plan violates the absolute priority rule by allowing the existing controlling shareholder to determine, without the benefit of a public auction or competing plans, who will own the equity of Global Ocean and how much they will pay for the privilege.")

[18]   *203 North LaSalle Street P'ship*, 526 U.S. at 457 (emphasis added).

Case No. 11-35884-RAM

Notwithstanding that this case has been opened up to competing plans, the Debtors' (and Terra's) transparent purpose in insisting upon a judicial valuation is to avoid paying "top dollar" for the Property.[19]

10. Accordingly, the Court should deny the Debtors' request to attempt a second judicial valuation and let the market determine the value of the Property.

**C. If the Court is inclined to attempt a second judicial valuation, an expert should not be appointed until the Debtors' overcome at least two threshold issues so as to conserve the resources of the estates, parties in interest, and the Court.**

11. The Objecting Parties submit that the Debtors should not be permitted to deplete the resources of the Chapter 11 estates and further waste the resources and time of parties in interest and the Court until the Debtors have overcome threshold issues concerning their ability to confirm a Chapter 11 plan. At a minimum, the threshold issues are twofold: (1) the Objecting Parties' legal objections to the confirmability of any Chapter 11 plan containing certain features of the Debtors' Plan [ECF No. 94] and Disclosure Statement [ECF No. 108] that are the subject of the Objecting Parties' "patently unconfirmable" objections,[20] including without limitation the ability to strip down assessment liens; and (2) the matter of Mr. Kodsi's $150,000 success fee and the Motion to Dismiss [ECF No. 181]. Until these threshold issues are resolved, the estates and unsecured creditors should not be required to pay for a **second** valuation process.

12. This common sense approach conserves the resources of the Chapter 11 estates and does not unfairly prejudice the Debtors. Simply put, the Debtors had—and squandered— their opportunity to obtain a judicial valuation of the Property at the expense of the Chapter 11

---

[19] Although the Objecting Parties' chapter 11 plan provides the District an opportunity to exercise its credit-bid rights at the auction sale of the Property, the credit bid does not undermine the auction as a market test and the best way to determine value. As the Court noted at the January 25th hearing, the District may well "stop if they got a cash bid, just as they might stop if there was a sufficient cash bid in a foreclosure sale." Tr. (1/25) 140:21-23. Moreover, contrary to statements of counsel for Terra at the hearing, the 95% ultimate beneficial owner of the bonds is a financial (not strategic) player.

[20] *See* Joint Objection to Disclosure Statement and Confirmation [ECF No. 169].

estates notwithstanding the legal uncertainties surrounding the Debtors' proposed Chapter 11 plan. Instead of making full use of that opportunity, the Debtors adduced expert opinion that was not "competent credible evidence"[21] but instead engaged in the convenient fiction that the value of the existing infrastructure was precisely and completely offset by the asserted limitations on the use of the Property.[22] Having squandered that first opportunity, and having failed to disclose Mr. Kodsi's success fee, there is no unfair prejudice in requiring the Debtors to overcome both the legal objections to the Plan and the Motion to Dismiss before the Debtors are allowed to embark on a second attempt at a judicial valuation, an enterprise that may well result only in further squandering of the Chapter 11 estates' resources.

13. Accordingly, the Objecting Parties request that the Court not appoint an expert, if at all, until after the close of the March 5, 2012 hearing on the Debtors' amended disclosure statement and the Objecting Parties' Motion to Dismiss, or such later time as the Court rules on the legal obstacles to the Debtors' plan and to the Objecting Parties' Motion to Dismiss.

**D. If the Court appoints an expert under Federal Rule of Evidence 706, the Court must remain the fact finder, and the full measure of the procedures set forth in the rule must be used.**

14. The Debtors—undoubtedly unsatisfied with the Court' ruling on the Valuation Motion—seek to usurp the Court's role as the finder of fact, and request that the Appointed Expert, "provide a conclusive valuation of the Property that shall be binding on all parties-in-interest in the case." This request is not only improper, but based on a fundamental misunderstanding of Federal Rule of Evidence 706.

15. An expert appointed pursuant to Federal Rule of Evidence 706 such as the

---

[21] Tr. (1/18) 280:21-25.
[22] See, e.g., Tr. (1/18) 283:18-23 & 284:2-7.

Appointed Expert is simply another expert.[23] The Appointed Expert remains subject to Federal Rule of Evidence 702 and the standards for admissibility of expert evidence articulated in *Daubert*, which require a showing of qualification, reliability and fit.[24] At best, after a showing that the Appointed Expert is qualified, and a showing that his or her testimony meets the requirements of reliability and fit, the Appointed Expert may only render an **opinion** on the value of the Property—an opinion which the Court is at liberty to accept, reject or modify as part of the Court's ultimate finding of the value of the Property.

16. Furthermore, Federal Rule of Evidence 706 provides minimum procedural requirements to ensure that the parties have an adequate opportunity to test the Appointed Expert's opinion through the adversarial process and that the Court has adequate tools to accept, reject or modify the Appointed Expert's opinion on reasoned bases. In pertinent part, Federal Rule of Evidence 706 provides:

> **(b) Expert's Role.** The court must inform the expert of the expert's duties. The court may do so in writing and have a copy filed with the clerk or may do so orally at a conference in which the parties have an opportunity to participate. The expert:
>
> > (1) must advise the parties of any findings the expert makes;
> >
> > (2) may be deposed by any party;
> >
> > (3) may be called to testify by the court or any party; and
> >
> > (4) may be cross-examined by any party, including the party that called the expert.
>
> \* \* \*
>
> **(e) Parties' Choice of Their Own Experts.** This rule does not limit a party in calling its own experts.

---

[23] *See* 29 Fed. Prac. & Proc. Evid. §6303 ("[T]estimony from an expert appointed by the court under Rule 706 is treated no differently under the Evidence Rules than testimony from the parties' experts.").

[24] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Case No. 11-35884-RAM

Thus, at a minimum, parties in interest must have the opportunity to be advised of the Appointed Expert's findings, to depose the Appointed Expert concerning those findings, and to examine or cross-examine the Appointed Expert at a second valuation hearing.[25] Parties in interest must also have the opportunity to call their own expert witnesses.[26]

17. The procedures suggested by the Debtors—that the Appointed Expert simply rely on, "the transcript of the valuation hearing, and the Waronker and Hansen appraisals"—simply do not meet the minimum procedural requirements of Federal Rule of Evidence 706. Moreover, if the Appointed Expert relies solely, or even primarily, upon evidence already found not to be competent or credible evidence (the Waronker and Hanson appraisals), rather than conduct his or her own appraisal, the Appointed Expert's appraisal is likely to result in a similar finding of incompetent evidence. This risk that a second attempt at a judicial valuation may result in a finding of no competent evidence should be avoided.

18. Accordingly, if the Court deems a court-appointed valuation expert necessary, the Objecting Parties submit that, at a minimum, the following procedures (the "**Court Appointed Expert Procedures**") must be implemented to ensure compliance with Federal Rule of Evidence 706, to afford parties in interest the right to test the expert's findings, and to increase the likelihood that this second attempt at a judicial valuation leads to competent valuation evidence:

> (1) The Court must formulate the Appointed Expert's duties, and the Objecting Parties must have an opportunity to participate in this formulation.
>
> (2) Procedures must be implemented to eliminate *ex parte* communications between the Appointed Expert and the parties.
>
> (3) The Appointed Expert must reach his or her own opinion of value of the Property after conducting an independent

---

[25] See Fed. R. Evid. 706(b).
[26] See Fed. R. Evid. 706(e).

investigation that the expert deems satisfactory.

(4) The Appointed Expert must prepare a written report, and parties in interest must have an opportunity to depose the Appointed Expert concerning the report and the expert's opinion of value.

(5) A new valuation hearing must be conducted, and parties in interest must have an opportunity to examine or cross-examine the Appointed Expert.

(6) Parties in interest must be afforded adequate opportunity to prepare their own expert witnesses, both for the purpose of adducing evidence of value and for the purpose of adducing rebuttal evidence.

(7) The value of the Property must be determined by the Court (not the Appointed Expert) after hearing all the evidence.

## CONCLUSION

WHEREFORE, the District respectfully requests that the Court: (i) deny the Renewed Valuation Motion, or (ii) appoint the Appointed Expert in accordance with the Court-Appointed Expert Procedures, if at all, only **after** the Debtors overcome the threshold obstacles to confirmation.

Dated: February 8, 2012

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3553
Facsimile: (305) 789-3395

By: /s/ Patricia A. Redmond (with permission)
   Patricia A. Redmond
   predmond@stearnsweaver.com
   Florida Bar No. 303739

*Counsel for the District*

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 Avenue of the Americas
Miami, Florida 33131
Telephone: (305) 579-0730
Facsimile: (305) 579-0717

By:_____
   John B. Hutton, III
   huttonj@gtlaw.com
   Florida Bar No. 902160
   John R. Dodd
   doddj@gtlaw.com
   Florida Bar No. 38091

*Counsel to the Indenture Trustee*

Case No. 11-35884-RAM

**ARNSTEIN & LEHR LLP**
200 South Biscayne Boulevard, Suite 3600
Miami, Florida 33131
Telephone: (305) 374-3330
Facsimile: (305) 374-4777


By: <u>/s/ Phillip M. Hudson, III (with permission)</u>
    Phillip M. Hudson III
    pmhudson@arnstein.com
    Florida Bar No. 518743

*Counsel to Florida Prime Holdings, LLC*

## Exhibit "A"

**Landmark at Doral Community Development District (City of Doral, Florida) Special Assessment Bonds, Series 2006A and 2006B** (collectively, the "**Bonds**"), issued pursuant to that Master Trust Indenture and that First Supplemental Indenture, both dated as of October 1, 2006, and both by and between Landmark at Doral Community Development District and U.S. Bank National Association, as Trustee (as supplemented and/or amended from time to time in accordance with their terms, the "**Indenture**").

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF, which is incorporated here by reference, or by first class U.S. mail for those counsel or parties identified on the Service List below, who are not authorized to receive electronically Notices of Electronic Filing.

_____
John B. Hutton, III

Case No. 11-35884-RAM

# Mailing Information for Case 11-35884-RAM

### Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Jere L. Earlywine**   jearlywine@hgslaw.com
- **C Craig Eller**   celler@broadandcassel.com
- **Jordi Guso**   jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com
- **Phillip M. Hudson III**   pmhudson@arnstein.com, rkcummings@arnstein.com;jtunis@arnstein.com;hbabcock@arnstein.com;hpiloto@arnstein.com;akang@arnstein.com;befernandez@arnstein.com;cofalla@arnstein.com
- **John B. Hutton III**   huttonj@gtlaw.com, thompsonc@gtlaw.com;mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- **Mindy A. Mora**   mmora@bilzin.com, laparicio@bilzin.com;cvarela@bilzin.com;eservice@bilzin.com;lflores@bilzin.com
- **Glenn D Moses**   gmoses@gjb-law.com, gjbecf@gjb-law.com
- **Office of the US Trustee**   USTPRegion21.MM.ECF@usdoj.gov
- **Patricia A Redmond**   predmond@stearnsweaver.com, jrivera@stearnsweaver.com;rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com;dillworthcdp@ecf.epiqsystems.com
- **Steven D Schneiderman**   Steven.D.Schneiderman@usdoj.gov
- **Eric J Silver**   esilver@stearnsweaver.com, mmesones-mori@stearnsweaver.com;rross@stearnsweaver.com;larrazola@stearnsweaver.com
- **Melinda S Thornton**   cao.bkc@miamidade.gov

### Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service).

    **Michael Eckert**
    119 S. Monroe Street #300 (32301)
    POB 6526
    Tallahassee, FL 32314

    **Daniel Y. Gielchinsky**
    1450 Brickell Ave #2300
    Miami, FL 33131

Case No. 11-35884-RAM

**Phillip M Hudson**
200 S Biscayne Blvd #3600
Miami, FL 33131

**Glenn Moses**
100 SE 2nd Street 44th floor
Miami, FL 33131

**Betty M Shumener**
550 South Hope St #2300
Los Angeles, CA 90071

ORL 298,053,842v4 2-8-12