**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Case No.  11-35884-RAM

Town Center at Doral, LLC, et al.,[1]                     Chapter 11

                    Debtors.                              (Jointly Administered)
_____/

**DEBTORS' RESPONSE TO MOTION TO CONVERT OR DISMISS**
**CHAPTER 11 CASES FOR BAD FAITH FILINGS**

TOWN CENTER AT DORAL, LLC, LANDMARK AT DORAL EAST, LLC,

LANDMARK AT DORAL SOUTH, LLC, LANDMARK AT DORAL DEVELOPERS, LLC,

AND LANDMARK CLUB AT DORAL, LLC (the "Debtors"), by and through undersigned

counsel, hereby file this response (the "Response") to the *Motion to Convert or Dismiss Chapter*

*11 Cases for Bad Faith Filings* [ECF No. 181] (the "Motion to Convert") filed by Landmark at

Doral Community Development District (the "District"), U.S. Bank, N.A., as indenture trustee

(the "Indenture Trustee"), and Florida Prime Holdings, LLC (the "Bondholder", and collectively

with the District and the Indenture Trustee, the "Movants") and respectfully respond as follows:

**JURISDICTION**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]      The last four digits of each Debtors' tax identification number are: (i) Town Center at Doral, LLC
[1866]; (ii) Landmark at Doral East, LLC [6616]; (iii) Landmark at Doral South, LLC [6676]; (iv) Landmark
Club at Doral, LLC [6797]; and (v) Landmark at Doral Developers, LLC [6762].  The Debtors' mailing address
is 701 W. Cypress Creek Road, Suite 303, Fort Lauderdale, Florida 33309.

## BACKGROUND

3.      On September 19, 2011 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

4.      Since the Petition Date, the Debtors have been operating as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On October 20, 2011, the United States Trustee appointed an official committee of unsecured creditors.

6.      The Debtors are the fee simple owners of land (approximately 117 contiguous acres) located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida, (the "Property").   The Property consists of 16 individual tracts of land with substantial infrastructure development completed, but with no vertical construction other than an unfinished 4-level parking garage.

## ARGUMENT

7.      As described more fully in the *Affidavit of Isaac Kodsi* (the "Kodsi Affidavit") attached as Exhibit "A" and the Affidavit of David Martin (the "Terra Affidavit") attached as Exhibit "B", all aspects of the proposed (but unexecuted) agreement ("Agreement") between the Debtors, Isaac Kodsi ("Kodsi") and Terra World Investments, LLC ("Terra World"), other than the proposed success fee (the "Success Fee"), were disclosed as part of a motion seeking approval of debtor in possession financing provided by Terra Landmark LLC ("Terra") and the budget attached to such motion (the "DIP Financing Motion").

8.      The Debtors, Kodsi and Terra World inadvertently failed to execute a written draft of the Agreement and therefore did not supply an executed copy of the Agreement to Debtors' counsel. This unintended oversight led to the inadvertent failure of the Debtors to disclose to the Court and creditors the prepetition negotiation of the Success Fee.

9.     The Debtors acknowledge that the Success Fee should have been disclosed to the Court and to creditors.  However, the non-disclosure was inadvertent, and occurred simply because the parties failed to execute the Agreement and return it to Debtors' counsel for filing with the Court.

10.     Moreover, the DIP Financing Motion clearly disclosed that the Debtors were committed to pursuing a plan of reorganization with Terra serving as the plan sponsor, to the exclusion of any other party.  The reason for this was explained to the Court at the hearing to consider the DIP Financing Motion; namely, no other party had emerged to provide the financing and plan support necessary to avert a foreclosure of the Debtors' property.  As a result of this "lock up arrangement" that the Court approved with entry of the order granting the DIP Financing Motion, the Debtors committed themselves to pursuing a plan of reorganization with Terra as plan sponsor in order to achieve the Debtors' goal of obtaining some recovery for unsecured creditors in these cases.

11.     Further, the Success Fee was not the impetus for the Debtors' lock up arrangement with Terra.  The primary focus in these cases has always been to avert a foreclosure of the Debtors' property by the District in order to enable unsecured creditors who are owed millions of dollars by the Debtors to obtain a recovery.  Because the lock up arrangement requested by Terra was a pre-condition of and the only means to provide a distribution to unsecured creditors, the Debtors acquiesced to the lock up arrangement.  The Debtors only agreed to the lock up arrangement after ensuring that the Creditors Committee would retain the right to solicit higher and better offers for the Debtors' equity.

12.     The lock up arrangement was noticed to all creditors through the DIP Financing Motion and evidenced the Debtors' commitment to proceed with Terra as plan sponsor.  The Success Fee did not provide any further motivation to getting the plan confirmed, as the Debtors were contractually bound to proceed with confirming the Joint Plan with Terra.

13.     Consequently, the relief sought by the Movants in the Motion is unwarranted under the circumstances.  The non-disclosure of the Success Fee was inadvertent, and does not impact any distribution to creditors in these cases.  It has always been the intent of the Debtors and Terra to disclose the entire Kodsi compensation, including the Success Fee, when the Agreement was executed.

14.     Moreover, the Success Fee did not induce the Debtors to file these cases nor to enter into the lock up arrangement with Terra.  Rather, the Debtors filed these cases and agreed to the lock up arrangement with Terra in order to provide unsecured creditors with the only available opportunity to receive a distribution on their claims.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) denying the Motion to Convert and (ii) granting such other and further relief as the Court deems just and proper.

Date:  February 8, 2012

Respectfully submitted,

BILZIN SUMBERG BAENA PRICE &
AXELROD LLP
*Attorneys for Debtors*
1450 Brickell Ave, Suite 2300
Miami, FL 33131
Telephone:  (305) 374-7580
Facsimile:  (305) 375-7593

By:    */s/ Mindy A. Mora*
        Mindy A. Mora
        Florida Bar No. 678910
        mmora@bilzin.com
        Tara V. Trevorrow
        Florida Bar No. 30959
        ttrevorrow@bilzin.com

**<u>Exhibit "A"</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                          Case No.  11-35884-RAM

Town Center at Doral, LLC, et al.,[1]           Chapter 11

                    Debtors.                    (Jointly Administered)
_____/

## AFFIDAVIT OF ISAAC KODSI

STATE OF FLORIDA:            )
                             ) SS:
COUNTY OF BROWARD            )

I, Isaac Kodsi, being first duly sworn and under oath, state as follows.

1.      I am an individual, over the age of 18 years, and competent to testify.

2.      This affidavit is made based on my personal knowledge.

3.      This affidavit is being submitted in support of the Debtors' response to the *Motion to Convert or Dismiss Chapter 11 Cases for Bad Faith Filings* [ECF No. 181].

4.      During April or May of 2011, I met David Martin for a breakfast meeting at the Icebox restaurant in South Beach.  I knew Mr. Martin to be a principal in Terra World Investments ("Terra"), which was developing property in the City of Doral.

5.      Mr. Martin advised me he was familiar with the Landmark project due to its relative location to other Terra projects and as a result of his meeting with Elie Berdugo, the

---

[1]      The last four digits of each Debtors' tax identification number are: (i) Town Center at Doral, LLC [1866]; (ii) Landmark at Doral East, LLC [6616]; (iii) Landmark at Doral South, LLC [6676]; (iv) Landmark Club at Doral, LLC [6797]; and (v) Landmark at Doral Developers, LLC [6762].  The Debtors' mailing address is 701 W. Cypress Creek Road, Suite 303, Fort Lauderdale, Florida 33309.

former principal of the Debtors, concerning the Landmark project prior to Mr. Berdugo's death. Mr. Martin inquired what the status was of the foreclosure actions filed against the real property owned by the Landmark companies. Based upon prior discussions I had with Mr. Martin a few years earlier, Mr. Martin knew that I had been counsel to EB Developers and Elie Berdugo in connection with the Landmark project. I advised Mr. Martin that the foreclosure actions were proceeding, but that motions for summary judgment had not yet been granted.

6.     Mr. Martin shared with me that Terra was in the process of assembling properties to the north and to the east of the Landmark project, and that Terra had some interest in determining whether it could acquire control over the Landmark companies so that Terra could develop the Landmark property. Based upon my familiarity with Terra's development activities, I believed that Terra had the ability to successfully develop the Landmark project. This was a very brief, general conversation and we did not reach any conclusions about how Terra might do business with the Landmark companies.

7.     After the initial breakfast meeting, I met again with Mr. Martin twice more without counsel. At each of these meetings we were joined by his business colleague, Brian Pearl. We discussed a potential bankruptcy filing for the Landmark companies so that their property could be developed by Terra, and funds could be generated which would not only payoff the debt owed to the Landmark at Doral Community Development District (the "CDD"), but also fund a distribution to general unsecured creditors, including AmT-CADC.

8.     During the course of these meetings, Mr. Martin inquired whether I was willing to get involved in a potential bankruptcy filing by the Landmark debtors as an officer of the companies, and what I would seek in the way of compensation. At this point, I was neither an officer nor an employee of any of the Landmark companies. During a very brief exchange, I

advised Mr. Martin that I would be looking for total compensation of $250,000. I suggested that $10,000 be paid as monthly compensation during the bankruptcy case, up to a cap of $100,000, and then $150,000 be paid as a success fee if the bankruptcy plan was approved by the bankruptcy court. I suggested this compensation package because while I was looking to be fairly compensated on a monthly basis for my time, I didn't want the entire compensation to be paid up front unless the rest of the creditors were receiving a distribution as well. Mr. Martin agreed this compensation structure seemed fair, and we sketched out notes on the terms of our agreement on the proposed compensation package. At this point, I have been unable to locate a copy of my notes about the compensation arrangement.

9.      Other than the monthly compensation of $10,000, up to a total of $100,000, and the $150,000 success fee, there are no other promises that Terra made to be regarding my post-confirmation involvement with the Debtors, or with any other project with which Terra is involved.

10.      In addition to discussing my compensation, we also discussed in general terms the structure of a bankruptcy filing and the retention of bankruptcy counsel. Mr. Martin suggested that I meet with Mindy Mora to consider using her firm, Bilzin Sumberg Baena Price & Axelrod, P.A., as bankruptcy counsel. All further discussions regarding the structure of the bankruptcy filing and plan were conducted with counsel present.

11.      Shortly before the bankruptcy filing, I met with Yogev Berdugo, the son of Elie Berdugo and the personal representative of Elie Berdugo's probate estate. I discussed the potential bankruptcy filing with Yogev Berdugo and the possibility of unsecured creditors receiving some return from their investments in the Landmark project. Yogev Berdugo acquiesced to the bankruptcy filing. However, as Yogev had already moved onto separate and

independent business endeavors, Yogev appointed me Vice President of each of the Debtors to deal with the bankruptcy proceedings and to avoid unwanted interruption in his own affairs.

12.    Prior to the Landmark companies filing bankruptcy, Yogev Berdugo signed a resolution approving the bankruptcy filing for the Landmark companies and appointing me as an officer to lead the companies through their bankruptcy cases.  At the 341 meeting of creditors for the Landmark companies, I advised Mindy Mora, the companies' bankruptcy counsel, about my compensation arrangement and asked her to draw up a contract reflecting this compensation arrangement and to file a motion to have the agreement approved by the bankruptcy court. Attached to this affidavit as exhibit "A" is the form of an Independent Contractor Agreement (the (the "Agreement") which Debtors' counsel prepared and sent to both me and Terra for execution. However, inadvertently, the Agreement was never executed by the parties to the agreement. Because the Agreement was never executed and returned to Debtors' counsel, no motion was filed seeking Court approval of the Agreement.

13.    Shortly after the bankruptcy filing, the Debtors filed a motion seeking approval of debtor in possession financing provided by Terra (the "DIP Motion").  The DIP Motion disclosed the lock-up agreement between Terra and the Debtors that precluded the Debtors from shopping the equity in the Debtors in consideration for Terra's agreement to sponsor a plan of reorganization with the Debtors which would include a distribution for general unsecured creditors.   The DIP Motion had as an attachment a budget which disclosed my monthly compensation of $10,000 per month, but did not include the post-confirmation success fee I had negotiated with Terra.   The reason the budget omitted the success fee is that the budget only showed expenditures during the bankruptcy cases of the Debtors, and not amounts which would be funded post-confirmation.

14.     After the DIP Motion was approved, Terra advanced $20,000 to the Debtors to fund the monthly compensation fees due me for the first two months I served as Vice President of the Debtors.  There are no other fees that have been paid to me or to my law firm, The Kodsi Law Firm, by the Debtors or by Terra or any of its affiliates.

15.     The compensation arrangement negotiated between Terra and myself for serving as an officer of the Debtors was of secondary importance to me.  The primary focus in these cases has been to avert a foreclosure of the Debtors' property in order to avoid wiping out any potential recovery by unsecured creditors.   Indeed, the principal goal in pursuing these bankruptcy filings was to enable unsecured creditors who are owed millions of dollars by the Debtors to obtain some recovery.

FURTHER AFFIANT SAYS NAUGHT.

_____
                          Isaac Kodsi


The foregoing instrument was acknowledged, sworn and subscribed before me this 8th day of February, 2012, by Isaac Kodsi, who is known to me or has produced ____N/A_____ as identification.

Witness my hand and official seal.

My Commission Expires:

_____
Notary Public, State of Florida
Personally Known X   Produced Identification ____
Type of Identification _____

[NOTARIAL SEAL]



STEVEN R. AMSTER
MY COMMISSION # DD 953990
EXPIRES: January 25, 2014
Bonded Thru Notary Public Underwriters

# EXHIBIT A

## INDEPENDENT CONTRACTOR AGREEMENT

THIS INDEPENDENT CONTRACTOR AGREEMENT (this "Agreement") is made as of September 19, 2011 (the "Effective Date"), by and between Town Center at Doral, LLC, Landmark at Doral East, LLC, Landmark at Doral South, LLC, Landmark Club at Doral, LLC, and Landmark at Doral Developers, LLC (collectively, "Landmark" or the "Debtors") and Isaac Kodsi (the "Independent Contractor").

WHEREAS, Landmark filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, on September 19, 2011 (the "Petition Date");

WHEREAS, Landmark desires to retain Independent Contractor.

WHEREAS, the Parties desire to set forth in writing the terms and conditions of their agreements and understandings.

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1. TERM OF AGREEMENT AND TERMINATION

Subject to the provisions of Section 4 and 8, Landmark agrees to retain Independent Contractor to perform the services described herein, and Independent Contractor agrees to be so retained, commencing on the Effective Date.  The parties further agree that such engagement shall continue until ether party terminates the engagement pursuant to the terms of Section 4.

2. DUTIES OF INDEPENDENT CONTRACTOR

In accepting the engagement contemplated herein, Independent Contractor agrees to act as the Debtors' Vice President during the pendancy of the Debtors' chapter 11 bankruptcy cases and to perform the duties consistent with such position, including without limitation managing the affairs of the Debtors, supervising and reviewing work performed on behalf of the Debtors by their employees and contractors, interacting with the Debtors' professionals and creditors regarding the Debtors' business plan and reorganization plan, and generally acting in the best interests of the Debtors in accordance with Independent Contractor's fiduciary duty.  Independent Contractor hereby agrees to act in a competent and professional manner in carrying out the duties of the engagement and agrees to abide by any rules, regulations, and any other policies and procedures covering Independent Contractor established by Landmark.

3.  COMPENSATION

In consideration for the services provided to Landmark as contemplated herein, Independent Contractor shall receive (a) a monthly fee in the amount of $10,000, provided, however, that such monthly fees taken together in the aggregate shall not exceed $100,000; and (b) subject to and upon confirmation of a chapter 11 plan of reorganization acceptable to Terra World Investments LLC, a success fee of $150,000. Landmark shall not be responsible for any expenses or out of pocket costs unless previously agreed to in writing by both parties.

4.  TERMINATION OF AGREEMENT

Landmark and Independent Contractor hereby agree that during the term of this Agreement and any extensions hereof, this agreement and the engagement of Independent Contractor may be terminated at will by either party and Independent Contractor's compensation shall be measured to the date of such termination at will by either party.

5.  CONFIDENTIALITY

Independent Contractor will not disclose any Confidential Information (as defined below) of Landmark without Landmark's express written authorization, Independent Contractor warrants that such Confidential Information will not be used in any way directly or indirectly detrimental to Landmark, and Independent Contractor agrees to keep such Confidential Information confidential.  If Independent Contractor is requested or required (by oral question, interrogatories, requests for information or documents, subpoenas, civil investigative demands, or similar processes) to disclose or produce any Confidential Information furnished in the course of Independent Contractor's engagement with Landmark, Independent Contractor will (i) provide Landmark with prompt notice thereof and copies, if possible, and if not, a description, of the Confidential Information requested or required to be produced so that Landmark may seek an appropriate protective order or waive compliance with the provisions of this section and (ii) consult with Landmark as to the advisability of Landmark taking legally available action to resist or narrow such request.  Independent Contractor further agrees that, if in the absence of a protective order or the receipt of a waiver hereunder Independent Contractor is nonetheless, in

8

the written opinion of Independent Contractor's legal counsel, compelled to disclose or produce Confidential Information concerning Landmark to any tribunal or to stand liable for contempt or suffer other censure or penalty, Independent Contractor may disclose or produce such Confidential Information to such tribunal legally authorized to request and entitled to receive such Confidential Information without liability hereunder; provided, however, that Independent Contractor shall give Landmark written disclosure or production as is practicable and shall use reasonable efforts to obtain, to the greatest extent practicable, an order or other reliable assurance that confidential treatment will be accorded to such Confidential Information so required to be disclosed or produced. For the purposes of this Section, the term "Confidential Information" shall mean any information of Landmark (whether written or oral), including all business or management records, marketing data, fee schedules, or trade secrets of Landmark whether or not such Confidential Information is disclosed or otherwise made available to Independent Contractor. Confidential Information does not include any information that Independent Contractor can establish (i) is or becomes generally available to and known by the public or medical community (other than as result of a unpermitted disclosure directly or indirectly by Independent Contractor); (ii) is or becomes available to Independent Contractor on a non-confidential basis from a source other than Landmark or its Affiliates, provided that such source is not and was not bound by a confidentiality agreement with or other obligation of secrecy to Landmark of which Independent Contractor has knowledge, or (iii) has already been or is hereafter independently acquired or developed by Independent Contractor without violating any confidentiality agreement with or other obligation of secrecy to Landmark. The terms and provisions of this Section shall survive the termination of this Agreement.

6. NOTICES

Any and all notices required or permitted to be given pursuant to this Agreement shall be sufficient if in writing and hand delivered to Independent Contractor or if forwarded by email, registered or certified mail, return receipt requested, to:

Isaac Kodsi

Kodsi Law Firm, P.A.

701 W. Cypress Creek Road

Suite 303

Fort Lauderdale, FL 33309

ikodsi@ark-financial.com

In the case of notice by Independent Contractor to Landmark, the same manner of delivery mail shall be sufficient, to:

Town Center at Doral, LLC

ATTN: Mindy A. Mora

Bilzin Sumberg Baena Price & Axelrod LLP

1450 Brickell Avenue, Suite 2300

Miami, FL 33131

mmora@bilzin.com

7.  ASSIGNABILITY

Neither this agreement nor any right or interest hereunder shall be assignable by Independent Contractor, Independent Contractor's beneficiaries, or legal representatives without Landmark's prior written consent; provided, however, that nothing herein shall preclude (i) Independent Contractor from designating a beneficiary to receive any benefit payable hereunder upon Independent Contractor's death, (ii) the executors, administrators, or other legal representative of Independent Contractor or Independent Contractor's estate from assigning any rights hereunder to the person or persons entitled thereunto, (iii) the assignment by Landmark of the compensation owed to Independent Contractor hereunder to a Garnishee upon the receipt of a Garnishment order of any local, state, or federal authority received by Landmark, or (iv) the assignment by Landmark of its rights and obligation under this Agreement.

8.  AMENDMENT

No amendment or modification of this Agreement shall be effective unless or until executed in writing by the parties hereto.

9.  WAIVER OF BREACH

The wavier by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver or breach of any other provision or any subsequent breach of any party.

10.  SEVERABILITY

If any provision of the Agreement shall be determined to be invalid, illegal or unenforceable in whole or in part, neither the validity of the remaining part of such provision nor the validity of any other provision of this Agreement shall in any way be affected thereby.

## 11. COUNTERPARTS

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

## 12. TAX WITHHOLDING

Independent Contractor understands that Independent Contractor is responsible for paying, according to law, Independent Contractor's income tax. If Independent Contractor is not a corporation, Independent Contractor further understands that Independent Contractor may be liable for self-employment (social security) tax, to be paid by Independent Contractor according to law. Landmark shall not withhold any taxes from Independent Contractor and shall supply him/her with a 1099 for tax purposes. Independent Contractor is not an employee, and shall at all times remain responsible for payment of all applicable taxes and shall remain responsible at all times to pay or properly deposit such sums with taxing authorities as are necessary and required by or for any applicable taxing authority, whether state, federal, or local.

## 13. BENEFITS/INSURANCE

Because Independent Contractor is engaged in Independent Contractor's own independently established business, Independent Contractor is not eligible for, and shall not participate in, any employee pension, health, or other fringe benefit plan, of Landmark. No workers' compensation insurance shall be obtained by Landmark concerning Independent Contractor or the employees of Independent Contractor. Independent Contractor agrees to comply with any applicable workers' compensation laws.

## 14. DECLARATION BY INDEPENDENT CONTRACTOR

Independent Contractor declares that Independent Contractor has complied with all federal, state and local laws regarding business permits, certificates and licenses that may be required to carry out the work to be performed under this agreement.

## 15. GOVERNING LAW/JURISDICTION

The Parties agree that this Agreement shall be construed and governed by the laws of the State of Florida, without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of Florida applicable hereto. The Parties consent to the jurisdiction of the Bankruptcy Court to adjudicate any disputes which may arise under this Agreement including to enforce the terms of this Agreement and to decide any claims that may arise or result in connection with this Agreement.

16.  ENTIRE AGREEMENT

This Agreement constitutes the entire agreement and understanding by and between Landmark and Independent Contractor with respect to the engagement herein referred to, and no representations, promises, agreements or understandings, written or oral, not herein contained shall be of any force and effect.  No change or modification hereof shall be valid or binding unless the same is in writing and signed by the party intended to be bound.

17. THIRD PARTY GURANTEE

The guarantee by Terra World Investments LLC of the fees and costs billed by Independent Contractor in this matter is integral to and a condition precedent to this engagement.

IN WITNESS WHEREOF, Landmark and Independent Contractor have duly executed this Agreement under seal effective as of the last date of execution written below.

Town Center at Doral, LLC,
Landmark at Doral East, LLC,
Landmark at Doral South, LLC,
Landmark Club at Doral, LLC, and
Landmark at Doral Developers, LLC

Independent Contractor

By: _____

    Isaac Kodsi
    Vice President

By: _____

    Isaac Kodsi

Date: _____

Date: _____

PAYMENT OF THE FEES AND COSTS INCURRED BY LANDMARK AT DORAL EAST, LLC; LANDMARK AT DORAL SOUTH, LLC; TOWN CENTER AT DORAL, LLC; LANDMARK AT DORAL DEVELOPERS, LLC; AND LANDMARK CLUB AT DORAL, LLC IN THE MATTER DESCRIBED IN THE FOREGOING INDEPENDENT CONTRACTOR AGREEMENT IS GUARANTEED THIS ___ DAY OF _____, 2011.
Terra World Investments LLC

By: _____

    David Martin
    Chief Operating Officer

Date: _____

**<u>Exhibit "B"</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

TOWN CENTER AT DORAL, LLC, et al.,                    Case No. 11-35884-BKC-RAM
                                                      Chapter 11 Case
                    Debtor.                           (Jointly Administered)

_____/

### AFFIDAVIT OF DAVID MARTIN

STATE OF FLORIDA            )
                            ) ss:
COUNTY OF MIAMI-DADE        )

David Martin, being duly sworn, hereby deposes and says:

1.      My name is David Martin.  I am over 21 years of age and am fully competent to make this declaration.  Unless otherwise stated, I have personal knowledge of the facts set forth in this Affidavit.

2.      I am the Chief Operating Officer of the Terra World Investments, LLC ("Terra").

3.      On January 27, 2012, the Bankruptcy Court entered the *Order Setting Briefing Schedule and Further Hearing on Motion to Convert or Dismiss* (the "Order")[1] (D.E. # 195).

4.      Paragraph 2 of the Order requires the Debtors to file a response to the Motion and attach a copy of the written agreement between Terra and Isaac Kodsi ("Kodsi') regarding the payment of a success fee to Kodsi.

5.      There is no written agreement between Terra and Kodsi regarding the payment of a success fee to Kodsi.

---

[1] . Capitalized terms used in this affidavit and not otherwise defined herein shall have the meanings ascribed to such terms in the Order.

4164603-5

6.      Although beyond the scope of the disclosures required by paragraph 2 of the Order, Terra discloses the following: on June 1, 2011 Terra, the Debtors and the Kodsi Law Firm executed a nonbinding term sheet - for discussion purposes only - that included an outline of a potential reorganization of the Debtors, including the possible employment of the Kodsi Law Firm (i) as a consultant for a fee of $150,000, and (ii) as one of the closing agents for subsequent lot sales. A true and correct copy of the non-binding preliminary term sheet is attached hereto as <u>Exhibit A</u> (the "Preliminary Term Sheet").

7.      The Preliminary Term Sheet was superseded by the Term Sheet that was attached to the *Debtors' Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 363 and 364 and Bankruptcy Rules 2002, 4001, 6004 and 6006: (I) Approving (A) Plan Term Sheet and (B) Reimbursement of Expenses; and (II) Authorizing Postpetition Financing* (D.E. # 45) (the "DIP Financing Term Sheet").

8.      Except for the DIP Financing Term Sheet, there is no other written agreement between Terra and Kodsi or his law firm with respect to the payment of any compensation, including a success fee.

9.      I am advised that the issue of Kodsi's compensation was raised in his deposition. I am advised that Kodsi testified that he believed he had a written agreement for the payment of a success fee.

10.     Counsel for the Debtors did prepare a consulting agreement in the form that is attached hereto as <u>Exhibit B</u>. The consulting agreement was never signed. The consulting agreement is consistent with the discussions Terra and Kodsi had with respect to his compensation.

11.     Terra always intended to disclose the agreement with Kodsi once executed.

DAVID MARTIN

BEFORE ME, the undersigned authority, on February 8, 2012, personally appeared DAVID MARTIN who is / is not <u>personally known</u> to me, who produced _____ as identification, and who did take an oath.

_____

Name of Notary, Type, Printed or Stamped

Commission Number (Stamp or Seal)



SANDRA RAMOS
Comm# DD0784430
Expires 4/30/2012
Florida Notary Assn., Inc

# Exhibit A

CONFIDENTIAL AND NONBINDING

# TERRA WORLD INVESTMENTS, LLC

June 1, 2011

PERSONAL AND CONFIDENTIAL;
NONBINDING EXCEPT AS STATED

Isaac Kodsi
Kodsi Law Firm
701 W Cypress Creek Road
Ft Lauderdale, FL 33309

Dear Isaac,

This letter confirms our understanding that the attached term sheet (the "Term Sheet") generally reflects the terms of a possible transaction by which Terra World Investments, LLC ("Terra") will form a new entity ("Newco") to develop the approximately 115 acres of land owned by Landmark at Doral East, LLC; Town Center at Doral, LLC; Landmark at Doral South, LLC; Landmark at Doral Developers, LLC; and Landmark Club at Doral, LLC (collectively, "Landmark Owner") known as Landmark in Doral, Florida ("Property" as detailed in Exhibit A). Newco will hire Kodsi Law Firm ("Kodsi") to provide legal services, consulting services and closing services for the development of Property.

Whether or not Terra and/or its assignees, Landmark Owner, and Kodsi enter into any contract or other definitive and legally binding documents (the "Documents"), they agree as follows.

The parties have prepared the Term Sheet only for discussion, and subject to Documents. The Term Sheet imposes no obligation or liability on any party. Neither party is under any obligation to enter into Documents. Each party may terminate these discussions at any time by notice. Neither party is under any obligation to deal exclusively with the other except as below.

While the parties negotiate Documents, Landmark Owner shall assist Terra in performing full due diligence on the Property. Each of Terra and Landmark Owner consents to the other's performing any due diligence about such party and its principals, investors, track record, financial condition, business reputation, affiliates, and acceptability to institutional lenders and governmental authorities.

The parties and their principals, agents, and representatives shall keep the Term Sheet and all due diligence information confidential and not share them with any person, except disclosures to actual and potential debt and equity financing sources, legal counsel, accountants, affiliates of Terra, and other advisors provided they all agree to preserve confidentiality. The

1

**CONFIDENTIAL AND NONBINDING**

Confidentiality and Exclusivity sections of the Term Sheet are binding. The legal venue for this letter is Miami, Florida.

If the above reflects our understanding, please sign and return a counterpart to us. We will look forward to working with you on the Documents.

Thank you and best regards.

Terra World Investments, LLC

By:

Name: David Martin

Its: Chief Operating Officer

Confirmed.

**Landmark at Doral East, LLC**
**Town Center at Doral, LLC**
**Landmark at Doral South, LLC**
**Landmark at Doral Developers, LLC**
**Landmark Club at Doral, LLC**

By:

Name: Isaac Kodsi

Its: VICE PRESIDENT

**Kodsi Law Firm, P.A.**

By:

Name: Steven R. Amster

Its: President

2

CONFIDENTIAL AND NONBINDING

## TERM SHEET FOR DEVELOPMENT OF LANDMARK

### Phase I: Reorganization

**Newco**

Terra will form a new company ("Newco") to develop the approximately 115 acres currently known as Landmark in cooperation with Landmark Owner and Kodsi Law Firm, P.A. ("Kodsi"). Landmark Owner acknowledges it plans to declare bankruptcy in order to propose a reorganization plan (the "Plan") with the project's current creditors.

**Terra Responsibilities**

Terra through Newco will be solely responsible for providing capital for the Plan. In addition, Terra will pay all legal fees of Landmark Owner during the bankruptcy proceedings. If Plan is confirmed by courts, Terra will release all personal and corporate guarantees of Landmark Owner related to the Property and compensate Landmark Owner as described herein.

**Landmark Responsibilities**

Landmark Owner will cooperate with Newco to obtain the right to develop the Property as part of a bankruptcy reorganization plan.

**Kodsi Services**

Kodsi will provide legal services to Newco during the period prior to the potential confirmation of the Plan. For these services, which will be covered by a legal services agreement, Kodsi will be paid One Hundred Thousand Dollars ($100,000.00) in total divided into monthly payments based on a preconfirmation schedule prepared by Bilzin Sumberg and expected to be approximately ten (10) months. If the Plan is confirmed prior to the last monthly payment, Kodsi will receive the balance of any monthly payments due—that is, any amount that has not been paid of the total One Hundred Thousand Dollars ($100,000.00). If the Plan is confirmed after the last monthly payment or is not confirmed, Kodsi will receive no more than the One Hundred Thousand Dollars ($100,000.00).

### Phase II: Management and Development

**Terra Responsibilities**

Terra will be the asset manager and developer for the Property under the Plan. Capital provided by Terra for the execution of the Plan may be provided in the form of a mortgage or equity at the sole discretion of Terra. Terra will have sole responsibility for all aspects of development of the Property including strategy formation and execution, entitlements and permitting, construction and sales. Principals of Landmark Owner will be indemnified and held harmless from any future liability associated with the execution of the Plan by Terra. *once Plan is confirmed and Terra closes on Property.*

**Kodsi Services**

Terra will agree to hire Kodsi as closing agent for 25% of the planned residential closings during the development at market rates.

In addition, Terra will hire Kodsi as a consultant for the development of the project for a fee of One Hundred Fifty Thousand Dollars

3

**CONFIDENTIAL AND NONBINDING**

($150,000.00) payable ninety (90) days after the Plan is approved and final.

**Capital Calls**    Terra will have sole responsibility for all capital calls.

**Exclusivity**    Landmark Owner agrees that during the period commencing on the execution of this letter until the date that is the earlier of (i) the date of the final Plan approval or Closing under a bankruptcy sale  or (ii) two years (such period being referred to herein as the "No Shop Period"), Landmark Owner agrees that Landmark Owner shall not sell or joint venture the Property, or negotiate for the sale of the Property to any party other than Terra.

**Confidentiality**    Terra, Landmark Owner, and Kodsi hereby agree that the terms and conditions of this letter, electronic files and verbal information that each party may disclose in connection with the program and the projects are of confidential nature including, but not limited to, maps, designs, ideas, promote structure, fees, know-how, techniques, formulae, return parameters, etc. Both parties agree that any information obtained from third parties or which is publicly available will not be considered confidential. This confidentiality provision will survive for a period of 2 years, and the parties agree to indemnify the other for any and all breaches hereof.  The parties agree that no public press releases or statements pertaining to this memorandum of understanding or the transactions contemplated hereby will be made without the prior written consent of both of them.

**Governing Law**    This agreement shall be governed by the laws of the state of Florida.

**CONFIDENTIAL AND NONBINDING**

### Exhibit A

**PARCEL "A"** - Title vested in Landmark at Doral East, LLC, a Florida limited liability company
The East 415.00 feet of Tracts 24, 33, 34, 35 & 36 of "FLORIDA LANDS COMPANY'S SUBDIVISION NO. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida.
LESS AND EXCEPT the portion of the property conveyed to LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT by deed dated December 7, 2005 and recorded December 15, 2005 in O.R. Book 24054, Page 603, of the Public Records of Miami Dade County, Florida.

**PARCEL "B"** - Title vested in Town Center at Doral, L.L.C., a Florida limited liability company
Tracts 24, 25, 33, 34, 35, 36, 45, 46, 47 and 48; less all roads Right-of-way of records, of "FLORIDA LANDS COMPANY'S SUBDIVISION NO. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, Florida, which lies within the West ½ of Section 17, Township Map 53 South, Range 40 East, Miami-Dade County, Florida. Less the East 415.00 feet of Tracts 24, 33, 34, 35 and 36 thereof, and less that portion of Tract 45 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459.
AND LESS:
A portion of Tract 25 of "FLORIDA LANDS COMPANY'S SUBDIVISION No. 1", according to the Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, which lies in the Northwest ¼ of Section 17, Township 53 South, Range 40 East. Miami-Dade County, Florida.
More particularly described as follows:
Commence at Northwest Corner of said Section 17, thence S01deg43min09secE along the West Line of said Section 17 for a distance of 2309.44 feet; thence N89deg40min03secE along the North line of said Tract 25 for 690.19 feet; thence S00deg19min51secE for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of Land, thence N89deg40min03secE for 301.52 feet; thence S00deg19min51secE for 92.18 feet; thence N89deg40min09secE for 18.00 feet; thence S00deg19min51secE for 128.67 feet; thence S89deg40min09secW for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N47deg51min32secE; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96deg22min46sec for a distance of 100.93 feet to a point on a non-tangent line; thence S89deg40min09secW for 129.49 feet; thence N00deg19min51secW for 128.67 feet; thence N89deg40min09secE for 18.00 feet; thence N00deg19min51secW for 92.17 feet to the POINT OF BEGINNING.
AND LESS AND EXCEPT the portion of the property conveyed to LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT by deed dated December 7, 2005 and recorded December 15, 2005 in O.R. Book 24054, Page 603, of the Public Records of Miami Dade County, Florida.

**PARCEL "C"** - Title vested in Landmark at Doral South, LLC, a Florida limited liability company
The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION No. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Commitment No.: Landmark Loan Policy 423-0008845 File No.: K0705.763 & K 0711.811

**CONFIDENTIAL AND NONBINDING**

Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way of records, and less that portion of Tracts 41, 42, 43, and 44 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459. Less and except therefrom that portion lying at or above elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)
AND LESS AND EXCEPT the portion of the property conveyed to LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT by deed dated December 7, 2005 and recorded December 15, 2005 in O.R. Book 24054, Page 603, of the Public Records of Miami Dade County, Florida.

**PARCEL "D"** - Title vested in Landmark at Doral Developers, LLC, a Florida limited liability company The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION No. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way of records, and less that portion of Tracts 41, 42, 43, and 44 deeded to Miami-Dade County by Special Warranty deed dated August 23, 1996, and recorded in O.R.B. 17336, Page 0459. Less and except therefrom that portion lying below elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)
AND LESS AND EXCEPT the portion of the property conveyed to LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT by deed dated December 7, 2005 and recorded December 15, 2005 in O.R. Book 24054, Page 603, of the Public Records of Miami Dade County, Florida.

**PARCEL "E"** - Title vested in Landmark Club at Doral, LLC, a Florida limited liability company A portion of Tract 25 of "FLORIDA LANDS COMPANY'S SUBDIVISION No. 1", according to that Plat thereof, as recorded in Plat Book 2, at Page 17 of the Public Records of Miami-Dade County, which lies in the Northwest ¼ of Section 17, Township 53 South, Range 40 East. Miami-Dade County, Florida. More particularly described as follows:

Commence at Northwest Corner of said Section 17, thence S01deg43min09secE along the West Line of said Section 17 for a distance of 2309.44 feet; thence N89deg40min03secE along the North line of said Tract 25 for 690.19 feet; thence S00deg19min51secE for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of Land, thence N89deg40min03secE for 301.52 feet; thence S00deg19min51secE for 92.18 feet; thence N89deg40min09secE for 18.00 feet; thence S00deg19min51secE for 128.67 feet; thence S89deg40min09secW for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N47deg51min32secE; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96deg22min46sec for a distance of 100.93 feet to a point on a non-tangent line; thence S89deg40min09secW for 129.49 feet; thence N00deg19min51secW for 128.67 feet; thence N89deg40min09secE for 18.00 feet; thence N00deg19min51secW for 92.17 feet to the POINT OF BEGINNING.

# Exhibit B

## INDEPENDENT CONTRACTOR AGREEMENT

THIS INDEPENDENT CONTRACTOR AGREEMENT (this "Agreement") is made as of September 19, 2011 (the "Effective Date"), by and between Town Center at Doral, LLC, Landmark at Doral East, LLC, Landmark at Doral South, LLC, Landmark Club at Doral, LLC, and Landmark at Doral Developers, LLC (collectively, "Landmark" or the "Debtors") and Isaac Kodsi (the "Independent Contractor").

WHEREAS, Landmark filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, on September 19, 2011 (the "Petition Date");

WHEREAS, Landmark desires to retain Independent Contractor.

WHEREAS, the Parties desire to set forth in writing the terms and conditions of their agreements and understandings.

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1. TERM OF AGREEMENT AND TERMINATION

Subject to the provisions of Section 4 and 8, Landmark agrees to retain Independent Contractor to perform the services described herein, and Independent Contractor agrees to be so retained, commencing on the Effective Date. The parties further agree that such engagement shall continue until ether party terminates the engagement pursuant to the terms of Section 4.

2. DUTIES OF INDEPENDENT CONTRACTOR

In accepting the engagement contemplated herein, Independent Contractor agrees to act as the Debtors' Vice President during the pendency of the Debtors' chapter 11 bankruptcy cases and to perform the duties consistent with such position, including without limitation managing the affairs of the Debtors, supervising and reviewing work performed on behalf of the Debtors by their employees and contractors, interacting with the Debtors' professionals and creditors regarding the Debtors' business plan and reorganization plan, and generally acting in the best interests of the Debtors in accordance with Independent Contractor's fiduciary duty. Independent Contractor hereby agrees to act in a competent and professional manner in carrying out the duties of the engagement and agrees to abide by any rules, regulations, and any other policies and procedures covering Independent Contractor established by Landmark.

3.  COMPENSATION

In consideration for the services provided to Landmark as contemplated herein, Independent Contractor shall receive (a) a monthly fee in the amount of $10,000, provided, however, that such monthly fees taken together in the aggregate shall not exceed $100,000; and (b) subject to and upon confirmation of a chapter 11 plan of reorganization acceptable to Terra World Investments LLC, a success fee of $150,000.  Landmark shall not be responsible for any expenses or out of pocket costs unless previously agreed to in writing by both parties.

4.  TERMINATION OF AGREEMENT

Landmark and Independent Contractor hereby agree that during the term of this Agreement and any extensions hereof, this agreement and the engagement of Independent Contractor may be terminated at will by either party and Independent Contractor's compensation shall be measured to the date of such termination at will by either party.

5.  CONFIDENTIALITY

Independent Contractor will not disclose any Confidential Information (as defined below) of Landmark without Landmark's express written authorization, Independent Contractor warrants that such Confidential Information will not be used in any way directly or indirectly detrimental to Landmark, and Independent Contractor agrees to keep such Confidential Information confidential.  If Independent Contractor is requested or required (by oral question, interrogatories, requests for information or documents, subpoenas, civil investigative demands, or similar processes) to disclose or produce any Confidential Information furnished in the course of Independent Contractor's engagement with Landmark, Independent Contractor will (i) provide Landmark with prompt notice thereof and copies, if possible, and if not, a description, of the Confidential Information requested or required to be produced so that Landmark may seek an appropriate protective order or waive compliance with the provisions of this section and (ii) consult with Landmark as to the advisability of Landmark taking legally available action to resist or narrow such request.  Independent Contractor further agrees that, if in the absence of a protective order or the receipt of a waiver hereunder Independent Contractor is nonetheless, in the written opinion of Independent Contractor's legal counsel, compelled to disclose or produce Confidential Information concerning Landmark to any tribunal or to stand liable for contempt or suffer other censure or penalty, Independent Contractor may disclose or produce such Confidential Information to such tribunal legally authorized to request and entitled to receive such Confidential Information without liability hereunder; provided, however, that Independent Contractor shall give Landmark written disclosure or production as is practicable and shall use reasonable efforts to obtain, to the greatest extent practicable, an order or other reliable assurance that confidential treatment will be accorded to such Confidential Information so required to be disclosed or produced.  For the purposes of this Section, the term "Confidential Information" shall mean any information of Landmark (whether written or oral), including all business or

MIAMI 2779976.4 7945135741

management records, marketing data, fee schedules, or trade secrets of Landmark whether or not such Confidential Information is disclosed or otherwise made available to Independent Contractor.   Confidential Information does not include any information that Independent Contractor can establish (i) is or becomes generally available to and known by the public or medical community (other than as result of a unpermitted disclosure directly or indirectly by Independent Contractor); (ii) is or becomes available to Independent Contractor on a non-confidential basis from a source other than Landmark or its Affiliates, provided that such source is not and was not bound by a confidentiality agreement with or other obligation of secrecy to Landmark of which Independent Contractor has knowledge, or (iii) has already been or is hereafter independently acquired or developed by Independent Contractor without violating any confidentiality agreement with or other obligation of secrecy to Landmark.   The terms and provisions of this Section shall survive the termination of this Agreement.

6.   NOTICES

Any and all notices required or permitted to be given pursuant to this Agreement shall be sufficient if in writing and hand delivered to Independent Contractor or if forwarded by email, registered or certified mail, return receipt requested, to:

Isaac Kodsi
Kodsi Law Firm, P.A.
701 W. Cypress Creek Road
Suite 303
Fort Lauderdale, FL 33309
ikodsi@ark-financial.com

In the case of notice by Independent Contractor to Landmark, the same manner of delivery mail shall be sufficient, to:

Town Center at Doral, LLC
ATTN: Mindy A. Mora
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
mmora@bilzin.com

7.   ASSIGNABILITY

Neither this agreement nor any right or interest hereunder shall be assignable by Independent Contractor, Independent Contractor's beneficiaries, or legal representatives without Landmark's prior written consent; provided, however, that nothing herein shall preclude (i) Independent Contractor from designating a beneficiary to receive any benefit payable hereunder upon Independent Contractor's death, (ii) the executors, administrators, or other legal representative of Independent Contractor or Independent Contractor's estate from assigning any

rights hereunder to the person or persons entitled thereunto, (iii) the assignment by Landmark of the compensation owed to Independent Contractor hereunder to a Garnishee upon the receipt of a Garnishment order of any local, state, or federal authority received by Landmark, or (iv) the assignment by Landmark of its rights and obligation under this Agreement.

8. AMENDMENT

No amendment or modification of this Agreement shall be effective unless or until executed in writing by the parties hereto.

9. WAIVER OF BREACH

The wavier by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver or breach of any other provision or any subsequent breach of any party.

10. SEVERABILITY

If any provision of the Agreement shall be determined to be invalid, illegal or unenforceable in whole or in part, neither the validity of the remaining part of such provision nor the validity of any other provision of this Agreement shall in any way be affected thereby.

11. COUNTERPARTS

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

12. TAX WITHHOLDING

Independent Contractor understands that Independent Contractor is responsible for paying, according to law, Independent Contractor's income tax. If Independent Contractor is not a corporation, Independent Contractor further understands that Independent Contractor may be liable for self-employment (social security) tax, to be paid by Independent Contractor according to law. Landmark shall not withhold any taxes from Independent Contractor and shall supply him/her with a 1099 for tax purposes. Independent Contractor is not an employee, and shall at all times remain responsible for payment of all applicable taxes and shall remain responsible at all times to pay or properly deposit such sums with taxing authorities as are necessary and required by or for any applicable taxing authority, whether state, federal, or local.

13. BENEFITS/INSURANCE

Because Independent Contractor is engaged in Independent Contractor's own independently established business, Independent Contractor is not eligible for, and shall not participate in, any employee pension, health, or other fringe benefit plan, of Landmark. No workers' compensation insurance shall be obtained by Landmark concerning Independent

Contractor or the employees of Independent Contractor. Independent Contractor agrees to comply with any applicable workers' compensation laws.

14. DECLARATION BY INDEPENDENT CONTRACTOR

Independent Contractor declares that Independent Contractor has complied with all federal, state and local laws regarding business permits, certificates and licenses that may be required to carry out the work to be performed under this agreement.

15. GOVERNING LAW/JURISDICTION

The Parties agree that this Agreement shall be construed and governed by the laws of the State of Florida, without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of Florida applicable hereto. The Parties consent to the jurisdiction of the Bankruptcy Court to adjudicate any disputes which may arise under this Agreement including to enforce the terms of this Agreement and to decide any claims that may arise or result in connection with this Agreement.

16. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement and understanding by and between Landmark and Independent Contractor with respect to the engagement herein referred to, and no representations, promises, agreements or understandings, written or oral, not herein contained shall be of any force and effect. No change or modification hereof shall be valid or binding unless the same is in writing and signed by the party intended to be bound.

17. THIRD PARTY GURANTEE

The guarantee by Terra World Investments LLC of the fees and costs billed by Independent Contractor in this matter is integral to and a condition precedent to this engagement.

IN WITNESS WHEREOF, Landmark and Independent Contractor have duly executed this Agreement under seal effective as of the last date of execution written below.

Town Center at Doral, LLC,                          Independent Contractor
Landmark at Doral East, LLC,
Landmark at Doral South, LLC,
Landmark Club at Doral, LLC, and
Landmark at Doral Developers, LLC


By: _____              By: _____
    Isaac Kodsi                                        Isaac Kodsi
    Vice President


Date: _____          Date: _____

PAYMENT OF THE FEES AND COSTS INCURRED BY LANDMARK AT DORAL EAST, LLC; LANDMARK AT DORAL SOUTH, LLC; TOWN CENTER AT DORAL, LLC; LANDMARK AT DORAL DEVELOPERS, LLC; AND LANDMARK CLUB AT DORAL, LLC IN THE MATTER DESCRIBED IN THE FOREGOING INDEPENDENT CONTRACTOR AGREEMENT IS GUARANTEED THIS ___ DAY OF _____, 2011.
Terra World Investments LLC


By: _____
    David Martin
    Chief Operating Officer

Date: _____

MIAMI 2779976.4 7945135741