**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

-------------------------------------------------------X

In re:                                                    CHAPTER 11

TOWN CENTER AT DORAL, LLC, *et al.*          Case No.  11-35884-BKC-RAM

                                                          Jointly Administered

              Debtors.
-------------------------------------------------------X

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**
**UNDERLINE CHAPTER 11 OF THE BANKRUPTCY CODE**

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
Mindy A. Mora
Tara V. Trevorrow
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

**Counsel for the Debtors**

Dated: February 8, 2012

MIAMI 2904888.4 7945135741

TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS AND INTERPRETATION ...................................1

   **A.    Definitions** .........................................................................1

   **B.    Interpretation; Application of Definitions and Rules of
           Construction**.................................................................11

ARTICLE II       PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
                 EXPENSES, PRIORITY TAX CLAIMS AND DIP FINANCING
                 CLAIM .............................................................................11

           2.1    *Administrative Expenses* ........................................11

           2.2    *Priority Tax Claims* ...............................................12

           2.3    *DIP Financing Claim* .............................................12

ARTICLE III      CLASSIFICATION OF CLAIMS AND INTERESTS,
                 IMPAIRMENT, AND VOTING..................................................12

ARTICLE IV       PROVISIONS FOR TREATMENT OF CLAIMS AND
                 INTERESTS ...................................................................13

           4.1    *Priority Non-Tax Claims (Class 1)* .........................13

           4.2    *Secured Claim of Miami-Dade County Tax Collector
                  (Class 2)*..................................................................13

           4.3    *Secured Tax Certificate Claims (Classes 3A-3H)* ................13

           *Class 3B – BTI Bluegate FTCF, LLC* ...............................14

           *Class 3C - Finance Southern Co* ......................................14

           *Class 3D – BTI Bluegate FTCF, LLC* ...............................14

           *Class 3E – Hilda Pico / Ocean Bank* ................................15

           *Class 3F – Finance Southern Co.* .....................................15

           *Class 3G – Hilda Pico / Ocean Bank* ................................15

           *Class 3H – BTI Bluegate FTCF, LLC* ...............................16

           4.4    *Secured District Claims (Classes 4A-4D)* .............16

           4.5    *AMT CADC Loan Claim (Class 5)* ........................19

TABLE OF CONTENTS
(continued)

|  |  |  | Page |
|---|---|---|---|
| | 4.6 | *Other Secured Claims (Class 6)* | 19 |
| | 4.7 | *General Unsecured Claims (Class 7)* | 19 |
| | 4.8 | *Old Equity Interests (Class 8)* | 19 |
| | 4.9 | *Nonconsensual Confirmation* | 19 |
| ARTICLE V | | MEANS OF IMPLEMENTATION | 20 |
| | 5.2 | *Revesting of Assets* | 20 |
| | 5.3 | *New Membership Units* | 20 |
| | 5.4 | *Delivery of Documents.* | 20 |
| | 5.5 | *Cancellation of Existing Securities and Agreements* | 21 |
| | 5.6 | *Legal Form and Governance* | 21 |
| | 5.7 | *Exemption from Securities Laws* | 21 |
| | 5.8 | *Exemption from Transfer Taxes* | 22 |
| | 5.9 | *Expedited Tax Determination* | 22 |
| ARTICLE VI | | PROVISIONS GOVERNING DISTRIBUTIONS | 22 |
| | 6.1 | *Date of Distributions* | 22 |
| | 6.2 | *Distributions Concerning General Unsecured Claims* | 22 |
| | 6.3 | *Disbursing Agent* | 23 |
| | 6.4 | *Rights and Powers of Disbursing Agent* | 24 |
| | 6.5 | *Delivery of Distributions* | 24 |
| | 6.6 | *Manner of Payment* | 24 |
| | 6.7 | *Setoffs and Recoupment* | 25 |
| | 6.8 | *Allocation of Plan Distributions Between Principal and Interest* | 25 |
| | 6.9 | *De Minimis Distributions Less Than $25.00* | 25 |
| | 6.10 | *Withholding and Reporting Requirements* | 25 |

## TABLE OF CONTENTS
### (continued)

Page

ARTICLE VII     PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN OF REORGANIZATION ................................................. 26

    7.1     *Objections* ................................................................................ 26

    7.2     *No Distributions Pending Allowance* ..................................... 26

    7.3     *Distributions After Allowance* ................................................ 26

ARTICLE VIII     EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 26

    8.1     *Treatment* ................................................................................ 26

    8.2     *Rejection Damage Claims* ...................................................... 27

ARTICLE IX     CONDITIONS PRECEDENT TO CONSUMATION DATE ...... 27

    9.1     *Conditions Precedent to Confirmation* .................................. 27

    9.2     *Conditions Precedent to Effectiveness* ................................... 27

    9.3     *Waiver of Conditions* ............................................................. 28

    9.4     *Satisfaction of Conditions* ...................................................... 28

ARTICLE X     EFFECT OF CONFIRMATION ................................................. 28

    10.1     *Binding Effect* ......................................................................... 28

    10.2     *Discharge of Debtor* ................................................................ 28

    10.3     *Term of Injunctions or Stays* .................................................. 29

    10.5     *Exculpation* ............................................................................. 30

    10.6     *Releases* .................................................................................. 30

    10.7     *Causes of Action* .................................................................... 31

ARTICLE XI     RETENTION OF JURISDICTION ............................................. 31

ARTICLE XII     MISCELLANEOUS PROVISIONS ........................................... 33

    12.1     *Payment of Statutory Fees* ...................................................... 33

    12.2     *Modification of Plan* ............................................................... 33

    12.3     *Revocation of Plan* ................................................................. 33

    12.4     *Severability of Plan Provisions* .............................................. 33

TABLE OF CONTENTS
(continued)

|  |  | Page |
|---|---|---|
| 12.5 | *Governing Law* | 34 |
| 12.6 | *Compliance with Tax Requirements* | 34 |
| 12.7 | *Computation of Time* | 34 |
| 12.8 | *Notices* | 34 |
| 12.9 | *Filing or Execution of Additional Documents* | 35 |

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

---------------------------------------------------------X

In re:                                                              CHAPTER 11

TOWN CENTER AT DORAL, LLC, *et al.*          Case No.  11-35884-BKC-RAM

                                                                    Jointly Administered

                         Debtors.

---------------------------------------------------------X

### FIRST AMENDED JOINT PLAN OF REORGANIZATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

      Town Center at Doral, LLC, Landmark at Doral East, LLC, Landmark at Doral South, LLC, Landmark Club at Doral, LLC, and Landmark at Doral Developers, LLC, as Debtors and Debtors in Possession, and Terra Landmark, LLC, as Plan Sponsor, hereby jointly propose the following chapter 11 plan of reorganization (the "Plan"), pursuant to section 1121(a) of the Bankruptcy Code:

### ARTICLE I

### DEFINITIONS AND INTERPRETATION

**A.**     **Definitions**

      The following terms used herein shall have the respective meanings defined below:

      1.1     ***Administrative Expense*** means any right to payment constituting a cost or expense of administration of the Cases that is Allowed under sections 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' Estates, (b) any actual and necessary costs and expenses of operating the Debtors' business, (c) any indebtedness or obligations incurred or assumed by the Debtors during the Cases, (d) any compensation for professional services rendered and reimbursement of expenses incurred, to the extent Allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, (e) all fees and charges assessed against the Estates under section 1930 of title 28 of the United States Code, and (f) cure payments for executory contracts and unexpired leases that are assumed under section 365 of the Bankruptcy Code.

1.2    ***Affiliate*** (i) with respect to the Debtors, has the meaning set forth in section 101(2) of the Bankruptcy Code, and (ii) with respect to any Person (including, without limitation, the Debtors) means another Person who controls, is controlled by, or is under common control with such Person.

1.3    ***Allowed*** means with respect to any Claim or Interest or any portion thereof (other than a Disputed Claim or Disputed Interest) a Claim or Interest (a) that is the subject of a timely filed proof of Claim or Interest as to which no objection to allowance, request for estimation or motion to expunge or limit recovery of such Claim or Interest has been interposed on or before the applicable period of limitation fixed by Section 7.1 of this Plan or otherwise ordered by the Bankruptcy Court, (b) as to which any objection to its allowance has been settled, waived through payment, withdrawn, or denied by Final Order, (c) that has been allowed by Final Order or this Plan, (d) as to which the liability of the Debtors and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court, (e) which is in an amount and of the classification and type set forth in the Debtors' Schedules, to the extent the Schedules list the Claim or Interest as undisputed, non-contingent and liquidated, and to which no objection is pending or filed, or (f) solely with respect to any Interest or any portion thereof, any Interest held of record as set forth in the books and records maintained by or on behalf of the Debtors; *provided*, *however*, that with respect to an Administrative Expense, "Allowed Claim" means an Administrative Expense as to which a timely request for payment has been made in accordance with Section 2.1 of the Plan (if such written request is required) and as to which the Debtors or another party in interest (i) has not interposed a timely objection or (ii) has interposed a timely objection and such objection has been settled, waived through payment, withdrawn, or denied by Final Order. Unless otherwise specified in this Plan or ordered by the Bankruptcy Court, "Allowed Claim" or "Allowed Administrative Expense" shall not include interest on such Claim or Administrative Expense from and after the Petition Date. ***Allowed*** when used as an adjective herein (such as Allowed Claim or Allowed Interest) shall have a corresponding meaning.

1.4    ***Amended Organizational Documents*** mean any amended and/or restated organizational documents of the Reorganized Debtors.

1.5    ***AMT CADC Loan*** means the debt obligation owed to AMT CADC Ventures, LLC by the Debtors, in the aggregate principal amount of approximately $103,870,058, relating to (i) those certain loans made by Ohio Savings Bank to the Debtors on or about January 30, 2005, as subsequently amended and (ii) that certain loan made by iStar

2

Financial, Inc. to the Debtors on or about December 18, 2007, as subsequently assigned.

1.6 ***AMT CADC Loan Claim*** means the claim arising from the AMT CADC Loan.

1.7 ***Applicable Rate*** means the lesser of (i) five percent (5%) or (ii) the rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the Effective Date and identified at http://www.federalreserve.gov/releases/h15/current/.

1.8 ***Appraised Value*** shall mean, with respect to the Property, the market value determined by Waronker & Rosen, Inc. unless such value is objected to, and in such instance, as determined by the Bankruptcy Court.

1.9 ***Assessment Obligations*** means (i) those obligations set forth in Resolutions 2005-12 and 2006-10 issued by the Board of Supervisors of the District, with an aggregate principal amount as of the Petition Date of approximately $71.5 million and (ii) those obligations described in the "Annual Notice of Operating Assessment", dated March 11, 2011, from the District to each of (i) Town Center at Doral, LLC, (ii) Landmark at Doral East, LLC, (iii) Landmark Club at Doral, LLC and (iv) Landmark at Doral South, LLC, which obligations as of the Petition Date had an aggregate Face Amount of $649,818 for the years 2008-2011.

1.10 ***Assumed Insider Indemnities*** shall have the meaning set forth in Section 10.4 hereof.

1.11 ***Avoidance Action*** means a Cause of Action pursuant to Chapter 5 of the Bankruptcy Code.

1.12 ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Cases.

1.13 ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

1.14 ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075, title 28 of the United States Code, as amended from time to time, as applicable to the Cases.

1.15 ***Business Day*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.16    *Cases* mean the cases commenced by the Debtors in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code.

1.17    *Cash* means cash, cash equivalents and other readily available direct obligations of the United States of America, including bank deposits, checks and similar items.  When used in the Plan with respect to a Distribution under the Plan, the term *Cash* means the lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Reorganized Debtors drawn on a domestic bank.

1.18    *Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.19    *Class A Maturity Date* means May 1, 2038.

1.20    *Class B Maturity Date* means May 1, 2020.

1.21    *Class 2 Claims* means all Claims arising in Classes 2A, 2B, 2C and 2D.

1.22    *Class 3 Claims* means all Claims arising in Classes 3A, 3B, 3C, 3D, 3E, 3F, 3G and 3H.

1.23    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.24    *Confirmation Hearing* means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.25    *Confirmation Order* means the order or orders of the Bankruptcy Court confirming this Plan.

1.26    *Creditor Trust* means the trust established for the benefit of Holders of Allowed General Unsecured Claims pursuant to, and consistent with the powers set forth in, this Plan and the Creditor Trust Agreement.

1.27    *Creditor Trust Agreement* means the agreement to be dated as of the Effective Date by and between the Committee and the Creditor Trustee, which will establish and set forth the provisions of the Creditor Trust.

1.28    *Creditor Trustee* means the person or entity appointed as the trustee of the Creditor Trust pursuant to the Creditor Trust Agreement.

1.29    *Creditors Committee* means the official joint committee of unsecured creditors appointed in these Cases pursuant to the *Appointment and*

MIAMI 2904888.4 7945135741

4

*Notice of Appointment of Joint Committee of Creditors Holding Unsecured Claims* [ECF No. 31].

1.30    ***Debtors*** mean, collectively, Town Center at Doral, LLC; Landmark at Doral East, LLC; Landmark at Doral South, LLC; Landmark Club at Doral, LLC and Landmark at Doral Developers, LLC.

1.31    ***DIP Financing Claim*** means the superpriority Allowed Administrative Expense Claim relating to the postpetition financing approved pursuant to the *Final Order Granting Debtors' Emergency Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363, and 364 and Bankruptcy Rules 2002, 4001, 6004, and 6006: (1) Authorizing Postpetition Financing; and (II) Approving Expense Reimbursement* [ECF No. ____].

1.32    ***Disallowed*** means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors that has not been Allowed pursuant to the Plan and that (i) has been disallowed, in whole or part, by a Final Order of the Bankruptcy Court; (ii) has been withdrawn by agreement of the Debtors and the Holder thereof, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a Proof of Claim or a Proof of Interest, as applicable, has not been timely filed or deemed timely filed pursuant to the Plan, the Bankruptcy Code, or any Final Order of the Bankruptcy Court or other applicable bankruptcy law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim or Proof of Interest, as applicable; or (vi) is evidenced by a Proof of Claim or a Proof of Interest that has been filed, or that has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court, but as to which such Proof of Claim or Proof of Interest was not timely or properly filed.  In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.  *Disallowed* when used as an adjective herein (such as Disallowed Claim or Disallowed Interest) shall have a corresponding meaning.

1.33    ***Disbursing Agent*** means the Reorganized Debtors in their capacity as a disbursing agent under this Plan, unless the Reorganized Debtors file a notice prior to the closing of these Cases naming any other Person or entity as the disbursing agent under this Plan.

1.34    ***Disclosure Statement*** means that certain disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise

modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, Rule 3017 of the Bankruptcy Rules and Rule 3017-1 of the Local Rules.

1.35    *Disputed* means any Claim, Interest or Administrative Claim that has been neither Allowed nor Disallowed

1.36    *Disputed Claim Reserve* means the reserve established pursuant to **Section 6.2** of this Plan for Disputed General Unsecured Claims.

1.37    *Distribution* means a distribution of Cash or other property, as the context requires, to a Holder of an Allowed Claim on account of such Allowed Claim or a distribution of equity to a Holder of an Allowed Interest on account of such Interest, in all cases pursuant to the terms of the Plan.

1.38    *District* means the Landmark at Doral Community Development District, which is a special purpose government entity authorized, established and governed by Chapter 190 of the Florida Statutes.

1.39    *District Claim* means a Claim arising from the Assessment Obligations.

1.40    *Effective Date* means a Business Day selected by the Debtors, and specified in a notice sent by the Debtors to all parties in interest, within five Business Days of the date on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of this Plan specified in Section 9.2 of this Plan shall have been satisfied or waived as provided in Section 9.3.

1.41    *End Purchasers* mean the purchasers of each of the residential, commercial, office or industrial units in the New Development.

1.42    *Equity Contribution* means the equity contributions to be made or the subordinated debt to be funded by the Plan Sponsor to the Reorganized Debtors to fund the transactions hereunder, including, but not limited to, the funding of the Creditor Trust, the payment of confirmation costs and professional fees associated with the Cases, and amounts necessary to make Distributions hereunder.  In no event shall the Equity Contribution be less than $5,000,000 or more than $20,000,000.

1.43    *Estates* means the Estates of the Debtors as created under section 541 of the Bankruptcy Code.

1.44    *Estate Causes of Action* mean all claims and causes of action of the Debtors against third parties arising under Chapter 5 of the Bankruptcy Code or under related federal or state statutes or common law, including fraudulent conveyance laws.

MIAMI 2904888.4 7945135741

1.45    ***Existing Organizational Documents*** mean, collectively, each of the Debtors' limited liability company certificates of formation, or other charter documents legally forming and/or organizing the Debtors, and all bylaws and limited liability company operating agreements, as amended and/or restated up to, and in existence as of, the time immediately prior to the Effective Date.  Except to the extent amended or restated by the Amended Organizational Documents, such Existing Organizational Documents will remain in full force and effect.

1.46    ***Face Amount*** means either (i) the full stated amount claimed by the Holder of a Claim in any proof of Claim that has been timely filed, if the proof of Claim specifies only a liquidated amount, or (ii) if no proof of Claim has been filed, the proof of Claim has not been timely filed, or if the proof of Claim specifies an unliquidated amount, the amount of the Claim (a) acknowledged by the Debtors or the Reorganized Debtors in an objection to such Claim or in the Schedules as undisputed, non-contingent and liquidated, (b) estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, or (c) proposed by the Debtors or the Reorganized Debtors following the Effective Date.

1.47    ***Final Order*** means an order or judgment of a court of competent jurisdiction, which has been entered on the docket maintained by the clerk of such court, and which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or an analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.48    ***General Unsecured Claim*** means any Claim that arose or accrued prior to the Petition Date that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, DIP Financing Claim, AMT CADC Loan Claim, Secured Claim, or Old Equity Interest, but including, without limitation, Claims arising from the rejection of an unexpired lease or executory contract pursuant to this Plan or Final Order of the Bankruptcy Court.

MIAMI 2904888.4 7945135741

1.49    ***General Unsecured Claim Objection*** means an objection to a General Unsecured Claim.

1.50    ***Holder*** means a Person that holds a beneficial interest in a Claim or Interest against the Debtors.

1.51    ***Indemnified Person*** means any director, officer, member, manager, agent, Representative or employee of the Debtors or any of their Affiliates before, on or after the Petition Date, and any director, officer, member, manager, agent, Representative or employee of the Reorganized Debtors or any of their Affiliates after the Effective Date.

1.52    ***Initial Equity Contribution*** means that portion of the Equity Contribution to be funded on the Effective Date, solely as new equity (and not subordinated debt), which amount shall be no less than $5,000,000.

1.53    ***Insider Indemnities*** means any obligation of the Debtors pursuant to the Debtors' or the Reorganized Debtors', or any of their Affiliates' pre-Effective Date or post-Effective Date formation documents (including, without limitation any Amended Organizational Documents), bylaws, organizational documents, operating agreements, agreements, contracts, statute or common law to indemnify any former, present, and future directors, officers, managers, members, agents, employees, and/or Representatives of (i) the Debtors, (ii) any Affiliates of the Debtors, or (iii) any Person serving in such capacity at the Debtors' request.

1.54    ***Interest*** or ***Equity Interest*** means the ownership interests in each of the Debtors.

1.55    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.56    ***Local Rules*** means the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, as amended from time to time, as applicable to the Cases.

1.57    ***New Development*** means the real estate project to be developed on the Property by the Reorganized Debtors and the Plan Sponsor, which development will consist of residential, commercial, office, retail, and industrial units.

1.58    ***New Membership Units*** means the new Equity Interests in each of the Reorganized Debtors, as of the Effective Date.

1.59    ***North Parcel*** means the portion of the Property titled in the name of Landmark Club at Doral, LLC, Town Center at Doral, LLC, and Landmark at Doral East, LLC.

MIAMI 2904888.4 7945135741

1.60    **Old Equity Interest** means the Equity Interests in each of the Debtors, as of the Petition Date, represented by any instrument evidencing an ownership interest in the Debtors, whether or not transferable, including (a) any option, warrant, call, subscription, or other right, contractual or otherwise, to acquire any such interest and any redemption, conversion, exchange, put, voting participation, dividend right, liquidation preference, or any other designation, right, or preference whatsoever, relating to any such Equity Interest, and (b) all rights, interests, and Claims against the Debtors or their respective Affiliates or Representatives (including claims for fraud, misrepresentation, rescission, reimbursement, contribution, or damages) arising under, or in connection with, or in any way related to (i) all agreements entered into by the Debtors or their respective Affiliates or Representatives in connection with the issuance of such Equity Interest or any related transaction or (ii) the purchase or sale of such Equity Interest or any related transaction.

1.61    **Other Secured Claim** means a Secured Claim that is not a Secured Claim of the Miami-Dade County Tax Collector, a Secured Tax Certificate Claim, an AMT CADC Loan Claim or a Secured District Claim.

1.62    **Person** means an individual or partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof, or any other form of legal entity.

1.63    **Petition Date** means September 19, 2011, the date on which the Debtors commenced the Cases.

1.64    **Plan** means this Plan of Reorganization, including, without limitation, the Plan Supplement and the exhibits and schedules thereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.65    **Plan Sponsor** means Terra Landmark, LLC.

1.66    **Plan Supplement** means the supplement to this Plan containing certain documents relevant to the implementation of the Plan, including, but not limited to, the Amended Organizational Documents and the list of executory contracts and unexpired leases to be rejected pursuant hereto. The Plan Supplement and the documents contained therein shall be filed with the Bankruptcy Court no later than ten (10) Business Days before the deadline for voting to accept or reject this Plan, provided that the documents included therein may thereafter be amended and supplemented prior to the Confirmation Hearing.

MIAMI 2904888.4 7945135741

1.67    *Priority Non-Tax Claim* means an unsecured Claim entitled to priority in payment as specified in sections 507(a)(3)-(7) of the Bankruptcy Code.

1.68    *Priority Tax Claim* means an unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.69    *Property* means the Debtors' real estate, which consists of approximately 120 contiguous acres located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida.

1.70    *Ratable Portion* means, with reference to any Distribution on account of an Allowed Claim in any class or classes, as applicable, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims (plus Disputed Claims until Disallowed) in the same class or classes, as applicable.

1.71    *Release Price Schedule* means the schedule of principal payments to be received by the District upon the purchase of a unit in the New Development by an End Purchaser, which schedule is attached hereto as Exhibit "A".

1.72    *Releasee* means each of (a) the directors, managers, members, or other officers of the Debtors holding office as of the Effective Date or at any time subsequent to the Effective Date, (b) the Plan Sponsor, as the provider of the Equity Contribution, and (c) each of their respective Representatives and Affiliates, both individually and in their representative capacities.

1.73    *Reorganized Debtors* means the Debtors, from and after the Effective Date.

1.74    *Representatives* means, with respect to any particular Person, such Person's  present, former or future officers, directors, employees, consultants, members, managers, general or limited partners, principals, agents, advisors (including any attorneys, financial advisors, investment bankers, and other professionals retained by such Person), Affiliates, and any funds under management.

1.75    *Schedules* means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms promulgated by the Bankruptcy Court, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date pursuant to Bankruptcy Rule 1007.

10

1.76    ***Secured Claim*** means (i) a Claim secured by a Lien on the Debtors' property that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, but solely to the extent such Claim is deemed secured by section 506(a) and (b) of the Bankruptcy Code, or (ii) a Claim that is subject to setoff under section 553 of the Bankruptcy Code.

1.77    ***South Parcel*** means the portion of the Property titled in the name of Landmark at Doral South, LLC.

1.78    ***Tax Certificate*** means a valid tax certificate issued by the Miami-Dade County Tax Collector on the Property that remains unpaid as of the Effective Date.

1.79    ***Tax Certificate Claim*** means a Secured Claim arising out of the issuance of a tax certificate by the Miami-Dade County Tax Collector.

1.80    ***Tax Code*** means the Internal Revenue Code of 1986, as amended.

1.81    ***U.S. Trustee*** means the United States Trustee appointed under section 581, title 28 of the United States Code to serve in the Southern District of Florida.

11

**B.**     **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## ARTICLE II

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS AND DIP FINANCING CLAIM

2.1     *Administrative Expenses*.

(a)     Except to the extent that a Holder of an Allowed Administrative Expense agrees to a less favorable treatment, as soon as reasonably practicable on or after the Effective Date, the Reorganized Debtors shall pay Cash in an amount equal to such Allowed Administrative Expense to each Holder of an Allowed Administrative Expense; *provided*, *however*, that Allowed Administrative Expenses representing liabilities incurred in the ordinary course of business by the Debtors shall be assumed and paid by the Reorganized Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

(b)     All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2)-(5) of the Bankruptcy Code shall (i) file, on or before the deadline specified in Local Rule 2016-1(c)(1), their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (A) upon the later of (1) the Effective Date and (2) the date on which the order that deemed such Administrative Expense Allowed becomes a Final Order or (B) upon such other terms as may be mutually agreed upon by such Holder and the Reorganized Debtors.   The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

MIAMI 2904888.4 7945135741

2.2    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, commencing as soon as reasonably practicable on or after the Effective Date, and continuing over a period not exceeding five (5) years from the Effective Date, Cash in an aggregate amount equal to such Allowed Priority Tax Claim, together with simple interest at the Applicable Rate, subject to the sole option of the Debtors or Reorganized Debtors to prepay the entire amount of the Allowed Priority Tax Claim at any time without penalty.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business by the Reorganized Debtors as such obligations become due.

2.3    *DIP Financing Claim.*

On the Effective Date, in full and final satisfaction of the DIP Financing Claim, and subject to the Plan Sponsor's simultaneous payment of the Initial Equity Contribution to the Reorganized Debtors, the Holder of the DIP Financing Claim shall receive, as soon as reasonably practicable on or after the Effective Date, 100% of the New Membership Units in the Reorganized Debtors.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS, IMPAIRMENT, AND VOTING

The categories of Claims and Interests, other than Administrative Expenses, Priority Tax Claims and the DIP Financing Claim, are classified for all purposes, including voting, confirmation, and Distribution pursuant to this Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Classes 2A-2D | Secured Claims of Miami-Dade County Tax Collector | Unimpaired | No |
| Classes 3A-3H | Secured Tax Certificate Claims | Impaired (all) | Yes |
| Classes 4A-4D | Secured District Claims | Impaired (all) | Yes |
| Class 5 | AMT CADC Loan Claim | Impaired | Yes |
| Class 6 | Other Secured Claims | Impaired | Yes |

13

| Class 7 | General Unsecured Claims | Impaired | Yes |
| Class 8 | Old Equity Interests | Impaired | No (Deemed to Reject) |

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

Claims and Interests shall receive the treatment set forth below.

4.1    *Priority Non-Tax Claims (Class 1)*.

With respect to Allowed Priority Non-Tax Claims not paid pursuant to prior Bankruptcy Court order, as soon as reasonably practicable on or after the Effective Date or the date that is ten (10) days after the date such claim is Allowed, and except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full in Cash in accordance with the priorities set forth in section 507 of the Bankruptcy Code.  All Allowed Priority Non-Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business by the Reorganized Debtors.

4.2    *Secured Claims of Miami-Dade County Tax Collector (Class 2)*.

*Class 2A – Ad Valorem Taxes of Town Center at Doral LLC (Folio 35-3017-001-0240)*

As soon as reasonably practicable on or after the Effective Date, the Miami-Dade County Tax Collector shall receive payment in full in Cash in the amount of any 2011 ad valorem taxes owed to Miami-Dade County on the Effective Date in respect of folio no. 35-3017-001-0240, which shall include statutory interest in the event that such taxes are delinquent at the time of payment.

*Class 2B – Ad Valorem Taxes of Landmark Club at Doral LLC (Folio 35-3017-001-0250)*

As soon as reasonably practicable on or after the Effective Date, the Miami-Dade County Tax Collector shall receive payment in full in Cash in the amount of any 2011 ad valorem taxes owed to Miami-Dade County on the Effective Date in respect of folio no. 35-3017-001-0250, which shall include statutory interest in the event that such taxes are delinquent at the time of payment.

*Class 2C – Ad Valorem Taxes of Landmark at Doral South LLC (Folio 35-3017-001-0362)*

As soon as reasonably practicable on or after the Effective Date, the Miami-Dade County Tax Collector shall receive payment in full in Cash in the amount

14

of any 2011 ad valorem taxes owed to Miami-Dade County on the Effective Date in respect of folio no. 35-3017-001-0362, which shall include statutory interest in the event that such taxes are delinquent at the time of payment.

### Class 2D – Ad Valorem Taxes of Landmark at Doral East LLC (Folio 35-3017-001-0241)

As soon as reasonably practicable on or after the Effective Date, the Miami-Dade County Tax Collector shall receive payment in full in Cash in the amount of any 2011 ad valorem taxes owed to Miami-Dade County on the Effective Date in respect of folio no. 35-3017-001-0241, which shall include statutory interest in the event that such taxes are delinquent at the time of payment.

As soon as reasonably practicable on or after the Effective Date, the Miami-Dade County Tax Collector shall receive payment in full in Cash in the amount of any 2011 ad valorem taxes owed to Tax Collector.  Tax Collector's first priority tax liens shall be retained on each property until said liens are paid in full.  Should payment in full of the 2011 ad valorem taxes not be made within the time specified above, Tax Collector shall be authorized to collect said taxes pursuant to Florida law, including the sale of tax certificates at the next available sale.

The amount of 2011 taxes owed, as reflected in the records of the Miami-Dade County Tax Collector, shall only be considered final so long as no Miami-Dade County Value Adjustment Board petitions or any action in Florida's circuit court regarding the 2011 assessments of the Miami-Dade County Property Appraiser with respect to the taxed real property are pending in accordance with Florida law.  In the event that such proceedings are pending, the amount of 2011 taxes owed shall not be deemed final until all administrative or judicial proceedings are concluded.  Any payments toward the 2011 taxes made by Debtors, such as statutorily-required good faith payments made in conjunction with administrative or judicial proceedings, shall be applied toward satisfaction of the Class 2 claims.

Post-petition taxes for the years 2012 forward shall be paid as ordinary course payments pursuant to Florida law, and in a manner consistent with the provisions above with respect to determination of the final tax amounts owed and the issuance of any refunds.

4.3    *Secured Tax Certificate Claims (Classes 3A-3H).*

### Class 3A – Sunshine State Certificate III

Class 3A consists of the Allowed Secured Claim relating to tax certificate number 10-26080, which is secured by a lien on the real estate parcel identified as folio number 35-3017-001-0240 held by Town Center at Doral, LLC.  In satisfaction of the Allowed Class 3A Secured Tax Certificate Claim, (i) the Holder of the Class 3A Secured Tax Certificate Claim shall retain a lien on the real estate parcel described above until such time as the Allowed Class 3A Secured Tax Certificate Claim is satisfied in full pursuant to the terms hereof and (ii) as soon as reasonably

15

practicable on or after the Effective Date, and on each of the succeeding four (4) anniversaries thereof, the Holder of the Secured Tax Certificate Claim in Class 3A shall receive an amount in Cash equal to 20% of the Allowed Secured Class 3A Claim, plus any accrued interest on such Claim at the certificate interest rate of 6.00% per annum.

### Class 3B – BTI Bluegate FTCF, LLC

Class 3B consists of the Allowed Secured Claim relating to tax certificate number 09-29902, which is secured by a lien on the parcel identified as folio number 35-3017-001-0240 held by Town Center at Doral, LLC.  In satisfaction of the Allowed Class 3B Secured Tax Certificate Claim, (i) the Holder of the Secured Tax Certificate Claim in Class 3B shall retain a lien on the real estate parcel described above until such time as the Allowed Class 3B Secured Tax Certificate Claim is satisfied in full pursuant to the terms hereof and (ii) as soon as reasonably practicable on or after the Effective Date, and on each of the succeeding four (4) anniversaries thereof, the Holder of the Secured Tax Certificate Claim in Class 3B shall receive an amount in Cash equal to 20% of the Allowed Secured Class 3B Claim, plus any accrued interest on such Claim at the certificate interest rate of 9.50% per annum.

### Class 3C - Finance Southern Co.

Class 3C consists of the Allowed Secured Claim relating to tax certificate number 10-26081, which is secured by a lien on the parcel identified as folio number 35-3017-001-0241 held by Landmark at Doral East, LLC.  In satisfaction of the Allowed Class 3C Secured Tax Certificate Claim, (i) the Holder of the Secured Tax Certificate Claim in Class 3C shall retain a lien on the real estate parcel described above until such time as the Allowed Class 3C Secured Tax Certificate Claim is satisfied in full pursuant to the terms hereof and (ii) as soon as reasonably practicable on or after the Effective Date, and on each of the succeeding four (4) anniversaries thereof, the Holder of the Secured Tax Certificate Claim in Class 3C shall receive an amount in Cash equal to 20% of the Allowed Secured Class 3C Claim, plus any accrued interest on such Claim at the certificate interest rate of 6.25% per annum.

### Class 3D – BTI Bluegate FTCF, LLC

Class 3D consists of the Allowed Secured Claim relating to tax certificate number 09-29903, which is secured by a lien on the parcel identified as folio number 35-3017-001-0241 held by Landmark at Doral East, LLC.  In satisfaction of the Allowed Class 3D Secured Tax Certificate Claim, (i) the Holder of the Secured Tax Certificate Claim in Class 3D shall retain a lien on the real estate parcel described above until such time as the Allowed Class 3D Secured Tax Certificate Claim is satisfied in full pursuant to the terms hereof and (ii) as soon as reasonably practicable on or after the Effective Date, and on each of the succeeding four (4) anniversaries thereof, the Holder of the Secured Tax Certificate Claim in Class 3D shall receive an amount in Cash equal to 20% of the Allowed Secured Class 3D Claim, plus any accrued interest on such Claim at the certificate interest rate of 8.50% per annum.

MIAMI 2904888.4 7945135741

### Class 3E – Hilda Pico / Ocean Bank

Class 3E consists of the Allowed Secured Claim relating to tax certificate number 10-26084, which is secured by a lien on the parcel identified as folio number 35-3017-001-0362 held by Landmark at Doral South, LLC.  In satisfaction of the Allowed Class 3E Secured Tax Certificate Claim, (i) the Holder of the Secured Tax Certificate Claim in Class 3E shall retain a lien on the real estate parcel described above until such time as the Allowed Class 3E Secured Tax Certificate Claim is satisfied in full pursuant to the terms hereof and (ii) as soon as reasonably practicable on or after the Effective Date, and on each of the succeeding four (4) anniversaries thereof, the Holder of the Secured Tax Certificate Claim in Class 3E shall receive an amount in Cash equal to 20% of the Allowed Secured Class 3E Claim, plus any accrued interest on such Claim at the certificate interest rate of 6.25% per annum.

### Class 3F – Finance Southern Co.

Class 3F consists of the Allowed Secured Claim relating to tax certificate number 09-29907, which is secured by a lien on the parcel identified as folio number 35-3017-001-0362 held by Landmark at Doral South, LLC.  In satisfaction of the Allowed Class 3F Secured Tax Certificate Claim, (i) the Holder of the Secured Tax Certificate Claim in Class 3F shall retain a lien on the real estate parcel described above until such time as the Allowed Class 3F Secured Tax Certificate Claim is satisfied in full pursuant to the terms hereof and (ii) as soon as reasonably practicable on or after the Effective Date, and on each of the succeeding four (4) anniversaries thereof, the Holder of the Secured Tax Certificate Claim in Class 3F shall receive an amount in Cash equal to 20% of the Allowed Secured Class 3F Claim, plus any accrued interest on such Claim at the certificate interest rate of 6.25%, to be applied toward satisfaction of the Class 3F Allowed Secured Tax Certificate Claim per annum.

### Class 3G – Hilda Pico / Ocean Bank

Class 3G consists of the Allowed Secured Claim relating to tax certificate number 09-26082, which is secured by a lien on the parcel identified as folio number 35-3017-001-0250 held by Landmark Club at Doral LLC.  In satisfaction of the Allowed Class 3G Secured Tax Certificate Claim, (i) the Holder of the Secured Tax Certificate Claim in Class 3G shall retain a lien on the real estate parcel described above until such time as the Allowed Class 3G Secured Tax Certificate Claim is satisfied in full pursuant to the terms hereof and (ii) as soon as reasonably practicable on or after the Effective Date, and on each of the succeeding four (4) anniversaries thereof, the Holder of the Secured Tax Certificate Claim in Class 3G shall receive an amount in Cash equal to 20% of the Allowed Secured Class 3G Claim, plus any accrued interest on such Claim at the certificate interest rate of 6.25%, to be applied toward satisfaction of the Class 3G Allowed Secured Tax Claim per annum.

### Class 3H – BTI Bluegate FTCF, LLC

Class 3H consists of the Allowed Secured Claim relating to tax certificate number 09-29904, which is secured by a lien on the parcel identified as folio number 35-3017-001-0250 held by Landmark Club at Doral, LLC.  In satisfaction of the Allowed Class 3H Secured Tax Certificate Claim, (i) the Holder of the Secured Tax Certificate Claim in Class 3H shall retain a lien on the real estate parcel described above until such time as the Allowed Class 3H Secured Tax Certificate Claim is satisfied in full pursuant to the terms hereof and (ii) as soon as reasonably practicable on or after the Effective Date, and on each of the succeeding four (4) anniversaries thereof, the Holder of the Secured Tax Certificate Claim in Class 3H shall receive an amount in Cash equal to 20% of the Allowed Secured Class 3H Claim, plus any accrued interest on such Claim at the certificate interest rate of 8.50% per annum.

4.4    *Secured District Claims (Classes 4A-4D).*

*Class 4A – Series A, North Parcel*

As of the Effective Date, in full and final satisfaction of the Class 4A Allowed Secured District Claim, (1) the Holder of the Class 4A Allowed Secured District Claim shall retain a first priority lien on the Property securing such Allowed Claim *pari passu* with any lien relating to the Allowed Secured Claim of Miami Dade County Tax Collector, any liens relating to the Allowed Class 3 Claims, and any liens relating to the Class 4C Claims, and (2) the Assessment Obligations comprising the Class 4A Allowed Secured District Claim shall (i) mature on the Class A Maturity Date, (ii) bear interest at the per annum rate of 5.5% on the outstanding Face Amount until maturity, which interest shall be paid semi-annually on May 1 and November 1 until maturity, (iii) have a Face Amount equal to 9/40 times the difference between the Appraised Value and the aggregate amount of Class 2 Claims and Class 3 Claims, (iv) from May 1, 2015 through the Class A Maturity Date, receive principal amortization in the amounts reflected in Schedule 4.4A attached hereto, from either the Reorganized Debtors with respect to the portion of the Property owned by the Reorganized Debtors or End Purchasers of residential units with respect to the portion of the Property owned by such End Purchasers.  The foregoing treatment shall apply notwithstanding the Holder of the Class 4A Allowed District Claim making an election under section 1111(b) of the Bankruptcy Code.

*Class 4B – Series A, South Parcel*

As of the Effective Date, in full and final satisfaction of the Class 4B Allowed Secured District Claim, (1) the Holder of the Class 4B Allowed Secured District Claim shall retain a first priority lien on the Property securing such Allowed Claim *pari passu* with any lien relating to the Allowed Secured Claim of Miami Dade County Tax Collector, any liens relating to the Allowed Class 3 Claims, and any liens relating to the Class 4D Claims, and (2) the Assessment Obligations comprising the Class 4B Allowed Secured District Claim shall (i) mature on the Class A Maturity Date, (ii) bear interest at the per annum rate of 5.5% on the outstanding Face Amount until maturity, which interest shall be paid semi-annually on May 1 and November 1 until maturity, (iii) have a Face Amount equal to 9/40 times the difference between the

Appraised Value and the aggregate amount of Class 2 Claims and Class 3 Claims, (iv) from May 1, 2015 through the Class A Maturity Date, receive principal amortization in the amounts reflected in Schedule 4.4B attached hereto, from either the Reorganized Debtors with respect to the portion of the Property owned by the Reorganized Debtors or End Purchasers of units with respect to the portion of the Property owned by such End Purchasers.  The foregoing treatment shall apply notwithstanding the Holder of the Class 4A Allowed District Claim making an election under section 1111(b) of the Bankruptcy Code.

### Class 4C – Series B, North Parcel

As of the Effective Date, in full and final satisfaction of the Class 4C Allowed Secured District Claim, (1) the Holder of the Class 4C Allowed Secured District Claim shall retain a first priority lien on the Property securing such Allowed Claim *pari passu* with any lien relating to the Allowed Secured Claim of Miami Dade County Tax Collector, any liens relating to the Allowed Class 3 Claims, and any liens relating to Class 4A Claims, and (2) the Assessment Obligations comprising the Class 4C Allowed Secured District Claim shall (i) mature on the Class B Maturity Date, (ii) bear interest at the per annum rate of 5.2% on the outstanding Face Amount until the Class B Maturity Date, which interest shall be paid semi-annually on May 1 and November 1 until the Class B Maturity Date, (iii) have a Face Amount equal to 16/40 times the difference between the Appraised Value and the aggregate amount of Class 2 Claims and Class 3 Claims, (iv)  from the Effective Date through the Class B Maturity Date, receive principal amortization in connection with closings of the sale of single family homes and townhomes in the New Development according to the Release Price Schedule, from or at the direction of the Reorganized Debtors.

To the extent the Holder of the Class 4C Allowed Secured District Claim does not make an election pursuant to section 1111(b) of the Bankruptcy Code, then the unsecured deficiency portion of the Allowed District Claim shall be payable in and constitute part of Class 7.  In the event the Holder of the Class 4C Allowed Secured District Claim makes an election pursuant to section 1111(b) of the Bankruptcy Code, then, in addition to the foregoing, such Holder shall also receive a true-up payment in connection with each closing of the sale of a single family home or townhome, as appropriate, and, if necessary, a balloon payment at the Class B Maturity Date, that ensures such Holder will receive deferred cash payments totaling at least the Allowed amount of the Class 4C District Claim as of the Petition Date.

### Class 4D – Series B, South Parcel

As of the Effective Date, in full and final satisfaction of the Class 4D Allowed Secured District Claim, (1) the Holder of the Class 4D Allowed Secured District Claim shall retain a first priority lien on the Property securing such Allowed Claim *pari passu* with any lien relating to the Allowed Secured Claim of Miami Dade County Tax Collector, any liens relating to the Allowed Class 3 Claims, and any liens relating to the Class 4B Claims, and (2) the Assessment Obligations comprising the Class 4D Allowed Secured District Claim shall (i) mature on the Class B Maturity Date, (ii) bear interest at the per annum rate of 5.2% on the outstanding Face Amount

19

until maturity, which interest shall be paid semi-annually on May 1 and November 1 until maturity, (iii) have a Face Amount equal to 6/40 times the difference between the Appraised Value and the aggregate amount of Class 2 Claims and Class 3 Claims, (iv) from the Effective Date through the Class B Maturity Date, receive principal amortization in connection with closings of the sale of residential, office and retail units in the New Development according to the Release Price Schedule, from or at the direction of the Reorganized Debtors.

To the extent the Holder of the Class 4C Allowed Secured District Claim does not make an election pursuant to section 1111(b) of the Bankruptcy Code, then the unsecured deficiency portion of the Allowed District Claim shall be payable in and constitute part of Class 7. In the event the Holder of the Class 4C Allowed Secured District Claim makes an election pursuant to section 1111(b) of the Bankruptcy Code, then, in addition to the foregoing, such Holder shall also receive a true-up payment in connection with each closing of the sale of a unit and, if necessary, a balloon payment at the Class B Maturity Date, that ensures such Holder will receive deferred cash payments totaling at least the Allowed amount of the Class 4C District Claim as of the Petition Date.

4.5    *AMT CADC Loan Claim (Class 5).*

As soon as reasonably practicable on or after the Effective Date, except to the extent that the Holder of the AMT CADC Loan Claim agrees to a less favorable treatment, the Holder of the AMT CADC Loan Claim shall receive (a) to the extent that the Holder of the AMT CADC Loan Claim has an Allowed Secured Claim, (i) a subordinated lien on the Property in an amount equal to such Allowed Secured Claim and (ii) beginning on the Effective Date, or as soon as reasonably practicable thereafter, quarterly payments of principal and interest based on an interest rate of 5% per annum and a thirty (30) year amortization period through the tenth $(10^{th})$ anniversary of the Effective Date, on which date all unpaid principal, interest and other charges shall be due and payable in full, and (b) to the extent that the Holder of the AMT CADC Loan Claim has an Allowed General Unsecured Claim, such General Unsecured Claim shall be payable in and constitute part of Class 7.

4.6    *Other Secured Claims (Class 6).*

As soon as reasonably practicable on or after the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, at the sole option of the Reorganized Debtors, (a) payment in full in Cash in the amount of the Allowed Other Secured Claim, (b) reinstatement of the Allowed Other Secured Claim, (c) satisfaction by the surrender of the collateral securing such Allowed Other Secured Claim, or (d) a treatment that otherwise renders the Allowed Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

MIAMI 2904888.4 7945135741

4.7    *General Unsecured Claims (Class 7).*

On the Effective Date, the Reorganized Debtors shall deposit $3,000,000 of the Initial Equity Contribution into the Creditor Trust.  On the second (2nd) anniversary of the Effective Date, the Reorganized Debtors shall deposit an additional $1,000,000 into the Creditor Trust.  In addition, on the Effective Date the Reorganized Debtors shall transfer Avoidance Actions and General Unsecured Claim Objections to the Creditor Trust.  On the Effective Date or as soon thereafter as is reasonably practicable, each Holder of an Allowed General Unsecured Claim shall receive its Ratable Portion of the amounts funded into the Creditor Trust.

Distributions of such Ratable Portion from the Creditor Trust shall be made in accordance with Section 6.2 of this Plan.

4.8    *Old Equity Interests (Class 8).*

On the Effective Date, the Old Equity Interests shall be cancelled and the Holders of Old Equity Interests shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Old Equity Interests. On the Effective Date, all obligations of the Debtors to Holders of Old Equity Interests shall be completely discharged.

4.9    *Nonconsensual Confirmation*.

If any impaired class of Claims entitled to vote shall not accept this Plan by the requisite majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend this Plan, undertake to have the Bankruptcy Court confirm this Plan under section 1129(b) of the Bankruptcy Code, or both.

With respect to the impaired class of Old Equity Interests (Class 8) that is deemed to reject the Plan, the Debtors request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**ARTICLE V**

**MEANS OF IMPLEMENTATION**

5.1    *General Overview of the Plan.*

The Plan provides for the continued operation and development of the Property by and through the Reorganized Debtors.  As of the Effective Date, all of the Debtors' property, including the Property, will vest in the Reorganized Debtors, except as otherwise provided in this Plan.  The Reorganized Debtors will thereafter manage such property, construct the New Development, and implement the terms of the Plan, including making Distributions to Holders of Allowed Claims, except for Distributions to Holders of General Unsecured Claims, which shall be made by the Creditor Trustee.

MIAMI 2904888.4 7945135741

The Plan shall be implemented on the Effective Date. The primary source of funds necessary to implement the Plan will be the Equity Contribution to be funded by the Plan Sponsor. At the present time, the Debtors believe that, inclusive of the Equity Contribution, the Reorganized Debtors will have sufficient funds as of the Effective Date to pay in full the expected payments under the Plan.

5.2    *Revesting of Assets*.

On the Effective Date, the Debtors, their properties and interests in property and their operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the Estates of the Debtors, including any pre-paid expenses and deposits with vendors but excluding the assets to be vested in the Creditor Trust in accordance with section 4.7 of this Plan, shall vest in the Reorganized Debtors. From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of this Plan. As provided in Section 10.7 of this Plan, the Reorganized Debtors shall retain the Estate Causes of Action, other than those released in Section 10.7 of this Plan and those transferred to the Creditor Trust pursuant to Section 4.7 of the Plan.

5.3    *New Membership Units.*

In exchange for the Equity Contribution and in satisfaction of the DIP Financing Claim, on the Effective Date, the Reorganized Debtors are authorized to issue 100% of their New Membership Units to the Plan Sponsor or its designees, without the need for further action by the Debtors, the Reorganized Debtors, the Plan Sponsor or Holders of Claims or Interests. The Debtors shall use the Equity Contribution to fund certain of the Distributions provided for under the Plan and to commence construction of the New Development.

5.4    *Creditor Trust*

On the Effective Date, the Debtors shall establish the Creditor Trust for the benefit of Holders of Allowed General Unsecured Claims, and the Committee shall appoint the Creditor Trustee to administer the assets of the Creditor Trust, including the Cash payments made pursuant to Section 4.7 of the Plan. Counsel to the Committee shall file a copy of the agreement establishing the Creditor Trust and appointing the Creditor Trustee prior to the Confirmation Hearing.

Each Holder of an Allowed General Unsecured Claim shall receive its ratable portion of the amounts funded into the Creditor Trust. On the Effective Date, each Holder of an Allowed General Unsecured Claim shall be deemed to have permanently relinquished its right to receive any payment or Distribution from the Debtors or the Reorganized Debtors in respect of its Claim other than its Distribution(s) from the Creditor Trust. No Distribution will be made to any Holder of a Disputed Claim on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim pursuant to settlement or Final Order, and shall

MIAMI 2904888.4 7945135741

then be paid only to the extent that such Claim is Allowed. The Creditor Trustee shall establish a reserve for Disputed Claims. If and when a Disputed Claim becomes an Allowed Claim pursuant to settlement or Final Order, any Distribution on account of such Claim shall be made by the Creditor Trustee as soon as practicable, in the Creditor Trustee's sole business judgment.

5.5    ***Delivery of Documents.***

On the Effective Date, the Reorganized Debtors are authorized to execute and deliver to the Holders of Allowed Claims any relevant modifications or documents relating to their Claims without the need for further action by the Debtors, the Reorganized Debtors, the Plan Sponsor, or Holders of Claims or Interests.

5.6    ***Cancellation of Existing Securities and Agreements.***

On the Effective Date, all agreements, documents and instruments relating to Claims and Old Equity Interests shall be cancelled; *provided*, *however*, that except to the extent modified hereby and/or the Confirmation Order, the liens securing the Class 2 Secured Claim of the Miami-Dade County Tax Collector, the Class 3 Secured Tax Certificate Claims, the Class 4 Secured District Claims and the AMT CADC Loan Claim shall continue in effect until such Claims are satisfied in full pursuant to the terms hereof.

5.7    ***Legal Form and Governance***.

(a)    Amendment to Existing Organizational Documents. On the Effective Date, or as soon thereafter as practicable, the Debtors shall file the Amended Organizational Documents as required or deemed appropriate, with the appropriate Persons in the applicable jurisdiction of organization, to reflect the issuance of the New Membership Units, among other things, and as otherwise deemed necessary, advisable, or appropriate by the managers of the Reorganized Debtors. Except to the extent amended or restated by the Amended Organizational Documents, the Existing Organizational Documents will remain in full force and effect after the Effective Date.

(b)    Managers of the Reorganized Debtors. On the Effective Date, the operation of the Reorganized Debtors shall become the general responsibility of the new Managers, subject to, and in accordance with, the Amended Organizational Documents. The initial Managers of the Reorganized Debtors shall be Pedro Martin and David Martin.

(c)    Due Authorization. On the Effective Date, the adoption of the Amended Organizational Documents shall be authorized and approved in all respects, to be effective as of the Effective Date, in each case without further action under applicable law, regulation, order, or rule, including without limitation, any action by the managers of the Debtors or the managers or members of the Reorganized Debtors. On the Effective Date, the cancellation and termination of the Old Equity Interests, the authorization and issuance of the New Membership Units, and all other matters provided in this Plan involving the legal structure or governance of the Reorganized

23

Debtors shall be deemed to have occurred, been authorized, and be in effect from and after the Effective Date, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the managers or members of the Debtors or the Reorganized Debtors.

5.8     *Exemption from Securities Laws*.

The issuance of the New Membership Units (to the extent such interests constitute "securities") pursuant to this Plan shall be exempt from any securities law registration requirements pursuant to section 4(2) of the Securities Act of 1933 (or Regulation D promulgated thereunder) and similar provisions of applicable state securities laws.

5.9     *Exemption from Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, transfer, or exchange of notes or equity securities under or in connection with this Plan, including, without limitation, the New Membership Units, (ii) the creation of any mortgage, deed of trust, or other security interest, (iii) the making or assignment of any lease or sublease, (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, (v) any merger agreement, or agreement of consolidation, and (vi) any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated hereunder shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  The Property shall be sold subject to existing real estate taxes. The sale of units by the Reorganized Debtors after the Effective Date in connection with the New Development shall not be exempt transactions pursuant to section 1146(c) of the Bankruptcy Code.

5.10     *Expedited Tax Determination*.

The Debtors and the Reorganized Debtors are authorized to request an expedited determination of taxes under section 505 of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending before or after the Petition Date through, and including, the Effective Date.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1     *Date of Distributions*.

Unless otherwise provided herein, any Distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon as practicable thereafter and deemed made on the Effective Date.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be

MIAMI 2904888.4 7945135741

completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  No distribution shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim pursuant to settlement or Final Order, and shall then be paid only to the extent that such Claim is Allowed.

6.2    ***Distributions Concerning General Unsecured Claims.***

(a)    Maintenance of Creditor Trust.  From and after the Effective Date, all Cash to be distributed on account of any Allowed General Unsecured Claim (i) will be maintained by and in the name of the Creditor Trustee in the Creditor Trust until all litigation relating to General Unsecured Claims has been resolved by settlement or Final Order, (ii) will be held in trust pending Distribution by the Creditor Trustee for the benefit of the Holders of such Claims, and (iii) will be accounted for separately.  The Creditor Trustee will invest any Cash in the Creditor Trust in the manner required by the Creditor Trust Agreement.

(b)    Timing of Distributions.  On or as soon as reasonably practicable after the Effective Date, the Creditor Trustee shall distribute to each Holder of an Allowed General Unsecured Claim its Ratable Portion of the amounts funded into the Creditor Trust as part of the Initial Equity Contribution; provided, however, that no Distribution will be made to any Holder of a Disputed General Unsecured Claim on account of such Disputed General Unsecured Claim unless and until such Disputed General Unsecured Claim becomes an Allowed Claim pursuant to settlement or Final Order, and shall then be paid only to the extent that such Claim is Allowed.

(c)    Disputed Claim Reserve.  The Creditor Trustee shall establish a reserve for Disputed General Unsecured Claims (the "Disputed Claim Reserve").  If and when a Disputed General Unsecured Claim becomes an Allowed Claim pursuant to settlement or Final Order, any Distribution on account of such Claim shall be made by the Creditor Trustee as soon as practicable, in the Creditor Trustee's sole business judgment.

(d)    Recourse.  On the Effective Date, each Holder of an Allowed General Unsecured Claim shall be deemed to have permanently relinquished its right to receive any payment or Distribution from the Debtors or the Reorganized Debtors in respect of its Claim other than its Distribution(s) from the Creditor Trust.  Each Holder of a General Unsecured Claim shall have recourse only to the undistributed Cash held in the Creditor Trust for satisfaction of the Distributions to which Holders of Allowed General Unsecured Claims are entitled under this Plan, and not to the Reorganized Debtors, their property, or any assets previously distributed on account of any other Allowed Claim. Each Holder of an Allowed General Unsecured Claim shall receive only one Distribution on account of such Allowed General Unsecured Claim regardless of whether the Holder has asserted that particular Claim against more than one Debtor.

25

6.3    *Disbursing Agent*.

All Distributions under this Plan (other than those Distributions funded by End Purchasers of units or Distributions distributed by the Creditor Trustee) shall be funded by the Reorganized Debtors and disbursed by or at the direction of the Reorganized Debtors as Disbursing Agent or such other entity designated by the Reorganized Debtors as a Disbursing Agent on or after the Effective Date and prior to the closing of these Cases. The Disbursing Agent shall not be required to give any bond, surety or other security for the performance of its duties.

6.4    *Rights and Powers of Disbursing Agent.*

(a)    Powers of the Disbursing Agent.  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make or direct all Distributions contemplated hereby, (iii) employ professionals to represent him, her, or it with respect to its responsibilities, if necessary, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    Expenses Incurred on or after the Effective Date.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date, including, without limitation, attorneys fees and expenses shall be paid in Cash by the Reorganized Debtors.

6.5    *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all Distributions to a Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, as applicable, unless the Debtors or the Reorganized Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim or Interest by such Holder that contains an address for such Holder different from the address reflected for such Holder on the Schedules.  In the event that a Distribution to a Holder is returned as undeliverable, the Disbursing Agent or Creditor Trustee, as applicable, shall use commercially reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Disbursing Agent or Creditor Trustee, as applicable, has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of one year from the Effective Date, 6 months after such Claim is Allowed, or 90 days after such Distribution is made.  After such date, all unclaimed property or interest in property other than interests in Distributions to General Unsecured Creditors shall revert to the Reorganized Debtors, and the Claim of any

26

other Holder to such property or interest in property shall be discharged and forever barred.

6.6    ***Manner of Payment.***

At the option of the Disbursing Agent or Creditor Trustee, as applicable, any Cash payment to be made hereunder or pursuant to the Creditor Trust Agreement may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

All Distributions of Cash under this Plan to the Holders of Claims against the Debtors, except General Unsecured Claims, shall be made by, or on behalf of, the Reorganized Debtors.  Distributions of Cash to the Holders of General Unsecured Claims shall be made by the Creditor Trustee.

6.7    ***Setoffs and Recoupment.***

The Debtors may, but shall not be required to, set off against, or recoup from any Claim and the Distributions to be made hereunder, claims of any nature whatsoever that the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any claim the Debtors may have against the Holder of such Claim.

6.8    ***Allocation of Plan Distributions between Principal and Interest.***

Except as otherwise provided herein, to the extent that any Allowed Claim entitled to a Distribution under this Plan consists of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

6.9    ***De Minimis Distributions Less Than $25.00.***

No Distribution of less than Twenty-Five Dollars ($25.00) shall be made to any Holder of an Allowed Claim.  Such undistributed amount will be retained by the Reorganized Debtors.

6.10    ***Withholding and Reporting Requirements.***

In connection with the Plan and all Distributions hereunder, the Disbursing Agent or Creditor Trustee, as applicable, shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Disbursing Agent or Creditor Trustee, as applicable, shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting

MIAMI 2904888.4 7945135741

requirements.  Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Disbursing Agent or Creditor Trustee, as applicable, for the payment and satisfaction of such withholding tax obligations.  Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to Section 6.5(a) of this Plan.

## ARTICLE VII

### PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN OF REORGANIZATION

7.1    *Objections.*

Except as otherwise provided herein, as of the Effective Date, objections to, and requests for estimation of, Claims may be interposed and prosecuted only by the Reorganized Debtors or the Creditor Trustee, as applicable.  Such objections and requests for estimation shall be served on the Holder of the respective Claim and filed with the Bankruptcy Court on or before the latest of (a) the deadline established under Local Rule 3007-1(B)(1), (b) sixty (60) days after a proof of Claim has been filed with the Bankruptcy Court, (c) sixty (60) days after an application for allowance of an Administrative Expense has been filed with the Bankruptcy Court in the Cases, or (d) with respect to certain Claims identified prior to the Confirmation Date by the Debtors, such other date as may be fixed by the Bankruptcy Court.

The Creditor Trustee shall have the power and authority to pursue General Unsecured Claim Objections and Avoidance Actions, with the proceeds thereof to be placed in the Creditor Trust.  Distributions to Holders of Allowed General Unsecured Claims resulting from General Unsecured Claim Objections or derived from Avoidance Actions shall be made by the Creditor Trustee as soon as practicable, in the Creditor Trustee's business judgment.

7.2    *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

7.3    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that

28

MIAMI 2904888.4 7945135741

the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent or Creditor Trustee, as applicable, shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1    *Treatment.*

Except as otherwise provided herein, including in Section 10.4 (Indemnification Obligations), in the Confirmation Order or other order of the Bankruptcy Court, or in any contract, instrument, release, indenture, or other agreement, or document entered into in connection with this Plan, as of the Effective Date, each of the Debtors shall be deemed to have rejected each pre-petition executory contract and unexpired lease to which that Debtor is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtors, (b) previously expired or terminated pursuant to its own terms, or (c) is the subject of a motion to assume filed on or before the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease rejections described above, as of the Effective Date.

8.2    *Rejection Damage Claims*.

Proofs of Claim arising out of the rejection of executory contracts and unexpired leases pursuant to this Plan shall be filed with the Bankruptcy Court with proper supporting documentation detailing the calculation of such claim, and served upon the Debtors and their counsel not later than thirty (30) days after the date on which notice of the occurrence of the Effective Date has been served.  Any Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates, the Reorganized Debtors, and their respective properties and interests.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMATION DATE

9.1    *Conditions Precedent to Confirmation*.

The Plan shall not be confirmed unless and until the following conditions have been satisfied or waived in accordance with Article IX of this Plan: (a) the Confirmation Order, in form and substance satisfactory to the Debtors has been entered on the docket maintained by the Clerk of the Bankruptcy Court; and (b) the Plan, all exhibits thereto, and the Confirmation Order are acceptable in form and substance to the Debtors and the Plan Sponsor.

9.2    *Conditions Precedent to Effectiveness*.

MIAMI 2904888.4 7945135741

The Effective Date shall not occur and this Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Article IX of this Plan:

(a)    The Confirmation Order shall have become a Final Order;

(b)    All amounts to be paid by the Plan Sponsor as the Initial Equity Contribution are indefeasibly paid in full, in Cash;

(c)    All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan, including those actions identified in Article V of this Plan, are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors and the Plan Sponsor; and

(d)    All authorizations, consents, and regulatory approvals, if any, required by the Debtors in connection with the consummation of this Plan are obtained and not revoked.

9.3    *Waiver of Conditions*.

Each of the conditions precedent in Section 9.2 hereof may be waived, in whole or in part by the Debtors.   Any such waivers may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action.

9.4    *Satisfaction of Conditions*.

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Debtors determine that one of the conditions precedent set forth in Section 9.2 hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court and the Confirmation Order may be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this Section, this Plan shall be null and void in all respects, and nothing contained in this Plan shall constitute a waiver or release of any Claims against the Debtors or the allowance of any Claim as an Allowed Claim.

## ARTICLE X

## EFFECT OF CONFIRMATION

10.1    *Binding Effect*.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and

MIAMI 2904888.4 7945135741

assigns, whether or not the Claim or Interest of such Holder is impaired under this Plan, whether or not such Holder has accepted this Plan, and whether or not such Holder is entitled to a Distribution under this Plan.

10.2  *Discharge of Debtor*.

Except to the extent otherwise provided for herein or in the Confirmation Order, the rights afforded in this Plan and the treatment of all Claims against or Interests in the Debtors hereunder shall be in exchange for and in complete satisfaction, discharge, and release of all debts of, Claims against, and Interests in, the Debtors of any nature whatsoever, known or unknown, including, without limitation, any interest accrued or expenses incurred thereon from and after the Petition Date, or against their Estates, the Reorganized Debtors, or their properties or interests in property.  Except as otherwise provided herein or in the Confirmation Order, upon the Effective Date, all Claims against and Interests in the Debtors shall be satisfied, discharged and released in full exchange for the consideration, if any, provided hereunder.  Except as otherwise provided herein or in the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors or their properties or interests in property including the Property, any other Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

10.3  *Term of Injunctions or Stays*.

(a)    Except as otherwise expressly provided herein or in the Confirmation Order, all Persons who have held, hold, or may hold Claims or Interests will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on such Claim or Interest against the Debtors, the Reorganized Debtors, any of their Affiliates or Representatives, the Plan Sponsor, or any Affiliates or Representatives of the Plan Sponsor, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, any of their Affiliates or Representatives, the Plan Sponsor, or any Affiliates or Representatives of the Plan Sponsor, with respect to such Claim or Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, any of their Affiliates or Representatives, the Plan Sponsor, or any Affiliates or Representatives of the Plan Sponsor, or against the property or interests in property of the Debtors or Reorganized Debtors, including the Property, or the property or interests in property of their respective Affiliates or Representatives, with respect to such Claim or Interest, and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtors or Reorganized Debtors, or their respective Affiliates or Representatives, or the Plan Sponsor or its Affiliates or Representatives, or against the property or interests in property of the Debtors or Reorganized Debtors, or their respective Affiliates or Representatives, or the Plan Sponsor or its Affiliates or Representatives, with respect to such Claim or Interest.

31

MIAMI 2904888.4 7945135741

(b)     Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Cases under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until and after the Effective Date.

10.4     *Indemnification Obligations*

The Debtors' obligations under the Insider Indemnities to indemnify any Indemnified Person with respect to Claims arising prior to the Effective Date under state law will be deemed and treated as executory contracts that are assumed by the Reorganized Debtors pursuant to this Plan and sections 365 and 1123(b) of the Bankruptcy Code as of the Effective Date and the occurrence of the Effective Date shall be the only condition necessary to such assumption and all requirements for cure and/or adequate assurance of future performance under section 365 for such assumption shall be deemed satisfied (the "Assumed Insider Indemnities").

10.5     *Exculpation*.

As of the Confirmation Date, the Debtors and their Affiliates and Representatives, and the Plan Sponsor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  The Debtors, the Reorganized Debtors, the Plan Sponsor, the Creditors Committee, the Disbursing Agent or Creditor Trustee, as applicable, and each of their respective Affiliates and Representatives shall have no liability to any Holder of any Claim or Interest or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Cases, the Disclosure Statement, this Plan, the solicitation of votes for and the pursuit of confirmation of this Plan, the offer and issuance of any securities under this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for willful misconduct, gross negligence, or ordinary malpractice with respect to any professionals retained, in each case determined by a Final Order, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

10.6     *Releases*.

**FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING, BUT NOT LIMITED TO, THE DISTRIBUTIONS TO BE MADE UNDER THE PLAN, AND THE EQUITY CONTRIBUTION, EFFECTIVE AS OF THE EFFECTIVE DATE, EACH RELEASEE IS HEREBY RELEASED BY ALL OF THE CREDITORS OF THE DEBTORS, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD ANY CLAIM OR EQUITY INTEREST, ALL OTHER PERSONS, THE DEBTORS, THE ESTATES, AND THE REORGANIZED DEBTORS FROM ANY AND ALL CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, DIRECTLY OR**

MIAMI 2904888.4 7945135741

**INDIRECTLY ARISING FROM OR RELATED TO THE DEBTORS, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, OR OTHERWISE, THAT ANY OF THE CREDITORS OF THE DEBTORS, ANY PERSONS WHO HAVE HELD, HOLD OR MAY HOLD ANY CLAIM OR EQUITY INTEREST, ANY OTHER PERSONS, THE DEBTORS, THE ESTATES OR THE REORGANIZED DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY CREDITORS OF THE DEBTORS, ANY PERSONS WHO HAVE HELD, HOLD OR MAY HOLD ANY CLAIM OR EQUITY INTEREST, OR ANY OTHER PERSON WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF THE DEBTORS OR THE ESTATES OR THE REORGANIZED DEBTORS, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING WITHOUT LIMITATION, CLAIMS, ACTIONS, AND CAUSES OF ACTION ARISING FROM ACTIONS TAKEN OR NOT TAKEN IN GOOD FAITH IN CONNECTION WITH THE CASES, THE PLAN, ALL AGREEMENTS, DOCUMENTS AND INSTRUMENTS RELATING TO THE OLD EQUITY INTERESTS, AND THE RESTRUCTURING OF THE DEBTORS AND OTHER TRANSACTIONS CONTEMPLATED BY THIS PLAN; PROVIDED, HOWEVER, THAT NOTHING HEREIN SHALL BE DEEMED TO RELEASE ANY RIGHTS, CLAIMS, OR INTERESTS THAT ANY SUCH PARTY MAY BE RECEIVING OR RETAINING PURSUANT TO THE PLAN ON OR AFTER THE EFFECTIVE DATE.  ALL PERSONS SHALL BE PRECLUDED AND PERMANENTLY ENJOINED FROM ASSERTING AGAINST THE RELEASEES, AND THEIR RESPECTIVE ASSETS AND PROPERTIES, ANY AND ALL CLAIMS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER WHICH ARE RELEASED UNDER THIS SECTION 10.6.  ANY PERSON INJURED BY ANY WILLFUL VIOLATION OF SUCH INJUNCTION SHALL RECOVER ACTUAL DAMAGES, INCLUDING COSTS AND ATTORNEYS' FEES, AND, IN APPROPRIATE CIRCUMSTANCES, MAY RECOVER PUNITIVE DAMAGES, FROM THE WILLFUL VIOLATOR.**

10.7    *Causes of Action.*

Effective as of the Effective Date, the Estate Causes of Action, including all preference or other avoidance action claims and actions of the Debtors arising under chapter 5 of the Bankruptcy Code shall be retained by the Reorganized Debtors; *provided*, *however*, that any such Estate Causes of Action against current officers or directors of the Debtors, or any of their respective Representatives or Affiliates, are released and extinguished.

MIAMI 2904888.4 7945135741

**ARTICLE XI**

**RETENTION OF JURISDICTION**

The Bankruptcy Court shall have exclusive jurisdiction over all matters, except as expressly noted herein, arising out of, or related to, the Cases and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims including any Administrative Expenses resulting therefrom;

(b)    To determine any and all adversary proceedings, applications, and contested matters that are pending on the Effective Date;

(c)    To ensure that Distributions to Holders of Allowed Administrative Expenses and Allowed Claims are accomplished as provided herein;

(d)    To hear and determine any timely objections to, or requests for estimation of, Administrative Expenses or proofs of Claims, including, without limitation, any objections to the classification of any Administrative Expense, or Claim, and to allow or disallow any Disputed Administrative Expense or Disputed Claim, in whole or in part;

(e)    To resolve disputes as to the ownership of any Administrative Expense, Claim, or Equity Interest;

(f)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(g)    To issue such orders in aid of execution of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)    To consider any amendments to or modifications of this Plan, or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)    To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)    To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument,

34

or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

(k)      To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date, or request by the Reorganized Debtors after the Effective Date, for an expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(l)      To hear any other matter not inconsistent with the Bankruptcy Code;

(m)      To hear and determine all disputes involving the existence, scope, and nature of the discharges, releases, exculpations and injunctions granted under this Plan, the Confirmation Order, or the Bankruptcy Code;

(n)      To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any Person with the consummation or implementation of this Plan;

(o)      To enter a final decree closing the Cases; and

(p)      To hear any claim, matter or chose in action, whether or not it has been commenced prior to the Effective Date, that the Debtors or Reorganized Debtors may prosecute, including any Estate Causes of Action which have not been liquidated prior to the Effective Date, including, without limitation, any matter for which the United States District Court for the Southern District of Florida may also have concurrent jurisdiction, in which case the claim, matter, or chose in action may also be heard by such District Court.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1   *Payment of Statutory Fees*.

Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6), within ten (10) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the Monthly Operating Reports for the relevant periods, indicating the cash disbursements for the relevant period.  The Debtor, as Reorganized Debtor, shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Reorganized Debtor, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment

MIAMI 2904888.4 7945135741

of each post-confirmation payment, and concurrently file with the Court, Post-Confirmation Quarterly Operating Reports indicating all the cash disbursements for the relevant period.

### 12.2    *Modification of Plan*.

The Plan may be modified by the Debtors, in accordance with section 1127 of the Bankruptcy Code.

### 12.3    *Revocation of Plan*.

The Debtors reserves the right at any time prior to the entry of the Confirmation Order to revoke and withdraw this Plan.

### 12.4    *Severability of Plan Provisions*.

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

### 12.5    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to this Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws.

### 12.6    *Compliance with Tax Requirements*.

In connection with the consummation of this Plan, any party issuing any instrument or making any Distribution under this Plan, including the Reorganized Debtors, the Disbursing Agent or Creditor Trustee, as applicable,, and the Plan Sponsor, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under this Plan shall have the sole and exclusive responsibility for the

36

MIAMI 2904888.4 7945135741

satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  Any party issuing an instrument or making a Distribution under this Plan has the right, but not the obligation, to not make such Distribution until the Holder of the applicable Allowed Claim has made arrangements satisfactory to such disbursing party for payment of tax obligations.

     12.7    ***Computation of Time.***

     In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

     12.8    ***Notices***.

     To be effective, all notices, requests, and demands to or upon the Debtors, Reorganized Debtors and/or the Plan Sponsor relating to the Plan shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Town Center at Doral, LLC
> c/o Kodsi Law Firm, P.A.
> 701 W. Cypress Creek Road
> Suite 303
> Fort Lauderdale, FL 33309
> Attn:  Isaac Kodsi
> Facsimile: (954) 771-4676
> Email:  ikodsi@ark-financial.com
>
>     – and –
>
> Bilzin Sumberg Baena Price & Axelrod LLP
> 1450 Brickell Avenue
> Suite 2300
> Miami, FL 33131
> Attn:  Mindy Mora, Esq.
>     Tara V. Trevorrow, Esq.
> Facsimile:  (305) 351-2242
> Email:  mmora@bilzin.com
>
>     – and –
>
> Berger Singerman
> 1450 Brickell Avenue
> Suite 1900
> Miami, FL 33131

MIAMI 2904888.4 7945135741

Attn: Jordi Guso, Esq.
Debi Galler, Esq.
Facsimile:  (305) 714-4340
Email:  jguso@bergersingerman.com

12.9    ***Filing or Execution of Additional Documents***.

On or before the Effective Date, and without the need for any further order or authority, the Debtors or Reorganized Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtors or Reorganized Debtors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated: February 8, 2012                    Respectfully submitted,


TOWN CENTER AT DORAL, LLC

By:____s/_____
      Isaac Kodsi, Vice President


LANDMARK AT DORAL EAST, LLC

By:____s/_____
      Isaac Kodsi, Vice President


LANDMARK AT DORAL SOUTH, LLC

By:____s/_____
      Isaac Kodsi, Vice President


LANDMARK CLUB AT DORAL, LLC

By:____s/_____
      Isaac Kodsi, Vice President


LANDMARK AT DORAL DEVELOPERS, LLC

By:____s/_____
      Isaac Kodsi, Vice President

TERRA LANDMARK, LLC

By:_____s/_____
     David Martin,
     Chief Operating Officer

MIAMI 2904888.4 7945135741

## Schedule 4.4A to the Joint Amended Plan
## North Section: Class A District Payment Schedule

| Period | | Beginning of Period | Interest Payment | Principal Payment | Total Semi-Annual Payment | End of Period |
|---|---|---|---|---|---|---|
| 0 | | | | | | 9,319,057 |
| 0 | May-12 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | Nov-12 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | May-13 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | Nov-13 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | May-14 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | Nov-14 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 1 | May-15 | 9,319,057 | -256,274 | -99,375 | -355,649 | 9,219,683 |
| 2 | Nov-15 | 9,219,683 | -253,541 | -102,107 | -355,649 | 9,117,576 |
| 3 | May-16 | 9,117,576 | -250,733 | -104,915 | -355,649 | 9,012,660 |
| 4 | Nov-16 | 9,012,660 | -247,848 | -107,800 | -355,649 | 8,904,860 |
| 5 | May-17 | 8,904,860 | -244,884 | -110,765 | -355,649 | 8,794,095 |
| 6 | Nov-17 | 8,794,095 | -241,838 | -113,811 | -355,649 | 8,680,284 |
| 7 | May-18 | 8,680,284 | -238,708 | -116,941 | -355,649 | 8,563,343 |
| 8 | Nov-18 | 8,563,343 | -235,492 | -120,157 | -355,649 | 8,443,186 |
| 9 | May-19 | 8,443,186 | -232,188 | -123,461 | -355,649 | 8,319,725 |
| 10 | Nov-19 | 8,319,725 | -228,792 | -126,856 | -355,649 | 8,192,869 |
| 11 | May-20 | 8,192,869 | -225,304 | -130,345 | -355,649 | 8,062,525 |
| 12 | Nov-20 | 8,062,525 | -221,719 | -133,929 | -355,649 | 7,928,595 |
| 13 | May-21 | 7,928,595 | -218,036 | -137,612 | -355,649 | 7,790,983 |
| 14 | Nov-21 | 7,790,983 | -214,252 | -141,397 | -355,649 | 7,649,587 |
| 15 | May-22 | 7,649,587 | -210,364 | -145,285 | -355,649 | 7,504,302 |
| 16 | Nov-22 | 7,504,302 | -206,368 | -149,280 | -355,649 | 7,355,021 |
| 17 | May-23 | 7,355,021 | -202,263 | -153,386 | -355,649 | 7,201,636 |
| 18 | Nov-23 | 7,201,636 | -198,045 | -157,604 | -355,649 | 7,044,032 |
| 19 | May-24 | 7,044,032 | -193,711 | -161,938 | -355,649 | 6,882,094 |
| 20 | Nov-24 | 6,882,094 | -189,258 | -166,391 | -355,649 | 6,715,703 |
| 21 | May-25 | 6,715,703 | -184,682 | -170,967 | -355,649 | 6,544,737 |
| 22 | Nov-25 | 6,544,737 | -179,980 | -175,668 | -355,649 | 6,369,068 |
| 23 | May-26 | 6,369,068 | -175,149 | -180,499 | -355,649 | 6,188,569 |
| 24 | Nov-26 | 6,188,569 | -170,186 | -185,463 | -355,649 | 6,003,106 |
| 25 | May-27 | 6,003,106 | -165,085 | -190,563 | -355,649 | 5,812,543 |
| 26 | Nov-27 | 5,812,543 | -159,845 | -195,804 | -355,649 | 5,616,739 |
| 27 | May-28 | 5,616,739 | -154,460 | -201,188 | -355,649 | 5,415,551 |
| 28 | Nov-28 | 5,415,551 | -148,928 | -206,721 | -355,649 | 5,208,830 |
| 29 | May-29 | 5,208,830 | -143,243 | -212,406 | -355,649 | 4,996,424 |
| 30 | Nov-29 | 4,996,424 | -137,402 | -218,247 | -355,649 | 4,778,177 |
| 31 | May-30 | 4,778,177 | -131,400 | -224,249 | -355,649 | 4,553,929 |
| 32 | Nov-30 | 4,553,929 | -125,233 | -230,416 | -355,649 | 4,323,513 |
| 33 | May-31 | 4,323,513 | -118,897 | -236,752 | -355,649 | 4,086,761 |
| 34 | Nov-31 | 4,086,761 | -112,386 | -243,263 | -355,649 | 3,843,498 |
| 35 | May-32 | 3,843,498 | -105,696 | -249,952 | -355,649 | 3,593,546 |
| 36 | Nov-32 | 3,593,546 | -98,823 | -256,826 | -355,649 | 3,336,720 |
| 37 | May-33 | 3,336,720 | -91,760 | -263,889 | -355,649 | 3,072,831 |
| 38 | Nov-33 | 3,072,831 | -84,503 | -271,146 | -355,649 | 2,801,685 |
| 39 | May-34 | 2,801,685 | -77,046 | -278,602 | -355,649 | 2,523,083 |
| 40 | Nov-34 | 2,523,083 | -69,385 | -286,264 | -355,649 | 2,236,819 |
| 41 | May-35 | 2,236,819 | -61,513 | -294,136 | -355,649 | 1,942,683 |
| 42 | Nov-35 | 1,942,683 | -53,424 | -302,225 | -355,649 | 1,640,458 |
| 43 | May-36 | 1,640,458 | -45,113 | -310,536 | -355,649 | 1,329,922 |
| 44 | Nov-36 | 1,329,922 | -36,573 | -319,076 | -355,649 | 1,010,847 |
| 45 | May-37 | 1,010,847 | -27,798 | -327,850 | -355,649 | 682,996 |
| 46 | Nov-37 | 682,996 | -18,782 | -336,866 | -355,649 | 346,130 |
| 47 | May-38 | 346,130 | -9,519 | -346,130 | -355,649 | 0 |
| | Total | | -8,934,072 | -9,319,057 | -18,253,129 | |

## Schedule 4.4B to the Joint Amended Plan
## South Section: Class A District Payment Schedule

| Period | | Beginning of Period | Interest Payment | Principal Payment | Total Semi-Annual Payment | End of Period |
|---|---|---|---|---|---|---|
| 0 | | | | | | 9,319,057 |
| 0 | May-12 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | Nov-12 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | May-13 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | Nov-13 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | May-14 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 0 | Nov-14 | 9,319,057 | -256,274 | 0 | -256,274 | 9,319,057 |
| 1 | May-15 | 9,319,057 | -256,274 | -99,375 | -355,649 | 9,219,683 |
| 2 | Nov-15 | 9,219,683 | -253,541 | -102,107 | -355,649 | 9,117,576 |
| 3 | May-16 | 9,117,576 | -250,733 | -104,915 | -355,649 | 9,012,660 |
| 4 | Nov-16 | 9,012,660 | -247,848 | -107,800 | -355,649 | 8,904,860 |
| 5 | May-17 | 8,904,860 | -244,884 | -110,765 | -355,649 | 8,794,095 |
| 6 | Nov-17 | 8,794,095 | -241,838 | -113,811 | -355,649 | 8,680,284 |
| 7 | May-18 | 8,680,284 | -238,708 | -116,941 | -355,649 | 8,563,343 |
| 8 | Nov-18 | 8,563,343 | -235,492 | -120,157 | -355,649 | 8,443,186 |
| 9 | May-19 | 8,443,186 | -232,188 | -123,461 | -355,649 | 8,319,725 |
| 10 | Nov-19 | 8,319,725 | -228,792 | -126,856 | -355,649 | 8,192,869 |
| 11 | May-20 | 8,192,869 | -225,304 | -130,345 | -355,649 | 8,062,525 |
| 12 | Nov-20 | 8,062,525 | -221,719 | -133,929 | -355,649 | 7,928,595 |
| 13 | May-21 | 7,928,595 | -218,036 | -137,612 | -355,649 | 7,790,983 |
| 14 | Nov-21 | 7,790,983 | -214,252 | -141,397 | -355,649 | 7,649,587 |
| 15 | May-22 | 7,649,587 | -210,364 | -145,285 | -355,649 | 7,504,302 |
| 16 | Nov-22 | 7,504,302 | -206,368 | -149,280 | -355,649 | 7,355,021 |
| 17 | May-23 | 7,355,021 | -202,263 | -153,386 | -355,649 | 7,201,636 |
| 18 | Nov-23 | 7,201,636 | -198,045 | -157,604 | -355,649 | 7,044,032 |
| 19 | May-24 | 7,044,032 | -193,711 | -161,938 | -355,649 | 6,882,094 |
| 20 | Nov-24 | 6,882,094 | -189,258 | -166,391 | -355,649 | 6,715,703 |
| 21 | May-25 | 6,715,703 | -184,682 | -170,967 | -355,649 | 6,544,737 |
| 22 | Nov-25 | 6,544,737 | -179,980 | -175,668 | -355,649 | 6,369,068 |
| 23 | May-26 | 6,369,068 | -175,149 | -180,499 | -355,649 | 6,188,569 |
| 24 | Nov-26 | 6,188,569 | -170,186 | -185,463 | -355,649 | 6,003,106 |
| 25 | May-27 | 6,003,106 | -165,085 | -190,563 | -355,649 | 5,812,543 |
| 26 | Nov-27 | 5,812,543 | -159,845 | -195,804 | -355,649 | 5,616,739 |
| 27 | May-28 | 5,616,739 | -154,460 | -201,188 | -355,649 | 5,415,551 |
| 28 | Nov-28 | 5,415,551 | -148,928 | -206,721 | -355,649 | 5,208,830 |
| 29 | May-29 | 5,208,830 | -143,243 | -212,406 | -355,649 | 4,996,424 |
| 30 | Nov-29 | 4,996,424 | -137,402 | -218,247 | -355,649 | 4,778,177 |
| 31 | May-30 | 4,778,177 | -131,400 | -224,249 | -355,649 | 4,553,929 |
| 32 | Nov-30 | 4,553,929 | -125,233 | -230,416 | -355,649 | 4,323,513 |
| 33 | May-31 | 4,323,513 | -118,897 | -236,752 | -355,649 | 4,086,761 |
| 34 | Nov-31 | 4,086,761 | -112,386 | -243,263 | -355,649 | 3,843,498 |
| 35 | May-32 | 3,843,498 | -105,696 | -249,952 | -355,649 | 3,593,546 |
| 36 | Nov-32 | 3,593,546 | -98,823 | -256,826 | -355,649 | 3,336,720 |
| 37 | May-33 | 3,336,720 | -91,760 | -263,889 | -355,649 | 3,072,831 |
| 38 | Nov-33 | 3,072,831 | -84,503 | -271,146 | -355,649 | 2,801,685 |
| 39 | May-34 | 2,801,685 | -77,046 | -278,602 | -355,649 | 2,523,083 |
| 40 | Nov-34 | 2,523,083 | -69,385 | -286,264 | -355,649 | 2,236,819 |
| 41 | May-35 | 2,236,819 | -61,513 | -294,136 | -355,649 | 1,942,683 |
| 42 | Nov-35 | 1,942,683 | -53,424 | -302,225 | -355,649 | 1,640,458 |
| 43 | May-36 | 1,640,458 | -45,113 | -310,536 | -355,649 | 1,329,922 |
| 44 | Nov-36 | 1,329,922 | -36,573 | -319,076 | -355,649 | 1,010,847 |
| 45 | May-37 | 1,010,847 | -27,798 | -327,850 | -355,649 | 682,996 |
| 46 | Nov-37 | 682,996 | -18,782 | -336,866 | -355,649 | 346,130 |
| 47 | May-38 | 346,130 | -9,519 | -346,130 | -355,649 | 0 |
| | Total | | -8,934,072 | -9,319,057 | -18,253,129 | |

Exhibit A to the Joint Amended Plan

**Release Prices per Unit**
*Assuming 1111(b) is Not Elected*

|  | Class B Principal Release Price |
|---|---|
| ***North Parcel*** | |
| Single Family | 55,046.67 |
| Rowhomes | 33,945.45 |
| | |
| ***South Parcel*** | |
| Residential | 12,978.15 |
| Office | 36,055.31 |
| Retail | 20,483.85 |