**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

In re:                                         Chapter 11

                                               Case No. 11-35884-RAM
TOWN CENTER AT DORAL, L.L.C.,                   Jointly Administered
*et al.,*

              Debtors.
_____/

**REPLY IN SUPPORT OF MOTION TO DISMISS CHAPTER**
**11 CASES FOR BAD FAITH FILINGS [ECF NO. 181]**

        LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT (the
"**District**"), a local unit of special purpose government, **U.S. BANK NATIONAL
ASSOCIATION,** solely as indenture trustee with regard to the Bonds and under the Indenture,
and **FLORIDA PRIME HOLDINGS, LLC** (collectively, the "**Moving Parties**"), through their
respective counsel, pursuant to 11 U.S.C. § 1112(b) submit their reply in support of their motion
to dismiss these Chapter 11 Proceedings for bad faith (the "**Motion**") [ECF 181].  In support of
the Motion, the Moving Parties state:

<u>Argument</u>

        On February 8, 2012, the Debtors filed their Response to the Motion (the "**Response**")
[ECF No. 218].  Rather than clarify the abuses and malfeasance brought to light in the Motion,
the Response amplifies the wrongdoing and self-dealing between the Debtors, Kodsi and Terra.[1]
The Response relies on two misleading and improper grounds: (1) that the Debtors, Kodsi and
Terra all inadvertently failed to execute the Terra/Kodsi Contract which led to the inadvertent
failure to disclosure the Terra Compensation Agreement to the Court and all parties in interest;
and (2) that the "lock-up" agreement between the Debtors and Terra was fully disclosed, arm's-
length and the only means necessary to obtain a distribution for unsecured creditors.  These
excuses are unsupported by the facts and do not constitute a legitimate response to the

---

[1] All capitalized terms not otherwise defined herein shall have the meaning provided for in the Motion.

malfeasance in this case.  Consequently, this Court should dismiss the Debtors' Chapter 11 cases for the reasons set forth below and in the Motion.

The Debtors and Terra request that the Court disregard their nondisclosure of the Terra Compensation Agreement, the Term Sheet and the Terra/Kodsi Contract (collectively, the "**Agreements**"), claiming that their nondisclosure of the Agreements was inadvertent.  This excuse, however, is belied by the facts that (i) the Debtors and Terra had multiple occasions on which to make the disclosure; and (ii) the Debtors and Terra did remember to disclose part of the Agreements – *i.e.*, that Kodsi was receiving $100,000 in increments of $10,000 per month – when it was in their financial interest to do so.  The Debtors and Terra offer no explanation for their limited disclosure other than "inadvertence".

Clearly, the Debtors and Terra disclosed only the $10,000 monthly payments to Kodsi because they sought to recover the payments through DIP financing.  The Debtors and Terra did not disclose the $150,000 "success fee" or any of the other terms of their Agreements because they could not recover those amounts through the bankruptcy cases.  That, however, is no excuse for the non-disclosure.  The undisclosed provisions of the Agreements are far too material in nature for the parties to have inadvertently failed to disclose them in the bankruptcy cases, especially when they had multiple occasions to do so.  These Agreements formed the basis for the relationship between the Debtors and Terra, provided Terra its position as sole plan proponent and motivated the Chapter 11 filings.  For the parties to now declare that the nondisclosure of Agreements that were at the heart of the bankruptcy filings was inadvertent and immaterial is incomprehensible.

The Debtors, Kodsi and Terra had multiple opportunities to disclose the Agreements to the Court and all parties in interest.  The Debtors rely on the purported disclosure of the Terra Compensation Agreement in the Debtors' emergency motion for postpetition DIP financing (the "**DIP Financing Motion**") [ECF No. 45].  However, this reliance is also not entirely accurate. The only disclosure in the DIP Financing Motion was a line-item in the attached budget that

contained a $10,000 per month management fee to Kodsi.  The DIP Financing Motion did not disclose the existence of the $150,000 Success Fee or any of the other material terms negotiated in the Term Sheet.[2]  Regardless, the Debtors and Terra were required to fully disclose the Term Sheet and the Terra/Kodsi Contract.

The Response further exposes the Debtors' material misrepresentations in these bankruptcy cases.  The Debtors assert in their Response that the "lock-up" agreement was required to obtain DIP financing from Terra.  Under section 364 of the Bankruptcy Code, the Debtors were required to "demonstrate 'by a good faith effort that credit was not available'" from any party other than Terra.  *Brey v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).  The DIP Financing Motion asserts that the Debtors satisfied this requirement and were unable to obtain alternative financing.   [ECF No. 45]. However, the Debtors failed to disclose in the DIP Financing Motion that they were subject to the "lock-up" agreement for at least three (3) months prior to the bankruptcy filing.  [ECF No. 218].[3]  The Term Sheet, executed three months prior to the Petition Date on June 1, 2011, stated that "Landmark Owner will cooperate with [Terra] to obtain the right to develop the Property as part of a bankruptcy reorganization plan."  *Id*. The Debtors were put into Chapter 11 to ensure Kodsi would control the Debtors' sale to Terra in further demonstration of the continuous conflict of interest inherent in these bankruptcy filings.

---

[2] Neither did the Debtors disclose the existence of the Agreements upon questioning by the U.S. Trustee at the § 341 meeting.  *See* [ECF No. 229 at pg. 4].  Furthermore, the DIP Financing Motion only disclosed that Kodsi was to be paid $10,000 a month, and the total amount budgeted in the DIP budget (even as amended) was $50,000, through February 29, 2012 (Terra's targeted plan confirmation date).  The Debtors never actually disclosed that Kodsi was to receive up to $100,000 pursuant to the Agreements.

[3] The Debtors also failed to disclose that AmT also had made an offer to pay at least $50,000 (and release the guarantees of Debtors' insiders) in exchange for membership interests in the Debtors.  [ECF No. 181 at Exh B, pg. 21:6-9].  In his deposition, Kodsi actually admitted that he never bothered to see whether AmT would make a better offer than Terra for the unsecured creditors, and that he did not bother to speak to anybody else about an offer.  *Id*. at .29:19-25; 30:1.  Had Kodsi fulfilled his fiduciary duty to explore and disclose this offer, it is unclear whether an agreement could have been reached with AmT or another developer.  Instead, Kodsi engaged the offer which had the most personal gain and his failure to explore the AmT offer or any other potential offer is demonstrative of the self-dealing, conflict of interest and breach of fiduciary duty inherent in these cases

3

The Term Sheet also reveals that the Debtors would not have reasonably been able to assert a "good faith effort" to obtain credit other than from Terra. The Debtors were "locked-up" to negotiate only with Terra at the execution of the Term Sheet, several months pre-petition. In pertinent part, the Term Sheet locked-up the Debtors as follows:

> Landmark Owner agrees that during the period commencing on the execution of this letter until the date that is the earlier of (i) the date the final Plan approval or Closing under the bankruptcy sale or (ii) two years . . . , Landmark Owner agrees that Landmark Owner shall not sell or joint venture the Property, or negotiate for the sale of the Property to any party other than Terra.

[ECF No. 218]. The Debtors cannot demonstrate good faith in the filing of the DIP Financing Motion or the bankruptcy cases. The Debtors were under Terra's control and precluded from negotiating with any third party to the detriment of the bankruptcy estates and their creditors from at least June 1, 2011. *See In re Coram Healthcare Corp.*, 271 B.R. 228, 235 (Bankr. D. Del. 2001) ("A debtor in possession is bound by a duty of loyalty that includes an obligation to refrain from self dealing [and] to avoid conflicts of interest[.]"); *see also Wolf v. Weinstein*, 372 U.S. 633, 649 (1963) (a debtor-in-possession "bears essentially the same fiduciary obligations to the creditors as does the trustee for the Debtor out of possession").

In contrast to the facts, the Debtors assert in their Response that the "lock-up" was required to provide a distribution for unsecured creditors [ECF No. 218]. The Affidavit of Kodsi, attached to the Response as Exhibit A, states that the "principal goal in pursuing these bankruptcy filings was to enable unsecured creditors . . . to obtain some recovery" [ECF No. 218, at p.10]. As shown above and in the Term Sheet, this statement is unsupported and untrue.[4]

---

[4] Indeed, at his deposition, Kodsi testified that he had not spoken to any of the unsecured creditors for over three and one half years; that he knew only a few of the individuals listed as unsecured creditors and that he could not even be sure that they are creditors of the Debtors (rather than simply creditors of Elie Berdugo or one of his other companies); that he was not involved in raising funds from any of the unsecured creditors that he did know, and that he had never discussed the bankruptcy filing, AmT's offer or Terra's offer with any of the unsecured creditors. Clearly, Kodsi's professed loyalty to the unsecured creditors is contradicted by his actions and sworn testimony. [ECFNo. 181 at Exh. B, pgs.130-135].

The principal goal was to transfer the Property to Terra, for the lowest purchase price possible,[5] and richly compensate Kodsi for his services to Terra.

The Term Sheet sets forth a detailed, two-step development plan for the Property to be transferred to Terra [ECF No. 218 at p.26-27].  Phase I was for the reorganization of the Debtors under Chapter 11 of the Bankruptcy Code and Phase II was for the management and development of the Property.  *Id.*  Phase I included the pre-determination that Terra would be the Debtors' DIP lender, that the Debtors would cooperate with Terra "to obtain the right to develop the Property" and set forth the terms of Kodsi's personal compensation.  *Id.* at p. 26. There was no provision for a distribution to creditors and the only mention of creditors was the vague reference of proposing "a reorganization plan . . . with the project's current creditors."  *Id.*  The sole objective of the Term Sheet was to transfer the Property to Terra.[6]  The Agreements precluded the Debtors from seeking a third party financier or purchaser, to the detriment of their creditors and parties in interest.  The Debtors filed these cases in bad faith with the principal goal compensating Kodsi for shepherding the Property to Terra.

Finally, for the first time in the Response, it is revealed that the Agreements contained an additional clause for the personal financial benefit of Kodsi.  The Term Sheet contained a clause that once the Property was sold to Terra, Terra would employ Kodsi's law firm to conduct, at a

---

[5] The Court has already stated, although not found, that this inference is supported by the record:

> One interpretation from the record, and it's not a finding, is that Terra made the business decision that their financial obligations under the plan structure, in terms of the total bond debt, plus funding the bankruptcy, plus paying Kodsi a success fee, is all going to cost them less than if they came in at a foreclosure sale, assuming they could raise the cash, or came in post-foreclosure and had to come up with a deal that the bondholders would take.

Transcript of Hearing of January 25, 2012 at 112:21-113:5.

[6] The Debtors' purported (and oft-repeated) intent to obtain a distribution to the unsecured creditors in this case is simply a pretext.  The alleged secured claims in these cases exceed $240 million, and the resultant deficiency claims will materially dilute any recovery to the true unsecured creditors so that any distribution to them will likely be *de minimus*.  AMT's bargained-for right, as a junior lien creditor, is to redeem the senior lien at a foreclosure sale. Kodsi's magnanimous concern for the unsecured creditors is simply not credible, particularly in light of the fact that it is likely that no true unsecured creditor will receive as much from confirmation of Terra's plan as will Kodsi.  In fact, other than the claim of AMT which is fully unsecured, the Moving Parties believe that the balance of true unsecured claims that are not subject to reclassification or subordination is less than $1,000,000.00.

minimum, 25% of all closings for the sale of individual property units at the Property (the "**Closings Clause**").  Tellingly, the Debtors fail to mention or disclose the Closings Clause in the Response.  The Court and parties in interest were left to uncover for themselves this additional and significant financial benefit for Kodsi.  This previously undisclosed business opportunity would likely yield hundreds of thousands of dollars to Kodsi contingent only on the confirmation of the Debtors' Plan.  The non-disclosure of the Closings Clause is further example of the self-dealing, breach of loyalty and bad faith on the part of the Debtors, Kodsi and Terra.

The Response accentuates the Debtors' bad faith.  Kodsi's self-dealing and actual conflicts of interest are readily demonstrated through his affidavit and the Term Sheet.  Kodsi is to receive $250,000 in cash and all legal fees and potential title fees for, at least, 25% of all sale closings at the Property.  The only requirement for Kodsi to obtain this windfall was to cooperate with Terra and ensure that Terra would receive the Property through confirmation of the Debtors' Plan.  Kodsi will not receive his "success fee" if any other plan, regardless of the benefit provided to the estate, is confirmed.  Kodsi admits this in his deposition testimony.  *See* [ECF No. 181 at Exh. B].  The Agreements would likely have gone undisclosed without the deposition of Kodsi and, even then, the Closings Clause was not disclosed until this Court ordered the Debtors to produce the Agreements in response to the Motion.  The self-dealing and lack of disclosure unequivocally shows the bad faith nature of these cases and Kodsi's breach of his fiduciary duties as an officer of the Debtors.

These cases should be dismissed because they were filed in "bad faith," constitute an abuse of the bankruptcy process and were untaken solely and improperly for the benefit of Terra and Kodsi.

WHEREFORE, **LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT**, a local unit of special purpose government, **U.S. BANK NATIONAL ASSOCIATION,** solely as indenture trustee with regard to the Bonds and under the Indenture, and **FLORIDA PRIME HOLDINGS, LLC** respectfully request this Court enter an order (1)

dismissing the Debtors' Chapter 11 cases *instanter*; (2) awarding fees and sanctions as appropriate; and (3) granting such other and further relief deemed just and proper.

Dated: February 22, 2012

Respectfully submitted,                           Respectfully submitted,


**STEARNS WEAVER MILLER WEISSLER**      **ARNSTEIN & LEHR LLP**
**ALHADEFF & SITTERSON, P.A.**          Attorneys for Florida Prime Holdings, LLC
*Counsel for the District*              200 South Biscayne Boulevard, Suite 3600
Museum Tower, Suite 2200                Miami, Florida 33131
150 West Flagler Street                 Telephone:     305-374-3330
Miami, Florida 33130                    Facsimile:     305-374-4777
Phone: (305) 789-3553                   E-Mail: pmhudson@arnstein.com
Fax:    (305) 789-3395
By: */s/ Patricia A. Redmond* (with permission)   By: /s/ Phillip M. Hudson
        PATRICIA A. REDMOND                        Phillip M. Hudson III
        Florida Bar No. 303739                     Florida Bar No. 518743
        predmond@stearnsweaver.com


Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 Avenue of the Americas
Miami, Florida 33131
Telephone:     (305) 579-0730
Facsimile:     (305) 579-0717

By: */s/ John B. Hutton, III* (with permission)
        John B. Hutton, III
        huttonj@gtlaw.com
        Florida Bar No. 902160
        John R. Dodd
        doddj@gtlaw.com
        Florida Bar No. 38091

        *Counsel to the Indenture Trustee*


7

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true and correct copies of the following document were served as follows: (i) via transmission of Notices of Electronic Filing generated by CM/ECF to those counsel or parties who are registered to receive Notice of Electronic Filing in this case as each document was entered on the docket, and (ii) via U.S. Mail to those parties not registered to receive Notice of Electronic Filing in this case, on February 22, 2012 as indicated on the attached Service List.

10002034.1

**SERVICE LIST**

*Via CM/ECF*

Jere L. Earlywine
*jearlywine@hgslaw.com*
*Counsel for Florida Prime Holdings, LLC*

C Craig Eller
*celler@broadandcassel.com*
*Counsel for AmT CADC Venture, LLC*

Jordi Guso
*jguso@bergersingerman.com*
*fsellers@bergersingerman.com*
*efile@bergersingerman.com*
*Counsel for Terra World Investments, LLC*

Phillip M. Hudson III
*pmhudson@arnstein.com; rkcummings@arnstein.com*
*jtunis@arnstein.com; hbabcock@arnstein.com*
*hpiloto@arnstein.com; akang@arnstein.com*
*befernandez@arnstein.com*
*Counsel for Florida Prime Holdings, LLC*

John B. Hutton III
*huttonj@gtlaw.com; thompsonc@gtlaw.com*
*mialitdock@gtlaw.com; miaecfbky@gtlaw.com*
*Counsel for U.S. Bank National Association as Trustee*

Mindy A. Mora
*mmora@bilzin.com; laparicio@bilzin.com*
*cvarela@bilzin.com; eservice@bilzin.com*
*lflores@bilzin.com; abeck@bilzin.com*
*Counsel for Landmark Club at Doral, LLC*

Glenn D Moses
*gmoses@gjb-law.com; gjbecf@gjb-law.com*
*Counsel for Committee Creditor Committee*

Office of the US Trustee
*USTPRegion21.MM.ECF@usdoj.gov*

Melinda S Thornton
*cao.bkc@miamidade.gov*
*Counsel for Miami-Dade County Tax Collector*

9

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case, who will therefore be served via U.S. Mail.

Michael Eckert
119 S. Monroe Street #300 (32301)
POB 6526
Tallahassee, FL 32314

Daniel Y. Gielchinsky
1450 Brickell Ave #2300
Miami, FL 33131

Betty M Shumener
550 South Hope St #2300
Los Angeles, CA 90071

Steven D. Schneiderman
51 SW First Avenue
Suite 1204
Miami, FL 33130
*Attorney for U.S. Trustee's Office*

Town Center at Doral, L.L.C.
c/o Steven Amster, Esq.
Kodsi Law Firm, P.A.
701 W. Cypress Creek Road
Suite 303
Ft. Lauderdale, FL 33309
*Debtor*

<u>/s/Phillip M.  Hudson III</u>
Phillip M. Hudson III

10002034.1