**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

In re:                                                    Chapter 11

                                                         Case No. 11-35884-RAM
TOWN CENTER AT DORAL, L.L.C.,                            Jointly Administered
*et al.,*

                    Debtors.
_____/

**MOTION FOR AUTHORITY TO**
**(I) SELL ASSETS OUTSIDE OF ORDINARY COURSE OF BUSINESS,**
**FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (II) ESTABLISH**
**SALE PROCEDURES, (III) SET A HEARING DATE ON SALE, AND**
**(IV) APPROVE FORM OF NOTICE AND SHORTENED NOTICE ALL IN**
**CONNECTION WITH JOINT PLAN OF REORGANIZATION BY LANDMARK AT**
**DORAL COMMUNITY DEVELOPMENT DISTRICT, U.S. BANK NATIONAL**
**ASSOCIATION, AS INDENTURE TRUSTEE, AND FLORIDA PRIME HOLDINGS, LLC**

**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT**, a local

unit of special purpose government (the "**District**"), **U.S. BANK NATIONAL**

**ASSOCIATION**, solely as indenture trustee with regard to the Bonds and under their Indenture,

and **FLORIDA PRIME HOLDINGS, LLC** (collectively, the "**Plan Proponents**"), secured

creditors of the bankruptcy estates (the "**Estates**") of Town Center at Doral, LLC, et al. (the

"**Debtors**")[1], pursuant to Sections 105, 363, 1107, 1108, 1123 and 1146 of Title 11 of the United

States Code (the "**Bankruptcy Code**") and Federal Rules of Civil Procedure 2002, 4001, 6004

and 6006, and in connection with the Plan Proponents' Amended Joint Plan of Reorganization

(the "**Amended District Creditor Plan**"), respectfully request the following:

      A.      Entry of an order or orders approving the following on an expedited basis (the

"**Preliminary Sale Order**"):

           (i)      approving a Stalking Horse Bid and the Purchase Agreement
attached as **Exhibit "A"** (as defined below);

_____

[1] The Debtors include: Landmark at Doral East, LLC, a Florida limited liability company; Town Center at Doral, LLC, a Florida limited liability company; Landmark at Doral South, a Florida limited liability company; Landmark at Doral Developers, LLC, a Florida limited liability company; and Landmark Club at Doral LLC, a Florida limited liability company.

|       | (ii)  | approving the Bid Procedures set forth herein (as defined below); |

(ii)     approving the Bid Procedures set forth herein (as defined below);

(iii)    establishing certain hearing dates and time and notice periods relative to the proposed Sale herein;

(iv)    establishing a date for the auction of the Property (as defined below), if necessary;

(v)     approving the Sale Notice; and

(vi)    approving and/or ordering any other process or procedure necessary to affect the relief sought herein.

and

B.    Entry of the Final Sale Order ("**Final Sale Order**")

(i)     approving the sale of the Property (as defined below) to the Successful Bidder (as defined below), free and clear of all interests, pledges, liens, claims and encumbrances except as otherwise provided for herein;

(ii)    authorizing and compelling the Debtors' Estates to take any and all action necessary to effectuate the sale of the Property (as defined below);

(iii)   authorizing and approving the assumption and assignment of executory contracts and leases, if any, pursuant to 11 U.S.C. § 365; and

(iv)    authorizing and approving any further relief necessary to accomplish the sale of the Property (as defined below) including, but not limited to, shortening certain deadlines and notice periods.

In support of this motion (the "**Sale Procedures Motion**"), the District states:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

2.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

The statutory predicates for the relief requested are sections 105, 363, 1107, 1108, 1123 and 1146 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 4001, 6004, and 6006.

## BACKGROUND

4.    On September 19, 2011 (the "**Petition Date**"), the Debtors filed separate voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.  Pursuant to the Debtors' filings, the Debtors have elected single asset real estate status under the Bankruptcy Code.  *See e.g.*  [ECF No.1, Petition].

5.      The Debtors are not presently operating.  An official committee for unsecured creditors (the "**Committee**") has been appointed in these cases.

6.      On September 22, 2011, this Court granted the Debtors' motion for joint administration, with the instant case, Case No. 11-35884-RAM, designated as the lead case.  *See* [ECF No. 7].

7.      The Debtors are developers and owners of several parcels of real property located in Miami-Dade County Florida, consisting of approximately 120 contiguous acres located on the east side of NW 107 Avenue and the north side of NW 58 Street, a majority of which is zoned TND (Traditional Neighborhood Development) with the remainder zoned IU-1 for flex office development allowing for light industrial development [2] (the "**Real Property**").  The Real Property consists of 16 individual tracts of land that remain without any vertical construction with the exception of a substantially completed four-level parking garage.

8.      Prior to 2008, the Debtors were actively engaged in preparing the Real Property for a development to be called Landmark at Doral, consisting of 11 acres of industrial/flex office, 17 acres of mixed use, and 89 acres of multifamily residential dwellings. After development, the Real Property was to consist of 188,000 square feet of retail and office, 230,000 square feet of flex office, and 1,109 residential units, featuring an assortment of elevations and architecture to create a community reminiscent of former small towns in suburbs throughout the United States and abroad.

9.      In February 2008 the principal of the Debtors, Elie Berdugo, passed away. Thereafter, the Debtors defaulted on each and every payment obligation to the District.  Even prior to Elie Berdugo's death, the only assessment payments made to the District were from reserves established at the inception of the District.  The Debtors abandoned the project in 2008 and the District has been forced to protect and maintain the property since that time.  The Debtors have not paid any real property taxes since that time.

---

[2] This description is general, non-exhaustive and non-binding.  The Real Property sought to be sold will be specifically identified by the legal description(s) attached to the purchase and sales contract relative to the sale.

10.      Pursuant to Resolution No. 2005-11, adopted September 9, 2005, and Resolution No. 2006-08, adopted August 10, 2006, the District authorized the issuance, sale, and delivery of special assessment bonds not to exceed $75,000,000 in the aggregate.  On November 1, 2005, the Eleventh Circuit Court in and for Miami-Dade County, Florida, validated and confirmed the issuance of the proposed special assessment bonds. On October 1, 2006, the District signed the Indenture. On October 10, 2006, the District issued the Series 2006 Bonds. The proceeds of the Series 2006 Bonds were and are designated to be used to fund the development of infrastructure and capital improvements for the Real Property.

11.      Pursuant to Resolution No. 2005-12, adopted October 19, 2005, and Resolution No. 2006-10, adopted September 14, 2006, the District imposed "Special Assessment Obligations" upon the Debtors as the landowners of the parcels to be benefited by the infrastructure and other capital improvements funded by the proceeds of the Series 2006 Bonds. On September 11, 2008, the District adopted Resolution No. 2008-5, which levied a special assessment for maintenance and debt service on the parcels for the fiscal year 2009-2010.

12.      The Debtors have not paid the Special Assessment Obligations since 2008. As of the Petition Date, the Debtors were obligated to the District for Special Assessment Obligations in the principal face amount of $71,500,000, plus interest and penalties. The principal amount of Special Assessment Obligations allocable to each Debtor is as follows: (i) Landmark at Doral East, LLC - $12,040,491.58; (ii) Town Center at Doral, LLC - $43,727,205.13; (iii) Landmark at Doral South, LLC - $14,499,141.58; (iv) Landmark Club at Doral, LLC - $1,233,161.71.

13.      On or about November 13, 2008, the District adopted Resolution No. 2009-4, which imposed a "Maintenance Assessment Obligation" on the parcels for the purpose of funding the District's operations and maintenance budget for the Fiscal Year 2008-2009. The Debtors have not paid the Maintenance Assessment Obligations since 2008. As of the Petition Date, the Debtors were obligated to the District for Maintenance Assessment Obligations of $649,817.73. The amount of Maintenance Assessment Obligations allocable to each Debtor is as follows: (i) Landmark at Doral East, LLC - $98,543.91; (ii) Town Center at Doral, LLC -

$418,651.68; (iii) Landmark at Doral South, LLC - $122,529.50; (iv) Landmark Club at Doral, LLC - $10,092.63.

14.     Pursuant to applicable Florida Statutes, the Special Assessments are secured by liens on the Real Property *pari passu* with ad valorem tax assessment obligations. By virtue of the Debtors' prepetition payment defaults upon the Special Assessments, as of the Petition Date, all amounts owed to the District by the Debtors have been accelerated and the entire amount of each Debtor's Special Assessments is currently due and owing.  The District has filed Proofs of Claim for the Special Assessments totaling $111,814,679.70 (the "**Secured District Claims**"). The District has filed an unsecured Proof of Claim for the Improvement Completion Obligation totaling $19,106,174.00 (the "**Unsecured District Claim**," collectively with the Secured District Claims, the "**District Claims**").

15.     On February 8, 2012, the Plan Proponents filed the District Creditor Plan.  After significant negotiations and discussions with the Committee and Debtors, the Plan Proponents have agreed to file an Amended District Creditor Plan.  The Amended District Creditor Plan provides for, inter alia, a sale of the Property (as defined below), the prosecution of any causes of action of the Debtors under Chapter 5 of the Bankruptcy Code by the Liquidating Trustee for the benefit of the Liquidating Trust formed pursuant to the Amended District Creditor Plan and distributions from the Liquidating Trust pursuant to the priorities dictated by the Bankruptcy Code.  The Liquidating Trust will be formed upon confirmation and will receive, subject to the Amended District Creditor Plan, the Carveout (as defined therein), the Liquidating Trust Causes of Action, including Avoidance Actions and assets excluded from the Sale proposed herein.  A Liquidating Trustee shall administer those assets, prosecute such causes of action under Chapter 5 of the Bankruptcy Code and reduce all to cash to allow distribution consistent with the Amended District Creditor Plan.

## THE SALE OF ASSETS

### A.    The Property

16.    This motion requests authority to approve and publish all procedures to effect the sale to the District, its designee or a third party purchaser (the "Sale") of the Real Property and all related personal property which includes all improvements (the "**Improvements**") owned by Debtors and/or located upon the Real Property, and such Debtors' interest, if any, in and to (i) all strips and gores of land lying adjacent to the Real Property, lands underlying any adjacent streets or roads, easements, privileges, rights-of-way, riparian and other water rights, and other appurtenances pertaining to or accruing to the benefit of the Real Property; (ii) all fixtures, equipment, furnishings and items of personal property currently located on the Real Property (the "**Personal Property**"); (iii) all licenses, permits, contract rights, development rights, and approvals pertaining to the ownership, operation and/or proposed development of the Real Property, if any; and (iv) all of Debtors' general intangible rights pertaining to ownership and/or proposed development of the Real Property (all of Debtors' interest in the Real Property, Improvements, the Personal Property and all other property and rights described in Recital B to **Exhibit "A"** are collectively referred to as the "**Property**").  However, specifically not included in this motion are certain excluded assets which consist of all cash of the Debtors, causes of action arising under chapter 5 of the Bankruptcy Code, and other unencumbered assets not part of the District's collateral (the "**Excluded Assets**").

17.    As set forth above, the Property is subject to the security interest held by the District.  A Sale of the Property to the District or its designee shall reduce the amount of the Allowed Secured District Claim by the amount of the purchase price (including any credit bid) approved by the Final Sale Order, but the sale shall not cause a merger of title.  If the Property is sold to a person or entity other than the District or its designee, then the District shall receive the proceeds of Sale in satisfaction of a portion of the Allowed Secured District Claim.  THE DISTRICT SHALL PROMPTLY TURN OVER SUCH PROCEEDS TO THE INDENTURE TRUSTEE.

**B.**     **The District Stalking Horse Bid**

18.     The District agrees to act as the "stalking horse bidder" and has presented a stalking horse bid in the amount of $67.5 million to which Cure Costs (as defined below), if any, will be added (the "**Stalking Horse Bid**").  At the Auction, if an Auction is necessary (as defined below), the District shall be entitled to credit bid up to $79 million of the District's Secured Claim (the "**Maximum Credit Bid**").  If the District is the Successful Bidder, the full amount of any credit bid by the District shall be applied dollar for dollar, toward full satisfaction of the District Claims against the Debtors, subject to the provisions of Section D.22(d) herein.  If the District is not the Successful Bidder, then the District shall be entitled to all proceeds of the Sale from the Successful Bidder at Closing (defined below), not to exceed the Secured District Claims.  The Successful Bidder shall be responsible for the full payment of all current and past due ad valorem real estate taxes.

**C.**     **Executory Contracts and Unexpired Leases**

19.     If the Debtors determine that any executory contracts or unexpired leases exist, then the Debtors shall provide the Plan Proponents with a list and copies of all executory contracts and unexpired leases relating to the ownership and operation of the Property within five (5) days of the entry of the Preliminary Sale Order.

20.     The District shall advise the Debtors no later than five (5) days prior to the Auction (as defined below) as to the executory contracts and unexpired leases to be assumed and assigned by the Debtors to the District, its designee, or the Successful Bidder as well as any such contracts and/or leases to be rejected.

21.     The Debtors did not schedule any executory contracts or unexpired leases. Should any executory contracts or unexpired leases exist, the District, its designee, or the Successful Bidder shall satisfy the amounts necessary to cure any payments required to be paid under any executory contract or unexpired leases as a condition precedent to assumption and assignment at Closing (the "**Cure Costs**"); provided, however, the District shall obtain estoppel letters as to the amount necessary to cure no later than ten (10) days prior to the Auction.  In the

event of a dispute as to the amount necessary to cure, the District shall seek an expedited hearing thereon. The District shall have the right to remove any such executory contract and/or unexpired lease from the list of contracts and/or leases to be assumed and assigned in the event the amount necessary to cure is higher than projected and/or higher than what the District is willing to pay in its sole and absolute discretion.

**D.     The Final Sale Order**

22.     The Final Sale Order shall contain terms including, without limitation, findings and conclusions that:

(a)     if the District is the Successful Bidder (as defined below), the District or its designee[3] is (i) not a successor to the Debtors; (ii) not a sponsor of any condo-conversion, and (iii) entitled to a finding that the District is a good-faith purchaser;

(b)     the District, its designee, or Successful Bidder is (i) entitled to the protections consistent with and found in 11 U.S.C. § 363(m); and (ii) that the sale of the Property is final and not subject to reversal or modification on appeal;

(c)     the sale was conducted in good-faith and at arms length; and

(d)     the Property shall be free and clear of all liens, claims, interests and encumbrances with all valid lien claims and encumbrances to attach to the proceeds of sale. However, in the event the District or its designee is the Successful Bidder the Property shall be conveyed without prejudice or waiver of any rights to enforce, or cause the enforcement of, the collection of any delinquent installments of the Special Assessments securing the Bonds not satisfied by the Sale, against all third parties other than the Debtors and their affiliates, including but not limited to future accelerated principal amounts, interest, penalties, or other amounts arising from any future delinquent payments.

23.     The Final Sale Order shall also be conditioned upon, subject to, incorporate and preserve all the rights and protections resulting from the entry of an order confirming the Amended District Creditor Plan (the "**Confirmation Order**") and the Sale shall be deemed a

---

[3] The District will likely direct and designate post sale that title to the Property be conveyed into a special purpose entity owned by some combination of the Plan Proponents.

sale "under a plan confirmed under section 1129 of [the Bankruptcy Code]". 11 U.S.C. § 1146(a); see Florida Dept. of Revenue v. Piccadilly, 128 S. Ct. 2326 (2008).

## BID PROCEDURES

24.     The Plan Proponents seek to sell the Property through an auction to the highest and best bidder subject to the terms and conditions provided herein (the "**Auction**"). The Debtors' Estates shall sell the Property to the Successful Bidder (as defined below) at the Auction, if necessary. There shall only be an Auction if there is at least one Qualified Bidder (as defined below), other than the District's Stalking Horse Bid. In the event there is no Qualified Bid other than Stalking Horse Bid, the Debtors and Plan Proponents shall seek the immediate entry of the Final Sale Order approving the Stalking Horse Bid as the Successful Bid and approving the District or its designee as the Successful Bidder.

25.     The Debtors' Estates shall close the Sale with the Successful Bidder within five (5) days of entry of the Final Sale Order. In no event shall the Auction occur more than fourteen (14) days prior to or after the entry of Confirmation Order.

26.     The District proposes the following procedures (the "**Bid Procedures**"):

(a)     **Qualified Bids**. To constitute a Qualified Bid, each bidder other than the District must deliver to each of the respective counsel for the Plan Proponents, counsel for the Debtors and Committee, in trust no later than 5:00 p.m. five (5) business days prior to the Auction date: (i) a signed purchase and sale contract, in form and content substantially similar to the Stalking Horse Bid Purchase Agreement attached hereto as **Exhibit "A"**, in an amount sufficient to comply with the Minimum Bid Requirements (defined below), without contingency of any kind; (ii) an earnest money deposit equal to $3,375,000 in cleared funds (a "**Deposit**"); and (iii) written evidence of financial ability to pay, free of any contingency, an amount equal to or in excess of the Minimum Bid Requirement (as defined below) within five (5) business days

prior to the Auction date (a "**Qualified Bid**").   The Plan Proponents shall have the sole discretion, with input and advice from the Committee and Debtors, to determine the eligibility of a party's Qualified Bid (a "**Qualified Bidder**").  The Plan Proponents will notify parties three (3) business days prior to the Auction date whether any bidder qualified as a Qualified Bidder.

(b)    **Minimum Bid Requirements**.   Any Qualified Bidder must make an initial bid of at least $68,000,000, plus the payment of real estate taxes as set forth in the Purchase Agreement and any Cure Costs required to be paid (the "**Minimum Bid Amount**"). The Minimum Bid Amount represents an amount sufficient to satisfy the following:   (i) administrative costs of the Debtors' estates for professional fees and costs, including costs of sale; and (ii) the Cure Costs, if any.   Any subsequent Qualified Bids to be made over the Minimum Bid Amount shall be made in increments of at least $250,000 (collectively with the Minimum Bid Amount, the "**Minimum Bid Requirements**").  The Sale Notice shall contain the Minimum Bid Amount and the Minimum Bid Requirements.

(c)    **Earnest Money Deposit**.   The Deposit required shall be payable by cashier's or certified check, payable to "Arnstein & Lehr LLP as escrow agent" or by wire transfer of immediately available funds at least five (5) full business days prior to the Auction. The Deposit, together with any interest accrued thereon, will be applied as a credit against the purchase price paid by the Buyer (defined below). At the conclusion of the Sale and upon Court approval of the winning bid, all Deposits made by Qualified Bidders other than the Buyer will be promptly returned (without interest); **provided, however, that a third party Qualified Bidder who makes the second highest and best bid (the "Back-Up Bid") shall remain the back-up bidder (the "Back-Up Bidder") until closing of the Sale.  In the event the Back-Up Bid is the Successful Bid, the Sale of the Property to the Back-Up Bidder shall close pursuant to the Bid Procedures.  In the event of a Back-Up Bidder default the District shall become the Back-up Bidder and close the Sale by credit bid in an amount equal to its last highest credit bid, but not to exceed the Maximum Credit Bid.  In the event the Successful Bidder and/or the Back-Up Bidder is unable to close the sale, the Successful Bidder and/or Back-Up**

**Bidder's Deposit shall be forfeited and distributed equally between the Plan Proponents and the Liquidating Trust established pursuant to the Amended District Creditor Plan.**

(d)    **Ability of the District to Credit Bid**.  The District's Stalking Horse Bid shall be a credit bid.  The District shall be entitled to credit bid up to the Maximum Credit Bid without complying with the Minimum Bid Requirements.  No other party shall be permitted to credit bid or shall be excused from the Bid Procedures or Minimum Bid Requirements. The District's Stalking Horse Bid is deemed accepted by the Debtors and Plan Proponents, subject to court approval by way of this motion and the Preliminary Sale Order.  The District shall be deemed a Qualified Bidder and is excused from having to comply with the provisions of subparagraph (a) above and shall be entitled to the protections of 11 U.S.C. § 363(m) if it is the Successful Bidder.

( e )    **Higher and Better Bids**.  The Auction of the Property shall be conducted on _____ **at** _____**.m**. at the offices of Arnstein & Lehr LLP located at 200 S. Biscayne Blvd., Suite 3600, Miami, Florida 33131 if, and only if, there is at least one Qualified Bidder who has met the requirements for a Qualified Bidder and been accepted as a Qualified Bidder.  At the Auction, Qualified Bidders may submit bids equal to or greater than the Minimum Bid Requirement, in increments of at least $250,000.00, until the conclusion of the Auction.  The entity that submits what the Plan Proponents believe constitutes the highest and best offer shall constitute the "Successful Bidder." The bid of the Successful Bidder (the "**Successful Bid**") shall be presented to the Court for approval on the date and time set by this Court for the final hearing to approve the sale at which time the District shall seek authority to compel the Closing of the sale of the Property to the Successful Bidder.  If the Court approves the Successful Bid, the Successful Bidder shall become the "**Buyer**."  In the event there is no Qualified Bidder other than the District, the Plan Proponents and the Debtors shall seek immediate entry of the Final Sale Order approving the Stalking Horse Bid as the Successful Bid and the District or its designee as the Successful Bidder.  The District may immediately designate another entity to take title at Closing without further Court approval or process.

(f)    **Right to Be Heard**.   The Debtors and any and all creditors, interest holders, the Committee, the United States Trustee and other parties in interest may be heard as to any and all issues regarding the Sale.

(g)    **Overbid Fee**. There shall be no Overbid Fee.

(h)    **Bankruptcy Court Approval**.   The Sale contemplated herein shall be subject to the entry of a Final Sale Order.   The Final Sale Order shall be subject to and conditioned upon the entry of the Confirmation Order and shall contain findings and conclusions, including but not limited to:

(i)    if the District is the Successful Bidder, the District or its designee is (i) not a successor to the Debtors; (ii) not a sponsor of any condo-conversion, and (iii) entitled to a finding that the District is a good-faith purchaser;

(ii)    the District, its designee, or Successful Bidder is (i) entitled to the protections consistent with and found in 11 U.S.C. § 363(m); and (2) that the Sale of the Property is final and not subject to reversal or modification on appeal;

(iii)    the Sale was conducted in good-faith and at arms length;

(iv)    the Property shall be free and clear of all liens, claims, interests and encumbrances with all valid lien claims and encumbrances to attach to the proceeds of Sale.  However, in the event the District or its designee is the Successful Bidder, the Property shall be conveyed without prejudice to or waiver of any rights to enforce, or cause the enforcement of, the collection of any delinquent installments of the Special Assessments securing the Bonds not satisfied by the Sale, against all third parties other than the Debtors and their affiliates, including but not limited to future accelerated principal amounts, interest, penalties, or other amounts arising from any future delinquent payments; and

(v)    approving the Sale and transfer of the Property to the Successful Bidder.

(i)    **Forfeit of Deposit**.  If any Buyer fails to close the purchase in accordance with the terms hereof, it will forfeit its Deposit and the Property will be sold to the Back-Up

Bidder as described in section 26(c) above.  The Buyer's forfeited Deposit shall be distributed equally between the District and the liquidating trust established pursuant to the Amended District Creditor Plan.

(j)    **No Representations**.  The Property shall be purchased on an "as is, where is" basis, with no representations or warranties (express or implied) of any kind or nature whatsoever, other than the representations and warranties contained in the Purchase Agreement when finalized.

(k)    **Due Diligence**.   Due diligence must be completed in full, without reservation, at least one (1) business day prior to the deadline to submit a Qualified Bid.

(l)    **Marketing**.  The Plan Proponents began marketing the Property prior to the Petition Date and engaged in discussions with several national public and private homebuilders, including, but not limited to:

(i)      Lennar Corporation
(ii)     Standard Pacific
(iii)    D.R. Horton.
(iv)    CCDevco
(v)     Minto Homes
(vi)    Centerline Homes
(vii)   Century Homebuilders
(viii)  JKM Developers, LLC
(ix)    Andrean Homes
(x)     Empresas VRM; and
(xi)    Priderock Capital Partners

Those discussions continued and the homebuilders identified will be formally invited to participate in the Auction process consistent with the Bid Procedures.  The Plan Proponents do not believe further marketing of the Property to additional third parties is necessary or will be effective given the limited number of existing potential Buyers that have the financial wherewithal to acquire a Property of this size and scope.

(m)    **Payment of Purchase Price**.  The purchase price for the Property as finally approved by the Court at the Sale shall be payable in full at the Closing by wire transfer of immediately available funds; provided, however, that the District shall be entitled to a credit

up to the Maximum Credit Bid and, therefore, shall not be obligated to pay cash up to the $79 million Maximum Credit Bid of the District.  The Plan Proponents shall pay any amounts owed relating to real estate taxes, Cure Costs, if any, and out-of-pocket closing costs at closing if the District is the Buyer.  The Buyer, other than the District or its designee, at the Closing shall pay all outstanding tax certificate claims in full together with all real estate taxes not reduced to certificates pursuant to applicable non-bankruptcy law through tax year 2011.  The Buyer shall assume all responsibility to pay 2012 real estate taxes when due.

(n)    **Closing**.  The Sale of the Property and transfer of title to the Successful Bidder shall be consummated at the offices of Arnstein & Lehr LLP during normal business hours no later than five (5) business days after the entry of the Final Sale Order (provided that the Confirmation Order has been entered) (the "**Closing**").  In the event the District is the Successful Bidder, the District may immediately designate another entity to take title at Closing without further Court order or process.  Prior to Closing, if necessary, the District shall file a motion if necessary to compel turnover of any deposits from all third parties, including, without limitation, any title company, agency, agents, attorneys or other third parties. The proceeds from the sale (if the District is not the Successful Bidder) shall be disbursed to the District at Closing, subject to the Carveout, not to exceed the amount of the District Secured Claim.[4]

## SALE NOTICE

27.    The District further seeks approval of **Exhibit "B"** as the form of notice of sale (the "**Sale Notice**").  The District proposes to serve the Sale Notice upon (a) the Office of the United States Trustee; (b) the Committee; (c) relevant taxing authorities; (d) all known creditors and parties in interest: (e) any and all lienholders: (f) all other parties that have expressed interest in the Real Property: (g) any party that contacted the Debtors or Committee regarding a sale of

---

[4] Pursuant to the Amended District Creditor Plan, the District shall pay all amounts required to be paid by the District under the Amended District Creditor Plan at the time of the Closing and in accordance with the confirmed Amended District Creditor Plan.

all or any portion of the Property; (h) any and all guarantors of the District Claim; (i) the Debtors; and (j) any party identified by the District or the Debtors as an interested party. The District submits that this notice procedure is reasonably appropriate in this context.

28.    For the reasons set forth in this motion, the Plan Proponents submit that the Sale of the Property is justified and appropriate as is more fully described in the Amended District Creditor Plan and Disclosure Statement. The Plan Proponents request that this Court schedule a preliminary hearing to approve the Bid Procedures and Sale Notice and approve the following time line:

(a)    a preliminary hearing on this motion on or around _____, **2012** at __:__ a.m. to consider approval of the Sale Notice, the Stalking Horse Bid, and the Bid Procedures and seeking the entry of the Preliminary Sale Order approving the proffered bid procedures and sale processed.

(b)    mailing of the Sale Notice together with the Preliminary Sale Order and entry of the Preliminary Sale Order and within twenty-four (24) hours of receiving any contact information from the District regarding any additional prospective purchaser not previously noticed;

(c)    an Auction date on or around _____, **2012** at __:__ a.m.;

(d)    a final hearing date on approval of the Successful Bid within two (2) business day after the Auction date; and

(e)    an outside Closing date to occur no later than five (5) days after entry of the Final Sale Order.

(f)    a confirmation hearing date not more than fourteen (14) days before or after the last Closing date.

29.    The Plan Proponents further request waiver of the automatic operation of Federal Rule of Bankruptcy Procedure 6004.

## DISCUSSION

30.    The Plan Proponents believe that a prompt sale of the Property presents the most viable option available to maximize value of the Estates' assets for the benefit of creditors. The Plan Proponents further believe that the Auction will yield the best price in this context.

31.    This Sale Procedures Motion is being filed in conjunction with the Amended District Creditor Plan.  The Amended District Creditor Plan provides for the sale of the Property in conjunction with the Section 1146 exemption requirement of post-confirmation transfer of title from the Estates to the non-debtor purchaser. The continued escalating cost of administration, the Debtors' inability to fund its operations and extensive negotiations between the Plan Proponents, Debtors and Committee necessitate an immediate implementation of the Bid Procedures and expeditious sale process as set forth herein.  Accordingly, the Plan Proponents believe that a prompt sale of the Property pursuant to the Bankruptcy Code and Amended District Creditor Plan presents the most viable option available to maximize the value of these assets for the benefit of creditors and to reduce costs to the Estates.

### A.    Sections 105, 363(b) and 1123(b)(4) of the Bankruptcy Code

32.    The Bankruptcy Court has "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of the case, and of property of the estate."  28 U.S.C. § 1334(e).  The broad jurisdictional grant in section 1334(e) is implemented in part by section 105, which gives the Court the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a).

33.    Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." Section 1107(a) grants a debtor-in-possession the powers of a trustee in respect to various matters including sales under section 363(b) of the Bankruptcy Code.

34.    The Court's power to authorize a sale is to be exercised at its discretion, utilizing a flexible, case by case approach. In re Baldwin United Corp., 43 B.R. 905 (Bankr. S.D. Ohio

1984).  The key consideration is the court's finding that a good business reason exists for the sale. <u>Stephens Indus, Inc. v. McClung</u>, 789 F.2d 386 (6th Cir. 1986).

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business. . . . Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

<u>In re Walter</u>, 83 B.R. 14, 19-20 (9th Cir. BAP 1988), <u>citing</u> <u>In re Lionel Corp</u>, 722 F.2d 1063, 1070-71 (2nd Cir. 1983).

35.    Several sound business reasons exist for selling the Property at this time:

(a)    The Bid Procedures for the sale provide an open field for bidding which shall maximize the value of the Property.

(b)    The proposed Bid Procedures will allow the highest and best bidder to purchase the Property, thereby maximizing the return to creditors.

(c)    The sale should provide proceeds sufficient to substantially reduce the Debtors' indebtedness and the Amended District Creditor Plan will allow for a dividend to unsecured creditors.

36.    The Auction scenario should obtain the best value for the Property. Auctions generally establish that one has paid "value" for sale assets of a bankruptcy estate, where the public sale has itself been conducted in good faith. <u>In re Abbotts Dairies of Pennsylvania, Inc</u>., 788 F.2d 143 (3d Cir. 1986).

37.     Under <u>Florida Dept. of Revenue v. Piccadilly</u>, 128 S. Ct. 2326 (2008) in order to qualify for the exemptions contemplated by 11 U.S.C. § 1146(a), the sale process must be accomplished directly through a plan.   It is the Plan Proponents' intent to utilize the exemptions contemplated by 11 U.S.C. § 1146(a), and thus the Plan Proponents, with the Committee and Debtors' support, has filed the Amended District Creditor Plan.  The Sale of the Property is in contemplation and furtherance of the confirmation of the Amended District Creditor Plan.  To the extent the Bankruptcy Code and Rules may not yet reflect on their face the ability of a creditor to affect a sale free and clear of liens with the liens to attach to the proceeds, the Plan Proponents submit that <u>Piccadilly</u> mandates that sections 363 and 1123(b)(4), and to the extent necessary, section 105, of the Bankruptcy Code, grant this Court the discretion to enter the relief sought herein and the relief sought by the Plan Proponents.

**B.      Bid Procedures are Reasonable**

38.     The Plan Proponents submit that the proposed Bid Procedures are reasonable and customary for sales of this size, and are properly calculated to maximize the value of the Property.

**C.      Transfer Tax Exemption**

39.     As the Sale of the Property is in contemplation, furtherance of and subject to the confirmation of a plan of reorganization and specifically connected to the Amended District Creditor Plan, pursuant to Section 1146(a) of the Bankruptcy Code, the Plan Proponents request that the making or delivery of an instrument or instruments of transfer, any or all of which include the vesting, transfer and/or the sale of any real or personal property or any direct or indirect interest therein, not to be taxed under any law imposing any recording, registration, transfer or stamp tax or fee, or any similar tax or fee, including any applicable transfer taxes or fees, sales taxes, or mortgage recording taxes or fees.  The Plan Proponents further request that all federal, state and local governmental agencies or departments be directed to accept and abide by the terms of the transfer tax exemption as set forth herein in connection with any transfer of the Property.

D.      **Good Faith Buyer**

40.     The Plan Proponents request that the order approving the Sale provide that the successful Buyer has acquired the Property in good faith.  As the Bid Procedures and notice requirements have been established to ensure that the Buyer will be a good faith purchaser, the Plan Proponents believe that good faith is present here.  Specifically, while the District is authorized to credit bid its secured claim up to $79 million, the Court will have the opportunity to evaluate and approve all Qualified Bids, thereby assuring objectivity.  Other than District's ability to credit bid, no "special treatment" will be afforded any Qualified Bidder.  A finding that the Buyer has acted in good faith within the meaning of Section 363(m), therefore, is appropriate and the protections of Section 363(m) shall be adopted, approved and conferred upon the Buyer of the Property.

E.      **The Sale Free and Clear of All Liens is Appropriate**

41.     The Plan Proponents also request that, except to the extent otherwise provided in the Preliminary Sale Order and Final Sale Order, the Final Sale Order shall provide that the Property be sold free and clear of any interest held by any third party except as provided herein. Although the Sale of the Property is not pursuant to 11 U.S.C. § 363, the Sale incorporates the language and is consistent with, *inter alia*, Sections 363, 1129 and 1146 of the Bankruptcy Code and will seek to preserve for the benefit of the Buyer all rights, privileges and benefits of the relevant Bankruptcy Code sections.  Section 363(f) authorizes the sale of the Property to be free and clear of interests in such Property held by an entity if:

(a)     Applicable non-bankruptcy law permits a sale of such property free and clear of such interests;

(b)     Such entity consents;

(c)     Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)     Such interest is in bona fide dispute; or

(e)     Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

42.     The Plan Proponents believe that all other parties that asserted or may assert liens on the Property, including the District, have consented, or will consent, to the Sale of the Property.  The Plan Proponents also have given notice of this proposed Sale to entities with apparent or alleged liens on the Property.  Thus, the Sale of the Property will be appropriately free and clear of liens consistent with section 363(f) of the Bankruptcy Code; the liens and claims of any entity claiming an interest in the Property shall attach to the sales proceeds with the same validity and priority as exist under state law consistent with section 363(e), which ensures each creditor is adequately protected.    Finally, the Plan Proponents believe the sale proceeds will fall short of satisfying the Secured District Claims.  Hence, all subordinate lien holders' liens will have no value and shall be rendered unsecured pursuant to 11 U.S.C. § 506.

43.     Upon Closing, as contemplated and except as provided above, the Plan Proponents propose that the Buyer take title to and possession of the Property free and clear of (a) any security interests, liens or encumbrances of any kind, except to the extent otherwise provided herein, including any administrative expenses or priority claim asserted herein and any interest of a party to a title retention arrangement intended as security, (b) any demands or claims of creditors of, or claims against, the Debtors, (c) any interests of shareholders or other interests in the Debtors, and (d) any person claiming through, by or on behalf of the Debtors, whether such claim, demand, lien or interest be direct or indirect, known or unknown, or claiming that the purchaser is a successor or successor-in-interest or pursuant to any other theory; **provided, however, that any such Buyer shall not be relieved of liability, if any, with respect to obligations accruing under the assumed contracts and leases from and after Closing**.

44.     The Plan Proponents request the Final Sale Order contain a waiver of the provisions of Federal Rule of Bankruptcy Procedure 6004(g).

**F.**     **Relief from the Automatic Stay**

45.     The Bankruptcy Court has previously granted partial relief from the automatic stay to the District by order dated December 9, 2011 [ECF No. 75].  The Plan Proponents, Debtors, Committee and Terra hereby agree that the Bankruptcy Court shall grant the District full

relief from the automatic stay in the Preliminary Sale Order in the event that the Amended District Creditor Plan is not confirmed and the Sale does not occur before August 1, 2012. If the Amended District Creditor Plan is not confirmed and the Sale does not occur before August 1, 2012, the District may proceed to complete its foreclosure process, including, but not limited to, selling the Property at foreclosure sale, without further order from the Bankruptcy Court.[5]

## **CONCLUSION**

46.    The Bid Procedures will allow the Debtors' Estates to sell the Property and the Buyer or its designee to assume and assign, if any, the necessary executory contracts and leases. The Plan Proponents believe that the procedures for authorizing the sale of the Property described herein are in the best interests of the Debtors' creditors and other interested parties, will facilitate and expedite the sale process and, in turn, will maintain and preserve the value of the Property for the benefit of all creditors in this case. The Plan Proponents believe that the Sale of the Property is necessary and justified under the circumstances and Bankruptcy Code. Finally, the Sale is being proposed in conjunction with the Amended District Creditor Plan and shall inure to the benefits, rights and privileges related to the confirmation of the Amended District Creditor Plan.

**WHEREFORE**, **LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT**, a local unit of special purpose government, **U.S. BANK NATIONAL ASSOCIATION**, solely as indenture trustee with regard to the Bonds and under their Indenture, and **FLORIDA PRIME HOLDINGS, LLC**, respectfully request that the Court enter the Preliminary Sale Order that specifically (i) approves the Bid Procedures set forth herein; (ii) approves the Sale Notice; (iii) approves the Stalking Horse Bid and Purchase Agreement attached hereto as **Exhibit "A"**; (v) approves the Auction process or otherwise sets the Auction date; (vi) sets a date by which any objections to the proposed Sale must be filed; (v) when

---

[5] In the event the Amended District Creditor Plan is not confirmed, the Plan Proponents are relieved from any and all obligations and requirements to fund or make payments as set forth in the Amended District Creditor Plan or herein.

appropriate, enter the Final Sale Order granting the Estates authority to sell and compelling the Closing of the sale of the Property to the Successful Bidder; (vi) shorten any and all applicable deadlines if necessary and (vii) grant such other and further relief as the Court deems just and proper.

Dated:  March 23, 2012                            Respectfully submitted,

**STEARNS WEAVER MILLER WEISSLER**          **ARNSTEIN & LEHR LLP**
**ALHADEFF & SITTERSON, P.A.**              Attorneys for Florida Prime Holdings, LLC
*Counsel for the District*                   200 South Biscayne Boulevard, Suite 3600
Museum Tower, Suite 2200                      Miami, Florida 33131
150 West Flagler Street                       Telephone: 305-374-3330
Miami, Florida 33130                          Facsimile: 305-374-4777
Phone: (305) 789-3553                         E-Mail: pmhudson@arnstein.com
Fax: (305) 789-3395
By: */s/ Patricia A. Redmond* (with permission)    By: /s/ Phillip M. Hudson
    PATRICIA A. REDMOND                       Phillip M. Hudson III
    Florida Bar No. 303739                    Florida Bar No. 518743
    predmond@stearnsweaver.com

**GREENBERG TRAURIG, P.A.**
333 Avenue of the Americas
Miami, Florida 33131
Telephone: (305) 579-0730
Facsimile: (305) 579-0717

By: */s/ John B. Hutton, III* (with permission)
    John B. Hutton, III
    huttonj@gtlaw.com
    Florida Bar No. 902160
    John R. Dodd
    doddj@gtlaw.com
    Florida Bar No. 38091

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true and correct copies of the following document were served as follows: (i) via transmission of Notices of Electronic Filing generated by CM/ECF to those counsel or parties who are registered to receive Notice of Electronic Filing in this case as each document was entered on the docket, and (ii) via U.S. Mail (without exhibits)[1] to those parties not registered to receive Notice of Electronic Filing in this case, on March 23, 2012, as indicated on the Service List attached hereto.

By: /s/ Phillip M. Hudson
Phillip M. Hudson III

## SERVICE LIST

*Via CM/ECF*

Jere L. Earlywine
*jearlywine@hgslaw.com*
*Counsel for Florida Prime Holdings, LLC*

C Craig Eller
*celler@broadandcassel.com*
*Counsel for AmT CADC Venture, LLC*

Jordi Guso
*jguso@bergersingerman.com*
*fsellers@bergersingerman.com*
*efile@bergersingerman.com*
*Counsel for Terra World Investments, LLC*

Phillip M. Hudson III
*pmhudson@arnstein.com; rkcummings@arnstein.com*
*jtunis@arnstein.com; hbabcock@arnstein.com*
*hpiloto@arnstein.com; akang@arnstein.com*
*befernandez@arnstein.com*
*Counsel for Florida Prime Holdings, LLC*

John B. Hutton III
*huttonj@gtlaw.com; thompsonc@gtlaw.com*
*mialitdock@gtlaw.com; miaecfbky@gtlaw.com*
*Counsel for U.S. Bank National Association as Trustee*

Mindy A. Mora
*mmora@bilzin.com; laparicio@bilzin.com*
*cvarela@bilzin.com; eservice@bilzin.com*
*lflores@bilzin.com; abeck@bilzin.com*
*Counsel for Landmark Club at Doral, LLC*

Glenn D Moses
*gmoses@gjb-law.com; gjbecf@gjb-law.com*
*Counsel for Committee Creditor Committee*

Office of the US Trustee
*USTPRegion21.MM.ECF@usdoj.gov*

Melinda S Thornton
*cao.bkc@miamidade.gov*
*Counsel for Miami-Dade County Tax Collector*

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case, who will therefore be served via U.S. Mail.

Michael Eckert
119 S. Monroe Street #300 (32301)
POB 6526
Tallahassee, FL 32314

Daniel Y. Gielchinsky
1450 Brickell Ave #2300
Miami, FL 33131

Betty M Shumener
550 South Hope St #2300
Los Angeles, CA 90071

Steven D. Schneiderman
51 SW First Avenue
Suite 1204
Miami, FL 33130
*Attorney for U.S. Trustee's Office*

Town Center at Doral, L.L.C.
c/o Steven Amster, Esq.
Kodsi Law Firm, P.A.
701 W. Cypress Creek Road
Suite 303
Ft. Lauderdale, FL 33309
*Debtor*

/s/Phillip M.  Hudson III
Phillip M. Hudson III

10041891.3