**ORDERED in the Southern District of Florida on** _April 20, 2012_



Robert A. Mark, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                Chapter 11

TOWN CENTER AT DORAL, L.L.C.,                         Case No. 11-35884-RAM
*et al.,*                                             Jointly Administered

        Debtors.

_____/

## ORDER (I) AUTHORIZING THE SALE OF THE DEBTORS' ASSETS OUTSIDE OF ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBERANCES, (II) ESTABLISHING SALE PROCEDURES, (III) SCHEDULING SALE AND SALE HEARING DATE, (IV) APPROVING SALE AND BID PROCEDURES AND CERTAIN BID PROTECTIONS, AND (V) APPROVING FORM OF NOTICE AND SHORTENED NOTICE [ECF NO. 280]

THIS MATTER came before the Court on April 12, 2012, on motion of Landmark at

Doral Community Development District (the **"District"**), U.S. Bank National Association solely

as indenture trustee with regard to the Bonds and under their Indenture (**"Indenture Trustee"**),

and Florida Prime Holdings, LLC (**"Florida Prime"**) (collectively the **"Plan Proponents"**) for authority to (i) sell the Debtors' assets outside of ordinary course of business, free and clear of all liens, claims, and encumbrances, (ii) establish sales procedures, (iii) set a hearing date on sale, (iv) approve form of notice and shortened notice all in connection with joint plan of reorganization by the Plan Proponents (the "Plan") [ECF No. 281] (the **"Sale Motion"**) [ECF No. 280]; and the Court having reviewed the file, having heard argument of counsel, and it appearing that good and sufficient notice of the Sale Motion has been given (and to the extent notice has not been timely given, adequate opportunity for review and objection is provided for herein); the Court having concluded that there is good and sufficient cause in support of granting the relief requested in the Sale Motion and the entry of this Order, that such relief is in the best interest of the Debtors, their estates, their creditors and all parties in interest, and that such relief will not unduly prejudice any other parties-in-interest in this Chapter 11 case, there being no objection raised, other than the limited objection of the Miami-Dade County Tax Collector, and the Court being otherwise fully advised in the premises, the Court finds as follows:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction over this matter and the parties and property affected thereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Unless otherwise provided, all capitalized terms herein shall be given their

respective meanings as defined in the Sale Motion.

C.     The statutory predicates for the relief sought in the Sale Motion include sections 105, 363, 1107, 1108 and 1123 of the Bankruptcy Code, as supplemented by the applicable Federal Rules of Bankruptcy Procedure including 2002, 4001, 6004 and 6006, and Local Bankruptcy Rules for the Southern District of Florida including 2002 and 6004-1.

D.     The Plan Proponents have articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion regarding the sales process, including (i) approval of the Bid Procedures[1], (ii) approval of the Stalking Horse Bid and APA, and (iii) approval of the Sale Notice.

E.     The Plan Proponents have articulated good and sufficient reasons for, and the best interests of the Debtors' Estates will be served by this Court scheduling an Auction and Final Sale Hearing to consider whether to grant the remainder of the relief sought in the Sale Motion, including approval of the Sale of the Property pursuant to the Stalking Horse Bid or any other Successful Bid free and clear of claims, liens, interests and encumbrances subject to limited exceptions more fully set forth in the Sale Motion and Plan, with same to attach to the proceeds of Sale, to the extent provided for herein.

F.     The Plan Proponents have articulated good and sufficient reasons for approving (i) the bid procedures as set forth on Exhibit "A" (the "**Bid Procedures**"), (ii) the bid protections as provided in the Stalking Horse Bid Purchase Agreement attached to the Motion as exhibit A [ECF No. 280-1] (the "**Asset Purchase Agreement" or "APA**"), (iii) the manner of notice of the Sale Motion and the final hearing to consider the approval of the Sale (the "**Sale Hearing**"), (iv) the proposed assumption and assignment of executory contracts and leases, if any, including

---

[1]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Sale Motion.

any of the cure amounts, and (v) the scheduling of the Sale Hearing.

G.      The Bid Procedures are reasonable and appropriate and represent the best method for maximizing the value of the Property.

Therefore, it is –

**ORDERED** as follows:

1.      The District will act as the "stalking horse bidder", and the District's Stalking Horse Bid and the APA in the amount of $67.5 million to which the payment of certain Cure Costs (as defined below), if any, will be added (the "**Stalking Horse Bid**") is approved. At the Auction, if an Auction is necessary, the District shall be entitled to credit bid up to $79 million of the District's Secured Claim (the "**Maximum Credit Bid**"). If the District is the Successful Bidder, the full amount of any credit bid by the District shall be applied dollar for dollar, toward satisfaction of the Secured District Claim against the Debtors, but the Sale shall not be free and clear of all liens claims and encumbrances, as the Property shall be conveyed without prejudice to, or waiver of, any rights to enforce, or cause the enforcement of, the collection of any delinquent installments of the Special Assessments securing the Bonds not satisfied by the Sale, against all third parties other than the Debtors and their affiliates, including but not limited to future accelerated principal amounts, interest, penalties, or other amounts arising from any future special assessments, O&M assessments, or any lien to enforce such preserved assessments. If the District is not the Successful Bidder, then the District shall be entitled to all proceeds of the Sale from the Successful Bidder at Closing (defined below), subject to the Carveout, not to exceed the Secured District Claims and the Property shall be sold free and clear of all liens, claims, and encumbrances except as to easements of record. The Successful Bidder shall be responsible for the full payment of all current and past due ad valorem real estate taxes at Closing of the Sale (approximately $2 million) and for payment of any Cure Costs if applicable.

2.      The sale assets shall consist of substantially all of the Debtors' assets including

without limitation, several parcels of real property making up approximately 120 contiguous acres, generally located in Miami-Dade County Florida on the east side of NW 107 Avenue and the north side of NW 58 Street,, being more particularly described and identified as parcels A, B, C, D and E on **Composite Exhibit "A"** attached hereto, subject to all easements of record including but not limited to those in favor of the District (the "**Real Property**"), which term is used to and includes all improvements (the "**Improvements**") owned by the Debtors and located upon the Real Property and such Debtors' interest, if any, in and to (i) all strips and gores of land lying adjacent to the property, lands underlying any adjacent streets or roads, easements, privileges, rights-of-way, riparian and other water rights, and other appurtenances pertaining to or accruing to the benefit of the Real Property; (ii) all fixtures, equipment, furnishings and items of personal property currently located on the Real Property, if any (the "**Personal Property**"); (iii) all licenses, permits, contract rights, development rights, and approvals pertaining to the ownership operation and/or proposed development of the Real Property, if any; and (iv) all of the Debtors' general intangible rights pertaining to ownership and proposed development of the Real Property (all of Debtors' interest in the Real Property, Improvements, the Personal Property and all other property and rights described in this paragraph are collectively referred to as the "**Property**").

3.      The Debtors' are authorized to sell the Property through an Auction, if necessary, to the highest and best bidder subject to the terms and conditions provided herein (the "**Auction**"). The Debtors' Estates shall sell the Property to the Successful Bidder (as defined below) at the Auction, if necessary. There shall only be an Auction if there is at least one Qualified Bidder (as defined below), other than the District's Stalking Horse Bid. In the event there is no Qualified Bid other than Stalking Horse Bid, the Debtors and Plan Proponents shall seek the immediate entry of the Final Sale Order and Confirmation Order approving the Stalking Horse Bid as the Successful Bid and approving the District or its designee as the Successful Bidder.

4.     The Debtors' Estates shall close the Sale with the Successful Bidder within five (5) days after entry of both the Final Sale Order and the Confirmation Order.  If the Amended District Creditor Plan is not confirmed and the Closing of the Sale does not occur before August 1, 2012, the District shall have full relief from the automatic stay, and may proceed to complete its foreclosure process, including, but not limited to, selling the Property at foreclosure sale, without further order from the Bankruptcy Court.[2]  The District may presently take any and all action necessary to set a foreclosure sale date after August 1, 2012 to avoid further delay.

5.     The Bid Procedures sought in the Sale Motion are approved and are as follows:

(a)     **Qualified Bids**.  To constitute a Qualified Bid, each bidder other than the District must deliver to each of the respective counsel for the Plan Proponents, counsel for the Debtors and the Committee, no later than 5:00 p.m. five (5) business days prior to the Auction date: (i) a signed purchase and sale contract, in form and content substantially similar to the Stalking Horse Bid Purchase Agreement, in an amount sufficient to comply with the Minimum Bid Requirements (defined below), without contingency of any kind; (ii) in trust, an earnest money deposit equal to $3,375,000 in clear funds (a "**Deposit**"); and (iii) written evidence of financial ability to pay, free of any contingency, an amount equal to or in excess of the Minimum Bid Requirement (as defined below) within five (5) business days prior to the Auction date (a "**Qualified Bid**"). The Plan Proponents shall have the sole discretion, with input and advice from the Committee and Debtors, to determine the eligibility of a party's Qualified Bid (a "**Qualified Bidder**"). The Plan Proponents will notify parties three (3) business days prior to the Auction date whether any bidder qualified as a Qualified Bidder.

---

[2]  In the event the Amended District Creditor Plan is not confirmed, the Plan Proponents are relieved from any and all obligations and requirements to fund or make payments as set forth in the Amended District Creditor Plan or herein.

(b)    **Minimum Bid Requirement**. Any Qualified Bidder must make an initial bid of at least $68,000,000, plus the payment of real estate taxes as set forth in the APA and any Cure Costs required to be paid, if any (the "**Minimum Bid Amount**"). The Minimum Bid Amount represents an amount sufficient to satisfy the following: (i) administrative costs of the Debtors' estates for professional fees and costs, including costs of sale; and (ii) the Cure Costs, if any. Any subsequent Qualified Bids to be made over the Minimum Bid Amount shall be made in increments of at least $250,000 (collectively with the Minimum Bid Amount, the "**Minimum Bid Requirements**"). The Sale Notice shall contain the Minimum Bid Amount and the Minimum Bid Requirements.

(c)    **Earnest Money Deposit**. The Deposit required shall be payable by cashier's or certified check, payable to "Arnstein & Lehr LLP as escrow agent" or by wire transfer of immediately available funds at least five (5) full business days prior to the Auction. The Deposit of the Buyer, together with any interest accrued thereon, will be applied as a credit against the purchase price paid by the Buyer (defined below). At the conclusion of the Sale and upon Court approval of the winning bid, all Deposits made by Qualified Bidders other than the Buyer will be promptly returned (without interest); **provided, however, that a third party Qualified Bidder who makes the second highest and best bid (the "Back-Up Bid") shall remain the back-up bidder (the "Back-Up Bidder") until Closing of the Sale. In the event the Back-Up Bid is the Successful Bid, the Sale of the Property to the Back-Up Bidder shall close pursuant to the Bid Procedures. In the event of a Back-Up Bidder default the District shall become the final Back-up Bidder and close the Sale by credit bid in an amount equal to its last highest credit bid, but not to exceed the Maximum Credit Bid. In the event the Successful Bidder and/or the Back-Up Bidder is unable to Close the Sale, the Successful Bidder and/or Back-Up Bidder's Deposit shall be forfeited and distributed equally between the Plan Proponents and the Liquidating Trust established pursuant to the Amended District Creditor Plan. The District shall then immediately Close the Sale.**

(d)    **Ability of the District to Credit Bid**.  The District's Stalking Horse Bid shall be a credit bid. The District shall be entitled to credit bid up to the Maximum Credit Bid of $79 million without complying with the Minimum Bid Requirements. No other party shall be permitted to credit bid or shall be excused from the Bid Procedures or Minimum Bid Requirements. The District's Stalking Horse Bid is deemed accepted by the Debtors and Plan Proponents, subject to Court approval by way of this motion and the Preliminary Sale Order. The District shall be deemed a Qualified Bidder and is excused from having to comply with the provisions of subparagraph (a) above and shall be entitled to all benefits and protections of 11 U.S.C. § 363(m) if it is the Successful Bidder.

(e)    **Higher and Better Bids**. The Auction of the Property shall be conducted on June 15, 2012 at 10:00 a.m., at the offices of Arnstein & Lehr LLP located at 200 S. Biscayne Blvd., Suite 3600, Miami, Florida 33131 if, and only if, there is at least one Qualified Bidder who has met the requirements for a Qualified Bidder and been accepted as a Qualified Bidder. At the Auction, Qualified Bidders may submit bids equal to or greater than the Minimum Bid Requirement, in increments of at least $250,000.00, until the conclusion of the Auction. The entity that submits what the Plan Proponents believe constitutes the highest and best offer shall constitute the "Successful Bidder." The bid of the Successful Bidder (the "**Successful Bid**") shall be presented to the Court for approval at the Sale Hearing scheduled for June 18, 2012, at 2:00 p.m., at which time the District shall seek authority to compel the Closing of the Sale of the Property to the Successful Bidder. If the Court approves the Successful Bid, the Successful Bidder shall become the "Buyer." In the event there is no Qualified Bidder other than the District, the Plan Proponents and the Debtors shall seek immediate entry of the Final Sale Order and Confirmation Order approving the Stalking Horse Bid as the Successful Bid and the District or its designee as the Successful Bidder. The District may immediately designate another entity to take title at Closing without further Court approval or process.

(f)  **Right to Be Heard**.  The Debtors and any and all creditors, interest holders, the United States Trustee and other parties in interest may be heard as to any and all issues regarding the Sale.  Any actual or potential bidder that believes it was wrongly denied eligibility to be a Qualified Bidder (as defined in paragraph 5(a)) and any Qualified Bidder that objects to how the Auction was conducted, or objects to the Plan Proponents' determination of which Qualified Bidder was the Successful Bidder (as defined in paragraph 5(e)) will be allowed to present these objections at the June 18, 2012 Sale Hearing scheduled in paragraph 5(i) of this Order.

(g)  **Overbid Fee**.  There shall be no Overbid Fee.

(h)  **Bankruptcy Court Approval**.  The Sale contemplated herein shall be subject to the entry of a Final Sale Order. The Final Sale Order shall be subject to and conditioned upon the entry of the Confirmation Order and shall contain findings and conclusions, including but not limited to:

> (i)   if the District is the Successful Bidder, the District or its designee is (i) not a successor to the Debtors; (ii) not a sponsor of any condo-conversion, and (iii) entitled to a finding that the District is a good-faith purchaser;
>
> (ii)  the District, its designee, or Successful Bidder is (i) entitled to the benefits and protections consistent with and found in 11 U.S.C. § 363(m); and (ii) that the Sale of the Property is final and not subject to reversal or modification on appeal, unless the Sale Order is stayed pending appeal;
>
> (iii) the Sale was conducted in good-faith and at arms length;
>
> (iv)  the Property shall be free and clear of all liens, claims, interests and except easements of record and subject to any valid senior liens not otherwise satisfied at closing with all valid lien claims and encumbrances to attach to the proceeds of Sale.[3] However, in the event the District or its

---

[3] Neither the Plan Proponents, Debtors or Committee expect any secured claim other the District Secured Claim shall receive payment on its secured claim and all subordinate claims will therefore be rendered unsecured if that proves to be the case at Auction.

designee is the Successful Bidder, the Property shall be conveyed without prejudice to, or waiver of, any rights to enforce, or cause the enforcement of, the collection of any installments of the Special Assessments and liens securing the Bonds not satisfied by the Sale, and future O&M assessments and liens, against all third parties other than the Debtors and their affiliates, including but not limited to future accelerated principal amounts, interest, penalties, or other amounts arising from any future delinquent payments of special assessments or O&M charges; and

(v)     approving the Sale and transfer of the Property to the Successful Bidder.

(i)     **Final Hearing, Confirmation Hearing and Final Sale Order**.  On June 18, 2012 at 2:00 p.m., the Court will hold the Sale Hearing and the confirmation hearing at 51 S.W 1st Ave., Room 1406, Miami, FL 33130 to review, consider and approve the Auction results, if any, and enter a Final Sale Order approving the Successful Bid and authorizing the Debtor to Close the Sale of the Sale Assets to the Successful Bidder, and enter a Confirmation Order.  The Final Sale Order will also contain findings and conclusions that (a) the Sale, including negotiations between the District and the Debtors, was conducted in good faith and at arms-length, (b) the sale of assets shall be free and clear of all liens, claims, and encumbrances pursuant to Sections 363(b) and (f) of the Bankruptcy Code, with liens to attach to proceeds of sale, except as otherwise reserved and provided for herein, and (c) the Purchaser is a good faith purchaser pursuant to section 363(m), and entitled to the benefits and protections of section 363(m).

(j)     **Forfeit of Deposit**.  If any Buyer fails to close the purchase in accordance with the terms hereof, it will forfeit its Deposit and the Property will be sold to the Back-Up Bidder. The Buyer's forfeited Deposit shall be distributed equally between the District and the liquidating trust established pursuant to the Amended District Creditor Plan.

(k)     **No Representations**.  The Property shall be purchased on an "as is, where is" basis, with no representations or warranties (express or implied) of any kind or nature

whatsoever, other than the representations and warranties contained in the APA when finalized.

(l) **Due Diligence**. Due diligence must be completed in full, without reservation, at least one (1) business day prior to the deadline to submit a Qualified Bid.

(m) **Marketing**. The Plan Proponents' marketing of the Property prior to the Petition Date is deemed proper and sufficient based on the scope and size of the Property. The homebuilders identified below shall be formally invited to participate in the Auction process consistent with these Bid Procedures in addition to any other party that has expressed an interest in the Property:

(i)     Lennar Corporation
(ii)    Standard Pacific
(iii)   D.R. Horton.
(iv)    CCDevco
(v)     Minto Homes
(vi)    Centerline Homes
(vii)   Century Homebuilders
(viii)  JKM Developers, LLC
(ix)    Andrean Homes
(x)     Empresas VRM; and
(xi)    Priderock Capital Partners
(xii)   G.L. Homes
(xiii)  Shoma Homes

(n) **Payment of Purchase Price**. The purchase price for the Property as finally approved by the Court at the Sale shall be payable in full at the Closing by wire transfer of immediately available funds; provided, however, that the District shall be entitled to a credit up to the Maximum Credit Bid and, therefore, shall not be obligated to pay cash up to the $79 million Maximum Credit Bid of the District. The Plan Proponents through Florida Prime shall pay any amounts owed relating to real estate taxes, Cure Costs, if any, and out-of-pocket Closing costs at Closing if the District is the Buyer. The Buyer, if other than the District or its designee, at the Closing shall pay all outstanding tax certificate claims in full together with all real estate

taxes not reduced to certificates pursuant to applicable non-bankruptcy law through tax year 2011 consistent with Florida law and procedure. The Buyer shall assume all responsibility to pay 2012 real estate taxes and all future tax claims and future O&M assessments when due.

        (o)    **Closing**. The Sale of the Property and transfer of title to the Successful Bidder shall be consummated at the offices of Arnstein & Lehr LLP during normal business hours no later than five (5) business days after the entry of the Final Sale Order (provided that the Confirmation Order has been entered) (the "**Closing**"). In the event the District is the Successful Bidder, the District may immediately designate another entity to take title at Closing without further Court order or process. Prior to Closing, if necessary, the District shall file a motion if necessary to compel turnover of any deposits from all third parties, including, without limitation, any title company, agency, agents, attorneys or other third parties. The proceeds from the Sale (if the District is not the Successful Bidder) shall be disbursed to the District at Closing, subject to the Carveout, not to exceed the amount of the District Secured Claim.

      6.    The form of the Sale Notice annexed to this Order as Exhibit "B" is approved. The Plan Proponents are authorized and directed to serve a copy of this Order, including the Sale Notice, by first class mail upon (a) the Office of the United States Trustee; (b) the Committee; (c) relevant taxing authorities; (d) all known creditors and parties in interest: (e) any and all lienholders: (f) all other parties that have expressed interest in the Real Property including, but not limited to, those parties listed in paragraph 5(m) above; (g) any party that contacted the Debtors or Committee regarding a sale of the Property; (h) any party whom the Debtors contacted regarding a sale of all or any portion of the Property; (i) any and all guarantors of the District Claim; (j) the Debtors; and (k) any party identified by the District or the Debtors as an interested party. Any party wishing to bid on the Property must comply with the terms and conditions described in this Order, the Sale Motion and the Sale Notice. **Only parties that fully comply with such Sale Notice and Bid Procedures will be permitted to bid on the Property**.

      7.    Any creditor or party in interest may file an objection to the procedures set forth

in this Order within fourteen (14) days of entry of this Order. The failure to file a timely written objection as provided herein shall be deemed a full and complete waiver of such objection, and any such person who fails to file a timely written objection shall be forever barred from asserting or raising, any objection, claim, right or interest relative to this Order. If an objection is timely filed, it shall neither prevent the Auction from taking place nor prevent the Court from conducting a Final Sale Hearing to approve the Sale, unless otherwise ordered by this Court. This deadline shall not apply to bidders or potential bidders who have objections as described in paragraph 5(f) above.

8.      Within five (5) days of the entry of this Order, the Debtors shall serve the Plan Proponents with a list and copies of all existing executory contracts and unexpired leases, if any, relating to the ownership and operation of the Property. Any Qualified Bidder, including the District, shall advise the Debtor no later than five (5) days prior to the Auction as to the executory contracts and unexpired leases to be assumed and assigned, if any, by the Debtors to the District or the Successful Bidder as well as any such contracts and/or leases to be rejected. The District or any Successful Bidder shall satisfy the amounts necessary to "cure" any payments required to be paid under any executory contract or unexpired leases as a condition precedent to assumption and assignment of any such executory contract or lease at Closing (the "**Cure Costs**"); provided, however, the Debtor shall obtain estoppel letters as to the amount necessary to cure no later than ten (10) days prior to the Auction. In the event of a dispute as to the amount necessary to cure, the Debtor shall seek an expedited hearing thereon. The District and/or any Successful Bidder shall have the right to remove any such executory contract and/or unexpired lease from the list of contracts and/or leases to be assumed and assigned in the event the amount necessary to cure is higher than projected and/or higher than what the District and/or any Successful Bidder is willing to pay in its sole and absolute discretion. The Successful Bidder shall be responsible for paying all cure amounts in cash at Closing as a condition precedent to receiving an assignment of any of the assumed Contracts.

9.      The Debtor is further authorized, empowered and directed to take such additional

and other steps as may be necessary or appropriate to effectuate the Bid Procedures contained in the Sale Notice and this Order.

10.     Any objections to the proposed Sale of the Property must be filed with the Bankruptcy Court, and served (so as to be received) on counsel for the Debtors, counsel for the Committee, and the Plan Proponents' respective counsel, no later than five (5) business days prior to the Final Sale Hearing. The failure of any person or entity to timely file an objection shall be a bar to the assertion of any objection to the relief sought in the Sale Motion or the consummation and performance of the Sale contemplated thereunder.

11.     The Sale of the Property and the Auction are in conjunction with the Amended District Creditor Plan, and the Plan Proponents are authorized to seek confirmation of the Amended District Creditor Plan simultaneously with the issuance of the Final Sale Order, and thereby qualify for the exemption contemplated under §1146(a) of the Bankruptcy Code.

12.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

## COMPOSITE EXHIBIT A

## LEGAL DESCRIPTION

**Parcel "A" (Tax ID No.35-3017-001-0241) owned by Debtor 1:**

The East 415.00 feet of Tracts 24, 33, 34, 35 and 36, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida.

LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

**Parcel "B" (Tax ID No. 35-3017-001-0240) owned by Debtor 2:**

Tracts 24, 25, 33, 34, 35, 36, 45, 46, 47 and 48; LESS all the Roads Right-of-Ways of record, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, Florida, which lies within the West ½ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida; LESS the East 415.00 feet of Tracts 24, 33, 34, 35 and 36, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida; and LESS that portion of Tract 45 deeded to Miami-Dade County by Special Warranty Deed recorded September 3, 1996 in Official Records Book 17336, Page 459, of the Public Records of Miami-Dade County, Florida.

AND LESS:

A portion of Tract 25, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, which lies within the Northwest ¼ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida. More particularly described as follows:

Commence at the Northwest corner of said Section 17, thence S 01º43'09" E along the West line of said Section 17 for a distance of 2,309.44 feet; thence N 89º40'03" E along the North line of said Tract 25 for 690.19 feet; thence S 00º19'51" E for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of land, thence N 89º40'03" E for 301.52 feet; thence S 00º19'51" E for 92.18 feet; thence N 89º40'09" E for 18.00 feet; thence S 00º19'51" E for 128.67 feet; thence S 89º40'09" W for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N 47º51'32" E; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96º22'46" for a distance of 100.93 feet to a point on a non-tangent line; thence S 89º40'09" W for 129.49 feet; thence N 00º19'51" W for 128.67 feet; thence N 89º40'09" E for 18.00 feet; thence N 00º19'51" W for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official

Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

### Parcel "C" (Tax ID No.35-3017-001-0362) owned by Debtor 3:

The West 739.33 feet of Tracts 41, 42, 43 and 44, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, In Section 17, Township 53 South, Range 40 East, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, Florida; LESS all Road Right-of-Ways of record, and LESS that portion of Tracts 41, 42, 43 and 44 deeded to Miami-Dade County by Special Warranty Deed recorded August 23, 1996 in Official Records Book 17336, Page 459, LESS AND EXCEPT therefrom that portion lying at or above elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

### Parcel "D" owned by Debtor 4:

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way records and less that portion of Tracts 41, 42, 43 and 44 deeded to Miami-Dade County by Special Warranty Deed dated August 23, 1996, and recorded in Official Records Book 17336, Page 459.  Less and exception therefrom that portion lying below elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.).

Parcel "E" (Tax ID No.35-3017-001-0250) owned by Debtor 5:

A portion of Tract 25, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, which lies within the Northwest ¼ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida. More particularly described as follows:

Commence at the Northwest corner of said Section 17, thence S 01°43'09" along the West line of said Section 17 for a distance of 2,309.44 feet; thence N 89°40'03" E along the North line of said Tract 25 for 690.19 feet; thence S 00°19'51" E for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of land, thence N 89°40'03" E for 301.52 feet; thence S 00°19'51" E for 92.18 feet; thence N 89°40'09" E for 18.00 feet; thence S 00°19'51" E for 128.67 feet; thence S 89°40'09" W for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N 47°51'32" E; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96°22'46" for a distance of 100.93 feet to a point on a non-tangent line; thence S 89°40'09" W for 129.49 feet; thence N 00°19'51" W for 128.67 feet; thence N 89°40'09" E for 18.00 feet; thence N 00°19'51" W for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

9977143.7

**Exhibit B**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

In re:                                                  Chapter 11

                                                        Case No. 11-35884-RAM
TOWN CENTER AT DORAL, L.L.C.,                           Jointly Administered
*et al.,*

              Debtors.
_____/

## NOTICE OF SALE AND OPPORTUNITY TO BID

 **PLEASE TAKE NOTICE** that pursuant to the Preliminary Sale Order (i) authorizing the sale of the Debtors' assets outside of ordinary course of business, free and clear of all liens, claims, and encumbrances, (ii) establishing sale procedures, (iii) scheduling sale and sale hearing date, (iv) approving sales and bid procedures and certain bid protections, (v) approving form of notice and shortened notice, and (vi) approving the assumption, assignment of certain executory contracts and unexpired leases, (the "**Preliminary Sale Order**") [ECF No. __ ], Landmark at Doral Community Development District (the "**District**"), US Bank National Association solely as indenture trustee with regard to the Bonds and under their Indenture, and Florida Prime Holdings, LLC (collectively the "**Plan Proponents**") pursuant to the Court's Preliminary Sale Order are offering certain assets of Town Center at Doral L.L.C., *et al*. (collectively the "**Debtors**") [1] for sale.

 **PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to make an offer to purchase the Property in accordance with the Bid Procedures[2] approved by the Bankruptcy Court in the Preliminary Sale Order, attached hereto as **Exhibit 1**. Pursuant to the Bid Procedures, the Plan Proponents may conduct an Auction for the Property beginning at **10 a.m., Eastern Daylight Time, on June 15, 2012**, at Arnstein & Lehr LLP, 200 South Biscayne Boulevard, Suite 3600, Miami, FL 33131 (the "**Auction**").

 **PLEASE TAKE FURHTER NOTICE** that the terms and conditions of the Auction are generally as follows:

 1. **Sale Assets**.  The sale assets shall consist of substantially all of the Debtors' assets including without limitation, several parcels of real property making up approximately 120 contiguous acres, generally located in Miami-Dade County Florida on the east side of NW 107

---

[1] The Debtors include: Landmark at Doral East, LLC, a Florida limited liability company; Town Center at Doral, LLC, a Florida limited liability company; Landmark at Doral South, a Florida limited liability company; Landmark at Doral Developers, LLC, a Florida limited liability company; and Landmark Club at Doral LLC, a Florida limited liability company.

[2] Capitalized terms used but not otherwise defined in this notice shall have the meanings ascribed to them in the Sale Motion and Preliminary Sale Order.

Avenue and the north side of NW 58 Street subject to easements of record, (the "**Real Property**"), which term is used to and includes all improvements (the "**Improvements**") owned by the Debtors and located upon the Real Property, and such Debtors' interest, if any, in and to (i) all strips and gores of land lying adjacent to the property, lands underlying any adjacent streets or roads, easements, privileges, rights-of-way, riparian and other water rights, and other appurtenances pertaining to or accruing to the benefit of the Real Property; (ii) all fixtures, equipment, furnishings and items of personal property currently located on the Real Property, if any (the "**Personal Property**"); (iii) all licenses, permits, contract rights, development rights, and approvals pertaining to the ownership operation and/or proposed development of the Real Property, if any; and (iv) all of the Debtors' general intangible rights pertaining to ownership and proposed development of the Real Property (all of Debtors' interest in the Real Property, Improvements, the Personal Property and all other property and rights described in this paragraph are collectively referred to as the "**Property**").

2. Within five (5) days of the entry of this Order, the Debtors shall serve the Plan Proponents with a list and copies of all existing executory contracts and unexpired leases, if any, relating to the ownership and operation of the Property. Any Qualified Bidder, including the District, shall advise the Debtor no later than five (5) days prior to the Auction as to the executory contracts and unexpired leases to be assumed and assigned, if any, by the Debtors to the District or the Successful Bidder as well as any such contracts and/or leases to be rejected. The District or any Successful Bidder shall satisfy the amounts necessary to "cure" any payments required to be paid under any executory contract or unexpired leases as a condition precedent to assumption and assignment of any such executory contract or lease at Closing (the "**Cure Costs**"); provided, however, the Debtor shall obtain estoppel letters as to the amount necessary to cure no later than ten (10) days prior to the Auction. In the event of a dispute as to the amount necessary to cure, the Debtor shall seek an expedited hearing thereon. The District and/or any Successful Bidder shall have the right to remove any such executory contract and/or unexpired lease from the list of contracts and/or leases to be assumed and assigned in the event the amount necessary to cure is higher than projected and/or higher than what the District and/or any Successful Bidder is willing to pay in its sole and absolute discretion. The Successful Bidder shall be responsible for paying all cure amounts in cash at Closing as a condition precedent to receiving an assignment of any of the assumed Contracts.

## BID PROCEDURES

(a) **Qualified Bids**. To constitute a Qualified Bid, each bidder other than the District must deliver to each of the respective counsel for the Plan Proponents, counsel for the Debtors and the Committee, no later than 5:00 p.m. five (5) business days prior to the Auction date: (i) a signed purchase and sale contract, in form and content substantially similar to the Stalking Horse Bid Purchase Agreement, in an amount sufficient to comply with the Minimum Bid Requirements (defined below), without contingency of any kind; (ii) in trust, an earnest money deposit equal to \$3,375,000 in clear funds (a "**Deposit**"); and (iii) written evidence of financial ability to pay, free of any contingency, an amount equal to or in excess of the Minimum Bid Requirement (as defined below) within five (5) business days prior to the Auction date (a "**Qualified Bid**"). The Plan Proponents shall have the sole discretion, with input and advice from the Committee and Debtors, to determine the eligibility of a party's Qualified Bid (a "**Qualified**

**Bidder"**). The Plan Proponents will notify parties three (3) business days prior to the Auction date whether any bidder qualified as a Qualified Bidder.

(b) **Minimum Bid Requirement**. Any Qualified Bidder must make an initial bid of at least $68,000,000, plus the payment of real estate taxes as set forth in the Stalking Horse Bid Purchase Agreement (the **"Asset Purchase Agreement" or "APA"**), and any Cure Costs required to be paid (the **"Minimum Bid Amount"**). The Minimum Bid Amount represents an amount sufficient to satisfy the following: (i) administrative costs of the Debtors' estates for professional fees and costs, including costs of sale; and (ii) the Cure Costs, if any. Any subsequent Qualified Bids to be made over the Minimum Bid Amount shall be made in increments of at least $250,000 (collectively with the Minimum Bid Amount, the **"Minimum Bid Requirements"**).

(c) **Earnest Money Deposit**. The Deposit required shall be payable by cashier's or certified check, payable to "Arnstein & Lehr LLP as escrow agent" or by wire transfer of immediately available funds at least five (5) full business days prior to the Auction. The Deposit of the Buyer, together with any interest accrued thereon, will be applied as a credit against the purchase price paid by the Buyer (defined below). At the conclusion of the Sale and upon Court approval of the winning bid, all Deposits made by Qualified Bidders other than the Buyer will be promptly returned (without interest); **provided, however, that a third party Qualified Bidder who makes the second highest and best bid (the "Back-Up Bid") shall remain the back-up bidder (the "Back-Up Bidder") until closing of the Sale. In the event the Back-Up Bid is the Successful Bid, the Sale of the Property to the Back-Up Bidder shall close pursuant to the Bid Procedures. In the event of a Back-Up Bidder default the District shall become the final Back-up Bidder and close the Sale by credit bid in an amount equal to its last highest credit bid, but not to exceed the Maximum Credit Bid. In the event the Successful Bidder and/or the Back-Up Bidder is unable to Close the Sale, the Successful Bidder and/or Back-Up Bidder's Deposit shall be forfeited and distributed equally between the Plan Proponents and the Liquidating Trust established pursuant to the Amended District Creditor Plan. The District shall then immediately Close the Sale.**

(d) **Ability of the District to Credit Bid**. The District's Stalking Horse Bid shall be a credit bid. The District shall be entitled to credit bid up to the Maximum Credit Bid of $79 million without complying with the Minimum Bid Requirements. No other party shall be permitted to credit bid or shall be excused from the Bid Procedures or Minimum Bid Requirements. The District's Stalking Horse Bid is deemed accepted by the Debtors and Plan Proponents, subject to Court approval by way of this motion and the Preliminary Sale Order. The District shall be deemed a Qualified Bidder and is excused from having to comply with the provisions of subparagraph (a) above and shall be entitled to all benefits and protections of 11 U.S.C. § 363(m) if it is the Successful Bidder.

(e) **Higher and Better Bids**. The Auction of the Property shall be conducted on June 15, 2012 at 10:00 a.m., at the offices of Arnstein & Lehr LLP located at 200 S. Biscayne Blvd., Suite 3600, Miami, Florida 33131 if, and only if, there is at least one Qualified Bidder who has met the requirements for a Qualified Bidder and been accepted as a Qualified Bidder. At the Auction, Qualified Bidders may submit bids equal to or greater than the Minimum Bid

Requirement, in increments of at least $250,000.00, until the conclusion of the Auction. The entity that submits what the Plan Proponents believe constitutes the highest and best offer shall constitute the "Successful Bidder." The bid of the Successful Bidder (the "**Successful Bid**") shall be presented to the Court for approval at the Sale Hearing scheduled for **June 18, 2012**, at **2:00 p.m.**, at which time the District shall seek authority to compel the Closing of the Sale of the Property to the Successful Bidder. If the Court approves the Successful Bid, the Successful Bidder shall become the "Buyer." In the event there is no Qualified Bidder other than the District, the Plan Proponents and the Debtors shall seek immediate entry of the Final Sale Order and Confirmation Order approving the Stalking Horse Bid as the Successful Bid and the District or its designee as the Successful Bidder. The District may immediately designate another entity to take title at Closing without further Court approval or process.

(f)     **Right to Be Heard**.  The Debtor and any and all creditors, interest holders, the United States Trustee and other parties in interest may be heard as to any and all issues regarding the Sale. Any actual or potential bidder that believes it was wrongly denied eligibility to be a Qualified Bidder (as defined in paragraph (a) above) and any Qualified Bidder that objects to how the Auction was conducted, or objects to the Plan Proponents' determination of which Qualified Bidder was the Successful Bidder (as defined in paragraph (e) above) will be allowed to present these objections at the June 18, 2012 Sale Hearing described in paragraph (i) below.

(g)     **Overbid Fee**. There shall be no Overbid Fee.

(h)     **Bankruptcy Court Approval**.  The Sale contemplated herein shall be subject to the entry of a Final Sale Order. The Final Sale Order shall be subject to and conditioned upon the entry of the Confirmation Order and shall contain findings and conclusions, including but not limited to:

> (i)      if the District is the Successful Bidder, the District or its designee is (i) not a successor to the Debtors; (ii) not a sponsor of any condo-conversion, and (iii) entitled to a finding that the District is a good-faith purchaser;

> (ii)     the District, its designee, or Successful Bidder is (i) entitled to the benefits and protections consistent with and found in 11 U.S.C. § 363(m); and (2) that the Sale of the Property is final and not subject to reversal or modification on appeal, unless the Sale Order is stayed pending appeal;

> (iii)    the Sale was conducted in good-faith and at arms length;

> (iv)    the Property shall be free and clear of all liens, claims, interests and encumbrances, except easements of record and subject to any valid senior liens not otherwise satisfied at closing with all valid lien claims and encumbrances to

attach to the proceeds of Sale.[3] However, in the event the District or its designee is the Successful Bidder, the Property shall be conveyed without prejudice to, or waiver of, any rights to enforce, or cause the enforcement of, the collection of any installments of the Special Assessments and liens securing the Bonds not satisfied by the Sale, and future OEM assessments and liens against all third parties other than the Debtors and their affiliates, including but not limited to future accelerated principal amounts, interest, penalties, or other amounts arising from any future delinquent payments; and

(v)    approving the Sale and transfer of the Property to the Successful Bidder.

(i)    **Final Hearing, Confirmation Hearing and Final Sale Order**. On June 18, 2012 at 2:00 p.m., the Court will hold the Sale Hearing and the confirmation hearing at 51 S.W 1st Ave., Room 1406, Miami, FL 33130 to review, consider and approve the Auction results, if any, and enter a Final Sale Order approving the Successful Bid and authorizing the Debtor to Close the Sale of the Sale Assets to the Successful Bidder, and enter a Confirmation Order. The Final Sale Order will also contain findings and conclusions that (a) the Sale, including negotiations between the District and the Debtors, was conducted in good faith and at arms-length, (b) the sale of assets shall be free and clear of all liens, claims, and encumbrances pursuant to Sections 363(b) and (f) of the Bankruptcy Code, with liens to attach to proceeds of sale, except as provided for herein, and (c) the Purchaser is a good faith purchaser pursuant to Section 363(m), and entitled to the benefits and protections of section 363(m).

(j)    **Forfeit of Deposit**. If any Buyer fails to close the purchase in accordance with the terms hereof, it will forfeit its Deposit and the Property will be sold to the Back-Up Bidder. The Buyer's forfeited Deposit shall be distributed equally between the District and the liquidating trust established pursuant to the Amended District Creditor Plan.

(k)    **No Representations**. The Property shall be purchased on an "as is, where is" basis, with no representations or warranties (express or implied) of any kind or nature whatsoever, other than the representations and warranties contained in the APA when finalized.

(l)    **Due Diligence**. Due diligence must be completed in full, without reservation, at least one (1) business day prior to the deadline to submit a Qualified Bid.

(m)    **Marketing**. The Plan Proponents' marketing of the Property prior to the Petition Date is deemed proper and sufficient based on the scope and size of the Property. The homebuilders identified below shall be formally invited to participate in the Auction process consistent with these Bid Procedures in addition to any other party that has expressed an interest

---

[3]  Neither the Plan Proponents, Debtors or Committee expect any secured claim other the District Secured Claim shall receive payment on its secured claim and all subordinate claims will therefore be rendered unsecured if that proves to be the case at Auction.

in the Property:

    (i)  Lennar Corporation
    (ii)  Standard Pacific
    (iii)  D.R. Horton.
    (iv)  CCDevco
    (v)  Minto Homes
    (vi)  Centerline Homes
    (vii)  Century Homebuilders
    (viii)  JKM Developers, LLC
    (ix)  Andrean Homes
    (x)  Empresas VRM; and
    (xi)  Priderock Capital Partners
    (xii)  G.L. Homes
    (xiii)  Shoma Homes

**Payment of Purchase Price**. The purchase price for the Property as finally approved by the Court at the Sale shall be payable in full at the Closing by wire transfer of immediately available funds; provided, however, that the District shall be entitled to a credit up to the Maximum Credit Bid and, therefore, shall not be obligated to pay cash up to the $79 million Maximum Credit Bid of the District. The Plan Proponents shall pay any amounts owed relating to real estate taxes, Cure Costs, if any, and out-of-pocket closing costs at closing if the District is the Buyer. The Buyer, other than the District or its designee, at the Closing shall pay all outstanding tax certificate claims in full together with all real estate taxes not reduced to certificates pursuant to applicable non-bankruptcy law through tax year 2011 consistent with Florida law and procedure. A Claim in the approximate amount of $490,358.08 (plus statutory interest at 18% per annum) has been asserted by the Miami-Dade County Tax Collector, and approximately $1,417,414.89 in the aggregate (plus interest) has been asserted by Holders of Secured Tax Certificate Claims. The Buyer shall assume all responsibility to pay 2012 real estate taxes and all future tax claims when due.

   (n)  **Closing**. The Sale of the Property and transfer of title to the Successful Bidder shall be consummated at the offices of Arnstein & Lehr LLP during normal business hours no later than five (5) business days after the entry of the Final Sale Order (provided that the Confirmation Order has been entered) (the "**Closing**"). In the event the District is the Successful Bidder, the District may immediately designate another entity to take title at Closing without further Court order or process. Prior to Closing, if necessary, the District shall file a motion if necessary to compel turnover of any deposits from all third parties, including, without limitation, any title company, agency, agents, attorneys or other third parties. The proceeds from the Sale (if the District is not the Successful Bidder) shall be disbursed to the District at Closing, subject to the Carveout, not to exceed the amount of the District Secured Claim.

   **FURTHER INQUIRIES** concerning the Sale Assets must be made in writing to the Florida Prime Holdings, LLC's counsel, Phillip M. Hudson III, Esq., of Arnstein & Lehr LLP, at 200 South Biscayne Boulevard, Suite 3600, Miami, Florida 33131-2395; or via facsimile

305.808.8608; or via e-mail at pmhudson@arnstein.com. Copies of this notice may be obtained from the Office of the Clerk of the United States Bankruptcy Court or the Plan Proponent's counsel.

**PLEASE TAKE FURTHER NOTICE**, that the Sale Hearing may be adjourned without further notice, other than an announcement of such adjournment in open court at the Sale Hearing

Respectfully submitted,

**ARNSTEIN & LEHR LLP**
**Counsel for Florida Prime Holdings, LLC**
200 S. Biscayne Blvd., Suite 3600
Miami, Florida 33131
Telephone:    (305) 428-4502
Facsimile:     (305) 808-8608

By: /s/ Phillip M. Hudson III
      Phillip M. Hudson III
      Florida Bar No. 518743
      pmhudson@arnstein.com