UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re

TOWN CENTER AT DORAL, L.L.C., *et. al.*,                Chapter 11

                    Debtors.                Case No. 11-35884-RAM
                                            Jointly Administered

---

**AMENDED DISCLOSURE STATEMENT FOR AMENDED JOINT PLAN OF
REORGANIZATION BY LANDMARK AT DORAL COMMUNITY DEVELOPMENT
DISTRICT, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, AND
FLORIDA PRIME HOLDINGS, LLC**

---

**ARNSTEIN & LEHR LLP**
PHILLIP M. HUDSON III
Florida Bar No. 518743
*Attorneys for Florida Prime Holdings, LLC*
200 S. Biscayne Blvd., Suite 3600
Miami, Florida 33131
Telephone:    (305) 374-3330
Telefax:      (305) 374-4744
Email:  pmhudson@arnstein.com

**STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.**
PATRICIA A. REDMOND
Florida Bar No. 303739
*Attorneys for the District*
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3553
Fax:          (305) 789-3395
Email: predmond@stearnsweaver.com

**GREENBERG TRAURIG, P.A.**
JOHN B. HUTTON, III
Florida Bar No. 902160
JOHN R. DODD
Florida Bar No. 38091
*Attorneys for the Indenture Trustee*
333 Avenue of Americas
Miami, Florida 33131
Telephone: (305) 579-0730
Fax:          (305) 579-0717
Email: huttonj@gtlaw.com doddj@gtlaw.com
March 23, 2012

THIS AMENDED DISCLOSURE STATEMENT (THE "**DISTRICT CREDITOR DISCLOSURE STATEMENT**") MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE AMENDED DISTRICT CREDITOR PLAN OF REORGANIZATION BY LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT, A LOCAL UNIT OF SPECIAL PURPOSE GOVERNMENT, U.S. BANK NATIONAL ASSOCIATION, SOLELY AS INDENTURE TRUSTEE WITH REGARD TO THE BONDS AND UNDER THE INDENTURE, AND FLORIDA PRIME HOLDINGS, LLC (COLLECTIVELY, THE "**PLAN PROPONENTS**"), DATED AS OF THE DATE HEREOF, FOR THE REORGANIZATION OF THE ESTATES OF TOWN CENTER AT DORAL, LLC; LANDMARK AT DORAL EAST, LLC; LANDMARK AT DORAL SOUTH, LLC; LANDMARK CLUB AT DORAL, LLC; AND LANDMARK AT DORAL DEVELOPERS, LLC (COLLECTIVELY, THE "**DEBTORS**") (AS AMENDED FROM TIME TO TIME, THE "**DISTRICT CREDITOR PLAN**"), AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED ADVICE ON THE TAX OR SECURITIES LAWS OR OTHER LEGAL EFFECTS OF THE DISTRICT CREDITOR PLAN ON HOLDERS OF CLAIMS AGAINST OR INTEREST IN THE DEBTORS.

ALL CREDITORS AND HOLDERS OF INTERESTS THAT ARE ENTITLED TO VOTE ON THE DISTRICT CREDITOR PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE ENTIRE DISCLOSURE STATEMENT FURNISHED TO THEM AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT, PRIOR TO SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION. THE DESCRIPTION OF THE DISTRICT CREDITOR PLAN CONTAINED IN THIS DISTRICT CREDITOR DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE DISTRICT CREDITOR PLAN ITSELF, WHICH ACCOMPANIES THIS DISTRICT CREDITOR DISCLOSURE STATEMENT. EACH CREDITOR AND HOLDER OF AN INTERESTS SHOULD READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE DISTRICT CREDITOR PLAN.

THE PLAN PROPONENTS BELIEVE THAT THE DISTRICT CREDITOR PLAN IS IN THE BEST INTERESTS OF CREDITORS.  FURTHER, ON MARCH 1, 2012, THE PLAN PROPONENTS ENTERED INTO A SETTLEMENT TERM SHEET WITH THE DEBTORS, THE COMMITTEE AND TERRA LANDMARK LLC ("TERRA"), THE TERMS OF WHICH HAVE BEEN INCORPORATED INTO THIS DISTRICT CREDITOR PLAN.  AS A RESULT, THE DEBTOR, THE COMMITTEE AND TERRA ALSO SUPPORT CONFIRMATION OF THIS DISTRICT CREDITOR PLAN AND ENCOURAGE CREDITOR ACCEPTANCE OF THE PLAN.

ALL CREDITORS ENTITLED TO VOTE ARE URGED TO VOTE IN FAVOR OF THE DISTRICT CREDITOR PLAN. VOTING INSTRUCTIONS ARE CONTAINED IN THE SECTION OF THIS DISTRICT CREDITOR DISCLOSURE STATEMENT TITLED "VOTING INSTRUCTIONS." TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY THE CLERK OF THE

BANKRUPTCY COURT BY NO LATER THAN 4:30 P.M., EASTERN STANDARD TIME, ON THE DATE PROVIDED BY THE ORDER SETTING PLAN DEADLINES, UNLESS SUCH DEADLINE IS EXTENDED.

THE DISTRICT CREDITOR PLAN PROPOSES EXCULPATION FROM LIABILITY AS TO THE PLAN PROPONENTS AND LIQUIDATING TRUSTEE FOR ACTIONS IN CONNECTION WITH THE ADMINISTRATION OF THE DISTRICT CREDITOR PLAN, WHICH PROVISIONS WOULD ENJOIN THE DEBTORS, THEIR ESTATES AND THE HOLDERS OF CLAIMS AND INTERESTS FROM PURSUING ACTIONS AGAINST THE PLAN PROPONENTS AND LIQUIDATING TRUSTEE, EXCEPT AS OTHERWISE PROVIDED IN THE DISTRICT CREDITOR PLAN.  ALL CREDITORS, HOLDERS OF INTERESTS AND OTHER PARTIES IN INTEREST ARE URGED TO READ CAREFULLY THE DISTRICT CREDITOR PLAN ON EXCULPATION FROM LIABILITY.

THIS DISTRICT CREDITOR DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

NO PERSON IS AUTHORIZED BY THE DEBTORS OR THE PLAN PROPONENTS IN CONNECTION WITH THE DISTRICT CREDITOR PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE DISTRICT CREDITOR PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISTRICT CREDITOR DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR INCORPORATED BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE PLAN PROPONENTS. SUCH ADDITIONAL REPRESENTATIONS SHOULD BE REPORTED TO THE PLAN PROPONENTS' COUNSEL, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE. THE DELIVERY OF THIS DISTRICT CREDITOR DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF. THIS DISTRICT CREDITOR DISCLOSURE STATEMENT IS DATED MARCH 23, 2012 AND CREDITORS AND HOLDERS OF INTERESTS ARE ENCOURAGED TO REVIEW THE BANKRUPTCY DOCKET IN THE BANKRUPTCY CASE TO APPRISE THEMSELVES OF EVENTS WHICH OCCUR BETWEEN THE DATE OF THIS DISTRICT CREDITOR DISCLOSURE STATEMENT AND THE DATE OF THE CONFIRMATION HEARING.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS DISTRICT CREDITOR DISCLOSURE STATEMENT AND IN THE ACCOMPANYING DISTRICT CREDITOR PLAN CONCERNING THE HISTORY OF THE DEBTORS' BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE PARTIES, OR THE EFFECT OF CONFIRMATION OF

THE DISTRICT CREDITOR PLAN ON HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE PRIMARILY ATTRIBUTABLE TO THE PLAN PROPONENTS AND NOT TO ANY OTHER PARTY UNLESS SPECIFICALLY ATTRIBUTED. NONE OF THE ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS RETAINED BY THE PLAN PROPONENTS MAKES ANY REPRESENTATIONS CONCERNING SUCH INFORMATION.

THE PLAN PROPONENTS HAVE ATTEMPTED TO PRESENT THE INFORMATION CONTAINED IN THIS DISTRICT CREDITOR DISCLOSURE STATEMENT ACCURATELY AND FAIRLY TO THE BEST OF THEIR ABILITY GIVEN THEIR ACCESS TO THE DEBTORS' DOCUMENTS. THE ASSUMPTIONS UNDERLYING THE ANTICIPATION OF FUTURE EVENTS CONTAINED IN THIS DISTRICT CREDITOR DISCLOSURE STATEMENT ARE ONLY ASSUMPTIONS OR PREDICTIONS OF FUTURE EVENTS (MOST OF WHICH ARE BEYOND THE PLAN PROPONENTS' CONTROL), THERE CAN BE NO ASSURANCE THAT THE EVENTS WILL OCCUR.

IN THE EVENT THAT ANY IMPAIRED CLASS OF CLAIMS OR INTERESTS VOTES TO REJECT THE DISTRICT CREDITOR PLAN, (1) THE PLAN PROPONENTS MAY SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE DISTRICT CREDITOR PLAN REGARDING THAT CLASS UNDER THE BANKRUPTCY CODE'S "CRAMDOWN" PROVISIONS AND, IF REQUIRED, MAY AMEND THE DISTRICT CREDITOR PLAN TO CONFORM TO SUCH REQUIREMENTS OR (2) THE DISTRICT CREDITOR PLAN MAY BE OTHERWISE MODIFIED OR WITHDRAWN.

THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS TO ACCEPT THE DISTRICT CREDITOR PLAN AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY COURT, ARE SET FORTH IN THE SECTION OF THIS DISTRICT CREDITOR DISCLOSURE STATEMENT TITLED "REQUIREMENTS FOR CONFIRMATION OF THE DISTRICT CREDITOR PLAN AND CONFIRMATION OVER OBJECTIONS."

Case No. 11-35884-RAM
Jointly Administered

## DISCLOSURE STATEMENT PURSUANT TO
## SECTION 1125 OF THE BANKRUPTCY CODE

### INTRODUCTION

Landmark at Doral Community Development District, a local unit of special purpose government, U.S. Bank National Association, solely as Indenture Trustee with regard to the Bonds and under the Indenture, and Florida Prime Holdings, LLC (collectively, the "**Plan Proponents**") have filed with the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "**Bankruptcy Court**"), an Amended Plan dated March 23, 2012 (as amended from time to time, the " **District Creditor Plan**") proposing the reorganization of the Estates of Town Center at Doral, LLC; Landmark at Doral East, LLC; Landmark at Doral South, LLC; Landmark Club at Doral, LLC; and Landmark at Doral Developers, LLC (collectively, the "**Debtors**").[1]  This Disclosure Statement dated March 23, 2012 (as supplemented from time to time, the "**District Creditor Disclosure Statement**"), is submitted pursuant to § 1125 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et. seq.* (the "**Bankruptcy Code**") in connection with the solicitation of votes on the District Creditor Plan from Holders of Impaired Claims against the Debtors and the hearing on the adequacy of the District Creditor Disclosure Statement scheduled for _____ at _____ a.m. in Courtroom 1406, Claude Pepper Federal Building, 51 S.W. 1st Avenue, Miami, Florida 33130.

This District Creditor Disclosure Statement must be approved by the Bankruptcy Court in accordance with § 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of Holders of Claims in the relevant Voting Classes (as defined below) to make an informed judgment whether to accept or reject the District Creditor Plan. The Bankruptcy Court's approval of this District Creditor Disclosure Statement and the transmittal of this District Creditor Disclosure Statement do not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the District Creditor Plan and should not be interpreted as being a recommendation by the Bankruptcy Court either to accept or reject the District Creditor Plan.

**THE TREATMENT OF CLAIMS UNDER THE DISTRICT CREDITOR PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS. ACCORDINGLY, THE PLAN PROPONENTS BELIEVE THAT CONFIRMATION OF THE DISTRICT CREDITOR PLAN IS IN THE CREDITORS' BEST INTERESTS AND RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE DISTRICT CREDITOR PLAN.**

**FURTHER, ON MARCH 1, 2012, THE PLAN PROPONENTS ENTERED INTO A SETTLEMENT TERM SHEET WITH THE DEBTORS, THE COMMITTEE AND TERRA LANDMARK LLC ("TERRA"), THE TERMS OF WHICH HAVE BEEN INCORPORATED INTO THIS DISTRICT CREDITOR PLAN.  AS A RESULT, THE DEBTOR, THE COMMITTEE AND TERRA SUPPORT CONFIRMATION OF THIS**

---

[1] This District Creditor Plan is conditional upon the District's approval of this District Creditor Plan and related Plan Documents at its meeting currently scheduled for March 26, 2012.

DISTRICT CREDITOR PLAN AND ENCOURAGE CREDITOR ACCEPTANCE OF THIS PLAN.

Accompanying or included as exhibits to this District Creditor Disclosure Statement are the following:

1. The Order (1) Granting Motion to Terminate Exclusivity and (2) Setting Deadlines [ECF No. 196] (the "**Disclosure Statement Hearing Order**") (Exhibit 1);

2. In the case of Impaired Classes of Claims entitled to vote (3, 4, 5, 6 and 7) (collectively, the "**Voting Classes**"), a Ballot for acceptance or rejection of the District Creditor Plan;

3. The District Creditor Plan (Exhibit 2);

4. Liquidating Trust Agreement (Exhibit 3) – to be filed as a supplement;

5. Asset Purchase Agreement (Exhibit 4) – to be filed as a supplement; and

6. The Settlement Term Sheet (Exhibit 5).

Notwithstanding anything else in the District Creditor Plan or the District Creditor Disclosure Statement, (i) U.S. Bank National Association is a Plan Proponent of the District Creditor Plan solely in its capacity as trustee (the "**Indenture Trustee**") under that Master Trust Indenture and that First Supplemental Trust Indenture, both dated as of October 1, 2006 and both with Landmark at Doral Community Development District (as such indentures may have been supplemented and/or amended from time to time in accordance with their terms), under which the Bonds were issued; (ii) the Indenture Trustee is a Plan Proponent of the District Creditor Plan, pursuant to the terms of the foregoing indentures, including, without limitation, Sections 10.04, 10.06 and 11.07, of such Master Trust Indenture, at the written request and direction of Florida Prime Holdings, LLC, as beneficial holder of all of the outstanding principal amount of the Bonds; (iii) U.S. Bank National Association, whether in its capacity as Indenture Trustee (including as a Plan Proponent) or in any other capacity, shall have no obligation whatsoever under the District Creditor Plan to make any payments or provide any funding; (iv) all payments to be made and all funding to be provided by the Plan Proponents under the District Creditor Plan, including without limitation funding the Carveout, shall solely be the obligation of Florida Prime Holdings, LLC.

## PURPOSE OF THIS DISTRICT CREDITOR DISCLOSURE STATEMENT

The purpose of this District Creditor Disclosure Statement is to provide the Holders of Claims and Interests with adequate information to make an informed decision about the District Creditor Plan. This information includes, among other things, (a) the procedures for voting on the District Creditor Plan, (b) a summary of the District Creditor Plan and an explanation of how it will function, including the means of implementing and funding the District Creditor Plan, (c) general information about the history and business of the Debtors prior to the Petition Date, (d)

the events leading to the filing of the Bankruptcy Cases, and (e) a summary of significant events which have occurred to date in the Bankruptcy Cases.

This District Creditor Disclosure Statement contains important information about the District Creditor Plan and considerations pertinent to a vote for, or against, the Confirmation of the District Creditor Plan. All Holders of Claims and Interests are encouraged to review carefully this District Creditor Disclosure Statement.

Unless otherwise defined, all capitalized terms used in this District Creditor Disclosure Statement have the meanings ascribed to them in the District Creditor Plan. Any term used in the District Creditor Plan or herein that is not defined in the District Creditor Plan or herein and that is used in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules of the Bankruptcy Court has the meaning assigned to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, as the case may be. If there is any conflict between the definitions contained in this District Creditor Disclosure Statement and the definitions contained in the District Creditor Plan, the definitions contained in the District Creditor Plan shall control.

## <u>VOTING INSTRUCTIONS</u>

### Who May Vote

Only the Holders of Claims and Interests which are deemed "Allowed" under the Bankruptcy Code and which are "Impaired" under the terms and provisions of the District Creditor Plan are permitted to vote to accept or reject the District Creditor Plan. For purposes of the District Creditor Plan, only the Holders of Allowed Claims in the Voting Classes (*i.e.*, Classes 3, 4, 5, 6 and 7) are Impaired under the District Creditor Plan and thus may vote to accept or reject the District Creditor Plan. ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE DISTRICT CREDITOR PLAN IS BEING PROVIDED ONLY TO MEMBERS OF THE VOTING CLASSES.

### How to Vote

Each Holder of a Claim in a Voting Class should read the District Creditor Disclosure Statement and its exhibits, together with the District Creditor Plan, complete the enclosed Ballot, including your vote regarding the District Creditor Plan, and return it as provided below. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot you should assume that each Ballot is for a separate Impaired Claim and you should complete and return all of them.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please call Phillip M. Hudson III, counsel for Florida Prime Holdings, LLC, at (305) 374-3330.

**YOU SHOULD COMPLETE AND SIGN EACH ENCLOSED BALLOT AND RETURN IT TO THE ADDRESS FOR THE BANKRUPTCY COURT PROVIDED BELOW. IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED**

**AND EXECUTED AND RECEIVED BY THE CLERK OF THE BANKRUPTCY COURT BY NO LATER THAN 4:30 P.M. (EASTERN STANDARD TIME) ON _____, 2012 UNLESS SUCH DEADLINE IS EXTENDED.**

All Ballots should be returned either by regular mail, hand delivery or overnight delivery to:

> Office of the Clerk – U.S. Bankruptcy Court Southern District of Florida
> Claude Pepper Federal Building
> 51 S.W. 1st Avenue, Room 1510
> Miami, FL 33130

**Acceptance of District Creditor Plan and Vote Required for Class Acceptance**

As the Holder of an Allowed Claim in the Voting Classes, your vote on the District Creditor Plan is extremely important. In order for the District Creditor Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resorting to the "cram-down" provisions of the Bankruptcy Code as to other Classes of Allowed Claims and Allowed Interests, votes representing at least two-thirds in dollar amount and more than one-half in number of Allowed Claims of each Impaired Class of Claims that are voted, and votes representing at least two-thirds in amount of Allowed Interests of each Impaired Class of Interests that are voted, must be cast for the acceptance of the District Creditor Plan. The Plan Proponents are soliciting acceptances only from Holders of Claims in Classes 3, 4, 5, 6 and 7 which are the only Classes entitled to vote on the District Creditor Plan. You may be contacted by any of the Plan Proponents regarding your vote on the District Creditor Plan.

**Hearing to Consider Adequacy of Disclosure Statement and Setting Confirmation Hearing and Deadlines**

The Bankruptcy Court has approved the adequacy of the District Creditor Disclosure Statement at a hearing held on May 15, 2012 at 2:00 p.m. (the "**Disclosure Statement Hearing**"), at the United States Bankruptcy Court, Courtroom 1406, Claude Pepper Federal Building, 51 S.W. 1st Avenue, Miami, Florida 33130, which may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Disclosure Statement Hearing.

Pursuant to the Bankruptcy Court's approval of the adequacy of the District Creditor Disclosure Statement, at the Disclosure Statement Hearing, the Bankruptcy Court will set a hearing on the confirmation of the District Creditor Plan. Notice of the confirmation hearing will be sent to all members of the Voting Classes.

## HISTORY AND BUSINESS OF THE DEBTORS
## PRIOR TO AND AFTER THE CHAPTER 11 FILING

### Introduction[2]

The information contained in this section of the District Creditor Disclosure Statement is intended as a summary of the Debtors' history and business operations prior to and after the filing of its voluntary petitions on September 19, 2011.

Each of the Debtors is a limited liability company organized and existing under the laws of the State of Florida.  The Debtors are the fee simple owners of land (approximately 117 of nearly contiguous acres) located on the east side of NW 107th Avenue and the north side of NW 58th Street in Doral, Florida, a majority of which is zoned TND (Traditional Neighborhood Development), with the remainder zoned IU-1 (for flex office development allowing for light industrial development) (the "**Real Property**"). The Real Property consists of 16 individual tracts of land on which substantive infrastructure has been constructed. Other than such infrastructure, the Real Property remains undeveloped in terms of vertical construction, with the exception of an unfinished 4- level parking garage. Prior to the Petition Date, the Debtors had sought and obtained approvals for the development of residential units (townhomes and condominiums), retail/office/mixed use, and flex office at the Real Property.

Prior to 2008, the Debtors were actively engaged in preparing the Real Property for a development to be called Landmark at Doral, consisting of 11 acres of industrial/flex office, 17 acres of mixed use, and 89 acres of multifamily residential dwellings. After development, the Real Property was to consist of 188,000 square feet of retail and office, 230,000 square feet of flex office, and 1,109 residential units, featuring an assortment of elevations and architecture to create a community reminiscent of former small towns in suburbs throughout the United States and abroad.

In February 2008 the principal of the Debtors, Elie Berdugo, passed away.  Thereafter, the Debtors defaulted on each and every payment obligation to the District.  Even prior to Elie Berdugo's death, the only assessment payments made to the District were from reserves established at the inception of the District.  The Debtors further abandoned the project as of 2008 and the District has been forced to protect and maintain the property since that time.  The Debtors have not paid any real property taxes since that time.

### The Community Development District and Related Parties

Landmark at Doral Community Development District (the "**District**") is a community development district, which is a local unit of special-purpose government of the State of Florida pursuant to Chapter 190, Florida Statutes. On or about August 23, 2005, the Board of County Commissioners, Miami-Dade County, Florida, adopted Ordinance No. 05-153 establishing the District pursuant to the provisions of Chapter 190, Florida Statutes. The District has all of the powers granted by Chapter 190, Florida Statutes, including, but not limited to, the authority to impose special assessments and to enforce all remedies available in case of default in the

---

[2]  This description was provided by the Debtors.   The Plan Proponents have no reason to doubt this description.

payment of special assessments ("**Special Assessments**").

Florida Prime Holdings, LLC (the "**Bondholder**") is a Delaware limited liability company.  The Bondholder presently owns and controls 100% of the outstanding Series 2006 Bonds (defined below).

U.S. Bank National Association as Trustee (the "**Indenture Trustee**") under that Master Trust Indenture and that First Supplemental Trust Indenture, both dated as of October 1, 2006 (as such indentures may have been supplemented and/or amended from time to time in accordance with their terms, collectively, the "**Indentures**"), under which the District issued those Landmark at Doral Community Development District (City of Doral, Florida) Special Assessment Bonds, Series 2006A and Series 2006B.

### The District's Creation and Purpose

A community development district ("**CDD**") is an independent special-purpose unit of local government created pursuant to and governed by Chapter 190, Florida Statutes. § 190.003(6), Fla. Stat.  CDDs were established to meet "a need for uniform, focused, and fair procedures in state law to provide a reasonable alternative for the establishment, power, operation, and duration of independent districts to manage and finance basic community development services." § 190.002(1)(a), Fla. Stat.  CDDs possess certain powers similar to cities and counties, including but not limited to, the right to enter into contracts, to acquire and dispose of real and personal property, to adopt rules and regulations, and, importantly, to obtain funds through borrowing, issuing bonds, and levying non-ad valorem assessments and taxes.  *See* § 190.011, Fla. Stat.

CDDs levy and collect Special Assessments like other governmental units in Florida pursuant to Chapter 190, Florida Statutes.  Specifically, CDDs are empowered to "levy special assessments for the construction, reconstruction, acquisition, or maintenance of district facilities authorized under [Chapter 190] using the procedures for levy and collection provided in chapter 170 or chapter 197." § 190.022(1), Fla. Stat.  *See also* §§ 190.011(14), 190.021(2), Fla. Stat. Special Assessments are "burden[s] levied under the power of taxation." *Jackson v. City of Lake Worth*, 23 So. 2d 526, 528 (1945).  Assessments levied pursuant to Chapter 170 "shall remain liens, coequal with the lien of all state, county, district, and municipal taxes, superior in dignity to all other liens, titles, and claims, until paid." § 170.09, Fla. Stat.

CDDs are empowered to issue bonds to finance public improvements pursuant to §§ 190.011(9), 190.012, 190.016(2), 190.016(8), 190.016(13), and 190.023, Florida Statutes.  CDDs are further empowered to secure and make such municipal bonds, including principal, interest and any redemption premium, payable from Special Assessments levied on lands located within their boundaries and benefitted by the subject improvements.  *See* §§ 190.011(14), 190.021(2), 190.022, 190.023, Fla. Stat.  The infrastructure created is operated and maintained by the CDD into perpetuity or, in some instances, may be accepted by the county or city for operations and maintenance.  In fact, in this case, most of the roads created are owned by the District.

Thus, by statute, the District is empowered to finance and construct public improvements

and community facilities such as basic infrastructure (water, sewer, bridges, roads, transportation systems, parking improvements, conservation areas, etc.). Fla. Stat. § 190.012.  Pursuant to Resolution No. 2005-11, adopted September 9, 2005, and Resolution No. 2006-08, adopted August 10, 2006, the District authorized the issuance, sale and delivery of not to exceed $75,000,000 in Special Assessment Bonds.

Pursuant to Resolution No. 2005-09, adopted September 9, 2005, Resolution 2005-10, adopted September 9, 2005, Resolution No. 2005-12, adopted October 19, 2005, Resolution 2006-07, adopted August 10, 2006, and Resolution No. 2006-10, adopted September 14, 2006, (collectively the "**Debt Assessment Resolutions**"), the District levied Special Assessments on lands within the boundaries of the District that specially benefit from the facilities and services provided by the District as described in the Debt Assessment Resolutions and the exhibits thereto.  The Special Assessments were levied in accordance with Florida law, and the Real Property has been benefited by the facilities and services constructed using the Series 2006 Bond (hereafter defined) funds and is therefore validly subject to the Special Assessments and other rights attendant thereto.

On September 11, 2008, the District adopted Resolution No. 2008-5, levying a Special Assessment to fund the District's Fiscal Year 2008-2009 operations and maintenance budget, and directing the collection of previously levied debt service assessments on lands within the District for Fiscal Year 2008-2009.  A semi-annual debt service installment on the Special Assessments was due on May 1, 2009.

The validity of the establishment of the District has already been judicially confirmed. Specifically, in the Final Judgment of Validation entered by the Miami-Dade County Circuit Court on November 1, 2005 (the "**Final Judgment**"), the Florida state court ordered, adjudged and decreed that the bonds were thereby validated and confirmed.  The Florida state court further ordered that the District's Special Assessments "constitute valid and enforceable first liens on the assessed property within the District coequal with all State of Florida, County, school district and municipal taxes, superior in dignity to all other liens, titles and claims on such real property."

**The Series 2006 Bonds**

On or about October 1, 2006, the District executed the Indenture.  On October 10, 2006, the District issued $30,320,000 Special Assessment Bonds, Series 2006A, and $41,180,000 Special Assessment Bonds, Series 2006B (together, the "**Series 2006 Bonds**"), for the purpose of funding the various improvements included in the District's Capital Improvement Program.

The Series 2006 Bonds were issued by the District under and pursuant to Chapter 190, Florida Statutes, and the Indenture.  The revenues pledged for the repayment of the Series 2006 Bonds are the amounts paid in connection with Special Assessments imposed pursuant to the Debt Assessment Resolutions and ancillary documents, including but not limited to an Assessment Roll describing the various parcels and attendant Special Assessments encumbering each respective parcel.

The proceeds from the sale of the Series 2006 Bonds provided, and continue to provide, for capital improvements within the District which specially benefit the Real Property owned by

the Debtors.  These improvements include but not limited to, roadways, utilities and the 969 space parking garage on the South Parcel of the Real Property.

The Debtors, as owners of the Real Property, are obligated to pay the Special Assessments as required by the Indenture and its assessment methodology.  The Debtors have failed to pay any of the Special Assessment installment payments, which commenced with the installment due on May 1, 2009 and all subsequent installments that have come due as of the date hereof.  In fact, the Debtors never paid any Special Assessments; those paid to date were funded from reserves set up with bond proceeds from inception.

Pursuant to § 170.10, Florida Statutes and consistent with the Indentures, the whole amount of the Special Assessment liens have become immediately due and payable, for the benefit of the Bondholder.  That amount exceeds $71,500,000.00, accrued interest, cost and penalties as provided by applicable Florida statute and the Indenture. Proofs of Claim have been filed that demonstrate the District's collective claim, including delinquent Special Assessments, accrued interest, statutory penalties, O&M Assessments and completion liability.

The Debtors have also failed to pay Special Assessments levied and imposed on the Debtors' Real Property to fund the District's operations and maintenance budgets for Fiscal Years 2007-2008, 2008-2009, 2009-2010 and 2011-2012.  Such Special Assessments were imposed annually pursuant to the "O&M Assessment Resolutions."

**Pre-Petition Litigation**[3]

Prepetition, the Debtors were parties to two foreclosure actions: (a) *AmTrust Bank v. Town Center at Doral, LLC, et al.*, Case No. 08-66650-CA-13 (11th Judicial Circuit, Miami-Dade County, Fla.) (the "**AmTrust Foreclosure Action**") and (b) *Landmark at Doral Community Development District v. Landmark at Doral East, LLC, et al.*, Case No. 09-06334 CA 32 (11th Judicial Circuit, Miami-Dade County, Fla.) (the "**District Foreclosure Action**"). The AmTrust Foreclosure Action seeks enforcement and foreclosure of the Land Note (hereafter defined) and Land Mortgage (hereafter defined), the Mezzanine Note (hereafter defined) and Mezzanine Mortgage (hereafter defined), the Revolving Loan (hereafter defined) and Revolving Mortgage, and all related security interests. The District Foreclosure Action seeks foreclosure of all lien interests held by the District with respect to the Real Property, which lien rights are statutorily authorized and when imposed are senior to any lien rights held by AMT (hereafter defined), as successor in interest to AmTrust (hereafter defined). In July 2011, the District moved for summary judgment on its foreclosure complaint in the District Foreclosure Action. The Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida scheduled the District's summary judgment motion to be heard in late September 2011.

On the Petition Date, both the AmTrust Foreclosure Action and the District Foreclosure Action were stayed pursuant to section 362 of the Bankruptcy Code. On October 28, 2011, the District filed a motion for relief from the automatic stay to proceed with the District Foreclosure Action. Pursuant to the *Order Granting Partial Stay Relief and Setting Further Hearing* [ECF

---

[3]  This description was provided by the Debtors.  The Plan Proponents have no reason to doubt this description.

No. 75], the Bankruptcy Court granted the District relief from the automatic stay imposed by § 362 of the Bankruptcy Code to proceed to a foreclosure judgment, but not to a foreclosure sale.

### Description of Pre-Petition Indebtedness[4]

As of the Petition Date, the Debtors' obligations include (i) tax claims held by the Miami-Dade County Tax Collector in the aggregate amount of $490,358 (plus statutory interest), (ii) Real Property tax certificate claims in various amounts, each of which is secured by a statutory lien on the Real Property, (iii) claims held by the District in the aggregate amount of approximately $111,814,680, which claims are secured by statutory liens on the Real Property; (iv) claims held by AMT CADC Venture, LLC ("**AMT**") in the aggregate amount of approximately $103,105,837, which claims are secured by liens on the Real Property; and (v) claims held by unsecured creditors in the aggregate amount of approximately $17,536,201, as more fully set forth on the following schedule:

| CREDITOR | AMOUNT OWED | APPLICABLE DEBTOR | STATUS | COLLATERAL |
|---|---|---|---|---|
| The District | $111,814,679.70 | All | | The Real Property |
| AMT | $132,105,836.93 | All | | The Real Property |
| Miami-Dade County (2011 Real Property Taxes) | $490,348.08 | All | Unliquidated | The Real Property |
| Sunshine State Cert III, LLLP | $327,691.00 | Town Center at Doral, LLC | Unliquidated | The property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $549,758.43 | Town Center at Doral, LLC | Unliquidated | The property owned by Town Center at Doral, LLC |
| BTI Bluegate FTCF, LLC | $139,220.00 | Landmark at Doral East, LLC | Unliquidated | The property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $112,686.00 | Landmark at Doral East, LLC | Unliquidated | The property owned by Landmark at Doral East, LLC |
| Finance Southern Co. | $116,675.00 | Landmark at Doral South, LLC | Unliquidated | The property owned by Landmark at Doral South, LLC |
| BTI Bluegate | $41,169.00 | Landmark Club | Unliquidated | The property |

---

[4]   The information and description for this section was provided by the Debtors.  While generally correct, the estimates of amounts owing were not complete in certain cases.  The Plan Proponents have set forth the amounts in the Proofs of Claim filed by the District and AMT.

| | | | | |
|---|---|---|---|---|
| FTCF, LLC | | at Doral, LLC | | owned by Landmark Club at Doral, LLC |
| Hilda Pico/Ocean Bank | $33,325.00 | Landmark Club at Doral, LLC | Unliquidated | The property owned by Landmark Club at Doral, LLC |
| | | | | |
| Unsecured Creditors | $17,536,201 | All | Variable | None |

### A.    The District's Secured Claims

Pursuant to Resolution No. 2005-11, adopted September 9, 2005, and Resolution No. 2006-08, adopted August 10, 2006, the District authorized the issuance, sale, and delivery of special assessment bonds not to exceed $75,000,000 in the aggregate.  The Final Judgment validated and confirmed the issuance of the proposed special assessment bonds. On October 1, 2006, the District signed the Indenture. On October 10, 2006, the District issued the Series 2006 Bonds. The proceeds of the Series 2006 Bonds were and are designated to be used to fund the development of infrastructure and capital improvements for the Real Property.

Pursuant to Resolution No. 2005-12, adopted October 19, 2005, and Resolution No. 2006-10, adopted September 14, 2006, the District imposed "Special Assessment Obligations" upon the Debtors as the landowners of the parcels to be benefited by the infrastructure and other capital improvements funded by the proceeds of the Series 2006 Bonds. On September 11, 2008, the District adopted Resolution No. 2008-5, which levied a special assessment for maintenance and debt service on the parcels for the fiscal year 2009-2010.

The Debtors have not paid the Special Assessment Obligations since 2008. As of the Petition Date, the Debtors were obligated to the District for Special Assessment Obligations in the principal face amount of $71,500,000, plus interest and penalties. The principal amount of Special Assessment Obligations allocable to each Debtor on a per acres basis is as follows: (i) Landmark at Doral East, LLC - $12,040,491.58; (ii) Town Center at Doral, LLC - $43,727,205.13; (iii) Landmark at Doral South, LLC - $14,499,141.58; (iv) Landmark Club at Doral, LLC - $1,233,161.71.

On September 11, 2008, the District adopted Resolution No. 2008-5, which levied a special assessment for maintenance "Maintenance Assessment Obligation" and certified for collection the annual installment of the debt service on the parcels for the fiscal year 2009-2010. On or about November 13, 2008, the District adopted Resolution No. 2009-4, which imposed Maintenance Assessment Obligations on the parcels for the purpose of funding the District's operations and maintenance budget for the Fiscal Year 2008-2009. The Debtors have not paid the Maintenance Assessment Obligations since 2008. As of the Petition Date, the Debtors were obligated to the District for Maintenance Assessment Obligations of $649,817.73. The amount of Maintenance Assessment Obligations presently allocable to each Debtor on a per acre basis is as follows: (i) Landmark at Doral East, LLC - $98,543.91; (ii) Town Center at Doral, LLC - $418,651.68; (iii) Landmark at Doral South, LLC - $122,529.50; (iv) Landmark Club at Doral,

LLC - $10,092.63.

Pursuant to applicable Florida Statutes, the Special Assessments are secured by liens on the Real Property *pari passu* with Real Property tax assessment obligations. By virtue of the Debtors' prepetition payment defaults upon the Special Assessments, as of the Petition Date, the whole amount of the Debtor's Special Assessment liens owed to the District by the Debtors have become due and owing.

The District has filed Proofs of Claim for the Special Assessments totaling $111,814,679.70.

### B.    AMT'S Secured Claims

The AMT Loan Claim relates to three loans: the Land Loan, the Mezzanine Loan, and the Revolving Loan (collectively, the "**AMT Loan**"). The original parties to the Land Loan and the Mezzanine Loan were the Debtors and Ohio Savings Bank ("**Ohio Savings**"); the original parties to the Revolving Loan were the Debtors and iStar Financial, Inc. ("**iStar**"). Each of the loans was transferred and/or assigned to AmTrust Bank ("**AmTrust**").

On October 31, 2008, AmTrust filed the AMT Foreclosure Action to foreclose its interests in the Real Property. Upon the collapse of AmTrust, the Federal Deposit Insurance Corporation ("**FDIC**"), as the receiver for AmTrust, took over the AMT Loan. The FDIC subsequently assigned the AMT Loan to AMT. AMT is therefore the successor in interest to AmTrust and is the Holder of the AMT Loan Claim. An expanded description of the Land Loan, the Mezzanine Loan, and the Revolving Loan follows.

On January 30, 2005, the Debtors and Ohio Savings entered into a land loan (the "**Land Loan**"), evidenced by a note (the "**Original Land Note**", and as amended, the "**Land Note**") in the original principal amount of $55,250,000. The Original Land Note was secured by a mortgage (the "**Land Mortgage**") in favor of Ohio Savings and an assignment of leases and rents to Ohio Savings, each of which was recorded on February 2, 2005. On December 18, 2007, the Debtors and AmTrust entered into a future advance mortgage note in the amount of $32,620,000 (the "**Future Advance Note**"), an amended, restated, and a consolidated mortgage note in the aggregate sum of $87,870,000 (the "**Consolidated Note**"), and a mortgage modification agreement (the "**Mortgage Modification Agreement**"). The Mortgage Modification Agreement was recorded on December 24, 2007 and provided that the Consolidated Note superseded the Original Land Note and the Future Advance Note in all respects.

Also on January 30, 2005, the Debtors and Ohio Savings entered into a mezzanine loan (the "**Mezzanine Loan**"), evidenced by the Revolving Second Mortgage Note (the "**Mezzanine Note**") in the principal amount of $44,250,000, and a mezzanine mortgage of the same date (the "**Mezzanine Mortgage**") in favor of Ohio Savings secured the Mezzanine Note. The parties (or their successors in interest) to the Mezzanine Note amended the Mezzanine Note on October 15, 2005, December 20, 2006, and April 20, 2007, and, in connection with these amendments, executed that certain First Mezzanine Mortgage Modification Agreement on October 12, 2005.

On December 18, 2007, the parties (or their successors in interest) to the Mezzanine Note entered into that certain Amended and Restated Mezzanine Note, which superseded and replaced all other amendments to the Mezzanine Note, and executed that certain Second Mezzanine Mortgage Modification Agreement, which was recorded on December 24, 2007.

On December 18, 2007, the Debtors and iStar entered into a revolving loan (the "**Revolving Loan**"), evidenced by the Revolving Promissory Note, dated December 18, 2007, in the principal amount of $25,000,000, and a revolver mortgage (the "**Revolver Mortgage**") of the same date in favor of iStar, which mortgage was recorded on December 24, 2007. On April 15, 2008, iStar assigned the Revolver Mortgage to AmTrust pursuant to that certain Assignment of Note, Mortgage, and Loan Documents, which was recorded on April 21, 2008.

The parties to the Land Loan, Mezzanine Loan, and the Revolving Loan entered into additional security agreements (the "**Security Agreements**") regarding each of the applicable loans. The Security Agreements for the Land Loan, Mezzanine Loan, and Revolving Loan were recorded on April 25, 2005, February 2, 2005, and December 24, 2007, respectively.

As of the Petition Date, the aggregate principal amount of the AMT Loan Claim was approximately $103,870,058.    AMT has filed a Proof of Claim in the amount of $132,105,836.93.

### C.    Other Creditors' Claims

As noted in the above chart, in addition to the indebtedness described in subsections (A) and (B) above, creditors have asserted Claims against the Debtors as follows: (i) a Claim in the approximate amount of $490,358.08 (plus statutory interest at 18% per annum) has been asserted by the Miami-Dade County Tax Collector, (ii) approximately $1,417,414.89 in the aggregate (plus interest) has been asserted by Holders of Secured Tax Certificate Claims, and (iii) approximately $17,536,201 in the aggregate has been asserted by multiple Holders of General Unsecured Claims. Claimants with prospective mechanics liens and other potential lien claimants junior in interest to the District and AMT are included within the Class 7 General Unsecured Claims as their liens are rendered unsecured by operation of law.

### <u>SIGNIFICANT EVENTS IN THE BANKRUPTCY CASES</u>

#### Introduction

On September 19, 2011, the Debtors filed separate voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.  Pursuant to the Debtors' filings, the Debtors have elected single asset real estate status under the Bankruptcy Code. Set forth below is a brief summary of certain significant matters or events which have occurred to date in the Bankruptcy Cases.

### DIP Financing Motion and Order[5]

On November 15, 2011, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 363, and 364 and Bankruptcy Rules 2002, 4001, 6004 and 6006: (I) Approving (A) Plan Term Sheet and (B) Reimbursement of Expenses; and (II) Authorizing Postpetition Financing* [ECF No. 45] (the "**DIP Financing Motion**"). The DIP Financing Motion sought approval of (i) approximately $750,000 in DIP financing from an affiliate of Terra, Terra Landmark LLC, and (ii) the Debtors' entry into a plan term sheet with Terra Landmark LLC. On November 30, 2011, the Bankruptcy Court entered an order continuing the hearing upon the DIP Financing Motion. [ECF No. 64]. On December 21, 2011, the Bankruptcy Court entered an order approving the DIP Financing Motion on a final basis as provided therein, including approval of the requested DIP financing, certain limited aspects of the proposed term sheet, and Terra Landmark LLC's role as sponsor for the Debtors' proposed plan of reorganization (the "**DIP Financing Order**"). [ECF No. 103].

### Bar Date

The Bankruptcy Court set January 19, 2012 as the deadline for all creditors other than governmental entities to file proofs of claim in these Bankruptcy Cases.

### Motion for Relief from the Stay

On October 28, 2011, the District filed a motion for relief from the automatic stay to, *inter alia*, take possession and control of the Real Property, obtain the appointment of a receiver, complete the foreclosure of the Real Property and sell the Real Property pursuant to Florida state law. [ECF No. 35]. On December 9, 2011, over the Debtors' objection, the Bankruptcy Court granted the District partial relief from the automatic stay to continue to prosecute its foreclosure action through entry of a final judgment. [ECF No. 75]. The Bankruptcy Court, at that time, ruled that the District could not include a foreclosure sale date in the final judgment and the Bankruptcy Court continued the motion for further hearing on the District's right to sell the Real Property to January 25, 2012. After the further hearing on January 25, 2012, the Bankruptcy Court denied the relief to sell the Real Property and affirmed its prior order allowing the District to obtain a judgment of foreclosure. [ECF No. 193].

### Motion to Terminate Exclusivity

On December 14, 2011, the Plan Proponents filed a motion to terminate exclusivity. [ECF No. 83]. The Bankruptcy Court initially continued the motion to terminate exclusivity to be heard simultaneously with the hearing on the Debtors' disclosure statement. The motion to terminate exclusivity was granted on January 25, 2012, thereby allowing the filing of this District Creditor Plan. [ECF No. 196]

### The Debtors' Plan and Disclosure Statement

On December 18, 2011, the Debtors filed their Joint Plan of Reorganization Under

---

[5] This description was provided by the Debtors.

Chapter 11 of the Bankruptcy Code (the "**Debtors' Plan**"). [ECF No. 94]. A few days later, on December 21, 2011, the Debtors filed their Disclosure Statement Relating to Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the **"Debtors' Disclosure Statement"**). [ECF No. 108].

The Plan Proponents filed a joint objection to the Debtors' Plan and Disclosure Statement. [ECF No. 169]. The U.S. Trustee filed an objection to the Debtors' Disclosure Statement containing fifteen (15) distinct objections to the Debtors' Disclosure Statement. [ECF No. 164]. The Miami-Dade Tax Collector also filed an objection to the Debtors' Disclosure Statement. [ECF No. 165]. At the hearing on the adequacy of the Debtors' Disclosure Statement, held on January 25, 2012, the Bankruptcy Court required the Debtors to file an amended disclosure statement and plan of reorganization and terminated exclusivity allowing competing plans to be filed. [ECF No. 196, 197].

### Motion to Convert or Dismiss Bankruptcy Cases

On January 23, 2012, the Plan Proponents filed a motion to convert or dismiss the Bankruptcy Cases (the "**Conversion Motion**"). [ECF No. 181]. As detailed below, the Plan Proponents will withdraw the Conversion Motion.

### District Creditor Plan and Settlement Term Sheet

On February 8, 2012, the Plan Sponsors filed a competing plan relative to the Debtors' Plan of Reorganization. After much negotiation, on March 1, 2012, the Plan Sponsors entered into a Settlement Term Sheet with the Debtors, Terra (the plan sponsor under the Debtors' plan of reorganization) and the Committee, a copy of which is attached to the Creditor District Disclosure Statement as **Exhibit 5.**

The Settlement Term Sheet provides for, among other things, the following: (i) the filing of this Creditor District Plan, as amended by the terms of the Settlement Term Sheet; (ii) the Debtors, Terra and Committee support of the Creditor District Plan (and withdrawal of the Debtors' Plan); (iii) a sale of the Property (which consists of the Real Property and related Personal Property as described in the Plan and the Sale Procedures Motion); (iv) formation of a Liquidating Trust to be funded with up to $2,250,000 in Cash to pay Creditors pursuant to the priorities dictated by the Bankruptcy Code; (v) withdrawal of the motion to convert or dismiss the Bankruptcy Cases; and (vi) opposition to the U.S. Trustee's motion to appoint a Chapter 11 trustee.

On March 23, 2012, the Plan Sponsors filed the Creditor District Plan as amended per the Settlement Term Sheet. The District Creditor Plan provides for a sale of the Debtors' Property and a Distribution of the net cash remaining in the Estates at Confirmation and proceeds of litigation to Creditors with Allowed Claims pursuant to the priorities dictated by the Bankruptcy Code. Holders of Interests will receive no Distribution under the District Creditor Plan. A Liquidating Trust will be formed and will receive the Excluded Assets (including Liquidating Trust Actions) and any other unencumbered assets upon the Effective Date of the Plan. The Liquidating Trustee shall administer those assets transferred to the Liquidating Trust, prosecute

Liquidating Trust Actions and reduce all to Cash to allow Distribution consistent with the District Creditor Plan.

### Sale of the Property

The District Creditor Plan contemplates a Sale of the Property pursuant to the Bid Procedures proposed by the Sale Procedures Motion to be filed in conjunction with this District Creditor Plan. The Sale Procedures Motion seeks entry of the Sale Procedures Order to establish procedures to obtain the highest and best bid for the sale of the Property including requirements to be a qualified bidder and the scheduling of an auction sale of the Property. The District has submitted its Stalking Horse Bid, which is a Qualified Bid under the Sale Procedures Order if approved as presently proposed. Terra shall be permitted to participate in the Auction sale consistent with the terms of the Bid Procedures, if it so chooses.

The Plan Proponents, through Florida Prime Holdings, LLC., have agreed to fund the Carveout in the amount of $2,250,000. The Carveout shall be payable on the Effective Date by the Plan Proponents in two installments, the first in the amount of $1,750,000 to the Liquidating Trust, and the Second in the amount of up to, but not in excess of, $500,000 to the Berger Singerman Trust Account for the benefit of Terra World Investments, LLC. In the event that the allowed DIP Loan Claim of Terra and the resulting agreed distribution to Terra is less than $500,000, the Second installment shall be sixty-seven (67%) of what Terra actually demonstrates it has funded under the Allowed DIP Loan Claim. In the event that the payment to Terra is less than $500,000 the balance shall be paid into the Liquidating Trust. Funds sufficient to pay the Carveout in full shall be deposited in the Arnstein & Lehr LLP Trust Account at least five (5) business days in advance of the Confirmation Hearing. $2,000,000 of this sum shall be deemed the District's deposit under the Purchase Agreement between the Debtors and the District. In the event the Amended District Creditor Plan is not confirmed, the Plan Proponents are relieved from any and all obligations and requirements to fund or make payments as set forth in the Amended District Creditor Plan and the funds held in escrow shall be returned to the Plan Proponents in such event. The Carveout shall be free and clear of all liens, claims and encumbrances of every kind except as otherwise set forth in the District Creditor Plan.

Further, in the event that this District Creditor Plan is not confirmed and the Sale does not occur before August 1, 2012, the Preliminary Sale Order shall provide for additional stay relief to allow the District to proceed to complete its foreclosure process, including but not limited to, selling the Property at foreclosure sale without further order from the Bankruptcy Court. Notwithstanding the foregoing, the Plan Proponents, the Debtors and the Committee will move expeditiously to obtain confirmation of the District Creditor Plan.

### SUMMARY OF THE DISTRICT CREDITOR PLAN

### Introduction

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize and/or liquidate its business for the benefit of itself and its creditors and Interests Holders. The formulation of a plan is the principal

objective of a Chapter 11 case. In general, a Chapter 11 plan (i) divides Claims and Interests into separate classes, (ii) specifies the property that each class is to receive under such plan, and (iii) contains other provisions necessary to the reorganization and/or liquidation of the debtor. Chapter 11 does not require each Holder of a Claim or Interests to vote in favor of the plan in order for the Bankruptcy Court to confirm a plan.  However, a plan must be accepted by the Holders of at least one impaired class of Claims without considering the votes of "insiders" within the meaning of the Bankruptcy Code.

The Bankruptcy Code affords a debtor an exclusive right to propose a plan of reorganization for a limited period of time. If the debtor is unable to propose a plan, parties in interest may propose their own plans for the debtor's estate. In this instance, the Debtors' exclusivity has terminated, and the Plan Proponents have proposed a plan of reorganization for the Debtors' Estates that does not have the legal infirmities that the Debtors' Plan has, and which will likely yield a greater return for all Creditors of the Debtors' Estates than the Debtors' Plan.

The summary of the District Creditor Plan contained herein addresses only certain provisions of the District Creditor Plan.  As a summary, it is qualified in its entirety by reference to the District Creditor Plan itself and any District Creditor Plan Documents which are referred to therein as being filed prior to Confirmation. Upon Confirmation and the Effective Date, the District Creditor Plan and the District Creditor Plan Documents referred to therein shall control and bind the Debtors, the Liquidating Trust, all of the Debtors' Creditors and Holders of Interests and other parties in interest except as expressly set forth in the District Creditor Plan. TO THE EXTENT THAT THE TERMS OF THIS DISTRICT CREDITOR DISCLOSURE STATEMENT VARY OR CONFLICT WITH THE TERMS OF THE DISTRICT CREDITOR PLAN, THE TERMS OF THE DISTRICT CREDITOR PLAN SHALL CONTROL.

The District Creditor Plan Documents (*i.e.* all documents that aid in effectuating the District Creditor Plan, including the Exhibits to the District Creditor Plan), if any, shall be filed with the Bankruptcy Court at least ten (10) days prior to the last day upon which Holders of Allowed Claims may file a Ballot to accept or reject the District Creditor Plan (the "**Voting Deadline**"); provided, however, that the Plan Proponents may amend the District Creditor Plan Documents through and including the Confirmation Date. Upon their filing with the Bankruptcy Court, the District Creditor Plan Documents may be inspected in the Clerk's Office during normal business hours or may be obtained from counsel for the Plan Proponents: Phillip M. Hudson III, at (305) 374-3330, Patricia A. Redmond at (305) 789-3553, and John B. Hutton, III at (305) 579-0730.

**Classification of Claims and Interests**

Section 1123 of the Bankruptcy Code provides that a plan of reorganization shall classify the Claims of a debtor's creditors and Interests of a debtor's equity Holders. The District Creditor Plan divides the Claims and Interests into eight classes.

Section 101(5) of the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," or a "right to an

equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." The Plan Proponents are required under § 1122 of the Bankruptcy Code to classify the Claims and Interests into separate Classes which contain Claims and Interests that are substantially similar to the other Claims and Interests within such Class.

The Plan Proponents believe that they have classified all Claims and Interests in compliance with the provisions of § 1122 of the Bankruptcy Code. However, it is possible that a Holder of a Claim or another interested party may challenge the classification of Claims and Interests contained in the District Creditor Plan and that the Bankruptcy Court may find that a different classification is required for the District Creditor Plan to be confirmed. In such event, it is the Plan Proponents' present intent, to the extent permitted by the Bankruptcy Court, to make such reasonable modifications of the classifications under the District Creditor Plan to provide for whatever classification might be required by the Bankruptcy Court for Confirmation and to use the District Creditor Plan acceptances received in this solicitation for the purpose of obtaining the approval of the Class or Classes of which the accepting Holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class in which such Holder was initially a member, or any other Class under the District Creditor Plan, by changing the composition of such Class and the vote required of that Class for approval of the District Creditor Plan. A reclassification of Claims after approval of the District Creditor Disclosure Statement might necessitate a resolicitation of acceptances or rejections of the District Creditor Plan.

## OVERVIEW OF THE DISTRICT CREDITOR PLAN

Under the District Creditor Plan, all of the Excluded Assets of the Debtors that exist as of Effective Date, but specifically excepting the Property, shall be transferred and conveyed to a liquidating trust (the "**Liquidating Trust**") and vest in the Liquidating Trust. A Liquidating Trustee shall be appointed under the District Creditor Plan to control the Liquidating Trust. The role of the Liquidating Trustee is to liquidate the Assets of the Liquidating Trust, prosecute any Causes of Action belonging to the Liquidating Trust (which specifically include Avoidance Actions and Causes of Action not arising from or relating to the Property or the Sale) and effectuate the Distributions under the District Creditor Plan. The Liquidating Trustee shall be bonded in favor of the Liquidating Trust in an amount equal to 150% of the cash assets transferred to the Liquidating Trust as of the Effective Date of the Plan, which shall be adjusted to account for increases in Liquidating Trust assets or decreases in Liquidating Trust assets due to distributions. The bond shall be paid by the Liquidating Trustee from Liquidating Trust assets. The Plan Proponents propose Kenneth A. Welt, as the Liquidating Trustee. The Debtors and the Committee support this choice.

All Creditors shall be paid pursuant to the statutory priorities under the Bankruptcy Code. As the Liquidating Trust assets are sold or proceeds from Causes of Action belonging to the Liquidating Trust are recovered, the Liquidating Trust will distribute the net proceeds of these assets pursuant to the District Creditor Plan and Liquidating Trust documents.

### Summary of District Creditor Plan Distributions

Set forth below is a summary of each Class of Claims and Interests and the expected Distributions under the District Creditor Plan to Holders of Allowed Claims against the Debtors. Any estimates of Claims set forth in this Disclosure Statement are approximate and are based on amounts scheduled by the Debtors and/or asserted by Creditors. Except as otherwise specifically provided in the District Creditor Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the District Creditor Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Interests.

### Unclassified Administrative Expense Claims

Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim shall be paid (a) on the Effective Date, an amount, in Cash equal to the Allowed Amount of its Administrative Expense Claim, in accordance with § 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by the Holder of such Allowed Administrative Expense Claim, the Plan Proponents and the Liquidating Trust, or (c) as otherwise ordered by order of the Bankruptcy Court.

All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Effective Date shall be paid to the United States Trustee by the Liquidating Trust by no later than thirty (30) days following the Effective Date. At the time of such payment, the Liquidating Trustee shall provide to the United States Trustee an appropriate affidavit indicating the disbursements for the relevant periods. Following the Effective Date, any such fees required pursuant to 28 U.S.C. § 1930(a)(6) arising or accruing from Distributions made by the Liquidating Trust or made under the District Creditor Plan shall also be paid by the Liquidating Trust.  All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon the applicable disbursements for the relevant post- confirmation periods and shall be made within the time period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a final order by the Bankruptcy Court on the Final Decree Date, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. The Liquidating Trustee shall provide to the United States Trustee at the time of each post-confirmation payment an appropriate affidavit indicating the disbursements for the relevant periods.

All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Bankruptcy Case to the extent not previously paid by the Debtors, shall be paid by the Liquidating Trust, or as otherwise provided for in the District Creditor Plan, in the ordinary course of business in accordance with contract terms or as may be otherwise agreed upon by the Holder of such Allowed Administrative Expense Claim, the Plan Proponents and the Liquidating Trust, or on the Effective Date.

Notwithstanding the above, Allowed Professional Fee Claims shall be paid in accordance with applicable orders of the Bankruptcy Court and the Bankruptcy Code, only after appropriate

order(s) allowing such fees and expenses have been entered.  The Plan Proponents reserve the right to object to any such Claims or withdraw or modify the District Creditor Plan if such Claims are deemed excessive in the Plan Proponents' sole discretion.

Estimated administrative claims include $408,581.24 requested by debtor's counsel, of which, $205,194.86 has been paid by Terra as of May 3, 2012.[6]  Counsel for the Creditor's Committee has requested $87,911.26 of which $50,000 has been paid by Terra as of May 3, 2012.  These respective amounts are for services rendered through January 31, 2012.  Counsel for the Creditor's Committee estimates that it will incur approximately $100,000 in additional fees in excess of the $50,000 already paid by Terra.  Subject to Court approval, the Committee intends to seek payment of all outstanding balances from the Carveout.  The Debtor has also incurred fees for chapter 11 professionals including the services of the feasibility consultant Fishkind & Associates who has requested $95,000, and been paid $95,000 by Terra as of May 3, 2012.  Fees for the appraisal services of Waronker & Rosen in the amount of $23,480 were also incurred, of which, $23,480 has been paid by Terra as of May 3, 2012.  The Debtor has incurred fees for an executive professional in the amount of $80,000, of which, $23,325.47 has been paid by Terra as of May 3, 2012.  The Debtor incurred fees for an accounting professional in the amount of $4,675, of which, $4,262 has been paid by Terra as of May 3, 2012.  The Debtor has incurred insurance costs of $11,492.26, of which, $11,492.26 has been paid by Terra as of May 3, 2012.  The Plan Proponents anticipate that there may be other administrative claims, but as this is a creditor plan, it is difficult for the Plan Proponents to further estimate administrative claims against the Debtor.  However, the Plan Proponents are unaware of any other material administrative claims at this time.

### Unclassified Priority Tax Claims

Unless otherwise agreed by the Holder of an Allowed Priority Tax Claim (in which event such other agreement shall govern), each Holder of an Allowed Priority Tax Claim shall receive at Closing of the Sale or, if later Allowed, on the 15th day after such Claim becomes Allowed, Cash equal to the amount of such Allowed Priority Tax Claim.

### Unclassified DIP Loan Claim

On December 21, 2011, the Bankruptcy Court entered the DIP Financing Order approving the DIP Financing Motion on a final basis.

Under the District Creditor Plan, Terra shall have an allowed superpriority administrative expense claim for the amounts advanced by it under the DIP Loan in an amount not to exceed $750,000 (the "DIP Loan Claim").  On the Effective Date, Terra shall be paid in Cash from the Estates of the Debtors an amount equal to sixty-seven (67%) of its DIP Loan Claim not to exceed $500,000 in full satisfaction of all Claims by Terra and its affiliates against the Debtors, their respective Estates and the Liquidating Trust.  In the event that the payment to Terra is less than $500,000 the balance shall be paid into the Liquidating Trust.  Payment of the Allowed DIP Loan Claim by the Estates of the Debtors shall be funded by the Carveout on the Effective Date.

---

[6] Counsel for Debtor has represented that it has reached an agreement with Terra which if fully performed will eliminate any fee claim that Debtor's counsel has against each respective Estate, and the Liquidating Trust.

The Plan Proponents shall have no further liability to the Estates or the Liquidating Trust other than specifically set forth in the District Creditor Plan.

The Plan Proponents and the Committee shall not object to the DIP Loan Claim and the treatment thereof as set forth herein (including any portion of the DIP Loan Claim relating to payments by Terra of fees and expenses of Debtors' professionals and Committee counsel), provided that this District Creditor Plan is confirmed and the Property is sold pursuant to the Bid Procedures and Sale contemplated therein.

### Classified Claims

Claims and Interests shall be treated under the District Creditor Plan in the manner set forth below and in Article 5 of the District Creditor Plan.  Except as otherwise specifically provided in the District Creditor Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the District Creditor Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Interests.

### Class 1: Other Unsecured Priority Claims

The Holder of an Allowed Other Unsecured Priority Claim, unless otherwise agreed to by such Holder, shall receive, in full satisfaction of such Claim, payment in Cash in the allowed amount of such Claim.  The payment shall be made on the later of the Distribution Date and the date such Claim becomes an Allowed Claim.

### Class 2: Secured Claim of Miami-Dade County Tax Collector

The Plan Proponents estimate that on the Effective Date, the Allowed Amount of the Secured Claims of Miami-Dade County Tax Collector (the "**Tax Collector**") will aggregate approximately $568,503.75, plus statutory interest.  Classes 2A-2D consist of the Secured Claims of the Tax Collector for 2011 Real Property taxes on the following properties:

Class 2A – Town Center at Doral LLC (Folio 35-3017-001-0240)

Class 2B – Landmark Club at Doral LLC (Folio 35-3017-001-0250)

Class 2C – Landmark at Doral South LLC (Folio 35-3017-001-0362)

Class 2D – Landmark at Doral East LLC (Folio 35-5017-001-0241)

The Secured Claims of the Tax Collector for unpaid 2011 Real Property taxes shall be paid in full and in Cash at Closing by the Buyer.  The claim treatment set forth is common to each subclass in Classes 2A-2D.

The Tax Collector's first priority tax liens shall be retained on each Real Property until said liens are paid in full.  Should payment in full of the 2011 Real Property taxes not be

made within the time specified above, the Tax Collector shall be authorized to collect said taxes pursuant to Florida law, including the sale of tax certificates at the next available sale.

The amount of 2011 taxes owed, as reflected in the records of the Tax Collector, shall only be considered final so long as no Miami-Dade County Value Adjustment Board petitions or any action in Florida's circuit court regarding the 2011 assessments of the Miami-Dade County Property Appraiser with respect to the taxed real property are pending in accordance with Florida law. In the event that such proceedings are pending, the amount of 2011 taxes owed shall not be deemed final until all administrative or judicial proceedings are concluded or the pending petitions are withdrawn. Any payments toward the 2011 Real Property taxes made by Debtors, such as statutorily-required good faith payments made in conjunction with administrative or judicial proceedings, shall be applied toward satisfaction of the Class 2 claims. In the event that administrative proceedings result in interim reductions in the 2011 assessments for which refunds to Debtors may be processed, Debtors authorize the Tax Collector to refrain from issuing said refunds pending final disposition of the assessment challenges. Should final disposition of the assessment challenges require such refunds, the Tax Collector shall issue said refunds to Debtors, or their designees, as expeditiously as possible.

The funds used to pay the Secured Claims of the Tax Collector shall not come from the Carveout or from any proceeds from the Sale of the Property.

Post-petition taxes for the years 2012 forward shall be paid in the ordinary course by the owner of the Property, post sale, pursuant to Florida law, and in a manner consistent with the provisions above with respect to determination of the final tax amounts owed and the issuance of any refunds. Because post-petition Real Property taxes are to be paid in the ordinary course, the Tax Collector shall not be required to petition for payment said taxes as an administrative expense.

### Class 3: Secured Tax Certificate Claims

The Secured Tax Certificate Claims shall be paid in full and in Cash by the Buyer at the Closing.

The funds used to pay the Secured Tax Certificate Claims shall not come from the Carveout or from any proceeds from the Sale of the Property, but shall be funded directly by the Buyer at Closing to the Tax Collector.

### Class 4: District's Secured Claim

A Sale of the Property to the District or its designee[7] shall reduce the amount of the Allowed Secured District Claim by the amount of the purchase price (including any credit bid) approved by the Final Sale Order, but the sale shall not cause a merger of title. In the event that the District or its designee is the Buyer, the Property shall be sold without waiving any rights to enforce or cause the enforcement of or the collection of any current Special Assessment lien not

---

[7] If the District is the Successful Bidder under the Bid Procedures the District may immediately designate a separate and distinct special purpose entity to take title to the Property at Closing.

satisfied by the proceeds of the Sale as well as any future, delinquent installments of the Special Assessments securing the Bonds, including but not limited to future accelerated principal amounts, interest, penalties or other amounts arising from any future delinquent payments.

If the Property is sold to a person or entity other than the District or its designee, then the District shall receive the proceeds of Sale in satisfaction of a portion of the Allowed Secured District Claim.  THE DISTRICT SHALL PROMPTLY TURN OVER SUCH PROCEEDS TO THE INDENTURE TRUSTEE.

Any resulting Unsecured Claim of the District shall become a Class 7 claim and be treated as such.

### Class 5: AMT Secured Claim

The Allowed AMT Claim shall be treated as a Class 7 – Unsecured Claim.

### Class 6: Other Secured Claims

To the extent the Collateral for an Other Secured Claim is the Property, if the Property is sold to the District or its designee, there shall be no Allowed Other Secured Claims and any such Claims will be treated as a Class 7- Unsecured Claim.

To the extent the Collateral for any Allowed Other Secured Claim consists of Property other than the Property being sole through the Sale process, the legal, equitable and contractual rights to which such Claim entitles the Holder of such Claim shall remain unaltered and shall be dealt with by the Liquidating Trustee.

### Class 7: Unsecured Claims

On the Distribution Date(s) and as more fully determined by the Liquidating Trustee, the Holders of Allowed Unsecured Claims shall receive a Pro Rata Share of the Cash in the Liquidating Trust Account pursuant to the terms of the Liquidating Trust.

The District's Class 7 Claim (for it deficiency) shall be subordinate for purposes of distribution to other class 7 Claims.  Notwithstanding the foregoing, the subordination of the District's Class 7 Claim is without prejudice to the effectiveness of future Special Assessments and liens to enforce any future Special Assessments if the District or its designee takes title to the Property at Closing and without prejudice to the District's right to vote its deficiency claim as a member of Class 7 under the Creditors District Plan.

### Class 8: Interests

The Holders of Class 8 Interests shall not receive a Distribution on account of their Interests and their Interests shall be cancelled upon Confirmation.

### Presumed Acceptance of the District Creditor Plan by Unimpaired Classes

Classes 1 and 2 are Unimpaired under the District Creditor Plan. Pursuant to § 1126(f) of the Bankruptcy Code, such Classes and the Holders of Claims in such Classes are conclusively presumed to have accepted the District Creditor Plan and, thus, are not entitled to vote on the District Creditor Plan. Accordingly, votes of Holders of Claims in Classes 1 and 2 are not being solicited by the Plan Proponents.

Except as otherwise expressly provided in the District Creditor Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Plan Proponents or the Liquidating Trust in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

### Acceptance by Impaired Classes

Classes 3, 4, 5, 6, 7 and 8 are Impaired under the District Creditor Plan. Because the District Creditor Plan does not entitle the Holders of Interests in Class 8 to receive or retain any property under the District Creditor Plan on account of such Interests, Class 8 and each Holder of an Interests in this Class is deemed to have rejected the District Creditor Plan in accordance with § 1126(g) of the Bankruptcy Code. Accordingly, the Plan Proponents are not required to solicit votes of Class 8 with respect to the acceptance or rejection of the District Creditor Plan. Classes 3, 4, 5, 6 and 7 are entitled to vote to accept or reject the District Creditor Plan. Pursuant to § 1126(c) of the Bankruptcy Code, a Class of Claims shall have accepted the District Creditor Plan if (a) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the District Creditor Plan and (b) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the District Creditor Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the District Creditor Plan.

### Impairment Controversies

If a controversy arises as to whether any Claim or Interests, or any Class of Claims or Class of Interests, is Impaired under the District Creditor Plan, such Claim, Interests or Class shall be treated as specified in the District Creditor Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Interests, or a particular Class of Claims or Class of Interests, under the District Creditor Plan.

### Effective Date

The District Creditor Plan will not be fully implemented immediately upon Confirmation. It will instead be fully implemented on the Effective Date. The Effective Date will not occur unless the conditions precedent set forth in the District Creditor Plan (and as described hereafter) are satisfied or waived by the Plan Proponents. The District Creditor Plan provides that the

Effective Date will occur on the first Business Day on which all of the conditions to the occurrence of the Effective Date have been satisfied.

### Rejection of Certain Executory Contracts and Unexpired Leases

Except as otherwise provided in the District Creditor Plan and/or the Sale Procedures Motion, all executory contracts and unexpired leases that existed between the Debtors and another Person or Entity as of the Petition Date shall be deemed rejected by the Debtors as of the Effective Date (collectively, the "**Rejected Contracts**"), unless previously assumed pursuant to order of the Bankruptcy Court or there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume any executory contract or unexpired lease.  Entry of the Confirmation Order shall constitute approval of the Rejected Contracts.

### Damages Arising from Rejection of any Executory Contract or Unexpired Lease

**Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court and served upon the Liquidating Trustee on the earlier of (1) thirty (30) days following the date of any order approving the rejection or (2) thirty (30) days following the Confirmation Date, or such Claim shall be forever barred and unenforceable against the Debtors' Estates.** Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Class 7 Allowed Claims.  Any such Claims that become Disputed Claims shall be Class 7 Disputed Claims for purposes of administration of Distributions under the District Creditor Plan to Holders of Class 7 Allowed Claims. The District Creditor Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

## MEANS OF IMPLEMENTATION OF THE DISTRICT CREDITOR PLAN

### General Overview of the Means of Funding District Creditor Plan Distributions

The general structure for the implementation of the District Creditor Plan and the Distributions involves the following: (1) the Sale of the Property; (2) the creation of the Liquidating Trust; (3) the vesting of all of the Debtors' Excluded Assets, and specifically excluding the Property, in the Liquidating Trust on the Effective Date of the District Creditor Plan; (4) the appointment of the Liquidating Trustee to administer the Liquidating Trust; (5) the establishment of the Liquidating Trust Account; and (6) effectuation of Distributions to Holders of Allowed Claims pursuant to the priorities dictated by the Bankruptcy Code as set forth in the District Creditor Plan and Liquidating Trust.

### Sale of Property

The District Creditor Plan contemplates a Sale of the Property pursuant to the Bid Procedures proposed by the Sale Procedures Motion to be filed in conjunction with this District Creditor Plan.  The Sale Procedures Motion seeks entry of the Sale Procedures Order to establish

procedures to obtain the highest and best bid for the sale of the Property including requirements to be a qualified bidder and the scheduling of an auction sale of the Property. The District has submitted its Stalking Horse Bid, which shall be a Qualified Bid under the proposed Sale Procedures Order. Terra shall be permitted to participate in the Auction sale consistent with the terms of the Bid Procedures, if it so chooses.

The Plan Proponents, through Florida Prime Holdings, LLC., have agreed to fund the Carveout in the amount of $2,250,000. The Carveout shall be payable on the Effective Date by the Plan Proponents in two installments, the first in the amount of $1,750,000 to the Liquidating Trust, and the Second in the amount of up to, but not in excess of, $500,000 to the Berger Singerman Trust Account for the benefit of Terra World Investments, LLC. In the event that the allowed DIP Loan Claim of Terra and the resulting agreed distribution to Terra is less than $500,000, the Second installment shall be sixty-seven (67%) of what Terra actually demonstrates it has funded under the Allowed DIP Loan Claim. In the event that the payment to Terra is less than $500,000 the balance shall be paid into the Liquidating Trust. Funds sufficient to pay the Carveout in full shall be deposited in the Arnstein & Lehr LLP Trust Account at least five (5) business days in advance of the Confirmation Hearing. $2,000,000 of this sum shall be deemed the District's deposit under the Purchase Agreement between the Debtors and the District. In the event the Amended District Creditor Plan is not confirmed, the Plan Proponents are relieved from any and all obligations and requirements to fund or make payments as set forth in the Amended District Creditor Plan and the funds held in escrow shall be returned to the Plan Proponents in such event. The Carveout shall be free and clear of all liens, claims and encumbrances of every kind except as otherwise set forth in the District Creditor Plan.

### Transfer of Certain Assets

Upon the Effective Date, the Carveout and all of the Excluded Assets of the Debtors will automatically vest in the Liquidating Trust free and clear of all liens, claims and encumbrances of any kind. Except to the extent necessary to preserve or maintain any of the Liquidating Trust Causes of Action, all of the Debtors' Interests in the Excluded Assets will be extinguished as of the Effective Date.

### Corporate Action

All matters provided for under the District Creditor Plan involving the corporate structure of the Debtors, or any corporate action to be taken by or required of the Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the Debtors, Liquidating Trust or Liquidating Trustee.

### Section 1146 Exemption

Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the District Creditor Plan or any District Creditor Plan Document, or the revesting, transfer or sale of the Property of, by or in the Debtors

pursuant to, in implementation of or as contemplated by the District Creditor Plan or any District Creditor Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing (including without limitation a Sale of the Property as approved by the Final Sale Order), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, except any

Special Assessment lien of the District as provided for herein, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Effectuating Documents; Further Transactions

The Liquidating Trustee and the Debtors shall be authorized and required to, execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the District Creditor Plan or to otherwise comply with applicable law. The Plan Proponents and/or the Liquidating Trustee may seek an order from the Bankruptcy Court compelling the Debtors to take any action necessary to effect the terms of the confirmed District Creditor Plan.

### Preservation of Causes of Action

All Causes of Action relating to or arising from the Property and the Sale are being sold as a Sale asset and shall be deemed transferred and assigned to the Buyer at Closing without the necessity of future action.

All other Causes of Action (not included in the Sale) and Avoidance Actions shall be deemed assigned and transfer to the Liquidating Trust (the "Liquidating Trust Causes of Action") without the necessity for further action. Notwithstanding anything to the contrary, Liquidating Trust Causes of Action shall include any and all pre or post petition claims and causes of action relating to the operation or management of the Debtors' businesses and financial affairs, including without limitation breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, negligence and malpractice. With respect to the Liquidating Trust Causes of Action, the Liquidating Trustee shall retain all rights on behalf of the Debtors and the Liquidating Trust, to commence and pursue these actions as the Liquidating Trustee deems appropriate. Liquidating Trust Causes of Action shall include any and all pre or post petition claims and causes of action relating to the operation or management of the Debtors' businesses and financial affairs, including without limitation breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, negligence and malpractice.

There may be numerous Liquidating Trust Causes of Action which currently exist or may subsequently arise which, because the facts upon which such Causes of Action are based are not

fully or currently known by the Liquidating Trustee, cannot be raised during the pendency of the Bankruptcy Case (collectively, the "Unknown Causes of Action"). With respect to the Liquidating Trust Causes of Action, these actions shall be retained and expressly reserved by the Liquidating Trustee for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such actions upon or after the Confirmation or consummation of the District Creditor Plan.

The preservation of the Liquidating Trust Causes of Action in no way serves to revive any such action already released before the Confirmation Date, nor does it alter or modify any such release.

### Retention of Jurisdiction

The District Creditor Plan provides for the retention of jurisdiction by the Bankruptcy Court following the Effective Date to, among other things, determine all disputes relating to Claims, Interests and other issues presented by or arising under the District Creditor Plan. The Bankruptcy Court will also retain jurisdiction under the District Creditor Plan and over the Liquidating Trust, for any actions brought in connection with the implementation and consummation of the District Creditor Plan and the transactions contemplated thereby.

### Waiver and Release of Claims Against the Plan Proponents

**Effective as of the Confirmation Date, the entry of the Confirmation Order shall act as and constitute an automatic waiver and release of any and all claims or causes of action of any type or nature of any Creditor, the Debtors, Terra, Terra Landmark, LLC or any of their Affiliates, officers or directors have or may have against the Plan Proponents, individually or collectively, and their respective professionals, regarding the Bankruptcy Cases, other than claims or causes of action for gross negligence or willfulness misconduct. Nothing contained in the District Creditor Plan, the District Creditor Disclosure Statement or the Liquidating Trust Documents to the contrary shall be valid or effective and this waiver/release shall bind the Liquidating Trust, the Liquidating Trustee and any subsequent Chapter 11 or Chapter 7 trustee.**

### Waiver and Release of Claims Against the Debtors and Terra by the Plan Proponents

**Effective as of the Confirmation Date, the entry of the Confirmation Order shall act as and constitute an automatic waiver and release of any and all claims or causes of action of any type or nature, the Plan Proponents, individually and collectively and their respective professionals, may have against the Debtors or Terra, or any of their respective Affiliates, officers or directors, regarding the Bankruptcy Cases, other than claims or causes of action for gross negligence or willful misconduct, and except for the Debtors or Terra's respective obligations under the Settlement Term Sheet or the District Creditor Plan and any claims or causes of action relating thereto.**

## PROVISIONS GOVERNING DISTRIBUTIONS

### Determination of Claims

Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than sixty (60) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Liquidating Trustee), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on (i) counsel for the Plan Proponents; (ii) the Liquidating Trustee and (iii) such other parties as the Bankruptcy Court may direct.  If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 7 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Liquidating Trustee receives actual notice of the filing of such Claim.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Liquidating Trustee effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Liquidating Trustee effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution.  Upon receipt of a timely-filed Proof of Claim, the Plan Proponents, the Liquidating Trustee or other party in interest may file a request for estimation along with an objection to the Claim set forth therein.  The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution.  Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration

to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

### Substantive Consolidation and Waiver of Intercompany Claims

The Bankruptcy Cases, the Debtors and their respective Estates shall be deemed to be substantively consolidated for purposes of voting, distribution, and implementation of the terms of this Plan.  As a result of the substantive consolidation, the assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied from the assets of a single consolidated estate.  Any Claim filed or asserted against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, against another Debtor shall be treated as combined into a single Claim against the consolidated estate of the Debtors and shall be entitled to Distributions only with respect to such single Claim.   For purposes of determining the availability of any right of setoff under Bankruptcy Code section 553, the Debtors will be treated as one entity so that (subject to the other provisions of Bankruptcy Code section 553) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors.  Further, holders of Allowed Claims who assert identical Claims against multiple Debtors shall be entitled to a single satisfaction of such Claims.  In addition, all Intercompany Claims shall be eliminated, waived, and forever expunged.

Notwithstanding the foregoing, the substantive consolidation of the Debtors shall not constitute or effectuate a merger of the corporate or other legal identities of the Debtors, and their respective corporate and other legal identities shall remain intact, except as otherwise specified in the Plan.  Further, the substantive consolidation of the Debtors shall not affect, impair or disturb in any way the Sale of the Property pursuant to the Plan, the Preliminary Sale Order and the Final Sale Order.

## CONDITIONS PRECEDENT

### Conditions Precedent to Confirmation of the District Creditor Plan

The following are conditions precedent to Confirmation of the District Creditor Plan:

> The Bankruptcy Court shall have made such findings and determinations regarding the District Creditor Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the District Creditor Plan, in form and substance satisfactory to the Plan Proponents.

> The Bankruptcy Court shall have entered the Preliminary Sale Order.

> The Bankruptcy Court shall have denied confirmation of any plan other than the District Creditor Plan.

### Conditions Precedent to the Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or may be waived by the Plan Proponents in accordance with Article

10.3 of the District Creditor Plan:

> The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents on the Docket of the Bankruptcy Cases, and no stay of the Confirmation Order shall be in effect.

> The entry and effectiveness of all necessary orders by the Bankruptcy Court, and by any appellate court exercising jurisdiction over the Bankruptcy Cases.

> The Sale of the Property shall have been closed.

**Waiver of Conditions Precedent to the Effective Date**

The conditions precedent set forth in Article 10.2 of the District Creditor Plan may be waived by the Plan Proponents unless the Bankruptcy Court has entered an order prohibiting any such waiver.

## POST CONFIRMATION ESTATES

On the Effective Date, the Cash (excluding any sale proceeds of the Property to be paid to Secured Creditors), all Liquidating Trust Actions, all Excluded Assets of the Debtors and their Estates, and the Liquidating Trust's portion of the Carveout funded by Florida Prime Holdings, LLC., shall be transferred to, and vest in, the Liquidating Trust.  The Liquidating Trust shall be administered by the Liquidating Trustee. The Liquidating Trustee shall have the exclusive power and authority to investigate, prosecute, and settle any or all of the Liquidating Trust Causes of Action and shall be compensated based upon a reasonable hourly rate.  It shall cause proceeds of or recoveries on the Liquidating Trust Actions to be distributed in accordance with the District Creditor Plan.

The Debtors will transfer their Cash and all other Excluded Assets of their Estates, along with the obligation to pay Administrative and Priority Claims to the Liquidating Trust and the Liquidating Trust will become obligated to make Distributions in accordance with this District Creditor Plan.

For federal income tax purposes the Liquidating Trust will be treated as a "liquidating trust," as defined in Treasury Regulation Section 301.7701-4(d), and will therefore be taxed as a grantor trust of which the beneficiaries thereof will be treated as the owners and grantors.

The Liquidating Trustee will apprise each of the Holders of Allowed Claims of valuations of the net assets transferred to the Liquidating Trust on the behalf of and for the benefit of such Holder in form and substance reasonably acceptable to the Liquidating Trustee, as required by the District Creditor Plan, and such valuations should be used consistently by the Liquidating Trust and such Holders for all federal income tax purposes.  All such valuations shall be filed with the Bankruptcy Court.

The Liquidating Trustee may be compensated based on his reasonable and customary

hourly rate.  The Liquidating Trustee upon application and further order of the court engage counsel, financial advisors and other professionals to represent him in connection with his duties hereunder (the "Post-Confirmation Professionals").  The Liquidating Trustee and the Post-Confirmation Professionals may be paid 80% of their fees and 100% of their expenses on a monthly basis prior to filing fee applications.  However, the Liquidating Trustee and the Post-Confirmation Professionals shall file periodic fee applications, in conformity with Local Rule 2016-1 (B)(3)(b) seeking approval of fees and expenses to be awarded by the Bankruptcy Court, including approval of the amounts previously paid on a monthly basis.  Upon the filing of each such application, the Liquidating Trustee and the Post-Confirmation Professionals shall be entitled to request the payment of some or all of any pending holdbacks in fees.

**From and after the Confirmation Date, the Liquidating Trustee and its Professionals shall be exculpated by all Persons and Entities, including, without limitation, Holders of Claims and Interests and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon these parties by the District Creditor Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the District Creditor Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of the Liquidating Trustee or its Professionals.  No Holder of a Claim or Interests or other party in interest shall have or pursue any Claim or Cause of Action against the Plan Proponents, individually or collectively, the Liquidating Trustee or their respective Professionals for making payments in accordance with the District Creditor Plan or for implementing the provisions of the District Creditor Plan.  The Liquidating Trust shall be authorized to obtain (by using Cash in the Liquidating Trust) insurance coverage with respect to the responsibilities, liabilities and obligations of the Liquidating Trustee and those Persons hired by the Liquidating Trustee to discharge such responsibilities, liabilities and obligations.**

**The Liquidating Trustee, the Liquidating Trust, the employees thereof and each of their professionals and representatives shall be and hereby are exculpated by all Entities, including, without limitation, Holders of Claims and other parties in interest, from any and all Claims, Causes of Action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Liquidating Trust and Liquidating Trustee by the District Creditor Plan or any Order of the Bankruptcy Court entered pursuant to or in furtherance of the District Creditor Plan, or applicable law or otherwise, except only for actions or omissions to act only to the extent determined by a final order to be due to their own respective gross negligence or willful misconduct after the Effective Date.  No Holder of a Claim or other party in interest will have or be permitted to pursue any claim or cause of action against the Liquidating Trustee, the Liquidating Trust or the employees, professionals or representatives of either the Liquidating Trustee or the Liquidating Trust for making payments in accordance with the District Creditor Plan or for implementing the provisions of the District Creditor Plan except in cases of gross negligence or willful misconduct.  The Debtors, the Debtors' Estates and the Liquidating Trust shall indemnify, defend and hold harmless the Liquidating Trustee, and the Liquidating Trustee's professionals or representatives from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees) (other than**

only to the extent determined by a Final Order to be due to their own respective gross negligence or willful misconduct after the Effective Date) to the fullest extent permitted by applicable law.  The Debtors' obligations to indemnify those officers, directors, employees, financial advisors consultants, accountants, attorneys, investment bankers, agents and representatives for service after the Petition Date shall be assumed by the Liquidating Trust.

### Establishment of Liquidating Trust Account and Reserve Account; Continued Corporate Existence; Dissolution of the Debtors

On the Effective Date, the Liquidating Trustee shall:

(1)     Establish and fund the Liquidating Trust Account and Reserve Account as provided for in the District Creditor Plan; and

(2)     In making Distributions, the Liquidating Trustee shall retain in the Liquidating Trust Account and/or the Reserve Account sufficient cash to fund the Post-Confirmation Fees and Expenses, including the reasonably anticipated fees and expenses of the Liquidating Trustee and its professionals that are incurred after the Confirmation Date.

After the Effective Date, the Liquidating Trustee shall:

(1)     Continue to liquidate as promptly as practicable the assets of the Liquidating Trust;

(2)     Present objections to Claims as the Liquidating Trustee deems appropriate;

(3)     Cause the Distributions to occur that the District Creditor Plan contemplates; and

(4)     Wind up the affairs of the Liquidating Trust consistent with applicable non-bankruptcy law.

As soon as practicable, the Liquidating Trustee shall (i) effectuate the dissolution of the Debtors in accordance with the laws of the State of Florida and any other applicable law, and (ii) cause the Bankruptcy Cases to be closed.

### Dissolution of the Committee

On the first (1st) Business Date following the Effective Date, and provided that the Liquidating Trust has become effective pursuant to the Plan, the Committee shall be dissolved and the Committee, its members, and professionals retained by the Committee in accordance with section 1103 of the Bankruptcy Code will be released and discharged from their respective

fiduciary obligations, duties, and responsibilities arising from or related to the Bankruptcy Cases, except with respect to (i) prosecuting applications for professionals' compensation; (ii) asserting, disputing and participating in the resolution of Professional Fee Claims; and (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof. Upon the conclusion of (i) through (iii), the Committee shall be immediately dissolved, released, and discharged.

### Professional Fees and Expenses

Each person requesting compensation in the Debtors' Bankruptcy Cases pursuant to §§ 326, 327, 328, 330, 331, or 1103 of the Bankruptcy Code on account of services performed or Claims otherwise arising prior to the Confirmation Date shall file an application for final allowance of compensation and reimbursement of expenses on or prior to the 30th (thirtieth) Business Day after such date. Failure to timely file an application for such compensation shall result in the claim for such compensation being forever barred. Objections to such applications shall be filed no later than 15 (fifteen) days after completion of service of such applications.

### Insurance Preservation

Nothing in the District Creditor Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any Claims against the Debtors or any other Person.

### Release of Liens

On the Effective Date, except as otherwise provided in the District Creditor Plan as to any Liens of the District, all mortgages, deeds of trust, Liens or other security interest against the property of the Estates shall be released, except to the extent a preexisting, valid lien of a Secured Creditor shall continue to attach to the relevant Collateral in the hands of the Liquidating Trust.

### No Liability for Tax Claims

Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtors or the Post Confirmation Estates for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

## RETENTION OF JURISDICTION

### General Retention

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective

Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the District Creditor Plan are carried out.

### Specific Purposes

In addition to the general retention of jurisdiction set forth in Article 12.1, after Confirmation of the District Creditor Plan and until the Bankruptcy Cases are closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Cases for the following specific purposes:

(1)     to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interests, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Interests;

(2)     to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Cases, the District Creditor Plan or the Confirmation Order (including regarding the effect of any release, discharge, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the District Creditor Plan have been satisfied);

(3)     to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under §§ 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Cases; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after Confirmation of the District Creditor Plan unless an objection to such fees and expenses has been made by the Liquidating Trustee;

(4)     to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the District Creditor Plan) for the rejection, assumption, or assignment of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any cure Claims;

(5)     to determine any and all motions, applications, adversary proceedings, contested or litigated matters, Causes of Action, and any other matters involving the Debtors commenced in connection with, or arising during, the Bankruptcy Cases and pending on the Effective Date, including approval of proposed settlements thereof;

(6)     to enforce, interpret and administer the terms and provisions of the District Creditor  Plan and the District Creditor Plan Documents;

(7)     to modify any provisions of the District Creditor Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(8)     to consider and act on the compromise and settlement of any Claim against or Interests in the Debtors or the Estates;

(9)     to assure the performance by the Debtors of their obligations under the District Creditor Plan;

(10)    to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the District Creditor Disclosure Statement, the District Creditor Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the District Creditor Plan, including the adjustment of the date(s) of performance under the District Creditor Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the District Creditor Plan may be substantially realized thereby;

(11)    to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case;

(12)    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the District Creditor Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the District Creditor Plan, the District Creditor Disclosure Statement or the Confirmation Order, including the District Creditor Plan Documents;

(13)    to enter the Final Sale Order and all other orders as may be necessary or appropriate to effectuate or consummate the Sale of the Property;

(14)    to review and approve any sale or transfer of assets or Property by the Liquidating Trust, and to determine all questions and disputes regarding such sales or transfers;

(15)    to determine all questions and disputes regarding title to the assets of the Debtors, or the Liquidating Trust;

(16)    to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtors arising on or prior to the Effective Date or arising

on account of transactions contemplated by the District Creditor Plan, including to determine any motion that may be filed after the Effective Date as necessary to obtain a tax refund from the Internal Revenue Service;

(17)    to resolve any determinations which may be requested by the Liquidating Trustee of any unpaid or potential tax liability or any matters relating thereto under §§ 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

(18)    to resolve any disputes concerning any release of or limitation of liability as to a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder;

(19)    to determine any motions or contested matters relating to the Causes of Action commenced in the Bankruptcy Court, whether brought before or after the Effective Date;

(20)    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the District Creditor Plan or the Confirmation Order;

(21)    to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(22)    to determine any other matters that may arise in connection with or relating to the District Creditor Plan, the District Creditor Disclosure Statement, the Confirmation Order, or the District Creditor Plan Documents;

(23)    to enter such orders as are necessary to implement and enforce the injunctions described herein;

(24)    to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

(25)    to enter an order concluding and terminating the Bankruptcy Case.

**Reopening of the Bankruptcy Case**

In addition to the retention of jurisdiction set forth in Articles 12.1 and 12.2, the

Bankruptcy Court shall retain jurisdiction of the Bankruptcy Cases to enter an order reopening the Bankruptcy Case after they have been closed.

## MODIFICATION OF DISTRICT CREDITOR PLAN

### Modification of District Creditor Plan

The Plan Proponents may modify the District Creditor Plan at any time prior to the entry of the Confirmation Order provided that the District Creditor Plan, as modified, and the District Creditor Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements, and the terms of the Settlement Term Sheet.

After the entry of the Confirmation Order, the Plan Proponents or the Liquidating Trustee (as the case may be) may modify the District Creditor Plan to remedy any defect or omission or to reconcile any inconsistencies in the District Creditor Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the District Creditor Plan, provided that (a) the Plan Proponents or the Liquidating Trust (as the case may be) obtains Bankruptcy Court approval for such modification, after notice and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Interests under the District Creditor Plan.

After the Confirmation Date and before substantial consummation of the District Creditor Plan, the Plan Proponents or the Liquidating Trust (as the case may be) may modify the District Creditor Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Interests, provided that (a) the District Creditor Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Plan Proponents or the Liquidating Trust (as the case may be) obtains Bankruptcy Court approval for such modification, after notice and a hearing; (c) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of Allowed Claims or by at least two-thirds in amount of Allowed Interests voting in each Class adversely affected by such modification; and (d) the Plan Proponents and the Liquidating Trust (as the case may be) complies with § 1125 of the Bankruptcy Code with respect to the District Creditor Plan, as modified.

Notwithstanding anything to the contrary contained in Article 13.1 of the District Creditor Plan or elsewhere in the District Creditor Plan, the District Creditor Plan may not be altered, amended or modified without the written consent of the Plan Proponents or the Liquidating Trustee (as the case may be).

## REQUIREMENTS FOR CONFIRMATION OF THE DISTRICT CREDITOR PLAN AND CONFIRMATION OVER OBJECTIONS

### Confirmation and Acceptance by All Impaired Classes

At the Confirmation Hearing, the Bankruptcy Court will confirm the District Creditor Plan if all of the requirements of Bankruptcy Code § 1129 are met. Among the requirements for confirmation of a plan are that the plan be accepted by all Impaired Classes of Claims and

Interests, and satisfaction of the matters described below.

A plan may be confirmed only if it is not likely to be followed by a liquidation or the need for further financial reorganization of a debtor. In this case, the Debtors' Assets are being sold, so the "feasibility" test is not applicable.

### Best Interests Standard

The Bankruptcy Code requires that the District Creditor Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the District Creditor Plan, property having value not less than the amount which the Class members would have received or retained if the Debtors were liquidated under Chapter 7 on the same date. The Plan Proponents believe that Distributions to all Impaired Classes of Claims in accordance with the terms of the District Creditor Plan would exceed the net Distribution that would otherwise take place in Chapter 7, and will also exceed Distributions that would take place under the previously proposed Debtors' plan. In a hypothetical Chapter 7 liquidation, assuming the Estates' interest in the Estates' assets are abandoned after determining the validity, priority, and extent of the District's lien, and assuming the District, or its designee, takes title to the assets, there will be no available proceeds for distribution to Creditors. The District has filed Proofs of Claim asserting a secured claim in a total amount of $111,814,679.70, and AMT, whose claim is secured by a mortgage lien junior to the District, has filed a Proof of Claim in the amount of $132,105,836.93. Even assuming no liquidation costs, the District would receive only a partial recovery on its secured claim. Moreover, there is no conceivable scenario in which the liquidation value of the Estates' assets exceeds the aggregate amount of the District's and AMT's claims - $243,920,516.63. Thus, in a hypothetical Chapter 7 liquidation, no junior class, including general unsecured creditors, would receive any distribution. By contrast, under the District Creditor Plan, unsecured creditors will share in the Liquidating Trust which will include, at a minimum, a distribution from the Carveout to general unsecured creditors. The Debtors have no ability to fund litigation for the benefit of Creditors or pay a Distribution to Unsecured Creditors. Thus, Creditors will receive more under the District Creditor Plan than any alternative proposed by the Debtors.

### Confirmation Without Acceptance by all Impaired Classes

If one or more of the Impaired Classes of Claims does not accept the District Creditor Plan, it may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram-down" provisions of the Bankruptcy Code, if the District Creditor Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes.

A.    Discriminate Unfairly

The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. The Plan Proponents believe that the District Creditor Plan does not "discriminate unfairly" with respect to any Class of Claims or Interests because no class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank, and the treatment under

the District Creditor Plan follows the Distribution scheme dictated by the Bankruptcy Code.

        B.      Fair and Equitable Standard

        The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its allowed Claims or Interests before any junior class receives any Distribution. The Plan Proponents believe the District Creditor Plan is fair and equitable to all Classes pursuant to this standard.

        With respect to the Impaired Classes of Claims, Bankruptcy Code § 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that (i) each Holder of a Claim of such a class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the Holder of any Claim or Interests that is junior to the Claims of such class will not receive or retain any property under the plan on account of such junior Claim or Interests.

        The Plan Proponents believe that the District Creditor Plan satisfies the absolute priority rule or any exception thereto. Accordingly, if necessary, the Plan Proponents believe the District Plan meets the requirements for Confirmation by the Bankruptcy Court, notwithstanding the nonacceptance by an Impaired Class of Claimants.

**Non-Confirmation of the District Creditor Plan**

        If the District Creditor Plan is not confirmed, the potential alternatives include (a) alternative plans under Chapter 11, (b) dismissal of the Bankruptcy Cases, or (c) conversion of the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code.

        In a Chapter 7 case, the Debtors' Assets would be sold and distributed to the Unsecured Creditors after the payment of all Secured Claims, costs of administration and the payment of Priority Claims.

        Another alternative is for the Court to consider the Debtors' amended plan. That plan will likely provide for the transfer of the Debtors' Assets to Terra or its Affiliates and for the Debtors' current management to retain their respective positions. The Debtors' amended plan cannot feasibly provide for payment of Unsecured Claims. The Debtors' amended plan will require the modification of claims in violation of the Bankruptcy Code and will not be able to garner unanimous support. Accordingly, the Debtors' amended plan if allowed to proceed will likely fail. The cost of distributing the District Creditor Plan and this District Creditor Disclosure Statement, as well as the costs, if any, of soliciting acceptances, will be borne by the Plan Proponents.

<u>**TAX CONSEQUENCES OF THE DISTRICT CREDITOR PLAN**</u>

        **THE PLAN PROPONENTS HAVE NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE DISTRICT CREDITOR PLAN. ALL CREDITORS ARE URGED TO CONSULT WITH TAX PROFESSIONALS**

**REGARDING ANY TAX CONSEQUENCES THAT MAY RESULT FROM THE AMENDED DISTRICT CREDITOR PLAN**

## MISCELLANEOUS PROVISIONS

### No Admissions

The District Creditor Disclosure Statement and District Creditor Plan provide for the resolution, settlement and compromise of Claims against and Interests in the Debtors.  Nothing in these documents shall be construed to be an admission of any fact or otherwise binding upon the Plan Proponents or the Debtors' Estates in any manner prior to the Effective Date.

### Revocation or Withdrawal of the District Creditor Plan

The Plan Proponents reserve the right to revoke or withdraw the District Creditor Plan prior to the Confirmation Date pursuant to the terms of the Settlement Term Sheet.  If the Plan Proponents revoke or withdraw the District Creditor Plan, or if Confirmation of the District Creditor  Plan does not occur, then the District Creditor Plan shall be deemed null and void in all respects and nothing contained in the District Creditor Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Interests in, the Debtors' Estates or any other Person, or (b) prejudice in any manner the rights of the Estates or any other Person in any further proceedings involving the Debtors.

### Further Assurances

Both the Debtors and the Liquidating Trustee are authorized and directed to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the District Creditor Plan.

### Headings

The headings and table of contents used in the District Creditor Plan are for convenience and reference only and shall not constitute a part of the District Creditor Plan for any other purpose or in any manner affect the construction of the provisions of the District Creditor Plan.

### Notices

All notices, requests or other documents in connection with, or required to be served by, the District Creditor Plan shall be in writing and shall be sent by first class United States Mail, postage prepaid, or by overnight delivery by a recognized courier service, to counsel for the Plan Proponents: Arnstein & Lehr LLP, 200 South Biscayne Blvd., Suite 3600, Miami, Florida 33131, Attn:  Phillip M. Hudson III (counsel for Florida Prime Holdings, LLC); Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Museum Tower, 150 West Flagler Street, Suite 2200, Miami, Florida 33130, Attn: Patricia A. Redmond (counsel for the District); Billing, Cochran, Lyles, Mauro & Ramsey, PA, Suntrust Center, 515 East Las Olas Boulevard, Sixth Floor, Fort Lauderdale, FL 33301, Attn: Dennis E. Lyles (counsel for the District); and Greenberg Traurig,

P.A., 333 Avenue of Americas, Miami, Florida 33131, Attn: John B. Hutton, III and John R. Dodd (counsel for the Indenture Trustee), or to the Liquidating Trust c/o [_____]. A copy of such notice, request or other document shall be sent to Debtors' counsel:  Blizin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Ave., Suite 2300, Miami, Florida 33131, Attn:  Mindy A. Mora; and the Committee's counsel:  Genovese Joblove & Battista P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131, Attn: Glenn D. Moses.

### Governing Law

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the District Creditor Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the District Creditor Plan provides otherwise, the rights and obligations arising under the District Creditor Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

### Limitation on Allowance

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Interests except as otherwise specified in the District Creditor Plan or as Allowed by a Final Order of the Bankruptcy Court.

### Estimated Claims

To the extent any Claim is estimated for any purpose other than for voting on the District Creditor Plan, then in no event shall such Claim be allowed in an amount greater than the estimated amount.

### Consent to Jurisdiction

Upon any default under the District Creditor Plan, the Plan Proponents and the Liquidating Trustee consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any Distribution or payment under or in connection with the District Creditor Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim, by voting on the District Creditor Plan, by reason of being served with notice of the filing of the Bankruptcy Cases or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Cases, all Creditors, Holders of Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the District Creditor Plan or the Bankruptcy Case, including the matters and purposes set forth in Article 12 of the District Creditor Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the District Creditor Plan.

**Setoffs**

Subject to the limitations provided in § 553 of the Bankruptcy Code, the Liquidating Trust may, but shall not be required to, set off against any Claim and the payments or other Distributions to be made pursuant to the District Creditor Plan in respect of such Claim, Claims of any nature whatsoever the Debtors' Estates may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such Claim that the Debtors' Estates may have against the Holder of such Claim.

**Successors and Assigns**

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the District Creditor Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**No Interest**

Except as expressly stated in the District Creditor Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose.

**Modification of Payment Terms**

The Liquidating Trust reserves the right to modify the treatment of any Allowed Claim, as provided in § 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**Entire Agreement**

The District Creditor Plan sets forth the entire agreement and undertakings relating to the subject matter thereof and supersedes all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter thereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

**Severability of District Creditor Plan Provisions**

If, prior to Confirmation of the District Creditor Plan, any term or provision of the District Creditor Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the Plan Proponents' request, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any

such holding, alteration or interpretation, the remainder of the terms and provisions of the District Creditor Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the District Creditor Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

### Confirmation Order and District Creditor Plan Control

To the extent the Confirmation Order or the District Creditor Plan is inconsistent with the District Creditor Disclosure Statement or any agreement entered into between the Plan Proponents or the Liquidating Trust and any third party, unless otherwise expressly provided in the District Creditor Plan or the Confirmation Order, the District Creditor Plan controls over the District Creditor Disclosure Statement and any such agreement, and the Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the District Creditor Plan.

### Computation of Time

In computing any period of time prescribed or allowed by the District Creditor Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### Substantial Consummation

The District Creditor Plan shall be deemed to be substantially consummated within the meaning of § 1101 of the Bankruptcy Code upon commencement by the Liquidating Trustee of the Distributions described in the District Plan.

### District Creditor Plan Documents

The District Creditor Plan Documents (if any) shall be filed with the Bankruptcy Court at least ten (10) days prior to the Voting Deadline; provided, however, that the Plan Proponents may amend the District Creditor Plan Documents through and including the Confirmation Date. Upon their filing with the Bankruptcy Court, the District Creditor Plan Documents may be inspected in the Clerk's Office during normal business hours or may be obtained from the Plan Proponents' counsel.

### Waiver of Stay

The Confirmation Order shall provide for a waiver of the 14 day stay under Bankruptcy Rule 3020(e) and any stay that may be imposed under Federal Rule of Civil Procedure 62(a).

### <u>SUMMARY, RECOMMENDATION AND CONCLUSION</u>

The District Creditor Plan provides for an orderly and prompt Distribution to Holders of Allowed Claims against the Debtor. The Plan Proponents believe that their efforts to maximize

the return for Creditors have been full and complete. The Plan Proponents further believe that the District Creditor Plan is in the best interests of all Creditors, even though Unsecured Creditors may not be paid in full. In the event of the Confirmation of the Debtors' proposed plan or a liquidation of the Debtors' Assets under Chapter 7 of the Bankruptcy Code, the Plan Proponents believe that Unsecured Creditors would not receive as much as they would under the District Creditor Plan. For these reasons, the Plan Proponents urge that the District Creditor Plan is in the best interests of all Creditors and that the District Creditor Plan be accepted.

**Respectfully submitted,**

**ARNSTEIN & LEHR LLP**
PHILLIP M. HUDSON III
Florida Bar No. 518743
*Attorneys for Florida Prime Holdings, LLC*
200 S. Biscayne Blvd., Suite 3600
Miami, Florida 33131
Telephone:    (305) 374-3330
Telefax:        (305) 374-4744
Email:  pmhudson@arnstein.com

**STEARNS WEAVER MILLER WEISSLER**
  **ALHADEFF & SITTERSON, P.A.**
  PATRICIA A. REDMOND
  Florida Bar No. 303739
  *Attorneys for the District*
  Museum Tower, Suite 2200
  150 West Flagler Street
  Miami, Florida 33130
  Telephone: (305) 789-3553
  Fax:          (305) 789-3395
  Email: predmond@stearnsweaver.com

**GREENBERG TRAURIG, P.A.**
JOHN B. HUTTON, III
Florida Bar No. 902160
JOHN R. DODD
Florida Bar No. 38091
*Attorneys for the Indenture Trustee*
333 Avenue of Americas
Miami, Florida 33131
Telephone: (305) 579-0730
Fax:          (305) 579-0717
Email: huttonj@gtlaw.com doddj@gtlaw.com