UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re

TOWN CENTER AT DORAL, L.L.C., *et. al.,*          Chapter 11

             Debtors.          Case No. 11-35884-RAM
                                      Jointly Administered

---

**AMENDED JOINT PLAN OF REORGANIZATION BY LANDMARK AT DORAL
COMMUNITY DEVELOPMENT DISTRICT, U.S. BANK NATIONAL ASSOCIATION,
AS INDENTURE TRUSTEE, AND FLORIDA PRIME HOLDINGS, LLC**

---

**STEARNS WEAVER MILLLER WEISSLER
 ALHADEFF & SITTERSON, P.A.**
PATRICIA A. REDMOND
Florida Bar No. 303739
*Attorneys for the District*
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3553
Fax:      (305) 789-3395
Email: predmond@stearnsweaver.com

**GREENBERG TRAURIG, P.A.**
JOHN B. HUTTON, III
Florida Bar No. 902160
JOHN R. DODD
Florida Bar No. 38091
*Attorneys for the Indenture Trustee*
333 Avenue of Americas
Miami, Florida 33131
Telephone: (305) 579-0730
Fax:      (305) 579-0717
Email: huttonj@gtlaw.com
       doddj@gtlaw.com

**ARNSTEIN & LEHR LLP**
PHILLIP M. HUDSON III
Florida Bar No. 518743
*Attorneys for Florida Prime Holdings, LLC*
200 S. Biscayne Blvd., Suite 3600
Miami, Florida 33131
Telephone:    (305) 374-3330
Telefax:      (305) 374-4744
Email:  pmhudson@arnstein.com

March 23, 2012

**Exhibit 2**

PURSUANT TO § 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS AMENDED PLAN (THE "**DISTRICT CREDITOR PLAN"**) SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE DISTRICT CREDITOR PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE DISTRICT CREDITOR PLAN.  THE PLAN PROPONENTS RESERVE THE RIGHT TO FILE A FURTHER AMENDED OR A FURTHER AMENDED AND RESTATED PLAN AND A FURTHER AMENDED OR FURTHER AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTORS' HISTORY, BUSINESS, PROPERTIES, AND RESULTS OF OPERATIONS; A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASES; AND THE MEANS OF IMPLEMENTING AND FUNDING THE DISTRICT CREDITOR PLAN. ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE DISTRICT CREDITOR PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE DISTRICT CREDITOR PLAN.

ON MARCH 1, 2012, THE PLAN PROPONENTS ENTERED INTO A SETTLEMENT TERM SHEET WITH THE DEBTORS, THE COMMITTEE AND TERRA LANDMARK LLC ("TERRA"), THE TERMS OF WHICH HAVE BEEN INCORPORATED INTO THIS DISTRICT CREDITOR PLAN.  AS A RESULT, THE DEBTOR, THE COMMITTEE AND TERRA SUPPORT CONFIRMATION OF THIS DISTRICT CREDITOR PLAN AND ENCOURAGE CREDITOR ACCEPTANCE OF THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE DISTRICT CREDITOR PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## TABLE OF CONTENTS

**ARTICLE 1:  INTRODUCTION**……………………………………………………………  1

**ARTICLE 2:  DEFINED TERMS; RULES OF CONSTRUCTION** ....................................  2

2.1    Defined Terms ....................................................................................  2
2.2    Rules of Construction ........................................................................  15
2.3    Plan Proponents ................................................................................  15

**ARTICLE 3:  TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
PRIORITY TAX CLAIMS AND DIP LOAN CLAIM**............................  16

3.1    Administrative Expense Claims........................................................  16
3.2    Priority Tax Claims ...........................................................................  17
3.3    DIP Loan Claim ................................................................................  17

**ARTICLE 4:  DESIGNATION OF CLASSES OF CLAIMS AND
INTERESTS** ........................................................................................  17

4.1    Class 1: Other Unsecured Priority Claims........................................  17
4.2     Class 2: Secured Claims of Tax Collector .......................................  17
4.3    Class 3: Secured Tax Certificate Claims...........................................  18
4.4    Class 4: District's Secured Claims....................................................  18
4.5    Class 5: AMT Secured Claim ...........................................................  18
4.6    Class 6: Other Secured Claims .........................................................  18
4.7    Class 7: Unsecured Claims ...............................................................  18
4.8    Class 8:  Interests .............................................................................  18

**ARTICLE 5: TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ................  18

5.1    Unclassified Claims ..........................................................................  18
5.2    Class 1: Other Unsecured Priority Claims........................................  19
5.3    Class 2: Secured Claims of Tax Collector ........................................  19
5.4    Class 3: Secured Tax Certificate Claims ..........................................  20
5.5    Class 4: District's Secured Claim .....................................................  20
5.6    Class 5: AMT Secured Claim ...........................................................  21
5.7    Class 6: Other Secured Claims  ........................................................  21
5.8    Class 7: Unsecured Claims ...............................................................  21
5.9    Class 8:  Interests .............................................................................  21

**ARTICLE 6: ACCEPTANCE OR REJECTION OF THE DISTRICT
CREDITOR PLAN** ..............................................................................  21

6.1    Presumed Acceptance of the District Creditor Plan by Unimpaired Classes ....  21
6.2    Acceptance by Impaired Classes .......................................................  22
6.3    Impairment Controversies..................................................................  22

**ARTICLE 7:  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........................................................................................ 22

7.1    Rejection of Certain Executory Contracts and Unexpired Leases ..................... 22
7.2    Damages Arising from Rejection of any Executory Contract or Unexpired Lease ......................................................................................... 23

**ARTICLE 8: MEANS OF IMPLEMENTATION OF THE DISTRICT CREDITOR PLAN** ................................................................................... 23

8.1    General Overview of the Means of Funding District Creditor Plan Distributions ........................................................................................... 23
8.2    Sale of  the Property .......................................................................... 23
8.3    Transfer of Certain Assets ................................................................... 24
8.4    Corporate Action .............................................................................. 24
8.5    Section 1146 Exemption ..................................................................... 24
8.6    Effectuating Documents, Further Transactions ...................................... 24
8.7    Preservation of Causes of Action ......................................................... 25
8.8    Retention of Jurisdiction .................................................................... 25
8.9.   Waiver and Release of Claims Against the Plan Proponents ..................... 25
8.10   Waiver and Release of Claims Against the Debtors and Terra by the Plan Proponents .......................................................................................... 26

**ARTICLE 9:  PROVISIONS GOVERNING DISTRIBUTIONS** ..................................... 26

9.1    Determination of Claims ..................................................................... 26
9.2    Substantive Consolidation and Waiver of Intercompany Claims ..................... 28

**ARTICLE 10: CONDITIONS PRECEDENT** ....................................................................... 28

10.1   Conditions Precedent to Conformation of the District Creditor Plan ............... 28
10.2   Conditions Precedent to the Effective Date ............................................ 28
10.3   Waiver of Conditions Precedent to the Effective Date ................................. 29

**ARTICLE 11: POST CONFIRMATION ESTATE** ............................................................. 29

11.1   Establishment of Liquidating Trust Account and Reserve account; Continued Corporate Existence; Dissolution of Debtors ................................. 31
11.2   Dissolution of the Committee ............................................................. 31
11.3   Professional Fees and Expenses ......................................................... 32
11.4   Insurance Preservation ..................................................................... 32
11.5   Release of Liens ............................................................................. 32
11.6   No Liability for Tax Claims ................................................................. 32

**ARTICLE 12: RETENTION OF JURISDICTION** ............................................................. 32

12.1    General Retention ................................................................................................ 32
12.2    Specific Purposes ............................................................................................... 33
12.3    Reopening of Bankruptcy Cases ......................................................................... 35

**ARTICLE 13: MODIFICATION OF DISTRICT CREDITOR
PLAN AND CONFIRMATION OVER OBJECTIONS** ............................. 36

13.1    Modification of District Creditor Plan ................................................................ 36
13.2    Confirmation over Objections ............................................................................ 36

**ARTICLE 14: MISCELLANEOUS PROVISIONS** ................................................. 37

14.1    No Admissions ................................................................................................... 37
14.2    Revocation or Withdrawal of the District Creditor Plan ..................................... 37
14.3    Further Assurances ............................................................................................. 37
14.4    Headings ............................................................................................................ 37
14.5    Notices ............................................................................................................... 37
14.6    Governing Law ................................................................................................... 38
14.7    Limitation on Allowance .................................................................................... 38
14.8    Estimated Claims ............................................................................................... 38
14.9    Consent to Jurisdiction ...................................................................................... 38
14.10   Setoffs ............................................................................................................... 39
14.11   Successors and Assigns ...................................................................................... 39
14.12   No Interest ......................................................................................................... 39
14.13   Modification of Payment Terms ......................................................................... 39
14.14   Entire Agreement ............................................................................................... 39
14.15   Severability of District Creditor Plan Provisions ................................................ 39
14.16   Confirmation Order and District Creditor Plan Control ...................................... 40
14.17   Computation of Time ......................................................................................... 40
14.18   Substantial Consummation ................................................................................. 40
14.19   District Creditor Plan Documents ....................................................................... 40
14.20   Waiver of Stay ................................................................................................... 41

# ARTICLE 1:  INTRODUCTION

Landmark At Doral Community Development District, a local unit of special purpose government (the "**District**"), U.S. Bank National Association, solely as indenture trustee with regard to the Bonds and the Indenture, and Florida Prime Holdings, LLC (collectively, the "**Plan Proponents**") propose the following plan of reorganization (the "**District Creditor Plan**") of the Estates of Town Center at Doral, LLC; Landmark at Doral East, LLC; Landmark at Doral South, LLC; Landmark Club at Doral, LLC; and Landmark at Doral Developers, LLC (collectively, the "**Debtors**") and the resolution of the outstanding Claims against and Interests in the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and requests Confirmation of the District Creditor Plan pursuant to § 1129 of the Bankruptcy Code.[1] Capitalized terms used herein shall have the meanings ascribed to such terms in Article 2.1 of the District Creditor Plan. The Plan Proponents are the proponent of the District Creditor Plan within the meaning of § 1129 of the Bankruptcy Code.

In summary, but subject to more specific details provided herein, the District Creditor Plan provides for a sale of the Debtors' Property and a Distribution of the net cash remaining in the Estates at Confirmation and proceeds of litigation to Creditors with Allowed Claims pursuant to the priorities dictated by the Bankruptcy Code.  Holders of Interests will receive no Distribution under the District Creditor Plan.  A Liquidating Trust will be formed and will receive the Excluded Assets (including Liquidating Trust Actions) and any other unencumbered assets upon Confirmation.  The Liquidating Trustee shall administer those assets transferred to the Liquidating Trust, prosecute Liquidating Trust Actions and reduce all to Cash to allow Distribution consistent with the District Creditor Plan.

Under § 1125(b) of the Bankruptcy Code, a vote to accept or reject the District Creditor Plan cannot be solicited from the Holder of a Claim or Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. The District Creditor Disclosure Statement was conditionally approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and has been distributed simultaneously with the District Creditor Plan to all parties whose votes are being solicited. The District Creditor Disclosure Statement contains, among other things, (a) a discussion of the Debtors' history, business, property, and results of operations, (b) a summary of significant events which have occurred to date in the Bankruptcy Case, (c) a summary of the means of implementing and funding the District Creditor Plan, and (d) the procedures for voting on the District Creditor Plan. No materials, other than the accompanying District Creditor Disclosure Statement and any Exhibits attached thereto or referenced therein, have been approved by the Plan Proponents for use in soliciting acceptances or rejections of the District Creditor Plan.

ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE DISTRICT CREDITOR PLAN ARE ENCOURAGED TO READ THE DISTRICT CREDITOR PLAN AND THE DISTRICT CREDITOR DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE DISTRICT CREDITOR PLAN.

---

[1] This District Creditor Plan is conditional upon the District's approval of this District Creditor Plan and related Plan Documents at its meeting currently scheduled for March 26, 2012.

Subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, those restrictions on modifications to the District Creditor Plan set forth in Article 13 of the District Creditor Plan and the terms of the Settlement Term Sheet, the Plan Proponents expressly reserve the right to alter, amend, modify, revoke or withdraw the District Creditor Plan, one or more times, prior to the District Creditor Plan's substantial consummation.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE DISTRICT CREDITOR PLAN AND IN THE ACCOMPANYING DISTRICT CREDITOR DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE A PARTY, OR THE EFFECT OF CONFIRMATION OF THE DISTRICT CREDITOR PLAN ON HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE PLAN PROPONENTS AND NOT TO ANY OTHER PARTY.

THE DISTRICT CREDITOR PLAN AND THE DISTRICT CREDITOR DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.

ON MARCH 1, 2012, THE PLAN PROPONENTS ENTERED INTO A SETTLEMENT TERM SHEET WITH THE DEBTORS, THE COMMITTEE AND TERRA LANDMARK LLC ("TERRA"), THE TERMS OF WHICH HAVE BEEN INCORPORATED INTO THIS DISTRICT CREDITOR PLAN.  AS A RESULT, THE DEBTOR, THE COMMITTEE AND TERRA SUPPORT CONFIRMATION OF THIS DISTRICT CREDITOR PLAN AND ENCOURAGE CREDITOR ACCEPTANCE OF THIS PLAN.

## ARTICLE 2:  DEFINED TERMS AND RULES OF CONSTRUCTION

### 2.1    Defined Terms

2.1.1    As used in the District Creditor Plan, the following terms (which appear in the District Creditor Plan as capitalized terms) shall have the meanings set forth below:

"*Administrative Expense*" means (a) any cost or expense of administration of the Bankruptcy Case that is allowed under §§ 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or

assumed by the Debtors in Possession in the ordinary course of their business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under §§ 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by Final Order of the Bankruptcy Court; provided, however, that, when used in the District Creditor Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, or, unless otherwise expressly provided in the District Creditor Plan, any of the Claims in Classes 1 through 7.

"**Administrative Expense Claim**" means any Claim for the payment of an Administrative Expense.

"**Administrative Expense Claims Bar Date**" means the date established by one or more orders of the Bankruptcy Court as the deadline for the filing by any creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim; provided, however, that (a) unless otherwise ordered by the Bankruptcy Court, the Administrative Expense Claims Bar Date for the filing by any Professional of a final application for services rendered or reimbursement for expenses incurred through and including the Effective Date shall be no later than thirty (30) days after the Effective Date, and (b) to the extent the Bankruptcy Court has entered an order establishing a different and specific deadline for a Creditor or other party in interest to file an Administrative Expense Claim, the date set forth in such order shall be deemed to be the Administrative Expense Claims Bar Date as to such Creditor or other party in interest. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application, motion, request or other Bankruptcy Court- approved pleading by the applicable Administrative Expense Claims Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claims against the Debtors, any of its Assets or the Estate, and such Holders shall not be entitled to participate in any Distribution under the District Creditor Plan on account of any such Administrative Expense Claims.

"**Affiliate**" has the meaning ascribed to such term in § 101(2) of the Bankruptcy Code.

"**Allowed Amount**" means the dollar amount in which a Claim is allowed.

"**Allowed Claim**" means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (i) no objection to the allowance thereof has been filed within the time allowed for the making of

objections as fixed by the District Creditor Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with the District Creditor Plan; (b) in a Final Order; or (c) pursuant to the terms of the District Creditor Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

"**Allowed Class ... Claim**" means an Allowed Claim in the particular Class described.

"**AMT Loan**" means the debt obligation owed to AMT CADC Ventures, LLC by the Debtors, in the aggregate principal amount of approximately $103,870,058, relating to (i) those certain loans made by Ohio Savings Bank to the Debtors on or about January 30, 2005, as subsequently amended and (ii) that certain loan made by iStar Financial, Inc. to the Debtors on or about December 18, 2007, as subsequently assigned.

"**AMT Loan Claim**" means the claim arising from the AMT Loan.

"**Assets**" means all assets of the Debtors of any nature whatsoever as of the Effective Date.

"**Avoidance Actions**" mean all actions and rights to recover transfers voidable or recoverable under §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

"**Ballot**" means the Ballot accompanying the District Creditor Disclosure Statement upon which Holders of Impaired Claims or Impaired Interests entitled to vote on the District Creditor Plan shall indicate their acceptance or rejection of the District Creditor Plan in accordance with the Voting Instructions.

"**Bankruptcy Cases**" means the cases currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which were commenced by the Debtors on the Petition Date and are jointly administered as Case No. 11-35884-RAM.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated under § 2075 of title 28 of the United States Code, and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

"*Bar Date*" means January 19, 2012, the date set forth in the Notice of Chapter 11 Case, Meeting of Creditors, and Deadlines, issued by the Clerk in the Bankruptcy Cases, as the last day for all Creditors, other than a Governmental Unit, to file Proofs of Claim against the Debtors in the Bankruptcy Cases.

"*Bid Procedures*" mean the bid procedures approved by the Bankruptcy Court in the Preliminary Sale Order.

"*Bondholder*" or "*Prime*" means Florida Prime Holdings, LLC, as beneficial holder of 100% of the outstanding Bonds.

"*Bonds*" means the Landmark at Doral Community Development District (City of Doral, Florida) Special Assessment Bonds, Series 2006A and Series 2006B.

"*Business Day*" means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in Tampa, Florida are required or authorized to close by law.

"*Buyer*" means the purchaser of the Property as approved by the Bankruptcy Court pursuant to the Final Sale Order.

"*Carveout*" means $2,250,000 to be paid to the Liquidating Trust by the Plan Proponents at Confirmation, which Carveout shall be free and clear of all liens, claims and encumbrances of any kind.

"*Cash*" means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the District Creditor Plan with respect to a Distribution under the District Creditor Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Liquidating Trust, as the case may be, drawn on a domestic bank.

"*Causes of Action*" means any and all of the Debtors' or the Debtors' Estates' actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including (a) the Liquidating Trust Actions and (b) any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party. When used in the District Creditor Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by order of the Bankruptcy Court or in writing by the Debtors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of Plan Proponents to describe such Cause of Action with specificity in the District Creditor Plan or in the District Creditor Disclosure Statement.

"*Claim*" has the meaning ascribed to such term in § 101(5) of the Bankruptcy Code.

Notwithstanding anything to the contrary contained herein, when used in the District Creditor Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of Claim, whenever and wherever such Claim may arise.

"***Class***" means a category of Claims or Interests classified together as described in Article 4 of the District Creditor Plan.

"***Clerk***" means the Clerk of the Bankruptcy Court.

"***Clerk's Office***" means the Office of the Clerk of the Bankruptcy Court located at the Claude Pepper Federal Building, 51 S.W. First Avenue, Room 1510, Miami, Florida 33130.

"***Closing***" means that date that the Sale is consummated and title to the Property is transferred to the Buyer.

"***Collateral***" means Assets in which the Debtors' Estates have an Interests and that secures, in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

"***Confirmation***" or "***Confirmation of the District Creditor Plan***" means the approval of the District Creditor Plan by the Bankruptcy Court at the Confirmation Hearing.

"***Confirmation Date***" means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).

"***Confirmation Hearing***" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the District Creditor and related matters pursuant to § 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"***Confirmation Order***" means the order of the Bankruptcy Court in the Bankruptcy Cases confirming the District Creditor Plan pursuant to § 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented, which order (including as amended, modified or supplemented) shall be in form and substance satisfactory to the Liquidating Trust.

"***Creditor***" means the Holder of a Claim, within the meaning of § 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, and Priority Claims.

"***Creditors' Committee***" means the official committee of unsecured creditors appointed in the Bankruptcy Cases pursuant to section 1102(a) of the Bankruptcy Code.

"***Cure Costs***" mean the amounts necessary to cure any payments required to be paid under any executory contract or unexpired lease as a condition precedent to the assumption and assignment at Closing as agreed upon between the Buyer and the lessor to the executory contract or unexpired lease or as determined by the Bankruptcy Court.

"***Debt***" has the meaning ascribed to such term in § 101(12) of the Bankruptcy Code.

"***Debtors***" means collectively, Town Center at Doral, LLC; Landmark at Doral East, LLC; Landmark at Doral South, LLC; Landmark Club at Doral, LLC; and Landmark at Doral Developers, LLC.

"***Debtors in Possession***" means collectively, Town Center at Doral, LLC; Landmark at Doral East, LLC; Landmark at Doral South, LLC; Landmark Club at Doral, LLC; and Landmark at Doral Developers, LLC, as debtors in possession in the Bankruptcy Cases.

"***DIP Loan Claim***" means any Claim arising out of the DIP Loan.

"***DIP Loan***" means any loan made by Terra Landmark, LLC to the Debtors as Postpetition financing, including the loan approved by Order of the Bankruptcy Court dated December 20, 2011.

"***Disallowed Claim***" means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

"***Disclosure Statement Approval Order***" means the Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing dated _____,    entered    in    the Bankruptcy Cases.

"***Disputed Claim***" means any Claim (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) or (b) above, as to which an objection has been or may be timely filed or deemed filed under the District Creditor Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled or denied by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the

amount of the Claim as scheduled.

"***Distribution***" means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the District Creditor Plan.

"***Distribution Date***" means the date on which there are sufficient funds in the District Creditor Plan Account for the Liquidating Trust to make a Distribution to a Class on a final basis, or sufficient funds in the Liquidating Trust Account for the District Creditor Plan to make a Distribution to a Class on an interim basis, at the Liquidating Trustee's discretion.

"***District***" means Landmark at Doral Community Development District, a community development district, which is a local unit of special purpose government of the State of Florida created by the Board of County Commissioners of Miami-Dade County, Florida pursuant to Chapter 190, Florida Statutes.

"***District Creditor Disclosure Statement***" means the Amended Disclosure Statement for the Amended Joint Plan of Landmark At Doral Community Development District, U.S. Bank National Association, as Indenture Trustee, and Florida Prime Holdings LLC for Liquidation of Debtors' Estates, dated March 23, 2012, including all attached Exhibits attached, as submitted and filed pursuant to § 1125 of the Bankruptcy Code in respect of the Bankruptcy Cases and conditionally approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

"***District Claim***" means the Claim arising from the Special Assessments which is secured by a lien on the Property.

"***District Creditor Plan***" means this Amended Joint Plan of Reorganization by Landmark At Doral Community Development District, U.S. Bank National Association, As Indenture Trustee, and Florida Prime Holdings, LLC For Liquidation of Debtors' Estates, dated March 23, 2012, and all Exhibits to the District Creditor Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the District Creditor Plan, the Bankruptcy Code and the Settlement Term Sheet.

"***District Creditor Plan Documents***" means all documents that aid in effectuating the District Creditor Plan, including the Exhibits to the District Creditor Plan, which documents shall be filed with the Bankruptcy Court in accordance with Section 14.19.

"***Docket***" means the docket or dockets in the Bankruptcy Cases maintained by the Clerk.

"***Effective Date***" means, and shall occur on, the first Business Day on which all of the conditions to the occurrence of the Effective Date contained in Article 10.2 of the District Creditor Plan have been satisfied or waived (as provided in Article 10.2 of the District Creditor Plan).

"***Entities Entitled to Notice***" means (a) counsel to the District; (b) counsel to the

Indenture Trustee; (c) counsel to Florida Prime Holdings, LLC; (d) counsel to the Debtors; (e) the United States Trustee; (f) counsel to the Committee; (g) parties who have filed a notice of appearance; and (h) all parties set forth on the Court Mailing Matrix.

"***Entity***" has the meaning ascribed to such term in § 101(15) of the Bankruptcy Code.

"***Escrow Agent***" means any Entity, including a bank or title company that holds Deposits as escrow agent.

"***Estates***" means the estates created for the Debtors by § 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Cases.

"***Estimation Hearing***" means a hearing for the estimation of Claims under § 502(c) of the Bankruptcy Code.

"***Excluded Assets***" means all Cash of the Debtors, Liquidating Trust Causes of Action, and other unencumbered Assets not part of the District's Collateral.

"***Exhibit***" means an exhibit annexed to the District Creditor Plan or to the District Creditor Disclosure Statement, as the context requires.

"***Final Decree***" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"***Final Decree Date***" means the date on which the Final Decree, obtained after a hearing on the Entities Entitled to Notice and to such other Entities as the Bankruptcy Court may direct, has been entered on the Docket.

"***Final Order***" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"***Final Sale Order***" means the Final Order entered by the Bankruptcy Court approving the Sale of the Property.

"***Governmental Unit***" means a governmental unit as such term is defined in § 101(27) of the Bankruptcy Code.

"***Holder***" means (a) as to any Claim, (i) the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or Holder of such Claim has transferred the Claim to a third party and advised the Debtors in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Interest, the record owner or Holder of such Interest as shown on the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court.

"***Impaired***" refers to any Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"***Indenture***" means the Master Trust Indenture and that First Supplemental Trust Indenture, both dated as of October 1, 2006 under which the District issued the Bonds.

"***Indenture Trustee***" means U.S. Bank National Association, solely as trustee with regard to the Bonds and under the Indenture.

"***Interests***" means any and all membership interests in the Debtors, including any and all options, warrants or similar instruments for the acquisition of such membership interests, and any and all rights to subscribe to or convert into shares of such membership interests.

"***Liabilities***" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtors or any Affiliate, Subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any Affiliate, Subsidiary, predecessor, successor or assign thereof, any assets of the Debtors (including the Assets), the business or operations of the Debtors, the Bankruptcy Case, or the District Creditor Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the District Creditor Plan, the term "Liabilities" shall not include any obligation of the Debtor expressly set forth in the District Creditor Plan.

"***Lien***" means, with respect to any Asset, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Asset, whether voluntary or involuntary and whether arising by law, contract or otherwise.

"***Liquidating Trust***" means that certain trust to be formed pursuant to Florida law into which the Carveout and Excluded Assets shall be transferred for administration, adjudication,

disposition and conversion to cash. The Liquidating Trust, through the Liquidating Trustee, shall pay Holders of Allowed Claims the net proceeds generated by the Liquidating Trust pursuant to the Bankruptcy Code, the District Creditor Plan and the Liquidating Trust documents.

"*Liquidating Trust Account*" means the account established by the Liquidating Trustee into which all of the Debtors' Cash and net Cash proceeds from the sale, transfer or other disposition of the Excluded Assets shall be deposited.

"*Liquidating Trust Agreement*" means the trust agreement that documents the powers, duties and responsibilities of the Liquidating Trustee, and which agreement will be filed with the Bankruptcy Court within 14 days of the Confirmation Hearing and incorporated in the Confirmation Order.

"*Liquidating Trust Causes of Action*" means collectively the Avoidance Actions and all Causes of Action not sold and transferred to the Buyer at Closing (i.e. all Causes of Action <u>not</u> relating to or arising from the Property and the Sale), which shall be assigned and transferred to the Liquidating Trust. Notwithstanding anything to the contrary, Liquidating Trust Causes of Action shall include any and all pre or post-petition claims and causes of action relating to the operation or management of the Debtors' businesses and financial affairs, including without limitation breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, negligence and malpractice.

"*Liquidating Trustee*" means Kenneth A. Welt as the trustee for the Liquidating Trust, the entity appointed under the District Creditor Plan, pursuant to § 1123(b) of the Bankruptcy Code, as the duly authorized representative of the Debtors' Post Confirmation Estate with respect to (a) Liquidating Trust Causes of Action; (b) liquidation of the Excluded Assets; and (c) Distribution of funds pursuant to the terms of the District Creditor Plan, with the powers and duties conferred by the Liquidating Trust Agreement, this Plan and the Confirmation Order.

"*Local Rules*" means the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

"*Other Priority Claim*" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code.

"*Other Secured Claim*" means any other Secured Claim not otherwise classified in the District Creditor Plan.

"*Person*" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in § 101(41) of the Bankruptcy Code.

"*Personal Property*" means all fixtures, equipment, furnishings and items of personal

property currently located on the Real Property.

"*Petition Date*" means September 19, 2011, the date on which the Debtors commenced the Bankruptcy Cases by filing their voluntary petition under Chapter 11 of the Bankruptcy Code.

"*Plan Proponents*" mean collectively the District, the Indenture Trustee and Prime.

"*Postpetition*" means arising or accruing on or after the Petition Date and before the Effective Date.

"*Preliminary Sale Order*" means the order or orders entered by the Bankruptcy Court approving the bid procedures set forth in and requested by the Sale Procedures Motion.

"*Prepetition*" means arising or accruing prior to the Petition Date.

"*Prime*" or "*Bondholder*" means Florida Prime Holdings, LLC, as beneficial holder of 100% of the outstanding Bonds.

"*Priority Claim*" means a Claim that is entitled to a priority in payment that is not an Administrative Expense Claim or a Secured Claim.

"*Priority Tax Claim*" means an unsecured claim of a Governmental Unit entitled to priority under § 507(a)(8) of the Bankruptcy Code.

"*Professional*" means any professional employed in the Bankruptcy Case with the approval of the Bankruptcy Court pursuant to §§ 327 or 1103 of the Bankruptcy Code.

"*Professional Fee Claim*" means a Claim under §§ 330, 311 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Bankruptcy Cases.

"*Proof of Claim*" means a proof of Claim filed with the Bankruptcy Court with respect to a Claim against the Debtors pursuant to Bankruptcy Rule 3001, 3002 or 3003.

"*Property*" means the Real Property and all related Personal Property which includes all improvements owned by the Debtors and/or located upon the Real Property and the Debtors' interest, if any, in and to (i) all strips and gores of land lying adjacent to the Real Property, lands underlying any adjacent streets or roads, easements, privileges, rights-of-way, riparian and other water rights, and other appurtenances pertaining to or accruing to the benefit of the Real Property; (ii) all Personal Property; (iii) all licenses, permits, contract rights, development rights and approvals pertaining to the ownership, operation and/or proposed development of the Real Property, if any; (iv) all of Debtors' general intangible rights pertaining to ownership and/or proposed development of the Real Property; and (v) all Causes of Action arising from and relating to the Property and Sale.  Property specifically excludes the Excluded Assets.

"*Pro Rata Share*" means, with respect to any Distribution under the District Creditor

12

Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims in such Class, all determined as of the applicable Distribution Date.

"***Qualified Bid***" means an offer for the purchase of the Property that conforms with the Bid Procedures.

"***Rejected Contracts***" has the meaning ascribed to such term in Article 7 of the District Creditor Plan.

"***Reserve Account***" means the account established by the Liquidating Trustee in which the Reserve Funds shall be deposited.

"***Reserve Funds***" means the cash deposited by the Liquidating Trustee into the Reserve Account in an amount necessary to pay (i) Disputed Claims, until such time as Disputed Claims are either Allowed or Disallowed by the Bankruptcy Court, or are otherwise settled by the Liquidating Trust; (ii) Professional Fees not yet Allowed by the Bankruptcy Court; and (iii) fees, costs and expenses of the Liquidating Trustee to administrate the Liquidating Trust and the District Creditor Plan.

"***Real Property***" means the parcels of real property owned by the Debtors located in Miami-Dade County Florida consisting of approximately 120 contiguous acres located on the east side of NW 107 Avenue and the north side of NW 58 Street.

"***Sale***" means the sale of the Property pursuant to the Final Sale Order.

"***Sale Procedures Motion***" means the Motion for Authority to (I) Sell Assets Outside of Ordinary Course of Business, Free and Clear of All Liens, Claims and Encumbrances, (II) Establish Sale Procedures, (III) Set a Hearing Date on Sale, and (IV) Approve Form of Notice and Shortened Notice All In Connection With Joint Plan of Reorganization by Landmark, at Doral Community Development District, U.S. Bank National Association, as Indenture Trustee, and Florida Prime Holdings, LLC, filed by the Plan Proponents with the clerk of the Bankruptcy Court in conjunction with the District Creditor Plan.

"***Schedules***" means, collectively, the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors in the Bankruptcy Cases pursuant to Bankruptcy Rule 1007, as such schedules of assets and liabilities or statements of financial affairs have been or may be amended or supplemented from time to time.

"***Secured Claim***" means any Claim that is (a) secured in whole or in part, as of the Petition Date, by a lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under § 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the Estate's interest in the value of the Collateral securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in the District

Creditor Plan, if the value of a Creditor's interest in the Estates' interest in the Collateral securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

"*Secured Creditor*" means any creditor holding a Secured Claim.

"*Settlement Term Sheet*" means that Settlement Term Sheet executed as of March 1, 2012 by and among (i) the Debtors; (ii) the Plan Proponents; (iii) Terra; and (iv) the Committee, with respect to settlement of and consent to Confirmation of this District Creditor Plan, a copy of which is attached to the District Creditor Disclosure Statement as Exhibit 5.

"*Special Assessments*" means the special assessments levied upon the Real Property by the District, pursuant to Resolutions No. 2005-12, 2006-10 and 2008-5.

"*Stalking Horse Bid*" the credit bid of the District in the amount of $67.5 million to which Cure Costs, if any, will be added up to a maximum credit bid of $79 million, made the District in its sole discretion pursuant to the Bid Procedures for the purchase of the Property. The Stalking Horse Bid is contained in that certain Purchase Agreement attached to the Sale Procedures Motion as Exhibit "A."

"*Tax Certificate*" means a valid tax certificate issued by the Miami-Dade County Tax Collector on any parcel of the Real Property that remains unpaid as of the Effective Date.

"*Tax Certificate Claim*" means a Claim arising out of the issuance of a Tax Certificate.

"*Tax Collector*" means the Miami-Dade County Tax Collector.

"*Terra*" means Terra Landmark, LLC.

"*Unimpaired*" refers to a Claim that is not Impaired.

"*United States*" means the United States of America.

"*United States Trustee*" means the Office of the United States Trustee for the Southern District of Florida.

"*Unsecured Claim*" means any Claim which is not an Administrative Expense Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, (b) except as otherwise provided in the District Creditor Plan, any portion of a Claim to the extent the value of the creditor's interest in the Estates' interest in the collateral securing such is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to § 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtors prior to the Petition Date, (d) any Claim designated as an Unsecured Claim elsewhere in the District Creditor Plan.

"***Unsecured Creditor***" means any creditor holding an Unsecured Claim.

"***Voting Deadline***" means [_____], 2012, the last day to file a ballot accepting or rejecting the District Creditor Plan as fixed by the Disclosure Statement Approval Order, unless such date is extended by order of the Bankruptcy Court or agreement of the Plan Proponents.

"***Voting Instructions***" means the instructions for voting on the District Creditor Plan contained in the section of the Disclosure Statement entitled "Voting Instructions."

2.1.2   Any capitalized term used in the District Creditor Plan that is not defined in the District Creditor Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

## 2.2    Rules of Construction

For purposes of the District Creditor Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the District Creditor Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the District Creditor Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the District Creditor Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the District Creditor Plan to Articles and Exhibits are references to Articles and Exhibits of or to the District Creditor Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the District Creditor Plan in its entirety rather than to a particular Article or section or subsection of the District Creditor Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the District Creditor Plan shall be deemed incorporated herein by such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply in the construction of the District Creditor Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

## 2.3    Plan Proponents

Notwithstanding anything else in this District Creditor Plan or the District Creditor Disclosure Statement, (i) U.S. Bank National Association is a Plan Proponent of this District Creditor Plan solely in its capacity as trustee (the "**Indenture Trustee**") under that Master Trust Indenture and that First Supplemental Trust Indenture, both dated as of October 1, 2006 and both with Landmark at Doral Community Development District (as such indentures may have been

supplemented and/or amended from time to time in accordance with their terms, collectively, the "**Indenture**"), under which the Bonds were issued; (ii) the Indenture Trustee is a Plan Proponent of the District Creditor Plan, pursuant to the terms of the foregoing indentures, including, without limitation, Sections 10.04, 10.06 and 11.07, of such Master Trust Indenture, at the written request and direction of Florida Prime Holdings, LLC, as beneficial holder of all of the outstanding principal amount of the Bonds; (iii) U.S. Bank National Association, whether in its capacity as Indenture Trustee (including as a Plan Proponent) or in any other capacity, shall have <u>no</u> obligation whatsoever under the District Creditor Plan to make any payments or provide any funding; (iv) all payments to be made and all funding to be provided by the Plan Proponents under the District Creditor Plan, including without limitation funding the Carveout, shall solely be the obligation of Florida Prime Holdings, LLC.

## ARTICLE 3:  TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND DIP LOAN CLAIM

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the District Creditor Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims, as well as the DIP Loan Claim, is set forth below in this Article 3.

### 3.1    Administrative Expense Claims

3.1.1    Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim shall be paid (a) on the Effective Date, an amount, in Cash equal to the Allowed Amount of its Administrative Expense Claim, in accordance with § 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by the Holder of such Allowed Administrative Expense Claim, the Plan Proponents and the Liquidating Trust, or (c) as otherwise ordered by order of the Bankruptcy Court.

3.1.2    All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Effective Date shall be paid to the United States Trustee by the Liquidating Trust by no later than thirty (30) days following the Effective Date. At the time of such payment, the Liquidating Trustee shall provide to the United States Trustee an appropriate affidavit indicating the disbursements for the relevant periods. Following the Effective Date, any such fees required pursuant to 28 U.S.C. § 1930(a)(6) arising or accruing from Distributions made by Liquidating Trust or made under the District Creditor Plan shall also be paid by the Liquidating Trust.  All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon the applicable disbursements for the relevant post-confirmation periods and shall be made within the time period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a final order by the Bankruptcy Court on the Final Decree Date, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. The Liquidating Trustee shall provide to the United States Trustee at the time of each post-confirmation payment an appropriate affidavit indicating the disbursements for the relevant periods.

  3.1.3 All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Bankruptcy Case to the extent not previously paid by the Debtors, shall be paid by the Liquidating Trust in the ordinary course of business in accordance with contract terms or as may be otherwise agreed upon by the Holder of such Allowed Administrative Expense Claim, the Plan Proponents and the Liquidating Trust, or prior to the Effective Date, whichever later.

  3.1.4 Notwithstanding the above, Allowed Professional Fee Claims shall be paid in accordance with applicable orders of the Bankruptcy Court and the Bankruptcy Code, only after appropriate order(s) allowing such fees and expenses have been entered.  The Plan Proponents reserve the right to object to any such Claims or withdraw or modify the District Creditor Plan if such Claims are deemed excessive in the Plan Proponents' sole discretion.

## 3.2 Priority Tax Claims

Unless otherwise agreed by the Holder of an Allowed Priority Tax Claim (in which event such other agreement shall govern), each Holder of an Allowed Priority Tax Claims shall receive on the Effective Date or, if later Allowed, on the 15th day after such Claim becomes Allowed, Cash equal to the amount of such Allowed Priority Tax Claim.

## 3.3 DIP Loan Claim

Terra shall have an allowed superpriority administrative expense claim for the amounts advanced by it under the DIP Loan in an amount not to exceed $750,000.00 (the "DIP Loan Claim").  On the Effective Date, Terra shall be paid in Cash from the Carveout an amount equal to sixty-seven (67%) of its DIP Loan Claim not to exceed $500,000.00 in full satisfaction of all Claims by Terra and its affiliates against the Debtors, their respective Estates and the Liquidating Trust.

The Plan Proponents and the Committee shall not object to the DIP Loan Claim and the treatment thereof as set forth herein (including any portion of the DIP Loan Claim relating to payments by Terra of fees and expenses of Debtors' professionals and Committee counsel), provided that this District Creditor Plan is confirmed and the Property is sold pursuant to the Bid Procedures and Auction Sale contemplated herein

## ARTICLE 4:  DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

  Pursuant to § 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. A Claim or Interest (a) is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include Claims against the Debtors that qualify within the description of that Class.  For purposes of the District Creditor Plan, the Claims and Interests are classified as follows:

## 4.1 Class 1:  Other Unsecured Priority Claims

Class l consists of all Other Unsecured Priority Claims.

**4.2    Class 2:        Secured Claims of the Tax Collector**

Class 2 consists of the Secured Claims of the Tax Collector.  Classes 2A-2D consist of the Secured Claims of the  Tax Collector for 2011 ad valorem taxes on the following properties:

> Class 2A – Town Center at Doral LLC (Folio 35-3017-001-0240)

> Class 2B – Landmark Club at Doral LLC (Folio 35-3017-001-0250)

> Class 2C – Landmark at Doral South LLC (Folio 35-3017-001-0362)

> Class 2D – Landmark at Doral East LLC (Folio 35-5017-001-0241)

**4.3    Class 3:        Secured Tax Certificate Claims**

Class 3 consists of the Secured Tax Certificate Claims.

**4.4    Class 4:        District's Secured Claim**

Class 4 consists of the portion of the District Claim that is a Secured Claim.

**4.5    Class 5:        AMT Secured Claim**

Class 5 consists of the portion of the AMT Claim that is a Secured Claim.

**4.6    Class 6:        Other Secured Claims**

Class 6 consists of all Secured Claims not otherwise classified in the District Creditor Plan.

**4.7    Class 7:        Unsecured Claims**

Class 7 consists of all Unsecured Claims.

**4.8    Class 8:        Interests**

Class 8 consists of all Interests in the Debtors.

## ARTICLE 5:  TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Claims and Interests shall be treated under the District Creditor Plan in the manner set forth in this Article 5.  Except as otherwise specifically provided in the District Creditor Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the District Creditor Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any

nature whatsoever) and Allowed Interests.

## 5.1    Unclassified Claims

Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed DIP Loan Claims shall receive the treatment set forth in Article 3 of the District Creditor Plan.

## 5.2    Class 1:          Other Unsecured Priority Claims

5.2.1    The Holder of an Allowed Other Unsecured Priority Claim, unless otherwise agreed to by such Holder, shall receive, in full satisfaction of such Claim, payment in Cash in the allowed amount of such Claim.  The payment shall be made on the later of the Distribution Date and the date such Claim becomes an Allowed Claim.

5.2.2    Class l is Unimpaired under the District Creditor Plan.

## 5.3    Class 2: Secured Claims of Tax Collector

5.3.1    The Plan Proponents estimate that on the Effective Date, the Allowed Amount of the Secured Claims of Tax Collector for unpaid Real Property taxes for year 2011 will aggregate approximately $568,503.75, plus statutory interest.

5.3.2    The Secured Claims of the Tax Collector for unpaid 2011 Real Property taxes shall be treated as set forth below.  The claim treatment set forth herein is common to each subclass in Classes 2A-2D.

5.3.2.1          On the Closing, the Buyer shall pay in full and in Cash the amount of any 2011 (or prior year) Real Property taxes owed to the Tax Collector.  Tax Collector's first priority tax liens shall be retained on each Real Property until said liens are paid in full.  Should payment in full of the 2011 Real Property taxes not be made within the time specified above, Tax Collector shall be authorized to collect said taxes pursuant to Florida law, including the sale of tax certificates at the next available sale.

5.3.2.2          The amount of 2011 taxes owed, as reflected in the records of the Tax Collector, shall only be considered final so long as no Miami-Dade County Value Adjustment Board petitions or any action in Florida's circuit court regarding the 2011 assessments of the Miami-Dade County Property Appraiser with respect to the taxed real property are pending in accordance with Florida law.  In the event that such proceedings are pending, the amount of 2011 taxes owed shall not be deemed final until all administrative or judicial proceedings are concluded or the pending petitions are withdrawn.  Any payments toward the 2011 Real Property taxes made by Debtors, such as statutorily-required good faith payments made in conjunction with administrative or judicial proceedings, shall be applied toward satisfaction of the Class 2 claims.  In the event that administrative proceedings result in interim reductions in the 2011 assessments for which refunds to Debtors may be processed, Debtors authorize the Tax Collector to refrain from issuing said refunds pending final disposition of the assessment challenges.

Should final disposition of the assessment challenges require such refunds, the Tax Collector shall issue said refunds to Debtors, or their designees, as expeditiously as possible.

   5.3.2.3  The funds used to pay the Secured Claims of the Tax Collector shall not come from the Carveout or from any proceeds from the Sale of the Property.

  5.3.4 Post-petition taxes for the years 2012 forward shall be paid in the ordinary course by the owner of the Property, post sale, pursuant to Florida law, and in a manner consistent with the provisions above with respect to determination of the final tax amounts owed and the issuance of any refunds. Because post-petition Real Property taxes are to be paid in the ordinary course, the Tax Collector shall not be required to petition for payment said taxes as an administrative expense.

  5.3.5 Class 2 is Unimpaired under the District Creditor Plan.

## 5.4 Class 3:  Secured Tax Certificate Claims

  5.4.1 The Secured Tax Certificate Claims shall be paid in full and in Cash by the Buyer at the Closing.

  5.4.2 The funds used to pay the Secured Tax Certificate Claims shall not come from the Carveout or from any proceeds from the Sale of the Property but shall be funded directly by the Buyer at Closing to the Tax Collector.

  5.4.3 Class 3 is Impaired under the District Creditor Plan.

## 5.5 Class 4:  District's Secured Claim

  5.5.1 A Sale of the Property to the District or its designee shall reduce the amount of the Allowed Secured District Claim by the amount of the purchase price (including any credit bid) approved by the Final Sale Order, but the sale shall not cause a merger of title. In the event that the District or its designee is the Buyer, the Property shall be sold without waiving any rights to enforce, or cause the enforcement of, or the collection of any current Special Assessment lien not satisfied by the proceeds of the Sale as well as any future, delinquent installments of the Special Assessments securing the Bonds, including but not limited to future accelerated principal amounts, interest, penalties, or other amounts arising from any future delinquent payments.

  5.5.2 If the Property is sold to a person or entity other than the District or its designee, then the District shall receive the proceeds of Sale in satisfaction of a portion of the Allowed Secured District Claim. THE DISTRICT SHALL PROMPTLY TURN OVER SUCH PROCEEDS TO THE INDENTURE TRUSTEE.

  5.5.3 Any resulting unsecured claim of the District shall become a Class 7 Claim. However under this District Creditor Plan, the District's Class 7 Claim shall be subordinated for distribution purposes to other Class 7 Claims, without prejudice to the continuing effectiveness

of the Special Assessments and liens to enforce any Special Assessments if the District or its designee takes title to the Property at the Closing and without prejudice to the District's right to vote its deficiency claim as a member of Class 7 under the Creditor District Plan.

     5.5.4    Class 4 is Impaired under the District Creditor Plan.

**5.6    Class 5: AMT Secured Claim**

     5.6.1    The Allowed AMT Claim will be treated as a Class 7 – Unsecured Claim.

     5.6.2    Class 5 is Impaired under the District Creditor Plan.

**5.7    Class 6:  Other Secured Claims**

     5.7.1  To the extent the Collateral for an Other Secured Claim is the Property, if the Property is sold to the District or its designee, there will be no Allowed Other Secured Claims and any such Claims will be treated as a Class 7 -- Unsecured Claim.

     5.7.2    To the extent the Collateral for an Allowed Other Secured Claim consists of Assets other than the Property being sold through the Sale process, the legal, equitable and contractual rights to which such Claim entitles the Holder of such Claim shall remain unaltered and shall be dealt with by the Liquidating Trustee.

     5.7.3    Class 6 is Impaired under the District Creditor Plan.

**5.8    Class 7:  Unsecured Claims**

     5.8.1    On the Distribution Date(s) and as more fully determined by the Liquidating Trustee, the Holders of Allowed Unsecured Claims shall receive a Pro Rata Share of the Cash in the Liquidating Trust Account pursuant to the terms of the Liquidating Trust.

     5.8.2    The District's Class 7 Claim (for deficiency) shall be subordinate for purposes of distribution to payment in full of other Class 7 Claims.  A Sale of the Property to the District or its designee shall reduce the amount of the Allowed Secured District Claim by the amount of the purchase price (including any credit bid) approved by the Final Sale Order, but the sale shall not cause a merger of title.  The subordination of the District's Class 7 Claim is without prejudice to the effectiveness of the Special Assessments and liens to enforce any Special Assessments if the District or its designee takes title to the Property at Closing and without prejudice to the District's right to vote its deficiency claim as a member of Class 7 under the Creditor District Plan.

     5.8.3    Class 7 is Impaired under the District Creditor Plan.

**5.9    Class 8: Interests**

     5.9.1    The Holders of Class 8 Interests shall not receive a Distribution on account of

their Interests and their Interests shall be cancelled upon Confirmation.

    5.9.2   Class 8 is Impaired under the District Creditor Plan.

## ARTICLE 6:  ACCEPTANCE OR REJECTION OF THE DISTRICT CREDITOR PLAN

### 6.1    Presumed Acceptance of the District Creditor Plan by Unimpaired Classes

Classes 1 and 2 are Unimpaired under the District Creditor Plan.  Pursuant to § 1126(f) of the Bankruptcy Code, such Classes and the Holders of Claims in such Classes are conclusively presumed to have accepted the District Creditor Plan and, thus, are not entitled to vote on the District Creditor Plan.  Accordingly, votes of Holders of Claims in Classes 1 and 2 are not being solicited by the Plan Proponents.

Except as otherwise expressly provided in the District Creditor Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Plan Proponents or the Liquidating Trust in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

### 6.2    Acceptance by Impaired Classes

Classes 3, 4, 5, 6, 7 and 8 are Impaired under the District Creditor Plan.  Because the District Creditor Plan does not entitle the Holders of Interests in Class 8 to receive or retain any property under the District Creditor Plan on account of such Interests, Class 8 and each Holder of an Interest in this Class is deemed to have rejected the District Creditor Plan in accordance with § 1126(g) of the Bankruptcy Code.  Accordingly, the Plan Proponents are not required to solicit votes of Class 8 with respect to the acceptance or rejection of the District Creditor Plan.  Classes 3, 4, 5, 6 and 7 are entitled to vote to accept or reject the District Creditor Plan.  Pursuant to § 1126(c) of the Bankruptcy Code, a Class of Claims shall have accepted the District Creditor Plan if (a) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the District Creditor Plan and (b) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the District Creditor Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the District Creditor Plan.

### 6.3    Impairment Controversies

If a controversy arises as to whether any Claim or Interests, or any Class of Claims or Class of Interests, is Impaired under the District Creditor Plan, such Claim, Interest or Class shall be treated as specified in the District Creditor Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Interest, or a particular Class of Claims or Class of Interests, under the District Creditor Plan.

## ARTICLE 7:  TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**7.1      Rejection of Certain Executory Contracts and Unexpired Leases**

Except as otherwise provided in the District Creditor Plan and/or the Sale Procedures Motion, all executory contracts and unexpired leases that existed between the Debtors and another Person or Entity as of the Petition Date shall be deemed rejected by the Debtors as of the Effective Date (collectively, the "**Rejected Contracts**"), unless previously assumed pursuant to order of the Bankruptcy Court or there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume any executory contract or unexpired lease.  Entry of the Confirmation Order shall constitute approval of the rejected of the Rejected Contracts.

**7.2      Damages Arising from Rejection of any Executory Contract or Unexpired Lease**

Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court and upon the Liquidating Trust on the earlier of (i) thirty (30) days following the date of any order approving the rejection; or (ii) thirty (30) days following the Confirmation Date or such Claim shall be forever barred and unenforceable against the Debtors' Estates.  Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Class 7 Allowed Claims. Any such Claims that become Disputed Claims shall be Class 7 Disputed Claims for purposes of administration of Distributions under the District Creditor Plan to Holders of Class 7 Allowed Claims.   The District Creditor Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

## ARTICLE 8:  MEANS OF IMPLEMENTATION OF THE DISTRICT CREDITOR PLAN

**8.1      General Overview of the Means of Funding District Creditor Plan Distributions**

The general structure for the implementation of the District Creditor Plan and the Distributions involves the following: (1) the Sale of the Property; (2) the creation of the Liquidating Trust; (3) the vesting of all of the Debtors' Excluded Assets, and specifically excluding the Property, in the Liquidating Trust upon Confirmation of the District Creditor Plan; (4) the appointment of the Liquidating Trustee to administer the Liquidating Trust; (5) the establishment of the Liquidating Trust Account; and (6) effectuation of Distributions to Holders of Allowed Claims pursuant to the priorities dictated by the Bankruptcy Code as set forth in the District Creditor Plan and Liquidating Trust.

**8.2      Sale of the Property**

The District Creditor Plan contemplates a Sale of the Property pursuant to the Bid Procedures proposed by the Sale Procedures Motion to be filed in conjunction with this District Creditor Plan.   The Sale Procedures Motion seeks entry of the Preliminary Sale Order to establish

procedures to obtain the highest and best bid for the sale of the Property including requirements to be a qualified bidder and the scheduling of an auction sale of the Property. The District has submitted its Stalking Horse Bid, which is a Qualified Bid under the Preliminary Sale Order. Terra shall be permitted to participate in the auction sale consistent with the terms of the Bid Procedures, if it so chooses.

The District has agreed to fund the Carveout in the amount of $2,250,000. The Carveout shall be payable by the Plan Proponents to the Liquidating Trust at Confirmation and funds sufficient to pay the Carveout in full shall be deposited in the Arnstein & Lehr, LLP Trust Account at least five (5) business days in advance of the Confirmation Hearing. The Carveout shall be free and clear of all liens, claims and encumbrances of every kind.

In the event that this District Creditor Plan is not confirmed and the Sale does not occur before August 1, 2012, the Preliminary Sale Order shall provide for additional stay relief to allow the District to proceed to complete its foreclosure process, including but not limited to, selling the Property at foreclosure sale without further order from the Bankruptcy Court. Notwithstanding the foregoing, the Plan Proponents, the Debtors and the Committee will move expeditiously to obtain confirmation of the District Creditor Plan.

## 8.3    Transfer of Certain Assets

Upon the Effective Date, the Carveout and all of the Excluded Assets of the Debtors will automatically vest in the Liquidating Trust, free and clear of all liens, claims and encumbrances of every kind. Except to the extent necessary to preserve or maintain any of the Liquidating Trust Causes of Action, all of the Debtors' interests in the Excluded Assets will be extinguished as of the Effective Date.

## 8.4    Corporate Action

All matters provided for under the District Creditor Plan involving the corporate structure of the Debtors, or any corporate action to be taken by or required of the Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the Debtors, Liquidating Trust or Liquidating Trustee.

## 8.5    Section 1146 Exemption

Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the District Creditor Plan or any District Creditor Plan Document, or the revesting, transfer or sale of the Property of, by or in the Debtors pursuant to, in implementation of or as contemplated by the District Creditor Plan or any District Creditor Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing (including without limitation a Sale of the Property as approved by the Final Sale Order), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform

Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## 8.6    Effectuating Documents; Further Transactions

The Liquidating Trustee and the Debtors shall be authorized and required to, execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the District Creditor Plan or to otherwise comply with applicable law.

## 8.7    Preservation of Causes of Action

All Causes of Action relating to or arising from the Property and the Sale are being sold as a Sale asset and shall be transferred to the Buyer at Closing.

All other Causes of Action (not included in the Sale) and Avoidance Actions shall be assigned and transfered to the Liquidating Trust.  Notwithstanding anything to the contrary, Liquidating Trust Causes of Action shall include any and all pre or post-petition claims and causes of action relating to the operation or management of the Debtors' businesses and financial affairs, including without limitation breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, negligence and malpractice.  With respect to the Liquidating Trust Causes of Action, the Liquidating Trustee shall retain all rights on behalf of the Debtors and the Liquidating Trust, to commence and pursue these actions as the Liquidating Trustee deems appropriate.

There may be numerous Liquidating Trust Causes of Action which currently exist or may subsequently arise which, because the facts upon which such Causes of Action are based are not fully or currently known by the Liquidating Trustee, cannot be raised during the pendency of the Bankruptcy Case (collectively, the "**Unknown Causes of Action**").  With respect to the Liquidating Trust Causes of Action, these actions shall be retained and expressly reserved by the Liquidating Trustee for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such actions upon or after the confirmation or consummation of the District Creditor Plan.

The preservation of the Liquidating Trust Causes of Action in no way serves to revive any such action already released before the Confirmation Date, nor does it alter or modify any such release.

## 8.8    Retention of Jurisdiction

The District Creditor Plan provides for the retention of jurisdiction by the Bankruptcy Court

following the Effective Date to, among other things, determine all disputes relating to Claims, Interests and other issues presented by or arising under the District Creditor Plan. The Bankruptcy Court will also retain jurisdiction under the District Creditor Plan and over the Liquidating Trust, for any actions brought in connection with the implementation and consummation of the District Creditor Plan and the transactions contemplated thereby.

**8.9    Waiver and Release of Claims Against the Plan Proponents**

**Effective as of the Confirmation Date, the entry of the Confirmation Order shall act as and constitute an automatic waiver and release of any and all claims or causes of action of any type or nature, any Creditor, the Debtors, Terra, Terra Landmark, LLC or any of their Affiliates, officers or directors have or may have against the Plan Proponents, individually or collectively, and their respective professionals, regarding the Bankruptcy Cases, other than claims or causes of action for gross negligence or willful misconduct. Nothing contained in the District Creditor Plan, District Creditor Disclosure Statement or the Liquidating Trust Documents to the contrary shall be valid or effective and this waiver/release shall bind the Liquidating Trust, the Liquidating Trustee and any subsequent Chapter 11 or Chapter 7 trustee.**

**8.10    Waiver and Release of Claims Against the Debtors and Terra by the Plan Proponents**

**Effective as of the Confirmation Date, the entry of the Confirmation Order shall act as and constitute an automatic waiver and release of any and all claims or causes of action of any type or nature, the Plan Proponents, individually and collectively and their respective professionals, may have against the Debtors or Terra, or any of their respective Affiliates, officers or directors, regarding the Bankruptcy Cases, other than claims or causes of action for gross negligence or willful misconduct, and except for the Debtors or Terra's respective obligations under the Settlement Term Sheet or the District Creditor Plan and any claims or causes of action relating thereto. Nothing contained in the District Creditor Plan, District Creditor Disclosure Statement, or the Liquidating Trust Documents to the contrary shall be valid or effective and this waiver/release shall bind the Plan Proponents, and any subsequent Chapter 11 or Chapter 7 trustee.**

## ARTICLE 9: PROVISIONS GOVERNING DISTRIBUTIONS

**9.1    Determination of Claims**

9.1.1    Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than sixty (60) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Liquidating Trustee), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to

file late Unsecured Claims on (i) counsel for the Plan Proponents; (ii) the Liquidating Trustee and (iii) such other parties as the Bankruptcy Court may direct.  If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 7 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Liquidating Trustee receives actual notice of the filing of such Claim.

9.1.2    Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Liquidating Trustee effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Liquidating Trustee effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

9.1.3    Distributions under the Plan shall be made only to the holders of Allowed Claims. Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims shall be made as soon as practicable after the Effective Date and as appropriate thereafter; provided however, that the Liquidating Trustee shall have sole and absolute discretion as to the timing of any Distribution until all Allowed Claims are satisfied under the Plan.  Until a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim shall not receive any consideration.  If a Disputed Claim becomes an Allowed Claim, in whole or in part, by a Final Order, the Liquidating Trustee shall distribute the portion of the Distribution reserved for the particular Disputed Claim in accordance with the Plan as soon as practicable.  If a Disputed Claim is disallowed in whole or in part, then the portion of the Distribution reserved for such Disputed Claim shall be distributed to holders of Allowed Claims so that such holders receive their Pro Rata Share of such portion of the Distribution.

9.1.4    In determining the amount of Distributions to be made under the Plan to holders of Allowed Claims, the Liquidating Trustee shall hold Cash in reserve to protect the interests of holders of Disputed Claims in an amount determined by the Liquidating Trustee, in his sole discretion, that represents the Pro Rata Share of the Cash that would otherwise be distributed to each holder of Disputed Claim if such Claim was Allowed, and after the Allowance Date, the appropriate Distribution shall be made under the Plan.  The Disputed Claim Reserve shall also include an amount calculated by the Liquidating Trustee to satisfy anticipated expenses of the Liquidating Trust and to pay anticipated tax liabilities of the Liquidating Trust.

9.1.5   If a Distribution to any Claimholder is returned as undeliverable, the Liquidating Trustee shall use reasonable efforts to determine such Claimholder's then current address. After reasonable efforts, if the Liquidating Trustee still cannot determine such Claimholder's then-current address, then unless and until the Liquidating Trustee is notified of such Claimholder's then-current address, no further Distributions shall be made to such Claimholder, unless and until the Liquidating Trustee is notified of such Claimholder's then-current address. If the current address for a Creditor entitled to a Distribution under the Plan has not been determined within six (6) months after the Effective Date or such Creditor has otherwise not been located, then such Creditor (i) shall no longer be a Creditor and (ii) shall be deemed to have released such Claim. If such Creditor was entitled to a portion of the Distribution, then that Claimholder's Distribution shall be distributed Pro Rata in accordance with the Plan to the other holders of Allowed Claims.

### 9.3     Substantive Consolidation and Waiver of Intercompany Claims

9.2.1   The Bankruptcy Cases, the Debtors and their respective Estates shall be deemed to be substantively consolidated for purposes of voting, distribution, and implementation of the terms of this Plan. As a result of the substantive consolidation, the assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied from the assets of a single consolidated estate. Any Claim filed or asserted against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, against another Debtor shall be treated as combined into a single Claim against the consolidated estate of the Debtors and shall be entitled to Distributions only with respect to such single Claim. For purposes of determining the availability of any right of setoff under Bankruptcy Code section 553, the Debtors will be treated as one entity so that (subject to the other provisions of Bankruptcy Code section 553) debts due to any of the Debtors may be offset against the debts owed by any of the Debtors. Further, holders of Allowed Claims who assert identical Claims against multiple Debtors shall be entitled to a single satisfaction of such Claims. In addition, all Intercompany Claims shall be eliminated, waived, and forever expunged.


Notwithstanding the foregoing, the substantive consolidation of the Debtors shall not constitute or effectuate a merger of the corporate or other legal identities of the Debtors, and their respective corporate and other legal identities shall remain intact, except as otherwise specified in the Plan. Further, the substantive consolidation of the Debtors shall not affect, impair or disturb in any way the Sale of the Property pursuant to the Plan, the Preliminary Sale Order and the Final Sale Order.

## ARTICLE 10:  CONDITIONS PRECEDENT

### 10.1     Condition Precedent to Confirmation of the District Creditor Plan

10.1.1  The following are conditions precedent to Confirmation of the District Creditor Plan:

10.1.2.1        The Bankruptcy Court shall have made such findings and determinations regarding the District Creditor Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the District Creditor

Plan, in form and substance satisfactory to the Plan Proponents.

        10.1.2.2      The Bankruptcy Court shall have entered the Final Sale Order.

        10.1.2.3      The Bankruptcy Court shall have denied confirmation of any plan other than the District Creditor Plan or all other competing plans shall have been withdrawn prior to Confirmation.

**10.2    Conditions Precedent to the Effective Date**

    10.2.1      The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or may be waived by the Plan Proponents in accordance with Article 10.3 of the District Creditor Plan:

        10.2.1.1      The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents on the Docket of the Bankruptcy Cases, and no stay of the Confirmation Order shall be in effect.

        10.2.1.2      The entry and effectiveness of all necessary orders by the Bankruptcy Court and by any appellate court exercising jurisdiction over the Bankruptcy Cases.

        10.2.1.3      The Sale of the Property shall have been closed.

**10.3    Waiver of Conditions Precedent to the Effective Date**

The conditions precedent set forth in Article 10.2 of the District Creditor Plan may be waived by the Plan Proponents unless the Bankruptcy Court has entered an order prohibiting any such waiver.

## ARTICLE 11:  POST CONFIRMATION ESTATE

    On the Confirmation Date, the Cash (excluding any sale proceeds of the Property to be paid to Secured Creditors), all Liquidating Trust Actions, the Carveout and all Excluded Assets of the Debtors and their Estates, shall be transferred to, and vest in, the Liquidating Trust.  The Liquidating Trust shall be administered by the Liquidating Trustee. The Liquidating Trustee shall have the exclusive power and authority to investigate, prosecute, and settle any or all of the Liquidating Trust Causes of Action and shall be compensated based upon a reasonable hourly rate.  It shall cause proceeds of or recoveries on the Liquidating Trust Actions to be distributed in accordance with the District Creditor Plan.

    The Debtors will transfer their Cash and all other Excluded Assets of their Estates, along with the obligation to pay Administrative and Priority Claims to the Liquidating Trust and the Liquidating Trust will become obligated to make Distributions in accordance with this District Creditor Plan, provided, however, that all Administrative Expense Claims relating to professional fees shall be paid on or before the Effective Date.

For federal income tax purposes the Liquidating Trust will be treated as a "liquidating trust," as defined in Treasury Regulation Section 301.7701-4(d), and will therefore be taxed as a grantor trust of which the beneficiaries thereof will be treated as the owners and grantors.

The Liquidating Trustee will apprise each of the Holders of Allowed Claims of valuations of the net assets transferred to the Liquidating Trust on the behalf of and for the benefit of such Holder in form and substance reasonably acceptable to the Liquidating Trustee, as required by the District Creditor Plan, and such valuations should be used consistently by the Liquidating Trust and such Holders for all federal income tax purposes. All such valuations shall be filed with the Bankruptcy Court.

The Liquidating Trustee shall be compensated based on his reasonable and customary hourly rate. The Liquidating Trustee may engage counsel, financial advisors and other professionals to represent him in connection with his duties hereunder (the "Post-Confirmation Professionals"). The Liquidating Trustee and the Post-Confirmation Professionals may be paid 90% of their fees and 100% of their expenses on a monthly basis prior to filing fee applications. However, the Liquidating Trustee and the Post-Confirmation Professionals shall file periodic fee applications seeking approval of fees and expenses to be awarded by the Bankruptcy Court, including approval of the amounts previously paid on a monthly basis. Upon the filing of each such application, the Liquidating Trustee and the Post-Confirmation Professionals shall be entitled to request the payment of some or all of any pending holdbacks in fees.

**From and after the Confirmation Date, the Liquidating Trustee and its Professionals shall be exculpated by all Persons and Entities, including, without limitation, Holders of Claims and Interests and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon these parties by the District Creditor Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the District Creditor Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of the Liquidating Trustee or its Professionals. No Holder of a Claim or an Interest or other party in interest shall have or pursue any Claim or Cause of Action against the Plan Proponents, individually or collectively, the Debtors, the Liquidating Trustee or their respective Professionals for making payments in accordance with the District Creditor Plan or for implementing the provisions of the District Creditor Plan. The Liquidating Trust shall be authorized to obtain (by using Cash in the Liquidating Trust) insurance coverage with respect to the responsibilities, liabilities and obligations of the Liquidating Trustee and those Persons hired by the Liquidating Trustee to discharge such responsibilities, liabilities and obligations.**

**The Liquidating Trustee, the Liquidating Trust, the employees thereof and each of their professionals and representatives shall be and hereby are exculpated by all Entities, including, without limitation, Holders of Claims and other Parties in Interest, from any and all Claims, Causes of Action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Liquidating Trust and Liquidating Trustee by the District Creditor Plan or any Order of the Bankruptcy Court entered**

**pursuant to or in furtherance of the District Creditor Plan, or applicable law or otherwise, except only for actions or omissions to act only to the extent determined by a final order to be due to their own respective gross negligence or willful misconduct after the Effective Date. No Holder of a Claim or other party in interest will have or be permitted to pursue any claim or cause of action against the Liquidating Trustee, the Liquidating Trust or the employees, professionals or representatives of either the Liquidating Trustee or the Liquidating Trust for making payments in accordance with the District Creditor Plan or for implementing the provisions of the District Creditor Plan except in cases of gross negligence or willful misconduct. The Debtors, the Debtors' Estates and the Liquidating Trust shall indemnify, defend and hold harmless the Liquidating Trustee, and the Liquidating Trustee's professionals or representatives from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees) (other than only to the extent determined by a Final Order to be due to their own respective gross negligence or willful misconduct after the Effective Date) to the fullest extent permitted by applicable law.**

**11.1.  Establishment of Liquidating Trust Account and Reserve Account; Continued Corporate Existence; Dissolution of Debtors**

11.1.1  On the Effective Date, the Liquidating Trustee shall:

(1)  Establish and fund the Liquidating Trust Account and Reserve Account as provided for in the District Creditor Plan; and

(2)  In making Distributions, the Liquidating Trustee shall retain in the Liquidating Trust Account and/or the Reserve Account sufficient cash to fund the Post-Confirmation Fees and Expenses, including the reasonably anticipated fees and expenses of the Liquidating Trustee and its professionals that are incurred after the Confirmation Date.

11.1.2  After the Effective Date, the Liquidating Trustee shall:

(1)  Continue to liquidate as promptly as practicable the assets of the Liquidating Trust;

(2)  Present objections to Claims as the Liquidating Trustee deems appropriate;

(3)  Cause the Distributions to occur that the District Creditor Plan contemplates; and

(4)  Wind up the affairs of the Liquidating Trust consistent with applicable non-bankruptcy law.

11.1.3  As soon as practicable, the Liquidating Trustee shall (i) effectuate the dissolution of the Debtors in accordance with the laws of the State of Florida and any other applicable law,

and (ii) cause the Bankruptcy Cases to be closed.

## 11.2    Dissolution of the Committee

On the first (1st) Business Date following the Effective Date, and provided that the Liquidating Trust has become effective pursuant to the Plan, the Committee shall be dissolved and the Committee, its members, and professionals retained by the Committee in accordance with section 1103 of the Bankruptcy Code will be released and discharged from their respective fiduciary obligations, duties, and responsibilities arising from or related to the Bankruptcy Cases, except with respect to (i) prosecuting applications for professionals' compensation; (ii) asserting, disputing and participating in the resolution of Professional Fee Claims; and (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof. Upon the conclusion of (i) through (iii), the Committee shall be immediately dissolved, released, and discharged.

## 11.3    Professional Fees and Expenses

Each person or chapter 11 professional requesting compensation in the Debtors' Bankruptcy Cases pursuant to §§ 326, 327, 328, 330, 331, or 1103 of the Bankruptcy Code on account of services performed or Claims otherwise arising prior to the Confirmation Date shall file an application for final allowance of compensation and reimbursement of expenses in compliance with the Local Rules and any applicable deadlines set forth in the order approving the Disclosure Statement.    In accordance with local practice and procedures, supplement to final fee applications may be filed on or before the date of the hearing on confirmation.  Objections to such applications shall be filed no later than the date set forth on the order approving the Disclosure Statement.  Reasonable fees and expenses incurred by any Professional or any other professional after the Confirmation Date who may be retained by the Liquidating Trustee may be paid in the ordinary course without any application to or order of the Bankruptcy Court..

## 11.4    Insurance Preservation

Nothing in the District Creditor Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any Claims against the Debtors or any other Person.

## 11.5    Release of Liens

On the Effective Date, except as otherwise provided in the District Creditor Plan as to any Liens of the District, all mortgages, deeds of trust, Liens or other security interest against the property of the Estates shall be released, except to the extent a preexisting, valid lien of a Secured Creditor shall continue to attach to the relevant Collateral in the hands of the Liquidating Trust.

## 11.6    No Liability for Tax Claims

Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such

Governmental Authority shall be Allowed against the Debtors or the Post Confirmation Estate for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

## ARTICLE 12:  RETENTION OF JURISDICTION

**12.1    General Retention**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the District Creditor Plan are carried out.

**12.2    Specific Purposes**

12.2.1  In addition to the general retention of jurisdiction set forth in Article 12.1, after Confirmation of the District Creditor Plan and until the Bankruptcy Cases are closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Cases for the following specific purposes:

(1)    to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interests, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Interests;

(2)    to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Cases, the District Creditor Plan or the Confirmation Order (including regarding the effect of any release, discharge, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the District Creditor Plan have been satisfied);

(3)    to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under §§ 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Cases; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after Confirmation of the District Creditor Plan unless an objection to such fees and expenses has been made by the Liquidating Trustee;

(4)    to determine any and all motions pending as of the date of the

33

Confirmation Hearing (including pursuant to the District Creditor Plan) for the rejection, assumption, or assignment of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any cure Claims;

(5)    to determine any and all motions, applications, adversary proceedings, contested or litigated matters, Causes of Action, and any other matters involving the Debtors commenced in connection with, or arising during, the Bankruptcy Cases and pending on the Effective Date, including approval of proposed settlements thereof;

(6)    to enforce, interpret and administer the terms and provisions of the District Creditor Plan and the District Creditor Plan Documents;

(7)    to modify any provisions of the District Creditor Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(8)    to consider and act on the compromise and settlement of any Claim against or Interests in the Debtors or the Estates;

(9)    to assure the performance by the Debtors of their obligations under the District Creditor Plan;

(10)    to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the District Creditor Disclosure Statement, the District Creditor Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the District Creditor Plan, including the adjustment of the date(s) of performance under the District Creditor Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the District Creditor Plan may be substantially realized thereby;

(11)    to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case;

(12)    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the District Creditor Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the District Creditor Plan, the District Creditor Disclosure Statement or the Confirmation Order, including the District Creditor Plan Documents;

(13)    to enter the Final Sale Order and all other orders as may be necessary or appropriate to effectuate or consummate the Sale of the Property.

(14)  to review and approve any sale or transfer of assets held by the Liquidating Trust, and to determine all questions and disputes regarding such sales or transfers;

(15)  to determine all questions and disputes regarding title to the assets of the Debtors, or the Liquidating Trust;

(16)  to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtors arising on or prior to the Effective Date or arising on account of transactions contemplated by the District Creditor Plan, including to determine any motion that may be filed after the Effective Date as necessary to obtain a tax refund from the Internal Revenue Service;

(17)  to resolve any determinations which may be requested by the Liquidating Trustee of any unpaid or potential tax liability or any matters relating thereto under §§ 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

(18)  to resolve any disputes concerning any release of or limitation of liability as to a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder;

(19)  to determine any motions or contested matters relating to the Causes of Action commenced in the Bankruptcy Court, whether brought before or after the Effective Date;

(20)  to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the District Creditor Plan or the Confirmation Order;

(21)  to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(22)  to determine any other matters that may arise in connection with or relating to the District Creditor Plan, the District Creditor Disclosure Statement, the Confirmation Order, or the District Creditor Plan Documents;

(23)  to enter such orders as are necessary to implement and enforce the injunctions described herein;

(24)    to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

(25)    to enter an order concluding and terminating the Bankruptcy Cases.

## 12.3    Reopening of the Bankruptcy Cases

In addition to the retention of jurisdiction set forth in Articles 12.1 and 12.2, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Cases to enter an order reopening the Bankruptcy Cases after they have been closed.

## ARTICLE 13:  MODIFICATION OF
## DISTRICT CREDITOR PLAN AND CONFIRMATION OVER OBJECTIONS

## 13.1    Modification of District Creditor Plan

13.1.1 The Plan Proponents may modify the District Creditor Plan at any time prior to the entry of the Confirmation Order provided that the District Creditor Plan, as modified, and the District Creditor Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements and the terms of the Settlement Term Sheet and modification is upon notice to the Entities Entitled to Notice with noticed parties having an opportunity to object to the proposed modification.

13.1.2 After the entry of the Confirmation Order, the Plan Proponents or the Liquidating Trustee (as the case may be) may modify the District Creditor Plan to remedy any defect or omission or to reconcile any inconsistencies in the District Creditor Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the District Creditor Plan, provided that (a) the Plan Proponents or the Liquidating Trust (as the case may be) obtains Bankruptcy Court approval for such modification, after notice and a hearing, (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Interests under the District Creditor Plan; and (c) such modification comports with the terms of the Settlement Term Sheet.

13.1.3 After the Confirmation Date and before substantial consummation of the District Creditor Plan, the Plan Proponents or the Liquidating Trust (as the case may be) may modify the District Creditor Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Interests, provided that (a) the District Creditor Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the District Creditor Plan, as modified, meets the terms of the Settlement Term Sheet; (c) the Plan Proponents  or the Liquidating Trust (as the case may be) obtains Bankruptcy Court approval for such modification, after notice and a hearing; (d) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of Allowed Claims or by at least two-thirds in amount of Allowed Interests voting in each Class adversely affected by such modification; and (e) the Plan Proponents  or the

Liquidating Trust (as the case may be) complies with § 1125 of the Bankruptcy Code with respect to the District Creditor Plan, as modified.

13.1.4 Notwithstanding anything to the contrary contained in this Article 13.1 or elsewhere in the District Creditor Plan, the District Creditor Plan may not be altered, amended or modified without the written consent of the Plan Proponents and the Liquidating Trustee (as the case may be).

## 13.2    Confirmation Over Objections

In the event any Impaired Class of Claims or Interests votes against the District Creditor Plan, and the District Creditor Plan is not revoked or withdrawn in accordance with Article 14.2, the Plan Proponents requests, and shall be allowed, to modify the terms of the District Creditor Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with § 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting Distributions to all Classes at or below the level of the objecting Class, or reallocating such Distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of § 1129(b) of the Bankruptcy Code.  The Plan Proponents may make such modifications or amendments to the District Creditor Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the District Creditor Plan by any Class of Claims or Interests unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the District Creditor Plan to the contrary, the Plan Proponents reserves any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the District Creditor Plan.

## <u>ARTICLE 14:  MISCELLANEOUS PROVISIONS</u>

## 14.1    No Admissions

The District Creditor Plan provides for the resolution, settlement and compromise of Claims against and Interests in the Debtors.  Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Plan Proponents or the Debtors' Estates in any manner prior to the Effective Date.

## 14.2    Revocation or Withdrawal of the District Creditor Plan

The Plan Proponents reserve the right to revoke or withdraw the District Creditor Plan prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw the District Creditor Plan, or if Confirmation of the District Creditor Plan does not occur, then the District Creditor Plan shall be deemed null and void in all respects and nothing contained in the District Creditor Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Interests in, the Debtors' Estates or any other Person, or (b) prejudice in any manner the rights of the Estates or any other Person in any further proceedings involving the Debtors.

### 14.3    Further Assurances

Both the Debtors and the Liquidating Trustee are authorized and directed to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the District Creditor Plan.

### 14.4    Headings

The headings and table of contents used in the District Creditor Plan are for convenience and reference only and shall not constitute a part of the District Creditor Plan for any other purpose or in any manner affect the construction of the provisions of the District Creditor Plan.

### 14.5    Notices

All notices, requests or other documents in connection with, or required to be served by, the District Creditor Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to counsel for the Plan Proponents: Arnstein & Lehr LLP, 200 South Biscayne Blvd., Suite 3600, Miami, Florida 33131, Attn:  Phillip M. Hudson, III (counsel for Florida Prime Holdings, LLC); Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Museum Tower, 150 West Flagler Street, Suite 2200, Miami, Florida 33130, Attn: Patricia A. Redmond (counsel for the District); Billings, Cochran, Lyles, Mauro & Ramsey, PA, Suntrust Center, 515 East Las Olas Boulevard, Sixth Floor, Fort Lauderdale, Florida 33301, Attn: Dennis E. Lyles (counsel for the District); and Greenberg Traurig, P.A., 333 Avenue of Americas, Miami, Florida 33131, Attn: John B. Hutton, III and John R. Dodd (counsel for the Indenture Trustee), or to the Liquidating Trust c/o [_____].  A copy of such notice, request or other document shall be sent to Debtors' counsel:  Blizin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Ave., Suite 2300, Miami, Florida 33131, Attn:  Mindy A. Mora, and to the Committee' counsel:  Genovese Joblove & Battista, PA, 100 SE Second Street, 44th Floor, Miami, FL 33131, Attn:  Glenn D. Moses.

### 14.6    Governing Law

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the District Creditor Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the District Creditor Plan provides otherwise, the rights and obligations arising under the District Creditor Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

### 14.7    Limitation on Allowance

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Interest except as otherwise specified in the District Creditor Plan or as Allowed by a Final Order of the Bankruptcy Court.

**14.8    Estimated Claims**

To the extent any Claim is estimated for any purpose other than for voting on the District Creditor Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

**14.9    Consent to Jurisdiction**

14.9.1  Upon any default under the District Creditor Plan, the Plan Proponents and the Liquidating Trustee consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

14.9.2  By accepting any Distribution or payment under or in connection with the District Creditor Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim, by voting on the District Creditor Plan, by reason of being served with notice of the filing of the Bankruptcy Case or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Case, all Creditors, Holders of Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the District Creditor Plan or the Bankruptcy Case, including the matters and purposes set forth in Article 12 of the p Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the District Creditor Plan.

**14.10    Setoffs**

Subject to the limitations provided in § 553 of the Bankruptcy Code, the Liquidating Trust may, but shall not be required to, set off against any Claim and the payments or other Distributions to be made pursuant to the District Creditor Plan in respect of such Claim, Claims of any nature whatsoever the Debtors' Estates may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such Claim that the Debtors' Estates may have against the Holder of such Claim.

**14.11    Successors and Assigns**

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the District Creditor Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**14.12    No Interest**

Except as expressly stated in the District Creditor Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose.

### 14.13   Modification of Payment Terms

The Liquidating Trust reserves the right to modify the treatment of any Allowed Claim, as provided in § 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

### 14.14   Entire Agreement

The District Creditor Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

### 14.15   Severability of District Creditor Plan Provisions

If, prior to Confirmation of the District Creditor Plan, any term or provision of the District Creditor Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at District Creditor's request, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the District Creditor Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the District Creditor Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

### 14.16   Confirmation Order and District Creditor Plan Control

To the extent the Confirmation Order or the District Creditor Plan is inconsistent with the District Creditor Disclosure Statement or any agreement entered into between the Plan Proponents or the Liquidating Trust and any third party, unless otherwise expressly provided in the District Creditor Plan or the Confirmation Order, the District Creditor Plan controls over the District Creditor Disclosure Statement and any such agreement, and the Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the District Creditor Plan.

### 14.17   Computation of Time

In computing any period of time prescribed or allowed by the District Creditor Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 14.18   Substantial Consummation

The District Creditor Plan shall be deemed to be substantially consummated within the meaning of § 1101 of the Bankruptcy Code upon commencement by the Liquidating Trustee of the Distributions described in the District Creditor Plan.

## 14.19   District Creditor Plan Documents

The District Creditor Plan Documents (if any) shall be filed with the Bankruptcy Court at least ten (10) days prior to the Voting Deadline; provided, however, that the Plan Proponents may amend the District Creditor Plan Documents through and including the Confirmation Date. Upon their filing with the Bankruptcy Court, the District Creditor Plan Documents may be inspected in the Clerk's Office during normal business hours or may be obtained from the Plan Proponents' counsel.

## 14.20   Waiver of Stay

The Confirmation Order shall provide for a waiver of the 14 day stay under Bankruptcy Rule 3020(e) and any stay that may be imposed under Federal Rule of Civil Procedure 62(a).


**Respectfully submitted,**

*/s/  Patricia A. Redmond*_____
**STEARNS WEAVER MILLLER WEISSLER**
**ALHADEFF & SITTERSON, P.A.**
PATRICIA A. REDMOND
Florida Bar No. 303739
*Attorneys for the District*
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3553
Fax:          (305) 789-3395
Email: predmond@stearnsweaver.com

*/s/  John B. Hutton, III*_____
**GREENBERG TRAURIG, P.A.**
JOHN B. HUTTON, III
Florida Bar No. 902160
JOHN R. DODD
Florida Bar No. 38091
*Attorneys for the Indenture Trustee*
333 Avenue of Americas
Miami, Florida 33131
Telephone: (305) 579-0730
Fax:          (305) 579-0717
Email: huttonj@gtlaw.com
          doddj@gtlaw.com

*/s/  Phillip M. Hudson, III*_____
**ARNSTEIN & LEHR LLP**
PHILLIP M. HUDSON III
Florida Bar No. 518743
*Attorneys for Florida Prime Holdings, LLC*
200 S. Biscayne Blvd., Suite 3600
Miami, Florida 33131
Telephone:    (305) 374-3330
Telefax:       (305) 374-4744
Email:  pmhudson@arnstein.com