## AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY

**THIS AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY** (the "**Agreement**") is made and entered into as of the last date of execution indicated below (the "**Effective Date**"), by and among LANDMARK AT DORAL EAST, LLC ("Debtor 1"), TOWN CENTER AT DORAL, LLC ("Debtor 2"), LANDMARK AT DORAL SOUTH, LLC ("Debtor 3"), LANDMARK AT DORAL DEVELOPERS, LLC ("Debtor 4"), and LANDMARK CLUB AT DORAL, LLC ("Debtor 5"), each one, a Florida limited liability company, as Debtors-in-Possession under Case Nos. 11-35885, 11-35884, 11-35886, 11-35888 and 11-35887, respectively (collectively, "**Sellers**" or "**Debtors**"; each one, a "**Seller**" or "**Debtor**"), and LANDMARK AT COMMUNITY DEVELOPMENT DISTRICT, a community development district (the "**District**" or **Buyer**"). Sellers and Buyer together sometimes referred to as the "**Parties**," and each a "**Party**."

## RECITALS

A.      On September 19, 2011, each Debtor filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code (the "**Code**"). The bankruptcy cases are jointly administered as Case No. 11-35884-RAM, which case is styled *In re: Town Center at Doral, L.L.C., et. al.* (collectively, the "**Bankruptcy Case**") in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**").

B.      Sellers are the debtors-in-possession in the Bankruptcy Case within the meaning of sections 1107 and 1108 of Chapter 11 of the Code and each such debtor owns all right, title and interest in those certain real properties, being more particularly described and identified as parcels A, B, C, D and E on **Composite Exhibit "A"** attached hereto (the "**Real Property**", which term is used to and includes all improvements (the "**Improvements**") owned by Sellers and/or located upon the Real Property, and such Sellers' interest, if any, in and to (i) all strips and gores of land lying adjacent to the property, lands underlying any adjacent streets or roads, easements, privileges, rights-of-way, riparian and other water rights, and other appurtenances pertaining to or accruing to the benefit of the Real Property; (ii) all fixtures, equipment, furnishings and items of personal property currently located on the Real Property (the "**Personal Property**"); (iii) all licenses, permits, contract rights, development rights, and approvals pertaining to the ownership operation and/or proposed development of the Real Property, if any; and (iv) all of Sellers' general intangible rights pertaining to ownership and proposed development of the Real Property (all of Sellers' interest in the Real Property, Improvements, the Personal Property and all other property and rights described in this Recital B are collectively referred to as the "**Property**").

C.      On March ___, 2012, the District, Florida Prime Holdings, LLC, a Delaware limited liability company (the "**Bondholder**"), and U.S. Bank National Association, solely as indenture trustee pursuant to that certain Master Trust Indenture and that First Supplemental Trust Indenture, both dated as of October 1, 2006 (the "**Indenture Trustee**"; the District, the Bondholder and the Indenture Trustee may hereinafter be collectively referred to as the "**Plan Proponents**"), filed a Joint Plan of Reorganization proposing a plan of reorganization (the "**Amended District Creditor Plan**"), of the Debtors' estates created by § 541 of the Code upon the commencement of the Bankruptcy Case (the "**Estates**").

D.      The Plan Proponents have filed or shall file a motion to establish procedures to obtain the highest and best bid for the sale of the Property (the "**Sale Procedures Motion**").

E.      The Sale Procedures Motion, subject to Bankruptcy Court approval, which shall (i) allow for due diligence to be completed in full, without reservation, at least one (1) business day prior to the deadline to submit a Qualified Bid (the "**Due Diligence Period**"), (ii) establish a date by which offers on the Property are due, (iii) set forth the requirements of a "**Qualified Bidder**," (iv)

## Exhibit A

state that Qualified Bidders must submit bids to the Plan Proponents and the creditors' committee counsel within five (5) days after the expiration of the Due Diligence Period, (v) set an auction date and location for the sale of the Property (the "**Auction**"), (vi) establish the bidding procedures and deposit amounts for Qualified Bidders to participate in the Auction, and (vii) provide for customary "stalking horse" protections.

F.      Pursuant to the Sale Procedures Motion, the District has or will seek, among other things, the authority to purchase the Property, and, in connection therewith, the District hereby submits this "stalking horse" bid of SIXTY SEVEN MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($67,500,000.00) (the "**Stalking Horse Bid**").

G.      Pursuant to the Amended District Creditor Plan, the District is entitled to submit a credit bid at the Auction in exchange for its release of claims and liability as to the Debtors and its partial release of liens which encumber the Property as of the date hereof (the "**Credit Bid**"), which Credit Bid is in excess of ONE HUNDRED ELEVEN MILLION AND NO/100 DOLLARS ($111,000,000.00), which continues to incur costs, fees and interest.

H.      The Sale Procedures Motion shall provide that the District's maximum credit bid will be SEVENTY-NINE MILLION AND NO/100 DOLLARS ($79,000,000.00) (the "**Maximum Credit Bid**"), and if a bid submitted by a Qualified Bidder exceeds the District's Maximum Credit Bid, the Bankruptcy Court may consider such Qualified Bidder as the Successful Bidder (as hereinafter defined).

I.      The Sale Procedures Motion shall provide that, after the Auction, the Bankruptcy Court shall conduct a final hearing to determine the highest and best offer (the "**Successful Bidder**") and enter a final sale order (the "**Final Sale Order**").

J.      The sale of the Property and the Auction are in conjunction with a plan of reorganization pursuant to the Amended District Creditor Plan, and the Plan Proponents shall seek confirmation of the Amended District Creditor Plan simultaneously to or immediately prior to or after the issuance of the Final Sale Order.

K.      The Sale Procedures Motion shall provide that initial bidding on the Property will begin at SIXTY EIGHT MILLION AND NO/100 DOLLARS ($68,000,000.00) plus any Cure Costs required to be paid (the "**Minimum Bid Amount**"), with subsequent bids required to be made over the Minimum Bid Amount in increments of TWO HUNDRED AND FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00).

L.      The Sales Procedures Motion shall provide that if the District is not the Successful Bidder at the Auction and if there is a third party which is the Successful Bidder (the "**Third Party Successful Bidder**"), the District shall remain the back-up bidder until the Third Party Successful Bidder closes on its acquisition of the Property, and, in the event the Third Party Successful Bidder does not close, then the District shall close on the Property at the District's last highest bid.

M.      Buyer wishes to purchase the Property and Sellers are willing to sell the Property to Buyer for the price and pursuant to the term and conditions of this Agreement, subject to the approval of the Bankruptcy Court.

Therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree to the terms and conditions set forth below.

9977143.7

## AGREEMENT

In consideration of the foregoing, the mutual covenants and agreements herein, and for other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged by the Parties, it is agreed as follows:

1.    <u>Incorporation</u>.    The recitals to this Agreement and all Exhibits referred to in this Agreement are hereby incorporated into and made a part of this Agreement.

2.    <u>Stalking Horse Bid</u>.    Subject to the terms and conditions of this Agreement and Bankruptcy Court approval, Sellers agree to convey the Property to Buyer and Buyer agrees to purchase the Property from Sellers for the purchase price in an amount equal to the Stalking Horse Bid.   Buyer will pay the Stalking Horse Bid as follows:

(a)    A cash deposit of TWO MILLION AND NO/100 DOLLARS (the "**Buyer Deposit**") to be held in the trust account of Arnstein & Lehr LLP (the "**Escrow Agent**").

$ 2,000,000.00

(b)    A Credit Bid of SIXTY FIVE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS (Subject to the terms of this Agreement, Buyer is entitled to a Credit Bid up to the District's Maximum Credit Bid)

$65,500,000.00

**$67,500,000.00**

(c)    Plus Cure Costs as more fully described in the Sales Procedure Motion.

3.    <u>Title</u>.    Sellers shall convey to Buyer or Buyer's designee by Deed all of Sellers' right, title, and interest in and to the Property free and clear of all liens, claims, encumbrances, liabilities, obligations, mortgages, security interests and interests in accordance with the provisions of 11 U.S.C. §§ 1123(a)(5)(D) and 1129 (collectively, the "**Encumbrances**"), except for those (i) restrictions—and limitations of record affecting the Property, (ii) easements for public utilities that may be of record, and any pending special assessments or governmental liens, (iii) zoning restrictions and prohibitions imposed by any governmental authority or governmental unit (as defined in 11 U.S.C. § 101((27)), and (iv) restrictions, easements, and other matters appearing on the plat or common to the subdivision or neighborhood, all of the foregoing which do not render title to the Property unmarketable (the "**Permitted Exceptions**").   At least ten (10) days prior to the Auction, Buyer shall obtain, at its own expense, a title insurance commitment issued by Arnstein & Lehr LLP, as agent for First American Title Insurance Company (the "**Commitment**").   Nothing herein shall act to re-impose such Encumbrances. Sellers shall convey title to the Buyer or Buyer's designee, with the protections of 11 U.S.C. §§ 1123(a)(5)(D) and 1129, provided such protections are approved by the Bankruptcy Court, and shall provide to the Buyer a certified copy of the Final Sale Order, pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1129.

- 3 -

4.    <u>Sellers' Representations and Warranties</u>.  Each Seller represents and warrants to Buyer as follows:

(a)    <u>Sellers' Existence</u>.  Each Seller is a Chapter 11 debtor-in-possession, Case No. 11-35884-RAM, and has full power and authority to sell the Property, to comply with the terms of this Agreement, and to consummate the transactions contemplated hereunder, subject to the entry of the Sale Procedures Motion and a Final Sale Order by the Bankruptcy Court.

(b)    <u>Authority</u>.  Subject to the other provisions of this Agreement, the execution and delivery of this Agreement by Sellers and the consummation by Sellers of the transaction contemplated by this Agreement are within Sellers' capacity.

(c)    <u>Seller's Cooperation</u>.  Upon request of Buyer, Sellers shall, to the extent available, provide copies of or access to enable Buyer to make copies of all plans, drawings, specifications, reports or other documents relating to the Property.  In addition, where necessary, Sellers shall assume all such agreements the Buyer requests Sellers to assume, for further assignment to the Buyer at Closing, including the right to use for any lawful purpose any plans, drawings, specifications, reports or other documents prepared for Sellers by any third party and relating to the Property.  Each such assumption shall be expressly conditioned upon (i) Buyer's agreement to accept further assignment to the Buyer at Closing; and (ii) Buyer's agreement to pay all necessary cure costs and related fees.

(d)    <u>No Other Representations and Warranties</u>.  Buyer acknowledges that Sellers are Debtor and that, except as expressly set forth herein, Sellers have not made any warranties or representations concerning the Property or any component thereof, including, without limitation, the operation of or the costs or results of the operation thereof; the condition of the Improvements; the zoning or other land use restrictions affecting the Property; the compliance of the Property or any part thereof with any governmental requirement; the use or existence or prior use or existence of hazardous material on the Property; or the accuracy or completeness of any statement or other matter previously disclosed to Buyer.  Buyer represents that it is purchasing the Property in an **"AS-IS, WHERE-IS"** condition, Buyer having made (or having the opportunity to make during or prior to the Investigation Period) its own inspection and examination of the Property and all components thereof.  **EXCEPT AS SPECIFICALLY PROVIDED FOR HEREIN, THERE ARE NO EXPRESSED OR IMPLIED WARRANTIES GIVEN TO BUYER IN CONNECTION WITH THE SALE OF THE PROPERTY.  SELLERS HEREBY DISCLAIM ANY AND ALL WARRANTIES OF MERCHANTABILITY, HABITABILITY, AND FITNESS THAT MAY BE DUE FROM SELLERS TO BUYER. NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH HEREIN, THIS SECTION SHALL SURVIVE THE CLOSING.**

5.    <u>Buyer's Representations and Warranties</u>.  Buyer represents and warrants to Sellers as follows:

(a)    <u>Buyer's Existence</u>.  Buyer has full power and authority to purchase the Property and to comply with the terms of this Agreement.  If Buyer is other than an individual, Buyer is duly organized, validly existing, in good standing, and qualified to do business under the laws of the State of Florida.

(b)    <u>Authority</u>.  The execution and delivery of this Agreement by Buyer and the consummation by Buyer of the transaction hereby contemplated are within Buyer's capacity, and all

- 4 -

requisite action has been taken to make this Agreement valid and binding on Buyer in accordance with its terms.

6. **Higher and Better Offers; Bankruptcy Court Approval. THIS AGREEMENT IS EXPRESSLY SUBJECT TO HIGHER AND BETTER OFFERS AND APPROVAL OF THE BANKRUPTCY COURT. Notwithstanding anything to the contrary contained herein, a condition precedent to the consummation of the transaction contemplated by this Agreement is the entry of a <u>Final Sale Order</u> by the Bankruptcy Court approving this Agreement and the sale of the Property.**

7. <u>Closing</u>. Subject to all of the provisions of this Agreement, Buyer and Sellers shall close this transaction on the date set forth in the Bid Procedures Order (as hereinafter defined) and/or the Final Sale Order (the "**Closing**" and "**Closing Date**"), commencing at 10:00 a.m. or at such other time on the Closing Date as mutually agreed to by Sellers and Buyer. The Closing shall take place at the office of Arnstein & Lehr LLP, 200 South Biscayne Boulevard, Suite 3600, Miami, Florida 33131, or by other means mutually agreeable to the parties.

8. <u>Sellers' Closing Documents</u>. At Closing, Sellers shall execute and deliver, or obtain and deliver, as applicable, certain documents (the "**Sellers' Closing Documents**"), as follows:

(a) <u>Deed</u>. Deeds in the form attached hereto as **Exhibit "B**," which shall be duly executed and acknowledged by Sellers.

(b) <u>Bill of Sale</u>. Quit claim Bill of Sales transferring title ("as is, where is") to all Personal Property duly executed by the Sellers, in the form attached hereto as **Exhibit "C".**

(c) <u>Order</u>. A certified copy of the Final Sale Order.

(d) <u>Sellers' Affidavit</u>. A no-lien, gap, possession and FIRPTA affidavit.

(e) <u>Assignment</u>. Assignments (the "**Assignments**") in the form attached hereto as **Exhibit "D"**, duly executed by the Sellers, assigning to Buyer all of Sellers' right title and interest in and to (i) the licenses, permits, contract rights, development rights, and approvals pertaining to the ownership and/or operation of the Real Property, if any, and (ii) the general intangible rights pertaining to ownership of the Real Property.

(f) <u>Closing Statement</u>. A Closing Statement setting forth the Stalking Horse Bid as the purchase price, Deposit, and all closing costs due from Buyer, and the net cash to close due to Sellers (the "**Closing Statement**") duly executed by Sellers and Buyer.

9. <u>Buyer's Closing Documents</u>. At Closing, Buyer shall execute and deliver certain documents (the "**Buyer's Closing Documents**"), as follows:

(a) <u>Authorizing Resolution</u>. To the extent applicable, a certified resolution of Buyer authorizing the entering into and execution of this Agreement and the consummation of the transaction herein contemplated, together with all corporate, company or partnership documents as applicable and/or required by the Commitment.

(b) <u>Assignments</u>. The Assignments executed by Buyer, if any.

- 5 -

       (c)    <u>Closing Statement</u>**.**  The Closing Statement duly executed by Buyer.

    10.    <u>Conditions Precedent to Closing</u>.  Closing of the sale of the Property pursuant to the terms of this Agreement shall be conditioned upon the following:

       (a)    <u>Bid Procedures Order</u>.  Entry by the Bankruptcy Court of a Bid Procedures Order which is acceptable to the Parties (such order, a "**Bid Procedures Order**").

       (b)    <u>Final Sale Order</u>.  Entry by the Bankruptcy Court of a Final Sale Order.

       (c)    <u>Approval of Purchase Agreement</u>.  Approval by the Bankruptcy Court of the terms and conditions of this Agreement.

       (d)    <u>Disposal of Orders or Judgments</u>.  The District shall vacate all orders or judgments against the Sellers and Property or otherwise dispose of such orders or judgments to the satisfaction of Buyer or its counsel.

    11.    <u>Closing Procedure</u>.  The Closing shall proceed in the following manner:

       (a)    <u>Transfer of Funds</u>.  At Closing, Buyer shall receive a credit against the Stalking Horse Bid up to the amount of the District's Maximum Credit Bid, and shall authorize the release of the Buyer Deposit by cashiers check or wire transfer of immediately available funds to be applied to the Stalking Horse Bid and disbursed to Sellers in accordance with the Final Sale Order.

       (b)    <u>Delivery of Documents</u>.  Not less than three (3) days prior to the Closing Date, each of the Parties shall deliver, in escrow, originals of their respective Closing Documents to the Closing Agent.

       (c)    <u>Disbursement of Funds and Documents</u>.  At Closing, provided all other obligations to close have been performed, Sellers shall be entitled to Buyer's Closing Documents; Seller shall distribute the proceeds to the Parties pursuant to the terms of this Agreement (and as provided in the Closing Statement and Final Sale Order); and Buyer shall be entitled to the Sellers' Closing Documents.

    12.    <u>Taxes</u>.  In accordance with the terms of the Final Sale Order, the Property is being sold subject to liens for real property taxes to Miami-Dade County for the year 2012 and subsequent years. All real estate taxes due Miami-Dade County or any tax certificate holder for the years prior to the year in which the Closing occurs shall be paid at Closing by the Buyer.  Buyer shall be responsible for the payment of all outstanding real estate taxes or tax certificates pursuant to applicable non-bankruptcy law at Closing.  The sale of the Property shall be in conjunction with the confirmation of the Amended District Creditor Plan and the exemption requirement of post-confirmation transfer of title from the Estates to the Buyer pursuant to 11 U.S.C. §1146 shall apply.

    13.    <u>Closing Costs; Title Insurance and Other Expenses</u>.  All costs of closing shall be paid by the Buyer, which include, but are not limited to, the documentary stamp tax and surtax, if any, on the deed; and the cost of recording the deed, the certified copies of the Final Sale Order, and any corrective instruments.  Buyer shall also be responsible for the payment of any and all charges and expenses in connection with any survey, abstract of title, lien searches, title examinations, title insurance premiums, soil tests, feasibility studies, appraisals, environmental audits, engineering and architectural work, and any other inspections.

- 6 -

14.     <u>Condemnation</u>.  If at any time prior to the Closing Date, any proceedings shall be commenced for the taking of all of the Property or any material portion thereof, for public or quasi-public use pursuant to the power of eminent domain, Sellers shall furnish Buyer with written notice of any proposed condemnation within five (5) days after any Seller's receipt of such notification, but in no event later than the Closing.  In such event, and provided that Buyer is not otherwise in default under this Agreement, Buyer shall have the option to terminate this Agreement within fifteen (15) days after Buyer's receipt of the notice from Sellers or by the Closing Date, whichever occurs first, by sending written notice to Sellers.  Should Buyer terminate this Agreement, neither Buyer, nor Sellers shall have any further rights or obligations hereunder, except as otherwise expressly provided herein.  If Buyer does not elect to terminate this Agreement within the required time, then (a) the Closing shall progress as herein provided without reduction of the Stalking Horse Bid, (b) Buyer shall have the right to participate in the negotiation of any condemnation awards or other compensation for the taking, and (c) provided the Closing occurs, Sellers shall assign to Buyer or deliver to Buyer any and all awards and other compensation for such taking to which it would be otherwise entitled as owner of the Property and Sellers shall convey the portion of the Property, if any, which remains after the taking.

15.     <u>Damage by Casualty</u>.  In the event that the Improvements or any portion thereof are damaged or destroyed by fire or other casualty prior to Closing, Sellers shall have the option to repair and restore the Property to the same condition as before the fire or casualty, provided that sufficient insurance funds are available to Sellers to pay for such repair and restoration, and Closing shall be deferred up to sixty (60) days to permit such repair and restoration.  If Sellers elect not to repair and restore or if Sellers is not able to repair or restore within such sixty (60) days period, then Buyer shall have the option of either (a) canceling this Agreement, whereupon both Parties shall be released from all further obligations under this Agreement, or (b) proceed with Closing in which case Buyer shall be entitled to all insurance proceeds and to a credit equal to the insurance deductibles.

16.     <u>Sellers' Default</u>.  In the event that this transaction fails to close due to a default on the part of Sellers, Buyer shall have the right to (a) terminate this Agreement, in which event the Parties shall be released from any and all liability under this Agreement, except as otherwise expressly provided herein, or (b) seek specific performance of Sellers' obligations hereunder.

17.     <u>Buyers' Default</u>.  In the event that this transaction fails to close due to a default on the part of the Buyer, the Buyer shall have five (5) business days to cure any such default.  In the event the Buyer fails to timely cure any default, the Buyer shall immediately and irrevocably forfeit its Deposit.  Neither party shall have any further liability for breach of contract.

18.     <u>Brokers</u>.  Each Party represents and warrants to the other that there is no real estate broker or finder in any way entitled to compensation as a consequence of the sale of the Property to Buyer.  Each party hereby agrees to indemnify, defend and hold the other party harmless from any loss, cost (including reasonable attorneys' fees and court costs at trial and all appellate levels), damage, claim, demand or liability for any damages or fees incurred by it arising out of a breach of the foregoing representation and warranty by the other party.  The provisions of this Section shall survive the closing and any cancellation or termination of this Agreement.

19.     <u>Notices</u>.  Any notice, request, demand, instruction, or other communication to be given to either Party hereunder, except where required to be delivered at the Closing, shall be in writing and shall either be (a) hand-delivered, (b) sent by Federal Express or a comparable overnight mail service, or (c)

- 7 -

sent by telephone facsimile transmission provided that a confirmation receipt is obtained, to Buyer, Sellers, Buyer's Attorney/Closing Agent, and Sellers' Attorney, as follows:

<u>Sellers:</u>                                                    <u>Sellers' Attorney:</u>

_____              _____
_____              _____
_____              _____
_____              _____
Telephone: _____                Telephone: _____
Facsimile:  _____                Facsimile   _____


<u>Buyer:</u>                                                     <u>Buyer's Attorney/Closing Agent:</u>

_____              Arnstein & Lehr LLP
_____              200 South Biscayne Boulevard
_____              Suite 3600
_____              Miami, Florida 33131
Telephone: _____                Telephone: 305-428-4522
Facsimile:  _____                Facsimile   305-808-8611

Notice shall be deemed to have been given upon receipt or refusal of delivery of said Notice.  The addressees and addresses for the purpose of this paragraph may be changed by giving notice.  Unless and until such written notice is received, the last addressee and address stated herein shall be deemed to continue in effect for all purposes hereunder.

20.     <u>Assignment</u>**.**  This Agreement may not be assigned without approval of the Bankruptcy Court.

21.     <u>Miscellaneous</u>.

(a)     <u>Amendment</u>**.**  No modification or amendment of this Agreement shall be of any force or effect unless in writing executed by both Sellers and Buyer and approved by order of the Bankruptcy Court.

(b)     <u>Attorneys' Fees</u>.  Each of the Parties hereto shall bear its own costs and attorneys' fees in connection with the execution of this Agreement and the consummation of the transaction contemplated hereby, subject, however, to the provisions of § 506 of the Code with respect to fees, costs, any Overbid Fee and charges incurred by the District.  In the event of any dispute hereunder, the prevailing party shall be entitled to recover all costs and expenses incurred by it in connection with the enforcement of this Agreement, including all attorneys' fees in and all costs in connection therewith as awarded by order of the Bankruptcy Court.

(c)     <u>Computation of Time</u>.  Any reference herein to time periods of less than five (5) days shall exclude Saturdays, Sundays, and legal holidays in the computation thereof.  Any time period provided for in this Agreement which ends on a Saturday, Sunday, or legal holiday shall extend to 4:00 p.m. on the next full Business Day.

9977143.7

(d)     Counterparts.  This Agreement may be executed in any number of counterparts, any one and all of which shall constitute the contract of the Parties and each of which shall be deemed an original.

(e)     Entire Agreement.  This Agreement sets forth the entire agreement between Sellers and Buyer relating to the Property and all subject matter herein and supersedes all prior and contemporaneous negotiations, understandings, and agreements (written or oral) between the Parties, and there are no agreements, understandings, warranties or representations between the Parties except as otherwise indicated herein.

(f)     Gender.  As used in this Agreement, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular as the context may require.

(g)     Governing Law; Jurisdiction.  This Agreement shall be construed in accordance with the laws of the State of Florida, without application of conflict of law rules.  The Parties agree to subject themselves to the exclusive jurisdiction of the Bankruptcy Court for the purpose of adjudicating claims and disputes arising with respect to this Agreement and the transactions contemplated hereby.

(h)     Radon Gas.  Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time.  Levels of radon that exceed federal and state guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from our county public health unit.

(i)     Section and Paragraph Headings.  The section and paragraph headings herein contained are for the purposes of identification only and shall not be considered in construing this Agreement.

(j)     Severability.  If any clause or provision of this Agreement is determined to be illegal, invalid, or unenforceable under any present or future law by final judgment of a court of competent jurisdiction, the remainder of this Agreement will not be affected thereby.  It is the intention of the Parties that if any such provision is held to be illegal, invalid, or unenforceable, there will be added in lieu thereof a provision that is similar in terms to such provision as is possible to be legal, valid and enforceable.

(k)     Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon the permitted successors and assigns of the Parties, including without limitation, any Chapter 11 or Chapter 7 trustee.

(l)     Survival.  Except as otherwise expressly set forth in this Agreement, all representations and warranties of Sellers and obligations of Sellers hereunder set forth in this Agreement shall **not** survive the Closing, but shall merge into the Closing and the delivery of the Deeds.

(m)     Time is of the Essence.  Time is of the essence in the performance of all obligations by Buyer and Sellers under this Agreement.

22.    Waiver of Trial by Jury.  SELLERS AND BUYER HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHTS TO A TRIAL

- 9 -

9977143.7

BY JURY IN RESPECT OF ANY ACTION, PROCEEDING, OR COUNTERCLAIM BASED ON THIS AGREEMENT OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT OR ANY DOCUMENT OR INSTRUMENT EXECUTED IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTION OF ANY PARTY HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR SELLERS AND BUYER ENTERING INTO THE SUBJECT TRANSACTION.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]**

9977143.7

      **IN WITNESS WHEREOF,** Sellers and Buyer have executed this Agreement as of the last date written below.

**TOWN CENTER AT DORAL, LLC,** a Florida limited liability company, as Debtor-in-Possession

**LANDMARK AT DORAL COMMUNITY DEVELOPMENT DISTRICT,** a community development district

By:_____

Name:_____

Title:_____

Date:_____

By:_____

Name:_____

Title:_____

Date:_____

**LANDMARK AT DORAL EAST, LLC,** a Florida limited liability company, as Debtor-in-Possession

By:_____

Name:_____

Title:_____

Date:_____

**LANDMARK AT DORAL SOUTH, LLC,** a Florida limited liability company, as Debtor-in-Possession

By:_____

Name:_____

Title:_____

Date:_____

**LANDMARK CLUB AT DORAL, LLC,** a Florida limited liability company, as Debtor-in-Possession

By:_____

Name:_____

Title:_____

Date:_____

**LANDMARK AT DORAL DEVELOPERS, LLC**, a Florida limited liability company, as Debtor-in-Possession

By:_____

Name:_____

Title:_____

Date:_____

# COMPOSITE EXHIBIT A

# LEGAL DESCRIPTION

**Parcel "A" (Tax ID No.35-3017-001-0241) owned by Debtor 1:**

The East 415.00 feet of Tracts 24, 33, 34, 35 and 36, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida.

LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

**Parcel "B" (Tax ID No. 35-3017-001-0240) owned by Debtor 2:**

Tracts 24, 25, 33, 34, 35, 36, 45, 46, 47 and 48; LESS all the Roads Right-of-Ways of record, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, Florida, which lies within the West ½ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida; LESS the East 415.00 feet of Tracts 24, 33, 34, 35 and 36, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida; and LESS that portion of Tract 45 deeded to Miami-Dade County by Special Warranty Deed recorded September 3, 1996 in Official Records Book 17336, Page 459, of the Public Records of Miami-Dade County, Florida.


AND LESS:

A portion of Tract 25, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, which lies within the Northwest ¼ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida. More particularly described as follows:

Commence at the Northwest corner of said Section 17, thence S 01°43'09" E along the West line of said Section 17 for a distance of 2,309.44 feet; thence N 89°40'03" E along the North line of said Tract 25 for 690.19 feet; thence S 00°19'51" E for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of land, thence N 89°40'03" E for 301.52 feet; thence S 00°19'51" E for 92.18 feet; thence N 89°40'09" E for 18.00 feet; thence S 00°19'51" E for 128.67 feet; thence S 89°40'09" W for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N 47°51'32" E; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96°22'46" for a distance of 100.93 feet to a point on a non-tangent line; thence S 89°40'09" W for 129.49 feet; thence N 00°19'51" W for 128.67 feet; thence N 89°40'09" E for 18.00 feet; thence N 00°19'51" W for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official

9977143.7

Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

**Parcel "C" (Tax ID No.35-3017-001-0362) owned by Debtor 3:**

The West 739.33 feet of Tracts 41, 42, 43 and 44, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, In Section 17, Township 53 South, Range 40 East, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, Florida; LESS all Road Right-of-Ways of record, and LESS that portion of Tracts 41, 42, 43 and 44 deeded to Miami-Dade County by Special Warranty Deed recorded August 23, 1996 in Official Records Book 17336, Page 459, LESS AND EXCEPT therefrom that portion lying at or above elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

**Parcel "D" owned by Debtor 4:**

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way records and less that portion of Tracts 41, 42, 43 and 44 deeded to Miami-Dade County by Special Warranty Deed dated August 23, 1996, and recorded in Official Records Book 17336, Page 459.  Less and exception therefrom that portion lying below elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.).

Parcel "E" (Tax ID No.35-3017-001-0250) owned by Debtor 5:

A portion of Tract 25, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, which lies within the Northwest ¼ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida. More particularly described as follows:

Commence at the Northwest corner of said Section 17, thence S 01°43'09" along the West line of said Section 17 for a distance of 2,309.44 feet; thence N 89°40'03" E along the North line of said Tract 25 for 690.19 feet; thence S 00°19'51" E for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of land, thence N 89°40'03" E for 301.52 feet; thence S 00°19'51" E for 92.18 feet; thence N 89°40'09" E for 18.00 feet; thence S 00°19'51" E for 128.67 feet; thence S 89°40'09" W for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N 47°51'32" E; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96°22'46" for a distance of 100.93 feet to a point on a non-tangent line; thence S 89°40'09" W for 129.49 feet; thence N 00°19'51" W for 128.67 feet; thence N 89°40'09" E for 18.00 feet; thence N 00°19'51" W for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

- 14 -

## EXHIBIT B

This instrument prepared by, record and return to:

Michael B. Denberg, Esq.
Arnstein & Lehr LLP
200 S. Biscayne Blvd.
Suite 3600
Miami, FL  33131

Property Tax ID #:

_____

## DEED

   **THIS DEED** is made this _____ day of _____, _____, between _____, as Debtor-in-Possession under Case No. _____, whose address is: _____(the "**Grantor**"), and _____ (the "**Grantee**"), whose address is: _____.

   (The designation "Grantor" and "Grantee" as used herein shall include all parties, their heirs, successors and assigns and shall include singular, plural, masculine, feminine, or neuter as required by context).

   **WITNESSETH**, that the Grantor, pursuant to the Final Sale Order _____ (a copy of which is attached hereto as Exhibit A) (the "**Order**") for and in consideration of the sum of Ten ($10.00) Dollars and other valuable considerations, the receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, convey and confirms unto the Grantee, all that certain land situate in Miami-Dade County, Florida, to wit:

### SEE EXHIBIT "A" ATTACHED HERETO.

   The said land is delivered free and clear of all liens as provided pursuant to the Order authorizing sale of the land free and clear of all liens, which Order was entered pursuant to 11 U.S.C. §363(f).

**AND SUBJECT TO** the following matters:  (i) Conditions, restrictions, limitations, easements, encumbrances, leases and agreements of record, if any, and any amendments thereto, (without reimposing same), and all applicable zoning ordinances and governmental regulations; and (ii) all taxes and assessments for the 2012 tax year and all subsequent years; and (iii) all matters which an accurate survey of the subject property would disclose.

   **TOGETHER** with all tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

   **TO HAVE AND TO HOLD**, the same in fee simple forever.

**AND**, the Grantor hereby covenants with said Grantee that the Grantor has good right and lawful authority to sell and covey said land.  Grantor hereby covenants with Grantor and will forever defend Grantee against claims of all persons claiming by, through or under Grantor.  No other covenants or warranties, express or implied, are given by this Deed.

**IN WITNESS WHEREOF**, the Grantor has hereunto set his hand and seal, this ___ day of _____, _____.

Signed, Sealed and delivered                          _____, a Florida limited
in the presence of:                                   liability company, as Debtor-in-possession


_____        By:_____
Witness Signature                      Name:_____
_____        Title:_____
Print Name of Witness


_____
Witness Signature
_____
Print Name of Witness



STATE OF FLORIDA  )
                  ) SS:
COUNTY OF         )

The foregoing instrument was acknowledged before me this _____ day of _____, _____ by _____, as _____, who is [   ] personally known to me or [   ] produced _____ as identification.


                                       _____
                                       NOTARY PUBLIC, State of Florida

                                       Print Name:_____

                                       My Commission Expires:
                                       My Commission Number:

## EXHIBIT C

## BILL OF SALE

**KNOW ALL MEN BY THESE PRESENTS** that _____, a Florida limited liability Company, as Debtor-in-Possession under Case No. _____ ("**Seller**"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) lawful money of the United States, to Seller paid by _____ ("**Buyer**"), the receipt whereof is hereby acknowledged, have granted, bargained, sold, transferred and delivered, and by these presents does grant, bargain, sell, transfer and deliver unto the said Buyer, his Executors, Administrators and Assigns, all fixtures, built-in appliances, ceiling fans, light fixtures, attached wall-to-wall carpeting, rods, draperies and other window coverings (the "**Personal Property**") located on the premises described on Exhibit A attached hereto and incorporated herein by reference.

To have and to hold the same unto the Buyer, his Executors, Administrators and Assigns forever.

And the Seller does covenant to and with the Buyer, his Heirs, Executors, Administrators and Assigns, that the Seller is the lawful owner of the Personal Property, and that the Seller has good right to sell the same aforesaid.

**ALL OTHER WARRANTIES, WHATSOEVER, INCLUDING WARRANTIES OF QUALITY, FITNESS AND MERCHANTABILITY, ARE HEREBY EXCLUDED AS SUCH PERSONAL PROPERTY CONVEYED HEREBY IS BEING SOLD IN ITS "AS-IS, WHERE-IS" CONDITION WITH ALL FAULTS.**

**IN WITNESS WHEREOF**, the Seller has hereunto set their hand and seal this ___ day of _____, 200____.

Signed, Sealed and Delivered in the
Presence of:

_____          _____, a Florida
Witness Signature                                         limited liability company, as Debtor-in-
                                                                    Possession

_____
-Print Name of Witness                                  By:_____
                                                                    Name:_____
                                                                    Title:_____

_____
Witness Signature

_____
-Print Name of Witness

STATE OF FLORIDA        )
                                  )SS:
COUNTY OF_____ )

      The foregoing instrument was acknowledged before me, this ___ day of _____, _____ by _____, as _____, who [   ] is personally known to me or [   ] has produced as identification and who [x] did [ ] did not take an oath.


_____
Notary Public, State of Florida


_____
Print, Type or Stamp Name
Commission Number:_____
Commission Expires:_____

## COMPOSITE EXHIBIT "A"

## LEGAL DESCRIPTION OF REAL PROPERTY

**Parcel "A" (Tax ID No.35-3017-001-0241) owned by Debtor 1:**

The East 415.00 feet of Tracts 24, 33, 34, 35 and 36, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida.

LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

**Parcel "B" (Tax ID No. 35-3017-001-0240) owned by Debtor 2:**

Tracts 24, 25, 33, 34, 35, 36, 45, 46, 47 and 48; LESS all the Roads Right-of-Ways of record, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, Florida, which lies within the West ½ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida; LESS the East 415.00 feet of Tracts 24, 33, 34, 35 and 36, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida; and LESS that portion of Tract 45 deeded to Miami-Dade County by Special Warranty Deed recorded September 3, 1996 in Official Records Book 17336, Page 459, of the Public Records of Miami-Dade County, Florida.


AND LESS:

A portion of Tract 25, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, which lies within the Northwest ¼ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida. More particularly described as follows:

Commence at the Northwest corner of said Section 17, thence S 01°43′09″ E along the West line of said Section 17 for a distance of 2,309.44 feet; thence N 89°40′03″ E along the North line of said Tract 25 for 690.19 feet; thence S 00°19′51″ E for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of land, thence N 89°40′03″ E for 301.52 feet; thence S 00°19′51″ E for 92.18 feet; thence N 89°40′09″ E for 18.00 feet; thence S 00°19′51″ E for 128.67 feet; thence S 89°40′09″ W for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N 47°51′32″ E; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96°22′46″ for a distance of 100.93 feet to a point on a non-tangent line; thence S 89°40′09″ W for 129.49 feet; thence N 00°19′51″ W for 128.67 feet; thence N 89°40′09″ E for 18.00 feet; thence N 00°19′51″ W for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official

Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

**Parcel "C" (Tax ID No.35-3017-001-0362) owned by Debtor 3:**

The West 739.33 feet of Tracts 41, 42, 43 and 44, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, In Section 17, Township 53 South, Range 40 East, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, Florida; LESS all Road Right-of-Ways of record, and LESS that portion of Tracts 41, 42, 43 and 44 deeded to Miami-Dade County by Special Warranty Deed recorded August 23, 1996 in Official Records Book 17336, Page 459, LESS AND EXCEPT therefrom that portion lying at or above elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

**Parcel "D" owned by Debtor 4:**

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way records and less that portion of Tracts 41, 42, 43 and 44 deeded to Miami-Dade County by Special Warranty Deed dated August 23, 1996, and recorded in Official Records Book 17336, Page 459. Less and exception therefrom that portion lying below elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.).

Parcel "E" (Tax ID No.35-3017-001-0250) owned by Debtor 5:

A portion of Tract 25, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, which lies within the Northwest ¼ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida. More particularly described as follows:

Commence at the Northwest corner of said Section 17, thence S 01°43'09" along the West line of said Section 17 for a distance of 2,309.44 feet; thence N 89°40'03" E along the North line of said Tract 25 for 690.19 feet; thence S 00°19'51" E for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of land, thence N 89°40'03" E for 301.52 feet; thence S 00°19'51" E for 92.18 feet; thence N 89°40'09" E for 18.00 feet; thence S 00°19'51" E for 128.67 feet; thence S 89°40'09" W for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N 47°51'32" E; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96°22'46" for a distance of 100.93 feet to a point on a non-tangent line; thence S 89°40'09" W for 129.49 feet; thence N 00°19'51" W for 128.67 feet; thence N 89°40'09" E for 18.00 feet; thence N 00°19'51" W for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

## EXHIBIT D

## ASSIGNMENT

_____, a Florida limited liability company, Chapter 11 Debtor-In-Possession, under Case No. _____ ("**Assignor**"), in consideration of the sum of Ten and No/100 Dollars ($10.00) in hand paid and other good and valuable consideration, the receipt of which is hereby acknowledged, hereby assign, transfer, set over and convey to _____ ("**Assignee**"), all of Assignor's right, title and interest in and to (i) all licenses, permits, contract rights, development rights, and approvals pertaining to the ownership and/or operation of the real property described on <u>Exhibit "A"</u> (the "**Property**"), and (ii) all of Assignor's general intangible rights pertaining to ownership of the Real Property (all such rights, collectively, the "**Property Rights**").  Assignor accepts the assignment, transfer, set over and conveyance of the Property Rights.

      **IN WITNESS WHEREOF**, Assignor has executed this Assignment this _____ day of _____, _____, which Assignment is effective this date.

ASSIGNOR:

_____, a Florida limited liability company, as Debtor-in-Possession

By:_____
Name:
Title:

ASSIGNEE:

_____,
a _____

By:_____
Name:
Title:

## COMPOSITE EXHIBIT "A"

## LEGAL DESCRIPTION OF REAL PROPERTY

**Parcel "A" (Tax ID No.35-3017-001-0241) owned by Debtor 1:**

The East 415.00 feet of Tracts 24, 33, 34, 35 and 36, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida.

LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

**Parcel "B" (Tax ID No. 35-3017-001-0240) owned by Debtor 2:**

Tracts 24, 25, 33, 34, 35, 36, 45, 46, 47 and 48; LESS all the Roads Right-of-Ways of record, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, Florida, which lies within the West ½ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida; LESS the East 415.00 feet of Tracts 24, 33, 34, 35 and 36, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, lying and being in Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida; and LESS that portion of Tract 45 deeded to Miami-Dade County by Special Warranty Deed recorded September 3, 1996 in Official Records Book 17336, Page 459, of the Public Records of Miami-Dade County, Florida.


AND LESS:

A portion of Tract 25, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, which lies within the Northwest ¼ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida. More particularly described as follows:

Commence at the Northwest corner of said Section 17, thence S 01°43'09" E along the West line of said Section 17 for a distance of 2,309.44 feet; thence N 89°40'03" E along the North line of said Tract 25 for 690.19 feet; thence S 00°19'51" E for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of land, thence N 89°40'03" E for 301.52 feet; thence S 00°19'51" E for 92.18 feet; thence N 89°40'09" E for 18.00 feet; thence S 00°19'51" E for 128.67 feet; thence S 89°40'09" W for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N 47°51'32" E; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96°22'46" for a distance of 100.93 feet to a point on a non-tangent line; thence S 89°40'09" W for 129.49 feet; thence N 00°19'51" W for 128.67 feet; thence N 89°40'09" E for 18.00 feet; thence N 00°19'51" W for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official

Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.

**Parcel "C" (Tax ID No.35-3017-001-0362) owned by Debtor 3:**

The West 739.33 feet of Tracts 41, 42, 43 and 44, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, In Section 17, Township 53 South, Range 40 East, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, Florida; LESS all Road Right-of-Ways of record, and LESS that portion of Tracts 41, 42, 43 and 44 deeded to Miami-Dade County by Special Warranty Deed recorded August 23, 1996 in Official Records Book 17336, Page 459, LESS AND EXCEPT therefrom that portion lying at or above elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.)

**Parcel "D" owned by Debtor 4:**

The West 739.33 feet of Tracts 41, 42, 43 and 44 of "FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1", in Section 17, Township 53 South, Range 40 East, as recorded in Plat Book 2, at Page 17, of the Public Records of Miami-Dade County, Florida. Less all Road Right-of-Way records and less that portion of Tracts 41, 42, 43 and 44 deeded to Miami-Dade County by Special Warranty Deed dated August 23, 1996, and recorded in Official Records Book 17336, Page 459.  Less and exception therefrom that portion lying below elevation 27.63 feet, referred to National Geodetic Vertical Datum of 1929 (N.G.V.D.).

**Parcel "E" (Tax ID No.35-3017-001-0250) owned by Debtor 5:**

A portion of Tract 25, of FLORIDA FRUIT LANDS COMPANY'S SUBDIVISION NO. 1, according to the Plat thereof, as recorded in Plat Book 2, Page 17, of the Public Records of Miami-Dade County, which lies within the Northwest ¼ of Section 17, Township 53 South, Range 40 East, Miami-Dade County, Florida. More particularly described as follows:

Commence at the Northwest corner of said Section 17, thence S 01°43'09" along the West line of said Section 17 for a distance of 2,309.44 feet; thence N 89°40'03" E along the North line of said Tract 25 for 690.19 feet; thence S 00°19'51" E for 73.00 feet to the POINT OF BEGINNING of the hereinafter described parcel of land, thence N 89°40'03" E for 301.52 feet; thence S 00°19'51" E for 92.18 feet; thence N 89°40'09" E for 18.00 feet; thence S 00°19'51" E for 128.67 feet; thence S 89°40'09" W for 118.59 feet to a point on a circular curve to the left, concave to the South, a radial line to said point bears N 47°51'32" E; thence continue Northwesterly, Westerly and Southwesterly along the arc of said curve, having for its elements a radius of 60.00 feet, through a central angle of 96°22'46" for a distance of 100.93 feet to a point on a non-tangent line; thence S 89°40'09" W for 129.49 feet; thence N 00°19'51" W for 128.67 feet; thence N 89°40'09" E for 18.00 feet; thence N 00°19'51" W for 92.17 feet to the POINT OF BEGINNING.

AND LESS AND EXCEPT the portion of the property conveyed to Landmark at Doral Community Development District by Deed recorded December 15, 2005 in Official Records Book 24054, Page 603, of the Public Records of Miami-Dade County, Florida.